**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| In re: | Chapter 11 |
|---|---|
| 1 GLOBAL CAPITAL LLC,[1] | Case No. 18-19121-RBR |
| Debtor. | (Joint Administration To Be Requested) |
| In re: | Chapter 11 |
| 1 WEST CAPITAL LLC,[2] | Case No. 18-19122-RBR |
| Debtor. | (Joint Administration To Be Requested) |

## CHAPTER 11 CASE MANAGEMENT SUMMARY

In compliance with Local Rule 2081-1(B), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") file this Chapter 11 Case Management Summary (the "Case Management Summary"). The Case Management Summary is comprised of two parts. Part I provides background information concerning the Debtors and their businesses, the circumstances leading up to the filing of the above-captioned Chapter 11 cases (collectively, the "Chapter 11 Cases"), and matters of corporate governance. Part II provides responses to specific questions in the form and manner required by Local Rule 2081-1(B)(1) and the Local Form "Chapter 11 Case Management Summary." As more fully explained below, the information contained in this Case Management Summary is true and correct to the undersigned's best

---

[1] The business addresses and the last four (4) digits of this Debtor's federal tax identification number is: 1 Global Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (9517).

[2] The business addresses and the last four (4) digits of this Debtor's federal tax identification number is: 1 West Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).

knowledge, information and belief, based on investigation to date, but remains subject to revision in all respects as additional information is learned.

For their Case Management Summary, the Debtors state:

**I.**
**Background**

**A.    About 1 Global Capital LLC and 1 West Capital LLC**

1.    1 Global Capital LLC ("1GC") is a Florida limited liability company that has been in business for about 5 years.  1 West Capital LLC ("1WC" and together with 1GC, the "Company") is a Florida limited liability company that has been in business for about 4 years.  The Company has approximately 100 employees and operates out of leased office space located in Hallandale Beach, Florida.

2.    The Company operates in the financial services industry, primarily by providing direct merchant cash advances ("MCAs") to small businesses across the U.S.  Through independent sales organizations, underwriters and other funding agents, the Company offers a variety of fast and flexible financing options, specializing in MCAs and other unsecured, short-term commercial financing.  The Company has served businesses in a variety of industries, including automotive, construction, e-commerce, events, franchise, hospitality, healthcare, manufacturing, retail, restaurant/bar, spa/salon, and transportation.

3.    Through its funding platform, the Company provides necessary capital for its merchant clients to invest in inventory, repair machinery, pay bills, upgrade technology, and otherwise operate their businesses.  Under its MCA funding platform, the Company can provide those clients with up to $500,000 for working capital, repayable either through daily, weekly or other periodic automated clearing house transactions or merchant credit card receivable splits.  Alternatively, the Company also offers collateral-based funding and accounts-receivable funding

options, where advances are based, respectively, on the value of collateral owned by a business or on amounts a business has earned but not yet collected. Servicing the MCAs and other receivables in the Debtors' portfolio requires a substantial, ongoing business operation, absent which there may be a material diminution in their value. Approximately 30% of the businesses to which the Company provides MCAs or extends other forms of short-term credit refinance with the Company so as to renew or roll over their existing funding arrangements into new arrangements with the Company.

4.      The Company raises capital to fund its business operations through private loans typically repayable in nine months, or as soon thereafter as the positions in which those loans are invested have been liquidated. All of the creditors identified on the Company's consolidated list of twenty largest general unsecured creditors are individuals (or in some cases, their individual retirement accounts) who have made loans documented by a promissory note, a memorandum of indebtedness and/or a loan agreement. The undersigned is informed that the loan proceeds are invested in MCAs and other funding products offered by the Company, and each lender typically receives a monthly statement reflecting the amount and status of each credit to which its respective loan has been allocated. Each lender also has access to an electronic portal through the Company's website that enables the lender to review its respective account on a continuing basis.

5.      The Company's unaudited books and records for the quarter ending June 30, 2018 reflect approximately $238 million of accounts receivable (after an allowance for potentially uncollectible accounts), $21 million of intercompany accounts, $17.3 million in unrestricted cash, plus other assets. These books and records also reflect approximately $283 million in loans outstanding.

**B.    Certain Events Leading to the Filing of these Chapter 11 Cases**

6.      Before the filing of these Chapter 11 Cases, the Securities and Exchange Commission ("SEC"), Miami Region, opened an investigation into the Company's activities related to alleged possible securities law violations, including the alleged offer and sale of unregistered securities, the alleged sale of securities by unregistered brokers, and the alleged commission of fraud in connection with the offer, purchase, and sale of securities.  At some point in time, the Office of the United States Attorney for the Southern District of Florida ("USAO") opened a parallel investigation into certain of these same and other business activities and transactions engaged in by the Company.  It is unknown which investigation began first.

7.      During these investigations the SEC and USAO have issued document requests and requests for testimony from at least one Company employee.  Based upon information and belief, the SEC and USAO have also spoken with or requested documents from third parties, related to the Company's business.

8.      The Company retained outside counsel and has been cooperating with the SEC and USAO.  The investigation and requests for information do not mean that the SEC or the USAO has concluded that the Company has violated any laws.  As of the commencement of these Chapter 11 Cases, neither the SEC nor the USAO has filed any formal charges or commenced any legal action in any court against the Company and/or any of its employees.  The Company is also the subject of investigations by state attorneys general in certain of the states in which investors were solicited to provide loans to the Company.

9.      As a result of the SEC and USAO investigations, the Company took steps to modify its corporate governance, remove certain individuals from positions of responsibility and authority, and replace them with independent business professionals experienced in corporate distress and

restructuring situations. As described below, the newly appointed independent manager, chief restructuring officer and financial advisory firm have no prior connection to the Company, the Company's former managers and officers, or the activities which the various authorities are or may be investigating.

10.     As a further result of the SEC and USAO investigations, the Company was not in a position to raise new capital. Without access to new capital, the filing of these Chapter 11 Cases became urgently necessary to address a sudden and acute liquidity crisis, and to preserve the Debtors' assets and business operations for the benefit of the individual lenders and other constituencies. The urgent filing of these Chapter 11 Cases was also necessary to ensure the smooth transition of management and continuity of the Company's MCA business.

11.     In light of the urgency compelling the filing of these Chapter 11 Cases, the Debtors are continuing to prepare "first day" motions that they expect to file promptly. The Debtors have no secured lender and, accordingly, do not believe that they will need to seek authority to use cash collateral within the definition or scope of section 363 of the Bankruptcy Code. The Debtors intend to use these Chapter 11 Cases to evaluate their strategic options and, in consultation with their stakeholders and other parties in interest, determine an appropriate strategy to maximize the return to creditors.

**C.     The Debtors' Corporate Governance**

12.     1GC and 1WC operate as single-member Florida limited liability companies, of which the Ruderman Family Trust ("RFT") is the sole member, holding 100% of the membership interests in each of 1GC and 1WC. Carl Ruderman was the Chairman of the Company. Steven Schwartz, the brother-in-law of Mr. Ruderman, was the manager of 1GC. Darice Lang was the Operations Director of the Company and the manager of 1WC. Concurrently with the filing of

these Chapter 11 Cases, the Company implemented a series of corporate actions intended to transfer control of the Debtors and their operations to independent outside management.

13.    First, the operating agreements of 1GC and 1WC were amended effective as of July 27, 2018, to effectuate modifications to the Company's corporate governance structure.    The modifications provide, *inter alia*, that (i) each of 1GC and 1WC shall be manager-managed limited liability companies under the direction of a board of independent managers (the "Board") that may exercise all powers of the Company and has the right and authority to take any and all actions that the Board, in its sole discretion, deems necessary, useful or appropriate for the management of the Company; (ii) the Board of Managers shall consist of up to three (3) independent managers (each, a "Manager"); (iii) James S. Cassel shall be appointed as a Manager (the "Initial Manager") and shall have the sole power and authority to appoint the remaining Managers; (iv) any Manager (other than the Initial Manager) may be removed at any time, with or without cause, by the Initial Manager; and (v) the Initial Manager may be removed and replaced, with or without cause, by a majority vote of the other Managers.    RFT, the sole member of 1GC and 1WC, does not have the ability to remove or appoint any Manager.

14.    Second, by agreement dated July 27, 2018, James S. Cassel was appointed as the sole Initial Manager of both of 1GC and 1WC.    Mr. Cassel is the chairman and co-founder of Miami-based Cassel Salpeter & Co., a highly-regarded independent investment banking firm that primarily assists middle market and emerging growth companies across a broad spectrum of industries.    Mr. Cassel is a widely respected member of the local and national business community, with many years of experience in the management, rehabilitation and sale of distressed companies in Chapter 11 and other insolvency situations. Mr. Cassel's curriculum vitae is attached hereto as Exhibit A.

15.     Third, Steven A. Schwartz, Carl Ruderman, Darice Lang and RFT each tendered their resignations from all manager, director, committee and officer positions they held with the Company, effective immediately upon the Company's bankruptcy filing.

16.     As a result of these modifications, and consistent with the terms of their resignations, neither Carl Ruderman, Steven A. Schwartz, nor any other person affiliated with the RFT has any role in the governance or management of the Company, nor retains the power to appoint, elect or remove any member of the independent Board.  Ms. Lang remains an employee of the Company, reporting directly to the Chief Restructuring Officer appointed as described immediately below.

17.     Fourth, immediately upon his appointment as the Initial Manager, and having interviewed four candidates for the role of outside financial advisor, Mr. Cassel engaged Development Specialists, Inc. ("DSI") to provide financial advisory services to the Company. Under the terms of the engagement letter effective July 27, 2018, a copy of which is attached hereto as Exhibit B, and subject to the approval of the Bankruptcy Court under 11 U.S.C. §363, Bradley D. Sharp will act as the Company's Chief Restructuring Officer ("CRO") and Joseph J. Luzinski will act as the Company's Deputy CRO.  Messrs. Sharp and Luzinski are experienced and well-known insolvency professionals at DSI, who have served in numerous executive and fiduciary roles in Chapter 7 and 11 cases across the country for many years, and have extensive experience in the financial services industry.  In addition, Mr. Sharp currently serves as the Chief Restructuring Officer in *In re Woodbridge Group of Cos. LLC*, No. 1:17-bk-12560 (Bankr. D. Del.), a series of Chapter 11 cases presenting similar business and legal issues and challenges as these Cases. Messrs. Sharp and Luzinski's curriculum vitae are attached hereto as Composite Exhibit C.

18.     With the assistance of Mr. Luzinski, Mr. Sharp has assumed full control of the

Company's operations and will direct the Company in these Chapter 11 Cases, reporting solely and directly to the Board of Managers as consistent with the Company's corporate governance requirements.    Under the direction of the Board, the CRO will be responsible for the implementation and prosecution of these Chapter 11 Cases, including the stabilization of the business, ensuring that the Company's loan assets are properly serviced, negotiations with creditors, claims reconciliation, investigation and pursuit of claims against third parties, and determination of an exit strategy from these Chapter 11 Cases.  The CRO will also continue to cooperate with the USAO and SEC.  In addition, DSI will provide additional personnel to provide restructuring support services as requested by the Board, all as described in DSI's engagement letter.

## II.
## Responses to Specific Questions

The following data represents approximations for background information only, and the information represent the Debtors' best estimate as of this date in response to the information required by Local Rule 2081.  The accounting and financial information used for some of the responses set forth below is based on the Company's unaudited books and records.

1. Date of Order for Relief under chapter 11 (filing date of petition if voluntary chapter 11 petition):  **Each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 27, 2018 (the "Petition Date").**

2. Names, case numbers and dates of filing of related debtors:  **There are no affiliated debtors in addition to the two Debtors.**

3. Description of debtor's business:  **As more fully set forth in Part I.A. above, the Debtors are in the short-term commercial cash advance and financing business.**

4. Locations of debtor's operations and whether the business premises are leased or owned:  **The Debtors lease their business premises, which is located at 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009.**

5. Reasons for filing chapter 11:  **As more fully set forth in Part I.B above, the Debtors filed these Chapter 11 Cases to address a sudden and acute liquidity**

**crisis and to preserve their assets and business operations for the benefit of the individual lenders and all other constituencies.**

6.    List of officers and directors, if applicable, and their salaries and benefits at the time of filing and during the 1 year prior to filing:  **Before the Petition Date, (i) Carl Ruderman received a salary in the annual amount of $240,000, a monthly distribution of $83,000, and loans from the Company; and (ii) Steven A. Schwartz received a salary in the annual amount of $92,000.**

7.    Debtors' consolidated fiscal or calendar year to date gross income and the Debtors' gross income for the calendar or fiscal year prior to the filing of this petition:
- **Debtors' Consolidated Gross Income 2017:  $22.6 million; and**
- **Debtors' Consolidated Gross Income 1/1/2018 to 6/30/2018:  $29.3 million.**

8.    Amounts owed to various creditors as of the commencement of this case:

   a.    Obligations owed to priority creditors including priority tax obligations:  **The Debtors are not aware of any such obligations as of this date.**

   b.    With respect to creditors holding secured claims, the name of and amounts owed to such creditors and a description and estimated value of all collateral of the debtor securing their claims:  **The Debtors are not aware of any such obligations as of this date.**

   c.    Amount of unsecured claims:  **$283 million in unsecured lender claims.**

9.    General description and approximate value of the debtor's assets:  **As set forth more fully in Part I.A. above, the Debtors' primary assets are MCAs, other receivables and cash in the approximate total amount of $276.3 million.**

10.   List of all insurance policies, the property covered under the policy, the name of the insurer, the policy number, amount of coverage, whether the premium is current, the date the next premium is due and date the policy expires.

- **Business Management and Indemnity Policy, Scottsdale Indemnity Company, Policy Number EKI3237457, policy period is 11/1/2017 to 11/1/2018;**
- **Professional Services Liability Policy, Underwriters at Lloyd's, London, Policy Number SUA WS20185-1701, policy period is 11/1/2017 to 11/1/2018;**
- **Consumer Financial Defense Expense Policy, Underwriters at Lloyd's, London, Policy Number SUA 1017CFDE-1701, policy period is 11/1/2017 to 11/1/2018;**
- **Financial Institution Bond, Underwriters at Lloyd's, London, Policy Number SUA WS1204-1701, policy period is 11/1/2017 to 11/1/2018;**
- **Commercial Insurance Policy, The Charter Oak Fire Insurance Company, Policy Number H-660-1L605845-COF-18, policy period is**

**7/22/18 to 7/22/2019;**

- **Commercial Excess Liability Insurance Policy, Travels Property Casualty Company of America, Policy Number HSM-CUP-1L966153-TIL-18, policy period 7/22/18 to 7/22/2019; and**

- **Directors and Officers Liability Policy and Excess Policy, Policy Numbers TBD, policy period is 07/27/2018 to 07/27/2019.**

**All policy premiums are current as of the Petition Date, except that the Commercial Insurance Policy was recently renewed, and the Debtors expect to pay in the ordinary course of business a premium in the approximate amount of $12,000 once an invoice is received from the insurer or its agent.**

11.    Number of employees and amounts of wages owed as of petition date:  **The Debtors have approximately 100 employees.  Immediately before the Petition Date, the Debtors funded their payroll and certain other employee obligations to a third-party payroll company; accordingly, the Debtors do not owe any wages as of the Petition Date.  The Debtors bi-weekly employee wage obligations are in the approximate amount of $300,000.00.**

12.    Status of debtor's payroll and sales tax obligations, if applicable.  This does not eliminate the obligation of chapter 11 debtors (other than individuals not engaged in business) to provide the more detailed payroll tax information required by Local Rule 2081-1(A):  **The Debtors are current on their payroll and sales tax obligations.**

*[Remainder of page intentionally left blank.]*

13. Anticipated emergency or expedited relief to be requested within 14 days from the entry of an order for relief: **The Debtors anticipate seeking relief within 14 days from the Petition Date by, among other things, filing and requesting expedited hearing on the following motions and/or applications:**

- **Joint Administration Motion**
- **Cash Management Motion**
- **Motion to Honor Certain Prepetition Obligations to Employees**
- **Motion to Approve Retention of James S. Cassel as Independent Manager**
- **Motion to Approve Retention of Development Specialists, Inc. as Turnaround Manager, Bradley D. Sharp as Chief Restructuring Officer and Joseph J. Luzinski as Deputy Chief Restructuring Officer**
- **Application to Retain a Claims and Noticing Agent**
- **Application to Retain Greenberg Traurig, LLP as Debtors' Counsel**

**The Debtors may file additional motions, applications or other requests for relief as they may determine is necessary and appropriate as these Chapter 11 Cases develop.**

Dated: July 30, 2018

_/s/ Bradley D. Sharp_
Bradley D. Sharp
Chief Restructuring Officer

GREENBERG TRAURIG, LLP

_/s/ Paul J. Keenan Jr._
Mark D. Bloom
Fla. Bar No. 303836
bloomm@gtlaw.com

Paul J. Keenan Jr.
Fla. Bar No. 0594687
keenanp@gtlaw.com

John R. Dodd
Fla. Bar No. 38091
doddj@gtlaw.com

333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Tel: 305-579-0500

_Proposed Counsel for the Debtors
and Debtors-in-Possession_

**EXHIBIT A**
**(Curriculum Vitae of James S. Cassel)**

**James S. Cassel**
BIOGRAPHY

**Chairman, Cassel Salpeter & Co., LLC**
A Middle Market investment banking firm.

Cassel Salpeter & Co., LLC focuses on providing independent and objective advice to middle market and emerging growth companies. Their investment banking and advisory services include broad capabilities for both private and public companies.

Mr. Cassel formally served as Vice Chairman, Senior Managing Director, and Head of Investment Banking of Ladenburg Thalmann, a NYSE member firm.

Mr. Cassel takes an active role with clients, and his extensive transactional and corporate finance experience serves as a valuable resource. Through membership on boards of directors and his active involvement in outside business operations, Mr. Cassel has developed a keen understanding of the challenges faced by middle market and emerging growth companies. Mr. Cassel has negotiated, structured and executed various types of transactions including mergers, acquisitions and divestitures; corporate and transactional financing, including venture capital, mezzanine and conventional financing; and public offerings and private placements. With experience as an investment banker and as an attorney, Mr. Cassel has also developed a unique understanding of the issues faced and alternatives available for distressed companies. He has particular experience in developing financial restructuring plans, negotiating with creditors and guiding debtors through bankruptcy proceedings.

Nationally recognized for his investment banking expertise, Mr. Cassel frequently lectures on timely issues relating to middle market investment banking. Prior to joining Ladenburg Thalmann, he founded Capitalink.  Mr. Cassel was also President of Catalyst Financial, where he advised clients on financings and mergers and acquisitions.  He was also the Managing Partner of the Miami office and served on the executive committee of Broad and Cassel, one of Florida's largest law firms. He founded and led the firm's corporate/securities practice.

Mr. Cassel has served on boards of directors of several companies, in addition to the National Investment Banking Association, an organization of middle market investment banking firms as well as M & A International, a worldwide group of investment banking firms. His professional involvements have also included membership in the American Association of Arbitrators, and the NASD Board of Arbitrators. In addition, he was President as well as a board member of the South Florida Chapter of the Association for Corporate Growth. Mr. Cassel was a member of the Board of Directors of Equity One, a NYSE listed REIT from April 2005 until May of 2014 and served on the Audit governance and compensation committees. He was also a member of the City of Miami, Florida Budget Task Force (2010). In July of 2017, Mr. Cassel was appointed to the Miami Sports & Exhibition Authority.

Mr. Cassel earned a Bachelor of Science degree from American University (1976), and a J.D. degree from the University of Miami School of Law (1979) and graduated from Ransom Everglades School (1973). He is a member of the New York and Florida Bars.

**Company name:**

Cassel Salpeter & Co., LLC
801 Brickell Ave
Suite 1900
Miami, FL33131
PHONE: 305 -438-7701
jcassel@cs-ib.com

**James S. Cassel**
801 Brickell Avenue, Suite 1900, Miami, FL 33131
jcassel@cs-ib.com

**Experience**

| | |
|---|---|
| Jan 2010-present | **CASSEL SALPETER & CO., LLC (SUCCESSOR TO J CASSEL & COMPANY, L.L.C.)**          **MIAMI, FL**<br>**Chairman & Co-Founder**<br>• South Florida based Investment Bank specializing in independent financial advisory M&A advice, Fairness Opinion, Valuation and Restructuring. |
| Oct 2006-Dec 2009 | **LADENBURG THALMANN & CO. INC. (AMEX: LTS)**          **MIAMI, FL AND NEW YORK, NY**<br>**Vice Chairman, Senior Managing Director, Head of Investment Banking, Member of Executive Committee and Commitment Committee**<br>• Managed the Company's Investment Banking department.<br>• Took an active role with clients, lending his extensive transactional and corporate finance experience.<br>• Negotiated, structured and executed various types of transactions including mergers, acquisitions and divestitures; corporate and transactional financing, including venture capital, mezzanine and conventional financing; and public offerings and private placements.<br>• Offered particular expertise in developing financial restructuring plans, negotiating with creditors and guiding debtors through bankruptcy proceedings. |
| Nov. 1998-Oct.2006 | **CAPITALINK, L.C. (SOLD TO LADENBURG THALMANN IN OCT 2006)**          **MIAMI, FL**<br>**Founder and President**<br>• Founded and built South Florida's premiere boutique investment bank.<br>• Built nationally ranked fairness opinion and M&A practice.<br>• Provided merger & acquisition, fairness opinion, solvency opinion, valuation, financial restructuring, and capital raise advisory services. |
| Mar 1996-Oct 1998 | **BARBER AND BRONSON, INCORPORATED**          **MIAMI, FL**<br>**Executive Vice President, Head of Investment Banking, President of Catalyst Financial (affiliate)**<br>• Formalized and headed investment banking practice.<br>• Raised private capital for public companies (PIPE).<br>• Provided financial advisory services.<br>• Led primary and secondary public offerings (IPO). |
| Nov 1985-Feb 1996 | **BROAD & CASSEL, ATTORNEYS AT LAW**          **MIAMI, FL**<br>**Managing Partner (Miami Office), Member of Executive Committee**<br>• Headed Corporate & Securities department.<br>• Advised issuers and underwriters in connection with public offerings and private placements.<br>• Advised on mergers & acquisitions and general corporate issues.<br>• Advised on municipal offerings. |
| Sep 1983-Oct 1985 | **BRITTON, COHEN, CASSEL, KAUFMAN & SCHANTZ, PA**          **MIAMI, FL**<br>**Managing Shareholder**<br>• Practiced law in the areas of corporate, securities, real estate, and restructuring. |
| Mar 1979-Aug 1983 | **CASSEL & CASSEL, PA**          **MIAMI, FL**<br>**(AND PREDECESSOR FIRM THE LAW OFFICES OF MARWIN S. CASSEL)**<br>**Managing Attorney and Shareholder**<br>• Practiced law in the areas of corporate, securities, and real estate.<br>• Examined title.<br>• Prepared condominium documents. |

**Additional Experience**

March 2010-
Dec 2010
**CITY OF MIAMI BUDGET TASK FORCE**

Apr 2005-
May2014
**EQUITY ONE, INC. (NYSE:EQY)**                     **MIAMI, FL**
**Former Member, Board of Directors; Member, Compensation Committee; Member, Audit Committee:**
**Member, Governance and Nominating Committee**
Equity One, Inc. is a real estate investment trust that invests primarily in grocery-anchored shopping centers.

May 1986-
May 1996
**THE RETREAT PSYCHIATRIC HOSPITAL, LTD.**          **SUNRISE, FL**
**ANCLOTE MANORS PSYCHIATRIC HOSPITAL, LTD.**     **TARPON SPRINGS, FL**
**Chairman of the Board of Directors**
The Retreat and Anclote Manors were private psychiatric hospitals.

**Education**
1976-1979
**UNIVERSITY OF MIAMI SCHOOL OF LAW**           **MIAMI,  FL**
J.D. January 1979.

1973-1976
**AMERICAN UNIVERSITY**              **WASHINGTON, DC**
B.S. in Political Science and Economics.

**Licenses**
- Member of New York and Florida bars.
- FINRA Series 7, 24, 63, 79, 99.

**Associations/ Other Roles**
- Member of the Miami Sports & Exhibition Authority
- Member of the Association for Corporate Growth, former director and former President of South Florida Chapter.
- Former Member of the American Association of Arbitrators.
- Former Member of the NASD Board of Arbitrators.
- Former Member of the Board of Directors of the National Investment Banking Association.
- Former Member of the Board of Directors and Vice President, Americas of M&A International.
- Has Addressed major conferences on mergers & acquisitions and corporate finance, in New York, Chicago, Miami, Buenos Aires, London, and elsewhere.
- Serves as expert witness.
- Monthly columnist for The Miami Herald

**EXHIBIT B**
**(Engagement Letter for Development Specialists, Inc.)**



July 27, 2018

Mr. James Cassel
Independent Manager
1 Global Capital LLC
1 West Capital LLC
c/o Cassel Salpeter & Co.
801 Brickell Avenue, Suite 1900
Miami, FL 33131

       Re:    Development Specialists, Inc. ("DSI")
              <u>Retention and Letter of Engagement</u>

Dear Mr. Cassel:

Please accept this letter as our firm's formal written agreement (the "Agreement") to name Bradley D. Sharp of DSI as Chief Restructuring Officer ("CRO") of 1 Global Capital LLC and 1 West Capital LLC (collectively, the "Company" or the "Debtor"), effective immediately upon the filing of Chapter 11 bankruptcy petitions for the Company and in contemplation of *nunc pro tunc* approval of the retention by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code.  In connection with Mr. Sharp's appointment, Joseph Luzinski of DSI shall serve as Deputy Restructuring Officer and DSI shall furnish additional personnel to provide restructuring support services to the Company, as described herein and modified from time to time.

The services to be provided pursuant to this letter shall be governed by the terms and conditions set forth below, as may be modified by the Order of the Bankruptcy Court approving the engagement with the consent of DSI and the Company.

Section 1 – Scope of Work

DSI will provide the following services to the Company:

    a.   Bradley D. Sharp will act as the Debtor's CRO, Joseph Luzinski will act as the Debtor's Deputy CRO.

    b.   As CRO, Mr. Sharp, with the assistance of Mr. Luzinski, will assume control of the Debtor's operations and direct the Company in the Chapter 11 cases, and any additional such cases as may be filed in respect of affiliates of the Company.

    c.   Mr. Sharp will report solely and directly to the independent manager(s) and will comply with the Debtor's corporate governance requirements.

LOS ANGELES
333 South Grand Avenue, Suite 4070  •  Los Angeles, California 90071-1544  •  Telephone: 213.617.2717  •  Fax: 213.617.2718  •  www.dsi.biz

SAN FRANCISCO  •  CHICAGO  •  NEW YORK  •  MIAMI  •  LONDON  •  PHILADELPHIA  •  BOSTON  •  COLUMBUS

1 Global Capital, LLC
July 27, 2018
Page 2

d. As directed by the independent manager(s), the CRO will be responsible for the implementation and prosecution of the Chapter 11 Cases, including negotiations with creditors, reconciliation of claims asserted by creditors, investigation and pursuit of claims against third parties, and confirmation of a Chapter 11 plan.

e. DSI will provide other personnel ("Additional Personnel") to provide restructuring support services as requested by the independent managers and the CRO.

f. DSI will provide other services as requested by the independent managers and the CRO, which services may include:

   i. assisting the Debtor in the preparation of financial disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statements of Financial Affairs and Monthly Operating Reports;

   ii. advising and assisting the Debtor, the Debtor's legal counsel and other professionals in responding to third party requests;

   iii. attending meetings and assisting in communications with parties in interest and their professionals, including the Debtor's secured lenders, any official committee(s) appointed pursuant to the Bankruptcy Code, the Office of the United States Trustee (the "U.S. Trustee"), and any other governmental or regulatory agencies asserting jurisdiction over the business and affairs of the Debtor; and

   iv. providing litigation advisory services with respect to accounting and financial matters, along with expert witness testimony on case-related issues.

g. Render such other general business consulting or such other assistance as the Company may deem necessary, and as consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this case.

DSI will submit its evaluations and analyses pursuant to this Agreement in periodic oral and written reports. Such reports are intended to and shall constitute privileged and confidential information and shall constitute your property.

Section 2 – Rates, Invoicing and Retainer

A number of DSI's personnel have experience in providing restructuring support services and may be utilized by DSI and/or Mr. Sharp in this representation. Although others of our staff may also be involved, we have listed below certain of the DSI personnel (along with their corresponding billing rates) who would likely constitute the core group for this matter.  The individuals are:



DSI  Development Specialists, Inc.

1 Global Capital, LLC
July 27, 2018
Page 3

|  |  |
|---|---|
| Bradley D. Sharp | $640.00/hr. |
| Joseph J. Luzinski | $620.00/hr. |
| Yale Bogen | $500.00/hr. |
| Daniel J. Stermer | $465.00/hr. |
| Alexandra N. Youngman | $230.00/hr. |

The above rates are adjusted as of January 1 of each year to reflect advancing experience, capabilities, and seniority of our professionals as well as general economic factors. Any such adjustments shall be discussed with the Company prior to January 1 of each year, and are subject to approval of the independent manager(s).

DSI will furnish monthly billing statements to the Company, in form, content and specificity as is customary in Chapter 11 engagements of this type.

DSI also will be entitled to reimbursement for its reasonable costs and expenses. Such costs and expenses may include, among others, charges for messenger services, photocopying, travel expenses, long distance telephone charges, postage and other charges customarily invoiced by consulting firms. Airfare for international flights will be charged at the business class fare.

This Agreement shall be presented to the Bankruptcy Court for approval pursuant to Bankruptcy Code Section 363, and DSI's then-prospective obligations shall be contingent upon such approval in a form and manner and upon terms and conditions acceptable to DSI and the Company.

Section 3 – Termination

Either the Company or DSI may terminate this Agreement for any reason with five (5) business days' written notice; provided however, the Company shall be obligated, in accordance with any orders of or procedures established by the Court, to pay and/or reimburse DSI all fees and expenses accrued under this Agreement as of the effective date of the termination.

Section 4 – Relationship of the Parties, Confidentiality

DSI will provide services to and for the Company, with select members of DSI assigned to specific roles for the benefit of the Company. These members will remain as DSI employees during the pendency of this case. Specifically, the parties intend that an independent contractor relationship will be created by this Agreement. Employees of DSI are not to be considered employees of the Company and are not entitled to any of the benefits that the Company provides for the Company's employees; *provided, however,* that in their respective capacities as CRO and Deputy CRO Messrs. Sharp and Luzinski shall be covered by such director and officer liability insurance policies as the Company may maintain in effect at the time of their appointment and thereafter.



DSI Development Specialists, Inc.

1 Global Capital, LLC
July 27, 2018
Page 4

The Company acknowledges that all advice (written or oral) given by DSI to the Company in connection with DSI's engagement is intended solely for the benefit and use of the Company's independent manager(s) and CEO in considering the transaction to which it relates, and that no third party is entitled to rely on any such advice or communication. DSI will in no way be deemed to be providing services for any person not a party to this Agreement.

DSI agrees that all information not publicly available that is received by DSI from the Company in connection with this engagement or that is developed pursuant to this Agreement, will be treated as confidential and will not be disclosed by DSI, except as required by Court order, or other legal process, or as may be authorized by the Company. DSI shall not be required to defend any action to obtain an order requiring disclosure of such information, but shall instead give prompt notice of any such action to the Company, so that it may seek appropriate remedies, including a protective order. The Company shall reimburse DSI for all costs and fees (including reasonable attorney's fees) incurred by DSI relating to responding to (whether by objecting to or complying with) any subpoenas or requests for production of information or documents.

Section 5 – Indemnity

In addition to the indemnity under this Agreement, the Company shall indemnify Mr. Sharp and Mr. Luzinski on the same terms as provided to the Company's other officers and directors under the Company's operating agreements and applicable state law. Mr. Sharp and Mr. Luzinski shall be included as an insured under any insurance policies or coverage available to officers and directors of the Company. The Debtor shall additionally indemnify those persons, and only those persons, serving as executive officers on the same terms as provided to the Debtor's other officers and directors under the Debtor's corporate bylaws and applicable state law, along with insurance coverage under the Debtor's D&O policies. Any such indemnity shall survive the expiration or termination by either party of this engagement. Except as provided in Section 4, there shall be no indemnification of DSI, its affiliates or the Additional Personnel.

Section 6 – Conflicts

DSI has made diligent inquiries to determine whether it or any of its professionals have any connections with the Debtor, creditors, or other parties in interest in this case. Based on that review, the review of DSI's conflict files and responses to inquiries from DSI's professional staff, neither DSI nor its professionals have any known conflicts with the parties in this case. DSI will separately provide its connections to parties in this case and/or their professionals.



1 Global Capital, LLC
July 27, 2018
Page 5


Section 7 – No Audit

The Company acknowledges that it is hiring DSI to assist and advise the Company in business planning and operations.  DSI's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of AICPA or other such state and national professional bodies.

Section 8 – Non-Solicitation

The Company agrees not to solicit, recruit or hire any employees or agents of DSI for a period of two years subsequent to the completion and/or termination of this Agreement.

Section 9 – Survival

The provisions of this Agreement relating to indemnification, the non-solicitation or hiring of DSI employees, and all other provisions necessary to the enforcement of the intent of this Agreement will survive the termination or expiration of this Agreement.

Section 10 – Entire Agreement, Amendment

This Agreement contains the entire understanding of the parties relating to the subject matter of this Agreement and supersedes and is intended to nullify any other agreements, understandings or representations relating to the subject of this Agreement. This Agreement may not be amended or modified except in a writing signed by the parties.

If you are in agreement with the foregoing terms and conditions please indicate your acceptance by signing an original copy of this Agreement on the signature lines below, then returning one fully-executed Agreement to DSI's office. The Agreement will become effective upon execution by duly authorized representatives of the respective parties.


Very truly yours,

Development Specialists, Inc.



1 Global Capital, LLC
July 27, 2018
Page 6

**AGREED AND ACKNOWLEDGED:**

1 GLOBAL CAPITAL LLC                        1 WEST CAPITAL LLC

By:_____               By:_____
Name: James Cassel                          Name: James Cassel
Title: Independent Manager                  Title: Independent Manager

**DSI** Development Specialists, Inc.

**COMPOSITE EXHIBIT C**
**(Curriculum Vitae for Bradley D. Sharp and Joseph J. Luzinski)**

**BRADLEY D. SHARP**

President & CEO
DEVELOPMENT SPECIALISTS, INC.
333 South Grand Avenue, Suite 4070
Los Angeles, California 90071

**Range of Experience**

Mr. Sharp has substantial experience in acting as a fiduciary as well as providing crisis management and consulting services to companies in various industries including real estate, food manufacturing, consumer finance, high tech and agriculture. He has consulted with, operated and sold publicly and privately-held troubled companies in and out of bankruptcy. Mr. Sharp has also provided expert witness services with respect to fiduciary duty, banking, finance and securitizations.

**Professional and Business History**

<u>Development Specialists, Inc.</u>

Since joining DSI, Mr. Sharp has been involved as management and as fiduciary.  For example:

- Chief Restructuring Officer of Woodbridge Group of Companies, LLC, a real estate development company through its 305 related debtors with more than 8,000 investors and claims of $1 billion.

- Chief Restructuring Officer of Variant Holding Company, LLC, parent company controlling 26 different multi-family properties with more than 8,000 units in 5 states.

- Chapter 11 Trustee for Namco Capital Group, Inc., a West Los Angeles-based real estate investment company through which $3 billion flowed between 2003 and 2008 with investments in over 100 real estate projects

- Chapter 11 trustee for SK Foods, LP, a Monterey California based processor of tomato products. After the bankruptcy filing, seven senior managers and the owner of the company plead guilty to charges including bribery, price-fixing and fraud.

- Chief Restructuring Officer for John Laing Homes, an Orange County builder and developer of high end homes with 100 project developments across California as well as developments in Colorado, Arizona and Texas.

- Liquidating Trustee for Vineyard National Bancorp, liquidating assets and administering the post-confirmation estate.

- Chapter 11 Trustee for Estate Financial Mortgage Fund, LLC, assisting in loan collection and real estate development decisions for Estate Financial, Inc.



Bradley D. Sharp

Mr. Sharp has also been involved as a consulting and testifying expert.  For example:

- Testifying expert in a Florida State Court action with respect to the fiduciary duty of officers and directors.

- Testifying expert in a Federal District Court action with respect to solvency of a bank holding company.

- Testifying expert in U.S. Bankruptcy Court with respect to the liquidation value of assets.

- Testimony as a U.S. banking expert in the High Court of Justice, Queens Bench Division, London England, in a dispute involving two European commercial banks.

- Consulting expert to a warehouse lender with respect to the People's Choice chapter 11 filing.

- Provided an expert opinion with respect to the value of a "sub prime" finance company in the Chicago area.

- Consulting expert to a finance company with respect to inter-bank issues that resulted from a loss on an asset based loan.

- Consulting expert regarding litigation on behalf of the holding company of a California based savings and loan.

<u>Security Pacific National Bank / Bank of America, NT&SA</u>

Prior to joining DSI, Mr. Sharp was a Vice President and Senior Commercial Loan Collection Officer with Bank of America, NT&SA with a focus on workouts of unsecured and asset based loans. He had been with the bank, through its acquisition of Security Pacific National Bank, since 1985.

**Education**

Bachelor of Science, Accounting, Mesa State College, Grand Junction, Colorado (1985)

**Professional Affiliations**

Board of Directors, American Bankruptcy Institute
Advisory Board, Southwest Bankruptcy Conference, American Bankruptcy Institute
Member, California Bankruptcy Forum



Bradley D. Sharp

**Selected Presentations**

AIRA 2018 National Conference
Nashville, TN June 15, 2018
Panelist:        The Art of the Turnaround – Advising the Lender

American Bankruptcy Institute Southwest Bankruptcy Conference
Corn September 7-9, 2017
Panelist:        Avoiding Malpractice and Other Common Pitfalls in a Commercial Restructuring
                 Case

2017 William J. O'Neill Great Lakes Regional Bankruptcy Institute
Clevland, OH May 4, 2017
Panelist:        Advisory Roles in Today's Restructuring Universe

American Bankruptcy Institute Annual Spring Meeting,
Washington, DC April 18, 2015
Panelist:        Anatomy of a Chapter 11 Confirmation Hearing

American Bankruptcy Institute Southwest Bankruptcy Conference
Las Vegas, NV September 5, 2014
Panelist:        Plan Confirmation Workshop

American Bankruptcy Institute Southwest Bankruptcy Conference
Las Vegas, NV September 15, 2012
Panelist:        Ethics: Client Issues

American Bankruptcy Institute Annual Spring Meeting,
Washington, DC April 21, 2012
Panelist:        Navigating Ethical Responsibility in a Complex World

Commercial Law League of America/Nation Conference of Bankruptcy Judges
Scottsdale, Arizona September 25, 2008
Panelist:        From a Ripple to a Tsunami: The Impact of the Subprime Meltdown

**Publications**

"Retirement Security: A New Perspective," The Journal of Private Equity 2005 (co-author)

"Co-ops Nearing Insolvency Must be Less Cooperative, Governance Challenges Grow for
Financially Troubled Co-ops," The Journal of Corporate Renewal 2005 (co-author)

 Development Specialists, Inc.

**JOSEPH J. LUZINSKI**                                          (305) 374-2717
FINANCIAL ADVISOR / FIDUCIARY                          jluzinski@dsi.biz
Development Specialists, Inc.

## PROFESSIONAL QUALIFICATIONS

Expert financial advisor, consultant and fiduciary with more than 30 years' of hands on business experience successfully advising, managing and administering matters involving public and private companies workout and restructuring out of court and in Chapter 11 & Chapter 7 bankruptcies, receiverships, assignments, Federal and State Court proceedings. Sample titles held include CRO, CEO, CFO, President, Director, Trustee, Plan Agent, Receiver, and Assignee to public and private companies, involved in loan workouts, distressed situations and crisis situations.  Financial advisory services include investigations, fraud assessments, interim management and litigation support engagements.

## SUMMARY INDUSTRY EXPERIENCE

Significant breath of involvement in disparate public and private companies including across a wide range of industries including:

- ✓ Aviation
- ✓ Automotive
- ✓ Banking / Finance
- ✓ Distribution / Supply Chain
- ✓ Financial Investigations
- ✓ Franchise / Restaurants
- ✓ Food Service
- ✓ Healthcare
- ✓ High  Net Worth Individuals
- ✓ Law Firms
- ✓ Manufacturing
- ✓ Media / Telephone / Radio / Television
- ✓ Printing / Publishing
- ✓ Real Estate
- ✓ Retail

> **AWARDS & RECOGNITION:**
>
> **M & A Advisor Turnaround Award** – *Middle Market Professional Services Deal of the Year for the Reorganization and Restructure of Ruden McClosky, P.A. 2013.*
>
> **M & A Advisor Turnaround Award** – *Middle Market Chapter 11 Deal of the Year 2012 for HearUSA, Inc.*
>
> **Beard Group** *Turnarounds & Workouts* ""Outstanding Turnaround Firm" Listed Senior Professional (four awards)
>
> **South Florida Legal Guide -** Top financial professional 2012 through 2017

## FINANCIAL RESTRUCTURING - ADVISOR SERVICES

Provide financial advice and restructuring services to debtors, creditor's committees, secured lenders, equity holders across the spectrum of workout and fiduciary situations in a myriad of different and complex industries.  Areas of expertise include operational analysis, financial analysis, valuation assessment, budgeting and planning, crisis management, turnaround strategy,

negotiation, litigation strategy and litigation support.  A keen ability to prepare, troubleshoot and/or implement plans while building consensus with company officers, directors, lenders, creditors and stakeholders. Selected board officer and director roles are noted below:

## FINANCIAL ADVISOR - BOARD/OFFICER ROLES

**Chief Executive Officer,** Pan Am Liquidating Corporation and Subsidiaries
**Director and Officer,** Southeast Banking Corporation Subsidiaries
**Director and Officer,** BankUnited and Subsidiaries
**Director and Officer,** KLLM Trucking, Inc.
**Director and Officer,** Columbus Lumber Corp.
**Director and Officer,** Angelina Plantation
**Director and Officer,** Thoughtware, Inc.
**Chief Restructuring Officer,** Lighthouse Imports, LLC
**Chief Restructuring Officer,** Ruden McClosky, P.A.
**Chief Restructuring Officer,** HearUSA, Inc.
**Chief Restructuring Officer,** Cordia Communications, Inc.
**Chief Restructuring Officer,** BankUnited
**Chief Restructuring Officer,** LP Watch Group
**Chief Restructuring Officer,** Clore Automotive

## FIDUCIARY EXPERIENCE

Key strengths include seasoned leadership and decision making skills to assess situations, chart a course of action to develop plans, implement restructuring plans and related strategies in complex and distressed business situations, in consultation with key constituents, while under time constraints and financial pressures.  This includes presentations to lenders, creditor's committees, key stakeholders and at times includes complex presentations, court testimony, mediation and litigation support for contested hearings / trials when parties disagree on the matter.  Select fiduciary appointments and/or engagements are noted below:

## FIDUCIARY ROLES

**Chapter 11 Trustee,** Prestige Motorcar Company
**Chapter 11 Trustee,** Prestige Imports of Thomasville
**Chapter 11 Trustee,** IP of A West Oaks Mall
**Chapter 7 Trustee,** National Gold Exchange, Inc.
**Chapter 7 Trustee,** Abraham D. Gosman
**Chapter 7 Trustee,** Terence and Ramona Havens
**Liquidating Representative,** River City Renaissance LC
**Plan Liquidating Trustee,** Michael D. Vick
**Trustee,** Bernard J. "Bernie" Ebbers
**Receiver,** J Weinstein & Sons
**Receiver,** Promenade at Doral, Inc.
**Receiver,** Orchid Grove, Inc.
**Receiver,** TMC Marketing, Inc.
**Receiver,** Bench Ads of Plantation

## EDUCATION

**Bachelor of Science in Accounting,** FLORIDA ATLANTIC UNIVERSITY 1983

## COMMUNITY INVOLVEMENT

**Board Member, Friends of WLRN** (Public Radio and Television)
Director 2009 - 2013, Treasurer 2011 and Vice Chairman 2012

**Florida's Singing Sons Boy Choir -** Director 2002 to 2010, President 2008-2009

**Habitat for Humanity -** Volunteer and coordinator of group participation 2008 - 2010

## PROFESSIONAL AFFILIATIONS/MEMBERSHIPS

American Bankruptcy Institute
Turnaround Management Association
Bankruptcy Bar Association of the Southern District of Florida

## PUBLISHED ARTICLES

"This Is a Good Time for Law Firms to Grow, But They Probably Won't Do It Right", *Daily Business Review*, October 12, 2016.

"Series of Poor Choices:  How Puerto Rico Moves Forward With or Without Chapter 9", *Daily Business Review*, February 8, 2016.

"Is filing for Chapter 11 bankruptcy a sword or a shield?" *Miami Herald*, November 2, 2015.

"Bankruptcy Trustee Must Balance Swinging for Home Run Versus Striking Out", *Daily Business Review*, August 21, 2013.

"Bad News at the Mall! - Thoughts and perspectives from a workout guy on buying, selling and owning a distressed shopping mall", Information Management Network Panel, September, 2008.

## SPEAKING ENGAGEMENTS

Panel:  "Revival of the Buffalo, Bring Back the Chapter 11 Cases"
Sponsored by the Florida Turnaround Management Association – Fort Lauderdale, Florida 2016

Panel:  "Tools in the Turnaround Arsenal – Is Chapter 11 a Viable Tool?"
Sponsored by Florida Turnaround Management Association - Orlando, Florida, 2014

Panel:  "Bank Holding Companies Financial Pane"
American Bankruptcy Institute Caribbean Conference - Boca Raton, Florida 2010

Panel:  "Turnarounds that Work"
Sponsored by Florida Turnaround Management Association - Orlando, Florida 2012

Panel:  "White Collar Crime and Business Bankruptcy – Moderated a panel on Evidentiary,
          Procedural and Administrative Concerns:  So Many Opportunities to Grease, or Muck
          up the Gears."
American Bar Association Business Law Section
Committees on Business Bankruptcy, White Collar Crime and Bankruptcy Courts Insolvency
 San Francisco, California November 2011

Panel:  "Workout Dealmakers' Panel:  A Discussion On Project Level Defaults, Bankruptcies &
          Workouts"
Information Management Network – Chicago, Illinois 2008

Presentation:  "What were they thinking?  Achieve success by learning from the mistakes of
              others."
The Association for Corporate Growth Kansas City Chapter – May 12, 2006

### SUMMARY OF MAJOR CASES BY INDUSTRY AND RESPONSIBILITY

**Aviation**                    Polar Air Cargo - Chapter 11 Committee Advisor

A Contractor of an International Freight Carrier - Advisor

Pan Am Airways Corp. (Florida) – Post-Confirmation CEO

National Airlines, Inc. – Chapter 11 Committee Advisor

International Air Leases – Financial Advisor

Fine Air Services Corp. – Chapter 11 Committee Advisor

Kitty Hawk International, Inc. – Indenture Trustee Advisor

**Automotive /**                Prestige Imports of Thomasville, Inc. – Trustee - Chapter 11

  **Car Dealership**       Prestige Motorcar Gallery, Inc. – Trustee - Chapter 11

Lighthouse Imports, LLC – CRO Chapter 11

**Banking / Finance**           BankUnited Financial Corporation – CRO in Chapter 11

Southeast Banking Corporation – Chapter 7 Advisor

Florida Park Banks, Inc. – Chapter 7 Advisor

BankVest Capital Corp. – Restructuring Consulting

Prime Capital Leasing, Inc. – Consulting / Assignment

**Distribution /**              Star Computer Group, Inc. – Chapter 11 – Committee Advisor

  **Supply Chain**        J. Weinstein & Sons, Inc. – Receiver – Financial Advisor

MD Distributors, Inc. – Financial Advisor

KLLM Trucking – Director / Trustee

Clore Automotive, LLC – Chief Restructuring Officer

Pioneer Shipping – Financial Advisor to Lender

Cummins Utility Supply – Chapter 11 Advisor

Tie Communications, Inc. – Chapter 11 Advisor

Healthco International, Inc. - Chapter 7 Advisor

Arius, Inc. – Chapter 7 Advisor

|  | Haines Food Services of Florida – Chapter 11 Advisor |
| **Financial Investigations** | National Gold Exchange – Chapter 7 Trustee |
|  | Dreier, LLP – Financial Advisor |
|  | Abraham D. Gosman – Chapter 7 Trustee |
|  | Sheffield Industries, Inc. – Assisted Examiner |
|  | Premium Inc. – Assisted Trustee |
|  | TMC Marketing, Inc. – Receiver |
|  | Speed Indoor Racing – Interim CFO |
| **Franchise /** | Gold Coast Restaurants – Chapter 11 Advisor |
| **Restaurant Operations** | Cooker Restaurants Corporation – Chapter 11 Advisor |
|  | Phoenix Restaurant Group, Inc. – Restructuring Advisor |
|  | Wendy's of Sarasota – Chapter 11 Trustee Advisor |
|  | Wendcoast of Florida – Chapter 11 Restructuring Advisor |
|  | Mid Florida Yogurt (TCBY) – Chapter 11 Trustee Advisor |
|  | Jamfro, Inc. (Burger King) – Restructuring Advisor |
| **Food Service /** | Caribbean Farming – Secured Lender Advisor |
| **Spirits Industry** | Blue Ribbon Meats, Inc. – Assignment / Assignee |
|  | Pittsburgh Food and Beverage – Advisor to Receiver |
|  | Angostura Spirits and Wine – Assignment / Assignee |
|  | Panache Beverage Inc. and Panache Distillery, Inc. - Assignee |
| **Healthcare** | Gosman Estate – Assisted Living Facilities – Chapter 7 Trustee |
|  | HNI Holdco (fka Medical Staffing) – Plan Administrator |
|  | MedidaMetrics, Inc. – Assignment / Assignee |
| **High Net-Worth** | Terence and Ramona Havens – Chapter 7 Trustee |
| **Individuals** | Abraham D. Gosman – Chapter 7 Trustee |
|  | Bernard J. Ebbers – Trustee |

|  | Burt Reynolds – Post Confirmation Trustee |
|---|---|
|  | Michael D. Vick – Liquidating Trustee |
|  | High Net-Worth Business Owner – Financial Advisor |
|  | High Net-Worth Real Estate Investor – Financial Advisor |
| **Law Firms** | Ruden McClosky, P.A. – CRO – Chapter 11 |
|  | Dewey & LeBoeuf, LLP – Financial Advisor |
|  | Rothstein Rosenfeldt Adler P.A. – Collateral Monitor |
|  | Dreier, LLP – Financial Advisor |
|  | Coudert Brothers, LLP – Plan Administrator |
|  | Keck, Mahn & Cate – Financial Advisor |
|  | Binder & Binder – Chapter 11 - Financial Advisor |
| **Manufacturing** | Private Construction Company – Financial Advisor |
|  | Columbus Lumber - Trustee |
|  | PAC Holdings – Secured Lender Advisor |
|  | Vaughn Furniture – Financial Advisor |
|  | Acushnet Rubber Company, Inc. – Restructuring Advisor |
|  | Reliant Building Products, Inc. – Chapter 11 Advisor |
|  | ABC-Naco, Inc. – Restructuring Advisor |
|  | Briskin Manufacturing, Inc. – Assignment |
|  | Touché Manufacturing – Chapter 11 Trustee Advisor |
|  | Stardust Cruisers – Restructuring Advisor |
|  | Gencor Industries, Inc. – Financial Advisor |
|  | Crafts Precision Industries – Chapter 11 Advisor |
|  | Summit Plastics – Chapter 11 Restructuring Advisor |
|  | Miller Building Corporation – Financial Advisor |

| | |
|---|---|
| **Media / Telephone** | Cordia Communications – CRO – Chapter 11 |
| **Radio / Television** | Tube Media Corp. – Consulting Advisor |
| | Campus U / Campus Tech – Assignment / Assignee |
| | Elantic Telecom – Chapter 11 Advisor |
| | Telenoticias, LLC – Post-Confirmation Plan Trustee |
| | Bench Ads of Plantation – Receiver |
| | Marpin Telecom – Lender Advisor |
| | Cape Cod Broadcasting - Receivership |
| | Krypton Broadcasting of Birmingham, Inc. – Post - Confirmation Plan Trustee |
| | Delta Cablevision Systems - Receivership |
| | MDS Associates - Receivership |
| **Printing and Publishing** | Paradise Press, Inc. – Financial Advisor |
| | 3DFX Interactive, Inc. – Chapter 11 Advisor |
| | National Lithographers, Inc. – Assignee |
| | Princeton Publishing Co – Assignment |
| **Real Estate** | River City Renaissance, LC – Responsible Party |
| | Newport Operating Corp. – Assignee |
| | Soleil Lake Condo Holdings – Receiver |
| | Kevin, LLC – Receiver |
| | Orchid Grove LLC - Receiver |
| | Merrill Stevens Dry Dock Company – Financial Advisor |
| | Ebbers Asset Trust - Trustee |
| | Promenade at Doral, II LLC - Receiver |
| | Westholme Partners – Advisor to the Receiver |
| | Southeast Banking Corporation – Advisor to the Chapter 7 Trustee |
| | Abraham D. Gosman – Chapter 7 Trustee |

|  | Angelina Plantation – Trustee |
|  | Caribbean Farming LTD – Secured Lender Advisor |
|  | Coccoloba Beach Resort – Secured Lender Advisor |
| **Retail** | Star Computer Group, Inc.- Chapter 11 Committee Advisor |
|  | HearUSA, Inc. – CRO – Chapter 11 |
|  | LP Watch Group, Inc. – CRO – Chapter 11 |
|  | Fantasi International Corp – Assignment / Assignee |
|  | IP of A West Oaks Mall – Chapter 11 Trustee |
|  | Duty Free Stores – Lender Advisor |
|  | Farm Stores, Inc. – Chapter 11 Advisor Debtor |
|  | Linen Supermarkets, Inc. – Chapter 11 Advisor Lender |
|  | Standard Brands of America, Inc. – Advisor to Receiver |
|  | KidSource, Inc. – Assignment/Assignee |
|  | Porch & Patio – Restructuring Advisor |