## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

|  |  |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

### DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING (1) THE CONTINUED USE OF EXISTING BUSINESS FORMS AND RECORDS; (2) THE MAINTENANCE OF EXISTING CORPORATE BANK ACCOUNTS; (3) THE CONTINUED USE OF THE EXISTING CASH MANAGEMENT SYSTEM; AND (4) THE WAIVER OF CERTAIN INVESTMENT AND DEPOSIT GUIDELINES

### (Emergency Hearing Requested)

### Statement of Exigent Circumstances

Pursuant to Local Rule 9013-1(F), the Debtors respectfully request that the Court conduct a hearing on the Motion on or before Tuesday, August 7, 2018.  The Debtors maintain a number of bank accounts that are critical to maximizing the value of the Debtors' estates.  The United States Trustee Guidelines require the closing of all prepetition bank accounts and the establishment of new DIP accounts.  Changing the Debtors' existing bank accounts would severely disrupt and potentially cripple the Debtors' cash management system, adversely affect the Debtors' business, and jeopardize their ability to collect significant receivables.  Heightening the exigency, the Debtors' banks are refusing to accept inbound ACH transactions, cutting off the Debtors' collection of MCAs.  Similarly, compliance with the investment guidelines under section 345 of the Bankruptcy Code would disrupt the Debtors' Cash Management System.  Accordingly, the Debtors reasonably believe that a hearing to consider the relief requested must be held as soon as the Court's calendar will permit.

The above-captioned debtors and debtors-in-possession (the "Debtors"), hereby move

this Court, pursuant to sections 105, 345, 363, 364, 553, 1107 and 1108 of title 11 of the United

---

[1]The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  1 Global Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).

States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"), Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 9013-1(J) and 9075-1 of the Local Rules of this Court (the "<u>Local Rules</u>"), for an interim order, substantially in the form attached as <u>Exhibit "A"</u> hereto (the "<u>Proposed Order</u>"), and a final order (a) authorizing, but not directing (i) the Debtors' continued use of existing business forms and records; (ii) the Debtors' maintenance of existing corporate bank accounts; and (iii) the continued use of the Debtors' existing Cash Management System; (b) waiving certain of the investment and deposit guidelines promulgated by the Office of the United States Trustee (the "<u>Guidelines</u>") and under section 345 of the Bankruptcy Code; and (c) providing any additional relief as is necessary to effectuate the foregoing.   In support of this motion (the "<u>Motion</u>"), the Debtors rely on the *Expedited Motion of the Debtors for Entry of an* Ex Parte *Order Scheduling a Status Conference* [ECF No. 6] and the *Chapter 11 Case Management Summary* (the "<u>Case Management Summary</u>") [ECF No. 8].   In further support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction, Venue and Predicates for Relief

1.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

2.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The predicates for the relief sought herein are sections 105(a), 363, 364, 553, 1107 and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004(h), and Local Rules 9013-1(J) and 9075-1.

## Background

**A.    Procedural and General Factual Background**

4.    On July 27, 2018 (the "Petition Date"), the Debtors commenced these cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Court").

5.    The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in these Chapter 11 Cases.

7.    The Debtors provide direct financing to small businesses across the U.S., specializing in unsecured, short-term commercial financing and merchant cash advances ("MCAs").  The Debtors' business operations are funded through private, short-term loans, which are invested in the MCAs and other funding products offered to the Debtors' customers.

8.    As a result of business and legal issues discussed in greater detail in the Case Management Summary, the Debtors were forced to file these Chapter 11 Cases on an exigent basis in order to address an imminent liquidity crisis and to preserve their assets and business operations for the benefit of the individual lenders and all other parties in interest.

**B.    The Debtors' Bank Accounts and Cash Management System**[2]

9.      Before the commencement of their Chapter 11 Cases, and in the ordinary course of business, the Debtors implemented a cash management system (the "Cash Management System").  As detailed on Exhibit "B" hereto, the Cash Management System is comprised of seven active accounts at Bridge Bank,[3] three active accounts at First Premier Bank,[4] and one active account at City National Bank (collectively, the "Bank Accounts").[5]

10.      MCAs constitute the majority of the assets of the Debtors' estates.  The Debtors receive cash daily through collections related to the repayment of MCAs.  In many instances, these collections are automatically deposited into the Debtors' existing Bank Accounts.

11.      More specifically, certain of the Debtors' customers remit payments through daily auto debits that are transacted through a third party, ACHWorks, and executed directly by First Premier Bank.  The auto debits collected through ACHWorks are deposited into the Bridge Bank Customer Pay account numbered x6313 and the auto debits collected through First Premier Bank are deposited into the First Premier Operating account numbered x1356.  Any account balance in excess of $1,000,000 in the First Premier Operating account numbered x1356 is manually transferred to the First Premier Customer Pay account numbered x2223 at the end of each business day.    Additionally, the Debtors collect non-recurring payments from customers

---

[2] Shortly after the Petition Date, the Debtors closed their accounts with City National Bank through which incoming funds from the Debtors' investors were deposited.  Such accounts are not the subject of the instant Motion and will remain closed in order to ensure that the Debtors do not receive any new loans or incur additional liabilities in this regard.

[3] The Bridge Bank accounts and the last four digits of each include: Checking Account numbered x3270; Customer Pay Account numbered x6313; Money Market Account numbered x2967; Analyzed Checking Account numbered x1605; Lender Payout Account numbered x0356; ACH Reserve Account numbered x6253; and Credit Card Reserve Account numbered x8939.

[4] The First Premier Bank accounts and the last four digits of each include: Operating Account numbered x1356; Customer Pay Account numbered x2223; and ACH Reserve Account numbered x1590.

[5] The City National Bank account and the last four digits thereof is: ACH Credit Reserve Account numbered x7261.

experiencing repayment difficulties and "split payments" from credit card processors for restaurant customers, both of which are deposited into Bridge Bank Customer Pay account numbered x6313.

12.    Any change in the Debtors' above-described collection accounts may have a significant negative effect on the Debtors' ability to collect on the customer receivables that constitute the vast majority of the assets of these estates.   In addition to the distraction to management and administrative burden attendant to a major change in the collection system, the Debtors believe that actual collections will be negatively affected during and as a result of any change in practices, particularly as to customers who are aware of these Chapter 11 proceedings.

13.    Heightening this concern and the exigency of this Motion, the Debtors' banks are refusing to accept inbound ACH transactions.  This refusal is cutting off the Debtors' ability to collect on the MCAs and denying them access to property of their estates.  The relief requested in this Motion is necessary to ensure that the Debtors' banks will resume accepting inbound ACH transactions and that the Debtors are able to collect payments on the MCAs.

14.    The Debtors also utilize certain other accounts in the operation of their business. The Debtors' rent, payroll and operational disbursements were historically made from the Bridge Bank Checking account numbered x3270, a zero-balance account.   Upon the filing of these Chapter 11 Cases, the Debtors became aware of a discrepancy in the Bridge Bank's records as to who is listed as the owner of this account.  Pending resolution of such issue, the Debtors will not further utilize this account for any purposes.  There is no current balance in this account.

15.    Larger, infrequent disbursements by the Debtors, such as payments to professionals, were historically made from the Bridge Bank Analyzed Checking account numbered x1605.  There is no discrepancy in Bridge Bank's records regarding ownership of this

account, and the Debtors intend to utilize this account for general postpetition operational payments going forward.

16.    MCA disbursements were historically made from the First Premier Customer Pay account numbered x2223.

17.    The Money Market account at Bridge Bank is used for excess funds not required for operations in the short term, is interest bearing, and has minimal activity.

18.    The Debtors have four restricted cash accounts that are used as collateral for ACH collections and credit cards that maintain stagnant balances.[6]  The Debtors currently are not seeking to utilize cash from these restricted accounts.

19.    Payments to lenders were historically disbursed from the Bridge Bank Lender Payment account numbered x0356, a zero balance account funded by the Bridge Bank Customer pay account numbered x6313.  The Debtors have ceased any such disbursements to their lenders.

20.    The Debtors' transition into Chapter 11 will be significantly less disruptive if the Bank Accounts are maintained following the commencement of the Chapter 11 Cases with the same account numbers and, where applicable, automated relationship.  The Debtors further request authority to deposit funds in and withdraw funds from all such accounts postpetition, subject to the same access rights and limitations existing prior to the Petition Date, including, but not limited to, checks, wire transfers, ACH, electronic funds transfers and other debits and to treat the Bank Accounts for all purposes as debtor-in-possession accounts.

21.    Bridge Bank and First Premier Bank are currently not included among the Region 21 authorized depositories.  The Debtors will work with these banks and the Office of the United

---

[6] These accounts include the Bridge Bank ACH Reserve account numbered x6253 and Credit Card Reserve account numbered x8939; the First Premier ACH Reserve account numbered x1590; and City National Bank ACH Credit Reserve account numbered x7261.

States trustee to obtain such authorization for purposes of these Chapter 11 Cases. In the event such authorization is ultimately not obtained, the Debtors will seek further relief from this Court.

**C.      Existing Business Forms and Checks**

22.      In the ordinary course of business, the Debtors use pre-printed check stock with the Debtors' name printed thereon. In addition, the Debtors maintain pre-printed correspondence and business forms, including, but not limited to, letterhead, envelopes, promotional materials and other business forms (collectively, along with the Debtor's checks, the "Business Forms"). To minimize administrative expense and delay, the Debtors request authority to continue to use their Business Forms substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' "debtor-in-possession" status.

<u>**Relief Requested**</u>

23.      By this Motion, the Debtors seek interim and final orders (a) authorizing, but not directing (i) the Debtors' continued use of existing business forms and records; (ii) the Debtors' maintenance of existing corporate bank accounts; and (iii) the continued use of the Debtors' existing Cash Management System; (b) waiving certain of the investment and deposit guidelines promulgated by the Guidelines and under section 345 of the Bankruptcy Code; and (c) providing any additional relief as is necessary to effectuate the foregoing.

<u>**Basis for Relief Requested**</u>

**A.      Cash Management System**

24.      The continued use of a cash management system employed in the ordinary course of a debtor's prepetition business has been approved as a routine matter in a number of other cases in this District. *See, e.g.*, *In re Adinath Corp.*, No. 15-16885-LMI (Bankr. S.D. Fla. May 11, 2015); *In re Florida Gaming Centers, Inc.*, No. 13-29597-RAM (Bankr. S.D. Fla. Oct. 7, 2013); *In re Realauction.com, LLC*, No. 13-28260 (Bankr. S.D. Fla. Sept. 19, 2013); *In re TLO,*

*LLC*, No. 13-20853-PGH (Bankr. S.D. Fla. June 13, 2013); *In re HearUSA, Inc.*, No. 11-23341-EPK (Bankr. S.D. Fla. May 16, 2011).  Courts have recognized that strict enforcement of the bank account closure requirements in certain cases does not serve the purposes of chapter 11. Accordingly, courts have waived such requirements and replaced them with alternative procedures that provide the same protections.  *See, e.g.*, *In re TLO, LLC*, No. 13-20853-PGH (Bankr. S.D. Fla. June 13, 2013) (permitting debtors to maintain existing bank accounts and cash management system); *In re HearUSA, Inc.*, No. 11-23341-EPK (Bankr. S.D. Fla. May 16, 2011) (same).

25.     Courts have long recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).  The Courts of Appeal have recognized the efficiencies to be reaped by maintaining a debtor's prepetition cash management system. *See, e.g.*, *Columbia Gas*, 997 F.2d at 1061 (emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient"); *In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

26.     Further, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process or judgment that is necessary to carry out the provisions of this title" and section 363(c)(1) of the Bankruptcy Code authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. §§ 105(a), 363(c)(1).  The purpose of these sections is to provide a debtor-in-possession with the flexibility

to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court.  *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997).

27.    The Debtors' Cash Management System constitutes a customary and essential business practice that was created and implemented by the Debtors in the exercise of their business judgment.  The Cash Management System is a practical and critical mechanism that allows the Debtors to transfer their revenues to the payment of their obligations, which decreases the burdens on the Debtors, and that provides several important benefits, including the ability to: (a) control and monitor corporate funds; (b) ensure cash availability and (c) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate balance and presentment information.  All of these benefits will assist the Debtors in their efforts to maintain their operations during the Chapter 11 Cases.

## B.    The Debtors Should be Permitted to Maintain Bank Accounts

28.    As previously discussed, the Debtors maintain a total of eleven (11) Bank Accounts and conduct numerous financial transactions utilizing these Bank Accounts.  It would cause an enormous amount of disruption to force the Debtors to open new bank accounts and close the existing Bank Accounts.  Such disruption would provide no benefit to the Debtors' estates and would likely result in havoc for the Debtors' Cash Management System and significant harm to the Debtors' ability to collect on the receivables that constitute the main asset of these estates.  Thus, the Debtors should be authorized, but not directed, to continue to fund their business and operations by payments made from the Bank Accounts (with the exception of

Bridge Bank Checking account numbered x3270), and should be exempt from certain of the Guidelines established by the United States Trustee for the Southern District of Florida. [7]

29.    As part of the requested relief, the Debtors also seek a waiver of the requirement to establish specific bank accounts for tax payments.  The Debtors believe that tax obligations can be paid most efficiently out of the existing Bank Accounts, that the United States Trustee can adequately monitor the flow of funds into, among and out of the Bank Accounts, and that the creation of new debtor-in-possession accounts designated solely for tax obligations would be unnecessary and inefficient.

30.    Moreover, if the Debtors were forced to close their Bank Accounts, the Debtors expect that there would be disruption and confusion that would negatively impact their operations.  For instance, funds may be deposited into the wrong account, misapplied, held in limbo or otherwise delayed, thus negatively affecting the Debtors' relationships with merchants and other parties who are necessary to the Debtors' efforts and who already may be burdened by the filing of these Chapter 11 Cases.  As a result, the Debtors submit that maintenance of the existing Bank Accounts and Cash Management System is warranted.

31.    Subject to section 553 of the Bankruptcy Code, all banks that maintain the Bank Accounts should be prohibited from offsetting, affecting, freezing or otherwise impeding the Debtors' use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim (as defined in section 101(5) of the Bankruptcy Code) of any such bank against the Debtors that arose before the Petition Date, absent further order of the Court.

---

[7]  The Guidelines were issued in order to assist the U.S. Trustee in supervising the administration of chapter 11 cases.  Such Guidelines require chapter 11 debtors to, among other things, unless the Court requires otherwise:

    a.  Close all existing bank accounts and open new accounts which must be designated debtor-in-possession bank accounts;

    b.  Establish and maintain separate debtor-in-possession accounts for the payment of taxes and separate debtor-in-possession accounts for cash collateral; and

    c.  Obtain and utilize new checks for all debtor-in-possession accounts which bear the designation "Debtor-in-Possession" and contain certain other information related to the chapter 11 case.

**C.    The Debtors Should be Permitted to
Continue Using Existing Business Forms**

32.    The Debtors request that this Court authorize, but not direct, them to use all correspondence and Business Forms existing immediately before the Petition Date without reference to the Debtors' status as "debtors-in-possession."  As of the Petition Date, the Debtors have stock of Business Forms that they use in the ordinary course of business.  Reprinting their Business Forms to indicate that the Debtors are "debtors-in-possession" would impose an unnecessary burden and expense on the Debtors.  There is little doubt that the parties with whom the Debtors do business shortly will become aware that they are chapter 11 debtors-in-possession.  In the event the Debtors exhaust their existing stock of Business Forms before the conclusion of these Chapter 11 Cases, the Debtors will add such "debtor-in-possession" designation to any checks that they obtain or create postpetition.

<u>**Bankruptcy Rule 6003 is Satisfied and Request for Waiver of Stay**</u>

33.    The Debtors further submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

34.    Specifically, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001 . . . .

Fed. R. Bankr. P. 6003.

35.     The Eleventh Circuit Court of Appeals has interpreted the "irreparable harm" language in the context of preliminary injunctions.  In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir.1983) (citing *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981)).  Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See*, *e.g.*, *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

36.     The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors' during these Chapter 11 Cases.

37.     Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

## <u>Conclusion</u>

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and granting such other and further relief as is just and proper.

Dated:  August 3, 2018                              GREENBERG TRAURIG, LLP

                                                                     */s/ John R. Dodd*
                                                                     Mark D. Bloom
                                                                     Fla. Bar No. 303836
                                                                     bloomm@gtlaw.com

                                                                     Paul J. Keenan Jr.
                                                                     Fla. Bar No. 0594687
                                                                     keenanp@gtlaw.com

                                                                     John R. Dodd
                                                                     Fla. Bar No. 38091
                                                                     doddj@gtlaw.com

                                                                     333 S.E. 2nd Avenue, Suite 4400
                                                                     Miami, Florida 33131
                                                                     Tel: 305-579-0500
                                                                     Fax: (305) 579-0717

                                                                     *Proposed Counsel for the Debtors
                                                                     and Debtors-in-Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[8] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

**INTERIM ORDER (A) AUTHORIZING (I) THE MAINTENANCE OF BANK ACCOUNTS AND CONTINUED USE OF EXISTING BUSINESS FORMS AND CHECKS, (B) THE CONTINUED USE OF THE EXISTING CASH MANAGEMENT SYSTEM, AND (C) WAIVING CERTAIN INVESTMENT AND DEPOSIT GUIDELINES**

Upon the motion (the "Motion")[9] [ECF No. ___] filed by the above-captioned debtors

and debtors-in-possession (the "Debtors") seeking entry of interim and final orders: (a)

---

[8]    The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  1 Global Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).

[9]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

authorizing, but not directing (i) the Debtors' continued use of existing business forms and records; (ii) the Debtors' maintenance of existing corporate bank accounts; and (iii) the continued use of the Debtors' existing Cash Management System; (b) waiving certain of the investment and deposit guidelines promulgated by the Office of the United States Trustee (the "Guidelines") and under section 345 of the Bankruptcy Code; and (c) providing any additional relief as is necessary to effectuate the foregoing; and upon the *Chapter 11 Case Management Summary* (the "Case Management Summary") [ECF No. 8]; and upon the statements of counsel in support of the relief requested in the Motion at the hearing before the Court; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.    For the reasons set forth on the record, the Motion is GRANTED, as set forth herein, on an interim basis, *nunc pro tunc* to the Petition Date.

2.    The Debtors are authorized, but not directed, to maintain and use their Cash Management System, as more fully set forth in the Motion.

3.    The Debtors are authorized, but not directed, to maintain and use the existing Bank Accounts in the name and with the account numbers existing immediately before the Petition Date.

4.    The deadline by which objections to the Motion and the final order must be filed is _____, 2018 at _:___ __.m. (Prevailing Eastern Time).  A final hearing (the "<u>Final Hearing</u>") to consider the relief requested in the Motion, if required, will be held on _____, 2018 at _:___ __.m. (Prevailing Eastern Time).  If no objections are filed to the Motion, the Court may enter the final order without further notice or hearing.

5.    The requirement in the Guidelines that the Debtors (i) close all existing bank accounts and open new DIP bank accounts in certain financial institutions designated as authorized depositories by the U.S. Trustee, (ii) establish one DIP account for all estate monies required for the payment of taxes (including payroll taxes), (iii) maintain a separate DIP account for cash collateral, (iv) obtain checks for all DIP accounts that bear the designation, "debtor-in-possession," the bankruptcy case number, and the type of account, and (v) close their books and records as of the petition date and to open new books and records are hereby excused pending a final hearing.  The requirements provided in 11 U.S.C. § 345(b) are hereby waived as to the Bank Accounts for an interim period of sixty (60) days, without prejudice to the Debtors' rights to seek further waivers from the U.S. Trustee without further Order of this Court.  The Debtors shall continue, pending such final hearing, to work with the Office of the United States Trustee for the Southern District of Florida to address the issues set forth herein, and otherwise comply with the Guidelines.

6.    The Debtors are authorized, but not directed, to deposit funds in and withdraw funds from their Bank Accounts by all usual means, subject to the same access rights and limitations existing prior to the Petition Date, including, but not limited to, checks, wire transfers, automated clearinghouse transfers, electronic funds transfers and other debits and to treat the Bank Accounts for all purposes as debtor-in-possession accounts.

7.     The Debtors are authorized, but not directed, to continue to use their checks, correspondence and Business Forms including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, and other business forms, substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' debtor-in-possession status, provided that the Debtors will add the "debtor-in-possession" designation to any new checks that they obtain or create postpetition.

8.     Bridge Bank, First Premier Bank, City National Bank, and any and all other financial institutions receiving or transferring funds from the Debtors are hereby authorized and directed to continue to service and administer the Bank Accounts of the Debtors as a debtors-in-possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks, drafts, wires or ACH transfers drawn on the Bank Accounts by the holders or makers thereof.

9.     The Debtors shall retain the authority to close or otherwise modify certain of their Bank Accounts and open new debtor-in-possession accounts, or otherwise make changes to their Cash Management System as they deem necessary to facilitate the Chapter 11 Cases and operations, or as may be necessary to comply with the requirements of any debtor-in-possession financing facility or cash collateral usage approved by this Court.  In the event that the Debtors open any additional or close any current or additional Bank Accounts, such opening or closing shall be timely indicated on the Debtors' monthly operating reports or notice of such opening or closing shall otherwise be timely provided to the Office of the United States Trustee for the Southern District of Florida.

10.    Subject to section 553 of the Bankruptcy Code, all banks that maintain the Bank Accounts are prohibited from offsetting, affecting, freezing or otherwise impeding the Debtors'

use of any funds in the Bank Accounts on account of, or by reason of, any claim (as defined in section 101(5) of the Bankruptcy Code) of any such bank against the Debtors that arose before the Petition Date, absent further order of this Court.

11.    In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, recorded properly and distinguished between prepetition and postpetition transactions.

12.    The Debtors are authorized, but not directed, to pay or reimburse any bank fees, claims, costs, expenses or charges associated with the Bank Accounts and arising prior to and after the Petition Date, including, without limitation, (i) service charges or fees; (ii) checks deposited with the banks which have been dishonored or returned for insufficient funds; and (iii) any reimbursement or other payment obligations, such as overdrafts, arising under the terms of any prepetition agreement existing between the Debtors and each bank (collectively, the "Bank Account Claims" and the banks in which the Debtors maintain the Bank Accounts, the "Banks").  In the course of maintaining any of the Bank Accounts for the Debtors, the Banks are authorized, without further Order of this Court, to continue to deduct from the appropriate Bank Accounts, the Bank Account Claims incurred in connection with the Bank Accounts.

13.    This Order shall apply to any and all Bank Accounts actually in, or linked to, the Cash Management System, even if such Bank Accounts do not appear on the list in the Motion.  Any and all accounts opened by the Debtors on or after the Petition Date at any Bank shall be deemed a Bank Account (as if it had been opened prior to the Petition Date and listed on Exhibit B to the Motion) and any and all Banks at which such accounts are opened shall similarly be subject to the rights and obligations of this Order.

14.     The Debtors are authorized to request the Banks, and the Banks are authorized and directed to accept and honor all representations from the Debtors, as to which checks, drafts, wires or ACH transfers should be honored or dishonored whether the Banks believe the payment is or is not consistent with the order(s) of this Court and governing law, and whether such checks, drafts, wires or ACH transfers are dated or made prior to, on or subsequent to the Petition Date.

15.     Notwithstanding any provision of this Order to the contrary, the Banks will not be liable to any party on account of (a) following the Debtors' instructions or representations as to any check or other item that may be honored or as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

16.     Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

17.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

19.     This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

###

Submitted by:

Mark D. Bloom
bloomm@gtlaw.com

Paul J. Keenan, Jr.
keenanp@gtlaw.com
John R. Dodd
doddj@gtlaw.com
333 S.E. 2nd Avenue
Suite 4400
Miami, FL 33131
Telephone: 305-579-0500
Facsimile: 305-579-0717

*(Mr. Dodd is directed to serve a conformed copy of this Order on interested parties and file a certificate of service.)*

**Exhibit B**

**Debtors' Bank Accounts**

| Bank | Address | Account Representative | Account Name | Last Four Digits of Account Number | Notes | Account Balance as of Petition Date | Restricted Amount | Unrestricted Amount |
|------|---------|----------------------|--------------|-----------------------------------|-------|-------------------------------------|-------------------|---------------------|
| Bridge Bank | 55 Almaden Blvd., Suite 100, San Jose, CA 95113 | Manju Kamboj | Checking | x3270 | See Motion ¶15 | $0.00 | N/A | N/A |
| Bridge Bank | 55 Almaden Blvd., Suite 100, San Jose, CA 95113 | Manju Kamboj | Customer Pay | x6313 | Customer collections account | $1,004,420.88 | N/A | $1,004,420.88 |
| Bridge Bank | 55 Almaden Blvd., Suite 100, San Jose, CA 95113 | Manju Kamboj | Money Market | x2967 | Interest earning; minimal activity | $10,522,107.27 | N/A | $10,522,107.27 |
| Bridge Bank | 55 Almaden Blvd., Suite 100, San Jose, CA 95113 | Manju Kamboj | Analyzed Checking | x1605 | Operations account; see Motion ¶16 | $190,000.00 | N/A | $190,000.00 |
| Bridge Bank | 55 Almaden Blvd., Suite 100, San Jose, CA 95113 | Manju Kamboj | Lender Payouts | x0356 | See Motion ¶20 | $0.00 | N/A | N/A |
| Bridge Bank | 55 Almaden Blvd., Suite 100, San Jose, CA 95113 | Manju Kamboj | ACH Reserve | x6253 | Restricted cash/collateral account for ACHWorks | $2,253,108.41 | ($2,250,000) | $3,108.41 |
| Bridge Bank | 55 Almaden Blvd., Suite 100, San Jose, CA 95113 | Manju Kamboj | Credit Card Reserve | x8939 | Restricted cash/collateral account for credit cards | $110,103.56 | ($110,000) | $103.56 |
| City National | 5900 N. | David Jackson | ACH Credit | x7261 | Restricted | $100,000.00 | ($100,000) | $0.00 |

| Bank | Address | Account Representative | Account Name | Last Four Digits of Account Number | Notes | Account Balance as of Petition Date | Restricted Amount | Unrestricted Amount |
|---|---|---|---|---|---|---|---|---|
| Bank | Andrews Ave., Suite 850, Fort Lauderdale, FL 33309 | | Reserve | | | | | |
| First Premier Bank | 400 S. Sycamore Ave., Suite 102, Sioux Falls, SD 57110 | Errin Frankman | Operating | x1356 | $1 million reserve; funded daily from new customer accounts' ACH; excess balance over $1 million transferred to account x2223 each day | $1,000,000.00 | ($1,000,000) | $0.00 |
| First Premier Bank | 400 S. Sycamore Ave., Suite 102, Sioux Falls, SD 57110 | Errin Frankman | Customer Pay | x2223 | Merchant funding account; funded by account number x1356 | $2,149,278.59 | N/A | $2,149,278.59 |
| First Premier Bank | 400 S. Sycamore Ave., Suite 102, Sioux Falls, SD 57110 | Errin Frankman | ACH Reserve | x1590 | Restricted cash/collateral account for ACH collections | $115,000.00 | ($115,000) | $0.00 |

2