**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JOSEPH J. LUZINSKI IN SUPPORT OF THE DEBTORS'
EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING (1) THE
CONTINUED USE OF EXISTING BUSINESS FORMS AND RECORDS; (2) THE
MAINTENANCE OF EXISTING CORPORATE BANK ACCOUNTS; (3) THE
CONTINUED USE OF THE EXISTING CASH MANAGEMENT SYSTEM;
AND (4) THE WAIVER OF CERTAIN INVESTMENT AND DEPOSIT GUIDELINES**

I, Joseph J. Luzinski, hereby declare as follows:

1.     I am a Senior Managing Director with Development Specialists, Inc. ("DSI"), a leading provider of management consulting and financial advisory services that maintains an office at 500 West Cypress Creek Road, Suite 400, Ft. Lauderdale, Florida 33309.  DSI has been retained by the above-captioned debtors and debtors-in-possession (the "Debtors") to provide financial advisory services, which retention will be presented for this Court's approval in the coming days.

2.     As a Senior Managing Director with DSI, I have advised and operated companies across a variety of industries and have served in various executive and fiduciary roles in numerous restructurings and bankruptcies.  I have over 30 years of insolvency, restructuring, crisis management advisory and fiduciary experience.

---

[1]   The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  1 Global Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).

3.      Effective July 27, 2018, I was appointed as the Deputy Chief Restructuring Officer ("Deputy CRO") of the Debtors.   As Deputy CRO, I am authorized to execute this declaration (the "Declaration") on behalf of the Debtors.  I am an individual over the age of 18.  Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein, and if called upon to testify, I would testify competently to all of the facts set forth herein.

4.      I submit this Declaration in connection with the *Debtors' Emergency Motion for Interim and Final Orders Authorizing (1) the Continued Use of Existing Business Forms and Records; (2) the Maintenance of Existing Corporate Bank Accounts; (3) the Continued Use of the Existing Cash Management System; and (4) the Waiver of Certain Investment and Deposit Guidelines* (the "Motion") filed on August 3, 2018 [ECF No. 36].[2]  I have reviewed and am familiar with the Motion and the relief sought therein.

5.      In forming the opinions set forth herein, I have relied upon and/or considered, among other things, the following: (a) my experiences in chapter 11 cases; (b) certain of the Debtors' financial statements and reports; (c) the Motion; (d) discussions with the Debtors' management concerning the Debtors' business and finances; and (e) discussions with other advisors to the Debtors.  I am familiar with the Debtors and their business, as well as the Debtors' activities in these Chapter 11 Cases.

6.      The Debtors' headquarters and primary operations are located in Hallandale Beach, Florida.  Debtor 1 Global Capital LLC ("1 Global") is the primary operating entity.  Debtor 1 West Capital LLC does not have operations outside of California and does not have its own employees.

7.      Before the commencement of their Chapter 11 Cases, and in the ordinary course of business, the Debtors implemented a cash management system (the "Cash Management System").

---

2    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

As detailed on Exhibit "B" to the Motion, the Cash Management System is comprised of seven active accounts at Bridge Bank,[3] three active accounts at First Premier Bank,[4] and one active account at City National Bank (collectively, the "Bank Accounts").[5]

8.    MCAs from customers constitute the majority of the assets of the Debtors' estates. The Debtors receive cash daily through collections related to the repayment of MCAs.  In many instances, these collections are automatically deposited into the Debtors' existing Bank Accounts.

9.    More specifically, certain of the Debtors' customers remit payments through daily auto debits that are transacted through a third party, ACHWorks, and executed directly by First Premier Bank.  The auto debits collected through ACHWorks are deposited into the Bridge Bank Customer Pay account numbered x6313 and the auto debits collected through First Premier Bank are deposited into the First Premier Operating account numbered x1356.  Any account balance in excess of $1,000,000 in the First Premier Operating account numbered x1356 is manually transferred to the First Premier Customer Pay account numbered x2223 at the end of each business day.   Additionally, the Debtors collect non-recurring payments from customers experiencing repayment difficulties and "split payments" from credit card processors for restaurant customers, both of which are deposited into Bridge Bank Customer Pay account numbered x6313.

10.    Any change in the Debtors' above-described collection accounts may have a significant negative effect on the Debtors' ability to collect on MCAs that constitute the majority of the assets of these estates.  In addition to the distraction to management and administrative burden

---

[3]    The Bridge Bank accounts and the last four digits of each include: Checking Account numbered x3270; Customer Pay Account numbered x6313; Money Market Account numbered x2967; Analyzed Checking Account numbered x1605; Lender Payout Account numbered x0356; ACH Reserve Account numbered x6253; and Credit Card Reserve Account numbered x8939.

[4]    The First Premier Bank accounts and the last four digits of each include: Operating Account numbered x1356; Customer Pay Account numbered x2223; and ACH Reserve Account numbered x1590.

[5]    The City National Bank account and the last four digits thereof is: ACH Credit Reserve Account numbered x7261.

attendant to a major change in the collection system, both I and the Debtors believe that actual collections will be negatively affected during and as a result of any change in practices, particularly as to customers who are aware of these Chapter 11 Cases.

11.     Heightening this concern and the exigency of the Motion, the Debtors' banks are refusing to accept inbound ACH transactions.[6]  This refusal is cutting off the Debtors' ability to collect on the MCAs and denying them access to property of their estates.  The relief requested in the Motion is necessary to ensure that the Debtors' banks will resume accepting inbound ACH transactions and that the Debtors are able to collect payments on the MCAs.

12.     The Debtors also utilize certain other accounts in the operation of their business. The Debtors' rent, payroll and operational disbursements were historically made from the Bridge Bank Checking account numbered x3270, a zero-balance account.  Upon the filing of these Chapter 11 Cases, the Debtors became aware of a discrepancy in the Bridge Bank's records as to who is listed as the owner of this account.  Pending resolution of such issue, the Debtors will not further utilize this account for any purposes.  There is no current balance in this account.

13.     MCA disbursements were historically made from the First Premier Customer Pay account numbered x2223.

14.     The Money Market account at Bridge Bank is used for excess funds not required for operations in the short term, is interest bearing, and has minimal activity.

---

[6]     I understand Bridge Bank believes inbound ACH transactions are being received into the Debtors' accounts at Bridge Bank.  Representatives of the Debtors and Bridge Bank are working to clarify this matter.

15.     The Debtors have four restricted cash accounts that are used as collateral for ACH collections and credit cards that maintain stagnant balances.[7]  The Debtors currently are not seeking to utilize cash from these restricted accounts.

16.     Payments to lenders were historically disbursed from the Bridge Bank Lender Payment account numbered x0356, a zero balance account funded by the Bridge Bank Customer pay account numbered x6313.  The Debtors have ceased any such disbursements to their lenders.

17.     I believe the Debtors' transition into Chapter 11 will be significantly less disruptive if the Bank Accounts are maintained following the commencement of the Chapter 11 Cases with the same account numbers and, where applicable, automated relationship.  I further believe this transition will be significantly less disruptive if the Debtors are granted authority to deposit funds in and withdraw funds from all such accounts postpetition, subject to the same access rights and limitations existing prior to the Petition Date, including, but not limited to, checks, wire transfers, ACH, electronic funds transfers and other debits and to treat the Bank Accounts for all purposes as debtor-in-possession accounts.

18.     I understand that Bridge Bank and First Premier Bank are currently not included among the Region 21 authorized depositories.  The Debtors will work with these banks and the Office of the United States Trustee to obtain such authorization for purposes of these Chapter 11 Cases.  In the event such authorization is ultimately not obtained, the Debtors may seek further relief from this Court.

19.     In the ordinary course of business, the Debtors use pre-printed check stock with the Debtors' name printed thereon.  In addition, the Debtors maintain pre-printed correspondence and

---

[7]     These accounts include the Bridge Bank ACH Reserve account numbered x6253 and Credit Card Reserve account numbered x8939; the First Premier ACH Reserve account numbered x1590; and City National Bank ACH Credit Reserve account numbered x7261.

business forms, including, but not limited to, letterhead, envelopes, promotional materials and other business forms (collectively, along with the Debtor's checks, the "Business Forms"). To minimize administrative expense and delay, I believe the Debtors' transition into Chapter 11 will be significantly less disruptive by granting their request for authority to continue to use their Business Forms substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' "debtor-in-possession" status.

20.     The Debtors' Cash Management System constitutes a customary and essential business practice that was created and implemented by the Debtors in the exercise of their business judgment. The Cash Management System is a practical and critical mechanism that allows the Debtors to transfer their revenues to the payment of their obligations, which decreases the burdens on the Debtors, and that provides several important benefits, including the ability to: (a) control and monitor corporate funds; (b) ensure cash availability and (c) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate balance and presentment information. All of these benefits will assist the Debtors in their efforts to maintain their operations during the Chapter 11 Cases. Moreover, given the automated manner of the MCA collections, I believe continuing the Cash Management System in its current form is necessary.

21.     As previously discussed, the Debtors maintain a total of eleven (11) Bank Accounts and conduct numerous financial transactions utilizing these Bank Accounts. I believe it would cause an enormous amount of disruption to force the Debtors to open new bank accounts and close the existing Bank Accounts. Such disruption would provide no benefit to the Debtors' estates and would likely result in havoc for the Debtors' Cash Management System and significant harm to the Debtors' ability to collect on the receivables that constitute the main asset of these estates. Thus, the Debtors should be authorized, but not directed, to continue to fund their business and operations

by payments made from the Bank Accounts (with the exception of Bridge Bank Checking account numbered x3270), and should be exempt from certain of the Guidelines established by the United States Trustee for the Southern District of Florida.

22.     As part of the requested relief, the Debtors also seek a waiver of the requirement to establish specific bank accounts for tax payments.  I believe that tax obligations can be paid most efficiently out of the existing Bank Accounts, that the United States Trustee can adequately monitor the flow of funds into, among and out of the Bank Accounts, and that the creation of new debtor-in-possession accounts designated solely for tax obligations would be unnecessary and inefficient.

23.     Moreover, if the Debtors were forced to close their Bank Accounts, there would likely be disruption and confusion that would negatively impact the Debtors' operations.  For instance, funds may be deposited into the wrong account, misapplied, held in limbo or otherwise delayed, thus negatively affecting the Debtors' relationships with merchants and other parties who are necessary to the Debtors' efforts and who already may be burdened by the filing of these Chapter 11 Cases.  As a result, I believe that maintenance of the existing Bank Accounts and Cash Management System is warranted.

24.     The Debtors have also requested that this Court authorize, but not direct, them to use all correspondence and Business Forms existing immediately before the Petition Date without reference to the Debtors' status as "debtors-in-possession."  As of the Petition Date, the Debtors have stock of Business Forms that they use in the ordinary course of business.  Reprinting their Business Forms to indicate that the Debtors are "debtors-in-possession" would impose an unnecessary burden and expense on the Debtors.  I have little doubt that the parties with whom the Debtors do business shortly will become aware that they are chapter 11 debtors-in-possession.  In the event the Debtors exhaust their existing stock of Business Forms before the conclusion of these

7

Chapter 11 Cases, the Debtors intend to add such "debtor-in-possession" designation to any checks that they obtain or create postpetition.

[*Signature Page Follows.*]

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

Dated:  August 6, 2018

*/s/ Joseph J. Luzinski*
Joseph J. Luzinski
Deputy Chief Restructuring Officer

[*Signature Page to Declaration of Joseph J. Luzinski in Support of Cash Management Motion*]