**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING**
**DEBTORS TO EMPLOY AND RETAIN EPIQ CORPORATE RESTRUCTURING, LLC**
**AS CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO AUGUST 1, 2018**
**PURSUANT TO 28 U.S.C. § 156(c) AND 11 U.S.C. § 105(a)**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")
hereby move the Court (this "**Application**" or "**Section 156(c) Application**") for entry of an
order authorizing and approving the employment and retention of Epiq Corporate Restructuring,
LLC ("**Epiq**") as claims and noticing agent (the "**Claims and Noticing Agent**") *nunc pro tunc*
to the August 1, 2018.  In support of this Application, the Debtors respectfully state as follows:

**Status of the Case**

1.     On July 27, 2018 (the "**Petition Date**"), the Debtors commenced the Chapter 11
Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States
Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**").

2.     The Debtors continue to operate and manage their businesses as debtors-in-
possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1]    The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each
Debtor's federal tax identification number, if applicable, are:  1 Global Capital LLC, 1250 E. Hallandale Beach
Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, 1250 E. Hallandale Beach
Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).

3.      No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in these Chapter 11 Cases.

**Jurisdiction, Venue and Statutory Predicates**

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory bases for the relief requested herein are section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**") and 28 U.S.C. § 156(c).

**Background**

6.      The Debtors provide direct financing to small businesses across the U.S., specializing in unsecured, short-term commercial financing and merchant cash advances ("**MCAs**").  The Debtors' business operations are funded through private, short-term loans, which are invested in the MCAs and other funding products offered to the Debtors' customers.

7.      As a result of business and legal issues discussed in greater detail in the Debtors' Chapter 11 Case Management Summary [ECF No. 8] (the "**Case Summary**"), the Debtors were forced to file these Chapter 11 Cases on an exigent basis in order to address an imminent liquidity crisis and to preserve their assets and business operations for the benefit of the individual lenders and all other parties in interest.

**Relief Requested**

8.      By this Application, pursuant to 28 U.S.C. § 156(c) and section 105(a) of the Bankruptcy Code, the Debtors request entry of an order substantially in the form of **Exhibit A** hereto (the "**Proposed Order**") appointing Epiq as the Claims and Noticing Agent and

authorizing Epiq to assume full responsibility for, among other things, the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtors' cases.[2] The Debtors selected Epiq to serve as the Claims and Noticing Agent after obtaining and reviewing engagement proposals from at least two (2) other claims and noticing agents to ensure selection through a competitive process. Based on all engagement proposals obtained and reviewed, Epiq's rates are competitive and reasonable in light of Epiq's quality of services and expertise. The terms of retention, including Epiq's fees, are set forth in Epiq's Services Agreement attached hereto as **Exhibit B** (the "**Engagement Agreement**"); provided, however, that Epiq is seeking approval solely of the terms and provisions as set forth in this Application and as modified by the proposed order attached hereto.

9.     Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be in excess of 4,000 entities to be noticed during and in connection with these Chapter 11 Cases. In view of the number of anticipated claimants and the complexity of the Debtors' business, the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtors' estates and their creditors.

10.     Epiq has acted as the claims and noticing agent in numerous recent large chapter 11 cases. *See, e.g.*, *In re The Weinstein Company Holdings LLC*, Case No. 18-10601 (MFW) (Bankr. D. Del. Mar. 20, 2018) [Docket No. 70]; *In re HCR ManorCare, Inc.*, Case No. 18-10467 (KG) (Bankr. D. Del. Mar. 6, 2018) [Docket No. 44]; *In re Herald Media Holdings, Inc*., Case No. 17-12881 (LSS) (Bankr. D. Del. Dec. 13, 2017) [Docket No. 39]; *In re Maurice Sporting Goods, Inc.*, Case No. 17-12481 (CSS) (Bankr. D. Del. Nov. 21, 2017) [Docket No.

---

[2]    To the extent the administration of these Chapter 11 Cases requires Epiq to perform duties outside the scope of 28 U.S.C. § 156(c), the Debtors will seek separate authorization to retain and employ Epiq as administrative agent in these Chapter 11 Cases pursuant to section 327(a) of the Bankruptcy Code.

25]; *In re GST AutoLeather, Inc.*, Case No. 17-12100 (LSS) (Bankr. D. Del. Oct. 4, 2017) [Docket No. 63], among other cases.

11.    By appointing Epiq as the Claims and Noticing Agent in these Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited, and the clerk's office will be relieved of the administrative burden of processing what may be an overwhelming number of claims.  In support of this Application, the Debtors submit the declaration of Brian Karpuk, Epiq's Director of Consulting Services attached hereto as **Exhibit C** (the "**Karpuk Declaration**").

12.    This Application pertains only to the work to be performed by Epiq as the Claims and Noticing Agent under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c), and any work to be performed by Epiq outside of this scope is not covered by this Section 156(c) Application or by any order granting approval hereof.  Specifically, as the Claims and Noticing Agent, Epiq will perform the following tasks (the "**Claims and Noticing Services**"), as well as all quality control relating thereto:

      i.    Prepare and serve required notices and documents in the cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of the  cases and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims and objections to claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, (vii) any motion to convert, dismiss, appoint a trustee, or appoint and examiner filed by the United States Trustee's Office, and (viii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the cases;

      ii.    Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

iii. Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "Master Service List" in accordance with Local Rule 2002-1(H); update said lists and make said lists available upon request by a party-in-interest or the Clerk;

iv. Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

v. Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

vi. For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

vii. Process all proofs of claim or proofs of interest received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim or proofs of interest in a secure area;

viii. Maintain the official claims register for each Debtor (the "**Claims Registers**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), (vi) the applicable Debtor, and (vii) any disposition of the claim;

ix. File an updated claims register with the Court, in alphabetical and/or numerical order, upon request and direction of the Clerk of the Court;

x. Allow public access to claims and the claims register at no charge;

xi.     Maintain an electronic platform for purposes of filing proofs of claim;

xii.    Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

xiii.   Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e); provided, however, that if any evidence of transfer of claim(s) is filed with the Court pursuant to Bankruptcy Rule 3001(e), and if the evidence of transfer or notice thereof executed by the parties purports to waive the 21-day notice and objection period required under Bankruptcy Rule 3001(e), then Epiq may process the transfer of claim(s) to change the name and address of the claimant of such claim to reflect the transfer, and the effective date of such transfer will be the date the evidence of such transfer was docketed in the case;

xiv.    Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of the Claims and Noticing Agent, not less than weekly;

xv.     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

xvi.    Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

xvii.   Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtors or the Court, including through the use of a case website and/or call center;

xviii.  Provide such other related claims and noticing services as the Debtors may require in connection with these Chapter 11 Cases;

xix.    If a case is converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to Claims and Noticing Agent of entry of the order converting the case;

xx.     Thirty (30) days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed Order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of these cases;

xxi.    Within fourteen (14) days of entry of an Order dismissing a case or within thirty (30) days of entry of a Final Decree, (a) forward to the Clerk an electronic version of all imaged claims; (b) upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register. If a case has jointly-administered entities, one combined register shall be docketed in the lead case containing claims of all cases. The Claims and Noticing Agent shall further box and transport all original claims to the Atlanta Federal Records Center, 4712 Southpark Blvd, Ellenwood, GA 30294 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims; and

xxii.    Within fourteen (14) days of entry of an Order converting a case, (a) forward to the Clerk an electronic version of all imaged claims; (b) upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register. If a case has jointly-administered entities, one combined register shall be docketed in the lead case containing claims of all cases. A Final Claims Register shall also be docketed in each jointly-administered case containing the claims of only that specific case. The Claims and Noticing Agent shall further box and transport all original claims to the Atlanta Federal Records Center, 4712 Southpark Blvd, Ellenwood, GA 30294 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

13.    Additionally, to the extent any notice served is required to be given via regular mail, Epiq may, before mailing the notice of commencement or key matrix mailings, run the list of creditors and equity security holders through (i) the National Change of Address software maintained by the United States Postal Service (the "**USPS**") and (ii) standardization and verification software that is CASS (Coding Accuracy Support System) certified by the USPS (clauses (i) and (ii) collectively, the "**USPS Software**") to update any addresses provided by the Debtors based on their books and records and to conform such records to USPS standards. If the USPS Software determines that a mailing address has changed, the Debtors propose that Epiq shall mail documents to the updated address; *provided, however*, that Epiq shall be under no obligation to mail to the original address. If mail is returned to Epiq as undeliverable with a forwarding address, the Debtors propose that Epiq shall re-mail the document to the new address and update its mailing database accordingly. If mail is returned to Epiq as undeliverable with no

forwarding address, the Debtors propose that Epiq should be under no further obligation to mail any notices or other pleadings to that address.

14.     The Claims Registers shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq.

15.     Although by this Section 156(c) Application the Debtors do not propose to retain Epiq as a professional under Bankruptcy Code section 327, to the best of Epiq's knowledge, and except as set forth in the Karpuk Declaration, Epiq neither holds nor represents an interest materially adverse to the Debtors' estates nor has a connection to the Debtors, their creditors, or their related parties with respect to any matter for which Epiq will be employed. Epiq may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as claims and noticing agent for another chapter 11 debtor.  However, Epiq shall not employ any past or present employees of the Debtors for work that involves the Chapter 11 Cases.  Should Epiq discover any new relevant factors or relationships bearing on the matters described herein during the period of its retention, Epiq will use reasonable efforts to file promptly a supplemental declaration.

16.     The Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the above services be treated as administrative expenses of the Debtors' estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court.  Epiq agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.  If

any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

17.     As part of the overall compensation payable to Epiq under the terms of the Engagement Agreement, the Debtors have agreed, subject to certain exceptions, to indemnify and hold harmless Epiq and its directors, officers, employees, affiliates, and agents, against any losses incurred by Epiq arising out of, in connection with, or related to (a) any gross negligence or willful misconduct by the Debtors, their employees, agents, or representatives, or misrepresentations made by such persons to third parties in connection with Epiq's acts or omissions in connection with its rendering the Services (as defined in the Engagement Agreement); (b) any breach of the Engagement Agreement by any of the Debtors; or (c) any erroneous instructions or information provided to Epiq by any of the Debtors for use in providing services pursuant to the Engagement Agreement.

18.     In connection with its retention as Claims and Noticing Agent, Epiq represents in the Karpuk Declaration, among other things, that:

   i.   Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

   ii.  By accepting employment in these Chapter 11 Cases, Epiq waives any rights to receive compensation from the United States government in connection with the Debtors' cases;

   iii. In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

   iv.  It is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

19.     To the extent that there is any inconsistency between this Application, the Proposed Order and the Engagement Agreement, the Proposed Order shall govern.

20.     The Debtors have provided copies of this Section 156(c) Application to the Clerk of Court and to the United States Trustee and submit that no further notice is necessary under the circumstances.

<u>**Conclusion**</u>

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form attached hereto as **Exhibit A** granting (i) the relief requested herein; and (ii) Debtors such other and further relief as the Court deems just and proper.

Dated: August 22, 2018.                    Respectfully submitted,

                                           GREENBERG TRAURIG, LLP

                                           */s/ Paul J. Keenan Jr.*
                                           MARK D. BLOOM
                                           Fla. Bar No. 303836
                                           bloomm@gtlaw.com

                                           PAUL J. KEENAN JR.
                                           Fla. Bar No. 0594687
                                           keenanp@gtlaw.com

                                           JOHN R. DODD
                                           Fla. Bar No. 38091
                                           doddj@gtlaw.com

                                           ARI NEWMAN
                                           Fla. Bar No. 56575
                                           newmanar@gtlaw.com

                                           333 S.E. 2nd Avenue, Suite 4400
                                           Miami, Florida 33131
                                           Tel: 305-579-0500

                                           *Proposed Counsel for the Debtors*
                                           *and Debtors-in-Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

**ORDER AUTHORIZING RETENTION AND APPOINTMENT OF**
**EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING**
**AGENT UNDER 28 U.S.C. § 156(c) AND  11 U.S.C. § 105(a))**

THIS MATTER came before the Court for hearing on _____, 2018 at

_____ ____ upon the *Application of the Debtors for entry of an Order Authorizing the*

*Retention and Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent*

---

[1]   The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  1 Global Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).

*under 28 U.S.C. § 156(c) and 11 U.S.C. § 105(a)* (the "**Application**")[1] [ECF No. _____] for entry of an Order authorizing the retention and appointment of Epiq Corporate Restructuring, LLC ("**Epiq**"), as the Claims and Noticing Agent, under 28 U.S.C. §156(c) and Section 105(a) of the Bankruptcy Code and to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket and otherwise administer the proofs of claim filed in the Debtors' cases, and (iii) provide such other administrative services – as required by the Debtors – that would fall within the purview of services to be provided by the Clerk's Office.

The Court has considered the Motion, the declaration of Brian Karpuk submitted in support of the Application, the record in these Chapter 11 Cases and the Debtors' estimation that there are in excess of 4,000 entities to be noticed in connection with these Chapter 11 cases and that the the receiving, docketing and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk.  Based on the foregoing, (i) the Court is authorized under 28 U.S.C. §156(c) to utilize, at the Debtors' expense, outside agents and facilities to provide notices to parties in chapter 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; (ii) the Court is satisfied that Epiq has the capability and experience to provide such services; and (iii) that Epiq does not hold an interest adverse to the Debtors or the estates respecting the matters upon which it is to be engaged.  The Court further finds that (i) good and sufficient notice of the Application has been given; (ii) no other or further notice is required; and (iii) the employment of Epiq is in the best interests of the Debtors, their estates and creditors.  Accordingly,

**IT IS ORDERED:**

1.      The Application is GRANTED as set forth herein.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

2.      Notwithstanding the terms of the Engagement Agreement attached to the Application, the Application is approved solely as set forth in this Order.

3.      The Debtors are authorized to retain Epiq effective as of August 1, 2018 under the terms of the Engagement Agreement to the extent set forth herein, and Epiq is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in these cases, and all related tasks, all as described in the Application (the "**Claims and Noticing Services**").

4.      Epiq shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.      Epiq is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6.      Epiq is authorized to take such other action to comply with all duties set forth in the Application.

7.      The Debtors are authorized to compensate Epiq in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses; provided, however, that the United States Trustee for the Southern District of Florida and any official committee appointed in these Chapter 11 Cases (together, the "**Notice Parties**") shall be

provided copies of Epiq's invoices and shall have a period of ten (10) days to object to the amount of such invoice prior to the Debtors' payment of such amounts or such shorter time as agreed by the Notice Parties.

8.      Epiq shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred.

9.      The parties shall meet and confer in an attempt to resolve any dispute, which may arise relating to the Engagement Agreement or monthly invoices, and that the parties may seek resolution of the matter from the Court if resolution is not achieved.

10.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq under this Order shall be an administrative expense of the Debtors' estates.

11.     The Debtors shall indemnify Epiq under the terms of the Engagement Agreement; *provided, however* that Epiq shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court.

12.     In the event the Epiq is unable to provide the services set out in this order, Epiq will immediately notify the Clerk and Debtors' attorney and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and counsel to the Debtors.

13.     Epiq shall comply with all relevant statutory provisions and rules of procedure, including the Local Rules, general orders and applicable guidelines.

14.     Counsel to the Debtors shall notify both Epiq and the Clerk's Office within seven (7) days of an order of dismissal or conversion of these Chapter 11 Cases.

15.    At the end of any of these Chapter 11 Cases or upon the termination of Epiq's services, the Debtors must obtain a termination order to terminate the services provided.

16.    Any limitation of liability provisions in the Engagement Agreement are hereby deemed null and void.

17.    The Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Epiq but is not specifically authorized by this Order.

18.    The Debtors and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

19.    Epiq shall not cease providing claims processing services during the case(s) for any reason, including nonpayment, without an order of the Court.

20.    In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

21.    Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order

###

**Submitted by:**

Paul J. Keenan Jr., Esq.
Fla. Bar. No. 594687
keenanp@gtlaw.com
GREENBERG TRAURIG, LLP
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Tel: 305-579-0500

*Proposed Counsel for the Debtors*
*and Debtors-in-Possession*

(Epiq is directed to serve copies of the order and shall file a certificate of service.)

**<u>Exhibit B</u>**

**Engagement Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below.  In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on The Services Schedule hereto (the "Services") in connection with a corporate restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client.  Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; *provided, however*, that this Agreement is subject to approval by the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") given that Client is a debtor in a chapter 11 proceeding pending in the Bankruptcy Court.  The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3.  Charges.**

3.1   For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable.  Epiq will bill Client monthly.  All invoices shall be due and payable upon receipt.

3.2   Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2019.  If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

1



3.3    Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4    Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5    Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6    In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

**4.    Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

**5.    Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property").  Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

2



## 6. **Disposition of Data.**

6.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq. Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2    Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

## 7. **Indemnification.**

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

3



**8.** **Limitation of Liability**

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.

**9.** **Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**10.** **Confidential On-Line Workspace**

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

**11.** **General**



11.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by, and subject to the exclusive jurisdiction of, the Bankruptcy Court.

11.4  The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5  Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6  In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

11.7  Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9  All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.  The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

11.10  Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

<u>If to Epiq Corporate Restructuring, LLC</u>:

5



Epiq Corporate Restructuring, LLC
777 Third Avenue, 12th Floor
New York, New York 10017
Attn:  Robert A. Hopen

If to Client:

1 Global Capital LLC
c/o Development Specialists, Inc.
500 West Cypress Creek Road, Suite 400
Fort Lauderdale, Florida 33309
Attn: Joseph J. Luzinski, Deputy CRO

With a copy to:

Greenberg Traurig, LLP
333 SE 2nd Avenue
Suite 4400
Miami, Forida 33131
Attn:  Paul J. Keenan Jr., Esq.

11.11  Invoices sent to Client should be delivered to the following address and by email:

1 Global Capital LLC
c/o Development Specialists, Inc.
500 West Cypress Creek Road, Suite 400
Fort Lauderdale, Florida 33309
Attn: Joseph J. Luzinski, Deputy CRO
Email:  jluzinski@dsi.biz

11.12   The "Effective Date" of this Agreement is August 1, 2018.


IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____
Name: Robert A. Hopen
Title:   President

6



**CLIENT:**

**1 GLOBAL CAPITAL LLC**

By:_____

Name: Joseph J. Luzinski

Title:   Deputy Chief Restructuring Officer

**1 WEST CAPITAL LLC**

By:_____

Name: Joseph J. Luzinski

Title:   Deputy Chief Restructuring Officer

7



# SERVICES SCHEDULE

**SCHEDULES/STATEMENT PREPARATION**
➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

**CLAIMS MANAGEMENT**
➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

8



➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.


**<u>NOTICING</u>**
➢ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.



➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.  Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## CALL CENTER

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.



## **MISCELLANEOUS**

➤ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➤ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➤ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➤ Provide temporary employees to the Clerk's Office to process claims, as necessary.



# EPIQ SYSTEMS PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $25.00 – $45.00 |
| IT / Programming | $65.00 – $85.00 |
| Case Managers | $70.00 – $165.00 |
| Consultants/ Directors/Vice Presidents | $160.00 – $190.00 |
| Solicitation Consultant | $190.00 |
| Executive Vice President, Solicitation | $215.00 |
| Executives | No Charge |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.09 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFFERED RATES |
| E-Mail Noticing | WAIVED |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.09 per record/month |
| Electronic Imaging | $0.05 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | $5.00 per CD |

---

[1]   Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.



## ON-LINE CLAIM FILING SERVICES

On-Line Claim Filing                                    NO CHARGE

## CALL CENTER RATES

Standard Call Center Setup                              NO CHARGE

Call Center Operator                                    $55 per hour

Voice Recorded Message                                  $0.34 per minute

## OTHER SERVICES RATES

Custom Software, Workflow
and Review Resources                                    Quoted at time of request

Depositions/Court Reporting                             Quoted at time of request, bundled pricing available

eDiscovery                                              Quoted at time of request, bundling pricing available

Virtual Data Room --
Confidential On-Line Workspace                          Quoted at time of request

Disbursements -- Check and/or Form 1099                 Quoted at time of request

Disbursements -- Record to Transfer Agent               Quoted at time of request

*MIA 186665158v4*

13

**<u>Exhibit C</u>**

**Karpuk Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF BRIAN KARPUK IN SUPPORT OF THE APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT *NUNC PRO TUNC* TO AUGUST 1, 2018 PURSUANT TO 28 U.S.C. § 156(C) AND 11 U.S.C. 105(a)**

Brian Karpuk, being duly sworn, deposes and states:

1.     I am the Director of Consulting Services of Epiq Corporate Restructuring, LLC ("**Epiq**"), and I am authorized to make and submit this declaration on behalf of Epiq (the "**Declaration**").  The statements contained herein are based upon personal knowledge.  Epiq submits this Declaration in support of the application (the "**Section 156(c) Application**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order authorizing the employment and retention of Epiq as the Debtors' claims and noticing agent ("**Claims and Noticing Agent**") in the Debtors' chapter 11 cases (the "**Chapter 11 Cases**") *nunc pro tunc* to August 1, 2018 pursuant to section 156(c) of title 28 of the United States Code and section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"),

---

[1]     The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  1 Global Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).

and to approve the Services Agreement, dated August 1, 2018 (the "**Engagement Agreement**").

The Engagement Agreement is attached to the Section 156(c) Application as **Exhibit B**.

2.      Epiq is one of the country's leading chapter 11 administrators with expertise in noticing, claims processing, balloting administration, and distribution.  Epiq is well-qualified to provide experienced claims and noticing services in connection with these Chapter 11 Cases. Epiq is or was retained as the claims and noticing agent in a number of large chapter 11 cases including, but not limited to, the following: *In re The Weinstein Company Holdings LLC*, Case No. 18-10601 (MFW) (Bankr. D. Del. Mar. 20, 2018) [Docket No. 70]; *In re HCR ManorCare, Inc.*, Case No. 18-10467 (KG) (Bankr. D. Del. Mar. 6, 2018) [Docket No. 44]; *In re Herald Media Holdings, Inc.*, Case No. 17-12881 (LSS) (Bankr. D. Del. Dec. 13, 2017) [Docket No. 39]; *In re Maurice Sporting Goods, Inc.*, Case No. 17-12481 (CSS) (Bankr. D. Del. Nov. 21, 2017) [Docket No. 25]; *In re GST AutoLeather, Inc.*, Case No. 17-12100 (LSS) (Bankr. D. Del. Oct. 4, 2017) [Docket No. 63].

3.      The Debtors selected Epiq to serve as the Claims and Noticing Agent as set forth in more detail in the Section 156(c) Application.  To the best of my knowledge, neither Epiq nor any of its professional personnel have any relationship with the Debtors that would impair Epiq's ability to serve as Claims and Noticing Agent.

4.      Epiq may have (or may have had) relationships with some of the Debtors' creditors and may provide (or may have provided) professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 Cases.  These relationships and the services provided are, however, in matters completely unrelated to these Chapter 11 Cases.

---

[2]     Capitalized terms utilized but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

5.      Epiq has working relationships with certain of the professionals retained by the Debtors and other parties herein but such relationships are completely unrelated to these Chapter 11 Cases.  Epiq has represented, and will continue to represent, clients in matters unrelated to these Chapter 11 Cases, and has had, and will continue to have, relationships in the ordinary course of its business with certain vendors and professionals in connection with matters unrelated to these Chapter 11 Cases.

6.      In addition, Epiq personnel may have relationships with some of the Debtors' creditors; <u>however</u>, such relationships are completely unrelated to these Chapter 11 Cases.

7.      Epiq is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), in that Epiq and its professional personnel:

    (a)    are not creditors, equity security holders, or insiders of the Debtors;

    (b)    are not, and were not, within two years before the date of the filing of these Chapter 11 Cases, directors, officers, or employees of the Debtors; and

    (c)    do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

8.      Epiq has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these Chapter 11 Cases.  If Epiq's proposed retention is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtors in these Chapter 11 Cases.

9.      Epiq represents, among other things, that:

    (a)    it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims and Noticing Agent;

(b)    by accepting employment in these Chapter 11 Cases, Epiq waives any right to receive compensation from the United States government;

(c)    in its capacity as Claims and Noticing Agent, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

(d)    Epiq will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent.

10.    Subject to Court approval, the Debtors have agreed to compensate Epiq for professional services rendered pursuant to 28 U.S.C. §156(c) in connection with these Chapter 11 Cases according to the terms and conditions of the Engagement Agreement.  Payments are to be based upon the submission of a billing statement by Epiq to the Debtors after the end of each calendar month, which includes a detailed listing of services and expenses.

11.    Epiq will comply with all requests of the Clerk of the Court and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

*[remainder of page intentionally left blank]*

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed on this August 14, 2018

Brian Karpuk, Director of Consulting Services
Epiq Corporate Restructuring, LLC

5