# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| 1 GLOBAL CAPITAL LLC; and 1 WEST CAPITAL LLC, | Adv. Case No. |
| Plaintiffs, | |
| v. | |
| MOMENTUM AUTOMOTIVE MANAGEMENT, LLC; MOMENTUM AUTO GROUP, INC. f/k/a MOMENTUM AUTO GROUP, LLC; RAHIM MAJID HASSANALLY; VALLEJO CJD LLC; FAIRFIELD IMPORTS, LLC; FAIRFIELD IMPORTS TWO, LLC; FAIRFIELD IMPORTS THREE, LLC; VALLEJO IMPORTS, LLC; MAVERICK AUTO GROUP 2, LLC; FAIRFIELD CJD, LP; RMHONE CORPORATION; RMH III, INC.; MOMENTUM RE, LLC; M.A.G. ONE REINSURANCE LTD.; RADIUM2 CAPITAL, INC.; CAPITAL STACK, LLC; PLATINUM RAPID FUNDING GROUP, LTD.; and GLOBAL MERCHANT CASH, INC. D/B/A WALL STREET FUNDING; et al., | |
| Defendants. | |

---

[1]  The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  1 Global Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).

## ADVERSARY COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT

Plaintiffs, 1 GLOBAL CAPITAL LLC ("**1 Global Capital**") and 1 WEST CAPITAL

LLC ("**1 West Capital**") (together, "**Plaintiffs**" or "**Debtors**"), which are debtors in possession

in the above-captioned Chapter 11 bankruptcy proceedings, hereby sue Defendants,

MOMENTUM AUTOMOTIVE MANAGEMENT, LLC ("**MAM**"); MOMENTUM AUTO

GROUP, INC. f/k/a MOMENTUM AUTO GROUP, LLC ("**MAG**"); RAHIM MAJID

HASSANALLY ("**Hassanally**"); VALLEJO CJD LLC ("**Vallejo CJD**"); FAIRFIELD

IMPORTS, LLC ("**Fairfield Imports**"); FAIRFIELD IMPORTS TWO, LLC ("**Fairfield**

**Imports Two**"); FAIRFIELD IMPORTS THREE, LLC ("**Fairfield Imports Three**");

VALLEJO IMPORTS, LLC ("**Vallejo Imports**"); MAVERICK AUTO GROUP 2, LLC

("**Maverick**"); FAIRFIELD CJD, LP ("**Fairfield CJD**"); RMHONE CORPORATION

("**RMHOne**"); RMH III, INC. ("**RMH III**"); MOMENTUM RE, LLC ("**MRE**"); M.A.G. ONE

REINSURANCE LTD. ("**Momentum Reinsurance**"); RADIUM2 CAPITAL, INC.

("**Radium2**"); CAPITAL STACK, LLC ("**Capital Stack**"); PLATINUM RAPID FUNDING

GROUP, LTD. ("**Platinum Rapid Funding**"); and GLOBAL MERCHANT CASH INC. D/B/A

WALL STREET FUNDING ("**Wall Street**"), and allege as follows:

### JURISDICTION AND VENUE

1.     This adversary proceeding is commenced pursuant to Rules 7001(1), (2), (7) and

(9) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), sections 105(a)

and 541(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and 28 U.S.C. §

2201.

2.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157 and 1334. This adversary proceeding is a non-core proceeding pursuant to 28 U.S.C. §

157(c).  The Debtors do consent to entry of final orders or judgment by the Bankruptcy Court in this adversary proceeding in accordance with Rule 7008(a) of the Bankruptcy Rules.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

4.      All conditions precedent to the filing of this action have been performed, waived, satisfied or have occurred.

5.      Pursuant to Rule 7020 of the Bankruptcy Rules and Local Rule 7003-1(D)(1), all parties herein and all relief sought arise out of a series of related transactions or occurrences.

### THE PARTIES

6.      1 Global Capital is a limited liability company organized and operating under the laws of Florida, with its principal place of business located at 1250 E. Hallandale Beach Boulevard, Suite 409, Hallandale Beach, Broward County, Florida 33009.

7.      1 West Capital is a limited liability company organized and operating under the laws of Florida, with its principal place of business located at 1250 E. Hallandale Beach Boulevard, Suite 409, Hallandale Beach, Broward County, Florida 33009.

8.      MAG is a for-profit business corporation organized and operating under the laws of California, with its principal place of business located at 2575 Auto Mall Parkway, Fairfield, Solano County, California 94533.  Prior to May 18, 2016, MAG was operating as a limited liability company organized and operating under the laws of California, by the name of Momentum Auto Group, LLC.  On May 18, 2016, Momentum Auto Group, LLC filed a Statement of Conversion with the Secretary of State for the State of California, converting the company to a for-profit business corporation.  Upon information and belief, Hassanally owns 100 percent of the shares in and is the sole shareholder of MAG.

9.     MAM is a limited liability company organized and operating under the laws of California, with its principal place of business located at 2575 Auto Mall Parkway, Fairfield, Solano County, California 94533.  Upon information and belief, MAG owns 100 percent of the interests and is the sole member of MAM.  Upon information and belief, by virtue of his ownership of 100 percent of the shares of MAG, Hassanally is the indirect owner of 100 percent of the membership interests of MAM.

10.     Hassanally is an individual residing at 5307 Bayridge Drive, Fairfield, Solano County, California 94534 (the "**Residence**"), and is otherwise, *sui juris*.

11.     Vallejo CJD is a limited liability company organized and operating under the laws of California, with its principal place of business located at 2575 Auto Mall Parkway, Fairfield, Solano County, California 94533. Upon information and belief, MAG owns 100 percent of the interests and is the sole member of Vallejo CJD.  Upon information and belief, by virtue of his ownership of 100 percent of the shares of MAG, Hassanally is the indirect owner of 100 percent of the membership interests of Vallejo CJD.

12.     Fairfield Imports is a limited liability company organized and operating under the laws of California, with its principal place of business located at 2575 Auto Mall Parkway, Fairfield, Solano County, California 94533. Upon information and belief, MAG owns 100 percent of the interests and is the sole member of Fairfield Imports.  Upon information and belief, by virtue of his ownership of 100 percent of the shares of MAG, Hassanally is the indirect owner of 100 percent of the membership interests of Fairfield Imports.

13.     Fairfield Imports Two is a limited liability company organized and operating under the laws of California, with its principal place of business located at 2575 Auto Mall Parkway, Fairfield, Solano County, California 94533. Upon information and belief, MAG owns

100 percent of the interests and is the sole member of Fairfield Imports Two. Upon information and belief, by virtue of his ownership of 100 percent of the shares of MAG, Hassanally is the indirect owner of 100 percent of the membership interests of Fairfield Imports Two.

14.     Fairfield Imports Three is a limited liability company organized and operating under the laws of California, with its principal place of business located at 2575 Auto Mall Parkway, Fairfield, Solano County, California 94533. Upon information and belief, MAG owns 100 percent of the interests and is the sole member of Fairfield Imports Three. Upon information and belief, by virtue of his ownership of 100 percent of the shares of MAG, Hassanally is the indirect owner of 100 percent of the membership interests of Fairfield Imports Three.

15.     Vallejo Imports is a limited liability company organized and operating under the laws of California, with its principal place of business located at 2575 Auto Mall Parkway, Fairfield, Solano County, California 94533. Upon information and belief, MAG owns 100 percent of the interests and is the sole member of Vallejo Imports. Upon information and belief, by virtue of his ownership of 100 percent of the shares of MAG, Hassanally is the indirect owner of 100 percent of the membership interests of Vallejo Imports.

16.     Maverick is a limited liability company organized and operating under the laws of California, with its principal place of business located at 2575 Auto Mall Parkway, Fairfield, Solano County, California 94533. Upon information and belief, MAG owns 100 percent of the interests and is the sole member of Maverick. Upon information and belief, by virtue of his ownership of 100 percent of the shares of MAG, Hassanally is the indirect owner of 100 percent of the membership interests of Maverick.

17.     Fairfield CJD is a limited liability company organized and operating under the laws of California, with its principal place of business located at 2575 Auto Mall Parkway,

Fairfield, Solano County, California 94533. Upon information and belief, MAG owns 99 percent of the interests of Fairfield CJD, and RHMOne owns the remaining one (1) percent interest.

18.     RMHOne is a limited liability company organized and operating under the laws of California, with its principal place of business located at 2575 Auto Mall Parkway, Fairfield, Solano County, California 94533. Upon information and belief, MAG owns 100 percent of the interests and is the sole member of RMHOne.

19.     RMH III is a limited liability company organized and operating under the laws of California, with its principal place of business located at 2575 Auto Mall Parkway, Fairfield, Solano County, California 94533. Upon information and belief, MAG owns 20 percent of the interests of RMH III, and General Motors owns the remaining 80 percent interest.

20.     MRE is a limited liability company organized and operating under the laws of California, with its principal place of business located at 2575 Auto Mall Parkway, Fairfield, Solano County, California 94533. Upon information and belief, MAG owns 100 percent of the interests and is the sole member of MRE.  Upon information and belief, by virtue of his ownership of 100 percent of the shares of MAG, Hassanally is the indirect owner of 100 percent of the membership interests of MRE.

21.     Momentum Reinsurance is a corporation organized and operating under the laws of Turks & Caicos, with its principal place of business located in California. Upon information and belief, MAG owns 100 percent of the shares and is the sole shareholder of Momentum Reinsurance.  Upon information and belief, by virtue of his ownership of 100 percent of the shares of MAG, Hassanally is the indirect owner of 100 percent of the membership interests of Momentum Reinsurance.

22.      Radium2 is a for-profit business corporation organized and operating under the laws of New York, with its principal place of business located at 300 RXR Plaza, Uniondale, Nassau County, New York 11553.

23.      Capital Stack is a limited liability company organized and operating under the laws of Nevada, with its principal place of business located at 11 Broadway, 8th Floor, New York, New York 10004.

24.      Platinum Rapid Funding is a for-profit business corporation organized and operating under the laws of New York, with its principal place of business located at 348 RXR Plaza, Uniondale, Nassau County, New York 11553.

25.      Wall Street is a for-profit business corporation organized and operating under the laws of New York, with its principal place of business located at 64 Beaver Street, Suite 415, New York, New York 10004.

## FACTUAL BACKGROUND

### The Business of 1 Global Capital and 1 West Capital

26.      Plaintiffs, 1 Global Capital and 1 West Capital, are affiliated entities that operate in the financial services industry, primarily by providing direct merchant cash advances ("**MCAs**") to businesses across the United States.  Through independent sales organizations, underwriters and other funding agents, Plaintiffs offered a variety of fast and flexible financing options, specializing in MCAs and other unsecured, short-term commercial financing.  Plaintiffs have served businesses in a variety of industries, including automotive, construction, e-commerce, events, franchise, hospitality, healthcare, manufacturing, retail, restaurant/bar, spa/salon, and transportation.

27.     Through its funding platform, Plaintiffs provided necessary capital for its merchant clients to invest in inventory, repair machinery, pay bills, upgrade technology, and otherwise operate their businesses. Under its MCA funding platform, Plaintiffs advanced those clients with working capital and, in return, Plaintiffs are paid either through daily, weekly or other periodic automated clearing house transactions or merchant credit card receivable splits against the future receivables of the merchant clients.

28.      On July 27, 2018 (the "**Petition Date**"), 1 Global Capital and 1 West Capital each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

29.     By order entered on August 6, 2018, 1 Global Capital's and 1 West Capital's bankruptcy cases were consolidated for procedural purposes and thereafter were jointly administered [ECF 25, Case No. 18-19121-RBR].

**Momentum's Automotive Dealership Business in California**

30.     MAM and MAG are entities within an organization, referred to herein as "**Momentum**," that owns several automotive dealerships in the cities of Fairfield and Vallejo in Solano County, California.

31.     Hassanally, a 39-year-old businessman from Fairfield, California, is the President and Owner of Momentum.  At age 28, he purchased his first automotive dealership. As of 2018, Hassanally expanded Momentum to include at least eight (8) different automotive dealerships in Solano County, California (collectively, the "**Dealerships**"), including:

a.  A Chrysler, Jeep, Dodge, and Ram dealership in Vallejo, California, operated by Vallejo CJD (the "**Vallejo CJD Dealership**");

b.  A Toyota and Scion dealership in Fairfield, California, operated by Fairfield Imports (the "**Fairfield Imports Dealership**");

c.  A Nissan dealership in Fairfield, California, operated by Fairfield Imports Two (the "**Fairfield Imports Two Dealership**");

d.  A Hyundai and Mitsubishi dealership in Fairfield, California, operated by Fairfield Imports Three (the "**Fairfield Imports Three Dealership**");

e.  A Kia dealership in Vallejo, California, operated by Vallejo Imports (the "**Vallejo Imports Dealership**");

f.  An Infiniti and Volkswagen dealership in Fairfield, California, operated by Maverick (the "**Maverick Dealership**");

g.  A Chrysler, Jeep, Dodge, and Ram dealership in Fairfield, California, operated by Fairfield CJD (the "**Fairfield CJD Dealership**"); and

h.  A Chevrolet dealership in San Jose, California, operated by RMH III (the "**RMH III Dealership**");

32.  Momentum has touted its network of Dealerships as the 124th largest automotive dealership group in the United States, with combined sales of $565 million in 2017.

33.  Momentum operates and manages these various Dealerships in a "coordinated fashion," sharing overhead, back office services, finances, financing, and management services. Upon information and belief, MAM is the entity that performs these shared operation and management services on behalf of all the Dealerships.

34.  Historically, Momentum has financed its acquisition of inventory of vehicles at the Dealerships through "floor plan loans" it obtained from various lenders, including BMO Harris Bank, N.A., BBVA Compass, and Toyota Motor Credit Corporation (the "**Floor Plan Lenders**").

35.     In addition to the financing it obtains from the Floor Plan Lenders, Momentum also borrowed funds for its business operations from "Bond Capital," a Canadian-based lender, with a current balance of approximately $28 million on these loans from Bond Capital.

36.     Momentum required additional financing beyond the funds provided by the Floor Plan Lenders and Bond Capital, and approached various merchant cash advance providers to obtain MCAs.

### Radium2 Advances Funds to Momentum and Seeks Participation from 1 Global Capital

37.     Radium2, like 1 Global Capital and 1 West Capital, is a financial services company that provides MCAs to businesses in need of capital.

38.     As of July 2017, Radium2 had advanced funds to Momentum through MCAs, and sought co-investors to participate in these MCAs it had provided to Momentum.  As a result, Radium2 discussed with 1 Global Capital the possibility of entering into an agreement under which 1 Global Capital would participate in the MCAs Radium2 provided to Momentum.

39.     The parties never finalized or entered into a participation agreement.  However, in July 2017, 1 Global Capital and Radium2 entered into an agreement, pursuant to which 1 Global Capital advanced to Radium2 the sum of $1,500,000.00, in exchange for future payments from Radium2 in the amount of $2,000,000.00 (the "**First Radium2 Agreement**").

40.     On or about December 29, 2017, Radium2 entered into a second agreement with 1 Global Capital, under which 1 Global Capital advanced to Radium2 the sum of $1,000,000.00, in exchange for future payments from Radium2 in the amount of $1,300,000.00, which was payable in 32 weekly payments of $40,625.00 (the "**Second Radium2 Agreement**").  A copy of the Second Radium2 Agreement is attached as **Exhibit 1**.

41.     The funds that 1 Global Capital advanced through the Second Radium2 Agreement were used by Radium2 to pay off the remaining amounts due to 1 Global Capital under the First Radium2 Agreement.  Accordingly, following the funding of the Second Radium2 Agreement, the First Radium2 Agreement was satisfied.

42.     Currently, the sum of $874,000.00 to be paid from Radium2 to 1 Global Capital remains outstanding on the Second Radium2 Agreement.

43.     On January 5, 2018, 1 Global Capital entered into a third agreement with Radium2, under which 1 Global Capital purchased future receivables from Radium2 in the amount of $1,190,000.00, in exchange for a purchase price paid to Radium2 in the amount of $1,000,000.00 (the "**Third Radium2 Agreement**").  The Third Radium2 Agreement is recorded in 1 Global Capital's records as Agreement #FG180103121.  A copy of the Third Radium2 Agreement is attached hereto as **Exhibit 2**.

44.     Currently, the sum of $943,000.00 in receivables to be paid from Radium2 to 1 Global Capital remains outstanding on the Third Radium2 Agreement.

**Momentum Required Additional Funds and Entered into the Merchant Agreements**

45.     In October 2017, Momentum was still in need of additional financing for the operation of its businesses.  Momentum was aware that 1 Global Capital was advancing funds to Radium2 in connection with the MCAs that Radium2 was providing to Momentum.  As a result, Momentum approached 1 Global Capital about the possibility of entering into MCAs directly with 1 Global Capital.

46.     1 Global Capital referred Momentum to its affiliated company, 1 West Capital, which maintains a California Finance Lenders License in accordance with the California Finance

Lenders Law and is authorized to engage in merchant cash advance services and other related activities throughout the State of California.

47.    Between October 23, 2017, and May 23, 2018, 1 West Capital entered into a series of nine (9) written Merchant Agreements for MCAs with Momentum (the "**Merchant Agreements**"), one (1) of which was entered into with MAG (d/b/a Momentum Auto Group), one (1) of which was entered into with MAM (d/b/a Momentum Auto Group), and seven (7) of which were entered into with MAM (d/b/a either Momentum Automotive Management or MAM).  In addition, 1 West Capital entered into a tenth Merchant Agreement with MAM in July 2018, but that agreement was not evidenced by a written agreement.

48.    The Merchant Agreements are transactions through which 1 West Capital, as the merchant cash advance company, provided working funds to Momentum.  In exchange for the advancement of these funds, Momentum authorized 1 West Capital to receive a fixed daily amount from Momentum's future receivables until such time as 1 West Capital received the full agreed-upon amount of future receivables.

49.    As a part of each of these Merchant Agreements, Hassanally personally guaranteed Momentum's obligations under the Merchant Agreements.

50.    Each of the Merchant Agreements also provided 1 West Capital a security interest in "all of Merchant's assets, including but not limited to, all now owned or hereafter acquired or arising accounts, inventory, machinery, furniture, fixtures, equipment, general intangibles, chattel paper, contract rights, documents, instrument, deposit accounts and investment property, and all cash and non-cash proceeds thereof (including, without limitation, insurance proceeds), and proceed of proceeds, all cash, future receivables and other accounts, rights of payment, and contractual rights, wherever located, whether now owned or hereafter acquired or arising, and all

proceeds and products thereof" (the "**Collateral**").    Merchant Agreements, Terms and Conditions, at IV(A).

51.    1 West Capital's security interest in the Collateral would continue to exist until 1 West Capital was paid in full for the "Purchased Amount" of future receivables under each of the Merchant Agreements.

52.    In addition, the Merchant Agreements each include a "No Stacking" addendum, which provides that the Merchant was "prohibited from initiating a Cash Advance or Loan Product Advance with another Merchant Cash Advance company other than" 1 West Capital (the "**No Stacking Addendum**").  In the event the Merchant entered into a cash advance agreement with another Merchant Cash Advance company other than 1 West Capital, the Merchant would be in breach of contract under the Merchant Agreement.

53.    On October 13, 2017, 1 West Capital and MAG (d/b/a Momentum Auto Group) entered into the first of the Merchant Agreements, under which 1 West Capital purchased future receivables from MAG in the amount of $6,750,000.00, in exchange for a purchase price paid to MAG in the amount of $5,000,000.00 ("**Merchant Agreement No. 1**").  Merchant Agreement No. 1 is recorded in 1 West Capital's records as Agreement #FG171012074.  A copy of Merchant Agreement No. 1 is attached hereto as **Exhibit 3**.

54.    At the direction of Momentum, 1 West Capital issued the $5,000,000.00 advance by wire transfer not to a bank account of MAG, but rather to an account in the name of MAM.

### The Framework Agreement / Subordination and Standstill Agreements

55.    In February 2018, Momentum had fallen behind in its obligations under Merchant Agreement No. 1, including its obligation to pay its receivables to 1 West Capital as required under Merchant Agreement No. 1.

56.     At that time, Momentum was also approximately $7.5 million behind in making payments on its loans from the Floor Plan Lenders, owed approximately $6.0 million in California sales tax, and $2.0 million in payroll taxes.  Additionally, Momentum advised that it required approximately $4.0 million in additional funds to complete renovations to one of its Dealerships, Momentum Toyota of Fairfield, *i.e.*, the Fairfield Imports Dealership.

57.     As a result, Momentum approached 1 West Capital about the possibility of obtaining additional cash advances.  The purpose of these additional cash advances would be to provide Momentum with additional cash flow to operate its business, which would afford Momentum time to explore a potential sale of its Dealerships or, alternatively, to obtain a bridge loan to satisfy its existing debts and keep the Dealerships in operation until cash flow improved.

58.     To that end, MAM entered into a Framework Agreement with 1 West Capital as of February 14, 2018 (the "**Framework Agreement**"), under which MAM agreed that all other merchant cash advance providers that had also provided MCAs to Momentum (the "**Junior MCA Creditors**"), as further identified below in Paragraph 63, would enter into a Subordination and Standstill Agreement with 1 West Capital.  A copy of the Framework Agreement is attached hereto as **Exhibit 4**.

59.     Specifically, under the Framework Agreement, Momentum agreed that its Junior MCA Creditors:

a.   would agree not to demand payment from Momentum on their MCAs;

b.   would not take any action to jeopardize the financial condition of Momentum or dilute 1 West Capital's interest in Momentum's receivables; and

c.   would agree to subordinate all existing amounts owed from Momentum to the Junior MCA Creditors under their MCA agreements to those amounts owed

14

from Momentum to 1 West Capital pursuant to 1 West Capital's prior advances under Merchant Agreement No. 1 and any additional advances that 1 West Capital would fund in the future.

60.    As of the time the parties entered into the Framework Agreement, 1 West Capital and MAM agreed, as part of this Framework Agreement, that the remaining outstanding amount of $6,750,000.00 in receivables that was due and payable to 1 West Capital under Merchant Agreement No. 1 was to remain in full force and effect.

61.    As part of the Framework Agreement, 1 West Capital committed to "fund up to $15,000,000.00 USD in tranches of $2,500,000.00 as cash flow is needed."

62.    Momentum further agreed under the Framework Agreement to convey to 1 West Capital, as additional collateral: (a) the rights to "the Dodge Ram Dealership located at 4345 Sonoma Blvd. Vallejo, CA 94589," which, upon information and belief, is owned by Vallejo CJD, *i.e.*, the Vallejo CJD Dealership; and (b) "the equity in Rahim Hassanally's home," *i.e.*, the Residence. This additional collateral would be available "to liquidate the existing [receivables] and any new [receivables advanced] via the tranches."  Framework Agreement, at p. 3.

63.    As contemplated by the Framework Agreement, 1 West Capital entered into the following Subordination and Standstill Agreements (the "**Subordination and Standstill Agreements**") with the Junior MCA Creditors:

a.    Radium2 entered into a Subordination and Standstill Agreement with 1 West Capital as of February 14, 2018, a copy of which is attached hereto as **Exhibit 5**.

b. Capital Stack entered into a Subordination and Standstill Agreement with 1 West Capital as of February 14, 2018, a copy of which is attached hereto as **Exhibit 6**.

c. Platinum Rapid Funding entered into a Subordination and Standstill Agreement with 1 West Capital as of February 14, 2018, a copy of which is attached hereto as **Exhibit 7**.

d. Wall Street entered into a Subordination and Standstill Agreement with 1 West Capital as of February 14, 2018, a copy of which is attached hereto as **Exhibit 8**.

64. The terms of the Subordination and Standstill Agreements with the Junior MCA Creditors are nearly identical, with each providing the following:

a. Any receivable amounts owed by Momentum to the Junior MCA Creditors ("**Junior Receivables**") were expressly subordinated to any receivable amounts owed by Momentum to 1 West Capital ("**Senior Receivables**"). Subordination Agreement, at § III(2).

b. The Junior MCA Creditors agreed to forebear from and not collect upon any Junior Receivables until all Senior Receivables owed to 1 West Capital had been paid in full. Subject to this forbearance agreement, the Junior MCA Creditors would be permitted to receive 10% (in the case of Capital Stack, the rate was 20%) of their scheduled payments from Momentum, but only if Momentum maintained adequate liquidity and business cash flows to make such scheduled payments. Subordination Agreement, at § III(5).

**Additional Advances From 1 West Capital to MAM (Merchant Agreement Nos. 2-7)**

65.    Consistent with the agreement that 1 West Capital reached with Momentum under the Framework Agreement, 1 West Capital began to provide additional funds to Momentum through subsequent Merchant Agreements.

66.    These additional Merchant Agreements included the following transactions:

a.    Merchant Agreement No. 2, dated February 15, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $2,600,000.00 ("**Merchant Agreement No. 2**").  Merchant Agreement No. 2 is recorded in 1 West Capital's records as Agreement #FG180215037.  A copy of Merchant Agreement No. 2 is attached hereto as **Exhibit 9**.

b.    Merchant Agreement No. 3, dated February 15, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $2,600,000.00 ("**Merchant Agreement No. 3**").  Merchant Agreement No. 3 is recorded in 1 West Capital's records as Agreement #FG180215089.  A copy of Merchant Agreement No. 3 is attached hereto as **Exhibit 10**.

c.    Merchant Agreement No. 4, dated February 15, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $2,600,000.00 ("**Merchant Agreement No. 4**").  Merchant Agreement No. 4 is recorded in 1 West Capital's records as Agreement #FG180215092. A copy of Merchant Agreement No. 4 is attached hereto as **Exhibit 11**.

17

    d.   Merchant Agreement No. 5 dated February 15, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $2,600,000.00 ("**Merchant Agreement No. 5**").  Merchant Agreement No. 5 is recorded in 1 West Capital's records as Agreement #FG180215095. A copy of Merchant Agreement No. 5 is attached hereto as **Exhibit 12**.

    e.   Merchant Agreement No. 6, dated February 28, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $2,600,000.00 ("**Merchant Agreement No. 6**").  Merchant Agreement No. 6 is recorded in 1 West Capital's records as Agreement #FG180227097. A copy of Merchant Agreement No. 6 is attached hereto as **Exhibit 13**.

    f.   Merchant Agreement No. 7, dated February 28, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $2,600,000.00 ("**Merchant Agreement No. 7**").  Merchant Agreement No. 7 is recorded in 1 West Capital's records as Agreement #FG180227100. A copy of Merchant Agreement No. 7 is attached hereto as **Exhibit 14**.

**The Addendum to Framework Agreement and Merchant Agreement Nos. 8-9**

67.    On April 23, 2018, MAM entered into an Addendum to Framework Agreement with 1 West Capital as of April 23, 2018 (the "**Addendum to Framework Agreement**"), under which MAM committed to "fund up to an additional $5,000,000.00 USD via wire transfer, as needed, until either the sale of the dealerships has transpired, bridge financing has been obtained

or cash flow has improved."  A copy of that Addendum to Framework Agreement is attached hereto as **Exhibit 15**.

68.    In addition to the Collateral previously pledged, Momentum further agreed under the Framework Agreement to convey to 1 West Capital, as additional collateral, a security interest in: (a) the vehicles at all the Momentum Dealerships that were in transit from manufacturers, on lots and "Demonstrators," and "sold but not funded [by] Third Party Banks;" and (b) "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof."  This additional Collateral would be released upon "satisfaction of all [receivables and other amounts] owed to 1 West Capital."  Addendum to Framework Agreement, at p. 2.

69.    In connection with the execution of the Addendum to Framework Agreement, 1 West Capital entered into the following Merchant Agreements:

> a.    Merchant Agreement No. 8, dated April 23, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $7,800,000.00, in exchange for a purchase price to paid to MAM in the amount of $5,200,000.00 ("**Merchant Agreement No. 8**").  Merchant Agreement No. 8 is recorded in 1 West Capital's records as Agreement #FG180423093. A copy of Merchant Agreement No. 8 is attached hereto as **Exhibit 16**.

> b.    Merchant Agreement No. 9, dated May 23, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $8,100,000.00, in exchange for a purchase price to paid to MAM in the amount of $5,400,000.00 ("**Merchant Agreement No. 9**").  Merchant Agreement No. 9

is recorded in 1 West Capital's records as Agreement #FG1805323121. A copy of Merchant Agreement No. 9 is attached hereto as **Exhibit 17**.

### 1 West Capital Seeks to Protect its Security Interest in the Momentum Collateral

70.     In July 2018, Momentum was continuing to be in default in delivering its receivables to 1 West Capital, and indicated that it required even more financing to continue the operation of its Dealerships.

71.     The Merchant Agreements authorized 1 West Capital, upon a default by Momentum, to file financing statements, as 1 West Capital deemed appropriate, to protect 1 West Capital's interest and rights under the Merchant Agreements.

72.     To that end, on or about July 2, 2018, 1 West Capital recorded a UCC-1 Financing Statement, Filing Number 18-7656981475 ("**UCC-1**") with the Office of the Secretary of State, California.  The UCC-1 recognizes 1 West Capital's security interest in (among other things) all assets of MAM, MAG, the Dealerships, and other affiliated companies.  A copy of the UCC-1 is attached hereto as **Exhibit 18**.

### Momentum Seeks Additional Capital / the Binding Letter of Understanding

73.     After 1 West Capital recorded the UCC-1 and perfected its security interest, Momentum continued to experience significant cash flow issues, and advised 1 West Capital that it was exploring opportunities to sell its businesses or otherwise obtain additional funding.  To that end, in July 2018, Momentum retained a restructuring officer to attempt to assist the related Momentum companies in exploring those opportunities, managing the existing MCA contracts and loan arrangements, and resolving the ongoing cash flow problems.

74.     On July 19, 2018, MAG entered into a Binding Letter of Understanding with "1st Global Capital Financial Services" (the "**Binding LOU**"), a copy of which is attached hereto as

**Exhibit 19**.  There is no such legal entity by the name of "1st Global Capital Financial Services." However, 1 Global Capital has a registered fictitious name in the State of Florida of "1 st Global Capital LLC" and has used the name of "1st Global Capital" in its financial services business.

75.     Under the Binding LOU, "1st Global Capital Financial Services" (*i.e.*, not 1 West Capital) committed to advance $3,000,000.00 in additional funds to MAG, based on an understanding that Momentum: (i) had entered into an agreement to sell its Dealerships and overall business through Dave Cantin Group, a mergers and acquisition advisor in the automotive industry; and (ii) was securing additional funding from "Bond Capital."

76.     As part of the Binding LOU, "1st Global Capital Financial Services" (*i.e.*, not 1 West Capital, the company that entered into the Merchant Agreements and Framework Agreement), purported to release Hassanally from "any and all known and unknown claims or causes of action it may have against him."  Binding LOU, at ¶ 4.  Through the Binding LOU, "1st Global Capital Financial Services" further purported to release Hassanally from his personal guarantee obligations to Radium2.  *Id*.

77.     The Binding LOU was subject to Hassanally "agreeing to sell Momentum and further agreeing to accept any offer greater than $75,000,000 of Blue-Sky Value."  Binding LOU, at ¶ 7.  No sale of the Dealerships and other Momentum businesses has occurred.

78.     On July 23, 2018, 1 West Capital entered into an agreement which MAM, under which 1 West Capital advanced the sum of $3,000,000.00 to MAM in exchange for future receivables from MAM in the amount of $3,900,000.00 ("**Merchant Agreement No. 10**"). Upon information and belief, there is no written agreement reflecting Merchant Agreement No. 10.  However, the parties agreed that the terms and conditions of Merchant Agreement No. 10 would be consistent with those from the written Merchant Agreement Nos. 1 through 9.

79.    In November 2018, in the face of mounting financial problems, Momentum closed all its Dealerships, except for a Chevrolet dealership that is majority-owned by General Motors.  Momentum indicated that many factors led to the closing of these Dealerships, such as delays in the permitting for the renovation of one of its Dealerships, but that the driving force for the closure of these Dealerships was the wildfire in Butte County, California, which started on November 8, 2018.

80.    Momentum indicated that the closing of these Dealerships was temporary, and that Momentum expected that the Dealerships would "reopen under new management before the end of the year."

81.    As of November 21, 2018, the California DMV Investigations Division confirmed it had an "open and ongoing investigation on the Momentum Auto Group."

## COUNT I – BREACH OF MERCHANT AGREEMENT NO. 1
### (Against MAG AND MAM)[2]

82.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

83.    MAG executed and delivered Merchant Agreement No. 1, dated October 13, 2017, whereby 1 West Capital purchased future receivables from MAG in the amount of $6,750,000.00, in exchange for a purchase price paid to MAG in the amount of $5,000,000.00.

84.    MAG, by and through its agents, directed 1 West Capital to transfer the $5,000,000.00 purchase price to MAM.  By virtue of this substitution of MAM in place of MAG, as the party receiving the purchase price, MAM agreed to be jointly obligated, along with MAG, for MAG's duties and obligations under Merchant Agreement No. 1.

---

[2] All counts in this action are being brought by 1 West Capital, unless otherwise noted.

85.     1 West Capital duly transferred to MAM the sum of $5,000,000.00, in good faith and with the reasonable expectation that MAM and MAG would make daily payments to 1 West Capital in the amount of $45,918.37, until such time that MAM and MAG paid the full amount of the purchased future receivables, in accordance with the terms and conditions of Merchant Agreement No. 1.

86.     1 West Capital faithfully and fully fulfilled all its obligations to perform under Merchant Agreement No. 1.

87.     MAM and MAG failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 1.

88.     MAM and MAG's failure to pay 1 West Capital the amounts when due in accordance with the terms of Merchant Agreement No. 1 constitutes a default pursuant to the terms and conditions of Merchant Agreement No. 1.

89.     Under Section II(E) of Merchant Agreement No. 1, MAM and MAG agreed they would not permit the payments, accounts, future receivables and other collateral to become encumbered by liens or other encumbrances.

90.     In accordance with Section III(A) of Merchant Agreement No. 1, MAM and MAG, as "Merchant," covenanted and agreed that it would not "enter into any sale, financing, agreement, commitment or other arrangement that is secured by, [t]ransfers, relates to or otherwise involves Merchant's income or future receivables with any person or entity other than [1 West Capital]." ("**Other Financing Arrangements**").

91.     Similarly, under the No Stacking Addendum, MAM and MAG agreed that they would be in breach of contract under Merchant Agreement No. 1 in the event they entered into a

cash advance agreement with another Merchant Cash Advance company other than 1 West Capital.

92.    Under Section V(8) of Merchant Agreement No. 1, MAM and MAG agreed that a default under the terms, covenants and conditions of any of its other Merchant Agreements with 1 West Capital constituted a default under Merchant Agreement No. 1.

93.    Notwithstanding these representations and warranties: Momentum has permitted its payments, accounts, receivables and other collateral to become encumbered by liens and other encumbrances; Momentum entered into Other Financing Arrangements, including cash advances with companies other than 1 West Capital; and Momentum defaulted under the other Merchant Agreements.

94.    As a result of MAM and MAG's breaches of Merchant Agreement No. 1, 1 West Capital has sustained damages in the sum of the amount constituting the "Purchased Amount," less payments MAM and MAG have made to 1 West Capital under Merchant Agreement No. 1, plus attorneys' fees, court costs, and other reasonable costs associated with MAM and MAG's breach.

WHEREFORE, 1 West Capital demands judgment against MAM and MAG for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

### COUNT II – BREACH OF GUARANTY: MERCHANT AGREEMENT NO. 1
**(Against Hassanally)**

95.    1 West Capital incorporates and re-alleges paragraphs 1 through 81, and 83 through 94, of this Complaint as though fully set forth herein.

96.    MAG executed and delivered Merchant Agreement No. 1 to 1 West Capital, agreeing to pay future receivables to 1 West Capital in the amount of $6,750,000.00, in exchange for an immediate purchase price of $5,000,000.00.

97.    Merchant Agreement No. 1 includes Hassanally's personal guaranty of MAM and MAG's performance of all covenants, representations and warranties made by MAM and MAG in Merchant Agreement No. 1.

98.    Hassanally, as guarantor, executed and delivered Merchant Agreement No. 1, as endorser and unconditional guarantor of payment.

99.    1 West Capital is the provider under Merchant Agreement No. 1, and has performed its obligations and conditions precedent to enforce its terms and conditions. Specifically, 1 West Capital duly transferred to MAM the purchase price, in good faith and with the reasonable expectation that MAM and MAG would make the required daily payments to 1 West Capital, until such time that MAM and MAG delivered the full amount of the purchased future receivables, in accordance with the terms and conditions of Merchant Agreement No. 1.

100.    MAM and MAG failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 1, and breached their other obligations under Merchant Agreement No. 1, as further detailed in Paragraphs 83 through 94 of this Complaint.

101.    As a result of MAM and MAG's breaches, Hassanally, as guarantor under Merchant Agreement No. 1, owes 1 West Capital the "purchased amount," as defined therein, less payments MAM and MAG have made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM and MAG's breach and Hassanally's personal guaranty contained therein.

WHEREFORE, 1 West Capital demands judgment against Hassanally for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

### COUNT III – BREACH OF MERCHANT AGREEMENT NO. 2
### (Against MAM and MAG)

102.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

103.    MAM (d/b/a Momentum Auto Group) executed and delivered Merchant Agreement No. 2, dated February 15, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $2,600,000.00.

104.    By virtue of including a d/b/a of "Momentum Auto Group" as the Merchant under this Merchant Agreement No. 2, MAG agreed to be jointly obligated, along with MAM, for MAM's duties and obligations under Merchant Agreement No. 2.

105.    1 West Capital duly transferred to MAM the sum of $2,600,000.00, in good faith and with the reasonable expectation that MAM and MAG would make daily payments to 1 West Capital in the amount of $20,634.92, until such time that MAM and MAG paid the full amount of the purchased future receivables, in accordance with the terms and conditions of Merchant Agreement No. 2.

106.    1 West Capital faithfully and fully fulfilled all its obligations to perform under Merchant Agreement No. 2.

107.    MAM and MAG failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 2.

108.    MAM and MAG's failure to pay 1 West Capital the amounts when due in accordance with the terms of Merchant Agreement No. 2 constitutes a default pursuant to the terms and conditions of Merchant Agreement No. 2.

109.    Under Section II(E) of Merchant Agreement No. 2, MAM and MAG agreed they would not permit the payments, accounts, future receivables and other collateral to become encumbered by liens or other encumbrances.

110.    In accordance with Section III(A) of Merchant Agreement No. 2, MAM and MAG, as "Merchant," covenanted and agreed that they would not enter into any Other Financing Arrangements.

111.    Similarly, under the No Stacking Addendum, MAM and MAG agreed that they would be in breach of contract under Merchant Agreement No. 2 in the event they entered into a cash advance agreement with another Merchant Cash Advance company other than 1 West Capital.

112.    Under Section V(8) of Merchant Agreement No. 2, MAM and MAG agreed that a default under the terms, covenants and conditions of any of their other Merchant Agreements with 1 West Capital constituted a default under Merchant Agreement No. 2.

113.    Notwithstanding these representations and warranties: Momentum has permitted its payments, accounts, receivables and other collateral to become encumbered by liens and other encumbrances; Momentum entered into Other Financing Arrangements, including cash advances with companies other than 1 West Capital; and Momentum defaulted under the other Merchant Agreements.

114.    As a result of MAM and MAG's breaches of Merchant Agreement No. 2, 1 West Capital has sustained damages in the sum of the amount constituting the "Purchased Amount,"

less payments MAM and MAG have made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM and MAG's breach.

WHEREFORE, 1 West Capital demands judgment against MAM and MAG for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT IV – BREACH OF GUARANTY: MERCHANT AGREEMENT NO. 2
### (Against Hassanally)

115.    1 West Capital incorporates and re-alleges paragraphs 1 through 81, and 103 through 114, of this Complaint as though fully set forth herein.

116.    MAM and MAG executed and delivered Merchant Agreement No. 2 to 1 West Capital, agreeing to pay future receivables to 1 West Capital in the amount of $3,900,000.00, in exchange for an immediate purchase price of $2,600,000.00.

117.    Merchant Agreement No. 2 includes Hassanally's personal guaranty of MAM and MAG's performance of all covenants, representations and warranties made by MAM and MAG in Merchant Agreement No. 2.

118.    Hassanally, as guarantor, executed and delivered Merchant Agreement No. 2, as endorser and unconditional guarantor of payment.

119.    1 West Capital is the provider under Merchant Agreement No. 2, and has performed its obligations and conditions precedent to enforce its terms and conditions. Specifically, 1 West Capital duly transferred to MAM the purchase price, in good faith and with the reasonable expectation that MAM and MAG would make the required daily payments to 1 West Capital, until such time that MAM and MAG paid the full amount of the purchased future receivables, in accordance with the terms and conditions of Merchant Agreement No. 2.

120.    MAM and MAG failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 2, and breached their other obligations under Merchant Agreement No. 2, as further detailed in Paragraphs 103 through 114 of this Complaint.

121.    As a result of MAM and MAG's breaches, Hassanally, as guarantor under Merchant Agreement No. 2, owes 1 West Capital the "purchased amount," as defined therein, less payments MAM and MAG have made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM and MAG's breach and Hassanally's personal guaranty contained therein.

WHEREFORE, 1 West Capital demands judgment against Hassanally for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT V – BREACH OF MERCHANT AGREEMENT NO. 3
### (Against MAM)

122.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

123.    MAM executed and delivered Merchant Agreement No. 3, dated February 15, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $2,600,000.00.

124.    1 West Capital faithfully and fully fulfilled all its obligations to perform under Merchant Agreement No. 3.

125.    MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 3.

126.    MAM's failure to pay 1 West Capital the amounts when due in accordance with the terms of Merchant Agreement No. 3 constitutes a default pursuant to the terms and conditions of Merchant Agreement No. 3.

127.    Under Section II(E) of Merchant Agreement No. 3, MAM agreed it would not permit the payments, accounts, future receivables and other collateral to become encumbered by liens or other encumbrances.

128.    In accordance with Section III(A) of Merchant Agreement No. 3, MAM, as "Merchant," covenanted and agreed that it would not enter into any Other Financing Arrangements.

129.    Similarly, under the No Stacking Addendum, MAM agreed that it would be in breach of contract under Merchant Agreement No. 3 in the event it entered into a cash advance agreement with another Merchant Cash Advance company other than 1 West Capital.

130.    Notwithstanding these representations and warranties: Momentum has permitted its payments, accounts, receivables and other collateral to become encumbered by liens and other encumbrances; Momentum entered into Other Financing Arrangements, including cash advances with companies other than 1 West Capital; and Momentum defaulted under the other Merchant Agreements.

131.    Under Section V(8) of Merchant Agreement No. 3, MAM agreed that a default under the terms, covenants and conditions of any of its other Merchant Agreements with 1 West Capital constituted a default under Merchant Agreement No. 3.

132.    As a result of MAM's breaches of Merchant Agreement No. 3, 1 West Capital has sustained damages in the sum of the amount constituting the "Purchased Amount," less payments

MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach.

WHEREFORE, 1 West Capital demands judgment against MAM for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT VI – BREACH OF GUARANTY: MERCHANT AGREEMENT NO. 3
### (Against Hassanally)

133.    1 West Capital incorporates and re-alleges paragraphs 1 through 81, and 123 through 132, of this Complaint as though fully set forth herein.

134.    MAM executed and delivered Merchant Agreement No. 3 to 1 West Capital, agreeing to pay future receivables to 1 West Capital in the amount of $3,900,000.00, in exchange for an immediate purchase price of $2,600,000.00.

135.    Merchant Agreement No. 3 includes Hassanally's personal guaranty of MAM's performance of all covenants, representations and warranties made by MAM in Merchant Agreement No. 3.

136.    Hassanally, as guarantor, executed and delivered Merchant Agreement No. 3, as endorser and unconditional guarantor of payment.

137.    1 West Capital is the provider under Merchant Agreement No. 3, and has performed its obligations and conditions precedent to enforce its terms and conditions. Specifically, 1 West Capital duly transferred to MAM the purchase price, in good faith and with the reasonable expectation that MAM would make the required daily payments to 1 West Capital, until such time that MAM paid the full amount of the purchased future receivables, in accordance with the terms and conditions of Merchant Agreement No. 3.

138.    MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 3, and breached its other obligations under Merchant Agreement No. 3, as further detailed in Paragraphs 123 through 132 of this Complaint.

139.    As a result of MAM's breaches, Hassanally, as guarantor under Merchant Agreement No. 3, owes 1 West Capital the "purchased amount," as defined therein, less payments MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach and Hassanally's personal guaranty contained therein.

WHEREFORE, 1 West Capital demands judgment against Hassanally for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT VII – BREACH OF MERCHANT AGREEMENT NO. 4
### (Against MAM)

140.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

141.    MAM executed and delivered Merchant Agreement No. 4, dated February 15, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $2,600,000.00.

142.    1 West Capital faithfully and fully fulfilled all its obligations to perform under Merchant Agreement No. 4.

143.    MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 4.

144.    MAM's failure to pay 1 West Capital the amounts when due in accordance with the terms of Merchant Agreement No. 4 constitutes a default pursuant to the terms and conditions of Merchant Agreement No. 4.

145.    Under Section II(E) of Merchant Agreement No. 4, MAM agreed it would not permit the payments, accounts, future receivables and other collateral to become encumbered by liens or other encumbrances.

146.    In accordance with Section III(A) of Merchant Agreement No. 4, MAM, as "Merchant," covenanted and agreed that it would not enter into any Other Financing Arrangements.

147.    Similarly, under the No Stacking Addendum, MAM agreed that it would be in breach of contract under Merchant Agreement No. 4 in the event it entered into a cash advance agreement with another Merchant Cash Advance company other than 1 West Capital.

148.    Notwithstanding these representations and warranties: Momentum has permitted its payments, accounts, receivables and other collateral to become encumbered by liens and other encumbrances; Momentum entered into Other Financing Arrangements, including cash advances with companies other than 1 West Capital; and Momentum defaulted under the other Merchant Agreements.

149.    Under Section V(8) of Merchant Agreement No. 4, MAM agreed that a default under the terms, covenants and conditions of any of its other Merchant Agreements with 1 West Capital constituted a default under Merchant Agreement No. 4.

150.    As a result of MAM's breaches of Merchant Agreement No. 4, 1 West Capital has sustained damages in the sum of the amount constituting the "Purchased Amount," less payments

MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach.

WHEREFORE, 1 West Capital demands judgment against MAM for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT VIII – BREACH OF GUARANTY: MERCHANT AGREEMENT NO. 4
### (Against Hassanally)

151.    1 West Capital incorporates and re-alleges paragraphs 1 through 81, and 141 through 150, of this Complaint as though fully set forth herein.

152.    MAM executed and delivered Merchant Agreement No. 4 to 1 West Capital, agreeing to pay future receivables to 1 West Capital in the amount of $3,900,000.00, in exchange for an immediate purchase price of $2,600,000.00.

153.    Merchant Agreement No. 4 includes Hassanally's personal guaranty of MAM's performance of all covenants, representations and warranties made by MAM in Merchant Agreement No. 4.

154.    Hassanally, as guarantor, executed and delivered Merchant Agreement No. 4, as endorser and unconditional guarantor of payment.

155.    1 West Capital is the provider under Merchant Agreement No. 4, and has performed its obligations and conditions precedent to enforce its terms and conditions. Specifically, 1 West Capital duly transferred to MAM the purchase price, in good faith and with the reasonable expectation that MAM would make the required daily payments to 1 West Capital, until such time that MAM paid the full amount of the purchased future receivables, in accordance with the terms and conditions of Merchant Agreement No. 4.

156. MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 4, and breached its other obligations under Merchant Agreement No. 4, as further detailed in Paragraphs 141 through 150 of this Complaint.

157. As a result of MAM's breaches, Hassanally, as guarantor under Merchant Agreement No. 4, owes 1 West Capital the "purchased amount," as defined therein, less payments MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach and Hassanally's personal guaranty contained therein.

WHEREFORE, 1 West Capital demands judgment against Hassanally for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT IX – BREACH OF MERCHANT AGREEMENT NO. 5
### (Against MAM)

158. 1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

159. MAM executed and delivered Merchant Agreement No. 5 dated February 15, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $2,600,000.00.

160. 1 West Capital faithfully and fully fulfilled all its obligations to perform under Merchant Agreement No. 5.

161. MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 5.

162.    MAM's failure to pay 1 West Capital the amounts when due in accordance with the terms of Merchant Agreement No. 5 constitutes a default pursuant to the terms and conditions of Merchant Agreement No. 5.

163.    Under Section II(E) of Merchant Agreement No. 5, MAM agreed it would not permit the payments, accounts, future receivables and other collateral to become encumbered by liens or other encumbrances.

164.    In accordance with Section III(A) of Merchant Agreement No. 5, MAM, as "Merchant," covenanted and agreed that it would not enter into any Other Financing Arrangements.

165.    Similarly, under the No Stacking Addendum, MAM agreed that it would be in breach of contract under Merchant Agreement No. 5 in the event it entered into a cash advance agreement with another Merchant Cash Advance company other than 1 West Capital.

166.    Notwithstanding these representations and warranties: Momentum has permitted its payments, accounts, receivables and other collateral to become encumbered by liens and other encumbrances; Momentum entered into Other Financing Arrangements, including cash advances with companies other than 1 West Capital; and Momentum defaulted under the other Merchant Agreements.

167.    Under Section V(8) of Merchant Agreement No. 5, MAM agreed that a default under the terms, covenants and conditions of any of its other Merchant Agreements with 1 West Capital constituted a default under Merchant Agreement No. 5.

168.    As a result of MAM's breaches of Merchant Agreement No. 5, 1 West Capital has sustained damages in the sum of the amount constituting the "Purchased Amount," less payments

MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach.

WHEREFORE, 1 West Capital demands judgment against MAM for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT X – BREACH OF GUARANTY: MERCHANT AGREEMENT NO. 5
### (Against Hassanally)

169.    1 West Capital incorporates and re-alleges paragraphs 1 through 81, and 159 through 168, of this Complaint as though fully set forth herein.

170.    MAM executed and delivered Merchant Agreement No. 5 to 1 West Capital, agreeing to pay future receivables to 1 West Capital in the amount of $3,900,000.00, in exchange for an immediate purchase price of $2,600,000.00.

171.    Merchant Agreement No. 5 includes Hassanally's personal guaranty of MAM's performance of all covenants, representations and warranties made by MAM in Merchant Agreement No. 5.

172.    Hassanally, as guarantor, executed and delivered Merchant Agreement No. 5, as endorser and unconditional guarantor of payment.

173.    1 West Capital is the provider under Merchant Agreement No. 5, and has performed its obligations and conditions precedent to enforce its terms and conditions. Specifically, 1 West Capital duly transferred to MAM the purchase price, in good faith and with the reasonable expectation that MAM would make the required daily payments to 1 West Capital, until such time that MAM paid the full amount of the purchased future receivables, in accordance with the terms and conditions of Merchant Agreement No. 5.

174.    MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 5, and breached its other obligations under Merchant Agreement No. 5, as further detailed in Paragraphs 159 through 168 of this Complaint.

175.    As a result of MAM's breaches, Hassanally, as guarantor under Merchant Agreement No. 5, owes 1 West Capital the "purchased amount," as defined therein, less payments MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach and Hassanally's personal guaranty contained therein.

WHEREFORE, 1 West Capital demands judgment against Hassanally for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT XI – BREACH OF MERCHANT AGREEMENT NO. 6
**(Against MAM)**

176.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

177.    MAM executed and delivered Merchant Agreement No. 6, dated February 28, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $2,600,000.00.

178.    1 West Capital faithfully and fully fulfilled all its obligations to perform under Merchant Agreement No. 6.

179.    MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 6.

180.    MAM's failure to pay 1 West Capital the amounts when due in accordance with the terms of Merchant Agreement No. 6 constitutes a default pursuant to the terms and conditions of Merchant Agreement No. 6.

181.    Under Section II(E) of Merchant Agreement No. 6, MAM agreed it would not permit the payments, accounts, future receivables and other collateral to become encumbered by liens or other encumbrances.

182.    In accordance with Section III(A) of Merchant Agreement No. 6, MAM, as "Merchant," covenanted and agreed that it would not enter into any Other Financing Arrangements.

183.    Similarly, under the No Stacking Addendum, MAM agreed that it would be in breach of contract under Merchant Agreement No. 6 in the event it entered into a cash advance agreement with another Merchant Cash Advance company other than 1 West Capital.

184.    Notwithstanding these representations and warranties: Momentum has permitted its payments, accounts, receivables and other collateral to become encumbered by liens and other encumbrances; Momentum entered into Other Financing Arrangements, including cash advances with companies other than 1 West Capital; and Momentum defaulted under the other Merchant Agreements.

185.    Under Section V(8) of Merchant Agreement No. 6, MAM agreed that a default under the terms, covenants and conditions of any of its other Merchant Agreements with 1 West Capital constituted a default under Merchant Agreement No. 6.

186.    As a result of MAM's breaches of Merchant Agreement No. 6, 1 West Capital has sustained damages in the sum of the amount constituting the "Purchased Amount," less payments

MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach.

WHEREFORE, 1 West Capital demands judgment against MAM for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

### COUNT XII – BREACH OF GUARANTY: MERCHANT AGREEMENT NO. 6
### (Against Hassanally)

187.    1 West Capital incorporates and re-alleges paragraphs 1 through 81, and 177 through 186, of this Complaint as though fully set forth herein.

188.    MAM executed and delivered Merchant Agreement No. 6 to 1 West Capital, agreeing to pay future receivables to 1 West Capital in the amount of $3,900,000.00, in exchange for an immediate purchase price of $2,600,000.00.

189.    Merchant Agreement No. 6 includes Hassanally's personal guaranty of MAM's performance of all covenants, representations and warranties made by MAM in Merchant Agreement No. 6.

190.    Hassanally, as guarantor, executed and delivered Merchant Agreement No. 6, as endorser and unconditional guarantor of payment.

191.    1 West Capital is the provider under Merchant Agreement No. 6, and has performed its obligations and conditions precedent to enforce its terms and conditions. Specifically, 1 West Capital duly transferred to MAM the purchase price, in good faith and with the reasonable expectation that MAM would make the required daily payments to 1 West Capital, until such time that MAM paid the full amount of the purchased future receivables, in accordance with the terms and conditions of Merchant Agreement No. 6.

192.    MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 6, and breached its other obligations under Merchant Agreement No. 6, as further detailed in Paragraphs 177 through 186 of this Complaint.

193.    As a result of MAM's breaches, Hassanally, as guarantor under Merchant Agreement No. 6, owes 1 West Capital the "purchased amount," as defined therein, less payments MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach and Hassanally's personal guaranty contained therein.

WHEREFORE, 1 West Capital demands judgment against Hassanally for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT XIII – BREACH OF MERCHANT AGREEMENT NO. 7
### (Against MAM)

194.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

195.    MAM executed and delivered Merchant Agreement No. 7, dated February 28, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $2,600,000.00.

196.    1 West Capital faithfully and fully fulfilled all its obligations to perform under Merchant Agreement No. 7.

197.    MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 7.

198.    MAM's failure to pay 1 West Capital the amounts when due in accordance with the terms of Merchant Agreement No. 7 constitutes a default pursuant to the terms and conditions of Merchant Agreement No. 7.

199.    Under Section II(E) of Merchant Agreement No. 7, MAM agreed it would not permit the payments, accounts, future receivables and other collateral to become encumbered by liens or other encumbrances.

200.    In accordance with Section III(A) of Merchant Agreement No. 7, MAM, as "Merchant," covenanted and agreed that it would not enter into any Other Financing Arrangements.

201.    Similarly, under the No Stacking Addendum, MAM agreed that it would be in breach of contract under Merchant Agreement No. 7 in the event it entered into a cash advance agreement with another Merchant Cash Advance company other than 1 West Capital.

202.    Notwithstanding these representations and warranties: Momentum has permitted its payments, accounts, receivables and other collateral to become encumbered by liens and other encumbrances; Momentum entered into Other Financing Arrangements, including cash advances with companies other than 1 West Capital; and Momentum defaulted under the other Merchant Agreements.

203.    Under Section V(8) of Merchant Agreement No. 7, MAM agreed that a default under the terms, covenants and conditions of any of its other Merchant Agreements with 1 West Capital constituted a default under Merchant Agreement No. 7.

204.    As a result of MAM's breaches of Merchant Agreement No. 7, 1 West Capital has sustained damages in the sum of the amount constituting the "Purchased Amount," less payments

MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach.

WHEREFORE, 1 West Capital demands judgment against MAM for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

### COUNT XIV – BREACH OF GUARANTY: MERCHANT AGREEMENT NO. 7
**(Against Hassanally)**

205.    1 West Capital incorporates and re-alleges paragraphs 1 through 81, and 195 through 204, of this Complaint as though fully set forth herein.

206.    MAM executed and delivered Merchant Agreement No. 7 to 1 West Capital, agreeing to pay future receivables to 1 West Capital in the amount of $3,900,000.00, in exchange for an immediate purchase price of $2,600,000.00.

207.    Merchant Agreement No. 7 includes Hassanally's personal guaranty of MAM's performance of all covenants, representations and warranties made by MAM in Merchant Agreement No. 7.

208.    Hassanally, as guarantor, executed and delivered Merchant Agreement No. 7, as endorser and unconditional guarantor of payment.

209.    1 West Capital is the provider under Merchant Agreement No. 7, and has performed its obligations and conditions precedent to enforce its terms and conditions. Specifically, 1 West Capital duly transferred to MAM the purchase price, in good faith and with the reasonable expectation that MAM would make the required daily payments to 1 West Capital, until such time that MAM paid the full amount of the purchased future receivables, in accordance with the terms and conditions of Merchant Agreement No. 7.

210.    MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 7, and breached its other obligations under Merchant Agreement No. 7, as further detailed in Paragraphs 195 through 204 of this Complaint.

211.    As a result of MAM's breaches, Hassanally, as guarantor under Merchant Agreement No. 7, owes 1 West Capital the "purchased amount," as defined therein, less payments MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach and Hassanally's personal guaranty contained therein.

WHEREFORE, 1 West Capital demands judgment against Hassanally for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

### COUNT XV – BREACH OF MERCHANT AGREEMENT NO. 8
**(Against MAM)**

212.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

213.    MAM executed and delivered Merchant Agreement No. 8, dated April 23, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $7,800,000.00, in exchange for a purchase price to paid to MAM in the amount of $5,200,000.00.

214.    1 West Capital faithfully and fully fulfilled all its obligations to perform under Merchant Agreement No. 8.

215.    MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 8.

216.    MAM's failure to pay 1 West Capital the amounts when due in accordance with the terms of Merchant Agreement No. 8 constitutes a default pursuant to the terms and conditions of Merchant Agreement No. 8.

217.    Under Section II(E) of Merchant Agreement No. 8, MAM agreed it would not permit the payments, accounts, future receivables and other collateral to become encumbered by liens or other encumbrances.

218.    In accordance with Section III(A) of Merchant Agreement No. 8, MAM, as "Merchant," covenanted and agreed that it would not enter into any Other Financing Arrangements.

219.    Similarly, under the No Stacking Addendum, MAM agreed that it would be in breach of contract under Merchant Agreement No. 8 in the event it entered into a cash advance agreement with another Merchant Cash Advance company other than 1 West Capital.

220.    Notwithstanding these representations and warranties: Momentum has permitted its payments, accounts, receivables and other collateral to become encumbered by liens and other encumbrances; Momentum entered into Other Financing Arrangements, including cash advances with companies other than 1 West Capital; and Momentum defaulted under the other Merchant Agreements.

221.    Under Section V(8) of Merchant Agreement No. 8, MAM agreed that a default under the terms, covenants and conditions of any of its other Merchant Agreements with 1 West Capital constituted a default under Merchant Agreement No. 8.

222.    As a result of MAM's breaches of Merchant Agreement No. 8, 1 West Capital has sustained damages in the sum of the amount constituting the "Purchased Amount," less payments

MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach.

WHEREFORE, 1 West Capital demands judgment against MAM for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT XVI – BREACH OF GUARANTY: MERCHANT AGREEMENT NO. 8
### (Against Hassanally)

223.    1 West Capital incorporates and re-alleges paragraphs 1 through 81, and 213 through 222, of this Complaint as though fully set forth herein.

224.    MAM executed and delivered Merchant Agreement No. 8 to 1 West Capital, agreeing to pay future receivables to 1 West Capital in the amount of $7,800,000.00, in exchange for an immediate purchase price of $5,200,000.00.

225.    Merchant Agreement No. 8 includes Hassanally's personal guaranty of MAM's performance of all covenants, representations and warranties made by MAM in Merchant Agreement No. 8.

226.    Hassanally, as guarantor, executed and delivered Merchant Agreement No. 8, as endorser and unconditional guarantor of payment.

227.    1 West Capital is the provider under Merchant Agreement No. 8, and has performed its obligations and conditions precedent to enforce its terms and conditions. Specifically, 1 West Capital duly transferred to MAM the purchase price, in good faith and with the reasonable expectation that MAM would make the required daily payments to 1 West Capital, until such time that MAM paid the full amount of the purchased future receivables, in accordance with the terms and conditions of Merchant Agreement No. 8.

228.    MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 8, and breached its other obligations under Merchant Agreement No. 8, as further detailed in Paragraphs 213 through 222 of this Complaint.

229.    As a result of MAM's breaches, Hassanally, as guarantor under Merchant Agreement No. 8, owes 1 West Capital the "purchased amount," as defined therein, less payments MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach and Hassanally's personal guaranty contained therein.

WHEREFORE, 1 West Capital demands judgment against Hassanally for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT XVII – BREACH OF MERCHANT AGREEMENT NO. 9
### (Against MAM)

230.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

231.    MAM executed and delivered Merchant Agreement No. 9, dated May 23, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $8,100,000.00, in exchange for a purchase price to paid to MAM in the amount of $5,400,000.00.

232.    1 West Capital faithfully and fully fulfilled all its obligations to perform under Merchant Agreement No. 9.

233.    MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 9.

234.    MAM's failure to pay 1 West Capital the amounts when due in accordance with the terms of Merchant Agreement No. 9 constitutes a default pursuant to the terms and conditions of Merchant Agreement No. 9.

235.    Under Section II(E) of Merchant Agreement No. 9, MAM agreed it would not permit the payments, accounts, future receivables and other collateral to become encumbered by liens or other encumbrances.

236.    In accordance with Section III(A) of Merchant Agreement No. 9, MAM, as "Merchant," covenanted and agreed that it would not enter into any Other Financing Arrangements.

237.    Similarly, under the No Stacking Addendum, MAM agreed that it would be in breach of contract under Merchant Agreement No. 9 in the event it entered into a cash advance agreement with another Merchant Cash Advance company other than 1 West Capital.

238.    Notwithstanding these representations and warranties: Momentum has permitted its payments, accounts, receivables and other collateral to become encumbered by liens and other encumbrances; Momentum entered into Other Financing Arrangements, including cash advances with companies other than 1 West Capital; and Momentum defaulted under the other Merchant Agreements.

239.    Under Section V(8) of Merchant Agreement No. 9, MAM agreed that a default under the terms, covenants and conditions of any of its other Merchant Agreements with 1 West Capital constituted a default under Merchant Agreement No. 9.

240.    As a result of MAM's breaches of Merchant Agreement No. 9, 1 West Capital has sustained damages in the sum of the amount constituting the "Purchased Amount," less payments

MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach.

WHEREFORE, 1 West Capital demands judgment against MAM for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT XVIII – BREACH OF GUARANTY: MERCHANT AGREEMENT NO. 9
### (Against Hassanally)

241.    1 West Capital incorporates and re-alleges paragraphs 1 through 81, and 224 through 240, of this Complaint as though fully set forth herein.

242.    MAM executed and delivered Merchant Agreement No. 9 to 1 West Capital, agreeing to pay future receivables to 1 West Capital in the amount of $8,100,000.00, in exchange for an immediate purchase price of $5,400,000.00.

243.    Merchant Agreement No. 9 includes Hassanally's personal guaranty of MAM's performance of all covenants, representations and warranties made by MAM in Merchant Agreement No. 9.

244.    Hassanally, as guarantor, executed and delivered Merchant Agreement No. 9, as endorser and unconditional guarantor of payment.

245.    1 West Capital is the provider under Merchant Agreement No. 9, and has performed its obligations and conditions precedent to enforce its terms and conditions. Specifically, 1 West Capital duly transferred to MAM the purchase price, in good faith and with the reasonable expectation that MAM would make the required daily payments to 1 West Capital, until such time that MAM paid the full amount of the purchased future receivables, in accordance with the terms and conditions of Merchant Agreement No. 9.

246.     MAM failed to make payments to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 9, and breached its other obligations under Merchant Agreement No. 9, as further detailed in Paragraphs 224 through 240 of this Complaint.

247.     As a result of MAM's breaches, Hassanally, as guarantor under Merchant Agreement No. 9, owes 1 West Capital the "purchased amount," as defined therein, less payments MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach and Hassanally's personal guaranty contained therein.

WHEREFORE, 1 West Capital demands judgment against Hassanally for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT XIX – BREACH OF MERCHANT AGREEMENT NO. 10
### (Against MAM)

248.     1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

249.     MAM entered into Merchant Agreement No. 10, on or about July 23, 2018, whereby 1 West Capital purchased future receivables from MAM in the amount of $3,900,000.00, in exchange for a purchase price to paid to MAM in the amount of $3,000,000.00.

250.     1 West Capital faithfully and fully fulfilled all its obligations to perform under Merchant Agreement No. 10.

251.     MAM failed to make payments of its future receivables to 1 West Capital as required pursuant to the terms of Merchant Agreement No. 10.

252.    MAM's failure to pay 1 West Capital the amounts due under Merchant Agreement No. 10 constitutes a default pursuant to Merchant Agreement No. 10.

253.    As a result of MAM's breaches of Merchant Agreement No. 10, 1 West Capital has sustained damages in the sum of the amount constituting the amount of future receivables 1 West Capital purchased from MAM, less payments MAM has made to 1 West Capital, plus attorneys' fees, court costs, and other reasonable costs associated with MAM's breach.

WHEREFORE, 1 West Capital demands judgment against MAM for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT XX – FORECLOSURE OF SECURITY INTEREST
### (Against MAG)

254.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

255.    Merchant Agreement Nos. 1 and 2, by their terms, granted 1 West Capital a security interest in the Collateral of MAG, which would continue to exist until 1 West Capital was paid in full for the "Purchased Amount" of future receivables under Merchant Agreement Nos. 1 and 2.

256.    In addition, the Addendum to Framework Agreement, by its terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes the assets of MAG. This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital." The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

257.    By virtue of the uncured defaults of MAG under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123

51

through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through 222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the MAG Collateral.

258.   MAG has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

259.   Upon information and belief, MAG now owns and holds possession of the MAG Collateral.

260.   The security interests of 1 West Capital in the Collateral of MAGare superior in priority and dignity to all right, title, claim and interest of any other party to this action.

261.   1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the MAG Collateral, including, without limitation, expenditures for taxes, insurance, maintenance, and other similar items.  These expenditures by Plaintiff are recoverable in this action.

WHEREFORE, Plaintiff hereby requests the Court to:

a)   Exercise jurisdiction over this action and the parties hereto;

b)   Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)   Enter a judgment recognizing that 1 West Capital has a senior security interest on MAG's Collateral for the total indebtedness adjudicated herein, and that such lien is superior in right, title, and interest to that of MAG, and all parties claiming by, through, or under it;

d)   Order that 1 West Capital's security interest be foreclosed, and that the Collateral of MAG be sold to satisfy the security interest;

e)      Award possession of the MAG Collateral to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)      In the event that the proceeds of sale of the MAG Collateral are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAG and, with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)      Award such other and supplemental relief as may just and necessary under the circumstances.

## COUNT XXI – FORECLOSURE OF SECURITY INTEREST
### (Against MAM)

262.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

263.    Merchant Agreement Nos. 1 through 9, by their terms, granted 1 West Capital a security interest in the Collateral of MAM, which would continue to exist until 1 West Capital was paid in full for the "Purchased Amount" of future receivables under Merchant Agreement Nos. 1 through 9.

264.    In addition, the Addendum to Framework Agreement, by it terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes the assets of MAM.  This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital."  The [receivables and other amounts] owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

265.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through 222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the Collateral of MAM.

266.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

267.    Upon information and belief, MAM now owns and holds possession of the Collateral of MAM.

268.    The security interests of 1 West Capital in the Collateral of MAM are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

269.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the Collateral of MAM, including, without limitation, expenditures for taxes, insurance, maintenance, and other similar items.  These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)      Exercise jurisdiction over this action and the parties hereto;

b)      Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)      Enter a judgment recognizing that 1 West Capital has a senior security interest on the Collateral of MAM for the total indebtedness adjudicated herein, and that such lien is

superior in right, title, and interest to that of MAM, and all parties claiming by, through, or under it;

       d)     Order that 1 West Capital's security interest be foreclosed, and that the Collateral of MAM be sold to satisfy the security interest;

       e)     Award possession of the Collateral of MAM to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

       f)     In the event that the proceeds of sale of the Collateral of MAM are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and, with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

       g)     Award such other and supplemental relief as may just and necessary under the circumstances.

**COUNT XXII – FORECLOSURE OF SECURITY INTEREST**
**(Against Vallejo CJD)**

      270.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

      271.    The Framework Agreement, by its terms, granted 1 West Capital a security interest in "the rights to the Dodge Ram Dealership located at 4345 Sonoma Blvd. Vallejo, CA 94589," *i.e.*, the Vallejo CJD Dealership, which would serve as collateral in connection with any of MAM's existing and new receivables due to 1 West Capital.  This security interest would continue to exist until 1 West Capital was paid a "Success Fee" in connection with the completion of a sale of Momentum's entire "Dealership Group."

272.    In addition, the Addendum to Framework Agreement, by it terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes the Vallejo CJD Dealership. This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital." The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

273.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through 222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the Collateral of Vallejo CJD, including the Vallejo CJD Dealership.

274.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

275.    Upon information and belief, Vallejo CJD owns and holds possession to the Collateral of Vallejo CJD, including the Vallejo CJD Dealership.

276.    The security interests of 1 West Capital in the rights to the Collateral of Vallejo CJD, including the Vallejo CJD Dealership, are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

277.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the rights to the Collateral of Vallejo CJD, including the Vallejo CJD Dealership, including, without limitation, expenditures for taxes, insurance,

maintenance, and other similar items.  These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)      Exercise jurisdiction over this action and the parties hereto;

b)      Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)      Enter a judgment recognizing that 1 West Capital has a senior security interest in the rights to the Collateral of Vallejo CJD, including the Vallejo CJD Dealership for the total indebtedness adjudicated herein, and that such lien is superior in right, title, and interest to that of Vallejo CJD, and all parties claiming by, through, or under it;

d)      Order that 1 West Capital's security interest be foreclosed, and that the Collateral of Vallejo CJD, including the Vallejo CJD Dealership, be sold to satisfy the security interest;

e)      Award possession of the Collateral of Vallejo CJD, including the Vallejo CJD Dealership, to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)      In the event that the proceeds of sale of the Collateral of Vallejo CJD, including the Vallejo CJD Dealership, are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and, with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)      Award such other and supplemental relief as may just and necessary under the circumstances.

## COUNT XXIII – FORECLOSURE OF SECURITY INTEREST
### (Against Fairfield Imports)

278.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

279.    The Addendum to Framework Agreement, by it terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes the Fairfield Imports Dealership.  This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital."  The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

280.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through 222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the Collateral of Fairfield Imports, including the Fairfield Imports Dealership.

281.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

282.    Upon information and belief, Fairfield Imports owns and holds possession to the Fairfield Imports Dealership.

283.    The security interests of 1 West Capital in the rights to the Collateral of Fairfield Imports, including the Fairfield Imports Dealership, are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

284.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the rights to the Collateral of Fairfield Imports, including the Fairfield Imports Dealership, including, without limitation, expenditures for taxes, insurance, maintenance, and other similar items.   These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)      Exercise jurisdiction over this action and the parties hereto;

b)      Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)      Enter a judgment recognizing that 1 West Capital has a senior security interest in the rights to the Collateral of Fairfield Imports, including the Fairfield Imports Dealership, for the total indebtedness adjudicated herein, and that such lien is superior in right, title, and interest to that of Fairfield Imports, and all parties claiming by, through, or under it;

d)      Order that 1 West Capital's security interest be foreclosed, and that the Fairfield Collateral, including the Fairfield Imports Dealership, be sold to satisfy the security interest;

e)      Award possession of the Collateral of Fairfield Imports, including the Fairfield Imports Dealership, to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)      In the event that the proceeds of sale of the Collateral of Fairfield Imports, including the Fairfield Imports Dealership, are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and,

with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)     Award such other and supplemental relief as may just and necessary under the circumstances.

## COUNT XXIV – FORECLOSURE OF SECURITY INTEREST
### (Against Fairfield Imports Two)

285.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

286.    The Addendum to Framework Agreement, by its terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes the Fairfield Imports Two Dealership. This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital."  The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

287.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through 222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the Collateral of Fairfield Imports Two, including the Fairfield Imports Two Dealership.

288.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

289.    Upon information and belief, Fairfield Imports Two owns and holds possession to the Collateral of Fairfield Imports Two, including the Fairfield Imports Two Dealership.

290.    The security interests of 1 West Capital in the rights to the Collateral of Fairfield Imports Two, including the Fairfield Imports Two Dealership, are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

291.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the rights to the Collateral of Fairfield Imports Two, including the Fairfield Imports Two Dealership, including, without limitation, expenditures for taxes, insurance, maintenance, and other similar items.  These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)    Exercise jurisdiction over this action and the parties hereto;

b)    Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)    Enter a judgment recognizing that 1 West Capital has a senior security interest in the rights to the Collateral of Fairfield Imports Two, including the Fairfield Imports Two Dealership, for the total indebtedness adjudicated herein, and that such lien is superior in right, title, and interest to that of Fairfield Imports Two, and all parties claiming by, through, or under it;

d)    Order that 1 West Capital's security interest be foreclosed, and that the Collateral of Fairfield Imports Two, including the Fairfield Imports Two Dealership, be sold to satisfy the security interest;

e)    Award possession of the Collateral of Fairfield Imports Two, including the Fairfield Imports Two Dealership, to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)    In the event that the proceeds of sale of the Collateral of Fairfield Imports Two, including the Fairfield Imports Two Dealership, are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and, with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)    Award such other and supplemental relief as may just and necessary under the circumstances.

### COUNT XXV – FORECLOSURE OF SECURITY INTEREST
**(Against Fairfield Imports Three)**

292.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

293.    The Addendum to Framework Agreement, by its terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes the Fairfield Imports Three Dealership. This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital." The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

294.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through

222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the Collateral of Fairfield Imports Three, including the Fairfield Imports Three Dealership.

295.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

296.    Upon information and belief, Fairfield Imports Three owns and holds possession to the Collateral of Fairfield Imports Three, including the Fairfield Imports Three Dealership.

297.    The security interests of 1 West Capital in the rights to the Collateral of Fairfield Imports Three, including the Fairfield Imports Three Dealership, are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

298.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the rights to the Collateral of Fairfield Imports Three, including the Fairfield Imports Three Dealership, including, without limitation, expenditures for taxes, insurance, maintenance, and other similar items.  These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)    Exercise jurisdiction over this action and the parties hereto;

b)    Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)    Enter a judgment recognizing that 1 West Capital has a senior security interest in the rights to the Collateral of Fairfield Imports Three, including the Fairfield Imports Three Dealership, for the total indebtedness adjudicated herein, and that such lien is superior in right,

title, and interest to that of Fairfield Imports Three, and all parties claiming by, through, or under it;

d)    Order that 1 West Capital's security interest be foreclosed, and that the Collateral of Fairfield Imports Three, including the Fairfield Imports Three Dealership, be sold to satisfy the security interest;

e)    Award possession of the Collateral of Fairfield Imports Three, including the Fairfield Imports Three Dealership, to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)    In the event that the proceeds of sale of the Collateral of Fairfield Imports Three, including the Fairfield Imports Three Dealership, are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and, with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)    Award such other and supplemental relief as may just and necessary under the circumstances.

## COUNT XXVI – FORECLOSURE OF SECURITY INTEREST
### (Against Vallejo Imports)

299.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

300.    The Addendum to Framework Agreement, by its terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes the Vallejo Imports Dealership.  This security interest would remain and not be released until the "satisfaction of all [receivables and

other amounts] owed to 1 West Capital." The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

301.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through 222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the Collateral of Vallejo Imports, including the Vallejo Imports Dealership.

302.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

303.    Upon information and belief, Vallejo Imports owns and holds possession to the Collateral of Vallejo Imports, including the Vallejo Imports Dealership.

304.    The security interests of 1 West Capital in the rights to the Collateral of Vallejo Imports, including the Vallejo Imports Dealership, are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

305.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the rights to the Collateral of Vallejo Imports, including the Vallejo Imports Dealership, including, without limitation, expenditures for taxes, insurance, maintenance, and other similar items. These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)      Exercise jurisdiction over this action and the parties hereto;

b)      Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)      Enter a judgment recognizing that 1 West Capital has a senior security interest in the rights to the Collateral of Vallejo Imports, including the Vallejo Imports Dealership, for the total indebtedness adjudicated herein, and that such lien is superior in right, title, and interest to that of Vallejo Imports, and all parties claiming by, through, or under it;

d)      Order that 1 West Capital's security interest be foreclosed, and that the Collateral of Vallejo Imports, including the Vallejo Imports Dealership, be sold to satisfy the security interest;

e)      Award possession of the Collateral of Vallejo Imports, including the Vallejo Imports Dealership, to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)      In the event that the proceeds of sale of the Collateral of Vallejo Imports, including the Vallejo Imports Dealership, are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and, with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)      Award such other and supplemental relief as may just and necessary under the circumstances.

### COUNT XXVII – FORECLOSURE OF SECURITY INTEREST
**(Against Maverick)**

306.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

307.    The Addendum to Framework Agreement, by its terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes the Maverick Dealership.  This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital."  The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

308.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through 222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the Collateral of Maverick, including the Maverick Dealership.

309.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

310.    Upon information and belief, Maverick owns and holds possession to the Collateral of Maverick, including the Maverick Dealership.

311.    The security interests of 1 West Capital in the rights to the Collateral of Maverick, including the Maverick Dealership, are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

312.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the rights to the Collateral of Maverick, including the Maverick Dealership, including, without limitation, expenditures for taxes, insurance,

maintenance, and other similar items.  These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)      Exercise jurisdiction over this action and the parties hereto;

b)      Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)      Enter a judgment recognizing that 1 West Capital has a senior security interest in the rights to the Collateral of Maverick, including the Maverick Dealership, for the total indebtedness adjudicated herein, and that such lien is superior in right, title, and interest to that of Maverick, and all parties claiming by, through, or under it;

d)      Order that 1 West Capital's security interest be foreclosed, and that the Collateral of Maverick, including the Maverick Dealership, be sold to satisfy the security interest;

e)      Award possession of the Collateral of Maverick, including the Maverick Dealership, to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)      In the event that the proceeds of sale of the Collateral of Maverick, including the Maverick Dealership, are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and, with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)      Award such other and supplemental relief as may just and necessary under the circumstances.

## COUNT XXVIII –FORECLOSURE OF SECURITY INTEREST
### (Against Fairfield CJD)

313.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

314.    The Addendum to Framework Agreement, by its terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes the Fairfield CJD Dealership.  This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital."  The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

315.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through 222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the Collateral of Fairfield CJD, including the Fairfield CJD Dealership.

316.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

317.    Upon information and belief, Fairfield CJD owns and holds possession to the Collateral of Fairfield CJD, including the Fairfield CJD Dealership.

318.    The security interests of 1 West Capital in the rights to the Collateral of Fairfield CJD, including the Fairfield CJD Dealership, are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

319.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the rights to the Collateral of Fairfield CJD, including the Fairfield CJD Dealership, including, without limitation, expenditures for taxes, insurance, maintenance, and other similar items.  These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)    Exercise jurisdiction over this action and the parties hereto;

b)    Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)    Enter a judgment recognizing that 1 West Capital has a senior security interest in the rights to the Collateral of Fairfield CJD, including the Fairfield CJD Dealership, for the total indebtedness adjudicated herein, and that such lien is superior in right, title, and interest to that of Fairfield CJD, and all parties claiming by, through, or under it;

d)    Order that 1 West Capital's security interest be foreclosed, and that the Collateral of Fairfield CJD, including the Fairfield CJD Dealership, be sold to satisfy the security interest;

e)    Award possession of the Collateral of Fairfield CJD, including the Fairfield CJD Dealership, to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)    In the event that the proceeds of sale of the Collateral of Fairfield CJD, including the Fairfield CJD Dealership, are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and, with respect to those

amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)    Award such other and supplemental relief as may just and necessary under the circumstances.

## COUNT XXIX –FORECLOSURE OF SECURITY INTEREST
### (Against RMH III)

320.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

321.    The Addendum to Framework Agreement, by its terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes the RMH III Dealership.  This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital."  The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

322.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through 222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the Collateral of RMH III, including the RMH III Dealership.

323.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

324.    Upon information and belief, RMH III owns and holds possession to the Collateral of RMH III, including the RMH III Dealership.

325.    The security interests of 1 West Capital in the rights to the Collateral of RMH III, including the RMH III Dealership, are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

326.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the rights to the Collateral of RMH III, including the RMH III Dealership, including, without limitation, expenditures for taxes, insurance, maintenance, and other similar items.  These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)      Exercise jurisdiction over this action and the parties hereto;

b)      Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)      Enter a judgment recognizing that 1 West Capital has a senior security interest in the rights to the Collateral of RMH III, including the RMH III Dealership, for the total indebtedness adjudicated herein, and that such lien is superior in right, title, and interest to that of RMH III, and all parties claiming by, through, or under it;

d)      Order that 1 West Capital's security interest be foreclosed, and that the Collateral of RMH III, including the RMH III Dealership, be sold to satisfy the security interest;

e)      Award possession of the Collateral of RMH III to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)    In the event that the proceeds of sale of the Collateral of RMH III, including the RMH III Dealership, are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and, with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)    Award such other and supplemental relief as may just and necessary under the circumstances.

### COUNT XXX – FORECLOSURE OF SECURITY INTEREST
### (Against RMHOne)

327.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

328.    The Addendum to Framework Agreement, by its terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes RMHOne and its tangible and intangible assets.  This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital."  The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

329.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through 222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the Collateral of RMHOne.

330.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

331.    Upon information and belief, RMHOne owns and holds possession to the Collateral of RMHOne.

332.    The security interests of 1 West Capital in the rights to the Collateral of RMHOne are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

333.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the rights to the Collateral of RMHOne, including, without limitation, expenditures for taxes, insurance, maintenance, and other similar items. These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)    Exercise jurisdiction over this action and the parties hereto;

b)    Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)    Enter a judgment recognizing that 1 West Capital has a senior security interest in the Collateral of RMHOne for the total indebtedness adjudicated herein, and that such lien is superior in right, title, and interest to that of RMHOne, and all parties claiming by, through, or under it;

d)    Order that 1 West Capital's security interest be foreclosed, and that the Collateral of RMHOne be sold to satisfy the security interest;

e)    Award possession of the Collateral of RMHOne to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)    In the event that the proceeds of sale of the Collateral of RMHOne are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and, with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)    Award such other and supplemental relief as may just and necessary under the circumstances.

### COUNT XXXI – FORECLOSURE OF SECURITY INTEREST
**(Against MRE)**

334.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

335.    The Addendum to Framework Agreement, by its terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes MRE and its tangible and intangible assets.  This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital."  The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

336.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through

222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the Collateral of MRE.

337.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

338.    Upon information and belief, MRE owns and holds possession to the Collateral of MRE.

339.    The security interests of 1 West Capital in the rights to the Collateral of MRE are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

340.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the rights to the Collateral of MRE, including, without limitation, expenditures for taxes, insurance, maintenance, and other similar items.   These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)      Exercise jurisdiction over this action and the parties hereto;

b)      Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)      Enter a judgment recognizing that 1 West Capital has a senior security interest in the Collateral of MRE for the total indebtedness adjudicated herein, and that such lien is superior in right, title, and interest to that of MRE, and all parties claiming by, through, or under it;

d)      Order that 1 West Capital's security interest be foreclosed, and that the Collateral of MRE be sold to satisfy the security interest;

e)      Award possession of the Collateral of MRE to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)      In the event that the proceeds of sale of the Collateral of MRE are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and, with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)      Award such other and supplemental relief as may just and necessary under the circumstances.

### COUNT XXXII – FORECLOSURE OF SECURITY INTEREST
### (Against Momentum Reinsurance)

341.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

342.    The Addendum to Framework Agreement, by its terms, granted 1 West Capital a security interest in "any and all Momentum Auto Group Dealerships and Affiliates and any tangible and intangible assets thereof," which includes Momentum Reinsurance and its tangible and intangible assets.  This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital."  The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

343.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through

222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the Collateral of Momentum Reinsurance.

344.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

345.    Upon information and belief, Momentum Reinsurance owns and holds possession to the Collateral of Momentum Reinsurance.

346.    The security interests of 1 West Capital in the rights to the Collateral of Momentum Reinsurance are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

347.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the rights to the Collateral of Momentum Reinsurance, including, without limitation, expenditures for taxes, insurance, maintenance, and other similar items.  These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)    Exercise jurisdiction over this action and the parties hereto;

b)    Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)    Enter a judgment recognizing that 1 West Capital has a senior security interest in the Collateral of Momentum Reinsurance for the total indebtedness adjudicated herein, and that such lien is superior in right, title, and interest to that of Momentum Reinsurance, and all parties claiming by, through, or under it;

d)      Order that 1 West Capital's security interest be foreclosed, and that the Collateral of Momentum Reinsurance be sold to satisfy the security interest;

e)      Award possession of the Collateral of Momentum Reinsurance to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)      In the event that the proceeds of sale of the Collateral of Momentum Reinsurance are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and, with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)      Award such other and supplemental relief as may just and necessary under the circumstances.

## COUNT XXXIII – FORECLOSURE OF PLEDGED INTEREST IN REAL PROPERTY
### (Against Hassanally)

348.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

349.    The Framework Agreement, by its terms, granted 1 West Capital a security interest in "the equity in Rahim Hassanally's home," *i.e.*, the Residence, which would serve as collateral in connection with any of MAM's existing and receivables and other amounts due to 1 West Capital.  This security interest would continue to exist until 1 West Capital was paid a "Success Fee" in connection with the completion of a sale of Momentum's entire "Dealership Group."  No sale of the Dealership Group has occurred and no "Success Fee" has been paid, and, therefore, MAM continues to maintain a security interest in the equity in the Residence.

350.    Additionally, the Addendum to Framework Agreement, by its terms, granted 1 West Capital a security interest in the Residence.  This security interest would remain and not be released until the "satisfaction of all [receivables and other amounts] owed to 1 West Capital." The receivables and other amounts owed to 1 West Capital includes that which is owed under Merchant Agreement Nos. 1 through 10.

351.    By virtue of the uncured defaults of MAM under Merchant Agreement Nos. 1 through 10, as further described above in Paragraphs 83 through 94, 103 through 114, 123 through 132, 141 through 150, 159 through 168, 177 through 186, 195 through 204, 213 through 222, 231 through 240, and 248 through 253, which are incorporated herein, 1 West Capital is entitled to foreclose on its security interest in the equity in the Residence.

352.    MAM has no legally recognizable justification or excuse for its default under Merchant Agreement Nos. 1 through 10, the security interests or any other related document, and, moreover, has waived any such defenses or counterclaims.

353.    Upon information and belief, the equity in the Residence is now owned by Hassanally, who holds possession.

354.    The security interests of 1 West Capital in the rights to the equity in the Residence are superior in priority and dignity to all right, title, claim and interest of any other party to this action.

355.    1 West Capital may or will be required to expend funds during the pendency of this suit to protect its security interest in the rights to the equity in the Residence, including, without limitation, expenditures for taxes, insurance, maintenance, and other similar items. These expenditures by 1 West Capital are recoverable in this action.

WHEREFORE, 1 West Capital hereby requests the Court to:

a)      Exercise jurisdiction over this action and the parties hereto;

b)      Ascertain the amount of money, including principal, interest, attorneys' fees, costs, and other lawful sums owed to 1 West Capital;

c)      Enter a judgment recognizing that 1 West Capital has a senior security interest in the equity in the Residence for the total indebtedness adjudicated herein, and that such lien is superior in right, title, and interest to that of Hassanally, and all parties claiming by, through, or under him;

d)      Order that 1 West Capital's security interest in the equity in the Residence be foreclosed, and that the Residence be sold to satisfy the security interest;

e)      Award possession of 1 West Capital's property to the successful purchaser at the foreclosure sale, dispossessing all other parties from possession of such property;

f)      In the event that the proceeds of sale of Hassanally's Residence are insufficient to pay the amounts due 1 West Capital under Merchant Agreement Nos. 1 through 10, enter a deficiency judgment in the amount permitted by Merchant Agreement Nos. 1 through 10 to be entered against MAM and, with respect to those amounts permitted by Merchant Agreement Nos. 1 through 9, against Hassannally, as guarantor; and

g)      Award such other and supplemental relief as may just and necessary under the circumstances.

### COUNT XXXIV – BREACH OF SECOND RADIUM2 AGREEMENT
#### (by 1 Global Capital against Radium2)

356.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

357.    Radium2 and 1 Global Capital entered into the Second Radium2 Agreement, dated December 29, 2017, whereby 1 Global Capital advanced the sum of $1,000,000.00 to

Radium2, and Radium2 agreed to repay to 1 Global Capital the sum of $1,300,000.00, in 32 weekly payments of $40,625.00.

358.    1 Global Capital duly transferred to Radium2 the sum of $1,000,000.00, in good faith and with the reasonable expectation that Radium2 would make weekly payments to 1 Global Capital in the amount of $40,625.00, until such time that Radium2 paid the full amount of $1,300,000.00, in accordance with the terms and conditions of the Second Radium2 Agreement.

359.    1 Global Capital faithfully and fully fulfilled all its obligations to perform under the Second Radium2 Agreement.

360.    Radium2 failed to make payments to 1 Global Capital as required pursuant to the terms of the Second Radium2 Agreement.

361.    Radium2's failure to pay 1 Global Capital the amounts when due in accordance with the terms of the Second Radium2 Agreement constitutes a default pursuant to the terms and conditions of the Second Radium2 Agreement.

362.    1 Global Capital has suffered damages in the amount Radium2 was required, but failed, to pay to 1 Global Capital under the Second Radium2 Agreement, plus court costs, and other reasonable costs associated with Radium2's breach.

WHEREFORE, 1 Global Capital demands judgment against Radium2 for damages, together with interest, costs, and such other relief as this Court deems just and proper.

## COUNT XXXV – BREACH OF THIRD RADIUM2 AGREEMENT
### (by 1 Global Capital against Radium2)

363.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

364.    Radium2 and 1 Global Capital entered into the Third Radium2 Agreement, dated January 5, 2018, whereby 1 Global Capital advanced the sum of $1,000,000.00 to Radium2, and

Radium2 agreed to repay to 1 Global Capital future receivables in the amount of $1,190,000.00, in daily payments of $5,666.67.

365.    1 Global Capital duly transferred to Radium2 the sum of $1,000,000.00, in good faith and with the reasonable expectation that Radium2 would make daily payments to 1 Global Capital in the amount of $5,666.67, until such time that Radium2 paid the full amount of the purchased future receivables, in accordance with the terms and conditions of the Third Radium2 Agreement.

366.    1 Global Capital faithfully and fully fulfilled all its obligations to perform under the Third Radium2 Agreement.

367.    Radium2 failed to make payments to 1 Global Capital as required pursuant to the terms of the Third Radium2 Agreement.

368.    Radium2's failure to pay 1 Global Capital the amounts when due in accordance with the terms of the Third Radium2 Agreement constitutes a default pursuant to the terms and conditions of the Third Radium2 Agreement.

369.    1 Global Capital has suffered damages in the amount Radium2 was required, but failed, to pay to 1 Global Capital under the Third Radium2 Agreement, plus attorneys' fees, court costs, and other reasonable costs associated with Radium2's breach.

WHEREFORE, 1 Global Capital demands judgment against Radium2 for damages, together with interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT XXXVI – BREACH OF SUBORDINATION AND STANDSTILL AGREEMENT
### (Against Radium 2 Capital)

370.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

83

371.    Radium2 and 1 Global Capital entered into a Subordination and Standstill Standstill Agreement, dated as of February 15, 2018 (the "**Radium2 Subordination and Standstill Agreement**"), whereby Radium2 agreed that:

a. Any receivables and other amounts owed by Momentum to Radium2 ("**Radium2 Junior Receivables**") was expressly subordinated to any Senior Receivables owed by Momentum to 1 West Capital.

b. Radium2 would forebear from and not collect upon any Radium2 Junior Receivables until all Senior Receivables owed from Momentum to 1 West Capital has been paid in full. Subject to this forbearance agreement, Radium2 would be permitted to receive 10 percent of any scheduled payments from Momentum, but only if there was adequate liquidity and business cash flows to Momentum to make such scheduled payments.

372.    Notwithstanding these agreements, Radium2 has collected upon the Radium2 Junior Receivables (a) an amount exceeding 10 percent of any scheduled payments from Momentum, or, alternatively, (b) at times when Momentum lacked the liquidity and business cash flows to make such scheduled payments.

373.    Radium2's collection of portions of the Radium2 Junior Receivables under these circumstances constitutes a default pursuant to the terms and conditions of the Radium2 Subordination and Standstill Agreement.

374.    1 West Capital has suffered damages as a result of Radium2's breaches of the Radium2 Subordination and Standstill Agreement.

WHEREFORE, 1 West Capital demands judgment against Radium2 for damages, together with interest, costs, and such other relief as this Court deems just and proper.

## COUNT XXXVII – BREACH OF SUBORDINATION
## AND STANDSTILL AGREEMENT
### (Against Capital Stack, LLC)

375.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

376.    Capital Stack and 1 West Capital entered into a Subordination and Standstill Agreement, dated as of February 15, 2018 (the "**Capital Stack Subordination and Standstill Agreement**"), whereby Capital Stack agreed that:

    a.    Any receivables and other amounts owed by Momentum to Capital Stack ("**Capital Stack Junior Receivables**") was expressly subordinated to any Senior Receivables owed by Momentum to 1 West Capital.

    b.    Capital Stack would forebear from and not collect upon any Capital Stack Junior Receivables until all Senior Receivables owed from Momentum to 1 West Capital has been paid in full.  Subject to this forbearance agreement, Capital Stack would be permitted to receive 20 percent of any scheduled payments from Momentum, but only if there was adequate liquidity and business cash flows to Momentum to make such scheduled payments.

377.    Notwithstanding these agreements, Capital Stack has collected upon the Capital Stack Junior Receivables (a) in an amount exceeding 20 percent of any scheduled payments from Momentum, or, alternatively, (b) at times when Momentum lacked the liquidity and business cash flows to make such scheduled payments.

378.    Capital Stack's collection of portions of the Capital Stack Junior Receivables under these circumstances constitutes a default pursuant to the terms and conditions of the Capital Stack Subordination and Standstill Agreement.

379.    1 West Capital has suffered damages as a result of Capital Stack's breaches of the Capital Stack Subordination and Standstill Agreement.

WHEREFORE, 1 West Capital demands judgment against Capital Stack for damages, together with interest, costs, and such other relief as this Court deems just and proper.

<u>**COUNT XXXVIII – BREACH OF SUBORDINATION**</u>
<u>**AND STANDSTILL AGREEMENT**</u>
**(Against Platinum Rapid Funding)**

380.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

381.    Platinum Rapid Funding and 1 West Capital entered into a Subordination and Standstill Agreement, dated as of February 15, 2018 (the "**Platinum Rapid Funding Subordination and Standstill Agreement**"), whereby Platinum Rapid Funding agreed that:

   a.   Any receivables and other amounts owed by Momentum to Platinum Rapid Funding ("**Platinum Rapid Funding Junior Receivables**") was expressly subordinated to any Senior Receivables owed by Momentum to 1 West Capital.

   b.   Platinum Rapid Funding would forebear from and not collect upon any Platinum Rapid Funding Junior Receivables until all Senior Receivables owed from Momentum to 1 West Capital has been paid in full.  Subject to this forbearance agreement, Platinum Rapid Funding would be permitted to receive 10 percent of any scheduled payments from Momentum, but only if there was adequate liquidity and business cash flows to Momentum to make such scheduled payments.

382.    Notwithstanding these agreements, Platinum Rapid Funding has collected upon the Platinum Rapid Funding Junior Receivables (a) in an amount exceeding 10 percent of any scheduled payments from Momentum, or, alternatively, (b) at times when Momentum lacked the liquidity and business cash flows to make such scheduled payments.

383.    Platinum Rapid Funding's collection of portions of the Platinum Rapid Funding Junior Receivables under these circumstances constitutes a default pursuant to the terms and conditions of the Platinum Rapid Funding Subordination and Standstill Agreement.

384.    1 West Capital has suffered damages as a result of Platinum Rapid Funding's breaches of the Platinum Rapid Funding Subordination and Standstill Agreement.

WHEREFORE, 1 West Capital demands judgment against Platinum Rapid Funding for damages, together with interest, costs, and such other relief as this Court deems just and proper.

## COUNT XXXIX – BREACH OF SUBORDINATION AND STANDSTILL AGREEMENT
### (Against Wall Street Funding)

385.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

386.    Wall Street Funding and 1 West Capital entered into a Subordination and Standstill Agreement, dated as of February 15, 2018 (the "**Wall Street Funding Subordination and Standstill Agreement**"), whereby Wall Street Funding agreed that:

    a.  Any receivables and other amounts owed by Momentum to Wall Street Funding ("**Wall Street Funding Junior Receivables**") was expressly subordinated to any Senior Receivables owed by Momentum to 1 West Capital.

    b.  Wall Street Funding would forebear from and not collect upon any Wall Street Funding Junior Receivables until all Senior Receivables owed from

Momentum to 1 West Capital has been paid in full. Subject to this forbearance agreement, Wall Street Funding would be permitted to receive 10 percent of any scheduled payments from Momentum, but only if there was adequate liquidity and business cash flows to Momentum to make such scheduled payments.

387.    Notwithstanding these agreements, Wall Street Funding has collected upon the Wall Street Funding Junior Receivables (a) in an amount exceeding 10 percent of any scheduled payments from Momentum, or, alternatively, (b) at times when Momentum lacked the liquidity and business cash flows to make such scheduled payments.

388.    Wall Street Funding's collection of portions of the Wall Street Funding Junior Receivables under these circumstances constitutes a default pursuant to the terms and conditions of the Wall Street Funding Subordination and Standstill Agreement.

389.    1 West Capital has suffered damages as a result of Wall Street Funding's breaches of the Wall Street Funding Subordination and Standstill Agreement.

WHEREFORE, 1 West Capital demands judgment against Wall Street Funding for damages, together with interest, costs, and such other relief as this Court deems just and proper.

## COUNT XL – DECLARATORY JUDGMENT
### (Against All Junior MCA Creditors)

390.    1 West Capital incorporates and re-alleges paragraphs 1 through 81 of this Complaint as though fully set forth herein.

391.    1 West Capital entered into the Subordination and Standstill Agreements with each of the Junior MCA Creditors.

392.    Each of the Subordination and Standstill Agreements provided that:

a.  Any of the Junior Receivables owed to the Junior MCA Creditors was expressly subordinated to the Senior Receivables owed to 1 West Capital.

b.  The Junior MCA Creditors agreed to forebear from and not collect upon any Junior Receivables until all Senior Receivables owed to 1 West Capital has been paid in full.  Subject to this forbearance agreement, the Junior MCA Creditors would be permitted to receive 10 percent (in the case of Capital Stack, the rate was 20 percent) of their scheduled payments from Momentum, but only if there was adequate liquidity and business cash flows to Momentum to make such scheduled payments.

c.  The Junior MCA Creditors agreed not to "commence any action or proceeding against Merchant to recover all or any part of the" Junior Receivables until the Senior Receivables was paid in full.

d.  The Junior MCA Creditors shall not (i) exercise or enforce any creditor's right it may have against Momentum with respect to any of Momentum's property, or (ii) foreclose, repossess, sequester, or otherwise take steps or institute an action or proceedings, judicial or otherwise, to enforce any liens, security interest, judgments or other encumbrances upon any property of Momentum.

393.  Notwithstanding these agreements, the Junior MCA Creditors have (a) collected upon the Junior Receivables: (i) in an amount exceeding the allowable percent of any scheduled payments from Momentum; or, alternatively, (ii) at times when Momentum lacked the liquidity and business cash flows to make such scheduled payments; and (b) obtained judgments by confession against Hassanally and various of the Momentum entities.

394.    Based on the Junior MCA Creditor's collection of the Junior Receivables under these circumstances, an actual controversy has arisen and now exists between 1 West Capital and the Junior MCA Creditors as to whether the Junior MCA Creditors' rights to receive payments from the Momentum entities are subordinated to the rights of 1 West Capital to be paid in full for the Senior Receivables.

395.    Accordingly, 1 West Capital is entitled to a judgment that the Junior MCA Creditors' rights to receive payments from the Momentum entities are subordinated to the rights of 1 West Capital to be paid in full for the Senior Receivables.

WHEREFORE, 1 West Capital demands judgment against the Junior MCA Creditors in the form of a declaration that (a) the Junior MCA Creditors' rights to receive payments from the Momentum entities are subordinated to the rights of 1 West Capital to be paid in full for the Senior Receivables; (b) the Junior MCA creditors shall account to and hold in trust for 1 West Capital for any amounts they have collected from any of the Momentum Entities following execution of the Standstill Agreements, and until such time that the Senior Receivables is paid in full; and (c) the Junior MCA Creditors are prohibited by the terms of the Subordination and Standstill Agreements to continue with any action to exercise or enforce any rights, or otherwise recover or collect upon, with respect to any of Momentum's property, until such time that the Senior Receivables is paid in full.

Dated: December 14, 2018

Respectfully submitted,

GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By: /s/ *Timothy A. Kolaya*
    PAUL J. KEENAN
    Florida Bar No. 594687
    keenanp@gtlaw.com
    TIMOTHY A. KOLAYA
    Florida Bar No. 056140
    kolayat@gtlaw.com
    CLAUDIA OJEDA
    Florida Bar No. 1010807
    ojedac@gtlaw.com

*Counsel for 1 Global Capital LLC
and 1 West Capital LLC*