**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) SETTLEMENT AND RELEASE AGREEMENT AND (II) THE DEBTORS' RELEASE IN FAVOR OF NATIONAL TECHMARK INC. AND UNIFIED ANALYTICS, LLC**
<u>GRANTED IN CONNECTION THEREWITH</u>

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")

hereby submit this motion (the "**Motion**"), pursuant to sections 105(a) and 1107(a) of title 11 of

the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rule 9019(a) of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9019-1(A) of the

Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the

"**Local Rules**"), for entry of an order, substantially in the form attached hereto as <u>**Exhibit A**</u>,

approving (i) the Settlement and Release Agreement, a copy of which is attached hereto as

<u>**Exhibit B**</u> (the "**Settlement Agreement**"), dated as of December 10, 2018 (the "**Execution**

**Date**"), by and among National Techmark Inc. ("**Techmark**"), Unified Analytics, LLC

("**Unified**" and together with Techmark, the "**Companies**"), and Jon A. Sale, Esq., solely in his

capacity as the court-appointed receiver (the "**Receiver**") over Ganador Enterprises, LLC, a

Florida limited liability company that is a non-Debtor affiliate of the Debtors ("**Ganador**") and

---

[1]    The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each
Debtor's federal tax identification number, if applicable, are:  1 Global Capital LLC, 1250 E. Hallandale Beach
Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, 1250 E. Hallandale Beach
Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).

(ii) the release by the Debtors in favor of the Companies as more fully set forth in Exhibit D-2 of the Settlement Agreement (the "**Release**").  In support of this Motion, the Debtors respectfully state as follows:

**Jurisdiction, Venue and Statutory Predicates**

1.     The Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     Venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory and legal predicate for the relief requested herein are sections 105(a) and 1107(a) of the Bankruptcy Code, Bankruptcy Rule 9019(a), and Local Rule 9019-1(A).

**Status of the Case**

4.     On July 27, 2018 (the "**Petition Date**"), the Debtors commenced these chapter 11 cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**").

5.     The Debtors are operating their business and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     No request has been made for the appointment of a trustee or examiner pursuant to section 1104 of the Bankruptcy Code.

7.     On September 7, 2018, the Office of the United States Trustee (the "**U.S. Trustee**") appointed an official committee of unsecured creditors [ECF No. 138].

8.     A detailed factual background of the Debtors' business and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is set forth in the Debtors' Chapter 11 Case Management Summary (the "**Case Management Summary**") [ECF No. 8].

## SEC Proceeding

9.      As discussed in the Case Management Summary, prior to the filing of these Chapter 11 Cases, the Securities and Exchange Commission (the "**SEC**"), Miami Region, opened an investigation into the Debtors' activities related to alleged possible securities law violations.

10.      On August 23, 2018, the SEC commenced an action against, among others, the Debtors and Ganador in the District Court for the Southern District of Florida (the "**District Court**"), Case No. 18-cv-61991-BB-BLOOM/VALLE (the "**SEC Proceeding**").

11.      On the same date, the District Court entered an order (the "**Receivership Order**") appointing the Receiver to, among other things, marshal and safeguard the assets of and administer and manage the business affairs, funds, assets, causes in action and any other property of certain of the non-Debtor defendants, including Ganador [Case No. 18-61991, ECF No. 12].

12.      Pursuant to the Receivership Order, the Receiver is authorized to institute actions and legal proceedings against parties that may have "wrongfully, illegally or otherwise improperly misappropriated or transferred money or other proceeds directly or indirectly traceable from investors in" the Debtors and/or Ganador.  *See* Receivership Order, ¶ 2.

13.      The Receiver has alleged that, among other things, the Companies owe Ganador certain monies that may have been improperly misappropriated or transferred, and which are directly or indirectly traceable, from investors in the Debtors and/or Ganador.  The Companies have denied these allegations.  To the extent Debtor 1 Global Capital LLC ("**1GC**") alleges the Companies owe 1GC the same monies which the Receiver alleged were owed by the Companies to Ganador, the Companies would deny such allegations.

14.     To resolve and settle all claims and disputes arising out of, or relating to, the SEC Proceeding, including, but not limited to, the allegations set forth in paragraph 13 above, the Companies and the Receiver, in his capacity as receiver over Ganador, entered into the Settlement Agreement.

15.     As the largest and possibly only general creditor of the Receiver's estates, including Ganador's receivership estate, the Debtors and their investors are the indirect and ultimate beneficiary of the Settlement Agreement.  The Debtors are also holders of potential claims against the Companies and related parties, including, without limitation, potentially for avoidance and recovery as subsequent transferees of funds of the Debtors' estates.  Although the Debtors neither are party to the Settlement Agreement nor participated in its negotiation, the Debtors and their professionals engaged in numerous and lengthy discussions with the Receiver and his professionals so as to be fully apprised of matters relating to the Settlement Agreement without duplicating efforts to investigate and pursue claims related to Ganador.

16.     Based on the discussions with the Receiver and his professionals, the Debtors determined, in their business judgment, that the Settlement Payment (as defined below) provided consideration for the Debtors' and Receiver's estates potential claims relating to Ganador well above the lowest point of reasonableness.  In addition, the Debtors determined that granting the Release in accordance with the terms and conditions of the Settlement Agreement so as to secure the Settlement Payment (as defined below) for the ultimate benefit of the Debtors' estates was in their best interests and that of the Debtors' investors.

**Relevant Terms of the Settlement Agreement**[2]

17.      Subject to approval of the Settlement Agreement by both the District Court and

the Bankruptcy Court, the Companies agree to pay to the Receiver the total sum of four million

U.S. dollars (USD $4,000,000.00) (the "**Settlement Payment**") as follows:

    a.  Within twenty-four (24) hours of the Execution Date, the Companies are to pay an
        initial deposit of five hundred thousand U.S. dollars (USD $500,000.00) (the
        "**Deposit**") to the Receiver.  The Deposit is to be held in escrow in a trust account
        at the Receiver's law firm.
        1.  The Deposit is to be returned to the Companies, at the Companies'
            option, if any of the following occurs:
            i.   a motion for the approval of the Settlement Agreement has not
                 been filed in each of the District Court and the Bankruptcy
                 Court within ten (10) business days of the Execution Date;
            ii.  either the District Court or the Bankruptcy Court denies the
                 respective motion for the approval of the Settlement
                 Agreement; or
            iii. the Effective Date has not occurred as of January 31, 2019.

    b.  In the event both the District Court and the Bankruptcy Court approve the
        Settlement Agreement, on the date on which both approval orders are final and
        non-appealable (the "**Effective Date**"), the Deposit can be released from escrow
        to the Receiver and, upon release, will be non-refundable.

    c.  Within twenty-four (24) hours of the Effective Date, the Companies are to pay
        two-hundred fifty thousand U.S. dollars (USD $250,000.00) to the Receiver.

    d.  With respect to the remaining three million two-hundred fifty thousand U.S.
        dollars (USD $3,250,000.00) of the Settlement Payment, on the first day of the
        month immediately after the Effective Date (the "**First Payment Date**"), and on
        the first day of the month for each of the twelve (12) months thereafter, the
        Companies are to pay to the Receiver interest-only payments at seven and one-
        half percent (7.5%) per annum.  Other than the interest payment due on the First
        Payment Date, which shall be prorated for the number of days between the
        Effective Date and the First Payment Date, each of the twelve (12) monthly
        interest payments shall be in the sum of twenty thousand three-hundred twelve
        U.S. dollars and 50/100ths (USD $20,312.50).

    e.  On the three-hundred sixty-fifth day after the first day of the month immediately
        following the First Payment Date (such date being the "**Maturity Date**"), the

---

[2]  The description of certain terms of the Settlement Agreement included in this section is intended to be a summary
of such terms, is not complete, and is qualified in its entirety by reference to the actual terms and conditions of the
Settlement Agreement, a copy of which is attached hereto as **Exhibit B**.

Companies are to pay to the Receiver the amount of the Settlement Payment that remains outstanding, if any.

18.     The Companies may prepay the outstanding balance of the Settlement Payment plus any accrued interest in whole at any time prior to the Maturity Date without penalty.

19.     As security for the Companies' obligation to pay the Settlement Payment, the Companies are to grant the Receiver a continuing, first-priority, perfected security interest in and to property of each Company owned as of the Effective Date or acquired thereafter, including, but not limited to, all accounts, chattel paper, contracts, contract rights, accounts receivable, tax refunds, notes receivable, documents, choses in action and general intangibles; all accounts in the name of either Company or in which either Company has any right, title or interest; all inventory and equipment of every type or description wherever located owned by and associated with the business of either Company; all documents of title; and all other intangible property, securities, proceeds and products of any of the foregoing property, know-how, information, permits, intellectual property, goodwill, approvals, and related books and records.

20.     From and after the Effective Date, the Companies are to grant broad releases in favor of Ganador, the Receiver and 1GC from all liabilities arising from or related to any and all claims, demands, causes of action and damages the Companies ever had, currently have or could have in the future against Ganador, the Receiver or 1GC related to or arising from the Settlement Agreement or collateral securing the Companies' obligations thereunder; the SEC Proceeding; or actions or omissions of the Receiver as the receiver over the non-Debtor affiliates, including Ganador.

21.     Subject to the payment in full of the Settlement Agreement by the Companies, including any outstanding interest, as confirmed in writing by the Receiver: (a) the Receiver, on behalf of Ganador, is to grant broad releases in favor of the Companies from all liabilities arising

from or related to any and all claims, demands, causes of action and damages the Receiver ever

had, currently has or could have in the future against the Companies related to or arising from the

Settlement Agreement or collateral securing the Companies' obligations thereunder, the SEC

Proceeding, or the Chapter 11 Cases and (b) as more fully set forth in Exhibit D-2 of the

Settlement Agreement (i) the Debtors are to grant broad releases in favor of the Companies and

certain persons and entities set forth in Schedule A of Exhibit D-2 of the Settlement Agreement

from all liabilities arising from or related to any and all claims, demands, causes of action and

damages the Debtors ever had, currently have or could have in the future against the Companies

related to or arising from the Settlement Agreement or collateral securing the Companies'

obligations thereunder, the SEC Proceeding, or the Chapter 11 Cases and (ii) the Debtors are to

grant limited releases in favor of Ken Hachikian, Ivy Consulting Group and Fox Swibel Levin &

Carroll LLP and all of its attorneys and employees.

**Relief Requested**

22.     By this Motion, the Debtors seek entry of an order, substantially in the form

attached hereto as **Exhibit A**, approving (i) the Settlement Agreement and (ii) the Release by the

Debtors to be granted in favor of each of Techmark and Unified and the other persons and

entities as more fully set forth in Exhibit D-2 of the Settlement Agreement in accordance with

the provisions of the Settlement Agreement.

**Basis for Relief Requested**

23.     Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the

trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed.

7

R. Bankr. P. 9019(a). Section 1107(a) of the Bankruptcy Code grants a debtor-in-possession the rights and powers afforded to a trustee serving in a chapter 11 case. *See* 11 U.S.C. § 1107(a).[3]

24.     When considering whether to approve a compromise or settlement under Rule 9019, a bankruptcy court must determine if the proposed compromise or settlement is fair, equitable, reasonable and in the best interests of the debtor's estate. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Se. Banking Corp.*, 314 B.R. 250, 272 (Bankr. S.D. Fla. 2004) (holding a bankruptcy court considers whether a settlement is "fair and equitable"). A bankruptcy court is not required to decide the merits of claims, but is to assess the probability of succeeding on those claims. *See In re Vazquez*, 325 B.R. 30, 35 (Bankr. S.D. Fla. 2005).

25.     Approval of a settlement in a bankruptcy proceeding is within the sound discretion of the court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion. *See In re Chira*, 367 B.R. 888, 896 n.10 (S.D. Fla. 2007) (citing *In re Air Safety Intern., L.C.*, 336 B.R. 843, 852 (S.D. Fla. 2005)); *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988). The test is whether the proposed settlement "fall[s] below the lowest point in the range of reasonableness." *Martin v. Pahiakos (In re Martin)*, 490 F.3d 1272, 1274-75 (11th Cir. 2007); *In re Arrow Air, Inc.*, 85 B.R. at 891.

26.     The Eleventh Circuit established four factors to be considered as additional guidance when determining whether a settlement should be approved:

        (i)       The probability of success in litigation;

        (ii)      The difficulties, if any, to be encountered in the matter of collection;

---

[3] To the extent entry into and performance under the Settlement Agreement is viewed as a use of estate property, the requested relief should be granted pursuant to Section 363(b) of the Bankruptcy Code, with deference to the Debtors' business judgment. *See* 11 U.S.C. § 363(b); *In re Friedman's Inc.*, 363 B.R. 891, 895 (Bankr. S.D. Ga. 2005) ("Courts review a debtor's use of estate property outside of the ordinary course of business pursuant to a debtor's demonstration of sound business judgment."); *In re Se. Banking Corp.*, 314 B.R. at 273 (noting a court gives "weight to the [debtor's] informed judgment" in considering a settlement under Bankruptcy Rule 9019).

      (iii)    The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

      (iv)    The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallace v. Justice Oaks II, Ltd. (In re Justice Oaks, II, Ltd.)*, 898 F.2d 1544, 1459 (11th Cir. 1990).

27.    The relevant *Justice Oaks* factors weigh in favor of the Court's approval of the Settlement Agreement.  Moreover, the Settlement Agreement falls well above the lowest point in the range of reasonableness, and therefore, should be approved.

28.    First, while the Debtors believe that they would be successful in litigation against the Companies regarding the disputes surrounding outstanding monetary obligations on account of improperly misappropriated or transferred funds that are traceable from investors in the Debtors, the uncertainty of litigation coupled with the associated cost and delay is not in the best interests of the Debtors' creditors.

29.    Second, the Settlement Agreement minimizes any potential collection risk and assures timely payment to the Receiver.  As outlined above, the Deposit was to be made within twenty-four hours of execution of the Settlement Agreement, with additional portions of the Settlement Payment to be paid on an established timeline once requisite approvals of the Settlement Agreement are final.  To the extent payment is not timely rendered in accordance with the terms of the Settlement Agreement, the Companies' obligations are secured by liens on collateral on which the Receiver can foreclose.

30.    Third, any such litigation would likely be complex, requiring expert testimony and analysis regarding related financial transactions and the Debtors' bank accounts.  Entry into

the Settlement Agreement provides a guaranteed recovery without having to undergo the unpredictable nature of complex litigation.

31.     Lastly, entry into the Settlement Agreement enables the Debtors to avoid the inconvenience, expense and uncertainty of potential litigation regarding the recovery of monies that may potentially belong to certain of the Debtors' constituents, such as their investors. Furthermore, entry into the Settlement Agreement protects the Debtors from any related claims or counterclaims that could be asserted by the Companies in connection with the SEC Proceeding, as the Settlement Agreement provides for a release of the Debtors by the Companies from any such potential liabilities. In addition, the proceeds of the Settlement Payment, which are to be received by the Receiver pursuant to the Settlement Agreement, will ultimately inure to the benefit of the Debtors' creditors.

32.     The Debtors believe that the Settlement Agreement serves an expedient resolution of disputed claims and potential claims among the Debtors, Ganador and the Companies. Most importantly, the Debtors believe that entry into the Settlement Agreement is in the best interest of the Debtors' estates and their creditors because it resolves the disputed claims at issue and minimizes their exposure to liability for potential claims that could be asserted by the Companies. In light of the foregoing, the Debtors submit that entry into the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Debtors' estates and creditors. Accordingly, the Debtors respectfully request the Court approve the Settlement Agreement, thereby authorizing the Debtors to grant the Release in favor of the Companies.

## Conclusion

**WHEREFORE**, the Debtors respectfully request that this Court enter an order granting the relief requested herein and granting such other and further relief as the Court deems just and proper.


Dated:  December 20, 2018                    GREENBERG TRAURIG, LLP

                                            */s/ John R. Dodd*
                                            Paul J. Keenan Jr.
                                            Fla. Bar No. 0594687
                                            keenanp@gtlaw.com

                                            John R. Dodd
                                            Fla. Bar No. 38091
                                            doddj@gtlaw.com

                                            333 S.E. 2nd Avenue, Suite 4400
                                            Miami, Florida 33131
                                            Tel: 305-579-0500
                                            Fax: (305) 579-0717

                                            *Counsel for the Debtors*
                                            *and Debtors-in-Possession*

**<u>EXHIBIT A</u>**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | |

**ORDER GRANTING DEBTORS' MOTION FOR APPROVAL OF (I) SETTLEMENT AND RELEASE AGREEMENT AND (II) DEBTORS' RELEASE IN FAVOR OF NATIONAL TECHMARK INC. AND UNIFIED ANALYTICS, LLC**

THIS MATTER came before the Court upon the *Debtors' Motion for Entry of an Order Approving (I) Settlement and Release Agreement and (II) The Debtors' Release in Favor of National Techmark Inc. and Unified Analytics, LLC Granted in Connection Therewith* [ECF _____] (the "**Motion**"). Capitalized terms not otherwise defined herein shall have the

---

[1] The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: 1 Global Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach 33009 (9517); and 1 West Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).

meaning given to such terms in the Motion. The Court having reviewed the Motion, having been advised of the settlement (the "**Settlement**") between National Techmark Inc., a Nevada corporation ("**Techmark**"), Unified Analytics, LLC, a Nevada limited liability company ("**Unified**" and together with Techmark, the "**Companies**"), and Jon A. Sale, Esq., solely in his capacity as the court-appointed receiver ("**Receiver**") over Ganador Enterprises, LLC, a Florida limited liability company ("**Ganador**") and certain other non-Debtor affiliates of the Debtors (collectively, the "**Receivership Estate**"), pursuant to the terms of that certain Settlement and Release Agreement made and entered into as of December 10, 2018 (the "**Agreement**"), which Agreement has been fully executed by Techmark, Unified and the Receiver on behalf of Ganador, having heard argument of counsel and any evidence entered by counsel, and for the reasons stated on the record, the Court finds that in addition to those reasons stated on the record:

A.      By the Motion, 1 Global Capital LLC and 1 West Capital LLC (the "**Debtors**"), seek entry of an order (the "**Order**") approving the Agreement and authorizing the grant of release (the "**Release**") by the Debtors in favor of the Companies. The Debtors, Techmark and Unified shall be referred to collectively as the "Parties." The Release is set forth as Exhibit D-2 to the Agreement, which Agreement is attached to the Motion as Exhibit B.

B.      The Court, noting that (i) the Companies and the Receiver have entered into the Agreement, (ii) the Release is an integral part of the Agreement, (iii) the proceeds to be received by the Receiver pursuant to the Settlement will inure to the benefit of the Debtors' creditors, (iv) notice was given to those potentially interested parties identified on the service list of the Motion, having considered the Agreement and the Release, and having given an opportunity to be heard to all persons requesting to be heard, it is

**ORDERED** as follows:

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and authority to enter this Order approving the Agreement and authorizing the Release pursuant to 11 U.S.C. §105(a) and Bankruptcy Rule 9019(a).

2.      The form and means of the notice of the Release and the Motion are hereby determined to have been the best notice practicable under the circumstances and to be good and sufficient notice to all persons whose interests could be affected by the Order.

3.      The Court has been apprised of the negotiations that preceded the Agreement and Release, and finds that the Agreement and Release are the result of arm's-length bargaining among the Parties and represent a good faith compromise and resolution of the matters settled. There is no evidence that the Agreement is the result of collusion among the Parties or that there has been any intent to prejudice the persons who, or the entities which, will be subject to this Order.

4.      The legal and factual bases set forth in the Motion and on the record establish that the Agreement represents a fair, reasonable, and adequate resolution of the Parties' dispute, and in light of the claims that could be asserted by the Debtors, and the defenses to those claims that would be asserted by the Companies, and the fact that there is significant overlap between the creditors of the Receivership Estate and the creditors of the Bankruptcy Estates such that the proceeds of the Settlement will inure to the benefit of the Debtors' creditors, the Court finds that the Agreement is fair and equitable with respect to creditors in these Chapter 11 Cases, and is in the best interest of the Bankruptcy Estates.

5.      The Motion is granted, the Agreement is approved and the Debtors are authorized to grant the Release.

6.      The Court retains jurisdiction over the Parties to enforce and interpret the

Agreement and Release.

#        #        #

Submitted by:

John R. Dodd, Esq.
Fla. Bar No. 38091
doddj@gtlaw.com
GREENBERG TRAURIG, LLP
33 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500

*Counsel for the Debtors*
*and Debtors-in-Possession*

*(Epiq Corporate Restructuring, LLC is directed to serve copies of this Order upon all interested parties and to file a Certificate of Service with the Court.)*

4

# **EXHIBIT B**

Settlement Agreement

EXECUTION VERSION

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

SECURITIES AND EXCHANGE COMMISSION,

         **Plaintiff,**

v.

1 GLOBAL CAPITAL LLC, and
CARL RUDERMAN,

         **Defendants, and**

1 WEST CAPITAL LLC,
BRIGHT SMILE FINANCING, LLC,
BRR BLOCK INC.,
DIGI SOUTH LLC,
GANADOR ENTERPRISES, LLC,
MEDIA PAY LLC,
PAY NOW DIRECT LLC, and
RUDERMAN FAMILY TRUST,

         **Relief Defendants.**

CASE NO. 18-cv-61991-BB BLOOM/VALLE

## SETTLEMENT AND RELEASE AGREEMENT

      **THIS SETTLEMENT AND RELEASE AGREEMENT** (this "Agreement") is made and entered into as of December 10, 2018 (the "Execution Date") between National Techmark Inc., a Nevada corporation ("Techmark"), Unified Analytics, LLC, a Nevada limited liability company ("Unified"), and Jon A. Sale, Esq., solely in his capacity as the receiver (the "Receiver") over Ganador Enterprises, LLC, a Florida limited liability company ("Ganador"). Techmark, Unified, and the Receiver may each be referred to as a "Party," and together as the "Parties." References to "Company" or "Companies" shall mean each of Unified and Techmark, or both, as applicable.

## RECITALS:

A.    The Receiver was appointed as receiver over Ganador and other entities by District Judge Beth Bloom of the United States District Court for the Southern District of Florida ("Receivership Court") in the above-captioned matter (the "SEC Proceeding");

B.    The Receiver alleges that there are, *inter alia*, monies owed to Ganador by each of the Companies and the Companies deny such allegations;

C.    Except as specifically provided in this Agreement, the Parties have agreed to settle all claims and disputes arising out of, or relating to, the SEC Proceeding;

**D.**     The Receiver has executed this Agreement and contemporaneously filed with the Receivership Court a motion for approval of this Agreement (the "<u>SEC Motion</u>") requesting that the Receivership Court enter an order approving this Agreement (the "<u>SEC Approval Order</u>");

**E.**     On July 27, 2018, 1 Global Capital LLC and 1 West Capital LLC (collectively "<u>1GC</u>") filed bankruptcy petitions in the United States Bankruptcy Court Southern District of Florida (the "<u>Bankruptcy Court</u>"), which cases are currently pending under the caption In re 1 Global Capital LLC, Case No. 18-19121-RBR (the "<u>Bankruptcy Case</u>");

**F.**     1GC may claim that monies are owed to 1GC by the Companies which are the same monies that are the subject of Recital B above and, if such claim is made, the Companies would deny such claim; and

**G.**     Because of the potential claims that are the subject of Recital F above, a condition to this Agreement's effectiveness and the Companies' obligations hereunder is that 1GC file with the Bankruptcy Court a motion for approval of the 1GC Release (defined below) (the "<u>1GC Motion</u>") requesting that the Bankruptcy Court enter an order approving the same (the "<u>1GC Approval Order</u>").

**AGREEMENT:**

**NOW, THEREFORE**, in consideration of the premises and the mutual promises and agreements hereinafter contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Techmark, Unified, and the Receiver hereby agree as follows:

**1.**     <u>Recitals.</u>  The Parties acknowledge that the foregoing recitals are true and correct and are incorporated into this Agreement.

**2.**     <u>Effective Date.</u>  This Agreement shall become effective upon: **(a)** entry of the SEC Approval Order, which order is in a substantially similar form as <u>Exhibit A-1</u>, and has become final and non-appealable; and the **(b)** entry of the 1GC Approval Order, which order is in a substantially similar form as <u>Exhibit A-2</u>, and has become final and non-appealable. An approval order hereunder shall be deemed final and non-appealable when **(x)** the time for appeal or petition for review of such approval order has expired and no appeal or petition for rehearing or review has been timely filed or **(y)** such approval order is affirmed on appeal or review without material change, and no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal or certiorari could be taken has finally expired. The date upon which both conditions set forth in this <u>Paragraph 2(x)</u> have been satisfied shall be the "<u>Effective Date</u>." Notwithstanding the foregoing, all of the Companies' obligations relating to the Deposit, as set forth in <u>Paragraph 3(a)</u> below, shall become effective upon the Execution Date.

**3.**     <u>Settlement Payments.</u>  The Companies, jointly and severally, agree to pay to the Receiver the total sum of FOUR MILLION U.S. DOLLARS AND NO/100THS Dollars (USD$4,000,000.00) (the "<u>Settlement Payment</u>"), paid or payable as follows:

2

**(a)** Within twenty four (24) hours of the Execution Date, the Companies shall pay the Receiver an initial deposit in the amount of FIVE HUNDRED THOUSAND U.S. DOLLARS AND NO/100THS (USD $500,000.00) (the "Deposit"). The Deposit shall be held in escrow in a trust account at the Receiver's law firm, Nelson Mullins Broad and Cassel ("Nelson Mullins"). Prior to the Execution Date, the Receiver shall provide the Companies with wire instructions for the Deposit.

**(b)** Upon the occurrence of the Effective Date: **(i)** Nelson Mullins may release the Deposit from Escrow to the Receiver at which time the Deposit shall be non-refundable; and **(ii)** within twenty four (24) hours of the Effective Date, the Companies shall pay to the Receiver TWO HUNDRED FIFTY THOUSAND U.S. DOLLARS AND NO/100THS ($250,000.00); and **(iii)** the remaining balance on the Settlement Payment of THREE MILLION, TWO HUNDRED FIFTY THOUSAND U.S. DOLLARS AND NO/100THS (USD$3,250,000.00) (the "Remaining Balance") shall be paid by the Companies, jointly and severally, directly to the Receiver as follows:

*(A)* On the first day of the month immediately after the Effective Date (the "First Payment Date") and on the first day of the month for each of the twelve (12) months thereafter, the Companies shall pay the Receiver interest only payments at seven and one-half percent (7.5%) per annum on the Remaining Balance. The interest payment due on the First Payment Date shall be prorated for the number of days between the Effective Date and the First Payment Date (the "Stub Payment"). Other than the Stub Payment, the remaining twelve (12) interest payments shall be in the sum of TWENTY THOUSAND THREE HUNDRED TWELVE DOLLARS and 50/100THS ($20,312.50).

*(B)* Three hundred and sixty five (365) days after the Second Payment Date (defined as the first day of the month that immediately follows the First Payment Date) (the "Maturity Date"), the entire outstanding Remaining Balance along with any outstanding interest shall be due and payable to the Receiver. Each payment set forth in Paragraph 3(b)(iii)(A) and (B) shall be a "Payment," and collectively the "Payments" and the day any Payment is due shall a "Due Date." If a Due Date falls on a weekend or holiday, the Due Date shall be the next business day.

**(c)** Nelson Mullins shall return the Deposit to the Companies, at the Companies' sole option, if: **(i)** both the SEC Motion and the 1GC Motion have not been filed within ten (10) business days of the Execution Date; **(ii)** the SEC Motion is denied, and the order denying the same becomes final and non-appealable; or **(iii)** the 1GC Motion is denied, and the order denying the same becomes final and non-appealable.

**4.** **Joint and Several Obligation.** All obligations of the Companies under this Agreement shall be joint and several. This means that each Company is responsible for all obligations under this Agreement including, but not limited to, all obligations relating to the Settlement Payment.

**5.** **Prepayment.** The Companies may prepay the then outstanding Remaining Balance in whole at any time before the Maturity Date without penalty by paying to the Receiver the then outstanding Remaining Balance and any accrued interest.

**6.** **Security Interest and Pledge.** As security for the Payments required under this Agreement, the Companies hereby grant to the Receiver a continuing first priority perfected

4839-9773-8873.16

security interest (the "Security Interest") in and to all Collateral (as defined below). This Agreement shall be construed to be a Security Agreement within the meaning of the Uniform Commercial Code (the "UCC"). For purposes of this Agreement, Collateral means the following property of each Company, whether owned by the Companies as of the Effective Date or thereafter acquired:

     **(a)**      Accounts Receivable. All accounts, chattel paper, contracts, contract rights, accounts receivable, tax refunds, notes receivable, documents, other choses in action and general intangibles including, but not limited to, proceeds of inventory and returned goods and proceeds from the sale of goods and services, and all rights, liens, securities, guaranties, remedies and privileges related thereto, including the right of stoppage in transit and rights and property of any kind forming the subject matter of any of the foregoing; and

     **(b)**      Deposit Accounts. All time, savings, demand, certificate of deposit or other accounts in the name of either Company or in which either Company has any right, title or interest including, but not limited, to all sums now or at any time hereafter on deposit, and any renewals, extensions or replacements of and all other property which may from time to time be acquired directly or indirectly using the proceeds of any of the foregoing (the "Deposit Accounts"); and

     **(c)**      Inventory and Equipment. All inventory and equipment of every type or description wherever located including, but not limited, to all raw materials, parts, containers, work in process, finished goods, goods in transit, wares, merchandise furniture, fixtures, hardware, machinery, tools, parts, supplies, automobiles, trucks, other intangible personalty of whatever kind and wherever located owned by and associated with the business of either Company, tools and goods returned for credit, repossessed, reclaimed or otherwise reacquired by either Company; and

     **(d)**      Document of Title. All documents of title and other property from time to time received, receivable or otherwise distributed in respect of, exchange or substitution for or addition to any of the foregoing; and

     **(e)**      Other Property.

          ***(i)***      All other intangible property;

          ***(ii)***      All securities;

          ***(iii)***      All proceeds (including, but not limited to, insurance proceeds) and products of and accessions and annexations to any of the foregoing;

          ***(iv)***      All assets of any type or description that may at any time be assigned or delivered to or come into possession of either Company for any purpose for the account of either Company or as to which either Company may have any right, title, interest or power, and property in the possession or custody of or in transit to anyone for the account of either Company, as well as all proceeds and products thereof and accessions and annexations thereto;

4839-9773-8873.16

(*v*)    All know-how, information, permits, patents, copyrights, goodwill, trademarks, trade names, licenses and approvals held by either Company; and

(*vi*)    All of the books, records and documents pertaining to any of the foregoing.

7.    **The Parties' Deliveries on the Execution Date and Effective Date.**

(a)    The Companies shall deliver to the Receiver on the Execution Date: (*i*) this Agreement executed by the Companies; (*ii*) a sworn declaration by each Company to the Receiver in the forms attached as Exhibit B-1 and Exhibit B-2, restating the representations and warranties given by the Companies in Paragraphs 8(h), (i), (j), and (k) of this Agreement; and (*iii*) a Company Certificate for each of the Companies in the form attached as Exhibit C-1.

(b)    The Companies shall deliver to the Receiver on the Effective Date a Company Certificate for each of the Companies in the form attached as Exhibit C-2.

(c)    The Receiver shall deliver to the Companies on the Execution Date: (*i*) this Agreement fully executed by the Receiver; and (*ii*) a release from the Receiver in favor of the Companies in the form attached as Exhibit D-1 (the "Receiver Release").

(d)    The Receiver shall deliver to the Companies on the Effective Date: (*i*) a copy of the final and non-appealable SEC Approval Order; and (*ii*) a release from 1GC in favor of the Companies in the form attached as Exhibit D-2 (the "1GC Release") and the final and non-appealable 1GC Approval Order.

(e)    The Receiver Release and the 1GC Release shall be held in escrow by the Companies' counsel Fox Swibel Levin & Carroll LLP ("Fox Swibel") and such releases may only be released from escrow as specifically set forth in Paragraph 14(a) below.

8.    **Representations and Warranties of the Companies.**  The Companies hereby jointly and severally represent and warrant to the Receiver that:

(a)    Unified and Techmark are, respectively, a Nevada limited liability company and a Nevada corporation, duly organized, validly existing, and in good standing under the laws of the State of Nevada.

(b)    Each of the Companies have the full power and authority to execute, deliver and perform, and to enter into and consummate all transactions contemplated by this Agreement. Each of the Companies have duly authorized the execution, delivery and performance of this Agreement, have duly executed and delivered this Agreement, and this Agreement constitutes legal, valid and binding obligations of each of the Companies, enforceable against each of them in accordance with their terms.

(c)    The execution and delivery of this Agreement by the Companies, and the performance and compliance with the terms of this Agreement by either of them, will not violate either of their organizational documents or constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material

agreement or other instrument to which either Company is a party or which is applicable to them or any of their assets.

(d)       Neither Company is in violation of, and their execution and delivery of this Agreement and the Companies' performance and compliance with the terms of this Agreement will not constitute a violation of any law, any order or decree of any court, or any order, regulation or demand of any federal, state or local governmental or regulatory authority.

(e)       There is no litigation pending or threatened against either Company which, if determined adversely to either of them, would materially adversely affect this Agreement, or the transactions contemplated hereby, the execution, delivery or enforceability of this Agreement, or either of the Companies' performance of their obligations under this Agreement.

(f)       The Collateral is free and clear of any pledge, lien, security interest, encumbrance, claim or equitable interest and, as of the Effective Date, no indebtedness or other obligation of either of the Companies ranks senior to the obligations of the Companies under this Agreement.

(g)       Upon the filing of UCC financing statements in appropriate form with the UCC filing office located in the State of Nevada, the Security Interest will constitute a perfected first priority security interest in the Collateral under the UCC securing the obligations of the Companies under this Agreement and prior to all other liens and rights of others therein.

(h)       None of the funds being used by either of the Companies to make the Settlement Payment have been or will be obtained from Carl Ruderman ("Ruderman"), any of Ruderman's family members, or any of Ruderman's related or affiliated entities, including without limitation, the Ruderman Family Trust and the Bright Smile Trust.

(i)       None of the funds being used by either of the Companies to make the Settlement Payment have been or will be obtained from: (*i*) 1 Global Capital LLC; (*ii*) 1 West Capital LLC; (*iii*) Bright Smile Financing, LLC; (*iv*) BRR Block Inc.; (*v*) Digi South LLC; (*vi*) Ganador; (*vii*) Media Pay LLC; (*viii*) Pay Now Direct LLC; or (*ix*) any other party who, directly or indirectly, were at any time investors in 1 Global Capital LLC or any other party subject to the SEC Proceeding. Ruderman, any of Ruderman's family members, Ruderman's related or affiliated entities including without limitation, the Ruderman Family Trust and the Bright Smile Trust and all of the entities referenced in this paragraph shall be referred to as the "Related Parties."

(j)       None of the Related Parties will engage in, consult with, participate in, otherwise assist, hold a position as shareholder, director, officer, consultant, employee, partner, member, manager, or investor, or are in any way affiliated with either of the Companies.

(k)       To the best of each of the Companies' and their respective principals' knowledge, neither Company received, directly or indirectly, funds from any of the Related Parties other than Ganador or engaged in any business transaction or business relationship with the Related Parties other than Ganador.

(l)       All of the Companies' Deposit Accounts are listed on Schedule 1.

The foregoing representations and warranties of the Companies shall survive the execution of this Agreement and the transactions contemplated hereby, but shall terminate as of the closing of the SEC Proceeding.

**9.     Covenants of the Companies.** Until all of the obligations under this Agreement are paid in full to the Receiver, the Companies, jointly and severally, covenant to the Receiver that each of the Companies shall comply with the following covenants, unless the Receiver consents otherwise in writing:

(a)     No Other Security Interest.  Neither Company shall sell, pledge, assign, encumber or grant a security interest in the Collateral, other than to the Receiver pursuant to the terms of this Agreement.

(b)     UCC Financing Statements.  Each Company agrees that the Receiver may file UCC financing statements, and each Company will execute any and all other agreements, instruments, assignments or documents required and shall take such other action as may be required, to perfect or to continue the perfection of the Receiver's first priority Security Interest in the Collateral. Notwithstanding the foregoing, the Companies shall not be required to obtain account control agreements in connection with the Deposit Accounts. Each Company hereby authorizes the Receiver to file any such financing statement and any amendments or continuations thereof on either Company's behalf.

(c)     Further Assurances; Bank Account Statements. At the Receiver's request, the Companies shall promptly execute or cause to be executed and delivered to the Receiver any and all documents, instruments and agreements reasonably deemed necessary by the Receiver to perfect or to continue the perfection of the Receiver's liens, to facilitate the collection of the Collateral or otherwise to give effect to or carry out the terms or intent of this Agreement. Further, each of the Companies shall provide the Receiver, who shall then provide them to 1GC, copies of each Company's monthly bank account statements relating to each operating or other deposit account of each Company (collectively, the "Bank Statements") within five (5) days of (*i*) receipt by the relevant Company or (*ii*) when they become available to such Company. The Bank Statements shall be deemed "Confidential" pursuant to the Confidentiality Order as to Documents and Information Produced by Nonparties Unified Analytics and National Techmark (SEC Proceeding - Dkt. No. 88).

(d)     Corporate Existence. Each of the Companies shall maintain their corporate existence and take all reasonable action necessary to maintain all rights, privileges and franchises necessary or desirable in the normal conduct of its business.  Notwithstanding the foregoing, the Companies may make a different tax election (e.g. convert to a C-Corp.) at the Companies' sole discretion.

(e)     Taxes. Each of the Companies shall file timely or cause to be filed timely all tax returns and other tax related documentation required to be filed by each Company, and pay or cause to be paid all taxes due and payable by each Company, except to the extent any such taxes are being diligently contested by appropriate proceedings in good faith and with respect to which adequate reserves have been established on the books of the Companies in accordance with generally accepted accounting principles.

**(f)**  Ensure Senior Ranking of Obligations. Each of the Companies shall take such action as may be necessary to ensure that, at all times, the obligations of the Companies under this Agreement are senior, unconditional, secured and unsubordinated obligations, ranking senior in priority of payment to all other obligations of the Companies outstanding from time to time.

**(g)**  Guarantee. Neither Company shall enter into any guarantee or indemnity or otherwise assume the obligations of another person or entity ("Person"), or indemnify or agree to indemnity any Person from and against any claim, loss, damage, expense or other liability.

**(h)**  Liens. Neither Company shall create, assume or permit to exist any lien on any of the Collateral.

**(i)**  Change to Organizational Documents. Neither Company shall change any provision of its organizational documents in any manner that would be inconsistent with or breach any provision of this Agreement or that could be reasonably likely to have a material adverse effect.

**(j)**  Mergers, Consolidations. Neither Company shall undertake or permit any merger, consolidation, spin-off or reorganization; or undertake to issue any share capital or equity rights or otherwise change its capital structure.

**(k)**  Sales. Neither Company shall sell, lease, transfer or otherwise dispose of (by one or a series of transactions, related or not) any of the Collateral.

**(l)**  Partnership, Profit Sharing. Neither Company shall enter into any partnership, joint venture, consortium, profit-sharing or royalty agreement or other similar arrangement whereby such Company's income or profits are, or might be, shared with any other Person.

**(m)**  Investments; Subsidiaries. Neither Company shall form or have any subsidiary, unless approved in advance in writing by the Receiver, or make or permit to exist any investments in any Person unless approved in advance in writing by the Receiver.

**(n)**  Scope of Business. Neither Company shall change the nature or scope of its business or enter into any other business.

**(o)**  Terminate this Agreement. Neither Company shall  terminate, amend or assign, or consent or agree to any termination, amendment or assignment of, this Agreement, or waive performance by any Person of its obligations under or in respect of this Agreement.

**(p)**  Material Agreements. Neither Company shall enter into any material agreement, contract, instrument or other undertaking or arrangement.

**(q)**  Sale of Equity. Neither Company shall permit the sale of its equity interests or voting rights.

**(r)**  Deposit Accounts. Neither Company shall open or maintain any Deposit Account other than those listed on Schedule 1, unless otherwise approved by the Receiver in writing.

**10.  Events of Default.**  Each of the following events is hereby defined as an Event of Default:

      **(a)**     The Companies' failure to make a Payment in full within seven business (7) days of such Payment's Due Date, regardless of whether the Receiver has notified the Companies that the Companies are late in making any such Payment;

      **(b)**     Any representation of warranty of either, or both, of the Companies contained in this Agreement is false or incorrect in any material respect and such false or incorrect warranty or representation has a material adverse effect on the Receiver.

      **(c)**     Upon failure to cure within five (5) business days of written notice by the Receiver, either Company fails to perform or observe any covenant contained in this this Agreement.

      **(d)**     Either Company undergoes a change of control, which for purposes of this Agreement shall be defined as either *(i)* the acquisition of beneficial ownership of 50% or more of the then outstanding membership interests of such Company or *(ii)* approval by the stockholders or members of such Company to *(A)* a reorganization, merger or consolidation of such Company with another entity pursuant to which a majority of the voting ownership interests of the surviving entity are not owned by the Persons who are the stockholders or members of such Company immediately prior to such transaction, *(B)* a liquidation of such Company, or *(C)* the sale of all or substantially all of the assets of such Company.

      **(e)**     Either Company becomes insolvent, becomes the subject of any bankruptcy, reorganization or liquidation proceeding, makes a general assignment for the benefit of creditors, or has a receiver, trustee or similar custodian appointed for it or any of its property or takes any action in connection with or in the anticipation of, any of the foregoing, except to the extent that any such proceeding is dismissed or appointment terminated within sixty (60) days of the commencement of the proceeding or of the appointment.

      **(f)**     The Security Interest, for any reason (other than the Receiver's failure to continue the filing of any UCC financing statement), ceases to be a first priority, perfected security interest in and to any Collateral and such event is not remedied within five business (5) days after the Receiver's written notice of such failure.

**11.**    **Consequences of Event of Default.** Upon the occurrence of an Event of Default, the Receiver may declare all amounts owed to the Receiver hereunder to be immediately due and payable, whereupon all such amounts owed to the Receiver hereunder shall forthwith become due and payable, jointly and severally, in accordance with this paragraph. Each Company expressly waives presentment, demand, notice or protest of any kind hereunder. The Receiver shall give the Companies written notice of any such declaration, but failure to do so shall not impair the effect of such declaration.

Subject to the foregoing, upon and after the occurrence of an Event of Default, the Receiver shall have, and may exercise from time to time, the following rights and remedies:

      **(a)**     All of the rights and remedies of a secured party under the UCC or under other applicable law, and all other legal and equitable rights to which the Receiver may be entitled, all of which rights and remedies shall be cumulative, and none of which shall be exclusive, and shall be in addition to any other rights or remedies contained in this Agreement.

**(b)**     The right to (*i*) peaceably by its own means or with judicial assistance enter either Company's premises and take possession of the Collateral without prior notice to the Companies or the opportunity for a hearing, (*ii*) render the Collateral unusable, (*iii*) dispose of the Collateral, and (*iv*) require the Companies to assemble the Collateral and make it available to Receiver at a place designated by the Receiver. The Companies agree that the Receiver has full power and authority to collect, compromise, endorse, sell or otherwise deal with the Collateral in its own name or that of the Companies at any time upon an Event of Default.  Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Receiver will give the Companies reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made. The requirements of commercially reasonable notice shall be met if such notice is sent to the Companies at least ten (10) days before the time of the intended sale or disposition. Expenses of retaking, holding, preparing for disposition, disposing or the like shall include the Receiver's reasonable attorneys' fees and legal expenses, incurred or expended by the Receiver to enforce any payment due it under this Agreement either as against the Companies, or in the prosecution or defense of any action, or concerning any matter resulting from, relating to or in connection with the subject matter of this Agreement and the Collateral pledged hereunder. The Companies waive all relief from all appraisement or exemption laws now in force or hereafter enacted.

The proceeds realized from the sale of any Collateral may be applied, after allowing two (2) business days for collection, first, to the reasonable costs, expenses, including reasonable attorneys' fees and expenses, incurred by the Receiver for collection and for acquisition, completion, protection, sale and delivery of the Collateral; second, to any interest due upon any of the obligations hereunder; and third, to the principal of the obligations hereunder. If any deficiency shall remain, the Companies shall remain jointly and severally liable to the Receiver therefor. All amounts collected in excess of the amounts permitted to be recouped by the Receiver hereunder shall be remitted to the Companies.

**(c)**     Through a sworn declaration from the Receiver stating that an Event of Default has occurred, ex parte and without notice to the Companies, the right to apply to the Receivership Court in the SEC Proceeding for the imposition of a receivership, and appointment of the Receiver as receiver, over each of the Companies and the Collateral, and for the entry of an order by the Receivership Court granting the foregoing in the form attached as <u>Exhibit E</u>. Each of the Companies expressly waive their right to defend against such application for and imposition of such a receivership upon the occurrence of an Event of Default, or otherwise argue that such relief is not warranted or appropriate; provided, however, that the Companies may argue as their sole defense to such an application and imposition that an Event of Default has not occurred.

**12.**     <u>**Indemnification**</u>.

**(a)**     From and after the Execution Date, the Companies (referred to jointly for purposes of this <u>Paragraph 12</u> as the "<u>Indemnitor</u>") shall jointly and severally indemnify, defend, and hold harmless, as applicable, Ganador and/or the Receiver and/or 1GC (each, as applicable, is referred to for purposes of this <u>Paragraph 12</u> as the "<u>Indemnitee</u>") from and against any and all costs, losses, liabilities, damages, lawsuits, deficiencies, claims and expenses, including without limitation, interest, penalties, costs of litigation, and other losses, reasonable attorneys' fees and

all amounts paid in investigation, preparation, defense or settlement of any of the foregoing if the Indemnitee is, becomes, or is threatened to be made a party or witness or subject to any threatened or pending action, suit, or proceeding of any kind, whether civil, criminal, administrative, regulatory, or investigative proceedings, that relates in whole or in part to any actual or alleged act, omission or breach in connection with this Agreement by the Indemnitor, or any false representation or warranty, breach or failure by the Indemnitor to comply with any covenant or agreement by the Indemnitor herein, including, without limitation, any ancillary or enforcement proceeding relating thereto, including, without limitation, claims for monetary damages against the Indemnitee with respect to an alleged breach of fiduciary duty.

(b)     The indemnification and duty to defend provided by this <u>Paragraph 12</u> shall be for all claims incurred by the Indemnitee or on the Indemnitee's behalf. Indemnitee shall have the right to select the counsel of its choosing in all matters covered by this <u>Paragraph 12</u>.

(c)     If the Indemnitee is entitled under any provision of this <u>Paragraph 12</u> to indemnification for some or a portion of the expenses incurred by Indemnitee or on Indemnitee's behalf in connection with any Proceeding, or in defense of any claim, issue or matter therein, and any appeal therefrom, but not, however, for the total amount thereof, the Indemnitor shall nevertheless indemnify the Indemnitee for the portion of such expenses to which the Indemnitee is entitled.

(d)     The Indemnitor shall not, without the prior written consent of the Indemnitee (which consent may be withheld in the Indemnitee's sole discretion), settle, compromise or consent to the entry of any judgment in any pending or threatened proceeding in respect of which indemnification or defense may be sought hereunder by such Indemnitee.

**13.     <u>Release by the Companies in Favor of the Receiver, Ganador and 1GC</u>.** From and after the Effective Date, the Companies, on behalf of the Companies' officers, directors, members, partners, shareholders, agents, representatives, advisors, legal representatives, and attorneys, and each of their respective predecessors, subsidiaries, successors, assigns and affiliates (collectively, the "<u>Releasor</u>") hereby release and discharge Ganador, the Receiver, 1GC and each of their respective officers, directors, partners, members, shareholders managers, agents, representatives heirs, executors, trustees, administrators, predecessors, subsidiaries, successors, affiliates, assigns, advisors, legal representatives, attorneys, and employees (collectively, the "<u>Releasees</u>"), from all liabilities arising from or related to any and all claims, demands, controversies, actions, causes of action whether asserted or unasserted, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, proceedings, agreements, promises, variances, trespasses, obligations, liabilities, fines, penalties, costs, expenses, attorneys' fees, and damages of whatsoever character, nature, or kind, in law or in equity, whether known or unknown, fixed or contingent,  liquidated or unliquidated, pending or not pending, disclosed or not disclosed, whether directly, representatively, derivatively or in any other capacity (collectively, the "<u>Claims</u>"), which against the Releasees the Releasor ever had, now has or hereafter can, shall or may have for, upon or by reason of, including, but not limited to: any Claims in any way related to or arising from the Agreement, the Collateral, the SEC Proceeding, the Bankruptcy Case, any actions or omissions of the Receiver individually and in his role as the Receiver over Ganador; and any Claims in any way related to any actions or omissions of the Receiver in connection with Bright Smile Financing, LLC, a Florida limited liability company, BRR Block, a Florida corporation, Digi South, a Florida limited liability

company, Media Pay, a Florida limited liability company, Pay Now Direct, a Florida limited liability company, the Bright Smile Trust, a trust created under the laws of the State of Florida, and the Ruderman Family Trust, a trust created under the laws of the State of Florida (collectively, the "Released Claims").

In addition, following the Effective Date, the Releasor shall not assist or cooperate with any other person to commence, prosecute or pursue any civil claim against any of the Releasees; provided, however, that the Releasor shall be permitted to respond to subpoenas or court orders, in which case the Releasor will notify the affected Releasees of any such subpoena or order within three (3) business days of receipt so as to afford the affected Releasees the opportunity to take such action as they deem appropriate. For the avoidance of doubt, the foregoing is not intended to and shall not prevent the Releasor from cooperating with any civil or criminal law enforcement authorities or governmental agencies.

If the Releasor breaches any of the foregoing provisions, the Releasor shall indemnify and hold harmless each of the Releasees for any loss or damages, however suffered, caused by such breach, including, without limitation, costs, expenses and reasonable attorneys' fees, including, without limitation, attorneys' fees incurred in the course of enforcement of this indemnification provision. In connection with any such indemnification obligation, each of the Releasees shall be entitled to retain the legal counsel of the Releasees' choosing.

The Releasor represents and warrants that it has not assigned or transferred, or purported to assign or transfer, to any person or entity any claim released hereby that it has had, now has or may have against the Releasees or any portion thereof or interest therein.

Notwithstanding anything contained in this Paragraph 13 to the contrary, nothing herein shall release the Releasees from any of their obligations under this Agreement.

Notwithstanding anything contained in this Agreement to the contrary, if the Effective Date does not occur, the Releasor shall be under no obligation to release the Releasees pursuant to this Paragraph 13.

**14.    Release by Receiver, Ganador and 1GC in Favor of the Companies.**

    **(a)**    Fox Swibel shall release from escrow to the Companies the Receiver Release and the 1GC Release if the following conditions have been satisfied: **(i)** the Companies have made payment in full of the Settlement Payment and any interest due and owing hereunder, and **(ii)** Fox Swibel has received written confirmation from the Receiver that the Settlement Payment and any interest due and owing hereunder has been paid in full.

    **(b)**    Upon payment in full of the Settlement Payment and any interest due and owing hereunder, all liens and security interests granted by the Companies hereunder shall immediately terminate. The Receiver shall cooperate with the Companies to file appropriate termination statements and that, in the event that the Receiver shall fail to do so within five (5) business days after a written request by Borrower, Borrower is authorized to file such termination statements in the name of the Receiver (consistent with the terms of Section 9-513 of the Uniform Commercial Code).

4839-9773-8873.16

(c)    The Receiver covenants and agrees that, following the Execution Date, as long as there is not an uncured Event of Default, neither the Receiver nor its representatives shall initiate, file, or cause to be filed or initiated, any civil or criminal action or investigation, inquiry or other proceedings against the Companies in his capacity as Receiver over Ganador, Bright Smile Financing, LLC, BRR Block Inc., Digi South LLC, Media Pay LLC, Pay Now Direct LLC, the Ruderman Family Trust, and the Bright Smile Trust. Notwithstanding the foregoing, both the Receiver and Ganador shall be permitted to respond to subpoenas or court orders, in which case the Receiver or Ganador shall notify the affected Company of any such subpoena or order promptly so as to afford the affected Company the opportunity to take such action as such Company deems appropriate. For the avoidance of doubt, the foregoing is not intended to and shall not prevent the Receiver or Ganador from cooperating with any civil or criminal law enforcement authorities.

(d)    The Companies agree that the time period between the Execution Date of this Agreement and any Event of Default as described in Section 10 of this Agreement shall not be counted in determining the applicability of any statute of limitations or other time-based defenses in any action or proceeding brought by the Receiver, whether brought collectively or separately, against any of the Releasees as defined in the Receiver Release attached to this Agreement as Exhibit D-1. The foregoing applies to any defense, legal or equitable, based upon the lapse of time, including but not limited to the statute of limitations, laches, waiver, timely action or notice.

**15.    Notices.**    All notices, demands or other communications required or permitted to be given or made under this Agreement will be in writing and **(i)** delivered personally or **(ii)** sent by an nationally recognized express courier service to the intended recipient of the notice, demand or other communication at its address set forth below. Any notice, demand or communication will be deemed to have been duly given *(A)* immediately if personally delivered or *(B)* on the second Business Day after delivery to an nationally recognized express courier service, if sent next day delivery, and in proving the giving of any notice, demand or other communication, it will be sufficient to show that the envelope containing the notice, demand or other communication was duly addressed (as evidenced by the courier receipt). The addresses of the parties for purposes of this Agreement are as follows:

    If to the Receiver:

    Jon A Sale, Esq., as Receiver
    Nelson Mullins Broad and Cassel
    2 South Biscayne Boulevard
    One Biscayne Tower – 21st Floor
    Miami, Florida 33131

    with a copy thereof to:

    Nelson Mullins Broad and Cassel
    2 South Biscayne Boulevard
    One Biscayne Tower – 21st Floor
    Miami, Florida 33131
    Attn: Daniel S. Newman, Esq.

13

If to 1GC:

Greenberg Traurig, LLP
333 SE 2nd Avenue
Suite 4400
Miami, Florida 33131
Attn: Paul J. Keenan Jr., Esq.

If to Unified:

c/o Jesus Diaz
4965 SW 91st Terrace Suite A
Gainesville FL 32608

with a copy thereof to:

Fox Swibel Levin & Carroll LLP
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
Attn: Ryan T. Schultz

If to Techmark:

c/o Oscar Rodriguez
4965 SW 91st Terrace Suite A
Gainesville FL 32608

with a copy thereof to:

Fox Swibel Levin & Carroll LLP
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
Attn: Ryan T. Schultz

Any Party may from time to time, by notice in writing served upon the other Party as provided in this Agreement, designate a different mailing address to which or a different person to whose attention all such notices or demands are thereafter to be addressed.

**16.    Waivers.**   No delay or omission by any Party in exercising any right or power arising from any default by the other Parties shall be construed as a waiver of such default or as an acquiescence therein, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by the other Parties. No waiver of any breach of any of the covenants or conditions contained in this Agreement shall be construed to be a waiver of or acquiescence in or consent to any previous or subsequent breach of the same or of any other condition or covenant.

4839-9773-8873.16

**17.    Advice of Counsel.**  The Parties acknowledge that in entering into this Agreement, the Parties have not relied upon any representations, warranties, promises or conditions made by the other Parties or the other Parties' agents, or the Receiver, that are not specifically set forth in this Agreement. The Parties acknowledge that they each have freely executed this Agreement after independent investigation, with the advice of independent counsel and without fraud, duress or undue influence, and that each understands the content of this Agreement.

**18.    No Admissions.**  This Agreement is entered into as a settlement and compromise of disputed claims, and shall not be treated as an admission by any Party of any liability whatsoever. The Parties are entering into this Agreement solely to avoid the inconvenience, expense and uncertainty of litigation and expressly disclaim any liability to any other Party.

**19.    Each Party to Bear its Own Costs.**  Except as expressly provided herein, each Party shall bear its own costs in connection with this Agreement and its subject matter, whether such costs were incurred before, or are incurred after, the Execution Date.

**20.    Attorney's Fees.**  With regard to any action or proceeding filed or brought by either Company against the Receiver, or by the Receiver against either Company, in connection with or arising from this Agreement, the Prevailing Party (as such term is defined below) shall be entitled to recover from such other party all of its reasonable costs and expenses incurred in connection with such dispute, including attorneys' fees and costs, expenses, court costs, expert witness fees, and accounting and consulting fees. The term "Prevailing Party" means that party whose position, or a substantial part thereof, is upheld in a final non-appealable judgment rendered in such proceeding.

**21.    Time of Essence; Context.**  Time is hereby declared to be of the essence of this Agreement and of every part hereof.  When the context and construction so require, all words used in the singular herein shall be deemed to have been used in the plural and the masculine shall include the feminine and the neuter and vice versa.

**22.    Entire Agreement.**  This Agreement constitutes the entire understanding between the Parties with respect to the subject matter hereof, superseding all prior written or oral understandings, and may not be terminated, modified or amended in any way except by a written agreement signed by each of the Parties.

**23.    Severability.**  If any provision hereof or the application thereof to any party or circumstance shall be invalid or unenforceable to any extent, such provision shall be reformed to best achieve the intentions of the parties and the remainder of this Agreement and the application of such provision to the other Parties or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

**24.    Further Assurances.**  Promptly upon request from time to time of the Receiver, the Companies shall, at their sole expense, do, execute, acknowledge and deliver, or cause to be done, executed, acknowledged or delivered, to or at the direction of the Receiver, all further acts, transfers, assignments, powers and other documents and instruments as may be reasonably requested to give effect to the transactions contemplated hereby.

4839-9773-8873.16

25.    <u>**Governing Law; Waiver of Right to Trial by Jury**</u>.   THE PARTIES HEREBY ACKNOWLEDGE THAT THIS AGREEMENT HAS BEEN NEGOTIATED AND EXECUTED IN THE STATE OF FLORIDA. THE PARTIES EXPRESSLY AGREE THAT THIS AGREEMENT SHALL BE GOVERNED BY, INTERPRETED UNDER AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA WITHOUT GIVING EFFECT TO FLORIDA'S PRINCIPLES OF CONFLICTS OF LAWS. WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE PARTIES EACH IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE COURT THAT IS PRESIDING OVER, OR THAT LAST PRESIDED OVER, THE SEC PROCEEDING. EACH PARTY EXPRESSLY AND UNCONDITIONALLY WAIVES IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING BROUGHT UNDER OR ARISING OUT OF THIS AGREEMENT ANY AND EVERY RIGHT EACH PARTY MAY HAVE TO A TRIAL BY JURY.

26.    <u>**Counterparts; Interpretation**</u>. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same document. No ambiguity in any provision hereof shall be construed against a Party by reason of the fact it was drafted by such Party or its counsel.

[*Signature Page Follows*]

4839-9773-8873.16

**EXECUTION VERSION**

     The Companies and the Receiver have caused this Settlement and Release Agreement to be executed and delivered by their duly authorized representatives, effective as of the Effective Date.

**UNIFIED:**

**TECHMARK:**

**Unified Analytics, LLC**, a Nevada limited liability company

**National Techmark Inc.**, a Nevada corporation

By: _____

Name: _____Jesus Diaz_____

Title: _____President_____

By: _____

Name: _____Oscar Rodriguez_____

Title: _____Director_____

**GANADOR:**

By: _____

Name: Jon A. Sale, Esq.

Title: Court-appointed Receiver over Ganador

**EXECUTION VERSION**

The Companies and the Receiver have caused this Settlement and Release Agreement to be executed and delivered by their duly authorized representatives, effective as of the Effective Date.

**UNIFIED:**                                      **TECHMARK:**

**Unified Analytics, LLC**, a Nevada limited      **National Techmark Inc.**, a Nevada
liability company                                 corporation

By: _____            By: _____
Name: _____            Name: _____
Title: _____          Title: _____


**GANADOR:**


By: _____
Name: Jon A. Sale, Esq.
Title: Court-appointed Receiver over Ganador

EXECUTION VERSION

## SCHEDULE 1
### Deposit Accounts

**[Attached]**

| Bank Name and Address | Account Holder | Last Four Digits of Account Number |
|---|---|---|
| | | |
| Bank of America – 7100 SW Archer Rd., Gainesville, Florida 32608-4606 | National Techmark Inc. | 4416 |
| Bank of America – 7100 SW Archer Rd., Gainesville, Florida 23608-4606 | Unified Analytics, LLC | 2318 |

**EXHIBIT A-1**
**Form of SEC Approval Order**

**[Attached]**

**EXECUTION VERSION**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

SECURITIES AND EXCHANGE COMMISSION,

            **Plaintiff,**

v.

1 GLOBAL CAPITAL LLC, and
CARL RUDERMAN,

            **Defendants, and**

1 WEST CAPITAL LLC,
BRIGHT SMILE FINANCING, LLC,
BRR BLOCK INC.,
DIGI SOUTH LLC,
GANADOR ENTERPRISES, LLC,
MEDIA PAY LLC,
PAY NOW DIRECT LLC, and
RUDERMAN FAMILY TRUST,

            **Relief Defendants.**

CASE NO. 18-cv-61991-BB BLOOM/VALLE

---

**ORDER GRANTING RECEIVER'S MOTION**
**TO APPROVE SETTLEMENT AND RELEASE AGREEMENT**

**THIS CAUSE** comes before this Court on _____, 2018, on the Receiver's

Motion (the "Motion") to Approve the Settlement and Release Agreement (the "Agreement")

between National Techmark Inc. ("Techmark"), Unified Analytics, LLC ("Unified") and Jon A.

Sale, Esq., solely in his capacity as the receiver (the "Receiver") over Ganador Enterprises, LLC

("Ganador") and the Court having reviewed the Motion and the Agreement, having been advised

of the proposed Settlement and the complete execution of the Agreement, having heard argument

of counsel and proffers, and for the reasons stated on the record, the Court finds that in addition to

those reasons stated on the record:

        1.        In his Motion, the Receiver, as the Receiver over Ganador, seeks entry of an order

authorizing and approving the compromise, settlement and release (the "Settlement Order") with

**EXECUTION VERSION**

Unified and Techmark (the "Proposed Settlement"). Unified, Techmark, and the Receiver shall be referred to collectively as the "Settling Parties." The Proposed Settlement is made by the Receiver pursuant to the powers conferred upon him by this Court's Order Granting *Ex Parte* Motion for Appointment of a Receiver [D.E. 12] (the "Receivership Order"). The terms of the Proposed Settlement are set out in the Agreement, which is attached to the Motion as Exhibit A and incorporated herein by reference.

2.    The Court, noting that the Settling Parties have entered into the Proposed Settlement and that notice was given to those potentially interested parties identified on the service list of the Motion, having considered the Agreement, and having given an opportunity to be heard to all persons requesting to be heard, it is

**ORDERED** as follows:

1.    The Court has jurisdiction over this matter pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§77t(b), 77t(d), and 77v(a), and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§78u(d), 78u(e), and 78aa.

2.    The form and means of the notice of the Proposed Settlement and the Motion are hereby determined to have been the best notice practicable under the circumstances and to be good and sufficient notice to all persons whose interests could be affected by the Settlement Order.

3.    The Court has been apprised of the negotiations that preceded the Agreement and finds that the Proposed Settlement is a result of arms-length bargaining among the Settling Parties and represents a good faith compromise and resolution of the matters settled. There is no evidence that the Proposed Settlement is the result of collusion among the Settling Parties or that there has been an intent to prejudice the persons who, or the entities which, will be subject to this Settlement Order.

2

**EXECUTION VERSION**

4.      The legal and factual bases set forth in the Motion and on the record establish that the Proposed Settlement represents a fair, reasonable, and adequate resolution of the Settling Parties' dispute, and in light of the potential claims that could be asserted by the Receiver and the defenses to those claims that would likely be asserted by Unified and Techmark, the Court finds that the Proposed Settlement including, but not limited to, the release provision in Paragraph 13 and the Receiver Release in favor of Unified and Techmark, attached to the Agreement as Exhibit D-1, is fair and equitable with respect to creditors in this receivership case, and is in the best interest of this receivership estate.

5.      This Court retains jurisdiction to enforce the terms of the Agreement.

6.      The Motion to is granted and the terms of the Agreement are hereby approved and incorporated into this Settlement Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this _____ day of _____, _____.

_____
**HONORABLE JUDGE BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
*Counsel of record*

3

**EXHIBIT A-2**
**Form of 1GC Approval Order**

**[Attached]**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:                                                      Chapter 11

1 GLOBAL CAPITAL LLC, *et al.*,[1]         Case No. 18-19121-RBR

                              Debtors.

**ORDER GRANTING DEBTORS' MOTION FOR APPROVAL OF (I) SETTLEMENT**
**AND RELEASE AGREEMENT AND (II) DEBTORS' RELEASE IN FAVOR OF**
**<u>NATIONAL TECHMARK INC. AND UNIFIED ANALYTICS, LLC</u>**

THIS MATTER came before the Court upon the *Debtors' Motion for Entry of an Order*

*Approving (I) Settlement and Release Agreement and (II) The Debtors' Release in Favor of*

*National Techmark Inc. and Unified Analytics, LLC Granted in Connection Therewith* [ECF

_____] (the "**Motion**"). Capitalized terms not otherwise defined herein shall have the

meaning given to such terms in the Motion. The Court having reviewed the Motion, having been

advised of the settlement (the "**Settlement**") between National Techmark Inc., a Nevada

---

[1] The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: 1 Global Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach 33009 (9517); and 1 West Capital LLC, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).

*FTL 112005062v2*

4848-8503-4362

corporation ("**Techmark**"), Unified Analytics, LLC, a Nevada limited liability company ("**Unified**" and together with Techmark, the "**Companies**"), and Jon A. Sale, Esq., solely in his capacity as the court-appointed receiver ("**Receiver**") over Ganador Enterprises, LLC, a Florida limited liability company ("**Ganador**") and certain other non-Debtor affiliates of the Debtors (collectively, the "**Receivership Estate**"), pursuant to the terms of that certain Settlement and Release Agreement made and entered into as of December 10, 2018 (the "**Agreement**"), which Agreement has been fully executed by Techmark, Unified and the Receiver on behalf of Ganador, having heard argument of counsel and any evidence entered by counsel, and for the reasons stated on the record, the Court finds that in addition to those reasons stated on the record:

A.      By the Motion, 1 Global Capital LLC and 1 West Capital LLC (the "**Debtors**"), seek entry of an order (the "**Order**") approving the Agreement and authorizing the grant of release (the "**Release**") by the Debtors in favor of the Companies. The Debtors, Techmark and Unified shall be referred to collectively as the "Parties." The Release is set forth as Exhibit D-2 to the Agreement, which Agreement is attached to the Motion as Exhibit B.

B.      The Court, noting that (i) the Companies and the Receiver have entered into the Agreement, (ii) the Release is an integral part of the Agreement, (iii) the proceeds to be received by the Receiver pursuant to the Settlement will inure to the benefit of the Debtors' creditors, (iv) notice was given to those potentially interested parties identified on the service list of the Motion, having considered the Agreement and the Release, and having given an opportunity to be heard to all persons requesting to be heard, it is

**ORDERED** as follows:

*FTL 112005062v2*

4848-8503-4362

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and authority to enter this Order approving the Agreement and authorizing the Release pursuant to 11 U.S.C. §105(a) and Bankruptcy Rule 9019(a).

2.      The form and means of the notice of the Release and the Motion are hereby determined to have been the best notice practicable under the circumstances and to be good and sufficient notice to all persons whose interests could be affected by the Order.

3.      The Court has been apprised of the negotiations that preceded the Agreement and Release, and finds that the Agreement and Release are the result of arm's-length bargaining among the Parties and represent a good faith compromise and resolution of the matters settled. There is no evidence that the Agreement is the result of collusion among the Parties or that there has been any intent to prejudice the persons who, or the entities which, will be subject to this Order.

4.      The legal and factual bases set forth in the Motion and on the record establish that the Agreement represents a fair, reasonable, and adequate resolution of the Parties' dispute, and in light of the claims that could be asserted by the Debtors, and the defenses to those claims that would be asserted by the Companies, and the fact that there is significant overlap between the creditors of the Receivership Estate and the creditors of the Bankruptcy Estates such that the proceeds of the Settlement will inure to the benefit of the Debtors' creditors, the Court finds that the Agreement is fair and equitable with respect to creditors in these Chapter 11 Cases, and is in the best interest of the Bankruptcy Estates.

5.      The Motion is granted, the Agreement is approved and the Debtors are authorized to grant the Release.

6.      The Court retains jurisdiction over the Parties to enforce and interpret the Agreement and Release.

3

*FTL 112005062v2*

4848-8503-4362

#        #        #

Submitted by:

John R. Dodd, Esq.
Fla. Bar No. 38091
doddj@gtlaw.com
GREENBERG TRAURIG, LLP
33 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500

*Counsel for the Debtors*
*and Debtors-in-Possession*

*(Epiq Corporate Restructuring, LLC is directed to serve copies of this Order upon all interested*
*parties and to file a Certificate of Service with the Court.)*

4

**EXHIBIT B-1**
**Form of Sworn Declaration of Techmark**

**[Attached]**

EXECUTION VERSION

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | |
| **1 GLOBAL CAPITAL LLC, and**<br>**CARL RUDERMAN,** | |
| **Defendants, and** | |
| **1 WEST CAPITAL LLC,**<br>**BRIGHT SMILE FINANCING, LLC,**<br>**BRR BLOCK INC.,**<br>**DIGI SOUTH LLC,**<br>**GANADOR ENTERPRISES, LLC,**<br>**MEDIA PAY LLC,**<br>**PAY NOW DIRECT LLC, and**<br>**RUDERMAN FAMILY TRUST,** | **CASE NO. 18-cv-61991-BB BLOOM/VALLE** |
| **Relief Defendants.** | |

## SWORN DECLARATION OF NATIONAL TECHMARK INC.

| | |
|---|---|
| **STATE OF FLORIDA** | **)** |
| | **)SS** |
| | **)** |

Capitalized terms used but not defined herein shall have the meaning given to such terms in the Agreement (as defined below).

**BEFORE ME**, the undersigned authority, personally appeared _____, an authorized representative ("Authorized Representative") of National Techmark Inc., a Nevada corporation (the "Company"), one of the Companies under that certain Settlement and Release Agreement made and entered into as of December 10, 2018 (the "Agreement") between the Company, Unified Analytics, LLC, a Nevada limited liability company ("Unified"), Jon A. Sale, Esq., solely in his capacity as the Receiver (the "Receiver") over Ganador Enterprises, LLC, a Florida limited liability company (the "Ganador"), who after being first duly sworn, deposes and says in

the capacity of _____ of the Company, and not in an individual capacity, that:

1.     I am familiar with the facts relating to the above-referenced proceeding, and have knowledge of the facts contained herein and make this affidavit on knowledge and swear to the truth of the matters stated herein.

2.     None of the funds being used by the Company to make the Settlement Payment have been or will be obtained from Ruderman, any of Ruderman's family members, or any of Ruderman's related or affiliated entities, including without limitation, the Ruderman Family Trust.

3.     None of the funds being used by the Company to make the Settlement Payment have been or will be obtained from: (i) 1 Global Capital LLC; (ii) 1 West Capital LLC; (iii) Bright Smile Financing, LLC; (iv) BRR Block Inc.; (v) Digi South LLC; (vi) Ganador; (vii) Media Pay LLC; (viii) Pay Now Direct LLC; or (ix) any other party who, directly or indirectly, were at any time investors in 1 Global Capital LLC or any other party subject to the SEC Proceeding. Ruderman, any of Ruderman's family members, Ruderman's related or affiliated entities including without limitation, the Ruderman Family Trust and all of the entities referenced in this paragraph shall be referred to as the "Tainted Parties."

4.     None of the Tainted Parties will engage in, consult with, participate in, otherwise assist, hold a position as shareholder, director, officer, consultant, employee, partner, member, manager, or investor, or are in any way affiliated with the Company.

5.     To the best of each of the Companies' and their respective principals' knowledge, neither Company received, directly or indirectly, funds from any of the Tainted Parties other than Ganador or engaged in any business transaction or business relationship with the Tainted Parties other than Ganador.

**[*Signature Page Follows*]**

2

EXECUTION VERSION

**FURTHER AFFIANT SAYETH NAUGHT.**

**NATIONAL TECHMARK INC.**

By: _____
Name: _____
Title: _____


**SWORN TO AND SUBSCRIBED** before me this _____ day of [●], 2018, by [●], [the [●] of [●]], who is personally known to me or who has produced _____ as identification.

_____
(Signature of notary public)
State of Florida

_____
(Typed name of notary public)

My Commission Expires _____

Commission number _____

### EXHIBIT B-2
### Form of Sworn Declaration of Unified

EXECUTION VERSION

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

1 GLOBAL CAPITAL LLC, and
CARL RUDERMAN,

      Defendants, and

1 WEST CAPITAL LLC,
BRIGHT SMILE FINANCING, LLC,
BRR BLOCK INC.,
DIGI SOUTH LLC,
GANADOR ENTERPRISES, LLC,
MEDIA PAY LLC,
PAY NOW DIRECT LLC, and
RUDERMAN FAMILY TRUST,

      Relief Defendants.

CASE NO. 18-cv-61991-BB BLOOM/VALLE

## SWORN DECLARATION OF UNIFIED ANALYTICS, LLC

STATE OF FLORIDA      )
                  )SS
                  )

      Capitalized terms used but not defined herein shall have the meaning given to such terms in the Agreement (as defined below).

      **BEFORE ME**, the undersigned authority, personally appeared _____, an authorized representative ("Authorized Representative") of Unified Analytics, LLC, a Nevada limited liability company (the "Company"), one of the Companies under that certain Settlement and Release Agreement made and entered into as of December 10, 2018 (the "Agreement") between National Techmark Inc., a Nevada Corporation ("Techmark"), Unified Analytics, LLC, a Nevada limited liability company ("Unified"), Jon A. Sale, Esq., solely in his capacity as the Receiver (the "Receiver") over Ganador Enterprises, LLC, a Florida limited liability company (the

"Ganador"), who after being first duly sworn, deposes and says in the capacity of

_____ of the Company, and not in an individual capacity, that:

1.      I am familiar with the facts relating to the above-referenced proceeding, and have knowledge of the facts contained herein and make this affidavit on knowledge and swear to the truth of the matters stated herein.

2.      None of the funds being used by the Company to make the Settlement Payment have been or will be obtained from Ruderman, any of Ruderman's family members, or any of Ruderman's related or affiliated entities, including without limitation, the Ruderman Family Trust.

3.      None of the funds being used by the Company to make the Settlement Payment have been or will be obtained from: (i) 1 Global Capital LLC; (ii) 1 West Capital LLC; (iii) Bright Smile Financing, LLC; (iv) BRR Block Inc.; (v) Digi South LLC; (vi) Ganador; (vii) Media Pay LLC; (viii) Pay Now Direct LLC; or (ix) any other party who, directly or indirectly, were at any time investors in 1 Global Capital LLC or any other party subject to the SEC Proceeding. Ruderman, any of Ruderman's family members, Ruderman's related or affiliated entities including without limitation, the Ruderman Family Trust and all of the entities referenced in this paragraph shall be referred to as the "Tainted Parties."

4.      None of the Tainted Parties will engage in, consult with, participate in, otherwise assist, hold a position as shareholder, director, officer, consultant, employee, partner, member, manager, or investor, or are in any way affiliated with the Company.

5.      To the best of each of the Companies' and their respective principals' knowledge, neither Company received, directly or indirectly, funds from any of the Tainted Parties other than Ganador or engaged in any business transaction or business relationship with the Tainted Parties other than Ganador.

**[*Signature Page Follows*]**

4826-6256-1146.2

**EXECUTION VERSION**

**FURTHER AFFIANT SAYETH NAUGHT.**

**UNIFIED ANALYTICS, LLC**

By: _____

Name: _____

Title: _____


**SWORN TO AND SUBSCRIBED** before me this _____ day of [●], 2018, by [●], [the [●] of [●]], who is personally known to me or who has produced _____ as identification.


_____
(Signature of notary public)
State of Florida

_____
(Typed name of notary public)

My Commission Expires _____

Commission number _____

**EXHIBIT C-1**
**Form of Company Certificate as of Execution Date**

**[Attached]**

EXECUTION VERSION

# FORM OF COMPANY CERTIFICATE
## AS OF EXECUTION DATE

I, [●], Officer of [●][1], a [Jurisdiction/Type of Entity] (the "Company"), in connection with that certain Settlement and Release Agreement (the "Agreement") made and entered into as of December 10, 2018 between National Techmark Inc., a Nevada corporation ("Techmark"), Unified Analytics, LLC, a Nevada limited liability company ("Unified"), and Jon A. Sale, Esq., solely in his capacity as the receiver (the "Receiver") over Ganador Enterprises, LLC, a Florida limited liability company ("Ganador").

1. The undersigned is personally familiar, in his capacity as [●] of the Company, with the matters hereinafter set forth.

2. Each of the covenants, representations and warranties of the Company contained in the Agreement were true and correct in all material respects when made and are true and correct in all material respects as of the Execution Date (as defined in the Agreement).

3. All obligations of the Company contained in the Agreement to be performed prior to or on the Execution Date have been timely performed in all material respects.

4. Attached as Exhibit 1 is a certified copy of the Certificate of Formation of the Company as originally filed together with all amendments thereto.

5. Attached as Exhibit 2 is a good standing certificate for the Company issued by the Secretary of State of the State of Nevada.

6. Attached as Exhibit 3 is a true, correct and complete copy of resolutions of the governing body of the Company approving the Agreement and transactions contemplated thereby, which resolutions were adopted in accordance with the provisions of law, the Certificate of Formation and operating agreement or other applicable agreement of the Company, and such resolutions are now in full force and effect and have not been modified in any respect.

7. This Company Certificate is made on behalf of the Company, and not in the undersigned's personal capacity, and is binding upon the Company.

8. This Company Certificate is made with full knowledge that Seller is relying on the same for the closing of the transactions contemplated by the Agreement.

**[*Signature Page Follows*]**

---

[1] This company certificate will be delivered on or prior to the Execution Date by each of the Companies.

4846-1983-3464.2

EXECUTION VERSION

I, [--], Officer of the Company, have signed this Company Certificate this [--] day of [--], 2018.

By: _____
Name:
Title:

[Signature Page to Company Certificate (Ganador)]

## EXHIBIT C-2
### Form of Company Certificate as of Effective Date

**[Attached]**

EXECUTION VERSION

## FORM OF COMPANY CERTIFICATE
## AS OF EFFECTIVE DATE

I, [●], Officer of [●][1], a [Jurisdiction/Type of Entity] (the "Company"), in connection with that certain Settlement and Release Agreement (the "Agreement") made and entered into as of December 10, 2018 between National Techmark Inc., a Nevada corporation ("Techmark"), Unified Analytics, LLC, a Nevada limited liability company ("Unified"), and Jon A. Sale, Esq., solely in his capacity as the receiver (the "Receiver") over Ganador Enterprises, LLC, a Florida limited liability company ("Ganador").

1. The undersigned is personally familiar, in his capacity as [●] of the Company, with the matters hereinafter set forth.

2. Each of the covenants, representations and warranties of the Company contained in the Agreement were true and correct in all material respects when made and are true and correct in all material respects as of the Effective Date (as defined in the Agreement).

3. All obligations of the Company contained in the Agreement to be performed prior to or on the Effective Date have been timely performed in all material respects.

4. As of the Effective Date, the resolutions attached as Exhibit 3 to that certain Company Certificate as of the Execution Date remain in full force and effect and have not been modified in any respect.

5. This Company Certificate is made on behalf of the Company, and not in the undersigned's personal capacity, and is binding upon the Company.

6. This Company Certificate is made with full knowledge that Seller is relying on the same for the closing of the transactions contemplated by the Agreement.

**[*Signature Page Follows*]**

---

[1] This company certificate will be delivered on the Effective Date by each of the Companies.

**EXECUTION VERSION**

I, [--], Officer of the Company, have signed this Company Certificate as of the Effective Date.

By: _____
Name:
Title:

[Signature Page to Company Certificate (Ganador)]

**EXHIBIT D-1**
**Form of Receiver Release in Favor of the Companies**

**[Attached]**

## FORM OF
## RECEIVER RELEASE OF CLAIMS

The undersigned person (the "Affiant"), in consideration of:

that certain Settlement and Release Agreement (the "Agreement") approved by the United States District Court for the Southern District of Florida (the "Court") in Case No. 18-cv-61991-BB-BLOOM/VALLE (the "SEC Proceeding") and the United States Bankruptcy Court Southern District of Florida (the "Bankruptcy Court") in Case No. 18-19121-RBR (the "Bankruptcy Case"), which Agreement was made and entered into as of December 10, 2018, and became effective as of _____, 2018, between National Techmark Inc., a Nevada corporation ("Techmark") and Unified Analytics, LLC, a Nevada limited liability company ("Unified"), and Jon A. Sale, Esq., solely in his capacity as the Court-appointed receiver ("Receiver") over Ganador Enterprises, LLC, a Florida limited liability company ("Ganador"), of which this Release of Claims (this "Release") is an integral part, and the premises and the mutual promises contained in the Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged,

on behalf of:

Ganador and its respective predecessors, subsidiaries, successors, assigns and affiliates including, but not limited to, Bright Smile Financing LLC, BRR Block Inc., Digi South LLC, Media Pay LLC and Pay Now Direct LLC, the Ruderman Family Trust, and the Bright Smile Trust (collectively, the "Releasor"),

hereby releases and discharges:

Unified and Techmark, and each of the persons and entities set forth on Schedule A hereto (collectively, the "Releasees")

from:

all liabilities arising from any and all claims, demands, controversies, actions, causes of action suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, proceedings, agreements, promises, variances, trespasses, obligations, liabilities, fines, penalties, costs, expenses, attorneys' fees, and damages of whatsoever character, nature, or kind, in law or in equity, whether asserted or unasserted, whether known or unknown, fixed or contingent, liquidated or unliquidated, pending or not pending, disclosed or not disclosed, whether directly, representatively, derivatively or in any other capacity (collectively, the "Claims"),

which against the Releasees the Releasor ever had, now has or hereafter can, shall or may have for, upon or by reason of, including, but not limited to:

any Claims in any way related to or arising from the Agreement, the Collateral, the SEC Proceeding or the Bankruptcy Case (collectively, the "<u>Released Claims</u>"); provided, however, that the Released Claims shall not include any claims against Releasees the Receiver ever had, now has, or hereafter can have for breach of any of Releasees' obligations under the Agreement including, but not limited to, the covenants made and representations and warranties given by Releasees thereunder.

Additionally, the Releasor hereby releases and discharges the persons and entities set forth on Schedule B hereto (collectively, the "<u>Limited Releasees</u>") from all Claims related to Ganador and the negotiation and execution of the Agreement.

The Releasor shall not commence, prosecute, or assert any action, complaint, demand, cause of action, arbitration or other proceeding of any kind relating to, arising out of or involving in any way the Released Claims including, without limitation, any action for contribution, indemnity or otherwise, against or affecting any of the Releasees or any of their property, except for the purpose of enforcing this or any other Release executed in connection with the Agreement.  For avoidance of doubt, the foregoing is not intended to and shall not prevent the Releasor from cooperating with any civil or criminal law enforcement authorities or government agencies.

In addition, the Releasor shall not assist or cooperate with any other person to commence, prosecute or pursue any civil claim against any Releasee <u>provided, however</u>, that the Releasor shall be permitted to respond to subpoenas or court orders, in which case the Releasor will notify the affected Releasee or Releasses of any such subpoena or order promptly so as to afford the affected Releasee or Releasses the opportunity to take such action as they deem appropriate.  For the avoidance of doubt, the foregoing is not intended to and shall not prevent the Releasor from cooperating with any civil or criminal law enforcement authorities or government agencies.

The Releasor represents and warrants that Releasor has not assigned or transferred, or purported to assign or transfer, to any person or entity any claim released hereby that it has had, now has or may have against Releasees or any portion thereof or interest therein.

Notwithstanding anything contained in this Release to the contrary (a) nothing herein shall release the Releasees from any of their obligations under this Agreement; and (b) the releases set forth herein shall only become effective upon this Release being released from escrow pursuant to the Agreement.

This Release may be modified only by a writing duly executed by the parties hereto.

This Release is integral to and forms part of the Agreement.

AFFIANT HEREBY ACKNOWLEDGES THAT THIS RELEASE HAS BEEN NEGOTIATED AND EXECUTED IN THE STATE OF FLORIDA. AFFIANT EXPRESSLY AGREES THAT THIS RELEASE SHALL BE GOVERNED BY, INTERPRETED UNDER AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA WITHOUT GIVING EFFECT TO FLORIDA'S PRINCIPLES OF

CONFLICTS OF LAWS. WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS RELEASE, THE PARTIES EACH IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE COURT THAT IS PRESIDING OVER, OR THAT LAST PRESIDED OVER, THE SEC PROCEEDING. AFFIANT EXPRESSLY AND UNCONDITIONALLY WAIVES IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING BROUGHT UNDER OR ARISING OUT OF THIS RELEASE ANY AND EVERY RIGHT AFFIANT MAY HAVE TO A TRIAL BY JURY.

Unless otherwise defined herein, capitalized terms used herein shall have the definitions set forth in the Agreement.

The Affiant has caused this Release to be executed and delivered by its duly authorized representative as of [--], 2018. Notwithstanding anything herein to the contrary, this Release shall become effective upon its release from escrow as provided in Paragraph 14(a) of the Agreement.

_____
Jon A. Sale, Esq., solely in his capacity as court-appointed receiver of, and on behalf of, Ganador Enterprises, LLC, Bright Smile Financing, LLC, BRR Block Inc., Digi South LLC, Media Pay LLC and Pay Now Direct LLC, each a Florida limited liability company, and the Ruderman Family Trust and the Bright Smile Trust, each a trust created under the laws of the State of Florida.

EXECUTION VERSION

## SCHEDULE A

- Jesus Diaz
- Oscar Rodriguez
- Midaaswi, LLC d/b/a SmallLoan.net
- L.D.F. Holdings, LLC
- Lac Du Flambeau Band of Lake Superior Cippeaw Indians of Wisconsin
- The following employees of Unified and Techmark:

1. Juan Salas-Guillen
2. Erin L. Wilder
3. Adam D. Church
4. Peter T. Chwala
5. Melissa L. Drotar Fordham
6. Stephen S. Gerling
7. Sarah G. Griffin
8. Nathaniel A. Hensley
9. Evelyn Villanueva
10. Peng Xiao
11. Mayra I. Zayas-Diaz

EXECUTION VERSION

## SCHEDULE B

- Ken Hachikian
- Ivy Consulting Group
- Fox Swibel Levin & Carroll LLP and all of its attorneys and employees

**EXHIBIT D-2**
**Form of 1GC Release in Favor of the Companies**

**[Attached]**

EXECUTION VERSION

## FORM OF
## 1 GLOBAL CAPITAL LLC RELEASE OF CLAIMS

The undersigned person (the "<u>Affiant</u>"), in consideration of:

that certain Settlement and Release Agreement (the "<u>Agreement</u>") approved by the United States District Court for the Southern District of Florida (the "<u>Court</u>") in Case No. 18-cv-61991-BB-BLOOM/VALLE (the "<u>SEC Proceeding</u>") and the United States Bankruptcy Court Southern District of Florida (the "<u>Bankruptcy Court</u>") in Case No. 18-19121-RBR (the "<u>Bankruptcy Case</u>"), which Agreement was made and entered into as of December 10, 2018, and became effective as of _____, 2018, between National Techmark Inc., a Nevada corporation ("<u>Techmark</u>") and Unified Analytics, LLC, a Nevada limited liability company ("<u>Unified</u>"), and Jon A. Sale, Esq., solely in his capacity as the Court-appointed receiver ("<u>Receiver</u>") over Ganador Enterprises, LLC, a Florida limited liability company ("<u>Ganador</u>"), of which this Release of Claims (this "<u>Release</u>") is an integral part, and the premises and the mutual promises contained in the Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged,

on behalf of:

1 Global Capital LLC, a Florida limited liability company, as debtor-in-possession in the Bankruptcy Case ("<u>1 Global</u>") and 1 West Capital LLC, a Florida limited liability company (collectively, the "<u>Releasor</u>"),

hereby releases and discharges:

Unified and Techmark, and each of the persons and entities set forth on Schedule A hereto (collectively, the "<u>Releasees</u>")

from:

all liabilities arising from any and all claims, demands, controversies, actions, causes of action suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, proceedings, agreements, promises, variances, trespasses, obligations, liabilities, fines, penalties, costs, expenses, attorneys' fees, and damages of whatsoever character, nature, or kind, in law or in equity, whether asserted or unasserted, whether known or unknown, fixed or contingent, liquidated or unliquidated, pending or not pending, disclosed or not disclosed, whether directly, representatively, derivatively or in any other capacity (collectively, the "<u>Claims</u>"),

which against the Releasees the Releasor ever had, now has or hereafter can, shall or may have for, upon or by reason of, including, but not limited to:

any Claims in any way related to or arising from the Agreement, the Collateral, the SEC Proceeding or the Bankruptcy Case (collectively, the "<u>Released</u>

Claims"); provided, however, that the Released Claims shall not include any claims against Releasees the Releasor ever had, now has, or hereafter can have for breach of any of Releasees' obligations under the Agreement including, but not limited to, the covenants made and representations and warranties given by Releasees thereunder, all of which were a material inducement for Releasor providing this Release.

Additionally, the Releasor hereby releases and discharges the persons and entities set forth on Schedule B hereto (collectively, the "Limited Releasees") from all Claims related to Ganador and the negotiation and execution of the Agreement.

The Releasor shall not commence, prosecute, or assert any action, complaint, demand, cause of action, arbitration or other proceeding of any kind relating to, arising out of or involving in any way the Released Claims including, without limitation, any action for contribution, indemnity or otherwise, against or affecting any of the Releasees or any of their property, except for the purpose of enforcing this or any other Release executed in connection with the Agreement.  For avoidance of doubt, the foregoing is not intended to and shall not prevent the Releasor from cooperating with any civil or criminal law enforcement authorities or government agencies.

In addition, the Releasor shall not assist or cooperate with any other person to commence, prosecute or pursue any civil claim against any Releasee provided, however, that the Releasor shall be permitted to respond to subpoenas or court orders, in which case the Releasor will notify the affected Releasee or Releasses of any such subpoena or order promptly so as to afford the affected Releasee or Releasses the opportunity to take such action as they deem appropriate.  For the avoidance of doubt, the foregoing is not intended to and shall not prevent the Releasor from cooperating with any civil or criminal law enforcement authorities or government agencies.

The Releasor represents and warrants that it has not assigned or transferred, or purported to assign or transfer, to any person or entity any claim released hereby that it has had, now has or may have against Releasees or any portion thereof or interest therein.

Notwithstanding anything contained in this Release to the contrary (a) nothing herein shall release the Releasees from any of their obligations under this Agreement; and (b) the releases set forth herein shall only become effective upon this Release being released from escrow pursuant to the Agreement.

This Release may be modified only by a writing duly executed by the parties hereto.

This Release is integral to and forms part of the Agreement.

AFFIANT HEREBY ACKNOWLEDGES THAT THIS RELEASE HAS BEEN NEGOTIATED AND EXECUTED IN THE STATE OF FLORIDA. AFFIANT EXPRESSLY AGREES THAT THIS RELEASE SHALL BE GOVERNED BY, INTERPRETED UNDER AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA WITHOUT GIVING EFFECT TO FLORIDA'S PRINCIPLES OF CONFLICTS OF LAWS. WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDING

ARISING OUT OF OR RELATING TO THIS RELEASE, THE PARTIES EACH IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE COURT THAT IS PRESIDING OVER, OR THAT LAST PRESIDED OVER, THE SEC PROCEEDING. AFFIANT EXPRESSLY AND UNCONDITIONALLY WAIVES IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING BROUGHT UNDER OR ARISING OUT OF THIS RELEASE ANY AND EVERY RIGHT AFFIANT MAY HAVE TO A TRIAL BY JURY.

Unless otherwise defined herein, capitalized terms used herein shall have the definitions set forth in the Agreement.

The Affiant has caused this Release to be executed and delivered by its duly authorized representative as of [--], 2018. Notwithstanding anything herein to the contrary, this Release shall become effective upon its release from escrow as provided in Paragraph 14(a) of the Agreement.

1Global Capital LLC, a Florida limited liability company

By: _____
Name:
Title:

**EXECUTION VERSION**

## <u>SCHEDULE A</u>

- Jesus Diaz
- Oscar Rodriguez
- Midaaswi, LLC d/b/a SmallLoan.net
- L.D.F. Holdings, LLC
- Lac Du Flambeau Band of Lake Superior Cippeaw Indians of Wisconsin
- The following employees of Unified and Techmark:

    1. Juan Salas-Guillen
    2. Erin L. Wilder
    3. Adam D. Church
    4. Peter T. Chwala
    5. Melissa L. Drotar Fordham
    6. Stephen S. Gerling
    7. Sarah G. Griffin
    8. Nathaniel A. Hensley
    9. Evelyn Villanueva
    10. Peng Xiao
    11. Mayra I. Zayas-Diaz

EXECUTION VERSION

# SCHEDULE B

- Ken Hachikian
- Ivy Consulting Group
- Fox Swibel Levin & Carroll LLP and all of its attorneys and employees

## EXHIBIT E
## Form of Order Imposing Receivership Over Companies

**[Attached]**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:18-cv-61991-BB

**SECURITIES AND EXCHANGE COMMISSION,**

      **Plaintiff,**

**v.**

**1 GLOBAL CAPITAL LLC, and**
**CARL RUDERMAN,**

      **Defendants, and**

**1 WEST CAPITAL LLC,**
**BRIGHT SMILE FINANCING, LLC,**
**BRR BLOCK INC.,**
**DIGI SOUTH LLC,**
**GANADOR ENTERPRISES, LLC,**
**MEDIA PAY LLC**
**PAY NOW DIRECT LLC, and**
**RUDERMAN FAMILY TRUST,**

      **Relief Defendants.**
_____/

### FORM OF ORDER EXPANDING RECEIVERSHIP

    **THIS CAUSE** comes before the Court on the Receiver's Motion to Expand Receivership over Unified Analytics, LLC, a Nevada limited liability company and National Techmark Inc., a Nevada corporation (the "Motion"). Having considered the Motion, and being otherwise fully advised, it is **ORDERED AND ADJUDGED**:

    1.  The Receiver's Motion [D.E. __] is **GRANTED**.

    2.  Jon A. Sale, Esq. is appointed Receiver over Unified Analytics, LLC and National Techmark Inc.

3.  The Court's August 23, 2018 sealed Order Granting *Ex Parte* Motion for Appointment of a Receiver (the "Receivership Order") [D.E. 12] is hereby expanded to include both Unified Analytics, LLC and National Techmark Inc., and all of the provisions of the Receivership Order are expressly incorporated into this Order by reference.

4.  The Receiver shall have the same authorization and direction with respect to Unified Analytics, LLC and National Techmark Inc. as the other entities under Receivership.

**DONE AND ORDERED** in Chambers at Miami, Florida, this ___ day of _____, _____.

_____
**HONORABLE JUDGE BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:
*Counsel of record*

2