## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

### DEBTORS' SECOND MOTION FOR THE ENTRY OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH THE DEBTORS MAY FILE AND SOLICIT ACCEPTANCES OF A PLAN

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby move this Court (the "**Motion**") for entry of an order (the "**Order**"), in substantially the form attached hereto as **Exhibit A**, pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), extending (i) the period within which only the Debtors may file a plan as set forth in section 1121(c)(2) of the Bankruptcy Code (the "**Exclusive Filing Period**"), from March 24, 2019 through and including April 24, 2019, and (ii) the period within which only the Debtors may solicit acceptances of a plan as set forth in section 1121(c)(3) of the Bankruptcy Code (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**"), from May 23, 2019 through and including June 26, 2019. In support of this Motion, the Debtors respectfully state as follows:

---

[1]    The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: 1 Global Capital LLC, d/b/a 1 GC Collections, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, d/b/a 1 West Collections, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711). On February 19, 2019, the Debtors registered the fictitious names "1 GC Collections" and "1 West Collections" with the Florida Department of State.

## JURISDICTION, VENUE AND STATUTORY PREDICATES

1.      The United States Bankruptcy Court for the Southern District of Florida (the "**Court**") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).  The Court may enter a final order on this matter.

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicate for the relief requested herein is section 1121(d) of the Bankruptcy Code.

## STATUS OF THE CHAPTER 11 CASES

4.      On July 27, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors continue in the management and operation of their business and property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been requested or appointed in the Debtors' chapter 11 cases (the "**Chapter 11 Cases**").

6.      On September 7, 2018, the Office of the United States Trustee for Region 11 (the "**U.S. Trustee**") appointed the official committee of unsecured creditors (the "**Committee**") [ECF No. 138].

7.      A detailed factual background of the Debtors' business and operations, as well as the events precipitating the commencement of the Chapter 11 Cases, is set forth in the Debtors' *Chapter 11 Case Management Summary* [ECF No. 8].

## THE DEBTORS' PROGRESS AND RELEVANT BACKGROUND

### A.    Stabilizing the Debtors' Operations in Bankruptcy

8.    Since the commencement of these Chapter 11 Cases, the Debtors have worked diligently to stabilize their business and address various issues that are crucial to preserve, protect and maximize the value of the Debtors' estates.

9.    At the outset of the Chapter 11 Cases, the Debtors and their advisors devoted a significant amount of time and effort towards ensuring a smooth transition into chapter 11 following the initial abruptness of the filings due to the Debtors' acute liquidity crisis.  Shortly after the Petition Date, the Debtors sought, and the Court approved on an interim and final basis, various first-day relief that would enable the Debtors to continue their operations in bankruptcy.

10.    Such necessary relief included, among other things: (i) authorizing the Debtors to honor all employee practices and pay all employee obligations in the ordinary course; (ii) allowing the continued use of the Debtors' cash management system; (iii) authorizing the Debtors to maintain and use existing bank accounts; and (iv) ratifying the Debtors' appointment of an independent manager.

### B.    Compliance with Ongoing Reporting Requirements

11.    The Debtors have spent considerable time and energy complying with their ongoing reporting requirements in these Chapter 11 Cases.  For example, the Debtors have filed their schedules and statements of financial affairs and prepared for and conducted extensive meetings of creditors where the Debtors' management was available for questioning by the Committee.  Similarly, the Debtors are current with respect to their obligation to file monthly operating reports in connection with the U.S. Trustee's requirements.

C.       **Bar Dates for Filing Proofs of Claim**

12.      Pursuant to the *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines*, dated August 2, 2018 (the "**Bar Date Notice**") [ECF No. 31], the bar date for persons or entities other than governmental units (as defined in section 101(27) of the Bankruptcy Code) to file proofs of claim against the Debtors was December 4, 2018 (the "**General Bar Date**").

13.      Pursuant to the Bar Date Notice, the deadline for governmental units to file proofs of claim was January 23, 2019 (the "**Governmental Bar Date**").

14.      In addition, pursuant to the *Court's Order Granting in Part and Denying in Part Motion to Enlarge Deadline to File Proof of Claim* [ECF No. 553], the deadline under Bankruptcy Rule 3003 for any person or entity who entered into a memorandum of indebtedness with the Debtors to file a proof of claim was extended through and including March 7, 2019.

15.      Over 4,500 proofs of claim have been filed in these Chapter 11 Cases.  Given the volume of claims, the Debtors have spent substantial time working to understand the universe of the Debtors' liabilities, as well as the position of each claimant in the Debtors' claim pool, in an effort to ensure the development of a sound plan that complies with the requirements for confirmation under section 1129 of the Bankruptcy Code.

D.       **Exclusivity Periods**

16.      On November 21, 2018, the Debtors filed the *Debtors' Motion for the Entry of an Order Extending the Exclusive Periods During Which the Debtors May File and Solicit Acceptances of a Plan* [ECF No. 320] (the "**First Exclusivity Motion**"), seeking an extension of the period (i) within which only the Debtors may file a plan from November 24, 2018 through and including March 24, 2019, and (ii) the time which the Debtors may solicit acceptances of a plan from January 23, 2019 through and including May 23, 2019.

17.     On December 13, 2018, the Court entered the *Order Granting the Debtors'*
*Motion for the Entry of an Order Extending the Exclusive Periods During Which the Debtors*
*May File and Solicit Acceptances of a Plan* [ECF No. 385] (the "**Exclusivity Order**"), extending
(i) the Exclusive Filing Period by one hundred twenty (120) days from November 24, 2018,
through and including March 24, 2019, and (ii) the Exclusive Solicitation Period by one hundred
twenty (120) days from January 23, 2019, through and including May 23, 2019.

**E.     Business Operations and MCA Collections**

18.     The Debtors have made significant progress in steadying their business
operations.  Following the commencement of these Chapter 11 Cases, the Debtors undertook an
evaluation of the Debtors' merchant cash advance ("**MCA**") business.  Such an evaluation was a
key step towards stabilizing the Debtors' business and facilitating an understanding of the
Debtors' business in advance of developing a chapter 11 plan.  After an extensive assessment
and review of the business practices, underwriting, and collection histories relating to the
Debtors' MCA portfolio, the Debtors decided to (a) cease making further cash advances to
prevent further losses, (b) continue in-house servicing of its MCA portfolio, and (c) pare down
its existing operations to make them more efficient.  The Debtors business operations and MCA
collections have since stabilized.  Pursuant to the Debtors' last monthly operating reports dated
as of March 21, 2019, the Debtors have collected approximately $68 million on account of
outstanding MCAs [ECF No. 593].

19.     The Debtors have also commenced the prosecution and resolution of certain
litigation arising from the Debtors' pre-petition underwriting, funding, monitoring and collection
of MCAs in an effort to expeditiously collect and reduce to money the MCAs.  The Debtors
retained Jonathan Feldman and the law firm of Perlman, Bajandas, Yevoli & Albright, P.L. to

evaluate and pursue currently pending civil collection matters in the Circuit Courts of Broward County and Volusia County, Florida, along with any new collection matters that may arise [ECF No. 389].

### F.    Litigation, Securities Regulators and Resolution of Certain Investigations

20.    Since the Petition Date, the Debtors have (a) addressed various litigation issues and (b) cooperated with state regulators to address and, in some cases resolve, various ongoing investigations.

21.    *First*, with respect to the various litigation issues, the Debtors are investigating several claims and causes of action, including but not limited to claims relating to certain non-traditional MCAs that consisted of cash advances that were much larger than the typical MCA. To date, the Debtors have commenced prosecution of the following claims:

a.    Momentum Litigation.  On December 14, 2018, the Debtors filed a 40-count adversary proceeding complaint against Momentum Auto Group, LLC and Momentum Automotive Management, LLC ("**Momentum**") and certain other affiliated entities.  In their complaint, the Debtors (i) assert, among other things, that Momentum and the other named defendants breached certain merchant agreements and (ii) seek, among other things, authority to foreclose on certain security interests and recovery of damages, together with interest, costs, and such other relief.  The Momentum complaint seeks the recovery of money damages for and other relief relating to approximately $34 million of non-traditional MCAs.

b.    Travis Litigation.  On March 22, 2019, the Debtors filed a 28-count adversary proceeding against Travis Portfolio, LLC, Oliphant Financial, LLC, and Collins Asset Group, LLC (collectively, the "**Travis Defendants**").  The Debtors assert that the Travis Defendants breached several merchant agreements by failing to make payments when due and refusing to provide documentation as required by the merchant agreements.  As explained in the Travis complaint, because the Travis Defendants have failed to take the necessary steps to pay the Debtors the funds they are owed, which now total in excess of $78 million, the Debtors seek, among other things, authority to foreclose on certain security interests and recovery of damages, together with interest, costs, and such other relief.

22.     The Debtors are actively investigating claims and causes of action against the Debtors' former officers and directors.  On December 17, 2018, the Debtors retained Genovese, Joblove & Battista, P.A., as special conflicts counsel, to investigate and, if applicable, prosecute and resolve claims and causes of action against the Debtors' former officers and directors [ECF No. 555].

23.     The Debtors are also deeply engaged with a class action complaint (the "**Foster Class Action**") that was commenced by Sarah Foster, on behalf of herself and others, in the Circuit Court for the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida [*Sarah Foster, individually and on behalf of all others similarly situated v. Carl Ruderman*, Case No. 2018-030906-CA-01].[2]   The Foster Class Action plaintiffs assert that the Debtors' former officers and directors violated certain federal and state securities laws and engaged in the unlawful offer and sale of unregistered securities.  While the Debtors are not parties to the Foster Class Action, the Debtors believe that they hold similar claims against their former officers and directors.  The Debtors have thus organized and participated in mediation sessions to pursue recoveries against their former officers and directors.   The Debtors reserve all rights in connection with causes of action and potential causes of action against their former officers and directors.  If mediation proves unsuccessful, the Debtors may take legal action or other steps as necessary or appropriate.

24.     *Second*, with respect to the various investigations of the Securities and Exchange Commission (the "**SEC**") and state regulators, the Debtors have remained engaged and cooperative.  Indeed, the Debtors are working closely with the SEC and other state regulators to, among other things, resolve disputes and/or investigations.  To date, the Debtors' cooperation and efforts have culminated in the entry of the following settlement agreements:

---

[2]     On October 26, 2018, the Foster Class Action was removed to this Court.

a.    SEC Settlement.  On November 26, 2018, the Debtors and the SEC agreed to resolve and settle all issues of liability pending against the Debtors in connection with claims asserted in a complaint filed by the SEC.  In its complaint, the SEC alleged that the Debtors and others engaged in, among other things, unregistered securities fraud totaling more than $287 million. Without admitting or denying the allegations set forth in the complaint, the Debtors agreed to the entry of judgment, which, among other things, permanently restrains and enjoins the Debtors from violating certain federal securities laws.  The Debtors also agreed that the SEC would retain the right to seek a determination as to whether it is appropriate to order disgorgement of ill-gotten gains and prejudgment interest against the Debtors.  On January 3, 2019, the Court authorized and approved this settlement [ECF No. 427].

b.    Colorado Division of Securities Stipulation.  Prior to the Petition Date, the Colorado Division of Securities (the "**CDS**") opened an investigation into certain activities of the Debtors in the State of Colorado and commenced an administrative proceeding before the Securities Commissioner for the State of Colorado.  The CDS asserted, among other things, that the Debtors engaged in the unlawful marketing and sale of interests in loans used to fund cash advances to merchants.  To resolve the allegations pending against the Debtors, the Debtors executed a stipulation with the CDS, which mandates that, among other things, the Debtors must cease and desist from engaging in conduct in violation of the Colorado Securities Act.  On February 21, 2019, the Court authorized and approved the Debtors entry into the stipulation with the CDS.

**G.    Plan Progress**

25.    Since entry of the Exclusivity Order, the Debtors have made significant progress towards devising what the Debtors believe should be a consensual plan of liquidation.  The Debtors have analyzed various plan scenarios and developed a plan term sheet that its prominent stakeholders are reviewing.

26.    As of the date of this Motion, the Debtors have prepared a detailed plan term sheet, but are still working out certain threshold plan issues with the Committee and the SEC. As soon as those threshold issues are resolved, the Debtors will review the plan term sheet with the Committee and SEC.  The Debtors are fully engaged in ongoing discussions with each and are working in a transparent manner to maximize value, and achieve the best results for all their

stakeholders, consistent with the intent and purpose of chapter 11.  The Debtors' goal is to file a plan that has the full support of both the SEC and the Committee when it is filed, in order to enhance the likelihood of an orderly plan process.

27.     Given the significant progress that has been made in a relatively short period, the Debtors believe that a further extension of the Exclusive Periods is necessary.  To allow exclusivity to lapse and allow parties to file multiple competing plans at this stage would increase the costs to the Debtors' estates, unduly burden the Court and likely impede, rather than facilitate, meaningful progress.

28.     The Debtors further submit that extension of the Exclusive Periods is necessary to allow the Debtors to remain focused on engaging with the Committee and the SEC, with the goal of confirming a value-maximizing and consensual chapter 11 plan.  Achieving a consensual plan is of the most importance because a consensual plan, among the Debtors, the Committee and the SEC, will promote an orderly chapter 11 process, streamline the plan confirmation process, and minimize the risk of substantial additional costs accruing and reducing the value of the Debtors' estates at the plan confirmation stage.

**RELIEF REQUESTED**

29.     By this Motion, the Debtors respectfully request, pursuant to section 1121(d) of the Bankruptcy Code, that this Court extend the Exclusive Filing Period 31 days from March 24, 2019, through and including April 24, 2019, and the Exclusive Solicitation Period 34 days from May 23, 2019, through and including June 26, 2019.  The requested extensions will afford the Debtors the opportunity to prepare and file a chapter 11 plan with the benefit of input and support from the Committee and the SEC and to prosecute confirmation of that plan.  This is the Debtors' second request for an extension of the Exclusive Periods.  The request is made without

prejudice to the Debtors' right to seek further extensions of exclusivity.

**BASIS FOR RELIEF REQUESTED**

A.    **The Exclusive Periods May Be Extended for Cause**

30.    Pursuant to section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to file a plan for a period of one hundred twenty (120) days after the petition date.  11 U.S.C. § 1121(b).  If a debtor files a plan within the one hundred twenty (120) day exclusivity period, Bankruptcy Code section 1121(c)(3) provides sixty (60) additional days during which the debtor has the exclusive right to solicit votes with respect to such plan.  11 U.S.C. §1121(c)(3). The purpose of these exclusive periods is to permit debtors time to stabilize their operations, formulate a Chapter 11 plan and negotiate with creditors based on the theory that the debtors are in the best position, given their knowledge of their business and the creditor base, to propose a workable plan.  *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 231-32 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6190-92; *see also In re Clamp-All Corp.*, 233 B.R. 198, 207 (Bankr. D. Mass. 1999).

31.    Under section 1121(d) of Bankruptcy Code, the Court may extend these exclusive periods for "cause."  Specifically, section 1121(d) of the Bankruptcy Code provides:

(1)    Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

(2)    (A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.

(B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. §1121(d)(1), (2).

32.    The decision whether to grant a request to extend the exclusivity periods lies within the sound discretion of the bankruptcy court.  *See In re Sportsman's Link, Inc.*, 2007 WL 7023830, *2 (Bankr. S.D. Ga. Dec. 3, 2007); *In re Friedman's, Inc.*, 366 B.R. 884, 887 (Bankr. S.D. Ga. 2005); *In re Moonraker Assocs., Ltd.*, 200 B.R. 950, 954-55 (Bankr. N.D. Ga. 1996); *Matter of Homestead Partners, Ltd.*, 197 B.R. 706, 720 (Bankr. N.D. Ga. 1996); H.R. Rep. No. 95-595, at 231, 232 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6191 ("[t]he court is given the power, though, to increase or reduce the 120-day period depending on the circumstances of the case").

33.    The Bankruptcy Code does not define "cause" or establish criteria to be considered in ruling on a motion to extend exclusivity.  However, Congress contemplated that bankruptcy courts would apply the exclusivity provisions flexibly so as to promote the orderly, consensual and successful reorganization of a debtor's affairs.  *See* H.R. Rep. No. 95-595, at 232 (1977).  Whether "cause" exists in any situation is determined on a case-by-case basis and depends largely upon the factual nature of the case before the court.  The following factors have been considered by courts in determining whether cause exists to grant an extension of the exclusivity periods:

(i)    the size and complexity of the debtor's case;

(ii)    the necessity of sufficient time to negotiate and prepare adequate information;

(iii)    the existence of good faith progress toward reorganization;

(iv)    whether the debtor is paying its bills as they come due;

(v)    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi)    whether the debtor has made progress negotiating with creditors;

(vii)    the length of time a case has been pending;

11

(viii)   whether the debtor is seeking to extend exclusivity to pressure creditors "to accede to [the debtors'] reorganization demands"; and

(ix)   the existence of an unresolved contingency (e.g., ongoing negotiations that will not conclude within the exclusive periods, but where the subject matter of the negotiations is vital to reorganization and, if successful, the negotiations would likely enable the debtor to file a successful plan of reorganization).

*See In re Whigham*, 2012 WL 3877666, *2 (Bankr. S.D. Ga. Sept. 6, 2012); *In re Sportsman's Link, Inc.*, 2007 WL 7023830 at *2; *In re Adelphia Communications Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re Friedman's, Inc.*, 366 B.R. at 888; *Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.)*, 292 B.R. 639, 643-44 (B.A.P. 8th Cir. 2003) ("As always, we emphasize that these are only factors, not all of which are relevant in every case . . . [i]t is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).  Not every factor is relevant in every case and courts have used subsets of the factors to evaluate a request to extend the Exclusive Periods.  *See In re Hoffinger Indus., Inc.*, 292 B.R. at 643-44.  Each of the foregoing factors that is relevant to these Chapter 11 Cases weighs in favor of the relief requested.

**B.**    **Cause Exists to Extend the Exclusive Periods**

*i.*    ***The Size and Complexity of the Cases Warrants an Extension of the Exclusive Periods***

34.    The most common basis upon which courts grant an extension of the Exclusive Periods is the size and complexity of a chapter 11 case.  *See Express One Int'l, Inc.*, 194 B.R. at 100.  Courts frequently grant an extension of exclusivity based upon the size and complexity of a chapter 11 case.  *See In re Homestead Partners, Ltd.*, 197 B.R. at 720 (recognizing the presence of complex legal issues as one of the bases for cause).

35.    These Chapter 11 Cases involve two debtors with more than 3,750 investors,

12

numerous other creditors, and approximately 2,750 merchant cash advance customers.  They also involve examination of, and in certain cases the commencement of litigation to recover, non-conforming merchant cash advance transactions.  In addition, the Debtors and their professionals are continuing to cooperate with the SEC, and certain other state securities regulators in connection with their respective investigations into the Debtors' activities prior to the Petition Date, and with the receiver of the SEC receivership over certain affiliates of the Debtors.  The complexity of the underlying legal issues the Debtors face as well as the number of parties involved warrants an extension of the Exclusive Periods.

### ii.      *More Time is Required to Negotiate, Prepare, and File a Plan*

36.      The Debtors are focused on negotiating and preparing a plan.  As noted above, the Debtors have circulated a term sheet proposing terms for a plan of liquidation to the Committee and the SEC.  A further extension of the Exclusive Periods as requested in this Motion is necessary to permit the Debtors to obtain, consider and incorporate as may be necessary or appropriate the comments of the Committee and the SEC to streamline the process for finalizing a consensual plan of liquidation.  *See In re Lehman Bros. Holdings, Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y.), Hr'g Tr. July 15, 2009, 137:8–11 (granting debtors' second exclusivity extension because debtors should be entitled to as much time as needed to develop their best plan and "exclusivity was designed, in part, to give debtors that privilege, unless it's being abused").

37.      Allowing the Exclusive Periods to terminate before plan negotiations and necessary modifications have concluded would defeat the purpose of section 1121 of the Bankruptcy Code – to afford the Debtors a meaningful and reasonable opportunity to propose and confirm a feasible plan.  In these circumstances, an extension of the Exclusive Periods to permit the Debtors more time to finalize and file a chapter 11 plan is warranted.

13

### iii.    An Absence of Prejudice to Creditors and Parties in Interest Warrants an Extension of the Exclusive Periods

38.    The Debtors are not seeking an extension of the Exclusive Periods to delay administration of their Chapter 11 Cases; this is the Debtors' second request for an extension of the Exclusive Periods.  *See In re Adelphia*, 342 B.R. 122, 131 (Bankr. S.D.N.Y. 2006) (considering a variety of factors but focusing on whether "debtors had made a good faith progress towards reorganization and whether the extension of exclusivity was sought to pressure creditors to submit to debtor's reorganization demands.").

39.    Under the circumstances of these Chapter 11 Cases, a premature termination of exclusivity would deny the Debtors a meaningful opportunity to negotiate and propose a confirmable plan and would defy the primary objectives of chapter 11.  Termination of exclusivity at this point in time could have the undesirable effect of encouraging the development of competing multiple plans that could lead to unwanted litigation and administrative expenses.  The requested extensions will improve the likelihood of a consensual resolution of these Chapter 11 Cases that preserves value.

40.    Additionally, the requested extension of the Exclusive Periods will not prejudice the interests of any creditor or other party in interest.  The Debtors are not aware of any other party that seeks to propose a chapter 11 plan at this time.  Moreover, the Debtors are not seeking the extension of the Exclusive Periods as a negotiation tactic, to artificially delay the conclusion of these Chapter 11 Cases, or to hold creditors hostage to an unsatisfactory plan proposal.  To the contrary, this request is intended to maintain a framework conducive to an orderly, efficient, and cost-effective negotiation and plan preparation process that allows the Committee and the SEC to provide input to reach a consensual plan.  Under the circumstances, the Debtors submit that an

extension of the Exclusive Periods will serve to benefit the Debtors' estates, creditors and other parties in interest.

### iv.       *The Debtors Are Paying Their Bills as They Become Due*

41.       Courts considering an extension of exclusivity may also assess a debtor's liquidity and solvency.  *See In re Friedman's, Inc.*, 336 B.R. at 889; *In re Service Merchandise Co.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000); *In re Ravenna Indus., Inc.*, 20 B.R. 886, 890 (Bankr. N.D. Ohio 1982).  The Debtors are paying their postpetition obligations in a timely fashion and are managing their business effectively and preserving their assets for the benefit of all creditors. Consequently, this factor weighs in favor of the relief requested herein.

### v.       *These Cases Have Been Pending for Only Seven Months*

42.       A court may grant an extension of exclusivity where the case has been pending for a relatively brief period.  *See In re McLean Indus., Inc.*, 87 B.R. 830, 835 (Bankr. S.D.N.Y. 1987) (granting an extension where the case was on file for less than one year); *cf. Adelphia*, 352 B.R. at 589 (denying motion to terminate exclusivity notwithstanding fact that four years had elapsed in debtors' chapter 11 case).  Approximately seven months have elapsed since the Debtors filed for Chapter 11 protection.  Given the significant progress made to date during the short duration of these cases, extension of the Exclusive Periods is appropriate.  *See, e.g., In re Adinath Corp.*, Case No. 15-16885-LMI (Bankr. S.D. Fla. Nov. 12, 2015) (granting a debtor's second request for an extension of exclusive right to file a plan of liquidation and to solicit acceptances thereto where the Debtors' bankruptcy cases were a little over six months old).  This progress includes, but is not limited to: (a) obtaining certain first day relief on a final basis to facilitate a smooth transition into chapter 11; (b) evaluating and stabilizing the Debtors' business; (c) negotiating and obtaining court approval of settlements with the SEC and other

state securities regulators; (d) investigating and prosecuting, as appropriate, claims and causes of actions against the largest holders of non-traditional MCAs; (e) commencing and participating in mediation relating to claims and causes of action against the Debtors' former officers and directors and other parties; (f) developing a collaborative working relationship with key parties in these Chapter 11 Cases; and (g) providing a plan term sheet to the SEC and the Committee as the foundation for plan negotiations.

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtors respectfully request the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) extending (a) the Exclusive Filing Period by 31 days, from March 24, 2019 through and including April 24, 2019 and (b) the Exclusive Solicitation Period by 34 days, from May 23, 2019 through and including June 26, 2019 (or such other similar dates as this Court deems just and proper), and (ii) granting such other and further relief as may be just and proper under the circumstances.

Dated:  March 22, 2019                          GREENBERG TRAURIG, LLP

                                                /s/ John R. Dodd
                                                Paul J. Keenan Jr.
                                                Fla. Bar No. 0594687
                                                keenanp@gtlaw.com

                                                John R. Dodd
                                                Fla. Bar No. 38091
                                                doddj@gtlaw.com

                                                333 S.E. 2nd Avenue, Suite 4400
                                                Miami, Florida 33131
                                                Tel: 305-579-0500
                                                Fax: (305) 579-0717

                                                *Counsel for the Debtors*
                                                *and Debtors-in-Possession*

**<u>EXHIBIT A</u>**

<u>Proposed Order</u>

(Attached)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

**ORDER GRANTING SECOND MOTION OF THE DEBTORS FOR ENTRY**
**OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH**
**THE DEBTORS MAY FILE AND SOLICIT ACCEPTANCES OF A PLAN**

THIS MATTER came before the Court upon the *Debtors' Second Motion for Entry of an Order Extending the Exclusive Periods During Which the Debtors May File and Solicit Acceptances of Plan* [ECF No. ___] (the "**Motion**")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), pursuant to section 1121(d) of the

---

[1]    The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: 1 Global Capital LLC, d/b/a 1 GC Collections, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, d/b/a 1 West Collections, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).   On February 19, 2019, the Debtors registered the fictitious names "1 GC Collections" and "1 West Collections" with the Florida Department of State.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

Bankruptcy Code.  By the Motion, the Debtors seek entry of an order extending (x) the period within which only the Debtors may file a plan, as set forth in section 1121(c)(2) of the Bankruptcy Code (the "**Exclusive Filing Period**") and (y) the period within which only the Debtors may solicit acceptances of a plan, as set forth in section 1121(c)(3) of the Bankruptcy Code (the "**Exclusive Solicitation Period**" and together with the Exclusive Filing Period, the "**Exclusive Periods**").  The Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; (v) notice of the Motion was appropriate under the circumstances and no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion, good and sufficient cause exists to grant the relief requested.  Accordingly,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED as set forth herein.

2.     The Exclusive Filing Period for the Debtors is extended by 31 days through and including April 24, 2019.

3.     The Exclusive Solicitation Period for the Debtors is extended by 34 days through and including June 26, 2019.

4.     The relief granted in this Order is without prejudice to the rights, pursuant to Section 1121(d)(1) of the Bankruptcy Code, of (a) the Debtors to seek further extensions of the Exclusive Periods and (b) parties in interest to seek to shorten or terminate the Exclusive Periods.

2

5.      This Order shall be immediately effective and enforceable upon its entry.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.


# # #


**Submitted by:**

John R. Dodd, Esq.
Fla. Bar. No. 38091
doddj@gtlaw.com
GREENBERG TRAURIG, LLP
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500

*Counsel for the Debtors*
*and Debtors-in-Possession*

(*Epiq Corporate Restructuring, LLC is directed to serve copies of this Order upon the Master Service List and to file a Certificate of Service with the Bankruptcy Court.*)

3