**\*\*THIS DISCLOSURE STATEMENT _HAS_ _NOT_ BEEN APPROVED FOR SOLICITATION PURPOSES OR OTHERWISE\*\***

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, _et al._,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

### DISCLOSURE STATEMENT WITH RESPECT TO JOINT PLAN OF LIQUIDATION OF 1 GLOBAL CAPITAL LLC AND 1 WEST CAPITAL LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Paul J. Keenan Jr. (Fla. Bar No. 059468)
John R. Dodd (Fla. Bar No. 38091)
GREENBERG TRAURIG, LLP
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: 305-579-0500
Facsimile: 305-579-0717
Email: keenanp@gtlaw.com
Email: doddj@gtlaw.com

_Counsel for the Debtors and Debtors-in-Possession_

Russell M. Blain (Fla. Bar No. 236314)
Barbara A. Hart (Fla. Bar No. 512036)
STICHTER, RIEDEL, BLAIN & POSTLER, P.A.
110 East Madison St., Suite 200
Tampa, FL 33602-4700
Telephone: (813) 229-0144
Facsimile: (813) 229-1811
Email: rblain@srbp.com
Email: bhart@srbp.com

_Counsel for the Official Committee of Unsecured Creditors_

Dated: June 17, 2019

---

[1]  The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: 1 Global Capital LLC, d/b/a 1 GC Collections, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, d/b/a 1 West Collections, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711). On February 19, 2019, the Debtors registered the fictitious names "1 GC Collections" and "1 West Collections" with the Florida Department of State.

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE JOINT PLAN OF LIQUIDATION OF 1 GLOBAL CAPITAL LLC AND 1 WEST CAPITAL LLC PROPOSED BY THE PLAN PROPONENTS AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.  NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

EXCEPT AS OTHERWISE PROVIDED HEREIN, CAPITALIZED TERMS NOT DEFINED IN THIS DISCLOSURE STATEMENT HAVE THE MEANINGS ASCRIBED TO THEM IN THE PLAN.  UNLESS OTHERWISE NOTED, ALL DOLLAR AMOUNTS PROVIDED IN THIS DISCLOSURE STATEMENT AND THE PLAN ARE GIVEN IN UNITED STATES DOLLARS.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN DOCUMENTS RELATING TO THE PLAN, CERTAIN EVENTS THAT HAVE OCCURRED IN THE CHAPTER 11 CASES, AND CERTAIN FINANCIAL INFORMATION. ALTHOUGH THE PLAN PROPONENTS BELIEVE THAT ALL SUCH SUMMARIES ARE FAIR AND ACCURATE AS OF THE DATE HEREOF, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE UNDERLYING DOCUMENTS AND TO THE EXTENT THAT THEY MAY CHANGE AS PERMITTED BY THE PLAN AND APPLICABLE LAW.  FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE PLAN PROPONENTS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION. STATEMENTS IN THIS DISCLOSURE STATEMENT ARE NOT AND SHALL NOT BE DEEMED TO BE ADMISSIONS BY ANY PLAN PROPONENT.

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD-LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS, AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL, FUTURE RESULTS.  EXCEPT AS OTHERWISE SPECIFICALLY AND EXPRESSLY STATED HEREIN, THIS DISCLOSURE STATEMENT DOES NOT REFLECT ANY EVENTS THAT MAY OCCUR AFTER THE DATE HEREOF AND THAT MAY HAVE A MATERIAL EFFECT ON THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.  THE PLAN PROPONENTS DO NOT UNDERTAKE ANY OBLIGATION TO, AND DO NOT INTEND TO, UPDATE THE PROJECTIONS.  THUS, THE PROJECTIONS WILL NOT REFLECT THE EFFECT OF ANY SUBSEQUENT EVENTS NOT ALREADY ACCOUNTED FOR IN THE ASSUMPTIONS UNDERLYING THE PROJECTIONS.  THE PLAN PROPONENTS DISCLAIM ANY OBLIGATION, EXCEPT AS SPECIFICALLY REQUIRED BY LAW, TO PUBLICLY UPDATE OR REVISE

ANY SUCH STATEMENTS TO REFLECT ANY CHANGE IN THE PLAN PROPONENTS' EXPECTATIONS OR IN EVENTS, CONDITIONS OR CIRCUMSTANCES ON WHICH ANY SUCH STATEMENTS MAY BE BASED, OR THAT MAY AFFECT THE LIKELIHOOD THAT ACTUAL RESULTS WILL DIFFER FROM THOSE SET FORTH IN THE FORWARD-LOOKING STATEMENTS.  FURTHER, THE PLAN PROPONENTS DO NOT ANTICIPATE THAT ANY AMENDMENTS OR SUPPLEMENTS TO THIS DISCLOSURE STATEMENT WILL BE DISTRIBUTED TO REFLECT SUCH OCCURRENCES.   ACCORDINGLY, THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCE IMPLY THAT THE INFORMATION HEREIN IS CORRECT OR COMPLETE AS OF ANY TIME AFTER THE DATE HEREOF.  MOREOVER, THE PROJECTIONS ARE BASED ON ASSUMPTIONS THAT, ALTHOUGH BELIEVED TO BE REASONABLE BY THE PLAN PROPONENTS, MAY DIFFER FROM ACTUAL RESULTS.  ANY FORWARD-LOOKING STATEMENT SHOULD BE CONSIDERED IN LIGHT OF FACTORS DISCUSSED IN <u>SECTION VIII</u> "CERTAIN RISK FACTORS TO BE CONSIDERED" IN THIS DISCLOSURE STATEMENT. THE PLAN PROPONENTS CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY SUCH FORWARD-LOOKING STATEMENTS, WHICH SPEAK AS OF THE DATE THEY ARE MADE.

ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, THE EXHIBITS ANNEXED TO THE PLAN, THE PLAN SUPPLEMENT DOCUMENTS ONCE FILED, AND THIS DISCLOSURE STATEMENT.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016(C) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW.  THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "**SEC**"), OR ANY STATE SECURITIES COMMISSION, AND NEITHER THE SEC NOR ANY STATE SECURITIES COMMISSION HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OR CLAIMS OF THE DEBTORS IN THESE CASES SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR

LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND OTHER APPLICABLE EVIDENTIARY RULES.  THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS IN THESE CHAPTER 11 CASES.  YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR WITH RESPECT TO ANY QUESTIONS OR CONCERNS REGARDING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE PLAN.

EACH HOLDER IS HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A HOLDER UNDER THE TAX CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN BY THE DEBTORS IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) EACH HOLDER SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     OVERVIEW OF THE PLAN ................................................................................... 1

        A.      General Structure of the Plan ...................................................................... 1
        B.      Material Terms of the Plan ......................................................................... 3
        C.      Consolidation of Debtors for Purposes of Voting, Confirmation and
                Distribution .................................................................................................. 6
        D.      Summary of Treatment of Claims and Equity Interests under the Plan ..... 6

III.    SOLICITATION, PLAN VOTING INSTRUCTIONS AND VOTING
        PROCEDURES ....................................................................................................... 12

        A.      Notice to Holders of Claims Against and Equity Interests in the Debtors .......... 12
        B.      Parties-in-Interest Entitled to Vote .......................................................... 13
        C.      Classes Entitled to Vote to Accept or Reject the Plan ............................. 14
        D.      Calculation of Claims for Voting Purposes; Claim Objection Deadline ............. 14
        E.      Solicitation Materials ................................................................................ 15
        F.      Voting Procedures, Ballots, and Voting Deadlines .................................. 16
        G.      Waiver of Defects, Irregularities, Etc. ...................................................... 18
        H.      Withdrawal of Ballots; Revocation........................................................... 19
        I.      Request for Ballot(s); Further Information; Additional Copies.................. 20
        J.      Confirmation Hearing and Deadline for Objections to Confirmation ................. 20

IV.     GENERAL INFORMATION CONCERNING THE DEBTORS................................... 21

        A.      Overview of Debtors' Corporate History and Business Operations ..................... 21
        B.      The Debtors' Organizational Structure ..................................................... 22
        C.      Debtors' Capital Structure ......................................................................... 23
        D.      Events Leading to the Filing of the Chapter 11 Cases ............................. 25

V.      THE CHAPTER 11 CASES ................................................................................... 26

        A.      Commencement of the Chapter 11 Cases .................................................. 26
        B.      First Day Orders......................................................................................... 26
        C.      Retention of Debtors' Professionals .......................................................... 27
        D.      Appointment of Official Committee of Unsecured Creditors.................... 28
        E.      The Debtors' Post-Petition Operations ..................................................... 28
        F.      Other Matters Addressed During the Chapter 11 Cases .......................... 31
        G.      Significant Litigation During the Chapter 11 Cases ................................. 35
        H.      Resolution of Various Disputes ................................................................. 41
        I.      Settlements Effectuated by the Plan .......................................................... 44

Disclosure Statement

VI.    OVERVIEW OF THE PLAN ...................................................................... 44

    A.    Proposed Timeline of Events Related to the Plan ................................. 44

VII.    DETAILED SUMMARY OF THE PLAN OF LIQUIDATION ..................................... 46

    A.    Overall Structure of the Plan ............................................................. 46
    B.    Classification and Treatment of Claims and Equity Interests ............... 46
    C.    Settlements and Compromises ............................................................ 53
    D.    Means for Implementation of the Plan ................................................ 53
    E.    Treatment of Executory Contracts and Unexpired Leases ................... 60
    F.    Provisions Governing Distributions .................................................... 63
    G.    The Liquidating Trust ....................................................................... 68
    H.    Procedures for Resolving Contingent, Unliquidated, and Undisputed
        Claims and Interests ......................................................................... 75
    I.    Retention of Jurisdiction ................................................................... 77
    J.    Settlement, Injunctions and Exculpations ........................................... 79
    K.    Conditions Precedent to Confirmation and Effectiveness of the Plan ... 82
    L.    Miscellaneous Provisions .................................................................. 84

VIII.    CERTAIN RISK FACTORS TO BE CONSIDERED ................................................ 88

    A.    Certain Litigation Risks .................................................................... 88
    B.    Certain Bankruptcy Considerations .................................................... 89
    C.    Certain Tax Considerations ................................................................ 91

IX.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ......... 91

    A.    U.S. Federal Income Tax Consequences to the Debtors and the
        Liquidating Trust ............................................................................. 92
    B.    U.S. Federal Income Tax Consequences to the Holders of Claims ....... 92
    C.    Information Reporting and Backup Withholding ................................. 94
    D.    Information for Investors Who Invested Through Individual Retirement
        Plans ............................................................................................... 94
    E.    Importance of Obtaining Your Own Professional Tax Assistance ........ 95

X.    FEASIBILITY OF THE PLAN AND BEST INTERESTS OF CREDITORS ............... 95

    A.    Feasibility of the Plan ....................................................................... 95
    B.    Acceptance of the Plan ...................................................................... 95
    C.    Best Interests Test ............................................................................ 96
    D.    Application of the "Best Interests" of Creditors Test to the Liquidation
        Analysis and Valuation ..................................................................... 97
    E.    Confirmation Without Acceptance of All Impaired Classes:  The
        "Cramdown" Alternative ................................................................... 97

XI.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE
       PLAN ................................................................................................................... 98

       A.    Alternative Plan(s) of Reorganization ................................................... 98
       B.    Liquidation under Chapter 7 ................................................................... 98

Disclosure Statement

## **TABLE OF EXHIBITS**

Exhibit A        Joint Plan of Liquidation of 1 Global Capital LLC and 1 West Capital LLC Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors

Exhibit B        1 GC Collections Creditors' Liquidating Trust Agreement

Disclosure Statement

## I.     INTRODUCTION

1 Global Capital LLC and 1 West Capital LLC, as debtors and debtors-in-possession (collectively, the "**Debtors**"), jointly with the Official Committee of Unsecured Creditors ("**Creditors' Committee**"; together with the Debtors, the "**Plan Proponents**") submit this disclosure statement (as the same may be further amended, supplemented or modified from time to time, the "**Disclosure Statement**") pursuant to Section 1125 of Title 11 of the United States Code (the "**Bankruptcy Code**"), for use in the solicitation of votes on the *Joint Plan of Liquidation of 1 Global Capital LLC and 1 West Capital LLC Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* dated June 17, 2019 (as the same may be further amended, supplemented or modified from time to time, the "**Plan**").  A copy of the Plan is attached as <u>Exhibit A</u> to this Disclosure Statement. Unless otherwise provided herein, all capitalized terms used in this Disclosure Statement but not otherwise defined herein shall have the meanings ascribed to such terms in Article I of the Plan.

This Disclosure Statement sets forth certain information regarding the Debtors' prepetition operating and financial history, their reasons for seeking protection under chapter 11 of the Bankruptcy Code, and significant events that have occurred during the Chapter 11 Cases. This Disclosure Statement also describes certain terms and provisions of the Plan, certain risk factors associated with the Plan and the manner in which Distributions will be made under the Plan.  In addition, this Disclosure Statement discusses the Confirmation process and the voting procedures that Holders of Claims entitled to vote under the Plan must follow for their votes to be counted.

**THE PLAN PROPONENTS BELIEVE THAT THE PLAN WILL ENABLE THE DEBTORS TO ACCOMPLISH THE OBJECTIVES OF THESE CHAPTER 11 CASES AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTORS, THEIR CREDITORS AND EQUITY INTEREST HOLDERS.  THE DEBTORS AND CREDITORS' COMMITTEE <u>STRONGLY</u> <u>URGE</u> HOLDERS TO VOTE TO ACCEPT THE PLAN.**

## II.     OVERVIEW OF THE PLAN

The following is a brief overview of the material provisions of the Plan, which is qualified in its entirety by reference to the full text of the Plan.  For a more detailed description of the terms and provisions of the Plan, see <u>Article VII</u> of this Disclosure Statement, entitled "Detailed Summary of the Plan of Liquidation."

### A.     General Structure of the Plan

The Plan proposed in these Chapter 11 Cases is the culmination of lengthy negotiations among the Plan Proponents, which are the Debtors and the Creditors' Committee.  The Plan Proponents believe that the terms of the Plan represent the best possible outcome for all Holders of Claims and strongly urge all Holders that are entitled to vote on account of their Claims to vote to accept the Plan.

The Debtors filed these Chapter 11 Cases to address a disruption in business operations due to the inability to raise additional funds from investors and other issues, and to

preserve their assets and business operations for the benefit of the individual investors and all other constituencies. (The events leading to the filing of these Chapter 11 Cases are described in more detail in Section IV(D) of this Disclosure Statement.)

During the course of these Chapter 11 Cases, the Debtors have worked diligently to stabilize their business and address various issues that are crucial to preserve, protect and maximize the value of the Debtors' estates. Following the commencement of these Chapter 11 Cases, the Debtors undertook an evaluation of the Debtors' merchant cash advance ("**MCA**") business. Such an evaluation was a key step towards stabilizing the Debtors' business and facilitating an understanding of the Debtors' business in advance of developing a chapter 11 plan. After an extensive assessment and review of the business practices, underwriting, and collection histories relating to the Debtors' MCA portfolio, the Debtors decided to (a) cease making further cash advances to prevent further losses, (b) continue in-house servicing of the MCA portfolio, and (c) pare down existing operations to make them more efficient. The Debtors business operations and MCA collections have since stabilized.

The Debtors have also addressed various legal disputes and cooperated with the Securities and Exchange Commission and state regulators to address and, in some cases resolve, various ongoing investigations, which are more fully described in Section V(H) of this Disclosure Statement. In order to facilitate the filing of the Plan, the Debtor and the Creditors' Committee have engaged in extensive negotiations over the course of many months. The result of those negotiations is embodied in the Plan.

The Plan contemplates the liquidation of each of the Debtors. The Plan provides for the creation of a Liquidating Trust for the primary purpose of liquidating the Debtors' Assets and making Distributions to Creditors. As more fully described in this Disclosure Statement, on the Effective Date of the Plan, the Cash and other property of the Debtors will be transferred to the Liquidating Trust, and the Liquidating Trust will issue Liquidating Trust Interests to Holders of Allowed Class 4A and Class 4B Claims. The Plan also provides for certain other Assets to be transferred to the Liquidating Trust on or after the Effective Date of the Plan, including the Assigned Investor Claims, the Receiver Contributed Recoveries, and the SEC Contributed Recoveries. The trustee of the Liquidating Trust will be charged with monetizing this property (including the investigation and pursuit of any litigation claims for the benefit of the Liquidating Trust), conducting the claims-allowance process, and making distributions. The Plan provides for an Initial Distribution to Holders of Allowed Class 4A and 4B Claims thirty (30) days after the Effective Date or as soon as reasonably practicable thereafter.

**The Plan Proponents anticipate that the Plan will provide for a [●] percent (●%) recovery to Holders of Class 4A Claims and [●] percent (●%) recovery to Holders of Claims 4B Claims in the Chapter 11 Cases.[2] If the Plan does not receive sufficient acceptances, then Distributions to Holders of Class 4A Claims and Class 4B Claims will be significantly delayed, and may be materially less than such Holders would receive under the Plan. The estimated recoveries set forth in this Disclosure Statement do not take into**

---

[2]    The Plan Proponents shall file a revised Disclosure Statement before the Disclosure Statement Hearing to provide estimates of creditor recoveries and other projections set forth herein and to supplement or update other matters herein as may be necessary or appropriate.

Disclosure Statement

account potential proceeds of the Liquidating Trust Actions because they are unpredictable and highly contingent.  Although the Debtors believe that strong litigation claims exist, projecting net recoveries of litigation claims are subject to inherent uncertainty including the fees and expenses to be incurred litigating such claims and the ability to collect any judgment on those claims remains unknown at this time.

This Section II(A) of the Disclosure Statement only provides a summary of the Plan.  The Plan Proponents strongly urge you to read the entire Disclosure Statement in order to gain an understanding of the details of, and risks associated with, the Plan.  In the event of any conflict with the descriptions herein and the terms of the Plan, the terms of the Plan shall govern.

## B.    Material Terms of the Plan

The Plan designates nine (9) Classes of Claims and one (1) Class of Equity Interests in the Debtors.  These Classes take into account the differing nature and priority of the various Claims and Equity Interests under the Bankruptcy Code.  Claims are treated generally in accordance with the priorities established under the Bankruptcy Code.  The following is an overview of certain material terms of the Plan:

- Each Holder of an Allowed Class 1 Claim shall receive, on account of such Claim, Cash in the amount of such Allowed Secured Tax Claim without interest or premium on or as soon as reasonably practicable following the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Secured Tax Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Secured Tax Claim and the Debtors or the Liquidating Trustee.

- Each Holder of an Allowed Class 2 Claim shall receive, on account of such Claim, at the election of the Debtors or the Liquidating Trustee, as the case may be, (i) return of the collateral securing the Other Secured Claim in full satisfaction of such claim, or (ii) Cash in the amount of such Allowed Other Secured Claim without interest or premium on or as soon as reasonably practicable following the later of: (a) the Effective Date if due on or before that date, (b) if such Other Secured Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Secured Claim becomes an Allowed Claim, or (c) such other date as may be agreed upon between the Holder of such Other Secured Claim and the Debtors or the Liquidating Trustee.  Although the treatment of each Allowed Class 2 Claim is an obligation of the Liquidating Trust to the extent not satisfied by the Debtors, no Holder of an Allowed Class 2 Claim shall receive issuance of a Liquidating Trust Interest or be a Liquidating Trust Beneficiary.

- Each Holder of an Allowed Class 3 Claim shall receive, on account of such Claim, Cash in the amount of such Allowed Other Priority Claim without interest or premium on or as soon as reasonably practicable following the later of: (i) the Effective Date if due on or before that date, (ii) if such Other Priority Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Priority Claim becomes an Allowed Claim, or (iii) such other date as may be

- 3 -

agreed upon between the Holder of such Allowed Other Priority Claim and the Debtors or the Liquidating Trustee.

- Each Holder of an Allowed Class 4A Claim shall receive issuance of its Pro Rata Share of Liquidating Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4A Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4A Claim and the Debtors or Liquidating Trustee.

- Unless a Holder of a Class 4A Claim elects on its Ballot to be a Disputing Claimant, such Holder shall be deemed to compromise and settle its Investor Principal Claim as set forth in the Ballot, which shall be such Holder's Allowed Investor Principal Claim.  If a Holder of a Class 4A Claim (i) elects to be a Disputing Claimant and (ii) has not filed a Proof of Claim, then, notwithstanding the Bar Date, such Holder may, no later than fourteen (14) days from the Voting Deadline, file a Proof of Claim.  If such Holder fails to file a timely Proof of Claim, then, notwithstanding its election, such Holder's Investor Principal Claim shall be Allowed as set forth in its Ballot for all purposes under the Plan.

- Each Holder of a Class 4A Claim may agree, by electing on its Ballot, to assign its Assignable Claims to the Liquidating Trust, thereby becoming an Assigning Claimant.  By electing such option on its Ballot, the Holder of a Class 4A Claim agrees, subject to the occurrence of the Effective Date and the formation of the Liquidating Trust, that (i) its Assignable Claims shall, without further action, be deemed to be assigned to the Liquidating Trust, (ii) it will execute any documents reasonably requested to memorialize such assignment, and (iii) the Liquidating Trust may act as the Assigning Claimant's agent or attorney-in-fact to execute any documents to memorialize such assignment. Each Assigning Claimant's Allowed Investor Principal Claim shall be increased by the Assigning Claimants Enhancement Multiplier (*i.e.*, 3%).  **If you are a Holder of a Class 4A Claim and have filed a lawsuit to prosecute any of your Assignable Claims, or compromised or settled any of your Assignable Claims, <u>do</u> <u>not</u> elect to assign your Assignable Claims.**

- All Distributions made in respect of each Allowed Class 4A Claim will be allocated to the portion of such Claim representing the original principal amount, without regard to any rollovers, of an Investor Unsecured Claim minus the aggregate amount of all payments received by such Claimant prepetition from the Debtors on account of such Claim.  No Distributions will be made for interest, fees, damages and other costs asserted in any Investor Unsecured Claims, as such claims are separately classified as Class 5 Claims.  However, in the event that Class 4A and 4B Claims are paid in full, the Plan reserves the right of the Plan Proponents or the Liquidating Trustee to modify the Plan to provide for Distributions to Holders of Class 5 Claims (*i.e.*, to Investors on account of interest).  By providing for Distributions in the aforementioned manner, the Plan

- 4 -

takes into account that the Debtors' books and records proved unreliable with regard to the accrual of interest.

- Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Class 4B Claim shall receive a Pro Rata Share of Liquidating Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4B Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4B Claim and the Debtors or Liquidating Trustee.

- Except for Professional Fee Claims, and except to the extent that any Holder of an Allowed Administrative Claim has received payment prior to the Effective Date, agrees with the Liquidating Trustee to different treatment or as otherwise provided for in the Plan, each Holder of an Allowed Administrative Claim shall receive payment in full, in Cash, on the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Administrative Claim becomes an Allowed Claim, or (iii) the date on which such payment is due in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim.

- On the Effective Date, all Equity Interests in the Debtors will be cancelled, and holders of such Equity Interests shall receive no Distribution on account of such Equity Interests.

- The Liquidating Trust shall be established for the primary purpose of liquidating its assets and making Distributions in accordance with the Plan, Confirmation Order and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

- The Debtors will irrevocably transfer, assign, and deliver to the Liquidating Trust, on behalf of the Liquidating Trust Beneficiaries, all of their rights, title, and interests in the Liquidating Trust Assets, including any claims, rights, and Causes of Action that the Debtors may hold against any Entity in accordance with the Plan, notwithstanding any prohibition on assignment under non-bankruptcy law. The Assigning Claimants will also assign to the Liquidating Trust all of their rights, title, and interests in the Assigned Investor Claims.

- On and after the Effective Date, the Liquidating Trust, as a successor in interest to the Debtors, the Estates, and the Assigning Claimants, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Assigning Claimants to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Liquidating Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement.

Disclosure Statement

C.      **Consolidation of Debtors for Purposes of Voting, Confirmation and Distribution**

The Plan provides for consolidation of the Estates, for purposes of voting, Confirmation, and making Distributions to the Holders of Allowed Claims under the Plan. Voting on the Plan shall be counted on a consolidated basis.  On the Effective Date, and solely for purposes of voting, Confirmation and making Distributions to the Holders of Allowed Claims under the Plan (a) all guarantees of either Debtor of the payment, performance or collection of the other Debtor with respect to Claims against such Debtor shall be eliminated and cancelled; (b) any single obligation of both Debtors shall be treated as a single obligation in the consolidated Chapter 11 Cases; and (c) all guarantees or other obligations by a Debtor with respect to Claims against one or more of the other Debtors shall be treated as a single obligation in the consolidated cases.  On the Effective Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guaranties of collection, payment or performance made by either Debtor as to the obligation of the other Debtor shall be released and of no further force and effect.  Except as set forth in this Section, such consolidation shall not affect (a) the legal and corporate structure of the Debtors, or (b) any obligations under any leases or contracts assumed through the Plan or otherwise after the Petition Date.

Notwithstanding the consolidation of the Estates for the purposes set forth herein, each Debtor (and after the Effective Date of the Plan, the Liquidating Trustee) shall pay all U.S. Trustee Fee Claims on all disbursements in open Chapter 11 Cases, including any Distributions or disbursements made as a result of the Plan, until the entry of a final decree in such Chapter 11 Cases, dismissal of such Chapter 11 Cases, or conversion of such Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

D.      **Summary of Treatment of Claims and Equity Interests under the Plan**

The Plan proposes to modify the rights of certain Creditors and Equity Interest Holders of the Debtors.  The classification and treatment of Claims and Equity Interests under the Plan is described generally below.

| Description and Amount of Claims or Equity Interests | Summary of Treatment |
| --- | --- |
| Unclassified:  Administrative Expense Claims<br><br><br>Estimated Aggregate Allowed amount of Administrative Claims:  $[●] (excluding Professional Fee Claims and | • Unimpaired<br>• Except for Professional Fee Claims, and except to the extent that any Holder of an Allowed Administrative Claim has received payment prior to the Effective Date, agrees with the Liquidating Trustee to different treatment or as otherwise provided for in the Plan, each Holder of an Allowed Administrative Claim shall receive payment in full, in Cash, on the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such |

| Description and Amount of Claims or Equity Interests | Summary of Treatment |
|---|---|
| ordinary course payables) | Administrative Claim becomes an Allowed Claim, or (iii) the date on which such payment is due in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim.<br><br>• Administrative Expense Claims are Unimpaired and therefore Holders of Allowed Claims are not entitled to vote on the Plan.<br><br>• Estimated Recovery: 100% |
| Unclassified: Professional Fee Claims<br><br><br>Estimated Aggregate Allowed amount of Professional Fee Claims: $[●]. | • Unimpaired<br><br>• Notwithstanding any other provision of the Plan concerning Administrative Claims, any Professional seeking an award by the Bankruptcy Court of an Allowed Professional Fee Claim incurred from the Petition Date through and including the Effective Date (i) shall, no later than twenty-one (21) days before the Confirmation Hearing, File a final application for allowance of compensation for services rendered and reimbursement of expenses actually incurred plus an estimate of additional compensation and expenses to be incurred through and including the Confirmation Hearing and, no later than the date of the Confirmation Hearing, shall file a supplement support such estimates; and (ii) shall receive, as soon as reasonably practicable after such claim is Allowed, on account of such Professional Fee Claim, Cash in an amount equal to the unpaid amount of such Allowed Professional Fee Claim in accordance with the Order relating to or allowing any such Professional Fee Claim.<br><br>• Estimated Recovery: 100% |
| Unclassified: Priority Tax Claims<br><br><br>Estimated Aggregate Allowed amount of Priority Tax Claims: $[●] | • Unimpaired<br><br>• Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date or unless otherwise agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim: (a) Cash equal to the amount of such Allowed Priority Tax Claim; or (b) as may be agreed |

- 7 -

| Description and Amount of Claims or Equity Interests | Summary of Treatment |
|---|---|
| | between the Holder of such Allowed Priority Tax Claim and the Debtors or the Liquidating Trustee, as applicable, except to the extent that such Allowed Priority Tax Claim is already liquidated pursuant to a Final Order of the Bankruptcy Court.<br><br>• Priority Tax Claims are Unimpaired and therefore Holders of Allowed Priority Tax Claims are not entitled to vote on the Plan.<br><br>• Estimated Recovery: 100% |
| Unclassified: U.S. Trustee Fee Claims<br><br><br>Estimated U.S. Trustee Fee Claims: $[●]. | • Unimpaired<br><br>• The Debtors or the Liquidating Trustee, as applicable, shall pay all U.S. Trustee Fee Claims for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.<br><br>• Estimated Recovery: 100% |
| Class 1: Secured Tax Claims<br><br><br>Estimated Aggregate Allowed amount of Class 1 Claims:<br><br>$[●]. | • Unimpaired<br><br>• Class 1 consists of Secured Tax Claims against the Debtors.<br><br>• Each Holder of an Allowed Class 1 Claim shall receive, on account of such Claim, Cash in the amount of such Allowed Secured Tax Claim without interest or premium on or as soon as reasonably practicable following the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Secured Tax Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Secured Tax Claim and the Debtors or the Liquidating Trustee.<br><br>• Class 1 Claims are Unimpaired by the Plan. Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.<br><br>• Estimated Recovery: 100% |
| Class 2: Other Secured Claims<br><br><br>Estimated Aggregate Allowed | • Unimpaired<br><br>• Class 2 consists of Other Secured Claims against the Debtors. |

| Description and Amount of Claims or Equity Interests | Summary of Treatment |
|---|---|
| amount of Class 2 Claims:<br><br>$[●]. | • Each Holder of an Allowed Class 2 Claim shall receive, on account of such Claim, at the election of the Debtors or the Liquidating Trustee, as the case may be, (i) return of the collateral securing the Other Secured Claim in full satisfaction of such claim, or (ii) Cash in the amount of such Allowed Other Secured Claim without interest or premium on or as soon as reasonably practicable following the later of: (a) the Effective Date if due on or before that date, (b) if such Other Secured Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Secured Claim becomes an Allowed Claim, or (c) such other date as may be agreed upon between the Holder of such Other Secured Claim and the Debtors or the Liquidating Trustee.  Although the treatment of each Allowed Class 2 Claim is an obligation of the Liquidating Trust to the extent not satisfied by the Debtors, no Holder of an Allowed Class 2 Claim shall receive issuance of a Liquidating Trust Interest or be a Liquidating Trust Beneficiary.<br><br>• Class 2 Claims are Unimpaired by the Plan.  Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.<br><br>• Estimated Recovery:  100% |
| Class 3:  Other Priority Claims<br><br>Estimated Aggregate Allowed amount of Class 3 Claims:<br><br>$[●]. | • Unimpaired<br><br>• Class 3 consists of Other Priority Claims against the Debtors.<br><br>• Each Holder of an Allowed Class 3 Claim shall receive, on account of such Claim, Cash in the amount of such Allowed Other Priority Claim without interest or premium on or as soon as reasonably practicable following the later of: (i) the Effective Date if due on or before that date, (ii) if such Other Priority Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Priority Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Other Priority Claim and the Debtors or the Liquidating Trustee.<br><br>• Class 3 Claims are Unimpaired by the Plan.  Holders of Allowed Class 3 Claims are not entitled to vote to accept |

Disclosure Statement

| Description and Amount of Claims or Equity Interests | Summary of Treatment |
|---|---|
| | or reject the Plan. |
| | • Estimated Recovery: 100% |
| Class 4A: Investor Principal Claims<br><br>Estimated Aggregate Allowed Amount of Class 4A Claims: $[●]. | • Impaired<br>• Class 4A Claims consist of all Investor Principal Claims against the Debtors.<br>• Each Holder of an Allowed Class 4A Claim shall receive issuance of its Pro Rata Share of Liquidating Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4A Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4A Claim and the Debtors or Liquidating Trustee.<br>• Class 4A Claims are Impaired under the Plan. Holders of Class 4A Claims are entitled to vote to accept or reject the Plan.<br>• Estimated Recovery: [●%] |
| Class 4B: General Unsecured Claims<br><br>Estimated Allowed Aggregate Amount of Class 4B Claims: [●%]. | • Impaired<br>• Class 4B Claims consist of all General Unsecured Claims against the Debtors.<br>• Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Class 4B Claim shall receive a Pro Rata Share of Liquidating Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4B Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4B Claim and the Debtors or Liquidating Trustee.<br>• Class 4B Claims are Impaired under the Plan. Holders of Class 4B Claims are entitled to vote to accept or reject the Plan.<br>• Estimated Recovery: [●%] |
| Class 5: Investor Other Claims | • Impaired |

| Description and Amount of Claims or Equity Interests | Summary of Treatment |
|---|---|
| Estimated Allowed Aggregate Amount of Class 5 Claims: [●%]. | • Holders of Class 5 Claims shall not receive a Distribution on account of such claims, subject to the right to modify the Plan as set forth in Section 14.02 of the Plan.<br><br>• Estimated Recovery: $0.00 |
| Class 6:  Intercompany Claims<br><br>Estimated Allowed Aggregate Amount of Class 6 Claims: $ | • Impaired<br><br>• Class 6 Claims consist of Intercompany Claims against the Debtors.<br><br>• On the Effective Date, all Intercompany Claims shall be deemed compromised, and Holders of Class 6 Claims shall receive no Distribution on account of such Intercompany Claims.<br><br>• Class 6 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Intercompany Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.<br><br>• Estimated Recovery:  $0.00 |
| Class 7: Subordinated Claims<br><br>Estimated Allowed Aggregate Amount of Class 7 Claims: [●%]. | • Impaired<br><br>• Class 7 Claims consist of Subordinated Claims against the Debtors.<br><br>• Holders of Class 7 Claims shall not receive a Distribution under the Plan on account of such claims.<br><br>• Class 7 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Subordinated Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.<br><br>• Estimated Recovery:  $0.00 |
| Class 8: Section 510(b) Claims<br><br>Estimated Allowed Aggregate Amount of Class 8 Claims: [●%]. | • Impaired<br><br>• Class 8 Claims consist of Section 510(b) Claims against the Debtors.<br><br>• Holders of Class 8 Claims shall not receive a Distribution under the Plan on account of such claims.<br><br>• Class 8 Claims are Impaired by the Plan and are |

- 11 -

| Description and Amount of Claims or Equity Interests | Summary of Treatment |
|---|---|
|  | receiving no Distribution under the Plan.  Holders of Class 8 Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan. <br><br>• Estimated Recovery:  $0.00 |
| Class 9:  Equity Interests in the Debtors | • Impaired <br><br>• Class 9 Equity Interests consist of all Equity Interests in the Debtors. <br><br>• On the Effective Date, all Equity Interests in the Debtors will be cancelled, and holders of such Equity Interests shall receive no Distribution on account of such Equity Interests. <br><br>• Class 9 Equity Interests are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Class 9 Equity Interests are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan. <br><br>• Estimated Recovery:  $0.00 |

THE PLAN PROPONENTS BELIEVE THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR HOLDERS OF CLAIMS AGAINST THE DEBTORS. THE PLAN PROPONENTS THEREFORE **STRONGLY RECOMMEND** THAT YOU VOTE TO **ACCEPT** THE PLAN.

III.    **SOLICITATION, PLAN VOTING INSTRUCTIONS AND VOTING PROCEDURES**

A.    **Notice to Holders of Claims Against and Equity Interests in the Debtors**

APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT MEANS THAT THE BANKRUPTCY COURT HAS FOUND THAT THIS DISCLOSURE STATEMENT CONTAINS INFORMATION OF A KIND AND IN SUFFICIENT AND ADEQUATE DETAIL AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTORS TO ENABLE HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN TO MAKE AN INFORMED JUDGMENT ABOUT WHETHER TO ACCEPT OR REJECT THE PLAN.  THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE EITHER A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.

IF THE PLAN IS APPROVED BY THE REQUISITE VOTE OF HOLDERS OF CLAIMS ENTITLED TO VOTE AND IS SUBSEQUENTLY CONFIRMED BY THE BANKRUPTCY COURT, THE PLAN WILL BIND ALL HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS, WHETHER OR NOT THEY WERE ENTITLED TO VOTE OR DID VOTE ON THE PLAN AND WHETHER OR NOT THEY RECEIVE OR RETAIN ANY DISTRIBUTIONS OR PROPERTY UNDER THE PLAN. THUS, ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS ENTITLED TO VOTE ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS APPENDICES, SUPPLEMENTS AND EXHIBITS CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO VOTE EITHER TO ACCEPT OR REJECT THE PLAN.

THIS DISCLOSURE STATEMENT AND THE PLAN ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN. NO SOLICITATION OF VOTES MAY BE MADE EXCEPT AFTER DISTRIBUTION OF THIS DISCLOSURE STATEMENT, AND NO PERSON HAS BEEN AUTHORIZED TO DISTRIBUTE ANY INFORMATION CONCERNING THE DEBTORS OTHER THAN THE INFORMATION CONTAINED HEREIN OR THEREIN.  NO SUCH INFORMATION SHOULD BE RELIED UPON IN MAKING A DETERMINATION TO VOTE TO ACCEPT OR REJECT THE PLAN.

TO THE EXTENT THERE IS ANY CONFLICT BETWEEN THE DISCLOSURE STATEMENT ORDER AND THE PROVISIONS OF THE DISCLOSURE STATEMENT, WHICH RELATE TO THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN AND/OR THE TABULATION OF VOTES RELATED THERETO, THE DISCLOSURE STATEMENT ORDER SHALL CONTROL.

### B.    Parties-in-Interest Entitled to Vote

In general, a holder of a claim against or interest in a debtor may vote to accept or to reject a plan of liquidation if (a) the claim or interest is "allowed" and (b) the claim or interest is "impaired" by such plan.

Under Section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan of liquidation unless (i) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before such default.

If, however, the holder of an impaired claim or interest will not receive or retain any distribution under the plan of liquidation on account of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan and, accordingly, holders of such claims and interests are not entitled to vote on the plan of liquidation.  If a claim or interest is not impaired by the plan, the Bankruptcy Code deems the holder of such claim or interest to have accepted the plan and, accordingly, holders of such claims and interests are not entitled to vote on such plan.

### C.       Classes Entitled to Vote to Accept or Reject the Plan

Under the Bankruptcy Code, (a) a class of claims has accepted a plan if such plan has been accepted by creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims of such class held by creditors that have accepted or rejected such plan, and (b) a class of interests has accepted a plan if such plan has been accepted by holders of such interests that hold at least two-thirds (2/3) in amount of the allowed interests of such class held by holders of such interests that have accepted or rejected such plan.

Pursuant to the Plan, **Class 4A and Class 4B Claims** are Impaired by, and entitled to receive a Distribution under, the Plan, and therefore only the Holders of Claims in those Classes are entitled to vote to accept or reject the Plan.  **Class 1, Class 2, and Class 3 Claims** are Unimpaired by the Plan.  Holders of such Claims are conclusively presumed to have accepted the Plan; therefore, such Holders are not entitled to vote to accept or reject the Plan.  **Class 5, Class 6, Class 7 and Class 8 Claims and Class 9 Equity Interests** shall receive no Distribution under the Plan.  Holders of such Claims and Equity Interests are conclusively presumed to have rejected the Plan; therefore, such Holders are not entitled to vote to accept or reject the Plan.

### D.       Calculation of Claims for Voting Purposes; Claim Objection Deadline

Pursuant to Section 105(a) of the Bankruptcy Code and Rule 3003(c)(2) of the Bankruptcy Rules, any Holder of a Claim (a) that is either (i) not scheduled, or (ii) scheduled as (x) contingent, unliquidated, undetermined or undisputed, (y) in the amount of $0.00 or (z) as unknown; (b) that is not the subject of a Proof of Claim filed by the applicable Bar Date set by the Bankruptcy Court or is not otherwise deemed timely filed by the Bankruptcy Court; (c) that is satisfied by the Debtors; (d) that is filed in the amount of $0.00; (e) that has been resolved pursuant to stipulation or order entered by the Bankruptcy Court; or (f) that is subject to an objection filed before the Claims Objection Deadline (as defined below), will not be treated by the Debtors as a Creditor with respect to such Claim, for purposes of voting on the Plan.

In order to calculate the amount of Claims for voting purposes, Class 4B Claims will be (a) counted in the amount Allowed by the Plan; (b) counted in the amount listed on the Schedules if (i) the Claim is not scheduled (x) as contingent, unliquidated, disputed or undetermined or (y) in the amount of $0.00, (ii) no Proof of Claim has been timely filed (or otherwise deemed timely filed by the Bankruptcy Court under applicable law), (iii) such Claim has not been satisfied by the Debtors, and (iv) such Claim has not been resolved pursuant to a stipulation or order entered by the Bankruptcy Court; (c) counted in the amount listed in a timely filed Proof of Claim (or otherwise deemed timely filed by the Bankruptcy Court under applicable law) if (i) the Claim amount is not disputed, contingent, undetermined or unliquidated, (ii) the Claim was not filed in the amount of $0.00, (iii) the Proof of Claim has not been amended or superseded by another Proof of Claim, or (iv) the Claim is not the subject of a Claim Objection (as defined below); (d) allowed in the amount temporarily allowed by the Bankruptcy Court for voting purposes only pursuant to rule 3018(a) of the Bankruptcy Rules as set forth below; or (e) reclassified and/or allowed in a fixed, reduced amount if the Debtors have requested that such Claim be reclassified and/or allowed in a fixed, reduced amount pursuant to a Claim Objection (as defined below) to such Claim.  Class 4A Claims will be counted in the amount of the Class

- 14 -

4A Claim set forth in the Ballot received by the Holder of such Claim provided that the Holder of such Claim has not elected to be a Disputed Claimant and is not a Prepetition Party. If such Holder is a Disputing Claimant or Prepetition Party, then such Claim shall be counted as set forth above for Class 4B Claims.

Pursuant to Bankruptcy Rule 3018(a), the deadline for the Debtors to File and serve any objections (each a "**Claim Objection**") to a Claim for purposes of voting on the Plan in a different Class or different amount than is set forth in the Proof of Claim timely filed by the applicable Bar Date as set by the Bankruptcy Court, shall be a date thirty-five (35) days before the Confirmation Hearing at 4:30 p.m. (Prevailing Eastern Time) (the "**Claim Objection Deadline**"). For the avoidance of doubt, the Debtors (and after the Effective Date, the Liquidating Trustee) shall retain their right to object to a Claim at a later date on any ground(s) so long as such objection is not for voting purposes. Responses, if any, to the Claim Objection shall be filed no later than a date twenty-one (21) days before the Confirmation Hearing at 4:30 p.m. (Prevailing Eastern Time). The Bankruptcy Court may conduct a hearing on any Claim Objection at the Confirmation Hearing or such earlier time as may be scheduled by the Bankruptcy Court. The ruling by the Bankruptcy Court on any Claim Objection will be considered a ruling with respect to the allowance of the Claim(s) under Bankruptcy Rule 3018 and such Claim(s) will be counted, if at all, for voting purposes only, in the amount determined by the Bankruptcy Court. Any party with a response to a Claim Objection may be heard at the Confirmation Hearing. If, and to the extent that, the Debtors and such party are unable to resolve the issues raised by the Claim Objection on or prior to the Confirmation Hearing, any such Claim Objection will be heard at the Confirmation Hearing.

Creditors seeking to have a Claim temporarily allowed for purposes of voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018(a) must File a motion (the "**Claims Estimation Motion**") for such relief no later than a date twenty-one (21) days before the Confirmation Hearing at 4:30 p.m. **(prevailing Eastern Time)** (the "**Claims Estimation Motion Deadline**") which date is seven (7) days prior to the Voting Deadline (as defined below). The Bankruptcy Court shall hear such Claims Estimation Motion at the Confirmation Hearing or such earlier time as may be scheduled by the Bankruptcy Court. Any such Claims Estimation Motion may be resolved by agreement between the Debtors and the movant without the requirement for further order or approval of the Bankruptcy Court. The deadline for the Debtors to file and serve any objections (each, a "**Claims Estimation Objection**") to a Claims Estimation Motion shall be three (3) Business Days before the Confirmation Hearing at 4:30 p.m. (prevailing Eastern Time) (the "**Claims Estimation Objection Deadline**"). Responses to any Claims Estimation Objection may be filed with the Bankruptcy Court up to and including the date of the Confirmation Hearing, and any party with a response to a Claims Estimation Objection may be heard at the Confirmation Hearing.

E.       **Solicitation Materials**

In soliciting votes for the Plan pursuant to this Disclosure Statement, the Debtors, through Epiq Corporate Restructuring, LLC (the "**Voting Agent**"), will send to Holders of Claims who are entitled to vote, a solicitation package (the "**Solicitation Package**"), which shall include, among other things copies of (a) this Disclosure Statement together with the Plan and all other exhibits annexed thereto (at the Debtors' discretion these may be provided in PDF format

- 15 -

on a CD-ROM or USB flash drive, instead of in paper format), (b) the Disclosure Statement Order, excluding the exhibits annexed thereto, (c) the notice of, among other things, (i) the date, time, and place of the hearing to consider Confirmation of the Plan and related matters and (ii) the deadline for filing objections to Confirmation of the Plan ((i) and (ii) collectively, the "**Confirmation Hearing Notice**"), (d) in the case of Voting Classes (as defined below), an appropriate form of Ballot (as defined below) to accept or reject the Plan along with a pre-addressed, postage prepaid return envelope, (e) a letter from the Creditors' Committee regarding solicitation, and (f) such other materials as the Court may direct or approve, including any supplemental solicitation materials the Debtors may file with the Court.

**Copies of the Disclosure Statement, the Plan, the Disclosure Statement Order and the other materials included in the Solicitation Package are also available free of charge from the Debtors' case website being maintained by the Voting Agent at** https://dm.epiq11.com/OGC.

Prior to the Confirmation Hearing, the Plan Proponents intend to file a Plan Supplement that includes, among other things, a liquidation analysis. As the Plan Supplement is updated or otherwise modified, such modified or updated documents will be made available on the Debtors' restructuring website, without charge, at the Voting Agent's Website, at https://dm.epiq11.com/OGC.

## F.    Voting Procedures, Ballots, and Voting Deadlines

The record date with respect to Holders of Claims is two (2) Business Days before the date first set for the Disclosure Statement Hearing (the "**Voting Record Date**"). The Voting Record Date is the date used for determining (1) the Holders of Claims against and Equity Interests in (a) the Classes entitled to vote to accept or reject the Plan (each a "**Voting Class**"), who are entitled to receive Solicitation Packages and vote to accept or reject the Plan, and (b) the Classes not entitled to vote to accept or reject the Plan (each a "**Non-Voting Class**"), who shall receive a package (the "**Non-Voting Package**") consisting of the Confirmation Hearing Notice and notice of non-voting status, and (2) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote to accept or reject the Plan as the Holder of a Claim. However, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and cast a Ballot on account of the transferred Claim only if the parties have completed all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) by the Voting Record Date. In the event a Claim is transferred after the transferor has executed and submitted a Ballot to the Voting Agent, the transferee of such Claim shall be bound by any such vote (and the consequences thereof) made by the Holder of such transferred Claim as of the Voting Record Date. The Voting Record Date and all of the Debtors' solicitation and voting procedures shall apply to all of the Debtors' Creditors and other parties in interest. The provisions of this paragraph are without prejudice to the right or power of the Plan Proponents to challenge transfers of Class 4A Claims in violation of any non-assignability or non-transferability provision in any Memorandum of Indebtedness.

As of the date of this Disclosure Statement, the Holder of the Equity Interests in the Debtors is the Ruderman Family Trust. In the event that any Holder of an Equity Interest in

- 16 -

the Debtors assigns or otherwise transfers all or some of such Equity Interest, then the transferor shall promptly provide to Debtors' counsel written notice of such transfer.  With respect to any transferred Equity Interest, the transferee shall be entitled to receive a Non-Voting Package on account of the transferred Equity Interest only if the transferor has provided written notice of such transfer to Debtors' counsel by the Voting Record Date.

After carefully reviewing the Plan, this Disclosure Statement, and the detailed instructions accompanying your Ballot, you are asked to indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the accompanying Ballot.

All votes to accept or reject the Plan must be cast by using the Ballot enclosed with the Solicitation Packages.  Unless the Plan Proponents determine otherwise in their sole and absolute discretion, in order for your vote to be counted, your Ballot must be properly completed as set forth below and in accordance with the voting instructions on the Ballot and received no later than fourteen (14) days before the Confirmation Hearing at 4:30 p.m. (prevailing Eastern Time) (the "**Voting Deadline**") at the following address:

> **If by First-Class Mail:**
> 1 Global Capital LLC Ballot Processing Center
> c/o Epiq Corporate Restructuring, LLC
> P.O. Box 4422
> Beaverton, OR 97076-4422
>
> **If by Hand Delivery or Overnight Mail:**
> 1 Global Capital LLC Ballot Processing Center
> c/o Epiq Corporate Restructuring, LLC
> 10300 SW Allen Blvd.
> Beaverton, OR 97005

**Ballots cannot be sent via facsimile, electronic mail or other electronic means.**

Unless otherwise provided in the instructions accompanying the Ballots, the following Ballots will not be counted in determining whether the Plan has been accepted or rejected:

- any Ballot that is otherwise properly completed, executed and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the Plan, or indicates both an acceptance and a rejection of the Plan;

- any Ballot received after the Voting Deadline, except in the Plan Proponents' discretion or by order of this Court;

- any Ballot containing a vote that this Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

- 17 -

- any Ballot that, in the Debtors' discretion, is illegible or contains insufficient information to permit the Plan Proponents to identify the Creditor;

- any Ballot that partially accepts, or partially rejects, the Plan;

- any Ballot cast by a Person or Entity that does not hold a Claim in a Voting Class;

- any unsigned Ballot or Ballot without an original signature, except in the Plan Proponents' discretion; and

- any Ballot transmitted to the Voting Agent by facsimile, e-mail or other electronic means, except in the Plan Proponents' discretion.

The Ballots do not require Holders of Claims to return any stock certificates, debt instruments, or other evidences of their Claim with their Ballot.

Except as otherwise provided herein, or in the Disclosure Statement Order, if no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan will be deemed not to have been accepted by the Holders of such Claims in such Class.

Each Holder of a Claim must vote all of its Claim within a particular Class either to accept or reject the Plan and may not split such votes within a Voting Class. Accordingly, an individual Ballot that partially rejects and partially accepts the Plan on account of multiple Claims within the same Voting Class shall not be counted. By signing and returning a Ballot, each Holder of a Claim will certify to the Bankruptcy Court and the Debtors that no other Ballots with respect to such Claim have been cast or, if any other Ballots have been cast with respect to such Class of Claims, such other Ballots indicated the same vote to accept or reject the Plan.

It is important that the Holder of a Claim in the Classes entitled to vote follow the specific instructions provided on such Holder's Ballot(s) and the accompanying instructions.

If you have any questions about (a) the procedure for voting your Claim, (b) the Solicitation Package that you have received, or (c) the amount of your Claim, or if you wish to obtain, at your own expense (unless otherwise specifically required by Bankruptcy Rule 3017(d)), an additional copy of the Plan, this Disclosure Statement, the Plan Supplement or any appendices or exhibits to such documents, please contact the Voting Agent at the address specified above or by email at tabulation@epiqglobal.com with a reference to "1 Global Capital" in the subject line.

For further information and general instructions on voting to accept or reject the Plan, see the instructions accompanying your Ballot.

## G.     Waiver of Defects, Irregularities, Etc.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of

Disclosure Statement

Ballots shall be determined by the Bankruptcy Court. As indicated below under "Withdrawal of Ballots; Revocation," effective withdrawals of Ballots must be delivered to the Voting Agent prior to the Voting Deadline. The Plan Proponents reserve the right to contest the validity of any such withdrawals of Ballots. Subject to any contrary order of the Bankruptcy Court, the Plan Proponents also reserve the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Plan Proponents or their counsel, be unlawful. The Plan Proponents further reserve the right to waive, without notice, any defects, irregularities or conditions of delivery as to any particular Ballot, including failure to timely file such Ballot. Unless otherwise ordered by the Bankruptcy Court, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Plan Proponents (or the Bankruptcy Court) determine, and delivery of such Ballots shall not be deemed to have been made until such irregularities have been cured or waived. None of the Plan Proponents nor any other Person or Entity will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor shall any such party incur any liability for failure to provide such notification. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will not be counted, except as otherwise provided herein or in the Disclosure Statement Order.

## H.    Withdrawal of Ballots; Revocation

Unless otherwise provided, any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the Voting Deadline. To be valid, a notice of withdrawal must (i) contain the description of the Claim(s) to which it relates and the aggregate principal amount represented by such Claim(s), (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claim(s) and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be actually received by the Voting Agent prior to the Voting Deadline. The Plan Proponents intend to consult with the Voting Agent to determine whether any withdrawals of Ballots were received and whether the requisite acceptances of the Plan have been received. As stated above, the Plan Proponents expressly reserve the right to contest the validity of any such withdrawals of Ballots.

Unless otherwise directed by the Bankruptcy Court, a purported notice of withdrawal of Ballots which is not received in a timely manner by the Voting Agent will not be effective to withdraw a previously timely cast Ballot.

Unless otherwise provided, any party who has previously submitted to the Voting Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change such vote by submitting to the Voting Agent prior to the Voting Deadline a subsequent properly completed Ballot for acceptance or rejection of the Plan. In the event where more than one timely, properly completed Ballot is received, the last valid Ballot received before the Voting Deadline will supersede and revoke any earlier received Ballot, provided that, if a Holder of Claims casts multiple Ballots on account of the same Claim or Class of Claims, which are received by the Voting Agent on the same day, but which are voted inconsistently, all such Ballots will not be counted.

Disclosure Statement

### I.      Request for Ballot(s); Further Information; Additional Copies

If you have any questions or require further information about the voting procedures for voting your Claim or about the packet of material you received, if you wish to obtain an additional copy of the Plan, this Disclosure Statement, Plan Supplement or any exhibits or appendices to such documents, or if you are the Holder of a Claim who believes you are entitled to vote on the Plan, but you did not receive a Ballot or your Ballot is damaged or illegible, please contact the Voting Agent at:

**If by first class mail:**

1 Global Capital LLC Ballot Processing Center
c/o Epiq Corporate Restructuring, LLC
P.O. Box 4422
Beaverton, OR 97076-4422

**If by hand delivery or overnight mail:**

1 Global Capital LLC Ballot Processing Center
c/o Epiq Corporate Restructuring, LLC
10300 SW Allen Blvd.
Beaverton, OR 97005

**If by telephone at:**

1-877-440-0643 (Domestic) or +1 (503) 597-7693 (International)

### J.      Confirmation Hearing and Deadline for Objections to Confirmation

Pursuant to Section 1128(a) of the Bankruptcy Code, the Bankruptcy Court, after notice, may hold a hearing on Confirmation of the Plan.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

The Confirmation Hearing will commence on a date and at a time to be determined by the Bankruptcy Court, before the Honorable Raymond B. Ray, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of Florida, 299 E Broward Blvd, Ft. Lauderdale, FL 33301.  The Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on the master service list and the Entities or Persons who have filed an objection to the Plan ("**Plan Objection**"), without further notice to parties in interest.  The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing.

The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

- 20 -

All Plan Objections must be filed with the Bankruptcy Court and served on the Debtors and certain other parties in interest in accordance with the Disclosure Statement Order so that they are received on or before fourteen (14) days before the Confirmation Hearing at 4:30 p.m. (prevailing Eastern Time) (the "**Plan Objection Deadline**").  The Plan Proponents or any other party supporting Confirmation of the Plan, may file a response to any Plan Objections no later than three (3) Business Days before the Confirmation Hearing at 4:30 p.m. (prevailing Eastern Time).  At that same time, the Plan Proponents may also file their proposed findings of fact and conclusions of law with a form of order confirming the Plan, and may file any memorandum of law in support of Confirmation of the Plan.

The Confirmation Order shall approve all provisions, terms, and conditions of the Plan, unless such provisions, terms or conditions are otherwise satisfied or waived pursuant to the Plan provisions described in Article XIII of the Plan.

## IV.    GENERAL INFORMATION CONCERNING THE DEBTORS

### A.    Overview of Debtors' Corporate History and Business Operations

Upon the commencement of these Chapter 11 Cases, 1 Global Capital LLC ("**1GC**") was a Florida limited liability company formed in 2013.  1 West Capital LLC ("**1WC**" and together with 1GC, the "**Debtors**") was a Florida limited liability company formed in 2014.  The Debtors employed approximately 100 employees and operated out of leased office space located in Hallandale Beach, Florida.

As of July 27, 2018 (the "**Petition Date**"), the Debtors operated in the financial services industry, primarily by providing direct merchant cash advances ("**MCAs**") to small businesses across the United States.  Through independent sales organizations, underwriters and other funding agents, the Debtors offered a variety of fast and flexible financing options, specializing in MCAs and other unsecured, short-term commercial financing.  The Debtors served businesses in a variety of industries, including automotive, construction, e-commerce, events, franchise, hospitality, healthcare, manufacturing, retail, restaurant/bar, spa/salon, and transportation.

Through the MCA funding platform, the Debtors provided necessary capital for their merchant clients to invest in inventory, repair machinery, pay bills, upgrade technology, and otherwise operate their businesses.  Under the MCA funding platform, the Debtors had the ability to provide clients with up to $500,000 for working capital, repayable either through daily, weekly or other periodic automated clearing house transactions or merchant credit card receivable splits. Alternatively, the Debtors offered collateral-based funding and accounts-receivable funding options, where advances were based, respectively, on the value of collateral owned by a business or on amounts a business had earned but not yet collected.  The Debtors used the industry practice of offering MCA participants refinancing options, including increasing the amount of the advance, early and often in the process based upon the MCAs payment history and performance.  Approximately 30% of the businesses to which the Debtors provided MCAs or extended other forms of short-term funding elected to renew or roll over their existing funding arrangements into new arrangements with the Debtors.

Disclosure Statement

In addition to the portfolio of traditional MCAs, the Debtors made so-called "non-traditional MCAs." These non-traditional MCAs consisted of cash advances that were much larger than the typical MCA. The typical MCA transaction contemplated cash advances in the approximate aggregate amount of $500,000 or less to a single merchant for the purpose of providing working capital for the merchant. The non-traditional MCA transactions executed by the Debtors exceed this aggregate $500,000 threshold. The two largest non-traditional MCA transactions resulted in aggregate advances of approximately (i) $68 million to a single merchant to allow that merchant to fund affiliates' acquisition of distressed debt and (ii) $35 million to an affiliated group of new and used automobile dealerships. In the aggregate, the Debtors advanced approximately $120 million in non-traditional MCAs prior to the commencement of these Chapter 11 Cases.

The Debtors raised capital to fund the business operations through private loans typically repayable in nine months, or as soon thereafter as the positions in which those loans were invested were liquidated. Prior to the Petition Date, the Debtors found it difficult to raise new capital due to various business and legal issues, as discussed in more detail below. Without access to new capital, the Debtors commenced these Chapter 11 Cases to address the business disruption arising from the Debtors' inability to raise new capital and operational issues.

### B.    The Debtors' Organizational Structure

#### 1.    *Debtors' Prepetition Organizational Structure*

As of the Petition Date, the Debtors operated as single-member Florida limited liability companies, of which the Ruderman Family Trust ("**RFT**") is the sole member, holding 100% of the membership interests in each of 1GC and 1WC.

Concurrently with the filing of the Voluntary Petitions and the commencement of these Chapter 11 Cases, the Debtors implemented a series of corporate actions intended to transfer control of the Debtors and their operations to independent outside management, as discussed in more detail below. Below is a list of the prepetition officers of the Debtors:

*Carl Ruderman*.    Mr. Ruderman served as the Chief Executive Officer and the Chairman of 1GC.

*Steven Schwartz*.    Mr. Schwartz served as the manager of 1GC.

*Darice Lang*.    Ms. Lang served as the Operations Director of the Debtors and the manager of 1WC. Ms. Lang remains an employee of the Debtors, reporting directly to the Deputy Chief Restructuring Officer appointed as described below.

#### 2.    *Debtors' Postpetition Organizational Structure*

The operating agreements of the Debtors were amended effective as of the filing of the Voluntary Petitions to effectuate modifications to the Debtors' corporate governance structure.

- 22 -

The modifications provided, among other things, that (i) each of 1GC and 1WC is a manager-managed limited liability company under the direction of a board of independent managers (the "**Board**") that may exercise all powers of the company and has the right and authority to take any and all actions that the Board, in its sole discretion, deems necessary, useful or appropriate for the management of the company; (ii) the Board of Managers consists of up to three (3) independent managers (each, a "**Manager**"); (iii) James S. Cassel was appointed as a Manager (the "**Initial Manager**") and has the sole power and authority to appoint the remaining Managers; (iv) any Manager (other than the Initial Manager) may be removed at any time, with or without cause, by the Initial Manager; and (v) the Initial Manager may be removed and replaced, with or without cause, by a majority vote of the other Managers. In addition, RFT, as the sole member of the Debtors, relinquished the ability to remove or appoint any Manager once the Voluntary Petitions were filed.

Concurrent, with the effectiveness of those modifications, as of the filing of the Voluntary Petitions, Carl Ruderman, Steven A. Schwartz, Darice Lang and RFT each tendered their resignations from all manager, director, committee and officer positions they held with the Debtors. Since the filing of the Voluntary Petitions and as a result of the modifications to the Debtors' corporate governance, and consistent with the terms of their resignations, neither Carl Ruderman, Steven A. Schwartz, nor any other person affiliated with the RFT has had any role in the governance or management of the Debtors, nor retains the power to appoint, elect or remove any member of the independent Board.

Immediately upon the filing of the Voluntary Petitions, James S. Cassel was appointed as the sole Initial Manager of the Debtors. Mr. Cassel is an independent fiduciary, who had no prior connection to, or prepetition relationship with, the Debtors. Immediately upon his appointment as the Initial Manager, and having considered four candidates for the role of outside financial advisor, Mr. Cassel engaged Development Specialists, Inc. ("**DSI**") to provide financial advisory services to the Debtors. Under the terms of DSI's engagement, Bradley D. Sharp serves as the Debtors' Chief Restructuring Officer ("**CRO**") and Joseph J. Luzinski serves as the Debtors' Deputy CRO. Like Mr. Cassel, Mr. Sharp and Mr. Luzinksi are independent fiduciaries, who had no prior connection to, or prepetition relationship with, the Debtors. The retention of Messrs. Cassel, Sharp, and Luzinski as independent fiduciaries of the Debtors has been approved by the Bankruptcy Court. Specifically, on September 26, 2018, the Bankruptcy Court formally ratified the appointment of Mr. Cassel as the Debtors' independent manager and authorized the designation of Mr. Sharp as the CRO and Mr. Luzinski as the Deputy CRO for the Debtors [Docket Nos. 155-156]. As of the commencement of these Chapter 11 Cases, Carl Ruderman was no longer in control of the Debtors and no longer has any involvement whatsoever with the Debtors.

## C.     Debtors' Capital Structure

### 1.     *Assets*

As of the Petition Date, the Debtors' primary assets were MCAs, other receivables and cash in the gross book value of more than $287 million. In addition, the Debtors believe they possess Causes of Action against, among others, (i) Travis Portfolio, LLC, Oliphant Financial, LLC, and Collins Asset Group related to certain failures to fulfill obligations to the

Debtors; (ii) Momentum Automotive Management, LLC, its affiliates, and others related to, among other things, certain prepetition conduct or receipt of funds from the Debtors prior to the Petition Date; (iii) former directors and officers of the Debtors, including Carl Ruderman; and (iv) Debtors' former law firm, and certain other professional firms and professionals. The Debtors are unaware of any other material assets.

### 2. *Secured Claims*

As of the Petition Date, Collins Asset Group, LLC ("**Collins Asset Group**") has asserted that it holds valid, perfected security interests in certain assets of the Debtors, including certain rights of 1GC to the payment of money whether or not now earned or due, rights to payment arising out of all present and future debt instruments, loans and obligations receivable, including, but not limited to MCAs entered into by 1GC and merchants in the ordinary course of business. Collins Asset Group asserts that the approximate value of its secured claim is $2.4 million.

As an initial matter, the Debtors dispute the purported secured nature of Collins' claim. The Debtors have filed an adversary proceeding, that, among other things, objects to the secured claim. The litigation is on-going and the Debtors reserve all rights in connection therewith. The Debtors are unaware of any other material secured indebtedness.

### 3. *Unsecured Debt*

As of the Petition Date, the Debtors were collectively indebted in the aggregate amount of approximately $283 million on account of unsecured Investor Claims.

The SEC filed unsecured and unliquidated claims against the Debtors on account of violations of federal securities laws. The SEC asserts that the Debtors are liable to the SEC for a monetary claim for disgorgement and civil penalties plus prejudgment interest, in amounts to be determined, in a civil enforcement action. The SEC further asserts that the amount of its disgorgement claims is approximately $285 million. This amount consists of all Investor funds that the Debtors raised prepetition less amounts returned.

Travis Portfolio LLC, Collins Asset Group, and Oliphant Financial, LLC each filed claims, asserting unsecured, non-liquidated damages claims against 1GC. The aggregate amount of the purported claims of these three entities is approximately $152 million. The Debtors have commenced proceedings to dispute these unmeritorious claims, and reserve all rights in connection therewith.

Creditors and interested parties should review the Debtors' Schedules filed with the Bankruptcy Court for more complete information concerning the nature and amount of the Debtors' liabilities as of the Petition Date.

### 4. *Equity Interests*

As noted above, the Debtors are directly or indirectly owned by RFT. Under the Plan, as of the Effective Date, all Equity Interests shall be deemed void, cancelled, and of no further force and effect. On and after the Effective Date, Holders of Equity Interests shall not be

entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Equity Interests.

### D.    Events Leading to the Filing of the Chapter 11 Cases

#### 1.    *Prepetition Investigations into the Debtors' Activities*

In the months leading up to the Petition Date, the SEC, Miami Region, opened an investigation into the Debtors' activities related to alleged possible securities law violations, including the alleged offer and sale of unregistered securities, the alleged sale of securities by unregistered brokers, and the alleged commission of fraud in connection with the offer, purchase, and sale of securities.  The Office of the United States Attorney for the Southern District of Florida ("**USAO**") opened a parallel investigation into certain of these same and other business activities and transactions engaged in by the Debtors.  It is unknown which investigation began first.

During these investigations, the SEC and USAO issued document requests and requests for testimony from at least one employee of the Debtors.  The Debtors retained outside counsel to assist with responding to these investigations, and since the Petition Date have been cooperating with the SEC and USAO.  Based upon information and belief, the SEC and USAO have also spoken with or requested documents from third parties, related to the Debtors' business.

Following the commencement of the Chapter 11 Cases, the SEC commenced an action against the Debtors and other related entities, asserting, among other things certain violations of the federal securities laws.  To resolve and settle all issues of liability against the Debtors in connection with the SEC's action, the Debtors consented to the entry of judgment against the Debtors.  As set forth in greater detail below, the Debtors agreed to the entry of a judgment, which, among other things, permanently restrains and enjoins 1GC from violating Sections 5(a) and 5(c) and 17(a) of the Securities Act of 1933 and Sections 10(b) and 15(a)(1) and Rule 10b-5 of the Securities Exchange Act of 1934.

The Debtors have also been the subject of investigations by state attorneys general in certain of the states in which investors were solicited to provide loans to the Debtors.  As set forth more fully below, since the Petition Date, the Debtors have entered into, and obtained Bankruptcy Court approval for, settlements with the SEC and certain state securities regulators. As of the date hereof, the Debtors are not aware that the USAO has filed any formal charges or commenced any other formal legal action.

#### 2.    *Business Disruption*

The Debtors filed these Chapter 11 Cases to address a disruption in business operations due to the inability to raise new capital, and to preserve their assets and business operations for the benefit of the individual investors and all other constituencies.  The urgent filing of these Chapter 11 Cases was necessary to ensure the smooth transition to independent management and continuity of the Debtors' MCA business pending review of that business by new management.

- 25 -

3.    *Purpose of the Chapter 11 Filing*

The Debtors filed these Chapter 11 Cases to safeguard all available assets of the Debtors, evaluate their strategic options and, in consultation with their stakeholders and other parties in interest, determine an appropriate strategy to maximize the return to creditors.

## V.    THE CHAPTER 11 CASES

### A.    Commencement of the Chapter 11 Cases

On July 27, 2018, the Debtors commenced the Chapter 11 Cases by filing the Voluntary Petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. Since the Petition Date, the Debtors have continued to operate as debtors in possession subject to the supervision of the Bankruptcy Court, and in accordance with the Bankruptcy Code.  The Debtors are authorized to operate their business and manage their properties in the ordinary course, with transactions outside of the ordinary course of business requiring Bankruptcy Court approval.

An immediate effect of commencement of the Chapter 11 Cases was the imposition of the automatic stay under the Bankruptcy Code which, with limited exceptions, enjoins the commencement or continuation of all collection efforts by Creditors, the enforcement of Liens against property of the Debtors, and the continuation of litigation against the Debtors during the pendency of the Chapter 11 Cases.  The relief provided the Debtors with the breathing room necessary to assess their business and prevent Creditors from obtaining an unfair recovery advantage while the Chapter 11 Cases are continuing.  The automatic stay will remain in effect, unless modified by the Bankruptcy Court, until the entry of a final decree closing the Chapter 11 Cases.

### B.    First Day Orders

Shortly after the Petition Date, the Debtors filed certain requests with the Bankruptcy Court seeking immediate relief to aid in the efficient administration of these Chapter 11 Cases and to facilitate the transition between the Debtors' prepetition and postpetition business operations.  The Bankruptcy Court held hearings in connection with these requests, and after due deliberation, entered the following orders:

- Order (A) Authorizing the Debtors to Pay Pre-Petition Wages and Certain Employee Benefits, (B) Directing Banks to Honor Related Transfers, and (C) Granting Related Relief [Docket No. 32];

- Order Authorizing and Directing the Joint Administration of the Debtors' Chapter 11 Cases for Procedural Purposes Only [Docket No. 43];

- Interim Order (A) Authorizing the Maintenance of Bank Accounts and Continued Use of Existing Business Forms and Checks, (B) the Continued Use of Existing Cash Management System, and (C) Waiving Certain Investment and Deposit Guidelines [Docket No. 48];

- Order Granting *Ex Parte* Motion to for Extension of Time to File Schedules, Statements of Financial Affairs, and Payroll and Sales Tax Reports [Docket No. 53];

- Final Order (A) Authorizing the Maintenance of Bank Accounts and Continued Use of Existing Bank Forms and Checks, (B) the Continued Use of the Existing Cash Management System, and (C) Waiving Certain Investment and Deposit Guidelines [Docket No. 136]; and

- Order (I) Ratifying the Debtors' Appointment of James S. Cassel as Manager *Nunc Pro Tunc* to July 27, 2018, and (II) Approving the Appointment Agreement Related Thereto [Docket No. 156].

### C.    Retention of Debtors' Professionals

During the Chapter 11 Cases, the Bankruptcy Court has authorized the retention of various professionals by the Debtors, including:

- Epiq Corporate Restructuring, LLC, as claims and noticing agent [Docket No. 153];

- Greenberg Traurig, LLP, as bankruptcy counsel [Docket No. 154];

- Ordinary Course Professionals [Docket No. 157] ("**OCP Order**");[3]

- Genovese, Joblove & Battista, P.A. as special conflicts counsel [Docket Nos. 329, 555, and 639]; and

- Perlman, Bajandas, Yevoli & Albright, P.L., as special litigation counsel [Docket No. 389].

The fees and expenses of the professionals retained by the Debtors are entitled to be paid by the Debtors subject to approval by the Bankruptcy Court and in accordance with the *Order Establishing Procedures for Monthly, Interim, and Final Compensation and Reimbursement of Expenses of Professionals Retained in These Chapter 11 Cases and Reimbursement of Expenses of Committee Members Appointed in These Chapter 11 Cases* [Docket No. 158].

In addition, by order dated September 26, 2018, the Bankruptcy Court approved the retention of Development Specialists, Inc. to provide restructuring advisory services, including appointing Bradley D. Sharp as the Chief Restructuring Officer and Joseph J. Luzinski as the Deputy Chief Restructuring Officer [Docket No. 155].

---

[3] Since entry of, and pursuant to, the OCP Order, the Debtors have retained additional ordinary course professionals as set forth in the Notices of Filing of Additional OCP Notice [Docket Nos. 169, 188, 223,239, 343, 371, and 621].

Disclosure Statement

### D.    Appointment of Official Committee of Unsecured Creditors

On September 7, 2018, the U.S. Trustee appointed an Official Committee of Unsecured Creditors [Docket No. 138] (the "**Creditors' Committee**").  The creditors designated to serve on the Creditors' Committee are Christopher W. Blackstone, James A. Lochtefeld, Khosrow Sohraby, Steven Ross Shelton, Charles Carpenter, Geoffrey Lipman, and Donald Stec.

The Bankruptcy Court has authorized the retention of Stichter, Riedel, Blain & Postler, P.A. as counsel to the Creditors' Committee [Docket Nos. 352 and 548]; John T. Young, Jr. of Conway MacKenzie, Inc., as Co-Financial Advisor [Docket No. 236]; and Matthew Dundon of Dundon Advisers LLC, as Co-Financial Advisor [Docket No. 240].

### E.    The Debtors' Post-Petition Operations

Since the commencement of the Chapter 11 Cases, the Independent Manager, CRO, Deputy CRO, and DSI (together, the "**Debtors' Postpetition Management Team**") have made considerable progress in assessing the Debtors' estates, stabilizing the Debtors' operations, and charting out a strategic plan and course of action designed to maximize asset values and minimize costs of administration.

#### 1.    *Management and Employees*

Following the filing of the Voluntary Petitions, the Debtors' Postpetition Management Team developed and then implemented plans to rationalize staffing and reduce headcount to minimize overhead costs, while still maintaining key business operations.  The Debtors' Postpetition Management Team imbedded themselves into management in the areas most important to asset value maximization by providing oversight and management to the collection, legal, accounting and information technology functions.

#### 2.    *MCA Portfolio*

As of the Petition Date, the MCA portfolio had a gross book value of over $287 million, consisting of contributions from approximately 2,000 MCA clients.  At the outset of the Chapter 11 Cases, the Debtors' Postpetition Management Team commenced a static pool analysis to assess the quality of the MCA portfolio and provide independent assessments with respect to the historical and current collectability of the MCA portfolio.  The Debtors' Postpetition Management Team also assessed whether the value of the MCA portfolio would be maximized by selling the portfolio and/or outsourcing the collection of the portfolio.  The MCA portfolio assessment revealed that, among other things, prior to the Petition Date the Debtors failed to comply with internal published policies and procedures to procure, underwrite and book MCA activity.  As a result, numerous MCA accounts were in default and the collection and legal departments were more focused on keeping accounts in a current reporting status in lieu of collecting cash.  The Debtors ultimately decided to (a) cease making further cash advances to prevent further losses, (b) continue in-house servicing of its MCA portfolio, and (c) pare down its existing operations to make them more efficient.

The Debtors' Postpetition Management Team established MCA collections protocols for both in-house collections and settlements and for outside legal collections and settlements. By providing parameters for collection and settlement efforts, these protocols have enabled the Debtors' staff to maximize value of the MCA portfolio efficiently. Since implementing these new controls, the Debtors have collected approximately $79 million postpetition.

In connection with the Debtors' efforts to streamline MCA collections, the Debtors' Postpetition Management Team sent out a request for proposal for a collection firm to be the primary collection firm for the Debtors. After receiving proposals from several qualified law firms and evaluating the law firm candidates' qualifications and fee structures, the Debtors' Postpetition Management Team selected the law firm of Perlman, Bajandas, Yevoli & Albright, P.L. ("**PBYA**"). PBYA was retained on a hybrid contingency fee basis to handle the numerous pending litigation matters relating to the MCA portfolio, as well as assume new matters for the core MCA portfolio. PBYA's retention and compensation structure was approved by the Bankruptcy Court by an order [Docket No. 389] entered on December 14, 2018. PBYA is now responsible for prosecuting many of the Debtors' legal collection matters locally and nationally. Currently, PBYA is responsible for approximately 730 pending collection matters currently or soon to be in litigation, representing an aggregate book value of $70 million in MCAs. The market or actual value of these MCAs is highly uncertain. The Debtors can confidently project that the actual recoveries and net recovery distributable to creditors from these MCAs will be significantly less than the current book value due to a variety of factors explained more fully below.

3.    *Operations*

As of the Petition Date, the Debtors' operations, including accounting, information technology, collections and legal departments, were not sufficiently integrated to allow for the preparation of integrated financial and operational reports. The system of record for investors and MCA customers was a third-party system that was extensively modified for the Debtors' operations, and the financial accounting system utilized by the Debtors was QuickBooks. The collections department utilized the system of record, but large numbers of modifications to the collections modules led to inconsistent reporting on the status of accounts. The Debtors maintained an in-house legal department with several lawyers and paralegals, but did not maintain a master litigation system for the hundreds of cases pending in the court system. In addition, the Debtors' system of recording transactions and reconciling cash out account positions were not current. As a result, the Debtors' Postpetition Management Team has been analyzing and continues to analyze all the cash and banking activities of the Debtors pre-petition.

Immediately after the Chapter 11 Cases were commenced, the Debtors' Postpetition Management Team worked to correct the Debtors' banking processes and start new banking relationships. The Debtors' Postpetition Management Team negotiated reserves and operating protocols for the Debtors' existing banking relationships, and in due course transitioned the Debtors' accounts to new banks during the initial 60-day postpetition period.

- 29 -

4. *Workforce and Cost Reductions*

As of the Petition Date, the Debtors had approximately 100 employees. Once the determination was made to cease funding new MCAs, the Debtors' sales and underwriting departments were discontinued. The Debtors also reduced the number of staff dedicated to investor procurement and maintenance in light of the decision to cease raising new capital from investors. The Debtors' current staffing level is at approximately 20 employees. The Debtors anticipate that a further reduction to approximately 8 employees as of the Plan Effective Date.

The Debtors have also made significant cost saving changes by rationalizing staffing, overhead, information technology needs, and physical plant needs. Staffing was reduced and burdensome contracts were either renegotiated or terminated. The Debtors also successfully reduced their office footprint and renegotiated agreements related to various record keeping functions.

The Debtors' Postpetition Management Team is currently undertaking further business modeling to continue the Debtors' wind down and to scale down operations so that they are in line with the value generated from current MCA collection efforts.

5. *Financial Summary*

The Debtors' current financial position is as follows through May 31, 2019:[4]

| Cash on Hand | | $ 87,000,000 |
|---|---|---|
| | | |
| MCA Collections Postpetition | | $ 79,000,000 |
| | | |
| Portfolio at Petition July 27, 2019 | | $287,589,000 |
| Portfolio at May 31, 2019 In House | $ 41,671,000 | |
| Portfolio at May 31, 2019 In Litigation | $193,557,000 | |
| Portfolio Total at May 31, 2019 | | $235,228,000 |

The values for the portfolio used above are book value, not market or actual value. The market or actual value of the remaining MCA portfolio is highly uncertain; however, the Debtors can confidently project that the actual recoveries and net recovery distributable to creditors from the remaining MCA portfolio will be significantly less than the current book value due to a variety of factors. These factors include, but are not limited to, deficient underwriting, credit approval process and loan documentation. In addition, if litigation is required to collect on a particular MCA, the costs of litigation reduce the net recovery available to creditors.

6. *Claims*

The Debtors' Postpetition Management Team performed a high-level assessment of claims asserted against the Debtors and consulted with the Creditor's Committee financial

---

[4] Other than "Cash on Hand" and "MCA Collections Postpetition", all figures in this chart are based on book value.

Disclosure Statement

advisors regarding the assessment of the current claims pool. A summary of the claims is as follows:

| Claims | Estimate of Range | Filed Total |
|---|---|---|
| Total Value of Claims Filed (Register 06/07/19) | | $707,513,106 |
| Total Number of Claims Filed | | 3,581 |
| Estimated Value of Investor Claims | $275,000,000 - $300,000,000 | |
| Estimated Value of General Unsecured Claims | $25,000,000 to $50,000,000 | |
| Projected Claims Pool | $300,000,000 to $350,000,000 | |

This claims pool projection of $300 to $350 million is only an estimate. This estimate and any projected recoveries in this Disclosure Statement is a preliminary estimate based on the filed Claims. Upon the completion of further analyses and any Claims litigation, the total amount of the Claims pool may differ from the Debtors' estimates, and such difference could be material.

### F.    Other Matters Addressed During the Chapter 11 Cases

In addition to the first day relief sought in the Chapter 11 Cases, the Debtors have sought authority with respect to matters designed to assist in the administration of the Chapter 11 Cases, maximize the value of the Debtors' Estates, and facilitate the wind down of the Debtors' operations. Set forth below is a brief synopsis of certain of the principal motions the Debtors have filed during the pendency of the Chapter 11 Cases and ongoing and resolved disputes concerning the Debtors.

### 1.    *Motions to Extend Exclusive Periods*

On November 21, 2018, the Debtors filed the *Debtors' Motion for the Entry of an Order Extending the Exclusive Periods During Which the Debtors May File and Solicit Acceptances of a Plan* [Docket No. 320] (the "**First Exclusivity Motion**"), seeking an extension of (a) the period within which only the Debtors may file a plan, and (b) the period within which only the Debtors may solicit acceptances of a plan. On December 13, 2018, the Bankruptcy Court entered the *Order Granting Debtors' Motion for the Entry of an Order Extending the Exclusive Periods During Which the Debtors May File and Solicit Acceptances of a Plan* [Docket No. 385], granting the relief sought in the First Exclusivity Motion and extending (a) the period within which only the Debtors may file a plan through and including March 24, 2019, and (b) the period within which only the Debtors may solicit acceptances of a plan through and including May 23, 2019.

- 31 -

On March 22, 2019, the Debtors filed the *Debtors' Second Motion for the Entry of an Order Extending the Exclusive Periods During Which the Debtors May File and Solicit Acceptances of a Plan* [Docket No. 597], seeking an extension of the (a) period within which only the Debtors may file a plan by 31 days from March 24, 2019, through and including April 24, 2019, and (b) the period within which the Debtors may solicit acceptances of a plan by 34 days from May 23, 2019, through and including June 26, 2019.  On April 18, 2019, the Court entered the *Order Granting Second Motion of the Debtors for Entry of an Order Extending the Exclusive Periods During Which the Debtors May File and Solicit Acceptances of a Plan* [Docket No. 641] (the "**Second Exclusivity Order**"), extending (a) the period within which only the Debtors may file a plan by thirty one (31) days from March 24, 2019, through and including April 24, 2019, and (b) the period within which only the Debtors may solicit acceptances of a plan by thirty four (34) days from May 23, 2019, through and including June 26, 2019.

On April 24, 2019, the Debtors filed the *Debtors' Third Motion for the Entry of an Order Extending the Exclusive Periods During Which the Debtors May File and Solicit Acceptances of a Plan* [Docket No. 650] (the "**Third Exclusivity Motion**"), seeking an extension of the period (i) within which only the Debtors may file a plan by 30 days from April 24, 2019, through and including May 24, 2019, and (ii) the time which the Debtors may solicit acceptances of a plan by 30 days from June 26, 2019, through and including July 26, 2019.  On May 8, 2019, the Court entered the *Order Granting Third Motion of the Debtors for Entry of an Order Extending the Exclusive Periods During Which the Debtors May File and Solicit Acceptances of a Plan* [Docket No. 669] (the "**Third Exclusivity Order**"), extending (a) the period within which only the Debtors may file a plan by thirty (30) days from April 24, 2019, through and including May 24, 2019, and (b) the period within which only the Debtors may solicit acceptances of a plan by thirty (30) days from June 26, 2019, through and including July 26, 2019.

On May 24, 2019, the Debtors filed the *Debtors' Fourth Motion for the Entry of an Order Extending the Exclusive Periods During Which the Debtors May File and Solicit Acceptances of a Plan* [Docket No. 691] (the "**Fourth Exclusivity Motion**"), seeking an extension of the period (i) within which only the Debtors may file a plan by 31 days from May 24, 2019, through and including June 24, 2019, and (ii) the time which the Debtors may solicit acceptances of a plan by 31 days from July 26, 2019, through and including August 26, 2019.

2.    *Claims Process*

a.    **Schedules of Assets and Liabilities and Statements of Financial Affairs**

On August 9, 2018, the Debtors filed the *Ex Parte Motion of Debtors-In-Possession for an Order Granting Extension of Time to File Schedules, Statements of Financial Affairs, and Payroll and Sales Tax Reports* [Docket No. 49], requesting an extension of time for the Debtors to file their schedules, statements of financial affairs, and payroll and tax reports through and including August 28, 2018.  On August 10, 2018, the Bankruptcy Court entered the *Order Granting Ex Parte Motion for Extension of Time to File Schedules, Statements of Financial Affairs, and Payroll and Sales Tax Reports* [Docket No. 53], extending the Debtors'

Disclosure Statement

deadline to file their schedules, statements of financial affairs, and payroll and sales tax reports through and including August 28, 2018.

The Debtors timely filed their Schedules of Assets and Liabilities and Statements of Financial Affairs on August 28, 2018 [Docket No. 119] (the "**Schedules and Statements**"). The Debtors amended the Schedules and Statements on October 17, 2018 [Docket No. 205]. Among other things, the Schedules and Statements set forth the Claims of known Creditors against the Debtors as of the Petition Date, based upon the Debtors' books and records. The Court granted the Fourth Exclusivity Motion at a hearing on June 11, 2019, and entry of a written order on the motion is pending.

### b.    Bar Dates

On August 2, 2018, pursuant to the *Notice of Chapter 11 Bankruptcy Case* [Docket No. 31], the deadline for all creditors to file a proof of claim was fixed as December 4, 2018, at 5:00 p.m. (prevailing Eastern time) (the "**Bar Date**"), and the deadline for Governmental Units to file a proof of claim was fixed as January 23, 2019, at 5:00 p.m. (prevailing Eastern time) (the "**Governmental Unit Bar Date**").

On November 16, 2018, Pinnacle Plus Capital, LLC ("**Pinnacle**") filed the *Motion to Enlarge Deadline to File a Proof of Claim* [Docket No. 303], seeking an extension of the time fixed for filing a proof of claim. On February 25, 2019, the Bankruptcy Court granted Pinnacle's Motion in part. Pursuant to the *Order Granting in Part and Denying in Part Motion to Enlarge Deadline to File Proof of Claim* [Docket No. 553], the deadline for any person or entity who entered into a memorandum of indebtedness with the Debtors to file a proof of claim was extended through and including March 7, 2019 (the "**Memorandum of Indebtedness Claims Bar Date**").

### c.    Claims Reconciliation

On March 15, 2019, the *Creditors' Committee filed the Official Committee of Unsecured Creditors' Motion for Entry of an Order (I) Authorizing the Committee to Add Claim Objection Categories to Anticipated Omnibus Claims Objections; (II) Modifying the Requirements of Local Rule 3007-1(c) (Limiting Objections to Claims to Five Claims Per Pleading); and (III) Establishing Uniform Procedures for Claim Objections* [Docket No. 583] (the "**Claims Reconciliation Process Motion**"). By the Claims Reconciliation Process Motion, the Creditors' Committee requested that the Court, among other things, allow the Creditors' Committee to file omnibus  objections to claims additional to the reasons included in Rule 3007(d)(1)-(8) of the Bankruptcy Rules, modify the requirements in Local Rule 3007-1(C) that limits omnibus objections to five claims and allow the Creditors' Committee to file omnibus objections of up to seventy-five (75) claims, and establish uniform procedures to govern the administration of the claims resolution process for any objections to claims so as to minimize duplicative hearings and ensure that all parties receive due process. On April 18, 2019, the Court entered the *Order Granting the Official Committee of Unsecured Creditors' Motion for Entry of an Order (I) Authorizing the Committee to Add Claim Objection Categories to Anticipated Omnibus Claims Objections; (II) Modifying the Requirements of Local Rule 3007-1(c) (Limiting Objections to Claims to Five Claims Per Pleading); and (III) Establishing Uniform Procedures*

*for Claim Objections* [Docket No. 640], granting the relief sought in the Claims Reconciliation Process Motion.

Since the Bankruptcy Court entered the order approving the relief sought in the Claims Reconciliation Process Motion, the Creditors' Committee has filed five omnibus objections, including *The Official Committee of Unsecured Creditors' First Omnibus Objection to Claims (Duplicate Claims)* [Docket No. 655] (the "**First Claim Objection**"), requesting that the Bankruptcy Court disallow certain duplicative claims in their entirety, *The Official Committee of Unsecured Creditors' Second Omnibus Objection to Claims (Misclassified Claims)* [Docket No. 656] (the "**Second Claim Objection**"), requesting that the Bankruptcy Court reclassify certain claims, *The Official Committee of Unsecured Creditors' Third Omnibus Objection to Claims (Duplicate Claims)* [Docket No. 657] (the "**Third Claim Objection**"), requesting that the Bankruptcy Court disallow certain duplicative claims in their entirety, *The Official Committee of Unsecured Creditors' Fourth Omnibus Objection to Claims (Duplicate Claims)* [Docket No. 658] (the "**Fourth Claim Objection**"), requesting that the Bankruptcy Court disallow certain duplicative claims in their entirety, and *The Official Committee of Unsecured Creditors' Fifth Omnibus Objection to Claims (Insufficient Documentation)* [Docket No. 710], requesting that the Bankruptcy Court disallow certain claims on the basis that the claimant has provided insufficient documentation to substantiate its claim. On June 7, 2019, the Bankruptcy Court entered orders sustaining the First Claim Objection, the Second Claim Objection, the Third Claim Objection, and the Fourth Claim Objection [Docket Nos. 713, 714, 715, and 716].

### 3. *Motion to Return Certain Investor Monies*

On November 21, 2018, the Debtors filed the *Debtors' Motion for Authority to Return Certain Investor Monies Received After the Petition Date* [Docket No. 318] (the "**Motion to Return Investor Monies**"), seeking authority to return (i) certain undeposited investor checks in the aggregate amount of $534,000 and (ii) certain wire transfers received by the Debtors after the Petition Date constituting the traceable proceeds of investor wire transfers in the aggregate amount of $141,364.64 (collectively, "**Investor Monies**"). The Debtors determined that returning the Investor Monies was in the best interest of the Debtors' estate, in part because the Debtors determined that the Investor Monies were proceeds of pre-petition conduct under investigation by federal and state regulatory authorities. On December 13, 2018, the Bankruptcy Court entered the *Order Authorizing the Debtors to Return Certain Investor Monies Received After the Petition Date* [Docket No. 387], granting the relief sought in the Motion to Return Investor Monies and authorizing the Debtors to return the Investor Monies to each applicable investor. The Debtors have completed the return of the Investor Monies in accordance with the provisions of the Court's approval order.

### 4. *Assumption of Unexpired Office Lease*

The Debtors determined to reduce their office space to eliminate unnecessary expenses. To accomplish this objective, the Debtors sought to assume a modified lease with its landlord. On February 6, 2019, the Debtors filed the *Motion for Authority to Assume Unexpired Lease of Nonresidential Real Property* [Docket No. 532], seeking to assume that certain office lease, as modified, dated as of September 30, 2014, between the Debtors and Murray Family

- 34 -

Associates.  On February 22, 2019, the Court entered the *Order Authorizing the Debtors to Assume Unexpired Lease of Nonresidential Real Property as Modified* [Docket No. 554], authorizing the Debtors to assume the office lease as modified.  In connection with the assumption of the lease as modified, the Debtors agreed to vacate and return certain office suites (the "**Returned Suites**") to their landlord, as applicable, on or before February 28, 2019 or March 29, 2019.

### 5. *Sale of Office Property*

Following the Debtors' decision to downsize its office footprint, the Debtors sought to maximize the value of their estates by selling office property that it no longer needed and would have to be moved and/or stored prior to the Debtors' deadline to vacate and return the Returned Suites.  On February 19, 2019, the Debtors filed the *Motion for Authority to Sell Certain Office Furniture and Equipment and Dispose of Unsold Items* [Docket No. 545] (the "**Office Property Sale Motion**"), seeking authority to sell certain office furniture, business machines and electronics through an absolute auction to be conducted by Stampler Auctions.  Concurrently with the Office Property Sale Motion, the Debtors filed the *Notice of Abandonment of Certain Office Property* [Docket No. 546], providing notice that any unsold office property would be burdensome and of inconsequential value and benefit to the Debtors' estates and, therefore, abandoned.

On March 14, 2019, the Court entered the *Order Approving Motion to Sell Certain Office Furniture and Equipment and Dispose of Unsold Items* [Docket No. 580], granting the Office Property Sale Motion and authorizing the Debtors to sell the office property through the auction described in the Office Property Sale Motion and dispose of any unsold office property.  The absolute auction was completed in accordance with the Bankruptcy Court's approval orders, which yielded a gross amount of approximately $9,474.00.  Several items were not sold; the Debtors have removed such unsold items from the Returned Suites.

### G. Significant Litigation During the Chapter 11 Cases

### 1. *SEC Action*

On August 23, 2018, the SEC filed a complaint in the United States District Court for the Southern District of Florida (the "**District Court**") for injunctive and other relief (as amended, the "**SEC Complaint**") against Carl Ruderman and 1 Global Capital LLC ("**SEC Defendants**"), as well as 1 West Capital LLC, Bright Financing LLC, BRR Block, Inc., Digi South LLC, Ganador Enterprises, LLC Medial Pay LLC, Pay Now Direct LLC and Ruderman Family Trust (collectively, the "**SEC Relief Defendants**").  *See Securities and Exchange Commission v. 1 Global LLC et al.*, Case No. 18-cv-61991-BB (S.D. Fla.).

#### a. SEC Allegations

The SEC alleges in the SEC Complaint that the SEC Defendants engaged in a four-year long unregistered securities fraud totaling more than $287 million, victimizing thousands of investors nationwide.  The material allegations contained in the SEC Complaint are summarized below.

1GC purportedly used a network of barred brokers, registered and unregistered investment advisers, and other sales agents to offer and sell unregistered securities to investors in no fewer than 25 states. 1GC, through its marketing materials distributed to sales agents and the sales agents themselves, allegedly promised investors a high-return, low-risk investment in which 1GC would use investor money to make MCAs to businesses that could not obtain more traditional financing such as bank loans.

The SEC alleges that 1GC used substantial investor funds for purposes other than the cash advances, including paying operating expenses and purchasing already-distressed, long term credit card debt. More specifically, the SEC Defendants, among other things, allegedly used investor funds to pay approximately $53 million in operating expenses through April 2018, and spent another $50 million of investor money to purchase $60 million of bad credit card debt. In addition, the SEC Defendants purportedly misappropriated at least $35 million of investor money and made numerous other material misrepresentations and omissions to investors, including: (1) deceptively claiming 1GC would only use investor money to fund MCAs; (2) falsely representing the amount of investor money 1GC would take for its own use; (3) sending monthly account statements to investors that falsely represented their portfolio balances, rates of return, and the amount of their cash 1GC had in the bank to fund merchant loans; and (4) falsely representing that 1GC had an independent auditor that had endorsed its business model.

### b.    Appointment of a Receiver

Concurrently with the SEC Complaint, the SEC filed *Plaintiff's Emergency Ex Parte Motion for Appointment of Receiver and Memorandum of Law* ("**Receivership Motion**"), seeking appointment of a receiver over Relief Defendants Ganador Enterprises, LLC ("**Ganador**"); Bright Smile Financing, LLC ("**Bright Smile**"); BRR Block Inc.; Digi South LLC; Media Pay LLC; and Pay Now Direct LLC (the "**Receivership Entities**"). On August 23, 2018, the District Court entered an order granting the Receivership Motion and appointing Jon A. Sale (the "**Receiver**") as receiver over the Relief Defendants. The Receiver is charged with investigating the manner in which the affairs of the Receivership Entities were conducted and instituting actions and proceedings for the benefit of investors and other creditors.

### c.    SEC Asset Freeze

On August 23, 2018, the SEC filed *Plaintiff Securities and Exchange Commission's Emergency Ex Parte Motion and Memorandum of Law for Asset Freeze and Other Relief* [Case No. 18-61991, Docket No. 7] (the "**SEC Motion for Asset Freeze**"), requesting that the District Court order an asset freeze against Carl Ruderman and the SEC Relief Defendants as an equitable remedy to preserve the status quo and preserve funds for disgorgement to compensate defrauded investors. The SEC did not request an asset freeze over the Debtors because the Debtors had previously filed the Voluntary Petitions commencing the Chapter 11 Cases. On August 23, 2018, the District Court entered an order granting the SEC Motion for Asset Freeze and freezing Carl Ruderman's assets. Pursuant to the District Court's order, Carl Ruderman was immediately restrained from, directly or indirectly, transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of, or withdrawing any assets or property, including but not limited to cash, free credit balances, fully paid for securities, personal property, real   property, and/or property pledged or

- 36 -

hypothecated as collateral for loans, or charging upon or drawing from any lines of credit, owned by, controlled by, or in his possession, whether jointly or singly, and wherever located.

### d. SEC Consent and Judgment

On November 26, 2018, the Debtors' CRO executed *Consent of Defendant 1 Global Capital LLC and Relief Defendant 1 West Capital LLC to Judgment* (the "**Consent**"), to resolve and settle all issues of liability against the Debtors in connection with the claims asserted in the SEC Complaint. Pursuant to the Consent, without admitting or denying the allegations set forth in the SEC Complaint, the Debtors agreed to the entry of judgment (the "**Judgment**"), which, among other things, permanently restrains and enjoins 1GC from violating Sections 5(a) and 5(c) and 17(a) of the Securities Act of 1933 (the "**Securities Act**") and Sections 10(b) and 15(a)(1) and Rule 10b-5 of the Securities Exchange Act of 1934 (the "**Exchange Act**"). The Consent and Judgment further provides that, among other things, (i) upon motion of the SEC, the District Court will determine whether it is appropriate to order disgorgement of ill-gotten gains and prejudgment interest against the Debtors or a civil penalty against Debtor 1GC; and (ii) in connection with any hearing regarding disgorgement or a civil penalty, (a) the Debtors will be precluded from (1) arguing that they did not violate the federal securities laws as alleged in the SEC Complaint and (2) challenging the validity of the Consent and Judgment, (b) solely for purposes of any such motion, the allegations of the SEC Complaint will be accepted as and deemed true by the District Court, and (c) the District Court may determine the issues raised in any such motion on the basis of affidavits, declarations, excerpts of sworn deposition or testimony and documentary evidence without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

On November 27, 2018, the SEC filed the *Plaintiff's Unopposed Motion for Judgment Against Defendant 1 Global Capital LLC and Relief Defendant 1 West Capital LLC and Notice of Filing Consent to Judgment* ("**Motion for Judgment**") [Case No. 18-61991, Docket No. 116], seeking approval of the Consent and Judgment. On November 28, 2018, the District Court entered an order granting the Motion for Judgment [Case No. 18-61991, Docket No. 117].

On December 7, 2018, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing the Debtors' Entry into a Consent and Judgment with the Securities and Exchange Commission* [Docket No. 359], seeking approval of the Debtors' entry into the Consent and consent to the entry of the Judgment. On January 3, 2019, the Bankruptcy Court entered the *Order Granting Debtors' Motion for Entry of an Order Authorizing and Approving the Debtors' Entry into a Consent and Judgment with the Securities and Exchange Commission* [Docket No. 427], authorizing and approving the Debtors' entry into the Consent and consent to the entry of the Judgment.

### e. The Receiver's Settlement Agreement Related to Receivership Entity Ganador Enterprises, LLC

On December 10, 2018, the Receiver entered into the *Settlement and Release Agreement* (the "**Ganador Settlement Agreement**") among National Techmark Inc., a Nevada corporation ("**Techmark**"), Unified Analytics, LLC, a Nevada limited liability company

- 37 -

("**Unified**"), and Ganador.  The Ganador Settlement Agreement resolves certain claims and disputes related to certain alleged actions of Techmark and Unified.  More specifically, the Receiver alleged that, among other things, Techmark and Unified owe Ganador certain monies in the approximate amount of $6 million that may have been improperly misappropriated or transferred, and which are directly or indirectly traceable, from investors in the Debtors/and or Ganador.

Pursuant to the Ganador Settlement Agreement, the parties agreed to the following salient terms: (i) Techmark and Unified will make payments to the Receiver in the aggregate amount of $4 million (the "**Settlement Amount**"); (ii) $750,000 of the Settlement Amount paid by Techmark and Unified will be "up front," with $500,000 escrowed within 24 hours of the execution of the Settlement Agreement, to be released from escrow, along with the payment of an additional $250,000, all upon the orders of the District Court and the Bankruptcy Court approving the Settlement Agreement (the "**Approval Orders**") becoming final orders; (iii) upon the first day of the month after the date the Approval Orders become final (the "**Ganador Settlement Effective Date**"), Techmark and Unified shall make 12 monthly interest payments to the Receiver on the balance of the Settlement Amount of $3,250,000 (plus a stub period for the time between the Ganador Settlement Effective Date and the first day of  the first month thereafter) at 7.5% interest ($20,312.50); (iv) 365 days after the second interest payment, Techmark and Unified shall pay the Receiver the balance of the Settlement Amount of $3,250,000; (v) the Receiver will be provided with a blanket security interest in the assets of Techmark and Unified to secure their payment of the Settlement Amount; and (vi) the parties are to exchange releases, but releases of Techmark and Unified are not to be released from escrow until the Settlement Amount is paid in full.

On December 12, 2018, the Receiver filed in the District Court the *Receiver's Motion for Approval of Settlement Agreement Related to Ganador Enterprises, LLC* [Case No. 18-61991, Docket No. 120], seeking approval of the Ganador Settlement Agreement.  On December 27, 2018, the District Court entered the *Order Granting Receiver's Motion for Approval of Settlement Agreement Related to Ganador Enterprises, LLC* [Case No. 18-61991, Docket No. 124], approving the Ganador Settlement Agreement.

Similarly, on December 20, 2018, the Debtors filed in the Bankruptcy Court the *Debtors' for Entry of an Order Approving (I) Settlement and Release Agreement and (II) the Debtors' Release in Favor of National Techmark Inc. and Unified Analytics, LLC Granted in Connection Therewith* [Docket No. 405], seeking approval of the Ganador Settlement Agreement.  On January 17, 2019, the Bankruptcy Court entered the *Order Granting Debtors' Motion for Approval of (I) Settlement and Release Agreement and (II) Debtors' Release in Favor of National Techmark Inc. and Unified Analytics, LLC* [Docket No. 481], approving the Ganador Settlement Agreement and authorizing the grant of release by the Debtors in favor of Techmark and Unified.

### f.   The Receiver's Purchase and Sale Agreement Related to Receivership Entity Bright Smile Financing, LLC

The Receiver determined to sell certain of Bright Smile's assets to Wellness Care Credit, LLC (the "**Asset Buyer**") and Bright Smile Collections, LLC (the "**Account Buyer**," and

- 38 -

together with the Asset Buyer, the "**Buyers**"), resulting in an expected recovery for the Receiver's estate in the aggregate amount of approximately $3 million. On January 17, 2019, the Receiver and the Buyers agreed to the terms set forth in that certain Purchase and Sale Agreement (the "**Bright Smile PSA**"). Pursuant to the Bright Smile PSA, (i) the Buyers agreed to pay the Receiver a total purchase price of $3 million, to be paid as follows: (x) $150,000 to be released at closing for non-loan assets, (y) $900,000 to be released at closing for loan portfolio assets, and (z) the remainder of the $3 million to be released monthly over a 14-month period ("**Bright Smile Installment Payments**"); (ii) Account Buyer agreed to grant to the Receiver a first priority perfected security interest in the loan portfolio, deposit accounts, documents of title, and other property to secure the Bright Smile Installment Payments; (iii) Bright Smile's assets are to be sold "as is" without any representations, warranties, or covenants made by the Receiver; and (iv) the Receiver and the Buyers agreed to grant mutual releases upon closing. In addition, the Bright Smile PSA contemplates that 1GC will release certain claims against the Buyers, subject to the Bankruptcy Court's approval. If a release from 1GC is not procured within 90 days of January 17, 2019, then the purchase price will be reduced by $250,000. 1GC elected not to provide the requested release.

On January 21, 2019, the Receiver filed the *Receiver's Motion to Approve Bright Smile Asset Sale and Purchase Agreement* [Case No. 18-61991, Docket No. 132] (the "**Bright Smile Approval Motion**"), seeking approval of the Bright Smile PSA. On February 20, 2019, the District Court entered an order granting the Bright Smile Approval Motion and approving the Bright Smile PSA [Case No. 18-61991, Docket No. 162]. On February 22, 2019, the Receiver and the Buyers closed the transaction contemplated under the Bright Smile PSA [Case No. 18-61991, Docket No. 166]. On February 26, 2019, $996,038.97 of the $3 million purchase price was transferred to Bright Smile's receivership bank account. The remaining approximately $2 million (or $1,750,000 if 1GC does not deliver a release) will be paid monthly for the next 14 months, in accordance with the terms of the Bright Smile PSA approved by the District Court.

## 2.    *Foster Putative Class Action*

On September 7, 2018, Sarah Foster, on behalf of herself and others (the "**Foster Plaintiffs**"), commenced an action by filing the *Class Action Complaint and Demand for Jury Trial* in the Circuit Court for the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, styled as *Sarah Foster, individually and on behalf of all others similarly situated v. Carl Ruderman*, Case No. 2018-030906-CA-01 (the "**Foster Putative Class Action**"). The Foster Putative Class Action has not been certified as a class action. On October 26, 2018, the Foster Putative Class Action was removed to the Bankruptcy Court. Motions for remand or for dismissal have been filed by various parties to the Foster Putative Class Action. By agreements, hearing of these motions have been continued pending the outcome of the settlement discussions described below.

The Foster Putative Class Action asserts claims against Carl Ruderman, Dale Ledbetter and Kopelowitz Ostrow P.A. (the "**Foster Defendants**") for, among other things, (a) violations of federal securities law as a result of the alleged sale of unregistered securities pursuant to 15 U.S.C. §§ 77e(a), 77e(c), and 77l(a)(1); and (b) violations of Fla. Stat. §§ 517.07 and 517.211 as a result of the alleged unlawful offer and sale of unregistered securities issued by 1GC. The Foster Plaintiffs seek the return of all monies paid in connection with the alleged

unlawful behavior of the Foster Defendants.  The Debtors are not parties to the Foster Putative Class Action.

Since the commencement of the Foster Putative Class Action, the Foster Plaintiffs have actively pursued recovery against certain director and officer liability, malpractice and other insurance policies that cover the Foster Defendants.  Likewise, the Debtors believe they hold and outside of court have asserted claims against the Foster Defendants.  To preserve value under the insurance policies, the Debtors engaged in settlement discussions and organized a global mediation.  Thus, the Debtors have been pursuing recoveries against their former directors and officers through mediation, and reserve all rights to commence legal actions or take other steps.

On May 23, 2019, American Alternative Insurance Corporation ("**AAIC**") filed the *Complaint for Declaratory Judgment* [Case No. 19-61303, Docket No. 1] (the "**Declaratory Relief Action**") against the Debtors and several others, seeking declaratory relief with respect to claims asserted by the Debtors against AAIC's insureds, Kopelowitz Ostrow, P.A., Dale Ledbetter, and Jan Atlas (collectively, the "**Insureds**").  AAIC specifically seeks (a) a declaration that no coverage exists for the claims asserted against Insureds, (b) a declaration that AAIC has no duty to defend or indemnify the Insureds with respect to the claims asserted by the Debtors, and (c) any other relief that the District Court deems proper.  On June 11, 2019, the Debtors sent a letter to AAIC demanding that AAIC voluntarily dismiss the Declaratory Relief Action because the relief sought by the Declaratory Relief Action constitutes a clear violation of the automatic stay imposed by the Bankruptcy Code.

### 3.    *Disputes with Travis Portfolio, LLC and Other Related Entities*

On March 22, 2019, the Debtors filed a 28-count adversary proceeding against Travis Portfolio, LLC, Oliphant Financial, LLC, and Collins Asset Group, LLC (collectively, the "**Travis Defendants**"), styled *1 Global Capital LLC v. Travis Portfolio LLC et al.*, Adv. Proc. No. 19-01072-(RBR).  The Debtors assert that the Travis Defendants breached several merchant agreements by failing to make payments when due and refusing to provide documentation as required by the merchant agreements.  As explained in the Travis complaint, because the Travis Defendants have failed to take the necessary steps to pay the Debtors the funds they are owed, which now total in excess of $78 million, the Debtors seek, among other things, authority to foreclose on certain security interests and recovery of damages, together with interest, costs, and such other relief.

### 4.    *Litigation with Momentum*

On December 14, 2018, the Debtors filed a 40-count adversary proceeding complaint against Momentum Auto Group, LLC and Momentum Automotive Management, LLC ("**Momentum**") and certain affiliates of Momentum, a guarantor, and certain subordinated cash advance providers, styled *1 Global Capital LLC v. Momentum Auto Group et al.,* Adv. Proc. No. 18-01495-(RBR) (the "**Momentum Litigation Complaint**").  The material allegations of the Momentum Litigation Complaint are summarized below.

- 40 -

As set forth in the Momentum Litigation Complaint, Momentum owns several automotive dealerships in the cities of Fairfield and Vallejo in Solano County, California.  Prior to the Petition Date, Momentum required additional financing beyond what was provided by its traditional lenders, and approached various merchant cash advance providers to secure the additional financing.  In connection with Momentum's requests for additional financing and prior to the Petition Date, 1WC transferred approximately $34 million to Momentum pursuant to ten merchant agreements.  Momentum was unable to perform under the merchant agreements and, as a result, remains in breach of its payment and other obligations to 1WC under the merchant agreements.  In November 2018, Momentum closed its automotive dealerships.  As a result of Momentum's various breaches of payment and other obligations under the merchant agreements, the Debtors filed the Momentum Litigation Complaint seeking, among other things, authority to foreclose on certain security interests, a declaratory judgment, and recovery of damages, together with interest, costs, and such other relief.  In addition, the Debtors have asserted various claims against the personal guarantor of the Momentum debt, Rahim Majid Hassanally, and certain subordinated cash advance providers, including Radium2 Capital, Inc., Capital Stack, LLC, Platinum Rapid Funding Group, Ltd., and Global Merchant Cash, Inc. d/b/a Wall Street Funding.

On December 6, 2018, the Superior Court of the State of California for the County of Solano entered an order (the "**Receivership Order**") appointing J. Michael Issa as Receiver of certain Momentum entities (the "**Momentum Receiver**").  Pursuant to the Receivership Order, the Momentum Receiver took possession and control of certain Momentum car dealerships.  On April 17, 2019, the Momentum Receiver filed a motion requesting approval for the sale of Momentum Toyota's and Momentum Nissan's assets (the "**Proposed Sale**").  The Debtors assert that they have a valid security interest in the assets to be sold pursuant to the Proposed Sale and accordingly have an interest in the proposed distribution of the proceeds of the Proposed Sale, subject to any valid liens that are senior in priority.  The Debtors have filed a motion to intervene in the receivership to preserve the Debtors' rights to any distributions or other proceeds from the Momentum Receiver's estate to which the Debtors may be entitled.

On March 15, 2019, 1WC filed *Plaintiff 1 West Capital LLC, Notice of Voluntary Dismissal Without Prejudice as Defendant RMH III, Inc. Only* [Adv. Proc. No. 18-01495, Docket No. 40], voluntarily dismissing, without prejudice, RMH III, Inc. from the Momentum Litigation Complaint, including Count XXIX, a claim by 1WC against RMH III, Inc. for foreclosure of a security interest.  The voluntary dismissal of this adversary proceeding against RMH III, Inc. in no way affects the remaining defendants or the remaining causes of action in the Momentum Litigation Complaint.

## H.     Resolution of Various Disputes

### 1.     *Resolution of Dispute with the Colorado Division of Securities*

Prior to the Petition Date, the Colorado Division of Securities (the "**CDS**") opened an investigation (the "**Investigation**") into certain activities of the Debtors in the State of Colorado.  As a result of the Investigation, the CDS asserted that, between September 2017 and July 26, 2018, among other things, (i) 1GC, through the use of individual agents, marketed and sold interests in loans used to fund cash advances to merchants; (ii) 1GC was not licensed with

the CDS as a broker-dealer or investment adviser at the time of such marketing and sales of the loan interests; and (iii) at the time of such marketing and sales of the loan interests, the loan interests were not registered with the CDS or exempt from registration. The CDS also commenced an administrative proceeding before the Securities Commissioner for the State of Colorado, Case No. 201-CDS-025 (the "**Administrative Proceeding**").

To resolve these issues and avoid prosecution and potential liability in connection with the allegations arising from the Investigation and the Administrative Proceeding, on January 3, 2019, the Debtors' CRO executed a stipulation (the "**CDS Stipulation**") with the CDS. Pursuant to the CDS Stipulation, without admitting or denying the CDS's allegations, 1GC agreed to the entry of a Consent Cease and Desist Order (the "**CDS Consent Order**") in the Administrative Proceeding, which, among other things, mandates that 1GC permanently cease and desist from engaging in conduct in violation of any provision of the Colorado Securities Act, §§ 11-51-101 through 803, C.R.S., including, but not limited to, the marketing, selling, renewing, rolling-over or otherwise conveying interests in the fractional shares of loans used to fund cash advances or any other unregistered security in Colorado.

On January 25, 2019, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing and Approving (I) the Debtors' Entry into a Stipulation with the Colorado Division of Securities for the Entry of a Consent Order and (II) the Entry of a Consent Order* [Docket No. 500], seeking approval of the CDS Stipulation and the entry of the CDS Consent Order. On February 21, 2019, the Bankruptcy Court entered the *Order Granting Debtors' Motion for Entry of an Order Authorizing and Approving (I) the Debtors' Entry into a Stipulation with the Colorado Division of Securities for the Entry of a Consent Order and (II) the Entry of a Consent Order* [Docket No. 549], authorizing and approving (a) the Debtors' entry into the CDS Stipulation and (b) the entry of the CDS Consent Order in the Administrative Proceeding.

### 2. *Resolution of Cease and Desist Order Issued by the Corporations, Securities & Commercial Licensing Bureau of the State of Michigan Department of Licensing and Regulatory Affairs*

The Corporations, Securities & Commercial Licensing Bureau of the State of Michigan Department of Licensing and Regulatory Affairs (the "**Bureau**"), pursuant to the Michigan Uniform Securities Act (2002), 2008 PA 551, as amended, MCL § 451.2101 *et seq.* (the "**Michigan Securities Act**"), conducted an investigation (the "**Investigation**") into certain activities of 1GC in the State of Michigan. As a result of the Investigation, the Director of the Bureau, as the administrator of the Michigan Securities Act (the "**Administrator**"), issued and entered the *Notice and Order to Cease and Desist* ("**C&D Order**") against 1GC on September 25, 2018. The Administrator alleges that, among other things, 1GC (i) offered or sold securities in Michigan which were not federally covered, exempt from registration, or registered, in violation of section 301 of the Michigan Securities Act; and (ii) engaged in an offering of securities, and in connection with that offering of securities, employed or associated with an unregistered agent, in violation of section 402(4) of the Michigan Securities Act. Based on 1GC's alleged violations of the Michigan Securities Act, the Administrator ordered 1GC to immediately cease and desist from offering or selling unregistered securities and from employing or associating with any unregistered agents.

- 42 -

To resolve the allegations contained in the C&D Order and avoid prosecution and potential liability in connection with the allegations arising from the Investigation, on April 23, 2019, Bradley D. Sharp, solely in his capacity as the Debtors' Chief Restructuring Officer, executed the Administrative Consent Agreement (the "**Administrative Consent Agreement**"), pursuant to which, without admitting or denying the allegations contained in the C&D Order (except as to the jurisdiction of the Administrator), 1GC, subject to the approval of the Bankruptcy Court, agreed to the entry of a Consent Order (the "**Consent Order**"). The Consent Order, among other things, incorporates the terms of the Administrative Consent Agreement and mandates that 1GC permanently cease and desist offering or selling any securities in Michigan that are not registered or exempt under the Michigan Securities Act, permanently cease and desist employing or associating with unregistered sales agents, and otherwise comply with the Michigan Securities Act and all rules and orders promulgated thereunder.

### 3.    *Resolution of 1st Global Inc.'s Trademark Action*

Prior to the Petition Date, 1st Global, Inc. (the "**Trademark Plaintiff**") commenced an action against 1GC in the United States District Court of the Northern District of Texas, styled as *1st Global, Inc. v. 1st Global Capital, LLC*, Case No. 3:18-cv-1768 (N.D. Tex.) (the "**Trademark Action**"). The Trademark Plaintiff asserted claims for (1) trademark infringement and (2) false designation of origin under the Federal Lanham Act, as well as (3) common law trademark infringement and (4) injury to business reputation under the Texas Business Code. The Trademark Plaintiff also sought temporary and permanent injunctions prohibiting the Debtors' use of the 1st Global mark, as well as damages in an unspecified amount, consisting of profits derived from the alleged infringement, treble damages, attorney's fees and costs.

On January 8, 2019, the Trademark Plaintiff filed *1st Global Inc's Motion for Relief from Stay* [Docket No. 457], seeking relief from the automatic stay to proceed with the Trademark Action. On January 25, 2019, the Debtors and the Trademark Plaintiff executed that certain Settlement and Release Agreement ("**Trademark Settlement Agreement**"), resolving the disputes set forth in the Trademark Action. The Trademark Settlement Agreement provides that the Debtors will, among other things, cease use of the 1st Global Capital and 1st Global Capital Financial Services names, undergo a complete re-branding, and provide notice on its website and through other means that it is in no way affiliated with 1st Global, Inc.

On January 28, 2019, the Debtors submitted the *Debtors' Notice of Filing of Settlement Agreement and Agreed Order on 1st Global, Inc.'s Motion for Relief from Stay* [Docket No. 508], and following a hearing, the Bankruptcy Court entered the *Order Granting 1st Global Inc.'s Motion for Relief from Stay Under Bankruptcy Rule 4001(D)(4)* [Docket No. 525], approving the Trademark Settlement Agreement. Pursuant to the Trademark Settlement Agreement, the Debtors (a) assigned, granted, and transferred to 1st Global, Inc. all right, title, and interest in the 1stglobalcapital.com and 1stGC.com urls; (b) registered the fictitious names "1 GC Collections" and "1 West Collections" with the Florida Department of State; and (c) modified the case captions in each legal proceeding to which they are a party, including the Chapter 11 Cases and all pending and future legal proceedings so as to include d/b/a to the applicable fictitious name as described in an explanatory footnote referencing the registration of the fictitious name. Finally, the Debtors intend to effectuate formal changes to their names from

- 43 -

1 Global Capital LLC and 1 West Capital LLC to 1 GC Collections and 1 West Collections, respectively. Such name changes will be finalized and become effective on the later of July 30, 2019, or the effective date of the Plan.

    **I.**    **Settlements Effectuated by the Plan**

        The Plan provides for the implementation, and request for approval, of a compromise and settlement of certain Investor Principal Claims. On the Effective Date, each Holder that is not a Prepetition Party or Disputing Claimant of an Investor Principal Claim shall be deemed to compromise and settle such Holder's Claim as set forth in such Holder's Ballot, and in full and final satisfaction, settlement and compromise of, and only of, such Investor Principal Claim, such Claim shall be an Allowed Investor Principal Claim as set forth in the Ballot.

**VI.**    **OVERVIEW OF THE PLAN**

        THIS SECTION AND SECTION VII PROVIDE A SUMMARY OF THE STRUCTURE AND IMPLEMENTATION OF THE PLAN AND THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN (WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT) AND THE EXHIBITS ATTACHED TO THE PLAN.

        THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN WILL CONTROL THE TREATMENT OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS, THE LIQUIDATING TRUST, AND OTHER PARTIES IN INTEREST. IN THE EVENT OF ANY CONFLICT BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN OR ANY OTHER OPERATIVE DOCUMENT, THE TERMS OF THE PLAN AND/OR SUCH OTHER OPERATIVE DOCUMENT WILL CONTROL.

    **A.**    **Proposed Timeline of Events Related to the Plan**

        The following is the anticipated schedule for the Plan.[5]

| Event | Date / Deadline |
|---|---|
| Plan and Disclosure Statement Filed | June 17, 2019 |
| Disclosure Statement Objection Deadline | July 17, 2019, at 4:30 p.m. (prevailing Eastern Time) *[Seven (7) days before Disclosure Statement Hearing]* |

---

[5] The dates contained in this section are anticipated dates and are subject to the Court's schedule and availability.

Disclosure Statement

| Event | Date / Deadline |
|---|---|
| Voting Record Date | July 22, 2019<br>[*Two (2) Business Days before the first date set for the Disclosure Statement Hearing*] |
| Disclosure Statement Hearing | July 24, 2019, at 1:30 p.m. (prevailing Eastern time)<br>[*At least thirty (30) days after service of the Disclosure Statement Notice*] |
| Entry of Disclosure Statement Order | Subject to Court action following the Disclosure Statement Hearing |
| Solicitation Commencement Date | Date of entry of the Disclosure Statement Order, plus three (3) Business Days |
| Claim Objection Deadline (for voting purposes) | Thirty-five (35) days before the Confirmation Hearing, at 4:30 p.m. (prevailing Eastern Time) |
| Plan Supplement Deadline | Twenty-eight (28) days before the Confirmation Hearing, at 4:30 p.m. (prevailing Eastern Time) |
| Claims Estimation Motion Deadline | Twenty-one (21) days before the Confirmation Hearing, at 4:30 p.m. (prevailing Eastern Time) |
| Voting Deadline | Fourteen (14) days before the Confirmation Hearing, at 4:30 p.m. (prevailing Eastern Time) |
| Plan Objection Deadline | Fourteen (14) days before the Confirmation Hearing, at 4:30 p.m. (prevailing Eastern Time) |
| Deadline for Filing (i) Confirmation Brief and Supporting Evidence; (ii) Responses to Plan Objections; and (iii) Voting Tabulations Affidavit | Three (3) Business Days before the Confirmation Hearing, at 4:30 p.m. (prevailing Eastern Time) |
| Confirmation Hearing | At least forty (40) days after service of the Disclosure Statement Order |

## VII.    DETAILED SUMMARY OF THE PLAN OF LIQUIDATION

### A.    Overall Structure of the Plan

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code.  Under chapter 11, a debtor is authorized to reorganize its business for the benefit of its creditors and interest holders.  Upon the filing of a petition for relief under chapter 11, Section 362 of the Bankruptcy Code provides for an automatic stay of substantially all acts and proceedings against the debtor and its property, including all attempts to collect claims or enforce liens that arose prior to the commencement of a chapter 11 case.

The consummation of a plan is the principal objective of a chapter 11 case.  A plan of reorganization or liquidation sets forth the means for satisfying claims against and interests in a debtor.  Confirmation of a plan of liquidation by the Bankruptcy Court makes the plan binding upon the debtor, any issuer of securities under the plan, any person acquiring property under the plan, and any creditor of, or equity security holder in, the debtor, whether or not such creditor or equity security holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan.  Subject to certain limited exceptions, and other than as provided in the plan itself or the confirmation order, the confirmation order discharges the debtor from any debt that arose prior to the date of confirmation of the plan and substitutes for such debt the obligations specified under the confirmed plan, and terminates all rights and interests of equity security holders.

The terms of the Plan are based upon, among other things, the Debtors' assessment of their ability to achieve the goals of their business plan, make the Distributions contemplated under the Plan, pay their continuing obligations in the ordinary course of their respective businesses and negotiations with the Creditors' Committee.  Under the Plan, Claims against and Equity Interests in the Debtors are divided into Classes according to their relative seniority and other criteria.

If the Plan is confirmed by the Bankruptcy Court and consummated, the Debtors or the Liquidating Trust will distribute Cash and other property in respect of certain Classes of Claims as provided in the Plan.  The Classes of Claims against and Equity Interests in the Debtors created under the Plan, the treatment of those Classes under the Plan, and the other property to be distributed under the Plan, are described below.

### B.    Classification and Treatment of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan of liquidation must classify the claims and interests of a debtor's creditors and equity interest holders.  In accordance with Section 1122 of the Bankruptcy Code, the Plan divides Claims against and Equity Interests in the Debtors into Classes and sets forth the treatment for each Class (other than certain Unclassified Claims, such as Administrative Claims and Priority Tax Claims, which, pursuant to Section 1123(a)(1), do not need to be classified).  The Debtors also are required, under Section 1122 of the Bankruptcy Code, to classify Claims against and Equity Interests in the Debtors into Classes that contain Claims and Equity Interests that are substantially similar to the other Claims and Equity Interests in such Class.

- 46 -

The Plan Proponents believe that the Plan has classified all Claims and Equity Interests in compliance with the provisions of Section 1122 of the Bankruptcy Code and applicable case law, but it is possible that a Holder of a Claim or Equity Interest may challenge the Debtors' classification of Claims and Equity Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed.  In that event, the Debtors intend, to the extent permitted by the Bankruptcy Code, the Plan, and the Bankruptcy Court, to make such reasonable modifications to the classifications under the Plan to permit Confirmation and to use the Plan acceptances received for purposes of obtaining the approval of the reconstituted Class or Classes of which each accepting Holder ultimately is deemed to be a member.  Any such reclassification could adversely affect the Class in which such Holder initially was a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan.

The amount of any Impaired Claim or Equity Interest that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims or Equity Interests may also vary from any estimates contained in the Plan with respect to the aggregate Claims in any Impaired Class.  Thus, the value of the property that ultimately will be received by a particular Holder of an Allowed Claim under the Plan may be adversely (or favorably) affected by the aggregate amount of Claims ultimately Allowed in the applicable Class.

The classification of Claims and Equity Interests and the nature of Distributions to members of each Class are summarized below.  The Plan Proponents believe that the consideration, if any, provided under the Plan to Holders of Claims and Equity Interests reflects an appropriate resolution of their Claims and Equity Interests, taking into account the differing nature and priority (including applicable contractual and statutory subordination) of such Claims and Equity Interests and the fair value of the Liquidating Trust Assets.  The Plan Proponents may seek Confirmation of the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code, if necessary.  Specifically, Section 1129(b) of the Bankruptcy Code permits Confirmation of the Plan in certain circumstances even if the Plan has not been accepted by all Impaired Classes of Claims and Equity Interests.  *See* Section X(E) below.  Although the Plan Proponents believe that the Plan can be confirmed under Section 1129(b), there can be no assurance that the Bankruptcy Court will find that the requirements to do so have been satisfied.

1.      *Classification*

Claims against the Debtors, other than Administrative Claims, Professional Fee Claims, Priority Tax Claims and U.S. Trustee Fee Claims are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan, as follows:

| **Class** | **Designation** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Other Priority Claims | Unimpaired | No (deemed to accept) |

| 4A | Investor Principal Claims | Impaired | Yes |
| 4B | General Unsecured Claims | Impaired | Yes |
| 5 | Investor Other Claims | Impaired | No (deemed to reject) |
| 6 | Intercompany Claims | Impaired | No (deemed to reject) |
| 7 | Subordinated Claims | Impaired | No (deemed to reject) |
| 8 | Section 510(b) Claims | Impaired | No (deemed to reject) |
| 9 | Equity Interests in the Debtors | Impaired | No (deemed to reject) |

## 2. *Treatment of Unclassified Claims Under the Plan*

### a. **Administrative Claims**

Except for Professional Fee Claims, and except to the extent that any Holder of an Allowed Administrative Claim has received payment prior to the Effective Date, agrees with the Liquidating Trustee to different treatment or as otherwise provided for in the Plan, each Holder of an Allowed Administrative Claim shall receive payment in full, in Cash, on the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Administrative Claim becomes an Allowed Claim, or (iii) the date on which such payment is due in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim.

### b. **Professional Fee Claims**

Notwithstanding any other provision of the Plan concerning Administrative Claims, any Professional seeking an award by the Bankruptcy Court of an Allowed Professional Fee Claim incurred from the Petition Date through and including the Effective Date (i) shall, no later than twenty-one (21) days before the Confirmation Hearing, File a final application for allowance of compensation for services rendered and reimbursement of expenses actually incurred plus an estimate of additional compensation and expenses to be incurred through and including the Confirmation Hearing and, no later than the date of the Confirmation Hearing, shall file a supplement support such estimates; and (ii) shall receive, as soon as reasonably practicable after such claim is Allowed, on account of such Professional Fee Claim, Cash in an amount equal to the unpaid amount of such Allowed Professional Fee Claim in accordance with the Order relating to or allowing any such Professional Fee Claim.

### c. **Priority Tax Claims**

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date or unless otherwise agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim:  (a) Cash equal to the amount of such Allowed Priority Tax Claim; or (b) as may be agreed between the Holder of such Allowed Priority Tax Claim and the Debtors or the Liquidating Trustee, as applicable, except to the extent that such Allowed Priority Claim is already liquidated pursuant to a Final Order of the Bankruptcy Court.

### d.     U.S. Trustee Fee Claims

The Debtors or the Liquidating Trustee, as applicable, shall pay all U.S. Trustee Fee Claims for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

### e.     Substantial Contribution Claims

No Substantial Contribution Claim shall be Allowed, and any holder of a Substantial Contribution Claim shall be entitled to no distribution under the Plan on account of any Substantial Contribution Claim.

### 3.     *Treatment of Classified Claims and Equity Interests Under the Plan*

### a.     Secured Tax Claims (collectively, "Class 1 Claims")

Classification:    Class 1 Claims consist of all Secured Tax Claims against the Debtors.

Treatment:  Each Holder of an Allowed Class 1 Claim shall receive, on account of such Claim, Cash in the amount of such Allowed Secured Tax Claim without interest or premium on or as soon as reasonably practicable following the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Secured Tax Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Secured Tax Claim and the Debtors or the Liquidating Trustee.

Voting:  Class 1 Claims are Unimpaired by the Plan.  Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

### b.     Other Secured Claims (collectively, "Class 2 Claims")

Classification:    Class 2 Claims consist of all Other Secured Claims against the Debtors.

Treatment:  Each Holder of an Allowed Class 2 Claim shall receive, on account of such Claim, at the election of the Debtors or the Liquidating Trustee, as the case may be, (i) return of the collateral securing the Other Secured Claim in full satisfaction of such claim, or (ii) Cash in the amount of such Allowed Other Secured Claim without interest or premium on or as soon as reasonably practicable following the later of: (a) the Effective Date if due on or before that date, (b) if such Other Secured Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Secured Claim becomes an Allowed Claim, or (c) such other date as may be agreed upon between the Holder of such Other Secured Claim and the Debtors or the Liquidating Trustee.  Although the treatment of each Allowed Class 2 Claim is an obligation of the Liquidating Trust to the extent not satisfied by the Debtors, no Holder of an Allowed Class 2 Claim shall receive issuance of a Liquidating Trust Interest or be a Liquidating Trust Beneficiary.

Voting: Class 2 Claims are Unimpaired by the Plan. Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

### c.    Other Priority Claims (collectively, "Class 3 Claims")

Classification: Class 3 Claims consist of all Other Priority Claims against the Debtors.

Treatment: Each Holder of an Allowed Class 3 Claim shall receive, on account of such Claim, Cash in the amount of such Allowed Other Priority Claim without interest or premium on or as soon as reasonably practicable following the later of: (i) the Effective Date if due on or before that date, (ii) if such Other Priority Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Priority Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Other Priority Claim and the Debtors or the Liquidating Trustee.

Voting: Class 3 Claims are Unimpaired by the Plan. Holders of Allowed Class 3 Claims are not entitled to vote to accept or reject the Plan.

### d.    Investor Principal Claims (collectively, "Class 4A Claims").

Classification: Class 4A consists of all Investor Principal Claims against the Debtors.

Treatment: Each Holder of an Allowed Class 4A Claim shall receive issuance of its Pro Rata Share of Liquidating Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4A Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4A Claim and the Debtors or Liquidating Trustee.

As set forth more fully in Section 8.03 of the Plan, on a periodic basis, Distributions of Cash on account of Liquidating Trust Interests shall be made by the Liquidating Trustee. The first such Cash Distribution to Holders of Liquidating Trust Interests shall occur on the Initial Distribution Date. On any subsequent Distribution Date, each Holder of a Liquidating Trust Interest shall receive a Pro Rata Share of Available Trust Cash. For avoidance of doubt, no Holder of a Class 4A Claim that is a Disputing Claimant shall receive a Cash Distribution.

Unless a Holder of a Class 4A Claim elects on its Ballot to be a Disputing Claimant, such Holder shall be deemed to compromise and settle its Investor Principal Claim as set forth in the Ballot, which shall be such Holder's Allowed Investor Principal Claim. If a Holder of a Class 4A Claim (i) elects to be a Disputing Claimant and (ii) has not filed a Proof of Claim, then, notwithstanding the Bar Date, such Holder may, no later than fourteen (14) days from the Voting Deadline, file a Proof of Claim. If such Holder fails to file a timely Proof of Claim, then, notwithstanding its election, such Holder's Investor Principal Claim shall be Allowed as set forth in its Ballot for all purposes under the Plan.

Each Holder of a Class 4A Claim may agree, by electing on its Ballot, to assign its Assignable Claims to the Liquidating Trust, thereby becoming an Assigning Claimant. By

- 50 -

electing such option on its Ballot, the Holder of a Class 4A Claim agrees, subject to the occurrence of the Effective Date and the formation of the Liquidating Trust, that (i) its Assignable Claims shall, without further action, be deemed to be assigned to the Liquidating Trust, (ii) it will execute any documents reasonably requested to memorialize such assignment, and (iii) the Liquidating Trust may act as the Assigning Claimant's agent or attorney-in-fact to execute any documents to memorialize such assignment.  Each Assigning Claimant's Allowed Investor Principal Claim shall be increased by the Assigning Claimants Enhancement Multiplier (*i.e.*, 3%).

Other than Assigned Investor Claims, the treatment of the Class 4A Claims under the Plan is not intended to and will not reduce, impair, satisfy, limit, or otherwise affect any rights that any Investor may have against any Person or Entity other than the Debtors.

<u>Voting</u>:  Class 4A Claims are Impaired under the Plan.  Holders of Class 4A Claims are entitled to vote to accept or reject the Plan.

### e.    General Unsecured Claims (collectively, "Class 4B Claims").

<u>Classification</u>: Class 4B consists of all General Unsecured Claims against the Debtors.

<u>Treatment</u>: Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Class 4B Claim shall receive a Pro Rata Share of Liquidating Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4B Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4B Claim and the Debtors or Liquidating Trustee.

As set forth more fully in Section 8.03 of the Plan, on a periodic basis, Distributions of Cash on account of Liquidating Trust Interests shall be made by the Liquidating Trustee.  The first such Cash Distribution to Holders of Liquidating Trust Interests shall occur on the Initial Distribution Date.  On any subsequent Distribution Date, each Holder of a Liquidating Trust Interest shall receive a Pro Rata Share of Available Trust Cash.

<u>Voting</u>:  Class 4B Claims are Impaired under the Plan.  Holders of Class 4B Claims are entitled to vote to accept or reject the Plan.

### f.    Investor Other Claims (collectively, "Class 5 Claims")

<u>Classification</u>:  Class 5 Claims consist of all Investor Other Claims against the Debtors.

<u>Treatment</u>:  Holders of Class 5 Claims shall not receive a Distribution on account of such claims, subject to the right to modify the Plan as set forth in Section 14.02 of the Plan.

<u>Voting</u>:  Class 5 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Investor Other Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

- 51 -

### g.  Intercompany Claims (collectively, "Class 6 Claims")

Classification:  Class 6 Claims consist of all Intercompany Claims against the Debtors.

Treatment:  Holders of Class 6 Claims shall not receive a Distribution under the Plan on account of such claims.

Voting:  Class 6 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Intercompany Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

### h.  Subordinated Claims (collectively, "Class 7 Claims")

Classification:  Class 7 Claims consist of all Subordinated Claims against the Debtors.

Treatment:  Holders of Class 7 Claims shall not receive a Distribution under the Plan on account of such claims.

Voting:  Class 7 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Subordinated Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

### i.  Section 510(b) Claims (collectively, "Class 8 Claims")

Classification:  Class 8 Claims consist of all Section 510(b) Claims against the Debtors.

Treatment:  Holders of Class 8 Claims shall not receive a Distribution under the Plan on account of such claims.

Voting:  Class 8 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Section 510(b) Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

### j.  Equity Interests (collectively, "Class 9 Equity Interests")

Classification:  Class 9 Equity Interests consist of all Equity Interests in the Debtors.

Treatment:  On the Effective Date, all Equity Interests in the Debtors will be cancelled, and holders of such Equity Interests shall receive no Distribution on account of such Equity Interests.

Voting:  Class 9 Equity Interests are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Class 9 Equity Interests are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

Disclosure Statement

### k.      Reservation of Rights Regarding Claims

Except as otherwise explicitly provided in Section 12.05 of the Plan, nothing in the Plan shall affect the Debtors' or the Liquidating Trustee' rights and defenses, both legal and equitable, with respect to any Claims or Equity Interests, including all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

## C.      Settlements and Compromises

### 1.      *Compromise and Settlement of Investor Principal Claims*

Pursuant to Section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan shall implement the compromise and settlement of certain Investor Principal Claims as set forth in Section 5.01 of the Plan and elsewhere in the Plan, and the Plan shall further constitute a motion for approval of, and the Confirmation Order shall constitute Bankruptcy Court approval of, such compromise and settlement, and its implementation pursuant to the Plan.  On the Effective Date, each Holder that is not a Prepetition Party or Disputing Claimant of an Investor Principal Claim shall be deemed to compromise and settle such Holder's Claim as set forth in such Holder's Ballot, and in full and final satisfaction, settlement and compromise of, and only of, such Investor Principal Claim, such Claim shall be an Allowed Investor Principal Claim as set forth in the Ballot.

### 2.      *Orders in Aid of Compromise and Settlement*

Pursuant to Sections 105(a) and 1123 of the Bankruptcy Code, Bankruptcy Rule 9019 and other applicable law, the Liquidating Trustee may request, and the Bankruptcy Court retains the authority for, the entry of a bar order or channeling injunction in connection with the compromise and settlement of any Cause of Action of the Debtors, the Surviving Debtors or the Liquidating Trust.

## D.      Means for Implementation of the Plan

### 1.      *Liquidating Trust*

On or prior to the Effective Date, the Debtors, on their own behalf and on their Estates' behalf and on behalf of the Holders of Claims that are to receive post-Effective Date Distributions from the Liquidating Trust Assets, will execute the Liquidating Trust Agreement and will take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement.  On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors will transfer to the Liquidating Trust all of their rights, title, and interests in all of the Liquidating Trust Assets free and clear of all Liens, Claims and encumbrances except as otherwise set forth in the Plan, and all such Liquidating Trust Assets shall be deemed to vest in the Liquidating Trust pursuant to Section 1141(b) of the Bankruptcy Code.  The Liquidating Trust shall have such rights, powers, duties and obligations as set forth in Article IX of the Plan, other provisions of the Plan, the Liquidating Trust Agreement, and the Confirmation Order.  The Liquidating Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with the liquidating purpose of the Liquidating Trust.

Notwithstanding anything to the contrary in the Plan, any disclosure or examination of any Privileged Documents shall be limited to the Liquidating Trustee and the attorneys that the Liquidating Trustee has retained on behalf of the Liquidating Trust for the purpose of pursuing Liquidating Trust Actions not released by the Debtors, or carrying out the purposes of the Liquidating Trust, those attorneys' administrative support personnel, and any consulting, non-testifying experts retained by the Liquidating Trustee on behalf of the Liquidating Trust for the purpose of assisting the Liquidating Trust in pursuing such Liquidating Trust Actions or carrying out the purposes of the Liquidating Trust. The Liquidating Trustee may not disclose any of the Privileged Documents (or the contents of the Privileged Documents), or otherwise take any actions that may constitute a waiver of the attorney-client privilege, work product privilege, common interest privilege, or any other applicable privileges with respect to the Privileged Documents, without, to the extent required by applicable law, giving three (3) Business Days' notice to the applicable affected party and an opportunity for the affected party to object. Nothing in the Plan shall constitute a waiver of any privilege claims over any of the documents, including the Privileged Documents that are produced to or received by the Liquidating Trust or Liquidating Trustee. For the avoidance of doubt, the Liquidating Trust is a successor-in-interest to the Debtors, and thus, the transfer of the Privileged Documents as provided in the Plan does not impair or waive any privilege.

## 2.    *Liquidating Trust Oversight Committee*

On the Effective Date, a four (4) member committee shall be established pursuant to the Plan to oversee the implementation of the Plan (the "**Liquidating Trust Oversight Committee**"). The initial members of the Liquidating Trust Oversight Committee shall be Charles ("Charley") Carpenter, Donald Stec, Geoffrey Lipman, and Khosrow ("Kevin") Sohraby. The Liquidating Trust Oversight Committee shall have the right to consult with and, to the extent provided in the Plan or Liquidating Trust Agreement, oversee acts, decisions and functions of the Liquidating Trustee in connection with the administration and implementation of the Plan on and after the Effective Date, as set forth in the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall resolve any matter as to which the Liquidating Trust Oversight Committee is deadlocked, except any matter (i) relating to the Liquidating Trustee's resignation, incapacity or removal or (ii) as to which the Liquidating Trustee deems it necessary or appropriate to seek direction from the Bankruptcy Court. The Oversight Committee may retain independent counsel upon application, including proposed terms for compensation and reimbursement, to the Bankruptcy Court and after notice and hearing.

Subject to and in accordance with the Liquidating Trust Agreement, the Liquidating Trust Oversight Committee may, upon majority vote, remove the Liquidating Trustee for cause, including incapacity or failure or refusal to perform his duties under the Plan and Liquidating Trust Agreement, upon notice and hearing before the Bankruptcy Court. Upon the resignation, removal, or inability of the Liquidating Trustee to serve, then the Oversight Committee shall, by unanimous consent, appoint a successor Trustee, and such successor shall be subject to approval by the Bankruptcy Court after notice and a hearing.

Subject to and in accordance with the Liquidating Trust Agreement, the Liquidating Trust Oversight Committee may, upon majority vote, remove a member of the Liquidating Trust Oversight Committee, or the Liquidating Trustee may remove a member of the

Liquidating Trust Oversight Committee for cause, in each case upon notice and a hearing before the Bankruptcy Court.  Vacancies on the Oversight Committee shall be filled by (i) the remaining members of the Oversight Committee, or (ii) if there are no members of the Oversight Committee, then the vacancies shall be filled by the Liquidating Trustee, in each case subject to approval by the Bankruptcy Court after notice and a hearing.

### 3.      *Funding for the Plan*

The Plan shall be funded from the Debtors' Cash on hand and other Liquidating Trust Assets.

### 4.      *Funding of Reserves*

On or prior to the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall cause to be funded from Cash on hand the Disputed Claims Reserve.  After the Effective Date, the Liquidating Trustee may fund other reserves, including additional amounts in the Disputed Claims Reserve, as they or he deems necessary or appropriate.

### 5.      *Corporate Action*

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Equity Interests, the Debtors, or any other Entity or Person or further Order of the Bankruptcy Court.  All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates.  The authorizations and approvals contemplated by the Plan shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

### 6.      *Directors, Officers and Managers*

As of the Effective Date, each of the Debtors' existing officers, directors, and managers, including James S. Cassel, Bradley D. Sharp and Joseph J. Luzinski, shall be deemed to be dismissed (unless previously dismissed or terminated), in their respective capacities before the Effective Date as Independent Manager, Chief Restructuring Officer and Deputy Chief Restructuring Officer of the Debtors, in each case without any further action required on the part of any such Debtor, the shareholders or members of such Debtor, or the officers, directors or managers of such Debtor and shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated).  Thereafter, the Liquidating Trustee shall succeed to all such powers as would have been applicable to the Debtors' officers and managers in respect of all Liquidating Trust Assets, *provided* that the Liquidating Trustee may continue to consult with or employ the Debtors' former directors, officers, employees, and managers to the extent required to comply with applicable law or contractual provisions regarding the Debtors.

Disclosure Statement

### 7.      *Debtors' Professionals*

On the Effective Date, the Professionals retained by the Debtors shall be deemed to have completed their services as Professionals to the Debtors, but they shall be able to file final applications for reasonable compensation and reimbursement of expenses through the Effective Date as provided for in the Plan.  The Professionals to the Debtors may be retained by the Liquidating Trustee.

### 8.      *Effectuating Documents; Further Transactions*

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any further Bankruptcy Court order, approvals, authorization, or consents, unless such an order is expressly required pursuant to the Plan.

### 9.      *Exemption from Certain Taxes and Fees*

To the maximum extent provided by Section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, Distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 10.      *Assignment of Assigned Investor Claims*

On the Effective Date, all Assigned Investor Claims will be assigned to the Liquidating Trust and shall thereafter be Liquidating Trust Actions for all purposes.  No Person or Entity may rely on the absence of a specific reference in the Plan, the Confirmation Order, the Liquidating Trust Agreement, or the Disclosure Statement to any Assigned Investor Claims against such Person or Entity as any indication that the Liquidating Trust will not pursue any and all available Assigned Investor Claims against such Person or Entity.  The objection to the Allowance of any Claims will not in any way limit the ability or the right of the Liquidating Trust to assert, commence, or prosecute any Assigned Investor Claims.  Nothing contained in the Plan, the Confirmation Order, the Liquidating Trust Agreement, or the Disclosure Statement will be deemed to be a waiver, release, or relinquishment of any Assigned Investor Claims that the

Assigning Claimants had immediately prior to the Effective Date.  For the avoidance of doubt, (a) the Assigned Investor Claims shall not include the rights of any of the Assigning Claimants to receive the Distributions, if any, to which they are entitled under the Plan; (b) in the exercise of his reasonable discretion and in accordance with the Liquidating Trust Agreement, the Liquidating Trustee shall not be obligated to pursue all or any given Assigned Investor Claims; and (c) if, in the exercise of his reasonable discretion, the Liquidating Trustee elects not to pursue an Assigned Investor Claim he may abandon or transfer such claim.

## 11.    *Preservation, Pursuit and Resolution of Liquidating Trust Actions*

Other than Causes of Action and Avoidance Actions against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, the Debtors and their Estates reserve and do not waive, any and all Causes of Action and Avoidance Actions, including any actions specifically enumerated in the Plan Supplement.

On and after the Effective Date, the Liquidating Trust, as a successor in interest to the Debtors, the Estates, and the Assigning Claimants, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Assigning Claimants to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Liquidating Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement.  In accordance with Bankruptcy Code Section 1123(b)(3), the Liquidating Trustee shall also serve as a representative of the Estates with respect to any and all Liquidating Trust Actions that were Estate Assets and, subject to the Liquidating Trust Agreement, shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all Liquidating Trust Actions in any court or other tribunal.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action, Avoidance Action or Assigned Investor Claim against them as any indication that the Debtors, the Liquidating Trustee will not pursue any and all available Causes of Action, Avoidance Actions and Assigned Investor Claims against them.  No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action, Avoidance Actions and Assigned Investor Claims upon, after, or as a consequence of the Confirmation or Consummation.  The Debtors or the Liquidating Trustee, as applicable, reserve all rights arising under Section 506(c) of the Bankruptcy Code with respect to all Secured Claims asserted against the Debtors or their Estates.

## 12.    *Continued Retention of PBYA*

On the Effective Date, and without the need for further order of the Bankruptcy Court, PBYA shall be authorized to continue prosecuting those certain litigation claims on behalf of the Debtors and the Liquidating Trust on the same terms as previously approved by the Bankruptcy Court in the Chapter 11 Cases [Docket No. 389].

13.    *The Surviving Debtor(s) Pending the Closing of the Cases*

Each Surviving Debtor shall continue in existence after the Effective Date as a post-Effective Date entity.  Without the need for any corporate action and without the need for any corporate or limited liability company filings, (a) all Equity Interests of the Surviving Debtors issued and outstanding immediately before the Effective Date shall be automatically cancelled and extinguished on the Effective Date and (b) as of the Effective Date, new membership interests of each Surviving Debtor, representing all of the issued and outstanding membership interests of each such Surviving Debtor, shall be issued to the Liquidating Trust, which new membership interests so issued shall be deemed to have been offered and sold to the Liquidating Trust in reliance on the exemption from registration under the Securities Act of 1933 afforded by section 4(a)(2) thereof.  On and after the Effective Date, each Surviving Debtor will be a wholly-owned subsidiary of the Liquidating Trust, and the Liquidating Trust may expend with respect to such Surviving Debtor such amounts as the Liquidating Trust determines is appropriate, in his discretion.  The sole manager of each Surviving Debtor shall be the Liquidating Trustee whose rights and powers with respect to operations, employment, compensation, indemnity and exculpation as to each Surviving Debtor shall, to the greatest extent possible, be the same as the Liquidating Trustee's rights and powers in connection with the Liquidating Trust.  The Liquidating Trustee may take such steps as appropriate to maintain the good standing of the applicable Surviving Debtor.  Until a Surviving Debtor is dissolved, all cash or property received by the Surviving Debtor, net of any expenses of the Surviving Debtor incurred after the Effective Date, shall be transferred to the Liquidating Trust.  Each Surviving Debtor (a) shall have the Liquidating Trust as its sole member and the Liquidating Trust shall be deemed to be admitted as a member of each Surviving Debtor on the Effective Date, (b) shall be treated as a disregarded entity for income tax purposes, (c) shall have a purpose consistent with the purpose of the Liquidating Trust as set forth in Section 9.02 of the Plan, and (d) shall be subject to the same limitations imposed on the Liquidating Trustee under the terms of the Plan and the Liquidating Trust Agreement.

14.    *Closing of the Debtors' Cases*

The Confirmation Order shall authorize, pursuant to Section 350 of the Bankruptcy Code, that on the Effective Date and except as set forth in the Plan, the Dissolving Debtors' Chapter 11 Cases shall be closed for all purposes, without further action by the Debtors or order of the Bankruptcy Court.  For the avoidance of doubt, the closing of such cases shall not have any effect, in any manner, on the Liquidating Trust Actions that the Liquidating Trust may assert in accordance with the Plan.  Subject to changing the Debtors' case names as set forth in Section 6.18 of the Plan, the jointly administered case of 1 Global Capital LLC, identified as Case No. 18-19121-RBR (the "**Main Case**"), and the case of any other Surviving Debtor shall remain open and subject to the provisions of Section 6.14 of the Plan.  Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Main Case, when all Liquidating Trust Assets have been liquidated and converted into Cash (other than those assets abandoned by the Liquidating Trust), and such Cash has been distributed in accordance with the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Main Case and the cases of any other Surviving Debtor in accordance with the Bankruptcy Code and the Bankruptcy Rules.

15. **Cancellation of Existing Agreements and Existing Stock and/or Membership Interests**

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, stock, membership interests, instruments, certificates, and other documents evidencing any Claims or Equity Interests, including all Memoranda of Indebtedness, shall be canceled, shall be of no further force, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

16. **Operations of the Debtors Between the Confirmation Date and the Effective Date**

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate as debtors in possession, with authority to sell assets of the Debtors in accordance with Section 363 of the Bankruptcy Code or otherwise, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

17. **Dissolution of Certain Debtors**

On the Effective Date and without the need for further order of the Bankruptcy Court, action or formality that otherwise might be required under non-bankruptcy law, the Dissolving Debtors will be deemed dissolved without any further filing with or action by any secretary of state or other governmental official in each of the Dissolving Debtors respective states of incorporation or formation.

18. **Change of Debtors' Names**

On the Effective Date, and without the need for further order of the Bankruptcy Court or action or formality by the Debtors or the Liquidating Trustee that otherwise might be required under non-bankruptcy law, the names of each Debtor shall be changed as set forth below.

| Existing Name | Post-Effective Date Name |
| --- | --- |
| 1 Global Capital LLC | 1 GC Collections |
| 1 West Capital LLC | 1 West Collections |

19. **Dissolution of the Creditors' Committee**

On the Effective Date, the Creditors' Committee shall be deemed dissolved and its members shall be deemed released of their duties, responsibilities and obligations.

On the Effective Date, the Professionals retained by the Creditors' Committee shall be deemed to have completed their services as Professionals to the Creditors' Committee. Through the Effective Date as provided for in the Plan, the Creditors' Committee shall be able to

File final applications for reimbursement of expenses, and the Creditors' Committee's Professionals shall be able to File final applications for reasonable compensation and reimbursement of expenses.    Notwithstanding anything in Section 6.19 of the Plan, the Creditors' Committee shall have standing and a right to be heard following the dissolution of the Creditors' Committee solely with respect to (a) Professional Fee Claims and (b) any appeals of the Confirmation Order.  Any fees and expenses shall be paid from the Liquidating Trust Assets. The Professionals to the Creditors' Committee may be retained by the Liquidating Trustee, or the Liquidating Trust Oversight Committee.

### E.    Treatment of Executory Contracts and Unexpired Leases

#### 1.    *Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) was previously assumed by the Debtors or assumed and assigned by a third party, as applicable, during the pendency of the Chapter 11 Cases; (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (e) is a D&O Policy or an insurance policy, as set forth in Section 7.06 of the Plan.

#### 2.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any Cure under each Executory Contract and Unexpired Lease, if any, to be assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the Cure on the Effective Date, subject to the limitation described below, by the Debtors as an Administrative Claim, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (a) the amount of the Cure, (b) the ability of the Estates or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the Cure required by Section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, with the consent of the Liquidating Trust Oversight Committee or, in the absence of such consent, by order of the Bankruptcy Court, may settle any dispute regarding the amount of any Cure without any further notice to any party or any action, order, or approval of the Bankruptcy Court.  In the absence of such consent, the Liquidating Trustee may seek approval of any such settlement from the Bankruptcy Court.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall cause notice of proposed assumption pursuant to the Plan and proposed Cure to be sent to

- 60 -

applicable counterparties. Any objection by such counterparty must be filed, served, and actually received by the Debtors not later than seven (7) days after service of notice of the Debtors' proposed assumption and associated Cure. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption and Cure.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. Anything in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

### 3. *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with the Claims Agent and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, no later than thirty (30) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed as set forth in the paragraph above shall not (a) be treated as a creditor with respect to such Claim, (b) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (c) participate in any Distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Trustee, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Debtors or the Liquidating Trustee, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

- 61 -

4.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors or the Debtors on behalf of the Debtors' Estates during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

5.      *Indemnification Obligations*

All Indemnification Obligations owed to Prepetition Parties who served or were employed by the Debtors at any time shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the Plan on the Effective Date, unless deemed rejected on an earlier date. Any Claim resulting from these rejections in favor of any Person or Entity must be filed in accordance with Section 7.03 of the Plan and constitutes a General Unsecured Claim. Notwithstanding any of the foregoing, nothing contained in the Plan affects the rights of any Person or Entity covered by any applicable D&O Policy with respect to any such policy.

Indemnification Obligations owed to any Professionals to the extent that such Indemnification Obligations relate to the period after the Petition Date, excluding claims resulting from gross negligence, fraud, willful misconduct, breach of fiduciary duty, self-interested transactions or intentional tort, and breach of their contracts with the Debtors shall be deemed to be, and shall be treated as though they are, Executory Contracts that are assumed pursuant to Section 365 of the Bankruptcy Code and Section 7.01 of the Plan.

6.      *Insurance Policies*

Each insurance policy, including the D&O Policy, shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to Sections 365 and 1123 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy.

### 7. *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee shall have 90 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

### 8. *Merchant Cash Advance Agreements are Not Executory Contracts*

For the avoidance of doubt, any merchant cash advance agreement or other agreement of the Debtors to advance money between either Debtor and any other party shall not be deemed to be an Executory Contract.  In the event, however, that any such agreement is determined to be an Executory Contract, the Debtors' power to assume, pursuant to Section 365 of the Bankruptcy Code, any such merchant cash advance agreement shall be specifically preserved under the Plan for the benefit of the Liquidating Trustee.  The Liquidating Trustee shall have thirty (30) days from the date of any such determination to assume or reject any such agreement.

## F. **Provisions Governing Distributions**

### 1. *Calculation of Amounts to be Distributed*

Each Holder of an Allowed Claim against the Debtors shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Liquidating Trust.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due.  If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII of the Plan.  Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim.

### 2. *Rights and Powers of the Debtors and Liquidating Trustee*

All Distributions required to be made under the Plan on the Effective Date shall be made by the Debtors or thereafter by the Liquidating Trust, or their respective designees. After the Effective Date, the Liquidating Trustee shall have the right to object, allow, or otherwise resolve any Claim as provided in the Plan.

The Debtors and the Liquidating Trustee, shall not be required to give any bond or surety or other security for the performance of their duties except as ordered by the Bankruptcy Court.    Additionally, in the event that the Debtors or Liquidating Trust, as applicable, is ordered to provide such a bond, insurance or surety, all costs and expenses of procuring any such bond, insurance or surety shall be paid with Cash from the Liquidating Trust Assets.

Disclosure Statement

The Liquidating Trustee shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code, including, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, including the right (subject to the Plan and the Liquidating Trust Agreement) to (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the Plan; (b) sell or otherwise liquidate any of the Liquidating Trust Assets in accordance with Section 363 of the Bankruptcy Code or otherwise; (c) prosecute, settle, abandon or compromise any Claims or Liquidating Trust Actions; (d) make Distributions contemplated by the Plan; (e) establish and administer any necessary reserves for Disputed Claims that may be required; (f) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (g) employ and compensate professionals, including professionals previously retained by the Debtors and/or the Creditors' Committee, provided that any such employment and compensation shall be comply with the procedures set forth in the Liquidating Trust Agreement and any such compensation shall be made only out of the Liquidating Trust Assets; and (h) file all federal, state and local tax returns if necessary.

The Liquidating Trustee shall assume any outstanding responsibility of the Debtors under the Plan.

The Liquidating Trustee shall have the full authority, subject to the Plan and the Liquidating Trust Agreement, to take any steps necessary to administer the Plan, including the duty and obligation to liquidate, sell or otherwise dispose of Liquidating Trust Assets, to make Distributions therefrom in accordance with the Plan and to pursue, settle or abandon any Claims and Liquidating Trust Actions.

From and after the Effective Date, and subject to the terms of the Plan and Liquidating Trust Agreement, the Liquidating Trustee may compromise and settle any dispute relating to any Claims or any Liquidating Trust Actions, without any further approval by the Bankruptcy Court or any other Entity; *provided* that if the amount in controversy of any dispute exceeds $500,000, then a compromise or settlement of that dispute shall be effective only if (i) the Trustee provides the Oversight Committee and the SEC written notice of the proposed settlement and its material terms and (ii) (a) within fourteen (14) days after delivery of such notice neither the Oversight Committee nor SEC object in writing to the compromise and settlement or (b) such compromise and settlement is approved by the Bankruptcy Court under the standards of Fed.R.Bankr.P. 9019 after notice and a hearing.  Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estates.

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses (including reasonable attorneys' fees and expenses) incurred by the Liquidating Trustee, and expenses incurred by the Liquidating Trust Oversight Committee, on or after the Effective Date shall be paid in Cash from the Liquidating Trust Assets.  Such amounts shall be paid without any further notice to or action, order, or approval of the Bankruptcy Court fourteen (14) days after the submission of an invoice to the Liquidating Trustee, each member of the Liquidating Trust Oversight Committee and the SEC, unless their objection to the invoice is submitted in accordance with the Liquidating Trust Agreement.

Disclosure Statement

### 3. *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

#### a. **Record Date for Distribution**

On the Distribution Record Date, the Claims Register shall be closed and the Liquidating Trustee or any other party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Nothing in Section 8.03 of the Plan shall impair or limit the transferability of Liquidating Trust Interests in accordance with Section 9.12 of the Plan and the Liquidating Trust Agreement.

#### b. **Delivery of Distributions in General**

##### 1. *Special Rules for Distributions to Holders of Disputed Claims*

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Liquidating Trustee on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

Within thirty (30) days of a Disputed Claim becoming an Allowed Claim, the Liquidating Trustee shall distribute to the Holder thereof, from the Disputed Claim Reserve, an amount in Cash as would have been distributed to such Holder (on account of such Holder's Liquidating Trust Interests) on the Initial Distribution Date (plus any subsequent Distributions that would have been paid as of that date) if its Claim had been an Allowed Claim on the Effective Date.  No interest will be paid on Disputed Claims that later become Allowed or with respect to any distribution in satisfaction thereof to a Holder.

Upon a Disputed Claim becoming a Disallowed Claim in whole or in part, any Cash held in the Disputed Claims Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan.

##### 2. *Distributions*

On and after the Effective Date, the Debtors and the Liquidating Trustee, as applicable, shall make the Distributions required to be made on account of Allowed Claims under the Plan.  The Liquidating Trustee shall make an initial Distribution to the Liquidating Trust Beneficiaries from Available Trust Cash on the Initial Distribution Date.

The Liquidating Trustee, in his discretion, may make periodic Distributions of additional Cash to the Liquidating Trust Beneficiaries at any time following the Initial Distribution Date, provided that such Distributions are otherwise permitted under, and not inconsistent with the other terms of, the Plan, the Liquidating Trust Agreement and applicable law.

No later than (a) the first Business Day that is at least 180 calendar days after the Effective Date and (b) the last Business Day of each subsequent 180-calendar-day period after the Effective Date until the Closing Date, the Liquidating Trustee shall calculate the Distributions that could potentially be made to the Liquidating Trust Beneficiaries based on the amount of Available Trust Cash and, based on such calculation, promptly thereafter may make Distributions, if any, of the amount so determined.

### c.    Minimum; *De Minimis* Distributions

Notwithstanding any other provision of the Plan to the contrary (including the treatment of any Claims or Classes), (a) the Debtors or the Liquidating Trustee, as applicable, shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down, and (b) the Liquidating Trustee shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $6,000,000, in which case such Distributions shall be deferred to the next Distribution Date; *provided*, *however*, that the foregoing minimum aggregate Distribution threshold shall not apply to Distributions from the Disputed Claim Reserve made on account of a Disputed Claim becoming an Allowed Claim in accordance with Section 8.03(b)(1) of the Plan, (ii) if the amount to be distributed to that Holder on the particular Distribution Date is less than $250.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) if  the amount of the final Distribution to any such Holder is less than $50.00, in which case such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims;.

### d.    Undeliverable Distributions and Unclaimed Property

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder; *provided*, *however*, that the Liquidating Trustee may deem such Distributions unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of four (4) months from the Initial Distribution Date.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

### e.    Manner of Payment Pursuant to the Plan

Cash payments under the Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, as applicable, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtors or the Liquidating Trustee, as applicable.  Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, as applicable, in

such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks issued by the Liquidating Trustee shall be null and void if not cashed within 120 days of the date of the issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee.

### f. Distributions to Investors Who Invested Through Individual Retirement Plans

Unless (i) an Investor's Ballot identifies that Distributions on account of the Investor's Allowed Class 4A Claim will be made to the custodian for such Investor's IRA or (ii) an Investor notifies the Debtors in a signed writing before the Effective Date that (a) the Investor funded its Class 4A Claim from its IRA and (b) instructs the Debtors that Distributions on account of such Class 4A Claim should be disbursed to the custodian of the IRA, the Liquidating Trustee shall not be required to make Distributions to the custodian of the Investor's IRA, if any. Investors should consult their individual tax advisors regarding the consequences of taking such Distributions.

### 4. *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Debtors, or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtors and the Liquidating Trustee are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements. The Liquidating Trustee is authorized to require each Creditor and Liquidating Trust Beneficiary to provide the Liquidating Trustee with an executed Form W-9 or similar tax form as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim or Liquidating Trust Beneficiary does not provide the Liquidating Trustee with an executed Form W-9 or similar form within ninety (90) days of written request, the Liquidating Trustee may deem said Creditor or Liquidating Trust Beneficiary to have forfeited their Distribution with no further notice required.

### 5. *Claims Paid or Payable by Third Parties*

### a. Claims Paid by Third Parties; Recourse to Collateral

The Liquidating Trustee shall be authorized to reduce in whole or in part a Claim, and such Claim shall be Disallowed without an objection to the Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent

that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or, as applicable, the Liquidating Trustee, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment, in whole or in part, from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Debtor or the Liquidating Trustee, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

**b.    Claims Payable by Insurance, Third Parties; Recourse to Collateral**

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or more of the Debtors' insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**c.    Applicability of Insurance Policies**

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and consummation of the Plan shall not limit or affect the rights of any third-party beneficiary of any of the Debtor's insurance policies with respect to such policies, including the D&O Policy.

**G.    The Liquidating Trust**

**1.    *Liquidating Trust Creation***

On the Effective Date, the Liquidating Trust shall be established and become effective. The Liquidating Trust Agreement shall (a) be in form and substance consistent in all respects with the Plan and be reasonably acceptable to the Plan Proponents and (b) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Liquidating Trust as a grantor trust and the Liquidating Trust Beneficiaries as the grantors and owners thereof for federal income tax purposes. All relevant parties (including the Debtors, the Creditors' Committee, the Liquidating Trustee and the Liquidating Trust Beneficiaries) will take all actions necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust. The powers,

authority, responsibilities, and duties of the Liquidating Trust and the Liquidating Trustee are set forth in and shall be governed by the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

### 2.    *Purpose of the Liquidating Trust*

The Liquidating Trust shall be established for the primary purpose of liquidating its assets and making Distributions in accordance with the Plan, Confirmation Order and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

### 3.    *Transfer of Assets to the Liquidating Trust*

The Debtors and the Liquidating Trustee shall establish the Liquidating Trust for the benefit of and on behalf of the Liquidating Trust Beneficiaries pursuant to the Liquidating Trust Agreement, with the Liquidating Trust Beneficiaries to be treated as the grantors and deemed owners of the Liquidating Trust Assets. The Debtors will irrevocably transfer, assign, and deliver to the Liquidating Trust, on behalf of the Liquidating Trust Beneficiaries, all of their rights, title, and interests in the Liquidating Trust Assets, including any claims, rights, and Causes of Action that the Debtors may hold against any Entity in accordance with the Plan, notwithstanding any prohibition on assignment under non-bankruptcy law. The Assigning Claimants will also assign to the Liquidating Trust all of their rights, title, and interests in the Assigned Investor Claims. Upon establishment of the Liquidating Trust and from time to time thereafter, (i) the SEC may elect and be authorized to transfer, assign, and deliver to the Liquidating Trust all of their rights, title, and interests in the SEC Contributed Recoveries, and (ii) the Receiver may, from time to time, pursuant to an order of the District Court in the SEC Action, transfer, assign, and deliver to the Liquidating Trust all of its rights, title and interests in the Receiver Contributed Recoveries.

The Liquidating Trust will accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries, subject to the Plan and the Liquidating Trust Agreement.

On the Effective Date (or thereafter, with respect to the Receiver Contributed Recoveries and the SEC Contributed Recoveries), all Liquidating Trust Assets shall vest and be deemed to vest in the Liquidating Trust in accordance with Section 1141 of the Bankruptcy Code; provided, however, that the Liquidating Trustee, with the consent of the Liquidating Trust Oversight Committee or, in the absence of such consent, by order of the Bankruptcy Court, may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value to the Liquidating Trust, including any Assigned Investor Claims. Any Assets the Liquidating Trustee so abandons or otherwise does not accept shall not vest in the Liquidating Trust. As of the Effective Date, all Liquidating Trust Assets vested in the Liquidating Trust shall be free and clear of all Liens, Claims and Equity Interests except as otherwise specifically provided in the Plan or in the Confirmation Order. Upon the transfer by the Debtors of the Liquidating Trust Assets to the Liquidating Trust or abandonment of Liquidating Trust Assets by the Liquidating Trustee, the Debtors will have no reversionary or

- 69 -

further interest in or with respect to any Liquidating Trust Assets or the Liquidating Trust. Notwithstanding anything in the Plan to the contrary, the Liquidating Trust and the Liquidating Trustee shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

For the avoidance of doubt, and notwithstanding anything in the Plan to the contrary, the Debtors shall not transfer or be deemed to have transferred to the Liquidating Trust any claims or Causes of Action (a) released pursuant to the Plan or (b) exculpated pursuant to Article XII of the Plan to the extent of any such exculpation.

### 4.     *Tax Treatment of the Liquidating Trust*

For all federal income tax purposes, the Liquidating Trust Beneficiaries will be treated as grantors and owners thereof and it is intended that the Liquidating Trust be classified as a Liquidating Trust under 26 C.F.R.§ 301.7701–4 and that the Liquidating Trust is owned by the Liquidating Trust Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Liquidating Trust Beneficiaries be treated as if they had received a Distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust.  Accordingly, the Liquidating Trust shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely Distributions to the Liquidating Trust Beneficiaries pursuant to the Plan, and not unduly prolong the Liquidating Trust's duration.  The Liquidating Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth in the Plan or in the Liquidating Trust Agreement.  The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and owners of the trust.

The Liquidating Trust shall file returns for the Liquidating Trust, except with respect to any Disputed Claims Reserve, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with the Plan.  The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to each holder in accordance with their relative Liquidating Trust Interest.

As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes.  The Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes.

The Liquidating Trust shall file all income tax returns with respect to any income attributable to the Disputed Claims Reserve and shall pay any federal, state and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit or loss allocable thereto.

The Liquidating Trust may request an expedited determination of Taxes of the Debtors or of the Liquidating Trust, including the Disputed Claims Reserve, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

Disclosure Statement

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtors and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

The Liquidating Trustee shall send annually to each Liquidating Trust Beneficiaries who is the holder of an Allowed Claim a separate statement stating the Liquidating Trust Beneficiary's share of income, gain, loss, deduction or credit and instructing all such Liquidating Trust Beneficiaries to report such items on their Federal tax returns (and state tax returns if required by applicable law).

### 5. *Distribution; Withholding*

Notwithstanding anything in the Plan to the contrary, the Liquidating Trustee shall make, or cause to be made, all Distributions under the Plan and the Liquidating Trust Agreement other than those Distributions made by the Debtors on the Effective Date.

The Liquidating Trust may withhold from amounts distributable to any Entity any and all amounts, determined in the Liquidating Trustee's sole discretion, required by the Plan or Liquidating Trust Agreement, or applicable law, regulation, rule, ruling, directive, or other governmental requirement. The Liquidating Trustee may require any Liquidating Trustee Beneficiary to furnish to the Liquidating Trustee in writing his, her or its Employer or Taxpayer Identification Number as assigned by the IRS or an executed IRS Form W-9, IRS Form W8-BEN or similar tax form, and the Liquidating Trustee may condition any Distribution upon receipt of such identification number or executed document.

### 6. *Insurance*

The Liquidating Trust shall maintain customary insurance coverage for the protection of Persons or Entities serving as administrators and overseers of the Liquidating Trust on and after the Effective Date.

### 7. *Other Rights and Duties of the Liquidating Trustee*

In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust under the Plan and Liquidating Trust Agreement, on and after the Effective Date, the Liquidating Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court.

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtors and their Estates, in all forms including electronic and hard copy, other than the Debtors' Professionals' Documents; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or required.

The Liquidating Trustee shall be authorized to, and at the direction of the Liquidating Trust Oversight Committee shall, collect and liquidate all uncollected and unliquidated Liquidating Trust Assets, including the Liquidating Trust Actions and tax refunds.

Any and all rights to conduct investigations with respect to Causes of Action, Avoidance Actions or claims not released by the Debtors shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust, as if neither the Confirmation Date nor the Effective Date had occurred.

The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trustee.

### 8. *Disputed Claims Reserve*

The Liquidating Trustee may maintain, in accordance with the Liquidating Trustee's powers and responsibilities under the Plan and the Liquidating Trust Agreement, a Disputed Claims Reserve.  The Liquidating Trustee may, in his reasonable discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided in the Plan and in the Liquidating Trust Agreement, as Disputed Claims are resolved, and such amounts may be distributed to the corresponding Liquidating Trust Beneficiaries on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date.  On a quarterly basis, the Liquidating Trustee shall provide the Liquidating Trust Oversight Committee and the SEC with an update on the activity and current balance of the Disputed Claims Reserve.

### 9. *Wind-Down*

In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust, on and after the Effective Date, the Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve any Surviving Debtor.

As soon as practicable after the Effective Date, the Liquidating Trustee shall: (1) in the Liquidating Trustee's reasonable discretion, complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and pursuant to Section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (2) take such other actions as the Liquidating Trustee may determine to be necessary or desirable to carry out the purposes of the Plan.  From and after the Effective Date, the Debtors for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, shall be deemed to have cancelled pursuant to the Plan all Equity Interests, and shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  For the avoidance of doubt, the dissolution of the Debtors shall not have any effect, in any manner, on the Causes of Action and Avoidance Actions that the Liquidating Trustee may assert or substitute into as plaintiff in

accordance with the Plan and the Liquidating Trust Agreement and notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims and as otherwise provided for in the Plan.

### 10.    *Post-Effective Date Reporting*

Beginning twenty (20) days after the first full quarter-end following the Effective Date and continuing thereafter so long as the Liquidating Trust shall remain in existence, the Liquidating Trustee shall File but not serve a "Chapter 11 Post-Confirmation Quarterly Operating Report" in a form substantially similar to the form promulgated by the Office of the United States Trustee.   Among other things, the report shall include a schedule of (a) the Liquidating Trust's receipts and disbursements, (b) all Liquidating Trust Assets held by the Liquidating Trust, and (c) all fees, income, and expenses related to the Liquidating Trust during the preceding calendar year.   The Liquidating Trustee's quarterly report shall be provided to the Liquidating Trust Oversight Committee upon Filing, and shall be available to any Liquidating Trust Beneficiary upon request in accordance with the Liquidating Trust Agreement.

### 11.    *Termination of the Liquidating Trust and Liquidating Trust Oversight Committee*

The Liquidating Trustee and members of the Liquidating Trust Oversight Committee shall be discharged and the Liquidating Trust and Liquidating Trust Oversight Committee shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Liquidating Trust Assets have been liquidated, (c) all  duties and obligations of the Liquidating Trustee hereunder have been fulfilled, (d) all Distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made, and (e) the Chapter 11 Cases of the Debtors have been closed, but in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion by the Liquidating Trustee within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service, to the extent required under applicable law at that time, that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the liquidation, recovery and Distribution of the Liquidating Trust Assets.   The Trustee may seek such an extension with the consent of the Oversight Committee or, to the extent the Trustee and the Oversight Committee do not agree, as ordered by the Bankruptcy Court.

### 12.    *Transfer of Liquidating Trust Interests*

Notwithstanding anything to the contrary in the Plan, Liquidating Trust Interests shall not be transferrable except upon death of the interest holder or by operation of law.

Disclosure Statement

13. ***Termination of the Liquidating Trustee***

The duties, responsibilities, and powers of the Liquidating Trustee shall terminate in accordance with the terms of the Liquidating Trust Agreement.

14. ***Exculpation; Indemnification***

The Liquidating Trust Indemnified Parties will be exculpated and indemnified by the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement; provided, that the Liquidating Trust Agreement shall not include indemnification for gross negligence, willful misconduct or fraud and shall not include indemnification or exculpation for breach of contract claims.

15. ***Release of Liens***

Except as otherwise provided by the Plan or in any contract, instrument, release or other agreement or document created or assumed in connection with the Plan, on the Effective Date all mortgages, deeds of trust, liens, pledges or other security interests against the property of the Debtors' Estates shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, liens, pledges or other security interests shall revert to the applicable Estate.

16. ***Subordination***

a. **Preservation of Subordination Rights by Estates**

Except as otherwise provided in the Plan, all subordination rights and claims relating to the subordination by the Debtors or the Liquidating Trustee of any Allowed Claim or Equity Interest shall remain valid, enforceable and unimpaired in accordance with Section 510 of the Bankruptcy Code or otherwise.

b. **Waiver by Creditors of all Subordination Rights**

Except as otherwise ordered by the Bankruptcy Court, each Holder of a Claim shall be deemed to have waived all contractual, legal and equitable subordination rights that they may have—whether arising under general principles of equitable subordination, Section 510(b) or (c) of the Bankruptcy Code, or otherwise—with respect to any and all Distributions to be made under the Plan, and all such contractual, legal or equitable subordination rights that each Holder has individually and collectively with respect to any such Distribution made pursuant the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights are permanently enjoined.

Disclosure Statement

### H. Procedures for Resolving Contingent, Unliquidated, and Undisputed Claims and Interests

#### 1. *Resolution of Disputed Claims*

##### a. Allowance of Claims and Equity Interests

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.

##### b. Prosecution of Objections to Claims or Equity Interests

Subject in all respects to the provisions of the Plan, other than with respect to Professional Fee Claims, prior to the Effective Date, the Debtors, and on or after the Effective Date, the Liquidating Trustee, upon consultation with the Liquidating Trust Oversight Committee, shall have the authority to File objections to Claims or Equity Interests, and to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtors' Estates to any and all Claims or Equity Interests, regardless of whether such Claims or Equity Interests are in a Class or otherwise.

Subject to the Plan, from and after the Effective Date, the Liquidating Trustee (a) may settle or compromise any Disputed Claim in accordance with the Liquidating Trust Agreement, with the consent of the Liquidating Trust Oversight Committee or, in the absence of such consent, by order of the Bankruptcy Court; and (b) shall succeed to the Debtors' rights with respect to any objections Filed by the Debtors that remain pending as of the Effective Date. From and after the Effective Date, the Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

##### c. Claims Estimation

Prior to the Effective Date the Debtors, and on and after the Effective Date, the Liquidating Trustee, with the consent of the Liquidating Trust Oversight Committee or, in the absence of such consent, by order of the Bankruptcy Court, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any

- 75 -

objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.

In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of Distributions, and the Liquidating Trustee may elect to pursue additional objections to the ultimate Distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 2.      *Disallowance of Claims*

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Liquidating Trustee (or the Claims Agent at the Liquidating Trustee's direction), and any Claim that has been amended may be adjusted thereon by the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 3.      *Amendments*

After the Confirmation Date, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that, even with such Bankruptcy Court authorization, a Claim may be amended by the Holder of such Claim solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority, except as provided in Section 7.03 of the Plan.

### 4.      *No Post-Petition Interest*

Unless otherwise specifically provided for in the Plan, by applicable law, or agreed to by, as applicable, the Debtors or the Liquidating Trustee, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim.  Without limiting the foregoing, interest shall not

accrue or be paid on any Claim after the Effective Date to the extent the final Distribution paid on account of such Claim occurs after the Effective Date.

## I.    Retention of Jurisdiction

Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law (provided, however, that notwithstanding the foregoing, with respect to all civil proceedings arising under the Bankruptcy Code or arising in or related to these Chapter 11 Cases and the Plan, the Bankruptcy Court shall have original but not exclusive jurisdiction, in accordance with Section 1334(b) of Title 28 of the United States Code), including, among other things, jurisdiction to:

(I)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim or Equity Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

(II)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the Professionals of the Liquidating Trust and Liquidating Trust Oversight Committee shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court, except as set forth in the Liquidating Trust Agreement;

(III)    hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(IV)    effectuate performance of and payments under the provisions of the Plan and enforce remedies upon any default under the Plan;

(V)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, these Chapter 11 Cases, any litigation rights or the Plan whether Filed or commenced before or after the Confirmation Hearing;

(VI)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(VII)   hear and determine any and all disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(VIII)   consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(IX)   issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(X)   enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(XI)   hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the schedules to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the schedules to the Plan, the Disclosure Statement, or the Confirmation Order;

(XII)   enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with these Chapter 11 Cases (whether or not these Chapter 11 Cases have been closed);

(XIII)   except as otherwise limited in the Plan, recover all assets of the Debtors and property of the Estates, wherever located;

(XIV)   hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(XV)   hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(XVI)   resolve any cases, controversies, suits, or disputes related to the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, and any Surviving Debtor, including to enter any orders resolving such cases, controversies, suits, or disputes and any attendant bar order or channeling injunction relating thereto; and

(XVII)   enter a final decree closing these Chapter 11 Cases.

1.    ***Reserved Rights to Seek Bankruptcy Court Approval***

Notwithstanding any provision of the Plan allowing an act to be taken without Bankruptcy Court approval, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which either of them may desire to have

explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidating Trust, including the administration, distribution, or proposed sale of any of the Liquidating Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion Filed by the Liquidating Trust, as applicable.

### 2. *Failure of the Bankruptcy Court to Exercise Jurisdiction*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to these Chapter 11 Cases, including the matters set forth in Section 11.01 of the Plan, the provisions of Article XI of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

### J. Settlement, Injunctions and Exculpations

### 1. *Compromise and Settlement of Claims, Equity Interests, and Controversies*

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Equity Interests, and Causes of Action and Avoidance Actions of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, Causes of Action and Avoidance Actions that arose before the Effective Date, any liability to the extent such Claims or Equity Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or proof of Interest based upon such debt, right, or Equity Interest is Filed or deemed Filed pursuant to Section 501 of the Bankruptcy Code; (b) a Claim or Equity Interest based upon such debt, right, or Equity Interest is Allowed pursuant to Section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Equity Interest has accepted the Plan. Any default by the Debtors or their Affiliates with respect to any Claim or Equity Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Equity Interests, subject to the occurrence of the Effective Date.

Disclosure Statement

2.    *Exculpation*

The Exculpated Parties shall neither have nor incur any liability to any Entity, including any Holder of a Claim or Equity Interest, for any act taken or omitted in connection with the Chapter 11 Cases, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or post-petition act taken or omitted in connection with or in contemplation of the restructuring or liquidation of the Debtors, except for acts or omissions that are the result of fraud, gross negligence, or willful misconduct; provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement. Without limiting the "Exculpation" provided under Section 12.02 of the Plan, the rights of any Holder of a Claim or Equity Interest to enforce rights arising under the Plan shall be preserved, including the right to compel payment of Distributions in accordance with the Plan.

3.    *Non-Discharge of Debtors; Property Dealt with by the Plan*

In accordance with Section 1141(d)(3)(A) of the Bankruptcy Code, the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Equity Interests against the Debtors. As such, no Person or Entity holding a Claim or an Equity Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Person under the Plan.

4.    *Injunction*

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES AND PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (a) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (b) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 12.02 OF THE PLAN (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION 12.02 OF THE PLAN); OR (c) ARE OTHERWISE STAYED, TREATED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES

OF ACTION, OR LIABILITIES; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; PROVIDED THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; PROVIDED, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIM OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.

5.    *Setoffs*

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be

agreed to by the Holder of a Claim or Equity Interest, may reduce, diminish, discount, compromise, or setoff against, and reduce the amount of, any Allowed Claim or Equity Interest on account of any Proof of Claim or other pleading Filed with respect thereto prior to the Confirmation Hearing and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Equity Interest (before any Distribution is made on account of such Allowed Claim or Equity Interest), any claims, rights, Causes of Action and Avoidance Actions of any nature that the Debtors' Estates may hold against the Holder of such Allowed Claim or Equity Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise), including any rights under Section 502(d) of the Bankruptcy Code, provided that neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trustee, as applicable, of any such claims, rights, Causes of Action and Avoidance Actions that the Debtors' Estates may possess against such Holder. In no event shall any Holder of Claims or Equity Interests be entitled to setoff any Claim or Equity Interest against any claim, right, Cause of Action or Avoidance Actions of the Debtors' Estates unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff. Further, nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtors' or the Liquidating Trustee' right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date and that the filing of a Proof of Claim was not sufficient.

### 6.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays provided for in these Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Debtors' bankruptcy cases are all closed except for the injunctions provided in Section 12.04 of the Plan, which shall be permanent injunctions.

### K.    Conditions Precedent to Confirmation and Effectiveness of the Plan

### 1.    *Conditions to Confirmation and Effectiveness*

### a.    Conditions to Confirmation

The following conditions precedent to the occurrence of the Confirmation Date must be satisfied unless any such condition shall have been waived by the Plan Proponents in accordance with Section 13.03 of the Plan:

(i)    The Confirmation Order shall have been entered in form and substance satisfactory to the Plan Proponents;

(ii)    The Liquidating Trust Agreement and Plan Supplement, including any amendments, modifications, or supplements thereto shall be in form and substance materially consistent with the Plan in all respects and agreed to by the Plan Proponents;

- 82 -

(iii)    The Bankruptcy Court finds that adequate information and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with all deadlines for voting on or objecting to the Plan has been given to all relevant parties in accordance with the solicitation procedures governing such service and in substantial compliance with Bankruptcy Rules 2002(b), 3017 and 3020(b).

**b.**    **Conditions to Effectiveness**

The following conditions precedent to the occurrence of the Effective Date must be satisfied unless any such condition shall have been waived by the Plan Proponents in accordance with Section 13.03 of the Plan:

(i)    the Confirmation Order shall have been entered in form and substance satisfactory to the Plan Proponents and shall be a Final Order;

(ii)    all actions and all agreements, instruments and other documents necessary to implement the Plan and any Plan Transaction shall have been effected or executed;

(iii)    the Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or other approvals or documents necessary to implement the Plan and any Plan Transactions that are required by law, regulation or order, if any;

(iv)    the absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any Plan Transactions

(v)    the Liquidating Trust Agreement shall be executed and effective;

(vi)    the Disputed Claims Reserve shall be fully funded as provided in the Plan; and

(vii)    the conditions to Confirmation shall have been satisfied or waived.

**2.**    *Notice of Occurrence of the Effective Date*

The Debtors or Liquidating Trustee shall File a notice of the occurrence of the Effective Date within five (5) Business Days after the Effective Date; provided, that failure to timely File such notice shall not affect the occurrence of the Effective Date.

### 3.  *Waiver of Conditions*

Each of the conditions set forth in Article XIII of the Plan may be waived in whole or in part by written agreement of the Plan Proponents without any notice to parties-in-interest or the Bankruptcy Court and without a hearing.

### 4.  *Consequences of Non-Occurrence of Effective Date*

If the Confirmation Order is vacated, (a) the Plan shall be null and void in all respects; (b) any settlement of Claims or Equity Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) to the extent permitted under the Bankruptcy Code, the time within which the Debtors may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of forty-five (45) days after the date the Confirmation Order is vacated.

## L.  Miscellaneous Provisions

### 1.  *Administrative Claims*

All Administrative Claims (other than Professional Fee Claims) must be made by application Filed with the Bankruptcy Court and served on counsel for the Debtors and the Liquidating Trustee no later than the Administrative Claims Bar Date or their Administrative Claim shall be forever barred.  In the event that the Liquidating Trustee or Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

With respect to Administrative Claims, the last day for Filing an objection to any Administrative Claim will be the Claims Objection Deadline.

### 2.  *Modifications and Amendments*

Subject to the limitations contained in the Plan, the Plan Proponents reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, but only until the Effective Date and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIV hereof.

After the Effective Date, the Liquidating Trustee can modify the Plan only in accordance with Section 1127 of the Bankruptcy Code and applicable law; *provided*, *however*, that whether before or after the Effective Date, the Debtors or the Liquidating Trustee, as applicable, and without the need to resolicit votes on such modified Plan, may modify the Plan to

- 84 -

provide for (i) Distributions to be made to Holders of Class 5 Claims if the Liquidating Trust Beneficiaries (on account of Allowed Class 4A Claims and Class 4B Claims) are paid in full, (ii) a bar order or channeling injunction in connection with the compromise or settlement of a Cause of Action, or (iii) assignability and transferability of Liquidating Trust Interests to the extent permitted by and in compliance with applicable law.

### 3.    *Severability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 4.    *Successors and Assigns and Binding Effect*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Entity, including the Liquidating Trustee and all other parties-in-interest in these Chapter 11 Cases such as Holders of Claims and Equity Interests and the Liquidating Trust Beneficiaries.

### 5.    *Revocation, Withdrawal or Non-Consummation*

The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans.  If the Plan Proponents revoke or withdraw the Plan prior to the Confirmation Date, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of (x) any Claims against, or any Equity Interests in, the Debtors, or (y) any Avoidance Actions, litigation rights or other claims by or against the Debtors, the Creditors' Committee or any Entity, (ii) prejudice in any manner the rights of the Debtors, the Creditors' Committee, or any Entity in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors, the Creditors' Committee, or any other Entity.

6. ***Plan Supplement***

The Plan Supplement shall be Filed with the Bankruptcy Court and posted on the Claims Agent's website at https://dm.epiq11.com/OGC (the "**Website**") at least ten (10) days prior to the Voting Deadline or by such later date as may be established by order of the Bankruptcy Court. Upon such Filing and posting on the Website, all documents set forth in the Plan Supplement may be accessed on the Website or inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. Holders of Claims or Equity Interests may also obtain a copy of any document set forth in the Plan Supplement upon written request to the Debtors in accordance with Section 14.08 of the Plan.

7. ***Continued Confidentiality Obligations***

Notwithstanding any other provision of the Plan, all members of and advisors to the Creditors' Committee, any other holder of a Claim or Equity Interest and their respective predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with these Chapter 11 Cases or the Debtors, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date for a period of one (1) year.

8. ***Notices***

Any notice, request, or demand required or permitted to be made or provided under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

> Greenberg Traurig, P.A.
> Attn: Paul J. Keenan Jr.
> John R. Dodd
> 333 S.E. 2nd Avenue
> Suite 4400
> Miami, Florida 33131
> Telephone: (305) 579-0500
> Facsimile: (305) 579-0717

If to the Creditors' Committee:

> Stichter, Riedel, Blain & Postler, P.A.
> Attn: Russell M. Blain
> Barbara A. Hart
> 110 East Madison St., Ste. 200
> Tampa, FL 33602
> Telephone: (813) 229-0144

- 86 -

Facsimile: (813) 229-1811

**9.    *Computation of Time***

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

**10.    *Governing Law***

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Florida shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation of the Debtors shall govern corporate governance matters with respect to the Debtor; in each case without giving effect to the principles of conflicts of law thereof.

**11.    *Exhibits***

All exhibits to the Plan and Disclosure Statement or the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full therein, and, to the extent not annexed thereto, such exhibits shall be Filed with the Bankruptcy Court on or before the date of the Filing of the Plan Supplement, and will then be posted on the Website.  Upon such Filing and posting on the Website, all exhibits may be accessed on the Website or inspected in the office of the Clerk of the Bankruptcy Court during normal business hours.  Holders of Claims or Equity Interests may also obtain a copy of any exhibit upon written request to the Debtors in accordance with Section 14.08 of the Plan.  To the extent any exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit portion of the Plan shall control.

**12.    *Conflicts***

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or any exhibits, schedules, appendices, supplements or amendments to the foregoing conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.  To the extent of any inconsistency between the Plan and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

**13.    *Exemption***

Under Section 1145 of the Bankruptcy Code, the issuance of the Liquidating Trust Interests and any other securities under the Plan shall be exempt from registration under the Securities Act of 1933, as amended and all applicable state and local laws requiring registration of securities.  If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such

- 87 -

reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

### 14. *Substitution of the Liquidating Trust for the Debtors*

On the Effective Date, the Liquidating Trust shall be deemed to be substituted as the party in lieu of the Debtors in all pending matters including (a) motions, contested matters and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court without the need or requirement for the Liquidating Trust to file motions or substitutions of parties and counsel.

## VIII.   CERTAIN RISK FACTORS TO BE CONSIDERED

THE IMPLEMENTATION OF THE PLAN IS SUBJECT TO A NUMBER OF MATERIAL RISKS, INCLUDING, AMONG OTHERS, THOSE ENUMERATED BELOW. IN EVALUATING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, HOLDERS OF CLAIMS AGAINST THE DEBTORS SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE IN THE PLAN), BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.  THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS ASSOCIATED WITH THE PLAN AND ITS IMPLEMENTATION, OR ALTERNATIVES TO THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

### A.    Certain Litigation Risks

The implementation of the Plan is subject to a number of material risks, including the risk that the SEC may seek to enforce its monetary claim for disgorgement plus prejudgment interest.  In light of these risks and uncertainties, certain events and circumstances discussed in this Disclosure Statement may not occur, and the Debtors cannot guarantee that the ultimate resolution of any claims or legal actions will not have a material adverse effect on the implementation of the Plan.  Prior to voting on the Plan, each party entitled to vote should carefully consider these risks, as well as all of the information contained in this Disclosure Statement.

The Liquidating Trust may be subject to various claims and legal actions arising in the ordinary course of their businesses.  The Debtors are not able to predict the nature and extent of any such claims or legal actions, and cannot guarantee that the ultimate resolution of such claims or legal actions will not have a material adverse effect on the Liquidating Trust.

### B.    Certain Bankruptcy Considerations

#### 1.    *Non-Confirmation or Delay of Confirmation of the Plan*

The Bankruptcy Court, which sits as a court of equity, may exercise substantial discretion when deciding whether to confirm the Plan.  Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a plan of reorganization or liquidation.  Although the Plan Proponents believe that the Plan will satisfy all of the requirements for Confirmation under Section 1129 of the Bankruptcy Code, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  Moreover, there can be no assurance that modifications to the Plan will not be required for Confirmation or that such modifications would not be sufficiently material as to require the resolicitation of votes on the Plan.

In the event that any Class of Claims entitled to vote fails to accept the Plan in accordance with Section 1126(c) and 1129(a)(8) of the Bankruptcy Code, the Debtors reserve the right to:  (a) request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code; and/or (b) modify the Plan in accordance with the terms thereof.  The Plan Proponents believe that the Plan satisfies the requirements for non-consensual Confirmation set forth in Section 1129(b) of the Bankruptcy Code because it does not "discriminate unfairly" and is "fair and equitable" with respect to the Classes that reject or are deemed to reject the Plan, however, there can be no assurance that the Bankruptcy Court will reach the same conclusion, or that any other party in interest in the Chapter 11 Cases will not challenge Confirmation on such grounds.

There can be no assurance that the Plan will be confirmed.  If the Plan is not confirmed, there can be no assurance that the Chapter 11 Cases will continue rather than be converted to chapter 7 liquidation cases or that any alternative plan of reorganization or liquidation would be on terms as favorable to the Holders of Claims against and Equity Interests in the Debtors as the terms of the Plan.  If a liquidation or protracted reorganization of the Debtors' Estates were to occur, there is a substantial risk that the Debtors' going concern value would be substantially eroded to the detriment of all stakeholders.

Likewise, there can be no assurance with respect to timing of the Effective Date, or as to whether the Effective Date will, in fact, occur.  The occurrence of the Effective Date is subject to certain conditions precedent as described in the Plan, and consummation of the Plan may not occur if any of these conditions are not met.  In the event that the Effective Date does not occur, there can be no assurance that the Chapter 11 Cases will continue rather than be converted to chapter 7 liquidation cases or that any alternative plan of reorganization or liquidation would be on terms as favorable to the Holders of Claims against or Equity Interests in the Debtors as the terms of the Plan.  If a liquidation or protracted reorganization of the Debtors' Estates were to occur, there is a substantial risk that the Debtors' going concern value or the value of its assets would be eroded to the detriment of all stakeholders.

If the Confirmation Order is vacated or the Plan does not become effective, (a) the Plan shall be null and void in all respects; (b) any settlement of Claims or Equity Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) to the extent permitted under the Bankruptcy Code, the time within which the Debtors may

assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of one forty-five (45) days after the date the Confirmation Order is vacated.

## 2. *Classification and Treatment of Claims and Equity Interests*

Section 1122 of the Bankruptcy Code requires that a plan of reorganization or liquidation classify claims against, and interests in, a debtor. The Bankruptcy Code also provides that a plan of liquidation may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Plan Proponents believe that all Claims against and Equity Interests in the Debtors have been appropriately classified in the Plan.

To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Plan Proponents presently anticipate that they would seek (i) to modify the Plan to provide for any reclassification that may be required for Confirmation and (ii) to use the acceptances received from any Creditor pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Creditor ultimately is deemed to be a member. Any such reclassification of Creditors, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Creditor was initially a member, or any other Class under the Plan, by changing the composition of such Class and, as a result, the votes required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan after such reclassification. Except to the extent that a modification of classification in the Plan requires resolicitation, the Plan Proponents will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder regardless of the Class as to which such Holder is ultimately deemed to be a member. The Plan Proponents believe that under the Bankruptcy Rules they would be required to resolicit votes for or against the Plan only when a modification adversely affects the treatment of the Claim of any Creditor or Equity Interest Holder.

The Bankruptcy Code also requires that a plan of reorganization or liquidation provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of its claim or interest. The Plan Proponents believe that the Plan meets this requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Plan does not satisfy such requirement, the Bankruptcy Court may deny Confirmation of the Plan.

Issues or disputes relating to classification and/or treatment may delay Confirmation and consummation of the Plan, and may increase the risk that the Plan will not be confirmed or consummated.

## 3. *Claims Estimation*

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, reserve the right to object to or seek to estimate the amount or classification

of any Claim or Equity Interest except any such Claim or Equity Interest that is deemed Allowed under the Plan or except as otherwise provided in the Plan. There can be no assurance that any estimated Claim amounts set forth in this Disclosure Statement are correct. The actual Allowed amount of Claims will likely differ in some respect from the estimates set forth herein, or in any exhibit attached hereto, including the Plan. The estimated amounts are subject to certain risks, uncertainties, and assumptions. Should one or more of these risks or uncertainties materialize, or should the underlying assumptions prove incorrect, the actual Allowed amount of Claims may differ in some respect from the estimates set forth herein, or in any exhibit attached hereto, including the Plan.

### C.      Certain Tax Considerations

There are a number of income tax considerations, risks, and uncertainties associated with consummation of the Plan. Interested parties should read carefully the discussions set forth in Section IX of this Disclosure Statement regarding certain U.S. federal income tax consequences of the transactions proposed by the Plan to the Debtors and the Liquidating Trust and to certain Holders of Claims and Equity Interests in the Debtors who are entitled to vote to accept or reject the Plan.

## IX.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion summarizes certain anticipated U.S. federal income tax consequences of the Plan to the Debtors and Holders of Claims and Equity Interests. This summary is provided for information purposes only and is based on the Internal Revenue Code of 1986, as amended (the "**Tax Code**"), Treasury regulations promulgated thereunder, judicial authorities, and current administrative rulings and practice, all as in effect as of the date hereof, and all of which are subject to change, possibly with retroactive effect, that could adversely affect the U.S. federal income tax consequences described below.

This summary does not address all aspects of U.S. federal income taxation that may be relevant to a particular Holder of a Claim or Equity Interest in the Debtors in light of its particular facts and circumstances or to certain types of Holders of Claims or Equity Interests subject to special treatment under the Tax Code (for example, non-U.S. taxpayers, financial institutions, broker-dealers, life insurance companies, tax-exempt organizations, real estate investment trusts, regulated investment companies, grantor trusts, persons holding a Claim as part of a "hedging," "integrated," or "constructive" sale or straddle transaction, persons holding claims through a partnership or other pass through entity, persons that have a "functional currency" other than the U.S. dollar, and persons who acquired or expect to acquire either an equity interest or other security in a Debtor or a Claim in connection with the performance of services). In addition, this summary does not discuss any aspects of state, local, estate and gift or non-U.S. taxation.

A substantial amount of time may elapse between the date of this Disclosure Statement and the receipt of a final Distribution under the Plan. Events occurring after the date of this Disclosure Statement, such as additional tax legislation, court decisions, or administrative changes, could affect the U.S. federal income tax consequences of the Plan and the transactions contemplated thereunder. There can be no assurance that the IRS will not take a contrary view

with respect to one or more of the issues discussed below.  No ruling will be sought from the IRS with respect to any of the tax aspects of the Plan, and no opinion of counsel has been or will be obtained by the Debtors with respect thereto.

Accordingly, the following summary of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a Holder of a Claim or Equity Interest in the Debtors.  All Holders of Claims or Equity Interests in the Debtors are urged to consult their own tax advisors for the federal, state, local and other tax consequences applicable to them under the Plan.

**EACH HOLDER IS HEREBY NOTIFIED THAT:  (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A HOLDER UNDER THE TAX CODE; (B) SUCH DISCUSSION IS INCLUDED HEREBY BY THE DEBTORS IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN OR THE PLAN; AND (C) EACH HOLDER SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### A.    U.S. Federal Income Tax Consequences to the Debtors and the Liquidating Trust

The Liquidating Trust is a grantor trust and as such, it is not subject to tax, but rather the grantors of the trust recognize the income of the trust as their interests appear.  The contributions of the claims to the Liquidating Trust in exchange for the Liquidating Trust units is a taxable exchange measured by the value of the interest received reduced by the basis of the claim contributed.  Typically, accrual basis tax payers recognized the income when they rendered their services, and the recognition gives them a basis equal to their claim, thus the receipt of the Liquidating Trust interest or the case on the redemption of the unit, up to the amount of claimed basis, is not taxable.  If the claim holder had written off the claim as a bad debt or is a cash basis tax payer, the receipt of the Liquidating Trust unit will be taxable to the amount of the claim and the receipt of the cash on liquidation of the unit will not be taxable up-to the amount of claimed basis.

### B.    U.S. Federal Income Tax Consequences to the Holders of Claims

The U.S. federal income tax consequences to Holders of Allowed Claims in the Debtors arising from the Distributions to be made in satisfaction of their Claims pursuant to the Plan may vary, depending upon, among other things:  (a) the type of consideration received by the Holder of a Claim in the Debtors in exchange for such Claim; (b) the nature of such Claim; (c) whether the Holder has previously claimed a bad debt or worthless security deduction in respect of such Claim; (d) whether such Claim constitutes a security; (e) whether the Holder of such Claim in the Debtors is a citizen or resident of the United States for tax purposes, or otherwise subject to U.S. federal income tax on a net income basis; (f) whether the Holder of

Disclosure Statement

such Claim in the Debtors reports income on the accrual or cash basis; and (g) whether the Holder of such Claim in the Debtors receives Distributions under the Plan in more than one taxable year. For tax purposes, the modification of a Claim may represent an exchange of the Claim for a new Claim, even though no actual transfer takes place. In addition, where gain or loss is recognized by a Holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the Holder, whether the Claim constitutes a capital asset in the hands of the Holder and how long it has been held or is treated as having been held, whether the Claim was acquired at a market discount, and whether and to what extent the Holder previously claimed a bad debt deduction with respect to the underlying Claim. A Holder who purchased its Claim from a prior Holder at a market discount may be subject to the market discount rules of the Tax Code, as described below.

### 1.    *Accrued but Unpaid Interest*

In general, to the extent a Holder of a Claim receives property in satisfaction of interest accrued during the holding period of such instrument, if any, such amount will be taxable to the Holder as interest income (if not previously included in the holder's gross income). Conversely, such a Holder generally recognizes a deductible loss to the extent that any accrued interest claimed was previously included in its gross income and is not paid in full.

The extent to which property received by a Holder of a Claim will be attributable to accrued but unpaid interest is unclear. Pursuant to the Plan, all Distributions in respect of any Allowed Claim will be allocated first to the principal amount of such Allowed Claim, and thereafter to accrued but unpaid interest, if any. Certain legislative history indicates that an allocation of consideration between principal and interest provided for in a chapter 11 plan is binding for U.S. federal income tax purposes. There is no assurance, however, that such allocation will be respected by the IRS for U.S. federal income tax purposes. If a distribution with respect to a Claim is allocated entirely to the principal amount of such Claim, a Holder may be entitled to claim a loss to the extent of any accrued but unpaid interest on the Claim that was previously included in the Holder's gross income.

Each Holder of an Allowed Claim is urged to consult its tax advisor regarding the allocation of consideration and the deductibility of previously included unpaid interest and OID for tax purposes.

### 2.    *Market Discount*

Holders of Claims who receive consideration in exchange for their claims may be affected by the "market discount" provisions of Sections 1276 through 1278 of the Tax Code. Under these provisions, some or all of the gain realized by a Holder may be treated as ordinary income (instead of capital gain), to the extent of the amount of accrued "market discount" on such Allowed Claims.

In general, a debt obligation with a fixed maturity of more than one year that is acquired by a holder on the secondary market (or, in certain circumstances, upon original issuance) is considered to be acquired with "market discount" as to that holder if the debt

obligation's stated redemption price at maturity (or revised issue price as defined in Section 1278 of the Tax Code, in the case of a debt obligation issued with original issue discount) exceeds the tax basis of the debt obligation in the holder's hands immediately after its acquisition. However, a debt obligation is not a "market discount bond" if the excess is less than a statutory de minimis amount (equal to 0.25% of the debt obligation's stated redemption price at maturity or revised issue price, in the case of a debt obligation issued with original issue discount, multiplied by the number of complete years remaining until maturity at the time of the acquisition).

Any gain recognized by a Holder on the taxable disposition of Allowed Claims (determined as described above) that were acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while the Allowed Claims were considered to be held by the Holder (unless the Holder elected to include market discount in income as it accrued).

### C.    Information Reporting and Backup Withholding

Certain payments, including certain payments of Claims pursuant to the Plan, payments of interest, and the proceeds from the sale or other taxable disposition of the Claims and Equity Interests may be subject to information reporting to the IRS. Moreover, such reportable payments may be subject to backup withholding unless the taxpayer: (i) comes within certain exempt categories (which generally include corporations) or (ii) provides a correct taxpayer identification number and otherwise complies with applicable backup withholding provisions. In addition, Treasury regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds.

Backup withholding is not an additional tax. Any amounts withheld under the backup withholding rules will be allowed as a refund or a credit against a Holder's U.S. federal income tax liability, provided that the required information is furnished to the IRS on a timely basis. Holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the Holders' tax returns. The Liquidating Trust Beneficiaries will be required to provide appropriate withholding forms.

### D.    Information for Investors Who Invested Through Individual Retirement Plans

Unless (i) an Investor's Ballot identifies that Distributions on account of the Investor's Allowed Class 4A Claim will be made to the custodian for such Investor's IRA or (ii) an Investor notifies the Debtors in a signed writing before the Effective Date that (a) the Investor funded its Class 4A Claim from its IRA and (b) instructs the Debtors that Distributions on account of such Class 4A Claim should be disbursed to the custodian of the IRA, the Liquidating Trustee shall not be required to make Distributions to the custodian of the Investor's IRA, if any. Investors should consult their individual tax advisors regarding the consequences of taking such Distributions.

E.      **Importance of Obtaining Your Own Professional Tax Assistance**

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE.  THE TAX CONSEQUENCES ASSOCIATED WITH THE PLAN ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES.   ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE, LOCAL AND NON-U.S. INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## X.      FEASIBILITY OF THE PLAN AND BEST INTERESTS OF CREDITORS

A.      **Feasibility of the Plan**

Section 1129(a)(11) of the Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan of reorganization is not likely to be followed by liquidation or the need for further financial reorganization.  For purposes of determining whether the Plan meets this requirement, the Bankruptcy Court should consider that the objective of the Plan is to fund and implement the Liquidating Trust.

B.      **Acceptance of the Plan**

A condition to Confirmation, the Bankruptcy Code requires that each Class of Claims or Equity Interests that is Impaired, but still receives a Distribution under the Plan vote to accept the Plan, except under certain circumstances set forth in Section 1129(b) of the Bankruptcy Code.

A class is impaired unless the plan of reorganization or liquidation leaves unaltered the legal, equitable and contractual rights of the holder of such claim.  Pursuant to Sections 1126(c) and 1126(d) of the Bankruptcy Code, and except as otherwise provided for in Section 1126(e) of the  Bankruptcy Code:  (i) an impaired class of claims has accepted the plan of reorganization if the holders of at least two-thirds (2/3) in amount and more than half (1/2) in number of the voting allowed claims have voted to accept the plan of reorganization and (ii) an impaired class of interests has accepted the plan of reorganization if the holders of at least two-thirds (2/3) in amount of the allowed interests of such class have voted to accept the plan.  Thus, Holders of Claims in Class 4A and Class 4B will have voted to accept the Plan only if two-thirds (2/3) in amount and a majority in number of the Claims actually voting in each Class cast their ballots in favor of acceptance.  Holders of Claims who fail to vote are not counted as either accepting or rejecting a plan.

Holders of Claims in Class 3 are Unimpaired by the Plan, and such Holders are conclusively presumed to have accepted the Plan and will not be entitled to vote to accept or reject the Plan.  Holders of Claims in Class 5, Class 6, Class 7, Class 8, and Equity Interests in Class 9 shall receive no Distribution under the Plan, and such Holders are conclusively presumed to have rejected the Plan and will not be entitled to vote to accept or the Plan.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

## C.    Best Interests Test

As noted above, even if a plan of reorganization or liquidation is accepted by each class of claims and interests, the Bankruptcy Code requires a bankruptcy court to determine that such plan of liquidation is in the best interests of all holders of claims or interests that are impaired by the plan and that have not accepted the plan. The "best interests" test, as set forth in Section 1129(a)(7) of the Bankruptcy Code, requires a bankruptcy court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if a debtor were liquidated under chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from the debtor's assets if its chapter 11 case was converted to a chapter 7 case under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's assets by a chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced first, by the claims of secured creditors to the extent of the value of their collateral and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the chapter 7 case and the chapter 11 case. Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred by the debtor in its chapter 11 case (such as compensation of attorneys, financial advisors, and accountants) that are allowed in the chapter 7 case, litigation costs, and claims arising from the operations of the debtor during the pendency of the chapter 11 case. The liquidation itself would trigger certain priority payments that otherwise would be due in the ordinary course of business. Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims or to make any distribution in respect of equity security interests. The liquidation would also prompt the rejection of a large number of executory contracts and unexpired leases and thereby significantly enlarge the total pool of unsecured claims by reason of resulting rejection damages claims.

Once the bankruptcy court ascertains the recoveries in liquidation of secured creditors and priority claimants, it must determine the probable distribution to general unsecured creditors and equity security holders from the remaining available proceeds in liquidation. If such probable distribution has a value greater than the distributions to be received by such creditors and equity security holders under the plan, then the plan is not in the best interests of creditors and equity security holders.

Disclosure Statement

### D.    Application of the "Best Interests" of Creditors Test to the Liquidation Analysis and Valuation

The Plan Proponents believe that the Plan described in this Disclosure Statement will result in a substantially greater recovery to Holders of Claims in Impaired Classes than the recovery available in a chapter 7 liquidation.  Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan.  However, the Debtors believe that in a chapter 7 liquidation, there would be additional costs and expenses that the Estates would incur as a result of liquidating the Estates in a chapter 7 case.  Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, all unpaid expenses incurred by the Debtors in the Chapter 11 Cases that are allowed in the chapter 7 cases, litigation costs, and claims arising from the operations of the Debtors during the pendency of the Chapter 11 Cases.

Appointment of a chapter 7 trustee and the hiring of new professionals would add additional costs and delays, and likely significantly reduce potential distributions to Holders of Claims against the Debtors.  Conversion to chapter 7 of the Bankruptcy Code would also mean the establishment of a new claims bar date, which could result in new Claims being asserted against the Estates, which could further reduce potential Creditor recoveries.  Finally, absent the Plan, the Debtors would be forced to expend Estate resources to litigate Estate Causes of Action and Avoidance Actions, reducing the value available to Creditors in these Chapter 11 Cases.  Accordingly, the Plan Proponents believe that the Plan satisfies the "best interests" test of Section 1129 of the Bankruptcy Code.

### E.    Confirmation Without Acceptance of All Impaired Classes:  The "Cramdown" Alternative

In the event that any of Class 4A or Class 4B does not vote to accept the Plan, the Plan Proponents may seek Confirmation of the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code.  Specifically, Section 1129(b) of the Bankruptcy Code provides that a plan of reorganization may be confirmed even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it.  A bankruptcy court may confirm a plan of reorganization at the request of the debtors, if the plan of reorganization "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted the plan.  A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other classes of equal rank.  The Plan Proponents believe that the Plan does not discriminate unfairly with respect to the Claims in Class 4A and Class 4B.

A plan of reorganization or liquidation is fair and equitable as to a class of unsecured claims that rejects such a plan if the plan provides:  (i) for each holder of a claim that is a member of the rejecting class to receive or retain, on account of that claim, property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim or (ii) that the holder of any claim or interest that is junior to the claims of such class will not receive or retain, on account of such junior claim or interest, any property at all.

Disclosure Statement

A plan of reorganization or liquidation is fair and equitable as to a class of equity interests that rejects such a plan if the plan provides: (i) that each holder of an interest that is a member of the rejecting class receive or retain, on account of that interest, property that has a value, as of the effective date of the plan, equal to the greatest of (a) the allowed amount of any fixed liquidation preference to which such holder is entitled, (b) any fixed redemption price to which such holder is entitled, or (c) the value of such interest; or (ii) that the holder of any interest that is junior to the interests of such class will not receive or retain, on account of such junior interest, any property at all.

The Plan Proponents believe that they will meet the "fair and equitable" requirements of Section 1129(b) of the Bankruptcy Code with respect to Holders of Claims and Equity Interests in Class 9 and that the Plan satisfies the foregoing requirements for nonconsensual Confirmation with respect to Class 4A and Class 4B.

## XI.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Plan Proponents believe that the Plan affords Holders of Claims in Class 4A and Class 4B the potential for the greatest realization on the Assets and, therefore, is in the best interests of such Holders.  If, however, the requisite acceptances are not received or the Plan is not confirmed and consummated, certain restructuring alternatives may exist including, but not limited to, (a) formulation of an alternative plan or plans of reorganization or (b) liquidation of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

### A.    Alternative Plan(s) of Reorganization

If the requisite acceptances to confirm the Plan are not received from the Holders entitled to vote to accept or reject the Plan, or if the Plan is not confirmed by the Bankruptcy Court, the Debtors could formulate and propose a different plan of liquidation.

The Plan Proponents believe that the Plan enables Creditors to realize the greatest possible value under the circumstances and has the greatest likelihoods of consummation.

### B.    Liquidation under Chapter 7

If no plan of liquidation, including the Plan, is confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the Assets for distribution in accordance with the priorities established by the Bankruptcy Code.  It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective Holders of Claims against or Equity Interests in the Debtors, in large part because of the significant adverse impact to the value of the MCAs if the Debtors ceased operations.

As described above, the Plan Proponents believe that, in a liquidation under chapter 7, additional administrative expenses involved with the appointment of a trustee or trustees and attorneys, accountants, and other professionals to assist such trustees would cause a substantial diminution in the value of the Estates.  The assets available for distribution to Creditors would be reduced by such additional expenses and by Claims, some of which would be

entitled to priority, arising by reason of the liquidation and from the rejection of Unexpired Leases and other Executory Contracts in connection with the cessation of operations and the failure to realize the greater going concern value of the Assets.

[*Remainder of Page Left Intentionally Blank*]

Disclosure Statement

## RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Plan Proponents believe that Confirmation and consummation of the Plan are preferable to all other alternative restructuring options.  Consequently, the Plan Proponents urge all Holders of Claims in Class 4A and Class 4B to vote to ACCEPT the Plan, and to complete and return their ballots so that they will be RECEIVED by the Voting Agent on the Voting Deadline.

1 Global Capital LLC and 1 West Capital LLC

*/s/ Bradley D. Sharp*
By: Bradley D. Sharp
Chief Restructuring Officer


Paul J. Keenan Jr. (Fla. Bar No. 059468)
John R. Dodd (Fla. Bar No. 38091)
GREENBERG TRAURIG, LLP
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: 305-579-0500
Facsimile:  305-579-0717
Email:  keenanp@gtlaw.com
Email:  doddj@gtlaw.com

*Counsel for the Debtors and Debtors-in-Possession*


Russell M. Blain (Fla. Bar No. 236314)
Barbara A. Hart (Fla. Bar No. 512036)
STICHTER, RIEDEL, BLAIN & POSTLER, P.A.
110 East Madison St., Suite 200
Tampa, FL 33602-4700
Telephone: (813) 229-0144
Facsimile: (813) 229-1811
Email:  rblain@srbp.com
Email:  bhart@srbp.com

*Counsel for the Official Committee of Unsecured Creditors*


Dated: June 17, 2019

Disclosure Statement

## **EXHIBIT A**

**THIS PLAN _HAS_ _NOT_ BEEN APPROVED BY THE BANKRUPTCY COURT**

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

### JOINT PLAN OF LIQUIDATION OF 1 GLOBAL CAPITAL LLC AND 1 WEST CAPITAL LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Paul J. Keenan Jr. (Fla. Bar No. 0594687)
John R. Dodd (Fla. Bar No. 38091)
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue
Suite 4400
Miami, Florida 33131
Telephone:  (305) 579-0500
keenanp@gtlaw.com
doddj@gtlaw.com

*Counsel for the Debtors and Debtors-in-Possession*

Russell M. Blain (Fla. Bar No. 236314)
Barbara A. Hart (Fla. Bar No. 512036)
STICHTER, RIEDEL,
BLAIN & POSTLER, P.A.
110 East Madison St., Ste. 200
Tampa, FL 33602
Telephone: (813) 229-0144
rblain@srbp.com
bhart@srbp.com

*Counsel for the Official Committee of Unsecured Creditors*

Dated:  June 17, 2019

---

[1]   The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  1 Global Capital LLC, d/b/a 1 GC Collections, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, d/b/a 1 West Collections, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711).  On February 19, 2019, the Debtors registered the fictitious names "1 GC Collections" and "1 West Collections" with the Florida Department of State.

# TABLE OF CONTENTS

Page

ARTICLE I: DEFINED TERMS AND RULES OF INTERPRETATION ....................................1
ARTICLE II: CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS.........................15

    Section 2.01    Classification........................................................................................15
    Section 2.02    Consolidation of Debtors for Purposes of Voting, Confirmation
                  and Distribution .............................................................................15

ARTICLE III: TREATMENT OF CLAIMS AND EQUITY INTERESTS ...............................16

    Section 3.01    General..................................................................................................16
    Section 3.02    Unclassified Claims .............................................................................16
    Section 3.03    Voting Classes of Claims against the Debtors.......................................17
    Section 3.04    Non-Voting Classes of Claims against and Equity Interests in the
                  Debtors ...........................................................................................18

ARTICLE IV: ACCEPTANCE OR REJECTION OF THE PLAN.........................................21

    Section 4.01    Impaired Classes of Claims Entitled to Vote......................................21
    Section 4.02    Acceptance by an Impaired Class .......................................................21
    Section 4.03    Presumed Acceptances by Unimpaired Classes ..................................21
    Section 4.04    Presumed Rejection by Certain Classes..............................................21
    Section 4.05    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.........21
    Section 4.06    Elimination of Vacant Classes ...........................................................22

ARTICLE V: SETTLEMENTS AND COMPROMISES ........................................................22

    Section 5.01    Compromise and Settlement of Investor Principal Claims......................22
    Section 5.02    Orders in Aid of Compromise and Settlement.........................................22

ARTICLE VI: MEANS FOR IMPLEMENTATION OF THE PLAN .......................................22

    Section 6.01    Liquidating Trust .................................................................................22
    Section 6.02    Liquidating Trust Oversight Committee.................................................23
    Section 6.03    Funding for the Plan.............................................................................24
    Section 6.04    Funding of Reserves ...........................................................................24
    Section 6.05    Corporate Action.................................................................................24
    Section 6.06    Directors, Officers and Managers ........................................................24
    Section 6.07    Debtors' Professionals ........................................................................25
    Section 6.08    Effectuating Documents; Further Transactions .........................................25
    Section 6.09    Exemption from Certain Taxes and Fees..............................................25
    Section 6.10    Assignment of Assigned Investor Claims.............................................25
    Section 6.11    Preservation, Pursuit and Resolution of Liquidating Trust Actions ..........26
    Section 6.12    Continued Retention of PBYA ............................................................26
    Section 6.13    The Surviving Debtor(s) Pending the Closing of the Cases ....................27
    Section 6.14    Closing of the Debtors' Cases..............................................................27
    Section 6.15    Cancellation of Existing Agreements and Existing Stock and/or
                  Membership Interests .......................................................................28

| | | |
|---|---|---|
| Section 6.16 | Operations of the Debtors Between the Confirmation Date and the Effective Date | 28 |
| Section 6.17 | Dissolution of Certain Debtors | 28 |
| Section 6.18 | Change of Debtors' Names | 28 |
| Section 6.19 | Dissolution of the Creditors' Committee | 28 |

**ARTICLE VII: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .................................................................................................29

| | | |
|---|---|---|
| Section 7.01 | Executory Contracts and Unexpired Leases | 29 |
| Section 7.02 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 29 |
| Section 7.03 | Claims Based on Rejection of Executory Contracts and Unexpired Leases | 30 |
| Section 7.04 | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 31 |
| Section 7.05 | Indemnification Obligations | 31 |
| Section 7.06 | Insurance Policies | 31 |
| Section 7.07 | Reservation of Rights | 32 |
| Section 7.08 | Merchant Cash Advance Agreements are Not Executory Contracts | 32 |

**ARTICLE VIII: PROVISIONS GOVERNING DISTRIBUTIONS** ...........................................32

| | | |
|---|---|---|
| Section 8.01 | Calculation of Amounts to be Distributed | 32 |
| Section 8.02 | Rights and Powers of the Debtors and Liquidating Trustee | 32 |
| Section 8.03 | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 34 |
| Section 8.04 | Compliance with Tax Requirements/Allocations | 36 |
| Section 8.05 | Claims Paid or Payable by Third Parties | 36 |

**ARTICLE IX: THE LIQUIDATING TRUST** .................................................................................37

| | | |
|---|---|---|
| Section 9.01 | Liquidating Trust Creation | 37 |
| Section 9.02 | Purpose of the Liquidating Trust | 38 |
| Section 9.03 | Transfer of Assets to the Liquidating Trust | 38 |
| Section 9.04 | Tax Treatment of the Liquidating Trust | 39 |
| Section 9.05 | Distribution; Withholding | 40 |
| Section 9.06 | Insurance | 40 |
| Section 9.07 | Other Rights and Duties of the Liquidating Trustee | 40 |
| Section 9.08 | Disputed Claims Reserve | 41 |
| Section 9.09 | Wind-Down | 41 |
| Section 9.10 | Post-Effective Date Reporting | 42 |
| Section 9.11 | Termination of the Liquidating Trust and Liquidating Trust Oversight Committee | 42 |
| Section 9.12 | Transfer of Liquidating Trust Interests | 42 |
| Section 9.13 | Termination of the Liquidating Trustee | 42 |
| Section 9.14 | Exculpation; Indemnification | 42 |
| Section 9.15 | Release of Liens | 43 |
| Section 9.16 | Subordination | 43 |

ARTICLE X: PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS...............................................................43

    Section 10.01  Resolution of Disputed Claims ...............................................................43
    Section 10.02  Disallowance of Claims ..........................................................................45
    Section 10.03  Amendments ............................................................................................45
    Section 10.04  No Post-Petition Interest .........................................................................45

ARTICLE XI: RETENTION OF JURISDICTION.........................................................45

    Section 11.01  Retention of Jurisdiction .........................................................................45
    Section 11.02  Reserved Rights to Seek Bankruptcy Court Approval ............................47
    Section 11.03  Failure of the Bankruptcy Court to Exercise Jurisdiction.......................47

ARTICLE XII: SETTLEMENT, INJUNCTIONS AND EXCULPATIONS ..............48

    Section 12.01  Compromise and Settlement of Claims, Equity Interests, and Controversies ................................................................................................48
    Section 12.02  Exculpation .............................................................................................48
    Section 12.03  Non-Discharge of Debtors; Property Dealt With by the Plan..................49
    Section 12.04  Injunction ................................................................................................49
    Section 12.05  Setoffs .....................................................................................................50
    Section 12.06  Term of Injunctions or Stays...................................................................51

ARTICLE XIII: CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN ..............................................................................51

    Section 13.01  Conditions to Confirmation and Effectiveness ........................................51
    Section 13.02  Notice of Occurrence of the Effective Date.............................................52
    Section 13.03  Waiver of Conditions ..............................................................................52
    Section 13.04  Consequences of Non-Occurrence of Effective Date ..............................52

ARTICLE XIV: MISCELLANEOUS PROVISIONS.....................................................53

    Section 14.01  Administrative Claims .............................................................................53
    Section 14.02  Modifications and Amendments ..............................................................53
    Section 14.03  Severability of Plan Provisions................................................................53
    Section 14.04  Successors and Assigns and Binding Effect ............................................54
    Section 14.05  Revocation, Withdrawal or Non-Consummation ....................................54
    Section 14.06  Plan Supplement .....................................................................................54
    Section 14.07  Continued Confidentiality Obligations....................................................54
    Section 14.08  Notices ....................................................................................................55
    Section 14.09  Computation of Time ..............................................................................55
    Section 14.10  Governing Law .......................................................................................55
    Section 14.11  Exhibits ...................................................................................................56
    Section 14.12  Conflicts..................................................................................................56
    Section 14.13  Exemption ...............................................................................................56
    Section 14.14  Substitution of the Liquidating Trust for the Debtors..............................56

# INTRODUCTION

1 Global Capital LLC and 1 West Capital LLC, debtors and debtors-in-possession (each, a "**Debtor**" and collectively, the "**Debtors**"), and the Official Committee of Unsecured Creditors appointed pursuant to Section 1102(a) of the Bankruptcy Code as set forth in that certain *Notice of Appointment of Committee of Unsecured Creditors* filed by the U.S. Trustee on September 7, 2018 [ECF No. 138] (the "**Creditors' Committee**"; together with the Debtors, the "**Plan Proponents**") hereby propose the following Joint Plan of Liquidation pursuant to Section 1121 of the Bankruptcy Code for the resolution of the outstanding Claims (defined below) against and Equity Interests (defined below) in the Debtors.

Reference is made to the Disclosure Statement (defined below) for a discussion of (i) the Debtors' history, businesses and properties, (ii) a summary of this Plan (defined below), and (iii) certain related matters, including risk factors relating to the consummation of this Plan and Distributions (defined below) to be made under this Plan.

Capitalized terms used herein without definition shall have the meanings set forth in Article I hereof. The Plan Proponents are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND THE PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I:
## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of the Plan, except as expressly provided herein or unless the context otherwise requires, (a) all capitalized terms used in the Plan and not otherwise defined in the Plan shall have the meanings ascribed to them in the Disclosure Statement (or any exhibit hereto or thereto), (b) any capitalized term used in the Plan that is not defined in the Plan or Disclosure Statement (or any exhibit hereto or thereto), but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (c) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender, (d) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (e) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (f) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and

exhibits of or to the Plan, (g) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Plan, (h) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of the Plan, and (i) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

      1.1    "**Administrative Claim**" means a Claim for costs and expenses of administration of these Chapter 11 Cases under Sections 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to:  (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for leased equipment and premises) and Claims by Governmental Units for taxes that accrued after the Petition Date, but excluding Claims in respect of taxes that accrued on or before the Petition Date unless such taxes are entitled to be treated as administrative claims under the Bankruptcy Code; (b) Professional Fee Claims and any other compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 328, 330, 331, 363 or 503(b) of the Bankruptcy Code to the extent incurred on or prior to the Effective Date; (c) all fees and charges assessed against the Estates under Section 1930, chapter 123 of Title 28 of the United States Code; and (d) any Claims that have been designated "Administrative Claims" by order of this Court.

      1.2    "**Administrative Claims Bar Date**" means the date by which Holders of Administrative Claims shall file with the Claims Agent and serve on the Debtors requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code and the Bankruptcy Rules, which date shall be the forty-fifth (45th) day following the Effective Date or such earlier date as fixed by the Court; *provided* that no filing is required for the following:  (i) Administrative Claims Allowed by an order of the Bankruptcy Court on or before the Effective Date, or (ii) Administrative Claims that are not Disputed and arose in the ordinary course of business and were paid or are to be paid in accordance with the terms and conditions of the particular transactions giving rise to such Administrative Claims.  The foregoing shall not apply to Professional Fee Claims, which shall be addressed as set forth in Section 14.02.

      1.3    "**Affiliate**" means "affiliate" as defined in Section 101(2) of the Bankruptcy Code.

      1.4    "**Allowed**" means with respect to any Claim (including any Administrative Claim) or portion thereof (to the extent such Claim is not Disputed or Disallowed) or any Equity Interest (a) any Claim, proof of which (i) was Filed with the Bankruptcy Court or its duly appointed claims agent, (ii) was deemed filed pursuant to Section 1111(a) of the Bankruptcy Code, or (iii) by a Final Order, was not required to be Filed; (b) any Claim or Equity Interest that has been, or hereafter is, listed in the Schedules as liquidated in an amount other than zero or unknown and which is not Disputed or contingent (or as to which the applicable Proof of Claim has been withdrawn or Disallowed); (c) any Claim or Equity Interest which has been allowed (whether in whole or in part) by a Final Order (but only to the extent so allowed), and, in the case of (a) and (b) above, as to which no objection to the allowance thereof, or action to subordinate, avoid, classify, dispute, disallow, reclassify, expunge, estimate or otherwise limit recovery with respect thereto, has been Filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the

Bankruptcy Rules or a Final Order; (d) (i) any Investor Principal Claim in the amount set forth on the Ballot received by the Holder of such Claim, but only if such Holder is not a Disputing Claimant or Prepetition Party, and (ii) any other Claim or Equity Interest allowed under or pursuant to the terms of the Plan; (e) any Claim arising from the recovery of property under Sections 550 or 553 of the Bankruptcy Code which has been allowed in accordance with Section 503(h) of the Bankruptcy Code; (f) a Claim in respect of an Executory Contract or Unexpired Lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been Filed or has otherwise been deemed Filed under applicable law; or (g) which is a Professional Fee Claim for which a fee award amount has been approved by order of the Bankruptcy Court; provided, however, that Claims or Equity Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

**1.5** "**Assets**" means any and all rights, title, and interests of the Debtors in property of whatever type or nature.

**1.6** "**Assignable Claims**" means all Causes of Action that an Investor has against any Person or Entity and that are related in any way to the Debtors, the Debtors' businesses, their predecessors, their respective affiliates, or any Prepetition Parties, including but not limited to (a) all Causes of Action based on, arising out of, or related to the marketing, sale, and entry into any Memorandum of Indebtedness; (b) all Causes of Action for unlawful dividend, fraudulent conveyance, fraudulent transfer, voidable transaction, or other avoidance claims under state and federal law; (c) all Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and (d) all Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up or obfuscation of, any of the conduct described in the Disclosure Statement, including in respect of any alleged fraud.

**1.7** "**Assigned Investor Claims**" means those Assignable Claims assigned to the Liquidating Trust by Assigning Claimants.

**1.8** "**Assigning Claimants**" means those Investors that elect on their Ballots to assign their Assignable Claims to the Liquidating Trust.

**1.9** "**Assigning Claimants Enhancement Multiplier**" means three percent (3%).

**1.10** "**Available Trust Cash**" means the net Cash in the Liquidating Trust available for Distribution following payment of (i) all U.S. Trustee Fee Claims, (ii) Allowed Administrative Claims, (iii) Allowed Priority Claims, (iv) Allowed Secured Claims (if applicable), (v) the Disputed Claims Reserve, (vi) reserves established in accordance with Sections 1.40 and 6.04 of the Plan, and (vii) costs of administration of the Liquidating Trust.

**1.11** "**Avoidance Actions**" means any and all Causes of Action and the proceeds thereof (other than those that are released or dismissed as part of and pursuant to the Plan) which a trustee, debtor-in-possession, the estate or other appropriate party in interest may assert under Sections 502(d), 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under related state or federal statutes and common law, including fraudulent transfer laws

(whether or not litigation is commenced to prosecute such Causes of Action) and including a Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity(as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted.

**1.12** "**Ballot**" means each of the ballot forms distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

**1.13** "**Bankruptcy Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all subsequent amendments and modifications thereto that are made applicable to these Chapter 11 Cases.

**1.14** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Florida or such other court as may have jurisdiction over these Chapter 11 Cases or any aspect thereof.

**1.15** "**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under Section 2075 of Title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of Title 28 of the United States Code, (iii) the applicable Local Rules of Bankruptcy Practice and Procedure for the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to these Chapter 11 Cases or proceedings therein, as the case may be.

**1.16** "**Bar Date**" means (a) December 4, 2018 as to any Claim that is not an Administrative Claim, an Investor Claim or a Claim asserted by a Governmental Unit, (b) January 23, 2019 as to any Claim asserted by a Governmental Unit, (c) March 7, 2019 as to any Investor Claim, and (d) for any Administrative Claim, the applicable Administrative Claims Bar Date; provided that Professional Fee Claims shall be Filed in accordance with Section 14.02 of the Plan.

**1.17** "**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Fort Lauderdale, Florida.

**1.18** "**Cash or $**" means legal tender of the United States of America including bank deposits, checks and cash equivalents.

**1.19** "**Causes of Action**" means any and all actions, causes of action, claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise.

**1.20** "**Chapter 11 Cases**" means the chapter 11 cases commenced by the Debtors and jointly administered under case number 18-19121-RBR in the Bankruptcy Court.

**1.21** "**Claim**" or "**Claims**" means a claim or claims against any of the Debtors, as such term is defined in Section 101(5) of the Bankruptcy Code.

**1.22** "**Claims Agent**" means the Debtors' court-appointed claims agent, Epiq Corporate Restructuring, LLC.

**1.23** "**Claims Objection Deadline**" means the date that is ninety (90) days after the Effective Date or such later date as may be extended upon request by the Liquidating Trustee and order of the Bankruptcy Court after notice and a hearing to the Entities on the master service list maintained in accordance with Local Rule 2002-1(H).

**1.24** "**Claims Register**" means the official register of Claims maintained by the Claims Agent.

**1.25** "**Class**" means a category of Holders of Claims or Equity Interests pursuant to Section 1122(a) of the Bankruptcy Code, as described in Articles II and III of the Plan.

**1.26** "**Confirmation**" means the entry of the Confirmation Order on the docket of these Chapter 11 Cases, subject to all conditions specified having been (a) satisfied, or (b) waived.

**1.27** "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.28** "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.29** "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to, among others, Section 1129 of the Bankruptcy Code.

**1.30** "**Creditor**" means any Holder of a Claim against any Debtor or its Estate.

**1.31** "**Creditors' Committee**" has the meaning ascribed to it in the Introduction to this Plan.

**1.32** "**Cure**" means the Distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease, pursuant to Bankruptcy Code Section 365(b), in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

**1.33** "**D&O Policy**" means all liability insurance policies covering directors, managers, members, trustees, and officers maintained or held by any Debtor at any time on or prior to the Effective Date.

**1.34** "**Debtors**" has the meaning ascribed to it in the Introduction.

**1.35** "**Disallowed**" means, with respect to any Claim, Equity Interest or portion thereof, any Claim against or Equity Interest in the Debtors which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the applicable Debtor, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been Filed or deemed Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law in a liquidated non-contingent amount; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim; (vi) is evidenced by a Proof of Claim which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such Proof of Claim was not properly Filed; (vii) is unenforceable to the extent provided in Section 502(b) of the Bankruptcy Code; (viii) where the holder of a Claim or Equity Interest is a Person or Entity from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such property, for which such Person, Entity or transferee is liable under Section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; or (ix) is for reimbursement or contribution that is contingent as of the time of allowance or disallowance of such Claim or Equity Interest. In each case, a Disallowed Claim or Equity Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

**1.36** "**Disclosure Statement**" means the disclosure statement for the Plan approved by the Bankruptcy Court on [●], 2019, as amended, supplemented or modified from time to time, describing the Plan, which is prepared and distributed in accordance with, among others, Sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

**1.37** "**Disclosure Statement Order**" means the Order entered by the Bankruptcy Court and dated [●], 2019 approving the Disclosure Statement as containing adequate information within the meaning of Section 1125 of the Bankruptcy Code and approving solicitation procedures in connection with Confirmation of the Plan.

**1.38** "**Disputed**" means with respect to any Claim or any portion thereof (a) as to which the Debtors or the Liquidating Trustee, as applicable, or any other party in interest, has Filed an objection or sought to subordinate by the Claims Objection Deadline, and such objection has not been withdrawn or overruled by a Final Order; (b) that is listed on the Debtors' Schedules as disputed, contingent or unliquidated and as to which no Proof of Claim has been Filed in a non-contingent and liquidated amount; (c) asserted by a Disputing Claimant, a Prepetition Party or an Insider; or (d) that is a tort claim.

**1.39** "**Disputed Claim Amount**" means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount or any portion thereof set forth in the Proof of Claim relating to the Disputed Claim, (ii) an amount agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Disputed Claim, or (iii) if a request for estimation is Filed by any party, then the amount at which such Disputed Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, then (i) an amount agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Disputed Claim, (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim, or (iii) in the event the Holder of such Disputed Claim does not timely seek estimation, zero; (c) if the Disputed Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was Filed, or deemed to have been Filed, as applicable, and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, then zero; or (d) notwithstanding anything herein to the contrary, if the Disputed Claim is (i) asserted by an Insider or a Prepetition Party, or (ii) the subject of a request to subordinate the Disputed Claim or to disallow such Claim under Section 502(e) of the Bankruptcy Code, and such Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, then zero.

**1.40** "**Disputed Claims Reserve**" means a Cash reserve sufficient to pay a Pro Rata Share to all Disputed Claim Amounts, which shall be maintained by the Liquidating Trustee and which may be funded with a Cash portion of the Liquidating Trust Assets for distribution to Holders of Disputed Claims to the extent such Disputed Claims become Allowed Claims. The initial amount of the Disputed Claims Reserve shall be agreed to on the Effective Date by the Plan Proponents. Thereafter, the Disputed Claims Reserve shall be determined by the Liquidating Trustee in consultation with the Liquidating Trust Oversight Committee, provided that the Liquidating Trustee may request the Bankruptcy Court to determine the appropriate amount of the Disputed Claims Reserve.

**1.41** "**Disputing Claimant**" means a Holder of an Investor Principal Claim that has disputed the amount set forth on such Holder's Ballot by checking the "dispute" box in accordance with the procedures set forth in the Disclosure Statement Order and applicable Ballot until such dispute is resolved by a compromise and settlement or Final Order.

**1.42** "**Dissolving Debtors**" means all Debtors other than the Surviving Debtor.

**1.43** "**Distribution**" means any distribution pursuant to the Plan to Holders of Allowed Claims or Liquidating Trust Beneficiaries.

**1.44** "**Distribution Date**" means the date on which a Distribution is made pursuant to this Plan.

**1.45** "**Distribution Record Date**" means the date established for determining the Holders of Claims entitled to Distributions pursuant to the Plan, which shall be the Confirmation Date.

**1.46** "**District Court**" means the United States District Court for the Southern District of Florida.

**1.47** "**Effective Date**" means the first Business Day following the date on which all conditions to consummation set forth in Section 13.01 of the Plan have been satisfied or, if capable of being duly and expressly waived, as provided in Section 13.03 of the Plan, any conditions to the occurrence of consummation set forth in the Plan has been satisfied or waived.

**1.48** "**Entity**" shall have the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

**1.49** "**Equity Interests**" means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person or Entity in any of the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in any of the Debtors, membership interests, partnership interests in the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating any of the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

**1.50** "**Estate(s)**" means the estates of each of the Debtors created by Section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases on the Petition Date.

**1.51** "**Exculpated Parties**" means, collectively, (a) the Debtors; (b) the managers, directors, officers and employees of the Debtors serving after the Petition Date; (c) the Debtors' Professionals; (d) the Creditors' Committee and its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); (e) the Creditors' Committee's Professionals; and (f) in respect of (b)-(e) each of their respective Related Parties, *provided* that the Persons or Entities listed in this clause (f) shall not include any Prepetition Party.

**1.52** "**Executory Contract**" means a contract to which any of the Debtors is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.53** "**Federal Judgment Rate**" means the interest rate set forth in 28 U.S.C. § 1961.

**1.54** "**File, Filed or Filing**" means, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

**1.55** "**Final Order**" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, re-argument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending or (ii) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken or granted; provided, however,

that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

**1.56** "**General Unsecured Claim**" means a Claim arising prior to the Petition Date against the Debtors, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease, that is not (i) a Secured Claim; (ii) a Priority Tax Claim; (iii) an Other Priority Claim; (iv) an Investor Unsecured Claim; (v) a Subordinate Claim; (vi) an Intercompany Claim, or (vii) for avoidance of doubt, an Administrative Claim.

**1.57** "**Governmental Unit**" means all governmental units, which shall include all entities defined in Section 101 (27) of the Bankruptcy Code, including such entities that hold a Claim arising from prepetition tax years or periods or prepetition transactions to which a Debtor was a party.

**1.58** "**Holder**" or "**Holders**" means the legal or beneficial holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

**1.59** "**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.60** "**Impaired Class**" means a Class of Claims or Equity Interests that are Impaired.

**1.61** "**Indemnification Obligations**" means all obligations of the Debtors as provided in the Debtors' certificates of formation or incorporation, bylaws or other organization documents, board resolutions, employment contracts, applicable law or other agreements as of the Petition Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of, members, managers, directors, officers, employees, attorneys, other professionals and agents of the Debtors and their Affiliates who were in place as of the Petition Date, against any Claims or Causes of Action whether direct or derivative, liquidated or unliquidated, foreseen or unforeseen, asserted or unasserted, without prejudice to any parties rights to object to any such claim for Indemnification Obligations.

**1.62** "**Initial Distribution Date**" means the date on which the Liquidating Trustee makes initial Distributions to Holders of Allowed Claims pursuant to the Plan, which date shall be as soon as reasonably practicable following the date that is thirty (30) days from Effective Date.

**1.63** "**Insider**" means "insider" as defined in Section 101(31) of the Bankruptcy Code.

**1.64** "**Insider Claims**" means any Claim held by an Insider against a Debtor.

**1.65** "**Intercompany Claim**" means any Claim held by a Debtor against another Debtor.

**1.66** "**Investor**" means a Person or Entity that entered into a Memorandum of Indebtedness with any Debtor.

**1.67** "**Investor Other Claim**" means the portion of an Investor Unsecured Claim in excess of the Investor Principal Claim applicable to such claim, including interest, fees, damages and other costs included as part of an Investor Unsecured Claim.

**1.68** "**Investor Principal Claim**" means the original principal amount, without regard to any rollovers, of an Investor Unsecured Claim minus the aggregate amount of all payments received by such claimant prepetition from the Debtors on account of such claim.

**1.69** "**Investor Unsecured Claim**" means any Claim of an Investor arising under a Memorandum of Indebtedness with any Debtor, including any such Claim that is contingent, Disputed or unliquidated.

**1.70** "**IRA**" means an Individual Retirement Account.

**1.71** "**Lien**" means, with respect to any asset or property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages or hypothecation to secure payment of a debt or performance of an obligation, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of Unsecured Claims; provided, however, that a lien that has or may be avoided pursuant to any Avoidance Action shall not constitute a lien hereunder.

**1.72** "**Liquidating Trust**" means the trust to be established on the Effective Date in accordance with this Plan.

**1.73** "**Liquidating Trust Actions**" means, collectively, all Avoidance Actions, all Causes of Action held by the Debtors or the Estates, and all Causes of Action that are assigned to the Liquidating Trust, including the Assigned Investor Claims.

**1.74** "**Liquidating Trust Agreement**" means the agreement governing, among other things, the retention and duties of the Liquidating Trustee as described therein, which shall be in form and substance materially consistent with the Plan and otherwise agreeable to the Plan Proponents, and included as an exhibit to the Disclosure Statement.

**1.75** "**Liquidating Trust Assets**" means, in the aggregate, all of the assets of the Debtors and their Estates existing as of the Effective Date (after giving effect to all Distributions required to be made on or prior to the Effective Date, if any), the Liquidating Trust Actions including the Assigned Investor Claims, Receiver Contributed Recoveries, SEC Contributed Recoveries, and any other assets transferred to the Liquidating Trust; provided, however, the Liquidating Trust Assets shall not include any Claims or Causes of Action expressly released or exculpated pursuant to Article XII hereof. Notwithstanding anything in the Plan to the contrary, the Debtors' Professionals' documents shall not be transferred to the Liquidating Trust and shall not be

Liquidating Trust Assets, but shall be made available to the Liquidating Trustee or its counsel upon request.

1.76    "**Liquidating Trust Beneficiary**" means a beneficial Holder of a Liquidating Trust Interest.  Liquidating Trust Interests are to be distributed to Holders of Allowed Class 4A Claims and Allowed Class 4B Claims.

1.77    "**Liquidating Trust Indemnified Parties**" means the Liquidating Trust, the Liquidating Trust Oversight Committee, and their respective Related Parties, each solely in their respective capacity as such.

1.78    "**Liquidating Trust Interest**" means a beneficial interest in the Liquidating Trust, which interest shall be uncertificated and shall not be assignable or transferable except (i) upon death of a Holder of a Liquidating Trust Interest or by operation of law and (ii) in accordance with the provisions of the Liquidating Trust Agreement.

1.79    "**Liquidating Trust Oversight Committee**" has the meaning provided in Section 6.02 of the Plan.

1.80    "**Liquidating Trustee**" means initially James S. Cassel and any successor thereto selected in accordance with the Liquidating Trust Agreement, to act as liquidating trustee as provided in the Plan and the Liquidating Trust Agreement solely in its capacity as such.

1.81    "**Main Case**" shall have the meaning set forth in Section 6.14 of the Plan.

1.82    "**Memorandum of Indebtedness**" means a contract or other instrument generally but not exclusively styled as a "Memorandum of Indebtedness" and any of its addendums, amendments, modifications, supplements and other related documents pursuant to which an investment in a Debtor was made, including Master Participation Agreements.

1.83    "**Non-Compensatory Penalty Claim**" means any Claim, secured or unsecured, for any fine, penalty or forfeiture, or for multiple, exemplary or punitive damages, to the extent such fine, penalty, forfeiture or damages are not compensatory for actual pecuniary loss suffered by the Holder of such Claim, *provided* that, for avoidance of doubt, the SEC Claim is not a Non-Compensatory Penalty Claim.

1.84    "**Other Priority Claims**" means any and all Allowed Claims accorded priority in right of payment under Section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

1.85    "**Other Secured Claims**" means any Secured Claim, other than a Secured Tax Claim.

1.86    "**PBYA**" means the law firm of Perlman, Bajandas, Yevoli & Albright, P.L., special litigation counsel to the Debtors.

1.87    "**Person**" shall have the meaning provided in Section 101(41) of the Bankruptcy Code.

**1.88** "**Petition Date**" means July 27, 2018, the date on which the Debtors Filed their petitions for relief commencing these Chapter 11 Cases.

**1.89** "**Plan**" means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with its terms and the Bankruptcy Code or the Bankruptcy Rules.

**1.90** "**Plan Proponents**" has the meaning ascribed to such term in the Introduction.

**1.91** "**Plan Supplement**" means the supplement to the Plan to be Filed as provided for herein.

**1.92** "**Prepetition Party**" means any (i) prepetition Insider of any of the Debtors, (ii) non-debtor Affiliate of a Debtor or Insider of any such non-debtor Affiliate, (iii) employee of a Debtor terminated prepetition, and (iv) Entity (including but limited to any "broker," agent, salesperson, consultant, affiliated entity, professional, professional firm, attorney, law firm, accountant, accounting firm, Dale Ledbetter, Jan D. Atlas, and Carl Ruderman) involved in any way in the entry into any Memorandum of Indebtedness by a Debtor or Investor before the Petition Date and an Insider or employee of such Entity. For clarity, the Prepetition Parties shall not include any Professional retained by the Debtors after the Petition Date.

**1.93** "**Priority Tax Claim**" means any and all Claims of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

**1.94** "**Plan Transaction**" means any transaction described in, approved by, contemplated by or necessary to effectuate the Plan.

**1.95** "**Privileged Documents**" means all documents and communications maintained by the Debtors and the Creditors' Committee subject to attorney-client, work product, or common interest privilege claims.

**1.96** "**Professional**" means any professional employed in these Chapter 11 Cases pursuant to Bankruptcy Code Sections 327, 328, 1103, 105(a), 363(c) or other order of the Bankruptcy Court.

**1.97** "**Professional Fee Claim**" means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

**1.98** "**Proof of Claim**" means a proof of a Claim Filed with the Bankruptcy Court or the Claims Agent in these Chapter 11 Cases.

**1.99** "**Pro Rata Share**" means with respect to any Distribution to a Class of Claims (including Liquidating Trust Beneficiaries on account of Class 4A Claims and Class 4B Claims) under the Plan, the ratio (expressed as a percentage) of the amount of an Allowed Claim in such Class to the aggregate amount of all Allowed Claims plus the Disputed Claim Amount of all Disputed Claims that are Disputed in the same Class; provided, that to the extent any Disputed Claims are not Allowed by the Bankruptcy Court in whole or in part, the Pro Rata Share of all

Allowed Claims in such Class shall be adjusted to take into account the Disputed Claim Amount that are Disputed (or portion thereof) associated with the Disputed Claim that was not Allowed.

1.100 "**Related Parties**" means, collectively, all of the respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, professional persons, representatives, and successors of the reference Person or Entity.

1.101 "**Receiver**" means Jon A. Sale, in his capacity as receiver in the Receivership or any successor.

1.102 "**Receiver Contributed Recoveries**" means any Cash or other property of the Receivership that the Receiver may, from time to time, contribute and transfer to the Liquidating Trust on account of the Receivership Claims pursuant to an order of the District Court in the SEC Action.

1.103 "**Receivership**" means the receivership in the SEC Action over the Receivership Entities.

1.104 "**Receivership Claims**" means any claims of the Debtors against any of the Receivership Entities.

1.105 "**Receivership Entities**" means Bright Smile Financing, LLC, BRR Block Inc., Digi South, LLC, Ganador Enterprises, LLC, Media Pay, LLC, Pay Now Direct, LLC, the Ruderman Family Trust and the Bright Smile Trust.

1.106 "**Schedules**" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to Section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

1.107 "**SEC**" means the U.S. Securities and Exchange Commission.

1.108 "**SEC Action**" means the civil action styled as *Securities and Exchange Commission v. Carl Ruderman, et al.*, 18-CV-61991 BB (S.D. Fla.), pending in the District Court.

1.109 "**SEC Claim**" means the Claim of SEC proof of which was Filed under Proof of Claim Numbers 2650, 2651, 10873, and 10874.

1.110 "**SEC Contributed Recoveries**" means Cash or other property recovered by the SEC in actions or threatened actions against Persons or Entities related in any way to the Debtors, the Receivership Entities, their respective predecessors, or their respective Affiliates, that the SEC elects and is authorized to contribute and transfer to the Liquidating Trust.

1.111 "**Section 510(b) Claims**" means a claim against the Debtors arising from rescission of a purchase or sale of a security of the Debtors or an affiliate of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under

-13-

Section 502 of the Bankruptcy Code on account of such a claim, *provided* that, for avoidance of doubt, Section 510(b) Claims do not include Investor Unsecured Claims.

    **1.112** "**Secured Claim**" means a Claim that is secured by a Lien that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which the Estate has an interest, or a Claim that is subject to setoff under Section 553 of the Bankruptcy Code; to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to Section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to Section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Liquidating Trust and the Holder of such Claim.  If the amount of any Claim exceeds the value of the Holder's interest in the Estate's interest in property or the amount subject to setoff, it shall be treated as a General Unsecured Claim.

    **1.113** "**Secured Tax Claim**" means a Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Section 507(a)(8) of the Bankruptcy Code.  For avoidance of doubt, Secured Tax Claim does not include any penalty except as provided under Section 507(a)(8)(G) of the Bankruptcy Code.

    **1.114** "**Subordinated Claim**" means any Insider Claim, Non-Compensatory Penalty Claim, and any other Claim against any of the Debtors that is subordinated pursuant to applicable law (other than Section 510(b) of the Bankruptcy Code), including Section 510(a) or 510(c) of the Bankruptcy Code.

    **1.115** "**Substantial Contribution Claims**" means a Claim under Sections 503(b)(3) or 503(b)(4) of the Bankruptcy Code.

    **1.116** "**Surviving Debtor**" means a Debtor for so long as the Liquidating Trustee determines such entity must be maintained.

    **1.117** "**Unexpired Lease**" means a lease of non-residential real property to which any of the Debtors is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

    **1.118** "**Unimpaired**" means Claims that are unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

    **1.119** "**Unimpaired Class**" means a Class containing Unimpaired Claims.

    **1.120** "**Unsecured Claim**" means a Claim arising prior to the Petition Date against any of the Debtors that is neither a Secured Claim nor entitled to priority under Section 507 of the Bankruptcy Code or any order of the Bankruptcy Court.

    **1.121** "**U.S. Trustee**" means the Office of the United States Trustee for the Southern District of Florida.

    **1.122** "**U.S. Trustee Fee Claims**" means fees arising under 28 U.S.C. § 1930(a)(6) of Title 28 of the United States Code with respect to these Chapter 11 Cases.

**1.123** "**Voluntary Petitions**" means the voluntary petitions for relief under chapter 11 of the Bankruptcy Code Filed by 1 Global Capital LLC and 1 West Capital LLC, which were executed on the Petition Date, respectively, by Steven A. Schwartz, as the authorized representative of 1 Global Capital LLC, and Darice Lang, as the authorized representative for 1 West Capital LLC.

**1.124** "**Voting Deadline**" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted, as set forth by the Disclosure Statement Order.

**1.125** "**Website**" has the meaning ascribed to such term in Section 14.07 of the Plan.

## ARTICLE II:
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**Section 2.01   Classification**

Claims against the Debtors, other than Administrative Claims, Priority Tax Claims and U.S. Trustee Fee Claims are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 4A | Investor Principal Claims | Impaired | Yes |
| 4B | General Unsecured Claims | Impaired | Yes |
| 5 | Investor Other Claims | Impaired | No (deemed to reject) |
| 6 | Intercompany Claims | Impaired | No (deemed to reject) |
| 7 | Subordinated Claims | Impaired | No (deemed to reject) |
| 8 | Section 510(b) Claims | Impaired | No (deemed to reject) |
| 9 | Equity Interests in the Debtors | Impaired | No (deemed to reject) |

**Section 2.02   Consolidation of Debtors for Purposes of Voting, Confirmation and Distribution**

The Plan provides for consolidation of the Estates for purposes of voting, Confirmation, and making Distributions to the Holders of Allowed Claims under the Plan.  Voting on the Plan shall be counted on a consolidated basis.  On the Effective Date, and solely for purposes of voting, Confirmation and making Distributions to the Holders of Allowed Claims under the Plan (a) all guarantees of any Debtor of the payment, performance or collection of another Debtor with respect to Claims against such Debtor shall be eliminated and cancelled; (b) any single obligation of multiple Debtors shall be treated as a single obligation in the consolidated Chapter 11 Cases; and (c) all guarantees or other obligations by a Debtor with respect to Claims against one or more of the other Debtors shall be treated as a single obligation in the consolidated cases.  On the Effective Date, and in accordance with the terms of this Plan and the consolidation of the assets and liabilities

-15-

of the Debtors, all Unsecured Claims based upon guaranties of collection, payment or performance made by a Debtor as to the obligation of another Debtor shall be released and of no further force and effect.  Except as set forth in this Section, such consolidation shall not affect (a) the legal and corporate structure of the Debtors, or (b) any obligations under any leases or contracts assumed through the Plan or otherwise after the Petition Date.

Notwithstanding the consolidation of the Estates for the purposes set forth herein, each Debtor (and after the Effective Date the Liquidating Trustee) shall pay all U.S. Trustee Fee Claims on all disbursements, including any Distributions or disbursements made as a result of this Plan, until the entry of a final decree in these Chapter 11 Cases, dismissal of these Chapter 11 Cases, or conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III:
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### Section 3.01   General

Pursuant to Section 1122 of the Bankruptcy Code, a Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies under the description of the Class and is classified in a different class to the extent that the Claim or Equity Interest qualifies under the description of that different Class.  A Claim or Equity Interest is placed in a particular Class for the purposes of receiving Distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

### Section 3.02   Unclassified Claims

(a)   *Administrative Claims*

Except for Professional Fee Claims, and except to the extent that any Holder of an Allowed Administrative Claim has received payment prior to the Effective Date, agrees with the Liquidating Trustee to different treatment or as otherwise provided for in the Plan, each Holder of an Allowed Administrative Claim shall receive payment in full, in Cash, on the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Administrative Claim becomes an Allowed Claim, or (iii) the date on which such payment is due in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim.

(b)   *Professional Fee Claims*

Notwithstanding any other provision of this Plan concerning Administrative Claims, any Professional seeking an award by the Bankruptcy Court of an Allowed Professional Fee Claim incurred from the Petition Date through and including the Effective Date (i) shall, no later than twenty-one (21) days before the Confirmation Hearing, File a final application for allowance of compensation for services rendered and reimbursement of expenses actually incurred plus an estimate of additional compensation and expenses to be incurred through and including the Confirmation Hearing and, no later than the date of the Confirmation Hearing, shall file a supplement support such estimates; and (ii) shall receive, as soon as reasonably practicable after

such claim is Allowed, on account of such Professional Fee Claim, Cash in an amount equal to the unpaid amount of such Allowed Professional Fee Claim in accordance with the Order relating to or allowing any such Professional Fee Claim.

        (c)     *Priority Tax Claims*

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date or unless otherwise agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim:  (a) Cash equal to the amount of such Allowed Priority Tax Claim; or (b) as may be agreed between the Holder of such Allowed Priority Tax Claim and the Debtors or the Liquidating Trustee, as applicable, except to the extent that such Allowed Priority Claim is already liquidated pursuant to a Final Order of the Bankruptcy Court.

        (d)     *U.S. Trustee Fee Claims*

The Debtors or the Liquidating Trustee, as applicable, shall pay all U.S. Trustee Fee Claims for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

        (e)     *Substantial Contribution Claims*

No Substantial Contribution Claim shall be Allowed, and any holder of a Substantial Contribution Claim shall be entitled to no distribution under the Plan on account of any Substantial Contribution Claim.

**Section 3.03    Voting Classes of Claims against the Debtors**

        (a)     *Investor Principal Claims (collectively, "**Class 4A Claims**").*

<u>Classification</u>: Class 4A consists of all Investor Principal Claims against the Debtors.

<u>Treatment</u>:  Each Holder of an Allowed Class 4A Claim shall receive issuance of its Pro Rata Share of Liquidating Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4A Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4A Claim and the Debtors or Liquidating Trustee.

As set forth more fully in Section 8.03 of the Plan, on a periodic basis, Distributions of Cash on account of Liquidating Trust Interests shall be made by the Liquidating Trustee.  The first such Cash Distribution to Holders of Liquidating Trust Interests shall occur on the Initial Distribution Date.  On any subsequent Distribution Date, each Holder of a Liquidating Trust Interest shall receive a Pro Rata Share of Available Trust Cash.  For avoidance of doubt, no Holder of a Class 4A Claim that is a Disputing Claimant shall receive a Cash Distribution.

Unless a Holder of a Class 4A Claim elects on its Ballot to be a Disputing Claimant, such Holder shall be deemed to compromise and settle its Investor Principal Claim as set forth in the Ballot, which shall be such Holder's Allowed Investor Principal Claim.  If a Holder of a Class 4A

Claim (i) elects to be a Disputing Claimant and (ii) has not filed a Proof of Claim, then, notwithstanding the Bar Date, such Holder may, no later than fourteen (14) days from the Voting Deadline, file a Proof of Claim. If such Holder fails to file a timely Proof of Claim, then, notwithstanding its election, such Holder's Investor Principal Claim shall be Allowed as set forth in its Ballot for all purposes under the Plan.

Each Holder of a Class 4A Claim may agree, by electing on its Ballot, to assign its Assignable Claims to the Liquidating Trust, thereby becoming an Assigning Claimant. By electing such option on its Ballot, the Holder of a Class 4A Claim agrees, subject to the occurrence of the Effective Date and the formation of the Liquidating Trust, that (i) its Assignable Claims shall, without further action, be deemed to be assigned to the Liquidating Trust, (ii) it will execute any documents reasonably requested to memorialize such assignment, and (iii) the Liquidating Trust may act as the Assigning Claimant's agent or attorney-in-fact to execute any documents to memorialize such assignment. Each Assigning Claimant's Allowed Investor Principal Claim shall be increased by the Assigning Claimants Enhancement Multiplier.

Other than Assigned Investor Claims, the treatment of the Class 4A Claims under the Plan is not intended to and will not reduce, impair, satisfy, limit, or otherwise affect any rights that any Investor may have against any Person or Entity other than the Debtors.

Voting: Class 4A Claims are Impaired under the Plan. Holders of Class 4A Claims are entitled to vote to accept or reject the Plan.

(b) *General Unsecured Claims (collectively, "**Class 4B Claims**")*.

Classification: Class 4B consists of all General Unsecured Claims against the Debtors.

Treatment: Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Class 4B Claim shall receive a Pro Rata Share of Liquidating Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4B Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4B Claim and the Debtors or Liquidating Trustee.

As set forth more fully in Section 8.03 of the Plan, on a periodic basis, Distributions of Cash on account of Liquidating Trust Interests shall be made by the Liquidating Trustee. The first such Cash Distribution to Holders of Liquidating Trust Interests shall occur on the Initial Distribution Date. On any subsequent Distribution Date, each Holder of a Liquidating Trust Interest shall receive a Pro Rata Share of Available Trust Cash.

Voting: Class 4B Claims are Impaired under the Plan. Holders of Class 4B Claims are entitled to vote to accept or reject the Plan.

## Section 3.04    Non-Voting Classes of Claims against and Equity Interests in the Debtors

(a) *Secured Tax Claims (collectively, "**Class 1 Claims**")*

Classification: Class 1 Claims consist of all Secured Tax Claims against the Debtors.

Treatment:  Each Holder of an Allowed Class 1 Claim shall receive, on account of such Claim, Cash in the amount of such Allowed Secured Tax Claim without interest or premium on or as soon as reasonably practicable following the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Secured Tax Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Secured Tax Claim and the Debtors or the Liquidating Trustee.

Voting:  Class 1 Claims are Unimpaired by the Plan.  Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

(b)    *Other Secured Claims (collectively, "**Class 2 Claims**")*

Classification:  Class 2 Claims consist of all Other Secured Claims against the Debtors.

Treatment:  Each Holder of an Allowed Class 2 Claim shall receive, on account of such Claim, at the election of the Debtors or the Liquidating Trustee, as the case may be, (i) return of the collateral securing the Other Secured Claim in full satisfaction of such claim, or (ii) Cash in the amount of such Allowed Other Secured Claim without interest or premium on or as soon as reasonably practicable following the later of: (a) the Effective Date if due on or before that date, (b) if such Other Secured Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Secured Claim becomes an Allowed Claim, or (c) such other date as may be agreed upon between the Holder of such Other Secured Claim and the Debtors or the Liquidating Trustee. Although the treatment of each Allowed Class 2 Claim is an obligation of the Liquidating Trust to the extent not satisfied by the Debtors, no Holder of an Allowed Class 2 Claim shall receive issuance of a Liquidating Trust Interest or be a Liquidating Trust Beneficiary.

Voting:  Class 2 Claims are Unimpaired by the Plan.  Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

(c)    *Other Priority Claims (collectively, "**Class 3 Claims**")*

Classification:  Class 3 Claims consist of all Other Priority Claims against the Debtors.

Treatment:  Each Holder of an Allowed Class 3 Claim shall receive, on account of such Claim, Cash in the amount of such Allowed Other Priority Claim without interest or premium on or as soon as reasonably practicable following the later of: (i) the Effective Date if due on or before that date, (ii) if such Other Priority Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Priority Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Other Priority Claim and the Debtors or the Liquidating Trustee.

Voting:  Class 3 Claims are Unimpaired by the Plan.  Holders of Allowed Class 3 Claims are not entitled to vote to accept or reject the Plan.

(d)     *Investor Other Claims (collectively, "**Class 5 Claims**")*

<u>Classification</u>:  Class 5 Claims consist of all Investor Other Claims against the Debtors.

<u>Treatment</u>:  Holders of Class 5 Claims shall not receive a Distribution on account of such claims, subject to the right to modify the Plan as set forth in Section 14.02 of the Plan.

<u>Voting</u>:  Class 5 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Investor Other Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(e)     *Intercompany Claims (collectively, "**Class 6 Claims**")*

<u>Classification</u>:  Class 6 Claims consist of all Intercompany Claims against the Debtors.

<u>Treatment</u>:  Holders of Class 6 Claims shall not receive a Distribution under the Plan on account of such claims.

<u>Voting</u>:  Class 6 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Intercompany Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(f)     *Subordinated Claims (collectively, "**Class 7 Claims**")*

<u>Classification</u>:  Class 7 Claims consist of all Subordinated Claims against the Debtors.

<u>Treatment</u>:  Holders of Class 7 Claims shall not receive a Distribution under the Plan on account of such claims.

<u>Voting</u>:  Class 7 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Subordinated Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(g)     *Section 510(b) Claims (collectively, "**Class 8 Claims**")*

<u>Classification</u>:  Class 8 Claims consist of all Section 510(b) Claims against the Debtors.

<u>Treatment</u>:  Holders of Class 8 Claims shall not receive a Distribution under the Plan on account of such claims.

<u>Voting</u>:  Class 8 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Section 510(b) Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(h)     *Equity Interests (collectively, "**Class 9 Equity Interests**")*

<u>Classification</u>:  Class 9 Equity Interests consist of all Equity Interests in the Debtors.

<u>Treatment</u>:  On the Effective Date, all Equity Interests in the Debtors will be cancelled, and

holders of such Equity Interests shall receive no Distribution on account of such Equity Interests.

Voting:  Class 9 Equity Interests are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Class 9 Equity Interests are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(i)     *Reservation of Rights Regarding Claims*

Except as otherwise explicitly provided in Section 12.05, nothing herein shall affect the Debtors' or the Liquidating Trustee' rights and defenses, both legal and equitable, with respect to any Claims or Equity Interests, including all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

## ARTICLE IV:
## ACCEPTANCE OR REJECTION OF THE PLAN

### Section 4.01   Impaired Classes of Claims Entitled to Vote

Holders of Allowed Claims in each Impaired Class of Claims receiving a Distribution under the Plan are entitled to vote as a Class to accept or reject the Plan.  Accordingly, only the votes of Holders of Class 4A Claims and Class 4B Claims shall be solicited with respect to the Plan.

### Section 4.02   Acceptance by an Impaired Class

In accordance with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

### Section 4.03   Presumed Acceptances by Unimpaired Classes

Holders of Class 1 Claims, Class 2 Claims and Class 3 Claims are Unimpaired under the Plan.  Under Section 1126(f) of the Bankruptcy Code, Holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan, and the votes of Holders of such Unimpaired Claims shall not be solicited.

### Section 4.04   Presumed Rejection by Certain Classes

Holders of Class 5 Claims, Class 6 Claims, Class 7 Claims, Class 8 Claims and Class 9 Claims are Impaired under the Plan and are receiving no Distribution on account of their Claims and Equity Interests.  Holders of such Claims or Equity Interests are conclusively presumed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

### Section 4.05   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

Because at least one Impaired Class is deemed to have rejected the Plan, the Plan

Proponents request Confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code. The Plan Proponents collectively reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Section 1129(b) of the Bankruptcy Code, if necessary.

## Section 4.06   Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V:
## SETTLEMENTS AND COMPROMISES

## Section 5.01   Compromise and Settlement of Investor Principal Claims

Pursuant to Section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan shall implement the compromise and settlement of certain Investor Principal Claims as set forth in this Section 5.01 and elsewhere in the Plan, and the Plan shall further constitute a motion for approval of, and the Confirmation Order shall constitute Bankruptcy Court approval of, such compromise and settlement, and its implementation pursuant to the Plan. On the Effective Date, each Holder that is not a Prepetition Party or Disputing Claimant of an Investor Principal Claim shall be deemed to compromise and settle such Holder's Claim as set forth in such Holder's Ballot, and in full and final satisfaction, settlement and compromise of, and only of, such Investor Principal Claim, such Claim shall be an Allowed Investor Principal Claim as set forth in the Ballot.

## Section 5.02   Orders in Aid of Compromise and Settlement

Pursuant to Sections 105(a) and 1123 of the Bankruptcy Code, Bankruptcy Rule 9019 and other applicable law, the Liquidating Trustee may request, and the Bankruptcy Court retains the authority for, the entry of a bar order or channeling injunction in connection with the compromise and settlement of any Cause of Action of the Debtors, the Surviving Debtors or the Liquidating Trust.

## ARTICLE VI:
## MEANS FOR IMPLEMENTATION OF THE PLAN

## Section 6.01   Liquidating Trust

On or prior to the Effective Date, the Debtors, on their own behalf and on their Estates' behalf and on behalf of the Holders of Claims that are to receive post-Effective Date Distributions from the Liquidating Trust Assets, will execute the Liquidating Trust Agreement and will take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors will transfer to the Liquidating Trust all of their rights, title, and interests in all of the

Liquidating Trust Assets free and clear of all Liens, Claims and encumbrances except as otherwise set forth in this Plan, and all such Liquidating Trust Assets shall be deemed to vest in the Liquidating Trust pursuant to Section 1141(b) of the Bankruptcy Code. The Liquidating Trust shall have such rights, powers, duties and obligations as set forth in Article IX of the Plan, other provisions of the Plan, the Liquidating Trust Agreement, and the Confirmation Order. The Liquidating Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with the liquidating purpose of the Liquidating Trust.

Notwithstanding anything to the contrary in the Plan, any disclosure or examination of any Privileged Documents shall be limited to the Liquidating Trustee and the attorneys that the Liquidating Trustee has retained on behalf of the Liquidating Trust for the purpose of pursuing Liquidating Trust Actions not released by the Debtors, or carrying out the purposes of the Liquidating Trust, those attorneys' administrative support personnel, and any consulting, non-testifying experts retained by the Liquidating Trustee on behalf of the Liquidating Trust for the purpose of assisting the Liquidating Trust in pursuing such Liquidating Trust Actions or carrying out the purposes of the Liquidating Trust. The Liquidating Trustee may not disclose any of the Privileged Documents (or the contents of the Privileged Documents), or otherwise take any actions that may constitute a waiver of the attorney-client privilege, work product privilege, common interest privilege, or any other applicable privileges with respect to the Privileged Documents, without, to the extent required by applicable law, giving three (3) Business Days' notice to the applicable affected party and an opportunity for the affected party to object. Nothing in the Plan shall constitute a waiver of any privilege claims over any of the documents, including the Privileged Documents that are produced to or received by the Liquidating Trust or Liquidating Trustee. For the avoidance of doubt, the Liquidating Trust is a successor-in-interest to the Debtors, and thus, the transfer of the Privileged Documents as provided herein does not impair or waive any privilege.

## Section 6.02    Liquidating Trust Oversight Committee

On the Effective Date, a four (4) member committee shall be established pursuant to this Plan to oversee the implementation of the Plan (the "**Liquidating Trust Oversight Committee**"). The initial members of the Liquidating Trust Oversight Committee shall be Charles Carpenter, Donald Stec, Geoffrey Lipman, and Khosrow Sohraby. The Liquidating Trust Oversight Committee shall have the right to consult with and, to the extent provided in the Plan or Liquidating Trust Agreement, oversee acts, decisions and functions of the Liquidating Trustee in connection with the administration and implementation of the Plan on and after the Effective Date, as set forth in the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall resolve any matter as to which the Liquidating Trust Oversight Committee is deadlocked, except any matter (i) relating to the Liquidating Trustee's resignation, incapacity or removal or (ii) as to which the Liquidating Trustee deems it necessary or appropriate to seek direction from the Bankruptcy Court. The Oversight Committee may retain independent counsel upon application, including proposed terms for compensation and reimbursement, to the Bankruptcy Court and after notice and hearing.

Subject to and in accordance with the Liquidating Trust Agreement, the Liquidating Trust Oversight Committee may, upon majority vote, remove the Liquidating Trustee for cause, including incapacity or failure or refusal to perform his duties under the Plan and Liquidating Trust

Agreement, upon notice and hearing before the Bankruptcy Court. Upon the resignation, removal, or inability of the Liquidating Trustee to serve, then the Oversight Committee shall, by unanimous consent, appoint a successor Trustee, and such successor shall be subject to approval by the Bankruptcy Court after notice and a hearing.

Subject to and in accordance with the Liquidating Trust Agreement, the Liquidating Trust Oversight Committee may, upon majority vote, remove a member of the Liquidating Trust Oversight Committee, or the Liquidating Trustee may remove a member of the Liquidating Trust Oversight Committee for cause, in each case upon notice and a hearing before the Bankruptcy Court. Vacancies on the Oversight Committee shall be filled by (i) the remaining members of the Oversight Committee, or (ii) if there are no members of the Oversight Committee, then the vacancies shall be filled by the Liquidating Trustee, in each case subject to approval by the Bankruptcy Court after notice and a hearing.

## Section 6.03   Funding for the Plan

The Plan shall be funded from the Debtors' Cash on hand and other Liquidating Trust Assets.

## Section 6.04   Funding of Reserves

On or prior to the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall cause to be funded from Cash on hand the Disputed Claims Reserve. After the Effective Date, the Liquidating Trustee may fund other reserves, including additional amounts in the Disputed Claims Reserve, as they or he deems necessary or appropriate.

## Section 6.05   Corporate Action

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Equity Interests, the Debtors, or any other Entity or Person or further Order of the Bankruptcy Court. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates. The authorizations and approvals contemplated by this Plan shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

## Section 6.06   Directors, Officers and Managers

As of the Effective Date, each of the Debtors' existing officers, directors, and managers, including James S. Cassel, Bradley D. Sharp and Joseph J. Luzinski, shall be deemed to be dismissed (unless previously dismissed or terminated), in their respective capacities before the Effective Date as Independent Manager, Chief Restructuring Officer and Deputy Chief Restructuring Officer of the Debtors, in each case without any further action required on the part of any such Debtor, the shareholders or members of such Debtor, or the officers, directors or managers of such Debtor and shall have no ongoing rights against or obligations to the Debtors or

the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated). Thereafter, the Liquidating Trustee shall succeed to all such powers as would have been applicable to the Debtors' officers and managers in respect of all Liquidating Trust Assets, *provided* that the Liquidating Trustee may continue to consult with or employ the Debtors' former directors, officers, employees, and managers to the extent required to comply with applicable law or contractual provisions regarding the Debtors.

**Section 6.07   Debtors' Professionals**

On the Effective Date, the Professionals retained by the Debtors shall be deemed to have completed their services as Professionals to the Debtors, but they shall be able to file final applications for reasonable compensation and reimbursement of expenses through the Effective Date as provided for in this Plan. The Professionals to the Debtors may be retained by the Liquidating Trustee.

**Section 6.08   Effectuating Documents; Further Transactions**

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any further Bankruptcy Court order, approvals, authorization, or consents, unless such an order is expressly required pursuant to the Plan.

**Section 6.09   Exemption from Certain Taxes and Fees**

To the maximum extent provided by Section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, Distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**Section 6.10   Assignment of Assigned Investor Claims**

On the Effective Date, all Assigned Investor Claims will be assigned to the Liquidating Trust and shall thereafter be Liquidating Trust Actions for all purposes. No Person or Entity may rely on the absence of a specific reference in the Plan, the Confirmation Order, the Liquidating Trust Agreement, or the Disclosure Statement to any Assigned Investor Claims against such Person or Entity as any indication that the Liquidating Trust will not pursue any and all available

Assigned Investor Claims against such Person or Entity. The objection to the Allowance of any Claims will not in any way limit the ability or the right of the Liquidating Trust to assert, commence, or prosecute any Assigned Investor Claims. Nothing contained in the Plan, the Confirmation Order, the Liquidating Trust Agreement, or the Disclosure Statement will be deemed to be a waiver, release, or relinquishment of any Assigned Investor Claims that the Assigning Claimants had immediately prior to the Effective Date. For the avoidance of doubt, (a) the Assigned Investor Claims shall not include the rights of any of the Assigning Claimants to receive the Distributions, if any, to which they are entitled under the Plan; (b) in the exercise of his reasonable discretion and in accordance with the Liquidating Trust Agreement, the Liquidating Trustee shall not be obligated to pursue all or any given Assigned Investor Claims; and (c) if, in the exercise of his reasonable discretion, the Liquidating Trustee elects not to pursue an Assigned Investor Claim he may abandon or transfer such claim.

## Section 6.11    Preservation, Pursuit and Resolution of Liquidating Trust Actions

Other than Causes of Action and Avoidance Actions against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, the Debtors and their Estates reserve and do not waive, any and all Causes of Action and Avoidance Actions, including any actions specifically enumerated in the Plan Supplement.

On and after the Effective Date, the Liquidating Trust, as a successor in interest to the Debtors, the Estates, and the Assigning Claimants, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Assigning Claimants to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Liquidating Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement. In accordance with Bankruptcy Code Section 1123(b)(3), the Liquidating Trustee shall also serve as a representative of the Estates with respect to any and all Liquidating Trust Actions that were Estate Assets and, subject to the Liquidating Trust Agreement, shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all Liquidating Trust Actions in any court or other tribunal.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action, Avoidance Action or Assigned Investor Claim against them as any indication that the Debtors, the Liquidating Trustee will not pursue any and all available Causes of Action, Avoidance Actions and Assigned Investor Claims against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action, Avoidance Actions and Assigned Investor Claims upon, after, or as a consequence of the Confirmation or Consummation. The Debtors or the Liquidating Trustee, as applicable, reserve all rights arising under Section 506(c) of the Bankruptcy Code with respect to all Secured Claims asserted against the Debtors or their Estates.

## Section 6.12    Continued Retention of PBYA

On the Effective Date, and without the need for further order of the Bankruptcy Court, PBYA shall be authorized to continue prosecuting those certain litigation claims on behalf of the

Debtors and the Liquidating Trust on the same terms as previously approved by the Bankruptcy Court in the Chapter 11 Cases [ECF No. 389].

**Section 6.13    The Surviving Debtor(s) Pending the Closing of the Cases**

Each Surviving Debtor shall continue in existence after the Effective Date as a post-Effective Date entity.  Without the need for any corporate action and without the need for any corporate or limited liability company filings, (a) all Equity Interests of the Surviving Debtors issued and outstanding immediately before the Effective Date shall be automatically cancelled and extinguished on the Effective Date and (b) as of the Effective Date, new membership interests of each Surviving Debtor, representing all of the issued and outstanding membership interests of each such Surviving Debtor, shall be issued to the Liquidating Trust, which new membership interests so issued shall be deemed to have been offered and sold to the Liquidating Trust in reliance on the exemption from registration under the Securities Act of 1933 afforded by section 4(a)(2) thereof. On and after the Effective Date, each Surviving Debtor will be a wholly-owned subsidiary of the Liquidating Trust, and the Liquidating Trust may expend with respect to such Surviving Debtor such amounts as the Liquidating Trust determines is appropriate, in his discretion.  The sole manager of each Surviving Debtor shall be the Liquidating Trustee whose rights and powers with respect to operations, employment, compensation, indemnity and exculpation as to each Surviving Debtor shall, to the greatest extent possible, be the same as the Liquidating Trustee's rights and powers in connection with the Liquidating Trust.  The Liquidating Trustee may take such steps as appropriate to maintain the good standing of the applicable Surviving Debtor.  Until a Surviving Debtor is dissolved, all cash or property received by the Surviving Debtor, net of any expenses of the Surviving Debtor incurred after the Effective Date, shall be transferred to the Liquidating Trust. Each Surviving Debtor (a) shall have the Liquidating Trust as its sole member and the Liquidating Trust shall be deemed to be admitted as a member of each Surviving Debtor on the Effective Date, (b) shall be treated as a disregarded entity for income tax purposes, (c) shall have a purpose consistent with the purpose of the Liquidating Trust as set forth in Section 9.02 of the Plan, and (d) shall be subject to the same limitations imposed on the Liquidating Trustee under the terms of this Plan and the Liquidating Trust Agreement.

**Section 6.14    Closing of the Debtors' Cases**

The Confirmation Order shall authorize, pursuant to Section 350 of the Bankruptcy Code, that on the Effective Date and except as set forth herein, the Dissolving Debtors' Chapter 11 Cases shall be closed for all purposes, without further action by the Debtors or order of the Bankruptcy Court.  For the avoidance of doubt, the closing of such cases shall not have any effect, in any manner, on the Liquidating Trust Actions that the Liquidating Trust may assert in accordance with the Plan.  Subject to changing the Debtors' case names as set forth in Section 6.18, the jointly administered case of 1 Global Capital LLC, identified as Case No. 18-19121-RBR (the "**Main Case**"), and the case of any other Surviving Debtor shall remain open and subject to the provisions of this Section 6.14.  Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Main Case, when all Liquidating Trust Assets have been liquidated and converted into Cash (other than those assets abandoned by the Liquidating Trust), and such Cash has been distributed in accordance with the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Main Case and the cases of any other Surviving Debtor in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**Section 6.15  Cancellation of Existing Agreements and Existing Stock and/or Membership Interests**

On the Effective Date, except to the extent otherwise provided herein, all notes, stock, membership interests, instruments, certificates, and other documents evidencing any Claims or Equity Interests, including all Memoranda of Indebtedness, shall be canceled, shall be of no further force, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

**Section 6.16  Operations of the Debtors Between the Confirmation Date and the Effective Date**

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate as debtors in possession, with authority to sell assets of the Debtors in accordance with Section 363 of the Bankruptcy Code or otherwise, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

**Section 6.17  Dissolution of Certain Debtors**

On the Effective Date and without the need for further order of the Bankruptcy Court, action or formality that otherwise might be required under non-bankruptcy law, the Dissolving Debtors will be deemed dissolved without any further filing with or action by any secretary of state or other governmental official in each of the Dissolving Debtors respective states of incorporation or formation.

**Section 6.18  Change of Debtors' Names**

On the Effective Date, and without the need for further order of the Bankruptcy Court or action or formality by the Debtors or the Liquidating Trustee that otherwise might be required under non-bankruptcy law, the names of each Debtor shall be changed as set forth below.

| Existing Name | Post-Effective Date Name |
|---------------|--------------------------|
| 1 Global Capital LLC | 1 GC Collections |
| 1 West Capital LLC | 1 West Collections |

**Section 6.19  Dissolution of the Creditors' Committee**

On the Effective Date, the Creditors' Committee shall be deemed dissolved and its members shall be deemed released of their duties, responsibilities and obligations.

On the Effective Date, the Professionals retained by the Creditors' Committee shall be deemed to have completed their services as Professionals to the Creditors' Committee. Through the Effective Date as provided for in this Plan, the Creditors' Committee shall be able to File final applications for reimbursement of expenses, and the Creditors' Committee's Professionals shall

be able to File final applications for reasonable compensation and reimbursement of expenses. Notwithstanding anything in this Section 6.19, the Creditors' Committee shall have standing and a right to be heard following the dissolution of the Creditors' Committee solely with respect to (a) Professional Fee Claims and (b) any appeals of the Confirmation Order. Any fees and expenses shall be paid from the Liquidating Trust Assets. The Professionals to the Creditors' Committee may be retained by the Liquidating Trustee, or the Liquidating Trust Oversight Committee.

## ARTICLE VII:
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 7.01    Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) was previously assumed by the Debtors or assumed and assigned by a third party, as applicable, during the pendency of the Chapter 11 Cases; (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (e) is a D&O Policy or an insurance policy, as set forth in Section 7.06 of the Plan.

**Section 7.02    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

Any Cure under each Executory Contract and Unexpired Lease, if any, to be assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the Cure on the Effective Date, subject to the limitation described below, by the Debtors as an Administrative Claim, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (a) the amount of the Cure, (b) the ability of the Estates or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the Cure required by Section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, with the consent of the Liquidating Trust Oversight Committee or, in the absence of such consent, by order of the Bankruptcy Court, may settle any dispute regarding the amount of any Cure without any further notice to any party or any action, order, or approval of the Bankruptcy Court. In the absence of such consent, the Liquidating Trustee may seek approval of any such settlement from the Bankruptcy Court.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall cause notice of proposed assumption pursuant to the Plan and proposed Cure to be sent to applicable counterparties. Any objection by such counterparty must be filed, served, and actually received by the Debtors not later than seven (7) days after service of notice of the Debtors' proposed

assumption and associated Cure. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption and Cure.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. Anything in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**Section 7.03    Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with the Claims Agent and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, no later than thirty (30) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed as set forth in the paragraph above shall not (a) be treated as a creditor with respect to such Claim, (b) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (c) participate in any Distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Trustee, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Debtors or the Liquidating Trustee, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary**. All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

**Section 7.04    Modifications,   Amendments,   Supplements,   Restatements,   or   Other Agreements**

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors or the Debtors on behalf of the Debtors' Estates during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**Section 7.05    Indemnification Obligations**

(a)    All Indemnification Obligations owed to Prepetition Parties who served or were employed by the Debtors at any time shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the Plan on the Effective Date, unless deemed rejected on an earlier date.  Any Claim resulting from these rejections in favor of any Person or Entity must be filed in accordance with Section 7.03 above and constitutes a General Unsecured Claim.  Notwithstanding any of the foregoing, nothing contained in the Plan affects the rights of any Person or Entity covered by any applicable D&O Policy with respect to any such policy.

(b)    Indemnification Obligations owed to any Professionals to the extent that such Indemnification Obligations relate to the period after the Petition Date, excluding claims resulting from gross negligence, fraud, willful misconduct, breach of fiduciary duty, self-interested transactions or intentional tort, and breach of their contracts with the Debtors shall be deemed to be, and shall be treated as though they are, Executory Contracts that are assumed pursuant to Section 365 of the Bankruptcy Code and Section 7.01 of the Plan.

**Section 7.06    Insurance Policies**

Each insurance policy, including the D&O Policy, shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to Sections 365 and 1123 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy.

**Section 7.07    Reservation of Rights**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee shall have 90 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

**Section 7.08    Merchant Cash Advance Agreements are Not Executory Contracts**

For the avoidance of doubt, any merchant cash advance agreement or other agreement of the Debtors to advance money between either Debtor and any other party shall not be deemed to be an Executory Contract.  In the event, however, that any such agreement is determined to be an Executory Contract, the Debtors' power to assume, pursuant to Section 365 of the Bankruptcy Code, any such merchant cash advance agreement shall be specifically preserved under this Plan for the benefit of the Liquidating Trustee.  The Liquidating Trustee shall have thirty (30) days from the date of any such determination to assume or reject any such agreement.

## ARTICLE VIII:
## PROVISIONS GOVERNING DISTRIBUTIONS

**Section 8.01    Calculation of Amounts to be Distributed**

Each Holder of an Allowed Claim against the Debtors shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Liquidating Trust.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due.  If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Article VIII.  Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim.

**Section 8.02    Rights and Powers of the Debtors and Liquidating Trustee**

All Distributions required to be made under the Plan on the Effective Date shall be made by the Debtors or thereafter by the Liquidating Trust, or their respective designees.  After the Effective Date, the Liquidating Trustee shall have the right to object, allow, or otherwise resolve any Claim as provided herein.

The Debtors and the Liquidating Trustee, shall not be required to give any bond or surety or other security for the performance of their duties except as ordered by the Bankruptcy Court. Additionally, in the event that the Debtors or Liquidating Trust, as applicable, is ordered to provide such a bond, insurance or surety, all costs and expenses of procuring any such bond, insurance or surety shall be paid with Cash from the Liquidating Trust Assets.

The Liquidating Trustee shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code, including, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, including the right (subject to the provisions of the Plan and the Liquidating Trust Agreement) to (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (b) sell or otherwise liquidate any of the Liquidating Trust Assets in accordance with Section 363 of the Bankruptcy Code or otherwise; (c) prosecute, settle, abandon or compromise any Claims or Liquidating Trust Actions; (d) make Distributions contemplated by the Plan; (e) establish and administer any necessary reserves for Disputed Claims that may be required; (f) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (g) employ and compensate professionals, including professionals previously retained by the Debtors and/or the Creditors' Committee, *provided* that any such employment and compensation shall be comply with the procedures set forth in the Liquidating Trust Agreement and any such compensation shall be made only out of the Liquidating Trust Assets; and (h) file all federal, state and local tax returns if necessary.

The Liquidating Trustee shall assume any outstanding responsibility of the Debtors under the Plan.

The Liquidating Trustee shall have the full authority, subject to the provisions of the Plan and the Liquidating Trust Agreement, to take any steps necessary to administer the Plan, including the duty and obligation to liquidate, sell or otherwise dispose of Liquidating Trust Assets, to make Distributions therefrom in accordance with the provisions of this Plan and to pursue, settle or abandon any Claims and Liquidating Trust Actions.

From and after the Effective Date, and subject to the terms of the Plan and Liquidating Trust Agreement, the Liquidating Trustee may compromise and settle any dispute relating to any Claims or any Liquidating Trust Actions, without any further approval by the Bankruptcy Court or any other Entity; *provided* that if the amount in controversy of any dispute exceeds $500,000, then a compromise or settlement of that dispute shall be effective only if (i) the Trustee provides the Oversight Committee and the SEC written notice of the proposed settlement and its material terms and (ii) (a) within fourteen (14) days after delivery of such notice neither the Oversight Committee nor SEC object in writing to the compromise and settlement or (b) such compromise and settlement is approved by the Bankruptcy Court under the standards of Fed.R.Bankr.P. 9019 after notice and a hearing. Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estates.

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses (including reasonable attorneys' fees and expenses) incurred by the Liquidating Trustee, and expenses incurred by the Liquidating Trust Oversight Committee, on or after the Effective Date shall be paid in Cash from the Liquidating Trust Assets. Such amounts shall be paid without any further notice to or action, order, or approval of the Bankruptcy Court fourteen (14) days after the submission of an invoice to the Liquidating Trustee, each member of the Liquidating Trust Oversight Committee and the SEC, unless their objection to the invoice is submitted in accordance with the Liquidating Trust Agreement.

**Section 8.03    Delivery of Distributions and Undeliverable or Unclaimed Distributions**

(a)    *Record Date for Distribution*

On the Distribution Record Date, the Claims Register shall be closed and the Liquidating Trustee or any other party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Nothing in this Section 8.03 shall impair or limit the transferability of Liquidating Trust Interests in accordance with Section 9.12 of the Plan and the Liquidating Trust Agreement.

(b)    *Delivery of Distributions in General*

1.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Liquidating Trustee on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

Within thirty (30) days of a Disputed Claim becoming an Allowed Claim, the Liquidating Trustee shall distribute to the Holder thereof, from the Disputed Claim Reserve, an amount in Cash as would have been distributed to such Holder (on account of such Holder's Liquidating Trust Interests) on the Initial Distribution Date (plus any subsequent Distributions that would have been paid as of that date) if its Claim had been an Allowed Claim on the Effective Date.  No interest will be paid on Disputed Claims that later become Allowed or with respect to any distribution in satisfaction thereof to a Holder.

Upon a Disputed Claim becoming a Disallowed Claim in whole or in part, any Cash held in the Disputed Claims Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan.

2.    Distributions

On and after the Effective Date, the Debtors and the Liquidating Trustee, as applicable, shall make the Distributions required to be made on account of Allowed Claims under the Plan. The Liquidating Trustee shall make an initial Distribution to the Liquidating Trust Beneficiaries from Available Trust Cash on the Initial Distribution Date.

The Liquidating Trustee, in his discretion, may make periodic Distributions of additional Cash to the Liquidating Trust Beneficiaries at any time following the Initial Distribution Date, provided that such Distributions are otherwise permitted under, and not inconsistent with the other terms of, the Plan, the Liquidating Trust Agreement and applicable law.

No later than (a) the first Business Day that is at least 180 calendar days after the Effective Date and (b) the last Business Day of each subsequent 180-calendar-day period after the Effective Date until the Closing Date, the Liquidating Trustee shall calculate the Distributions that could potentially be made to the Liquidating Trust Beneficiaries based on the amount of Available Trust Cash and, based on such calculation, promptly thereafter may make Distributions, if any, of the amount so determined.

(c)     *Minimum; De Minimis Distributions*

Notwithstanding any other provision of the Plan to the contrary (including the treatment of any Claims or Classes), (a) the Debtors or the Liquidating Trustee, as applicable, shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down, and (b) the Liquidating Trustee shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $6,000,000, in which case such Distributions shall be deferred to the next Distribution Date; provided, however, that the foregoing minimum aggregate Distribution threshold shall not apply to Distributions from the Disputed Claim Reserve made on account of a Disputed Claim becoming an Allowed Claim in accordance with Section 8.03(b)(1) of the Plan, (ii) if the amount to be distributed to that Holder on the particular Distribution Date is less than $250.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) if the amount of the final Distribution to any such Holder is less than $50.00, in which case such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims;.

(d)     *Undeliverable Distributions and Unclaimed Property*

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder; *provided*, *however*, that the Liquidating Trustee may deem such Distributions unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of four (4) months from the Initial Distribution Date.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

(e)     *Manner of Payment Pursuant to the Plan*

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, as applicable, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtors or the Liquidating Trustee, as applicable.  Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.  Cash payments made

pursuant to this Plan in the form of checks issued by the Liquidating Trustee shall be null and void if not cashed within 120 days of the date of the issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee.

(f)      *Distributions to Investors Who Invested Through Individual Retirement Plans*

Unless (i) an Investor's Ballot identifies that Distributions on account of the Investor's Allowed Class 4A Claim will be made to the custodian for such Investor's IRA or (ii) an Investor notifies the Debtors in a signed writing before the Effective Date that (a) the Investor funded its Class 4A Claim from its IRA and (b) instructs the Debtors that Distributions on account of such Class 4A Claim should be disbursed to the custodian of the IRA, the Liquidating Trustee shall not be required to make Distributions to the custodian of the Investor's IRA, if any. Investors should consult their individual tax advisors regarding the consequences of taking such Distributions.

## Section 8.04   Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Debtors, or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtors and the Liquidating Trustee are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements. The Liquidating Trustee is authorized to require each Creditor and Liquidating Trust Beneficiary to provide the Liquidating Trustee with an executed Form W-9 or similar tax form as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim or Liquidating Trust Beneficiary does not provide the Liquidating Trustee with an executed Form W-9 or similar form within ninety (90) days of written request, the Liquidating Trustee may deem said Creditor or Liquidating Trust Beneficiary to have forfeited their Distribution with no further notice required.

## Section 8.05   Claims Paid or Payable by Third Parties

(a)      *Claims Paid by Third Parties; Recourse to Collateral*

The Liquidating Trustee shall be authorized to reduce in whole or in part a Claim, and such Claim shall be Disallowed without an objection to the Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or, as applicable, the Liquidating Trustee, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Holder of a Claim receives a Distribution on

account of such Claim and receives payment, in whole or in part, from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Debtor or the Liquidating Trustee, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

(b)     *Claims Payable by Insurance, Third Parties; Recourse to Collateral*

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or more of the Debtors' insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)     *Applicability of Insurance Policies*

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and consummation of the Plan shall not limit or affect the rights of any third-party beneficiary of any of the Debtor's insurance policies with respect to such policies, including the D&O Policy.

## ARTICLE IX:
## THE LIQUIDATING TRUST

### Section 9.01   Liquidating Trust Creation

On the Effective Date, the Liquidating Trust shall be established and become effective. The Liquidating Trust Agreement shall (a) be in form and substance consistent in all respects with this Plan and be reasonably acceptable to the Plan Proponents and (b) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Liquidating Trust as a grantor trust and the Liquidating Trust Beneficiaries as the grantors and owners thereof for federal income tax purposes. All relevant parties (including the Debtors, the Creditors' Committee, the Liquidating Trustee and the Liquidating Trust Beneficiaries) will take all actions necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust. The powers, authority, responsibilities, and duties of the Liquidating Trust and the Liquidating Trustee are set forth in and shall be governed by the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

**Section 9.02   Purpose of the Liquidating Trust**

The Liquidating Trust shall be established for the primary purpose of liquidating its assets and making Distributions in accordance with the Plan, Confirmation Order and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

**Section 9.03   Transfer of Assets to the Liquidating Trust**

The Debtors and the Liquidating Trustee shall establish the Liquidating Trust for the benefit of and on behalf of the Liquidating Trust Beneficiaries pursuant to the Liquidating Trust Agreement, with the Liquidating Trust Beneficiaries to be treated as the grantors and deemed owners of the Liquidating Trust Assets.  The Debtors will irrevocably transfer, assign, and deliver to the Liquidating Trust, on behalf of the Liquidating Trust Beneficiaries, all of their rights, title, and interests in the Liquidating Trust Assets, including any claims, rights, and Causes of Action that the Debtors may hold against any Entity in accordance with the provisions herein, notwithstanding any prohibition on assignment under non-bankruptcy law.   The Assigning Claimants will also assign to the Liquidating Trust all of their rights, title, and interests in the Assigned Investor Claims.  Upon establishment of the Liquidating Trust and from time to time thereafter, (i) the SEC may elect and be authorized to transfer, assign, and deliver to the Liquidating Trust all of their rights, title, and interests in the SEC Contributed Recoveries, and (ii) the Receiver may, from time to time, pursuant to an order of the District Court in the SEC Action, transfer, assign, and deliver to the Liquidating Trust all of its rights, title and interests in the Receiver Contributed Recoveries.

The Liquidating Trust will accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries, subject to the Plan and the Liquidating Trust Agreement.

On the Effective Date (or thereafter, with respect to the Receiver Contributed Recoveries and the SEC Contributed Recoveries), all Liquidating Trust Assets shall vest and be deemed to vest in the Liquidating Trust in accordance with Section 1141 of the Bankruptcy Code; provided, however, that the Liquidating Trustee, with the consent of the Liquidating Trust Oversight Committee or, in the absence of such consent, by order of the Bankruptcy Court, may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value to the Liquidating Trust, including any Assigned Investor Claims.  Any Assets the Liquidating Trustee so abandons or otherwise does not accept shall not vest in the Liquidating Trust.  As of the Effective Date, all Liquidating Trust Assets vested in the Liquidating Trust shall be free and clear of all Liens, Claims and Equity Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.  Upon the transfer by the Debtors of the Liquidating Trust Assets to the Liquidating Trust or abandonment of Liquidating Trust Assets by the Liquidating Trustee, the Debtors will have no reversionary or further interest in or with respect to any Liquidating Trust Assets or the Liquidating Trust.   Notwithstanding anything herein to the contrary, the Liquidating Trust and the Liquidating Trustee shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

For the avoidance of doubt, and notwithstanding anything herein to the contrary, the Debtors shall not transfer or be deemed to have transferred to the Liquidating Trust any claims or Causes of Action (a) released pursuant to this Plan or (b) exculpated pursuant to Article XII hereof to the extent of any such exculpation.

**Section 9.04    Tax Treatment of the Liquidating Trust**

For all federal income tax purposes, the Liquidating Trust Beneficiaries will be treated as grantors and owners thereof and it is intended that the Liquidating Trust be classified as a Liquidating Trust under 26 C.F.R.§ 301.7701–4 and that the Liquidating Trust is owned by the Liquidating Trust Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Liquidating Trust Beneficiaries be treated as if they had received a Distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust. Accordingly, the Liquidating Trust shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely Distributions to the Liquidating Trust Beneficiaries pursuant to the Plan, and not unduly prolong the Liquidating Trust's duration. The Liquidating Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement. The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and owners of the trust.

The Liquidating Trust shall file returns for the Liquidating Trust, except with respect to any Disputed Claims Reserve, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section of the Plan. The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to each holder in accordance with their relative Liquidating Trust Interest.

As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes.

The Liquidating Trust shall file all income tax returns with respect to any income attributable to the Disputed Claims Reserve and shall pay any federal, state and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit or loss allocable thereto.

The Liquidating Trust may request an expedited determination of Taxes of the Debtors or of the Liquidating Trust, including the Disputed Claims Reserve, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtors and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing

authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

The Liquidating Trustee shall send annually to each Liquidating Trust Beneficiaries who is the holder of an Allowed Claim a separate statement stating the Liquidating Trust Beneficiary's share of income, gain, loss, deduction or credit and instructing all such Liquidating Trust Beneficiaries to report such items on their Federal tax returns (and state tax returns if required by applicable law).

## Section 9.05   Distribution; Withholding

Notwithstanding anything in the Plan to the contrary, the Liquidating Trustee shall make, or cause to be made, all Distributions under the Plan and the Liquidating Trust Agreement other than those Distributions made by the Debtors on the Effective Date.

The Liquidating Trust may withhold from amounts distributable to any Entity any and all amounts, determined in the Liquidating Trustee's sole discretion, required by the Plan or Liquidating Trust Agreement, or applicable law, regulation, rule, ruling, directive, or other governmental requirement.   The Liquidating Trustee may require any Liquidating Trustee Beneficiary to furnish to the Liquidating Trustee in writing his, her or its Employer or Taxpayer Identification Number as assigned by the IRS or an executed IRS Form W-9, IRS Form W8-BEN or similar tax form, and the Liquidating Trustee may condition any Distribution upon receipt of such identification number or executed document.

## Section 9.06   Insurance

The Liquidating Trust shall maintain customary insurance coverage for the protection of Persons or Entities serving as administrators and overseers of the Liquidating Trust on and after the Effective Date.

## Section 9.07   Other Rights and Duties of the Liquidating Trustee

In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust under the Plan and Liquidating Trust Agreement, on and after the Effective Date, the Liquidating Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court.

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtors and their Estates, in all forms including electronic and hard copy, other than the Debtors' Professionals' Documents; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or required.

The Liquidating Trustee shall be authorized to, and at the direction of the Liquidating Trust Oversight Committee shall, collect and liquidate all uncollected and unliquidated Liquidating Trust Assets, including the Liquidating Trust Actions and tax refunds.

Any and all rights to conduct investigations with respect to Causes of Action, Avoidance Actions or claims not released by the Debtors shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust, as if neither the Confirmation Date nor the Effective Date had occurred.

The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trustee.

**Section 9.08   Disputed Claims Reserve**

The Liquidating Trustee may maintain, in accordance with the Liquidating Trustee's powers and responsibilities under the Plan and the Liquidating Trust Agreement, a Disputed Claims Reserve. The Liquidating Trustee may, in his reasonable discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Liquidating Trust Agreement, as Disputed Claims are resolved, and such amounts may be distributed to the corresponding Liquidating Trust Beneficiaries on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. On a quarterly basis, the Liquidating Trustee shall provide the Liquidating Trust Oversight Committee and the SEC with an update on the activity and current balance of the Disputed Claims Reserve.

**Section 9.09   Wind-Down**

In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust, on and after the Effective Date, the Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve any Surviving Debtor.

As soon as practicable after the Effective Date, the Liquidating Trustee shall: (1) in the Liquidating Trustee's reasonable discretion, complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and pursuant to Section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (2) take such other actions as the Liquidating Trustee may determine to be necessary or desirable to carry out the purposes of the Plan. From and after the Effective Date, the Debtors for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, shall be deemed to have cancelled pursuant to this Plan all Equity Interests, and shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, the dissolution of the Debtors shall not have any effect, in any manner, on the Causes of Action and Avoidance Actions that the Liquidating Trustee may assert or substitute into as plaintiff in accordance with the Plan and the Liquidating Trust Agreement and notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims and as otherwise provided for in the Plan.

**Section 9.10    Post-Effective Date Reporting**

Beginning twenty (20) days after the first full quarter-end following the Effective Date and continuing thereafter so long as the Liquidating Trust shall remain in existence, the Liquidating Trustee shall File but not serve a "Chapter 11 Post-Confirmation Quarterly Operating Report" in a form substantially similar to the form promulgated by the Office of the United States Trustee. Among other things, the report shall include a schedule of (a) the Liquidating Trust's receipts and disbursements, (b) all Liquidating Trust Assets held by the Liquidating Trust, and (c) all fees, income, and expenses related to the Liquidating Trust during the preceding calendar year. The Liquidating Trustee's quarterly report shall be provided to the Liquidating Trust Oversight Committee upon Filing, and shall be available to any Liquidating Trust Beneficiary upon request in accordance with the Liquidating Trust Agreement.

**Section 9.11    Termination of the Liquidating Trust and Liquidating Trust Oversight Committee**

The Liquidating Trustee and members of the Liquidating Trust Oversight Committee shall be discharged and the Liquidating Trust and Liquidating Trust Oversight Committee shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Liquidating Trust Assets have been liquidated, (c) all  duties and obligations of the Liquidating Trustee hereunder have been fulfilled, (d) all Distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made, and (e) the Chapter 11 Cases of the Debtors have been closed, but in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion by the Liquidating Trustee within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service, to the extent required under applicable law at that time, that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the liquidation, recovery and Distribution of the Liquidating Trust Assets. The Trustee may seek such an extension with the consent of the Oversight Committee or, to the extent the Trustee and the Oversight Committee do not agree, as ordered by the Bankruptcy Court.

**Section 9.12    Transfer of Liquidating Trust Interests**

Notwithstanding anything to the contrary in the Plan, Liquidating Trust Interests shall not be transferrable except upon death of the interest holder or by operation of law.

**Section 9.13    Termination of the Liquidating Trustee**

The duties, responsibilities, and powers of the Liquidating Trustee shall terminate in accordance with the terms of the Liquidating Trust Agreement.

**Section 9.14    Exculpation; Indemnification**

The Liquidating Trust Indemnified Parties will be exculpated and indemnified by the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement; <u>provided</u>, that the

Liquidating Trust Agreement shall not include indemnification for gross negligence, willful misconduct or fraud and shall not include indemnification or exculpation for breach of contract claims.

## Section 9.15   Release of Liens

Except as otherwise provided by the Plan or in any contract, instrument, release or other agreement or document created or assumed in connection with the Plan, on the Effective Date all mortgages, deeds of trust, liens, pledges or other security interests against the property of the Debtors' Estates shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, liens, pledges or other security interests shall revert to the applicable Estate.

## Section 9.16   Subordination

(a)   *Preservation of Subordination Rights by Estates*

Except as otherwise provided herein, all subordination rights and claims relating to the subordination by the Debtors or the Liquidating Trustee of any Allowed Claim or Equity Interest shall remain valid, enforceable and unimpaired in accordance with Section 510 of the Bankruptcy Code or otherwise.

(b)   *Waiver by Creditors of all Subordination Rights*

Except as otherwise ordered by the Bankruptcy Court, each Holder of a Claim shall be deemed to have waived all contractual, legal and equitable subordination rights that they may have—whether arising under general principles of equitable subordination, Section 510(b) or (c) of the Bankruptcy Code, or otherwise—with respect to any and all Distributions to be made under the Plan, and all such contractual, legal or equitable subordination rights that each Holder has individually and collectively with respect to any such Distribution made pursuant this Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights are permanently enjoined.

## ARTICLE X:
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

## Section 10.01  Resolution of Disputed Claims

(a)   *Allowance of Claims and Equity Interests*

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed as of the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy

Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.

(b)     *Prosecution of Objections to Claims or Equity Interests*

Subject in all respects to the provisions hereof, other than with respect to Professional Fee Claims, prior to the Effective Date, the Debtors, and on or after the Effective Date, the Liquidating Trustee, upon consultation with the Liquidating Trust Oversight Committee, shall have the authority to File objections to Claims or Equity Interests, and to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtors' Estates to any and all Claims or Equity Interests, regardless of whether such Claims or Equity Interests are in a Class or otherwise.

Subject to the foregoing and the other provisions of the Plan, from and after the Effective Date, the Liquidating Trustee (a) may settle or compromise any Disputed Claim in accordance with the Liquidating Trust Agreement, with the consent of the Liquidating Trust Oversight Committee or, in the absence of such consent, by order of the Bankruptcy Court; and (b) shall succeed to the Debtors' rights with respect to any objections Filed by the Debtors that remain pending as of the Effective Date.  From and after the Effective Date, the Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)     *Claims Estimation*

Prior to the Effective Date the Debtors, and on and after the Effective Date, the Liquidating Trustee, with the consent of the Liquidating Trust Oversight Committee or, in the absence of such consent, by order of the Bankruptcy Court, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.

In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of Distributions, and the Liquidating Trustee may elect to pursue additional objections to the ultimate Distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim.  Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek

reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## Section 10.02  Disallowance of Claims

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Liquidating Trustee (or the Claims Agent at the Liquidating Trustee's direction), and any Claim that has been amended may be adjusted thereon by the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## Section 10.03  Amendments

After the Confirmation Date, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided that, even with such Bankruptcy Court authorization, a Claim may be amended by the Holder of such Claim solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority, except as provided in Section 7.03 of this Plan.

## Section 10.04  No Post-Petition Interest

Unless otherwise specifically provided for in the Plan, by applicable law, or agreed to by, as applicable, the Debtors or the Liquidating Trustee, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim. Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date to the extent the final Distribution paid on account of such Claim occurs after the Effective Date.

## ARTICLE XI:
## RETENTION OF JURISDICTION

## Section 11.01  Retention of Jurisdiction

Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law (provided, however, that notwithstanding the foregoing, with respect to all civil proceedings arising under the Bankruptcy Code or arising in or related to these Chapter 11 Cases and the Plan, the Bankruptcy Court shall have original but not exclusive jurisdiction, in accordance with Section 1334(b) of Title 28 of the United States Code), including, among other things, jurisdiction to:

(I)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim or Equity Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

(II)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the Professionals of the Liquidating Trust and Liquidating Trust Oversight Committee shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court, except as set forth in the Liquidating Trust Agreement;

(III)   hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(IV)    effectuate performance of and payments under the provisions of the Plan and enforce remedies upon any default under the Plan;

(V)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, these Chapter 11 Cases, any litigation rights or the Plan whether Filed or commenced before or after the Confirmation Hearing;

(VI)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(VII)   hear and determine any and all disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(VIII)  consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(IX)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(X)     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(XI)     hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the schedules to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the schedules to the Plan, the Disclosure Statement, or the Confirmation Order;

(XII)     enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with these Chapter 11 Cases (whether or not these Chapter 11 Cases have been closed);

(XIII)     except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

(XIV)     hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(XV)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(XVI)     resolve any cases, controversies, suits, or disputes related to the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, and any Surviving Debtor, including to enter any orders resolving such cases, controversies, suits, or disputes and any attendant bar order or channeling injunction relating thereto; and

(XVII)     enter a final decree closing these Chapter 11 Cases.

## Section 11.02 Reserved Rights to Seek Bankruptcy Court Approval

Notwithstanding any provision of the Plan allowing an act to be taken without Bankruptcy Court approval, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which either of them may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidating Trust, including the administration, distribution, or proposed sale of any of the Liquidating Trust Assets.  The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion Filed by the Liquidating Trust, as applicable.

## Section 11.03  Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to these Chapter 11 Cases, including the matters set forth in Section 11.01 of the Plan, the provisions of

this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII:
## SETTLEMENT, INJUNCTIONS AND EXCULPATIONS

**Section 12.01  Compromise and Settlement of Claims, Equity Interests, and Controversies**

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Equity Interests, and Causes of Action and Avoidance Actions of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, Causes of Action and Avoidance Actions that arose before the Effective Date, any liability to the extent such Claims or Equity Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or proof of Interest based upon such debt, right, or Equity Interest is Filed or deemed Filed pursuant to Section 501 of the Bankruptcy Code; (b) a Claim or Equity Interest based upon such debt, right, or Equity Interest is Allowed pursuant to Section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Equity Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Equity Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Equity Interests, subject to the occurrence of the Effective Date.

**Section 12.02  Exculpation**

**The Exculpated Parties shall neither have nor incur any liability to any Entity, including any Holder of a Claim or Equity Interest, for any act taken or omitted in connection with the Chapter 11 Cases, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or post-petition act taken or omitted in connection with or in contemplation of the restructuring or liquidation of the Debtors, except for acts or omissions that are the result of fraud, gross negligence, or willful misconduct; <u>provided</u> <u>that</u> each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.  Without limiting the foregoing "<u>Exculpation</u>" provided under this Section 12.02, the rights of any Holder of a**

Claim or Equity Interest to enforce rights arising under this Plan shall be preserved, including the right to compel payment of Distributions in accordance with the Plan.

**Section 12.03  Non-Discharge of Debtors; Property Dealt With by the Plan**

In accordance with Section 1141(d)(3)(A) of the Bankruptcy Code, the Plan does not discharge the Debtors.  Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Equity Interests against the Debtors.  As such, no Person or Entity holding a Claim or an Equity Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Person under the Plan.

**Section 12.04  Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES AND PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (a) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (b) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 12.02 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION 12.02); OR (c) ARE OTHERWISE STAYED, TREATED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED

CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; **PROVIDED** THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; **PROVIDED**, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIM OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.

**Section 12.05 Setoffs**

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Equity Interest, may reduce, diminish, discount, compromise, or setoff against, and reduce the amount of, any Allowed Claim or Equity Interest on account of any Proof of Claim or other pleading Filed with respect thereto prior to the Confirmation Hearing and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Equity Interest (before any Distribution is made on account of such Allowed Claim or Equity Interest), any claims, rights, Causes of Action and Avoidance Actions of any nature that the Debtors' Estates may hold against the Holder of such Allowed Claim or Equity Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise), including any rights under Section 502(d) of the Bankruptcy Code, provided that neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trustee, as applicable, of any such claims, rights, Causes

of Action and Avoidance Actions that the Debtors' Estates may possess against such Holder.  In no event shall any Holder of Claims or Equity Interests be entitled to setoff any Claim or Equity Interest against any claim, right, Cause of Action or Avoidance Actions of the Debtors' Estates unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff.  Further, nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtors' or the Liquidating Trustee' right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date and that the filing of a Proof of Claim was not sufficient.

### Section 12.06  Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in these Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Debtors' bankruptcy cases are all closed except for the injunctions provided in Section 12.04, which shall be permanent injunctions.

### ARTICLE XIII:
### CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### Section 13.01  Conditions to Confirmation and Effectiveness

(a)     *Conditions to Confirmation*

The following conditions precedent to the occurrence of the Confirmation Date must be satisfied unless any such condition shall have been waived by the Plan Proponents in accordance with Section 13.03 of the Plan:

(i)     The Confirmation Order shall have been entered in form and substance satisfactory to the Plan Proponents;

(ii)     The Liquidating Trust Agreement and Plan Supplement, including any amendments, modifications, or supplements thereto shall be in form and substance materially consistent with this Plan in all respects and agreed to by the Plan Proponents;

(iii)     The Bankruptcy Court finds that adequate information and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with all deadlines for voting on or objecting to the Plan has been given to all relevant parties in accordance with the solicitation procedures governing such service and in substantial compliance with Bankruptcy Rules 2002(b), 3017 and 3020(b).

(b)    *Conditions to Effectiveness*

The following conditions precedent to the occurrence of the Effective Date must be satisfied unless any such condition shall have been waived by the Plan Proponents in accordance with Section 13.03 of the Plan:

(i)    the Confirmation Order shall have been entered in form and substance satisfactory to the Plan Proponents and shall be a Final Order;

(ii)    all actions and all agreements, instruments and other documents necessary to implement the Plan and any Plan Transaction shall have been effected or executed;

(iii)    the Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or other approvals or documents necessary to implement the Plan and any Plan Transactions that are required by law, regulation or order, if any;

(iv)    the absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any Plan Transactions.

(v)    the Liquidating Trust Agreement shall be executed and effective;

(vi)    the Disputed Claims Reserve shall be fully funded as provided in the Plan; and

(vii)    the conditions to Confirmation shall have been satisfied or waived.

## Section 13.02  Notice of Occurrence of the Effective Date

The Debtors or Liquidating Trustee shall File a notice of the occurrence of the Effective Date within five (5) Business Days after the Effective Date; provided, that failure to timely File such notice shall not affect the occurrence of the Effective Date.

## Section 13.03  Waiver of Conditions

Each of the conditions set forth in this Article XIII may be waived in whole or in part by written agreement of the Plan Proponents without any notice to parties-in-interest or the Bankruptcy Court and without a hearing.

## Section 13.04  Consequences of Non-Occurrence of Effective Date

If the Confirmation Order is vacated, (a) the Plan shall be null and void in all respects; (b) any settlement of Claims or Equity Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) to the extent permitted under the Bankruptcy Code, the time within which the Debtors may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of forty-five (45) days after the date the Confirmation Order is vacated.

# ARTICLE XIV:
## MISCELLANEOUS PROVISIONS

## Section 14.01  Administrative Claims

All Administrative Claims (other than Professional Fee Claims) must be made by application Filed with the Bankruptcy Court and served on counsel for the Debtors and the Liquidating Trustee no later than the Administrative Claims Bar Date or their Administrative Claim shall be forever barred.  In the event that the Liquidating Trustee or Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

With respect to Administrative Claims, the last day for Filing an objection to any Administrative Claim will be the Claims Objection Deadline.

## Section 14.02  Modifications and Amendments

Subject to the limitations contained in the Plan, the Plan Proponents reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, but only until the Effective Date and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIV hereof.

After the Effective Date, the Liquidating Trustee can modify the Plan only in accordance with Section 1127 of the Bankruptcy Code and applicable law; *provided*, *however*, that whether before or after the Effective Date, the Debtors or the Liquidating Trustee, as applicable, and without the need to resolicit votes on such modified Plan, may modify the Plan to provide for (i) Distributions to be made to Holders of Class 5 Claims if the Liquidating Trust Beneficiaries (on account of Allowed Class 4A Claims and Class 4B Claims) are paid in full, (ii) a bar order or channeling injunction in connection with the compromise or settlement of a Cause of Action, or (iii) assignability and transferability of Liquidating Trust Interests to the extent permitted by and in compliance with applicable law.

## Section 14.03  Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the

remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### Section 14.04  Successors and Assigns and Binding Effect

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Entity, including the Liquidating Trustee and all other parties-in-interest in these Chapter 11 Cases such as Holders of Claims and Equity Interests and the Liquidating Trust Beneficiaries.

### Section 14.05  Revocation, Withdrawal or Non-Consummation

The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans. If the Plan Proponents revoke or withdraw the Plan prior to the Confirmation Date, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of (x) any Claims against, or any Equity Interests in, the Debtors, or (y) any Avoidance Actions, litigation rights or other claims by or against the Debtors, the Creditors' Committee or any Entity, (ii) prejudice in any manner the rights of the Debtors, the Creditors' Committee, or any Entity in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors, the Creditors' Committee, or any other Entity.

### Section 14.06  Plan Supplement

The Plan Supplement shall be Filed with the Bankruptcy Court and posted on the Claims Agent's website at https://dm.epiq11.com/OGC (the "**Website**") at least ten (10) days prior to the Voting Deadline or by such later date as may be established by order of the Bankruptcy Court. Upon such Filing and posting on the Website, all documents set forth in the Plan Supplement may be accessed on the Website or inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. Holders of Claims or Equity Interests may also obtain a copy of any document set forth in the Plan Supplement upon written request to the Debtors in accordance with Section 14.08 of the Plan.

### Section 14.07  Continued Confidentiality Obligations

Notwithstanding any other provision of the Plan, all members of and advisors to the Creditors' Committee, any other holder of a Claim or Equity Interest and their respective predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with these Chapter 11 Cases or the

Debtors, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date for a period of one (1) year.

## Section 14.08  Notices

Any notice, request, or demand required or permitted to be made or provided under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> If to the Debtors:
>
>> Greenberg Traurig, P.A.
>> Attn:   Paul J. Keenan Jr.
>>         John R. Dodd
>> 333 S.E. 2nd Avenue
>> Suite 4400
>> Miami, Florida 33131
>> Telephone:  (305) 579-0500
>> Facsimile:  (305) 579-0717
>
> If to the Creditors' Committee:
>
>> Stichter, Riedel, Blain & Postler, P.A.
>> Attn:   Russell M. Blain
>>         Barbara A. Hart
>> 110 East Madison St., Ste. 200
>> Tampa, FL 33602
>> Telephone: (813) 229-0144
>> Facsimile:  (813) 229-1811

## Section 14.09  Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

## Section 14.10  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Florida shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation of the Debtors shall govern corporate governance matters with respect to the Debtor; in each case without giving effect to the principles of conflicts of law thereof.

**Section 14.11  Exhibits**

All exhibits to the Plan and Disclosure Statement or the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such exhibits shall be Filed with the Bankruptcy Court on or before the date of the Filing of the Plan Supplement, and will then be posted on the Website.  Upon such Filing and posting on the Website, all exhibits may be accessed on the Website or inspected in the office of the Clerk of the Bankruptcy Court during normal business hours.  Holders of Claims or Equity Interests may also obtain a copy of any exhibit upon written request to the Debtors in accordance with Section 14.08 of the Plan.  To the extent any exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit portion of the Plan shall control.

**Section 14.12  Conflicts**

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or any exhibits, schedules, appendices, supplements or amendments to the foregoing conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.  To the extent of any inconsistency between the Plan and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

**Section 14.13  Exemption**

Under Section 1145 of the Bankruptcy Code, the issuance of the Liquidating Trust Interests and any other securities under this Plan shall be exempt from registration under the Securities Act of 1933, as amended and all applicable state and local laws requiring registration of securities.  If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

**Section 14.14  Substitution of the Liquidating Trust for the Debtors**

On the Effective Date, the Liquidating Trust shall be deemed to be substituted as the party in lieu of the Debtors in all pending matters including (a) motions, contested matters and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court without the need or requirement for the Liquidating Trust to file motions or substitutions of parties and counsel.

[Remainder of Page Intentionally Left Blank]

Dated: June 17, 2019

**1 GLOBAL CAPITAL LLC,** *as*
*Debtor and Debtor-in-Possession*

By:  */s/ Bradley D. Sharp*
Name:  Bradley D. Sharp
Its:  Chief Restructuring Officer

**1 WEST CAPITAL LLC,** *as*
*Debtor and Debtor-in-Possession*

By:  */s/ Bradley D. Sharp*
Name:  Bradley D. Sharp
Its:  Chief Restructuring Officer

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF 1 GLOBAL
CAPITAL LLC AND 1 WEST CAPITAL
LLC**

By:  */s/ Christopher Blackstone*
Name:  Christopher Blackstone
Its:  Chairperson

By:  */s/ Charles Carpenter*
Name:  Charles Carpenter
Its:  Member

By:  */s/ Geoffrey Lipman*
Name:  Geoffrey Lipman
Its:  Member

By:  */s/ James A. Lochtefeld*
Name:  James A. Lochtefeld
Its:  Member

By:  */s/ Steven Ross Shelton*
Name:  Steven Ross Shelton
Its:  Member

By:  */s/ Khosrow Sohraby*
Name:  Khosrow Sohraby
Its:  Member

By:  */s/ Donald Stec*
Name:  Donald Stec
Its:  Member

*[Signature Page to Chapter 11 Plan of Liquidation]*

**<u>EXHIBIT B</u>**

## 1 GC COLLECTIONS CREDITORS' LIQUIDATING TRUST AGREEMENT

This 1 GC Collections Creditors' Liquidating Trust Agreement (this "Agreement") dated as of [●], 2019 is by and between (i) 1 Global Capital LLC and 1 West Capital LLC (collectively, the "Debtors") and (ii) James S. Cassel, solely in his capacity as the Trustee, for the benefit of the Holders of Allowed Claims under the terms of the *Joint Plan of Liquidation of 1 Global Capital LLC and 1 West Capital LLC Under Chapter 11 of the Bankruptcy Code* (the "Plan") confirmed by the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") in Chapter 11 Case No. 18-19121-RBR (jointly administered) by order entered [●], 2019 [ECF No. ●] (the "Confirmation Order"). Capitalized terms used in this Agreement shall have the meaning ascribed to them in Article I of this Agreement.

### WITNESSETH

**WHEREAS**, on July 27, 2018 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and commenced their Chapter 11 cases (the "Cases"), which were jointly administered under Case No. 18-19121-RBR;

**WHEREAS**, the Plan and the Confirmation Order provide for the creation of the 1 GC Collections Creditors' Liquidating Trust (the "Trust");

**WHEREAS**, the Trust is created pursuant to, and to effectuate, the Plan and the Confirmation Order;

**WHEREAS**, the Trust is created on behalf, and for the sole benefit, of the Beneficiaries pursuant to the terms of this Agreement, the Plan, and the Confirmation Order;

**WHEREAS**, the Trust is established for the purpose of collecting, distributing and liquidating the Assets for the benefit of the Beneficiaries in accordance with the terms of this

Agreement, the Plan, and the Confirmation Order with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust;

**WHEREAS**, pursuant to the Plan, the Settlors, the Trustee, and the Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Assets to the Trust as a transfer of the Assets by the Settlors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Assets by the Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Trust in accordance with Treasury Regulation § 301.7701-4;

**WHEREAS**, the Trust is intended to be treated as a grantor trust for federal income tax purposes pursuant to §§ 671-677 of the Internal Revenue Code;

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Settlors and the Trustee agree as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

1.1    <u>Definitions</u>.

1.1.1    "<u>Assets</u>" shall mean the term Liquidating Trust Assets as defined in the Plan.

1.1.2    "<u>Available Trust Cash</u>" shall mean the aggregate of the Assets and proceeds thereof after paying, funding, reserving against, or satisfying:  (a) fees incurred due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); (b) incurred operating and administrative expenses of the Trust and Oversight Committee, including but not limited to all fees, costs, expenses, and obligations incurred by the Trustee, the Oversight Committee, and the professionals of the Trust

or Oversight Committee, to the extent provided for in this Agreement, the Plan, and the Confirmation Order; and (c) the Disputed Claims Reserve.

1.1.3    "Beneficiaries" shall collectively mean the Holders of Allowed Claims under the Plan, or any successors to such Holders or their interests in the Trust.

1.1.4    "Settlors" shall mean the Debtors.

1.1.5    "Trust" shall mean the liquidating trust established pursuant to the terms of this Agreement, which is defined in the Plan as the Liquidating Trust.

1.1.6    "Trustee" shall mean the term Liquidating Trustee as defined in the Plan, who shall (a) initially, be the individual identified in the Plan as the Liquidating Trustee, and (b) subsequently, any successor or replacement duly appointed under this Agreement and the Plan.

1.1.7    "Oversight Committee" shall mean the term Liquidating Trust Oversight Committee as defined in the Plan, which shall be comprised of (a) initially, the individuals identified in the Plan as members of the Liquidating Trust Oversight Committee, and (b) subsequently, any successor or replacement member duly appointed under this Agreement and the Plan.

1.1.8    "Permitted Investments" shall include (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (c) such other investments as the Bankruptcy Court may approve from time to time, or (d) demand deposits or certificates of deposit at any bank or trust company that has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, provided, however, that the scope of any Permitted Investments shall be limited to include only those investments that a liquidating trust, within the

meaning of Treasury Regulation § 301.7701-4(d), may be permitted to hold, pursuant to Treasury Regulations, or any modification in the Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

      1.2    <u>Use of Plan Definitions</u>.  All capitalized terms that are used in this Agreement but not defined herein shall have the meaning set forth for such terms in the Plan.

      1.3    <u>Interpretation</u>.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

      1.4    <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," "hereinafter," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

## ARTICLE II

## DECLARATION OF TRUST

      2.1    <u>Creation and Name</u>.  There is hereby created the Trust, which shall be known as the "1 GC Collections Creditors' Liquidating Trust," and is the Trust referred to as the "Liquidating Trust" in the Plan.  The Trustee may conduct the affairs of the Trust under the name of the "1 GC Collections Creditors' Liquidating Trust."

      2.2    Purpose of Trust.  The Settlors and the Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Trust for the purpose of (i) receiving the Assets; (ii) collecting, distributing, and liquidating the Assets for the benefit of the Beneficiaries in accordance with the terms of this Agreement and the Plan, and (iii) distributing to the

Beneficiaries the Available Trust Cash in accordance with the terms of this Agreement, the Plan, and the Confirmation Order.  The activities of the Trust shall be limited to those activities set forth in this Agreement and as otherwise contemplated by the Plan and the Confirmation Order.

      2.3    <u>Transfer of Assets</u>.

      A.    The Settlors hereby irrevocably grant, release, assign, convey, transfer and deliver, on behalf of the Beneficiaries, all of the Settlors' right, title and interest in the Assets to the Trustee as of the Effective Date in trust for the benefit of the Beneficiaries, pursuant to §§ 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code and in accordance with the Plan and Confirmation Order.  Except as provided in the Plan and the Confirmation Order, as of the Effective Date, the Assets shall be free and clear of any and all liens, claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other Persons and Governmental Units to the maximum extent contemplated by and permissible under § 1141(c) of the Bankruptcy Code for the uses and purposes as specified in this Agreement, the Plan, and the Confirmation Order including satisfaction of the following liabilities: (a) all fees payable pursuant to 28 U.S.C. § 1930 until such time as the Bankruptcy Court enters a final decree closing each of the Settlors' Chapter 11 Cases; (b) any expenses incurred and unpaid, or to be incurred, by the Settlors, the Creditors' Committee, Oversight Committee, and the Trustee in the performance of their administrative duties in respect of winding up the Settlors' Estates, after the Effective Date; and (c) any other obligations as may be specifically set forth in the Plan and Confirmation Order.  On the Effective Date, all privileges with respect to any Assets, including attorney/client privilege to which the Debtors are entitled shall automatically be vested in, and available for assertion by or waiver by the Trustee on behalf of the Trust.  Notwithstanding anything in this Agreement to the contrary, and subject to the Plan, the Trustee, with the consent of the Oversight Committee or, in the absence

of such consent, by order of the Bankruptcy Court, may abandon or otherwise not accept any Assets that the Trustee believes, in good faith, have no value to the Trust.  Any Assets that the Trust so abandons or otherwise does not accept shall not vest in the Trust.

B.    The Trustee shall automatically, and without need for further notice or approval of the Bankruptcy Court or the Settlors, be designated as the representative of the Estates pursuant to § 1123 of the Bankruptcy Code to enforce or pursue any Cause of Action transferred to the Trust after the Effective Date in accordance with the terms of this Agreement, the Plan, and the Confirmation Order.  Any proceeds of a Cause of Action shall be distributed pursuant to the terms of the Plan and this Agreement.

2.4    Securities Law.  Under § 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Trust to the Beneficiaries under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.  If the Trustee determines, with the advice of counsel, that the Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

2.5    Appointment and Acceptance of Trustee.  The Trustee shall be deemed to be appointed pursuant to § 1123(b)(3)(B) and all other applicable Sections of the Bankruptcy Code.  The Trustee accepts the Trust created by this Agreement and irrevocable the grant, assignment, transfer, conveyance, and delivery to the Trustee, on behalf, and for the benefit, of the Beneficiaries, by the Settlors of all of their respective right, title, and interest in the Assets, upon

and subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order.

2.6    No Reversion to Settlors.  In no event shall any part of the Assets be distributed to any of the Settlors.  Rights to any reversionary interests in the Assets shall be controlled by the Plan and the Confirmation Order.

**ARTICLE III**

**ADMINISTRATION OF THE TRUST**

3.1    Oversight Committee.

3.1.1.    *Powers and Duties of Oversight Committee.*  Pursuant to the Plan and the Confirmation Order, on the Effective Date, the Oversight Committee shall be established to oversee the implementation of the Plan and administration of the Trust.  The Oversight Committee shall have access to the Trustee and the right to consult with and, to the extent provided in the Plan and this Agreement, oversee acts, decisions and functions of the Trustee in connection with the implementation of the Plan and administration of the Trust on and after the Effective Date.  Unless expressly stated otherwise in this Agreement, any act permitted or required by the Oversight Committee may be taken upon a simple majority vote.  The Liquidating Trustee shall resolve any matter as to which the Liquidating Trust Oversight Committee is deadlocked, except any matter (i) relating to the Liquidating Trustee's resignation, incapacity or removal or (ii) as to which the Liquidating Trustee deems it necessary or appropriate to seek direction from the Bankruptcy Court.

3.1.2.    *Member's Term of Service.*  Each member of the Oversight Committee shall serve until (a) he or she resigns, is removed, or is unable to serve; or (b) the Trust is terminated in accordance with this Agreement.

3.1.3.  *Resignation of Member*.  A member of the Oversight Committee may resign by providing at least thirty (30) days' written notice to the other members of Oversight Committee and to the Liquidating Trustee (who shall promptly cause a notice of such resignation to be filed with the Bankruptcy Court) of such member's intention to resign.  The resignation shall be effective on the later of (a) the date specified in the notice; or (b) the date that is thirty days (30) days after the date the notice is delivered.

3.1.4.  *Removal of Member*.  A member of the Oversight Committee may be removed by (i) affirmative vote of a majority of the remaining members of the Oversight Committee for cause, or (ii) by the Liquidating Trustee for cause, in each case subject to approval by the Bankruptcy Court after notice and a hearing.

3.1.5.  *Appointment of Successor Members*.  Vacancies on the Oversight Committee shall be filled by (i) the remaining members of the Oversight Committee, or (ii) if there are no members of the Oversight Committee, then the vacancies shall be filled by the Liquidating Trustee, in each case upon notice and a hearing before the Bankruptcy Court.  Any successor member validly appointed to the Oversight Committee shall be fully vested with all rights, powers, duties and obligations of his or her predecessor.

3.1.6.  *Compensation and Costs of Oversight Committee*.  No member of the Oversight Committee shall be compensated for his or her service as a member of the Oversight Committee, *provided* that each member of the Oversight Committed shall be reimbursed from the Assets for the documented and reasonable out-of-pocket expenses incurred in connection with each member's service on the Oversight Committee.  Any member of the Oversight Committee seeking reimbursement pursuant to this Agreement shall deliver an invoice and supporting documentation to the Trustee and the SEC before payment from the Assets shall be allowed.  The

Trustee and the SEC, as applicable, shall have fourteen (14) days from the delivery of any invoice to give notice of an objection to the invoice to the member seeking reimbursement. For an objection to be valid, it shall be in writing and set forth in detail the specific reimbursement items objected to and the basis for the objection. The uncontested portion of each invoice shall be paid within twenty-one (21) days after its original delivery to the Trustee and the SEC. Any objection that remains unresolved fourteen (14) days after it is made may be submitted by the Trustee or affected member to the Bankruptcy Court for resolution.

3.1.7. *Oversight Committee Counsel*. The Oversight Committee may retain independent counsel upon application, including proposed terms for compensation and reimbursement, to the Bankruptcy Court and after notice and hearing.

3.1.8. *Disputes*. The Bankruptcy Court may hear and determine any dispute or other matter concerning the Oversight Committee after notice and a hearing.

3.2    Rights, Powers, Privileges and Duties. The Trustee shall have only the rights, powers, privileges, and duties expressly provided in this Agreement, the Plan, and the Confirmation Order. Subject to the terms of the Plan, the Confirmation Order, and this Agreement, including Section 3.11 of this Agreement, and in consultation with or, where expressly provided in this Agreement or the Plan, approval of the Oversight Committee, the Trustee shall have the power to take the actions granted in this Section 3.2, and any powers reasonably incidental thereto, which the Trustee reasonably determines to be necessary or appropriate to fulfill the purpose of the Trust, including but not limited to:

A.    Commencing, prosecuting, settling, assigning, or otherwise compromising or abandoning for the benefit of the Trust any and all Avoidance Actions and Causes of Action transferred to the Trust or arising in favor of the Trust, including, without limitation, taking any

action with respect to appeals, counterclaims, and defenses of or with respect to such claims and causes of action, including retaining counsel to pursue Avoidance Actions and Causes of Action as permitted by the Plan;

B.      Exercising all powers provided to the Trustee or the Trust under the Plan or Confirmation Order, including, without limitation, the right to allow, object to, compromise or settle, or reconcile Unsecured Claims, Priority Claims (both tax and non-tax), Administrative Claims, Secured Claims, any other Claims asserted against the Debtors' Estates, and any Interests in the Debtors' Estates;

C.      Winding down, liquidating, selling or abandoning the Assets or any portion thereof, including, without limitation, winding down and liquidating the merchant-cash-advance portfolio of the Debtors;

D.      Executing any documents and taking any other actions related to, or in connection with, the liquidation of the Assets or the exercise of the Trustee's powers granted in this Agreement, the Plan, and Confirmation Order;

E.      Holding legal title in, to, or arising from the Assets and excercising all rights with respect to the Assets;

F.      Establishing the Disputed Claims Reserve, as well as any other required reserves, in an amount as may be necessary and appropriate for the proper operation of matters incident to the Trust, in consultation with the Oversight Committee;

G.      Protecting and enforcing the rights to the Assets vested in the Trustee by this Agreement by any method reasonably determined to be appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

H.      Making distributions of the Assets to or on behalf of the Beneficiaries in accordance with this Agreement, the Plan, and the Confirmation Order;

I.      Filing any and all tax returns with respect to the Trust and paying taxes properly payable by the Trust, if any; filing and issuing any and all necessary information returns, and taking any and all action necessary to obtain payment of any tax refund(s) due to the Settlors, their Estates and/or the Trust; and contesting or settling tax disputes.

J.      Making all necessary filings in accordance with any applicable law, statute, or regulation;

K.      Determining and satisfying from the Assets any and all taxes and ordinary course liabilities, including reasonable professional fees and expenses, incurred by or on behalf of the Trust and the Oversight Committee, including payment of expenses for the members of the Oversight Committee;

L.      Investing the Assets received by the Trust or Trustee or otherwise held by the Trust or Trustee in accordance with Section 3.12 of this Agreement;

M.      In the event that the Trustee determines that the Beneficiaries or the Trust may, will or have become subject to different tax consequences than those described in this Agreement, taking such actions that will, or are intended to, address such different tax consequences;

N.      Creating sub-trusts or title vehicles of which the Trust or the Beneficiaries hold the beneficial or ownership interests, as applicable;

O.      Sending annually each Beneficiary a separate statement stating the Beneficiary's share of income, gain, loss, deduction, or credit and instructing all such Beneficiaries to report such items on their federal tax returns;

-11-

P.      Opening and maintaining bank accounts on behalf of or in the name of the Trust;

Q.      In reliance upon the official claims register maintained in the Settlors' Chapter 11 Cases and any applicable court order, maintaining on the Trustee's books and records a register evidencing the beneficial interest in the Trust held by each Beneficiary;

R.      Performing such functions and taking such actions as are provided for or permitted in this Agreement, the Plan, the Confirmation Order, or any other agreement executed pursuant to this Agreement, the Plan, or the Confirmation Order; and

S.      Terminating this Trust and seeking to close the Settlors' Chapter 11 Cases pursuant to § 350(a) of the Bankruptcy Code.

3.3     Assets.  Subject to the Plan, in consultation with the Oversight Committee, the Trustee shall be authorized to hold, collect, and liquidate all uncollected and unliquidated Assets, including tax refunds.

3.4     Claims Administration.  Subject in all respects to the provisions hereof and the Plan and the Confirmation Order, the Trustee, in consultation with the Oversight Committee, shall have the authority to allow, compromise or settle, reconcile, and file objections to Claims or Equity Interests, and to settle, compromise, withdraw, or litigate to judgment objections to any and all Claims or Equity Interests, regardless of whether such Claims or Equity Interests are in a Class or otherwise.

3.5     Disputed Claims.  Subject to the foregoing and the provisions of the Plan and the Confirmation Order, from and after the Effective Date, the Trustee (a) may settle or compromise any Disputed Claim in accordance with this Agreement with the consent of the Oversight Committee or, to the extent the Trustee and the Oversight Committee do not agree, as ordered by

the Bankruptcy Court and (b) shall succeed to the Settlors' rights with respect to any objections filed by the Settlors that remain pending as of the Effective Date.  From and after the Effective Date, the Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

3.6     Cure Costs.  Subject to the Plan and the Confirmation Order, on and after the Effective Date, the Trustee, with the consent the Oversight Committee, or to the extent the Trustee and the Oversight Committee do not agree, as ordered by the Bankruptcy Court, may settle any dispute regarding the amount of any Cure without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

3.7     Estimation.  Subject to the Plan and the Confirmation Order, the Trustee, with the consent of the Oversight Committee or, to the extent the Trustee and the Oversight Committee do not agree, as ordered by the Bankruptcy Court, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Settlors or the Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.

3.8     Causes of Action.  Subject to the Plan and the Confirmation Order, on and after the Effective Date, the Trustee, with the consent of the Oversight Committee or, to the extent the

Trustee and the Oversight Committee do not agree, as ordered by the Bankruptcy Court, may pursue Causes of Action and Avoidance Actions.

3.9    <u>Agents and Professionals</u>.  Subject to the Plan and the Confirmation Order, the Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants or other professionals and employees as the Trustee deems appropriate in the reasonable exercise of his or her discretion, and who the Trustee reasonably determines to have qualifications necessary to assist the Trustee in the proper administration of the Trust; *provided* that the retention of an attorney, financial advisor, account or other professional shall be effective only if (i) the Trustee provides the Oversight Committee and the SEC written notice of the proposed retention and (ii) (a) within fourteen (14) days after delivery of such notice neither the Oversight Committee nor SEC object in writing to the retention or (b) such retention is approved by the Bankruptcy Court after notice and a hearing.  Subject to Section 7.8 of this Agreement, the Trustee may pay the reasonable fees, costs and expenses of such persons (including for the Trustee) out of the Assets in the ordinary course of business pursuant to the Plan and Confirmation Order. Subject to the terms and conditions of this Agreement, the Plan and Confirmation Order, the Trustee may retain professionals who previously were employed by the Settlors and/or Creditors' Committee.

3.10    <u>Safekeeping of Assets</u>.  All Assets shall, until distributed or paid over as herein provided or in the Plan, be held in trust for the benefit of the Beneficiaries in accordance with the Plan and this Agreement.  The Trustee shall be under no liability for interest or producing income on any moneys received by him or her herein and held for distribution or payment to the Beneficiaries, except as such interest or income shall actually be received by the Trustee.

3.11    Limitations on Trustee.  The Trustee shall not at any time, on behalf of the Trust or Beneficiaries, enter into or engage in any trade or business, and no part of the Assets or the proceeds, revenue, or income therefrom shall be used or disposed of by the Trust in furtherance of any trade or business.  Notwithstanding the foregoing, the Trustee is authorized and directed to continue to wind down and liquidate the merchant-cash-advance portfolio of the Debtors for the benefit of the Beneficiaries.

3.12    Investment.  The Trustee may only invest funds held in the Trust in Permitted Investments, in a manner consistent with the requirements of the Bankruptcy Code or any order of the Bankruptcy Court modifying such requirements and, provided that the Trustee does so, he or she shall have no liability in the event of insolvency of any institution in which he or she has invested any of the Assets or any proceeds, revenue, or income therefrom.

3.13    Trustee Action.  The Trustee shall hold, collect, conserve, protect, and administer the Trust in accordance with the provisions of this Agreement and the Plan, and pay and distribute amounts as set forth therein for the purposes set forth in the Plan and this Agreement.  Any good faith determination by the Trustee as to what actions are in the best interests of the Trust shall be determinative, subject to approval by the Oversight Committee as may be required by this Agreement and the Plan.

3.14    Bankruptcy Court Approval of Trustee Actions.  Except as provided in the Plan, the Confirmation Order, or as otherwise specified in this Agreement, the Trustee need not obtain an order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court.  Except as provided in the Plan, the Confirmation Order, or otherwise specified in this Agreement, the Trustee shall exercise his or her business judgment for the benefit of the Beneficiaries in order to maximize the value of the Assets

and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing in this Section 3.14, the Trustee may submit to the Bankruptcy Court any question or questions regarding which the Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Trustee with respect to the Assets, the Trust, and the Settlors, and as provided in the Plan, the Confirmation Order, or this Agreement, including the administration and distribution of the Assets.  The Bankruptcy Court shall retain jurisdiction for such purposes and shall approve or disapprove any such proposed action upon motion, provided, however, if the Bankruptcy Court declines to exercise such jurisdiction or determines it does not have such jurisdiction, the Trustee may seek approval of any such proposed action from any court of competent jurisdiction.

3.15    Confidentiality.  The Trustee shall, during the period that he or she serves as Trustee under this Agreement and for a period of twelve (12) months following the termination of this Agreement or his or her removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Assets or litigation relates or which he or she has become aware of in his or her capacity as Trustee.

**ARTICLE IV**

**DISTRIBUTIONS FROM THE TRUST**

4.1    Distributions.  On and after the Effective Date, the Trustee shall make Distributions as and when required under the terms of the Plan and the Confirmation Order.  The Trustee shall require any Beneficiary to furnish to the Trustee in writing his, her or its Employer or Taxpayer Identification Number as assigned by the IRS or an executed IRS Form W-9 or similar tax form, and the Trustee may condition any Distribution upon receipt of such identification number or

document.  The Trustee shall not make any distributions of Assets to the Beneficiaries unless the Trustee retains and reserves in the Disputed Claims Reserve such amounts as are reasonably necessary to satisfy amounts that would have been distributed in accordance with this Article IV in respect of Disputed Claims if the Disputed Claims were determined to be Allowed Claims immediately prior to such proposed distribution to the Beneficiaries.  On a quarterly basis, the Trustee shall provide the Oversight Committee with an update on the activity and current balance of the Disputed Claims Reserve.

4.2     Distributions After Allowance or Disallowance of a Disputed Claim.  Within thirty (30) days of a Disputed Claim becoming an Allowed Claim, the Trustee shall distribute to the Holder thereof, from the Disputed Claim Reserve, such amount of Available Trust Cash as would have been distributed to such Holder if its Claim had been an Allowed Claim on the Effective Date.  The Trustee shall no longer reserve for and shall distribute to the Beneficiaries, pursuant to this Agreement, their Pro Rata share of the funds held in the Disputed Claim Reserve on account of any Disputed Claim that becomes Disallowed.

4.3     Undeliverable Property.  If any distribution of Available Trust Cash to or on behalf of a Beneficiary is returned to the Trustee or his or her agent as undeliverable, no further distribution to such Beneficiary shall be made unless and until the Trustee is notified in writing of such Beneficiary's then-current address.  Any Beneficiary that does not assert a claim for an undeliverable distribution of Available Trust Cash within four (4) months after the last Distribution Date on which the relevant distribution became deliverable shall no longer have any claim to or interest in the Available Trust Cash represented by such undeliverable distribution, and in such cases, all title to and all beneficial interests in the Assets represented by any such undeliverable

distributions shall revert to and/or remain in the Trust and shall be distributed in accordance with Article 4 of this Agreement and the Plan.

4.4    <u>Payments Limited to Assets</u>.  All payments to be made by the Trustee to or for the benefit of any Beneficiary shall be made only from the Assets, including proceeds from Causes of Action.

4.5    <u>United States Trustee Fees and Reports</u>.  After the Effective Date, the Trustee shall pay as an expense of the Trust all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Trust's disbursements as required under the Plan and Confirmation Order until the Settlors' Chapter 11 Cases are closed.  After the Confirmation Date, the Trust shall prepare and serve on the Office of the U.S. Trustee such quarterly disbursement reports for the Trust as required by the U.S. Trustee for as long as the Chapter 11 Cases remain open.

4.6    <u>Insurance</u>.  Subject to the Plan, the Trustee shall use Assets in the Trustee's reasonable business judgment to maintain customary insurance coverage, if available, for the protection of the Persons or Entities serving as Trustee or administrator of the Trust on and after the Effective Date.

4.7    <u>Distributions to Charity</u>.  Notwithstanding anything else in the Plan and Confirmation Order, or this Agreement, if at any time the Trustee determines that it is likely that the Assets that remain available for an additional Distribution to Beneficiaries on account of Claims against any Debtor will be insufficient to justify such Distribution (taking into account, among other things, the anticipated cost of effecting such Distributions), the Trustee may elect to Distribute all Trust Assets that otherwise would have been available for such Distribution to a non-profit 503(c) organization providing bankruptcy related services to consumer debtors selected by the Trustee.

# ARTICLE V

# BENEFICIARIES

5.1　_Incidents of Ownership_.　The Beneficiaries shall be the sole beneficiaries of the Trust and the Assets, and the Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this Agreement, the Plan and the Confirmation Order.

5.2　_Interest Beneficial Only_.　The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary or any of the Settlors to any title in or to the Assets or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein or in the Plan.

5.3　_Evidence of Beneficial Interest_.　Ownership of a beneficial interest in the Assets shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4　_Beneficiary Withholding Forms_.　As set forth in Section 4.1, the Trustee shall require any Beneficiary to furnish to the Trustee in writing his, her or its Employer or Taxpayer Identification Number as assigned by the IRS or an executed IRS Form W-9 or similar tax form, and the Trustee may condition any Distribution upon receipt of such identification number or document.

5.5　_Notice of Transfer of Beneficial Interest_.　Any notice of a change of beneficial interest ownership shall be provided in accordance with Section 13.2 of this Agreement.　The notice shall be executed by both the transferee and the transferor, and the signatures of the parties shall be acknowledged before a notary public and as required by Bankruptcy Rule 3001(e).　The notice must clearly describe the interest to be transferred.　The Trustee may rely upon such

signatures and acknowledgments as evidence of such transfer without the requirement of any further investigation.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     <u>Reliance</u>.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, the Trustee may rely and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed to be genuine and to have been signed or presented to the Trustee.

6.2     <u>Parties Dealing With the Trustee</u>.  In the absence of actual knowledge to the contrary, any person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Assets.  There is no obligation on any Person dealing with the Trustee to inquire into the validity, expediency, or propriety of any transaction by the Trustee or any agent of the Trustee.

6.3     <u>Limited Recourse</u>.  Except as otherwise provided in this Agreement, the Plan (in particular, Section [●]), or the Confirmation Order (in particular, Section [●]), Persons (including any professionals retained by the Trustee in accordance with this Agreement) engaged in transactions with the Trust or the Trustee shall look only to the Assets to satisfy any liability incurred in connection with the carrying out the terms of this Agreement, the Plan, or the Confirmation Order.

6.4     <u>Limitation of Liability</u>.  The Trustee and his or her agents, employees, officers, directors, professionals, attorneys, accountants, advisors, and representatives shall not be subject to any personal liability whatsoever, in tort, contract, or otherwise, to any Person in connection with the Assets or the affairs of the Trust, except for their own gross negligence, willful

misconduct, fraud, bad faith, self-dealing or breach of the duty of loyalty and shall not include indemnification or exculpation for breach of contract claims that may arise from such indemnified party's breach of its own agreement with the Trust.  Other than as set forth in the Plan or Confirmation Order, nothing in this Agreement shall be deemed to release any Beneficiary from any actions or omissions occurring prior to the Effective Date.

6.5    <u>Non-Liability for Acts of Others</u>.  Nothing contained in this Agreement, the Plan, or the Confirmation Order shall be deemed to be an assumption by the Trustee of any of the liabilities, obligations, or duties of the Settlors or Beneficiaries and shall not be deemed to be or contain a covenant or agreement by the Trustee to assume or accept any such liability, obligation, or duty.  Any successor Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Trustee hereunder, and any statement or representation made by a predecessor Trustee or his or her agents as to the assets comprising the Assets or as to any other fact bearing upon the prior administration of the Trust, so long as he or she has a good faith basis to do so.  A Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue.  A Trustee or successor Trustee shall not be liable for any act or omission of any predecessor Trustee, nor have a duty to enforce any claims against any predecessor Trustee on account of any such act or omission.

6.6    <u>Indemnification</u>.  The Trustee and Oversight Committee and its members, and each of their respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors and representatives (collectively, the "<u>Indemnified Parties</u>") shall be indemnified and held harmless by the Trust, to the fullest extent permitted by law, solely from the Assets for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees,

disbursements, and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of an Indemnified Party solely in its capacity as such; provided, however, that the Trust shall not be liable to indemnify any Indemnified Party for any loss finally judicially determined by the Bankruptcy Court to have resulted primarily from any act or omission constituting gross negligence, willful misconduct, fraud, bad faith, self-dealing or breach of the duty of loyalty by such Indemnified Party, which in either event caused actual material damage to the Trust or the Beneficiaries, or for breach of contract claims that may arise from such Indemnified Party's breach of its own agreement with the Trust.  Notwithstanding any provision in this Agreement to the contrary, the Indemnified Parties shall be entitled to request advances from the Trust to cover reasonable fees and necessary expenses incurred in connection with defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such; provided, however, that the Trustee shall not be required to make any such advances; provided further, however, that any Indemnified Parties receiving such advances shall repay the amounts so advanced to the Trust upon the entry of an order of a court of competent jurisdiction finding that such Indemnified Parties were not entitled to any indemnity under the provisions of this Section 6.6 and Section [●] of the Plan, and Section [●] of the Confirmation Order.  This indemnification shall survive the death, dissolution, resignation, or removal, as may be applicable, of the Indemnified Parties, or the termination of the Trust, and shall inure to the benefit of the Indemnified Parties' heirs and assigns.

## ARTICLE VII

## SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE

7.1    <u>Initial Trustee</u>.  The initial Trustee shall be the individual identified as Liquidating Trustee in the Plan.

7.2    <u>Term of Service</u>.   The Trustee shall serve until (a) the completion of all the Trustee's duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the Trust in accordance with this Agreement; or (c) the Trustee's death or dissolution, incapacitation, resignation, or removal, as set forth below or as provided for in the Plan.

7.3    <u>Removal of a Trustee</u>.  Subject to the Plan, a majority of the Oversight Committee may remove the Trustee for cause, including, without limitation, incapacity or failure or refusal to perform duties under the Plan and this Agreement, upon notice and hearing before the Bankruptcy Court.  If removal of the Trustee is sought, then the Trustee is entitled to oppose such removal and to pay the Trustee's reasonable attorneys' fees and expenses from the Assets in connection with such objection.

7.4    <u>Resignation of Trustee</u>.  The Trustee may resign at any time by giving the Oversight Committee at least thirty (30) days' written notice of the Trustee's intention to do so.  In the event of a resignation, the resigning Trustee shall render to the Oversight Committee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.  The resignation shall be effective on the later of (a) the date specified in the notice; (b) the date that is thirty days (30) days after the date the notice is delivered; or (c) the date of the account described in the preceding sentence is delivered.

7.5    <u>Appointment of Successor Trustee</u>.  Subject to the Plan, upon the resignation, removal, or inability of the Trustee to serve, then the Oversight Committee shall, by unanimous consent, appoint a successor Trustee, and such successor shall be subject to approval by the Bankruptcy Court after notice and a hearing.  If the Oversight Committee does not appoint a successor Trustee, including, without limitation, for inability to obtain unanimous consent, within sixty (60) days of the occurrence or effectiveness of the Trustee's resignation, removal, or inability to serve, then upon motion by a party in interest (including counsel to the Trust), after notice and a hearing, the Bankruptcy Court shall appoint a successor Trustee.  Any successor Trustee shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Trustee and all of the successor Trustee's heirs and legal and personal representatives, successors or assigns.

7.6    <u>Powers and Duties of Successor Trustee</u>.  A successor Trustee shall have all the rights, privileges, powers, and duties of the predecessor Trustee under this Agreement and the Plan.

7.7    <u>Trust Continuance</u>.  The death, incapacity, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

7.8    <u>Compensation and Costs of Administration</u>.  Subject to the Plan, the Trustee may retain and compensate professionals (including the Trustee) as provided for in Section 3.9 of this Agreement.  The reasonable fees and actual and necessary expenses of such professionals and the Trustee shall be paid by the Trustee upon each monthly submission of an invoice or a fee statement to the Trustee and/or the Oversight Committee, as applicable, in accordance with the following procedures.  The Trustee shall deliver his or her invoices or fee statements to the Oversight

Committee and the SEC before payment from the Assets shall be allowed.  Any professionals retained by the Trustee pursuant to this Agreement shall deliver their invoices or fee statements to the Trustee, the Oversight Committee and the SEC before payment from the Assets shall be allowed.  The Trustee, Oversight Committee and SEC, as applicable, shall have fourteen (14) days from the delivery of any invoice or fee statement to give notice of an objection to the fee statement to the professional seeking compensation or reimbursement (including the Trustee).  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  The uncontested portion of each invoice shall be paid within twenty-one (21) days after its original delivery to the Trustee.  Any objection that remains unresolved fourteen (14) days after it is made may be submitted by the affected party or professional to the Bankruptcy Court for resolution.

       7.9    <u>Reporting and Filing Requirements</u>.

       A.    Within thirty (30) days after the last day of each calendar quarter in which the Trust shall remain in existence, the Trustee shall file a report with the Bankruptcy Court of all Assets received by the Trust, all Available Trust Cash disbursed to Beneficiaries, all Assets held by the Trust, and all fees, income, and expenses related to the Trust during the preceding calendar year.  The Trustee's report shall be provided to the Oversight Committee upon filing with the Bankruptcy Court, and shall be available to any Beneficiary upon request.

       B.    The Trustee shall also timely prepare, file and distribute such additional statements, reports and submissions as may be necessary to cause the Trust and the Trustee to be in compliance with applicable law.

       C.    The Trustee shall provide such additional statements, reports, submissions and information to the Oversight Committee as may reasonably be requested,

including without limitation, periodic updates on the status of the Trust, its Assets (including tax refunds), and projected timing of future distributions (to the extent known by the Trustee).

## ARTICLE VIII

## TRUST RIGHTS AND OBLIGATIONS

8.1     The Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations.

8.2     To the extent reasonably practicable unless otherwise ordered by the Bankruptcy Court, the Trustee shall, within seventy-five (75) days after the end of each calendar year, send to each Beneficiary a statement setting forth the Beneficiary's share or items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns.  Such a statement shall also be sent to each Beneficiary within seventy-five (75) days of the dissolution of the Trust.  The Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to provisions of the Plan and Confirmation Order relating to Disputed Claims) to the Beneficiaries in accordance with their relative beneficial interests in the Trust, as determined pursuant to this Agreement.

8.3     As soon as practicable after the Effective Date, the Trustee (to the extent that he or she deems it necessary or appropriate in the reasonable exercise of his or her discretion) shall, in good faith, value the Assets, and shall apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including the Settlors, the Trustee, and the Trust Beneficiaries) for all federal income tax purposes.  The Bankruptcy Court shall resolve any dispute regarding the valuation of the Assets.

8.4     In addition to the Trustee's rights and duties with respect to the Trust, and subject to the Plan, on and after the Effective Date, the Trustee is authorized to implement the Plan and any applicable orders of the Bankruptcy Court.

## ARTICLE IX

## MAINTENANCE OF BOOKS AND RECORDS

9.1     Subject to the Plan, on the Effective Date, the Trust shall: (a) to the extent provided in the Plan or the Confirmation Order, take possession of all books, records, and files of the Settlors and their Estates, in all forms including electronic and hard copy, other than the documents of the Settlors' professionals; and (b) provide for the retention and storage of such books, records, and files until such time as the Trustee determines, in accordance with this Agreement and in consultation with the Oversight Committee, that retention of same is no longer necessary or required.

9.2     The Trustee shall maintain books and records containing a description of all property from time to time constituting the Assets and an accounting of all receipts and disbursements.  Said books and records shall be open to inspection by any Beneficiary at any reasonable time during normal business hours.  The Trustee shall furnish to any Beneficiary upon written request an annual statement of receipts and disbursements, including a summary of all income and expenses of the Trust.

## ARTICLE X

## DURATION OF TRUST

10.1     Duration.  The Trust shall become effective upon the Effective Date of the Plan, and the Trust and its provisions herein shall remain and continue in full force and effect until the Trust is terminated.

10.2    <u>Termination</u>.    Subject to the Plan, the Trustee and members of the Oversight Committee shall be discharged and the Trust and Oversight Committee shall be terminated, at such time as (1) all Disputed Claims have been resolved, (2) all of the Assets have been liquidated, (3) all duties and obligations of the Trustee hereunder and in the Plan have been fulfilled, (4) all Distributions required to be made by the Trust under the Plan and the Agreement have been made, and (5) the Chapter 11 Cases of the Debtors have been closed, but in no event shall the Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion by the Trustee within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service, to the extent required under applicable law at that time, that any further extension would not adversely affect the status of the Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the liquidation, recovery and Distribution of the Assets.    The Trustee may seek such an extension with the consent of the Oversight Committee or, to the extent the Trustee and the Oversight Committee do not agree, as ordered by the Bankruptcy Court.

10.3    <u>Continuance of Trust for Winding Up</u>.    After the termination of the Trust and for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until the Trustee's duties have been fully performed, including, without limitation, such post-distribution tasks as necessary to windup the affairs of the Trust.    After the termination of the Trust, the Trustee shall retain for a period of six (6) months the books, records, Beneficiary lists, and certificates and other documents and files which shall have been delivered to or created by the Trustee.    At the Trustee's discretion, all of such records and documents may, but need not, be

destroyed at any time after six (6) months from the completion and winding up of the affairs of the Trust.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Trust and final distribution of the Trust, the Trustee shall have no further duties or obligations hereunder.  For the avoidance of doubt, the limitations on liability and indemnification rights contained in Article VI hereof shall apply to any actions taken by the Trustee and his professionals during the course of winding up the affairs of the Trust.

**ARTICLE XI**

**TAX TREATMENT OF THE TRUST**

11.1   <u>Intention of Parties to Establish Grantor Trust</u>.  This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.  For all federal income tax purposes, the Beneficiaries of the Trust will be treated as grantors and owners thereof and it is intended that the Trust be classified as a liquidating Trust under 26 C.F.R. § 301.7701–4 and that the Trust is owned by the Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a Distribution of an undivided interest in the Assets and then contributed such interests to the Trust.  Accordingly, the Trust shall, in an expeditious but orderly manner, and pursuant to the terms of this Agreement and the Plan, liquidate and convert to Cash the Assets, make timely Distributions to the Beneficiaries pursuant to the Plan, and not unduly prolong the Trust's duration.  The Trust shall not be deemed a successor in interest of the Settlors for any purpose other than as specifically set forth herein, the Plan and Confirmation Order.

11.2   <u>Tax Returns</u>.  In accordance with the Plan, the Trustee shall cause the filing of file returns for the Trust, except with respect to any Disputed Claims Reserve, as a grantor trust

pursuant to Treasury Regulation Section 1.671-4(a).  The Trust's taxable income, gain, loss, deduction or credit will be allocated to each one of the Beneficiaries in accordance with their relative beneficial interests in the Trust.

11.3    Valuation of Assets.  As soon as possible after the Effective Date, the Trustee shall make a good faith valuation of the Assets, and such valuation shall be used consistently by all parties, including all of the Beneficiaries, for all federal income tax purposes.  The Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Trust that are required by any Governmental Unit for taxing purposes.

11.4    Disputed Claims Reserve.  The Trustee shall file all income tax returns with respect to any income attributable to the Disputed Claims Reserve and shall pay any federal, state and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit or loss allocable thereto.

11.5    Determination of Taxes.  The Trustee may request an expedited determination of Taxes of the Settlors or of the Trust, including the Disputed Claims Reserve, under Bankruptcy Code § 505(b) for all returns filed for, or on behalf of, the Settlors and the Trust for all taxable periods through the dissolution of the Trust, and to take any and all action necessary to obtain payment of any tax refund(s) due to the Settlors, their Estates and/or the Trust.

11.6    Filing, Reporting, Withholding.  The Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Settlors and the Trust.  The Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Trust shall be subject to any such withholding and reporting requirements.

## ARTICLE XII

## WIND-DOWN

12.1    <u>Wind-Down of Surviving Settlors</u>.  In addition to the Trustee's rights and duties with respect to the Trust as set forth herein, on and after the Effective Date, the Trustee shall also have the power and authority to take any action necessary to wind down and dissolve the Surviving Debtors, as more particularly set forth in Section [●] of the Plan, taking into account any applicable requirements to maintain the existence of one or more of the Surviving Debtors in order to collect and liquidate the Assets.

## ARTICLE XIII

## MISCELLANEOUS

13.1    <u>Jurisdiction</u>.  The Bankruptcy Court shall retain exclusive jurisdiction to the maximum extent permitted by law over (a) the Trust and the Trustee with respect to the administration of and activities relating to the Trust, as well as (b) any issues or disputes arising out of this Agreement; <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, the Trustee shall have the power and authority to bring any action in any court of competent jurisdiction to prosecute any Causes of Action assigned to the Trust,  subject to the oversight and consent requirements set forth in this Agreement and the Plan.

13.2    <u>Limitation on Transferability</u>.  A beneficial interest in the Trust shall be non-assignable and non-transferable except upon death of the interest holder or by operation of law. An assignment or transfer shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to pay all amounts to or for the benefit of the assigning or transferring Beneficiary until receipt of proper notification and proof of assignment or transfer.  The Trustee may rely upon such proof without the requirement of any

further investigation.  Any purported assignment or transfer in violation of this Section 13.2 is null and void.

13.3    <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

If to the Trust/Trustee:

James S. Cassel
c/o Cassel Salpeter & Co.
801 Brickell Avenue Suite 1900
Miami, Florida 33131

With a copy to:

[_____]
[_____]
[_____]

If to the Oversight Committee:

Oversight Committee Members

Charles ("Charley") Carpenter
[_____]
[_____]
[_____]

Donald Stec
[_____]
[_____]
[_____]

Geoffrey Lipman

[                              ]
[                              ]
[                              ]

Khosrow ("Kevin") Sohraby

[                              ]
[                              ]
[                              ]

or to such other address as may from time to time be provided in written notice by the Trustee.

13.4    <u>No Bond</u>.  Notwithstanding any state law to the contrary, the Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction.

13.5    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without giving effect to conflicts of law principles.

13.6    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

13.7    <u>Headings</u>.  The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.

13.8    <u>No Execution</u>.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can bind, pledge, encumber, execute upon, garnish, or attach the Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payment shall be governed solely by the Plan and this Agreement.

13.9    <u>Plan and Confirmation Order</u>.  To the extent that the terms of this Agreement are inconsistent with the terms set forth in the Plan, then the terms of the Plan shall govern and control. To the extent that the terms of this Agreement are inconsistent with the terms set forth in the Confirmation Order, then the terms of the Confirmation Order shall govern and control.

13.10   <u>Amendment</u>.   This Agreement may only be amended with the consent of the Oversight Committee in a way that is not inconsistent with the Plan or Confirmation Order or, to the extent the Trustee and the Oversight Committee do not agree, as ordered by the Bankruptcy Court.

13.11   <u>Severability</u>.   If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

IN WITNESS WHEREOF, the parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.


**Trustee**

By: _____
    Name:  James S. Cassel
    Title:  Trustee

**1 Global Capital LLC d/b/a 1 GC Collections**, debtor and debtor-in-possession

By: _____
    Name:  Bradely D. Sharp
    Title:  Chief Restructuring Officer


**1 West Capital LLC d/b/a 1 West Collections**, debtor and debtor-in-possession

By: _____
    Name:  Bradely D. Sharp
    Title:  Chief Restructuring Officer