# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

**JOINT MOTION FOR (A) APPROVAL OF SETTLEMENT AND COMPROMISE AND REQUEST FOR ENTRY OF BAR ORDER; AND (B) APPROVAL OF PAYMENT OF EARNED CONTINGENCY FEE**

**IMPORTANT NOTICE REGARDING A BAR ORDER
PLEASE READ CAREFULLY**

**Please be advised that if the Court approves the Settlement Agreement including the Bar Order requested herein, then your rights may be affected.  In particular, the Bar Order will permanently bar, prohibit, enjoin and restrain the filing, commencing, prosecuting, conducting, asserting or continuing in any manner of any claims relating to 1 Global Capital LLC or 1 West Capital LLC against the KO/AAIC Released Parties, who include Kopelowitz Ostrow, P.A., American Alternative Insurance Corporation, Dale Ledbetter, Esq., and Jan Atlas, Esq.  For a full list of the Barred Persons, please see pages 10 to 12 of this Motion.  If you object to the relief requested herein, including the entry of the Approval Order containing the Bar Order, you must either file an objection with the Clerk of the Bankruptcy Court at 299 E. Broward Boulevard, Fort Lauderdale, FL 33301 no later than 2 business days before the hearing on the Motion or appear at the hearing on the Motion.  If you do not object, there is no action you need to take.**

1 Global Capital, LLC and 1 West Capital, LLC (collectively, the "Debtors") and the

Official Committee of Unsecured Creditors (the "Committee"), by and through their respective

---

[1] The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: 1 Global Capital LLC, d/b/a 1 GC Collections, 1250 E. Hallandale Beach Blvd., Suite 605, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, d/b/a 1 West Collections, 1250 E. Hallandale Beach Blvd., Suite 605, Hallandale Beach, FL 33009 (1711). On February 19, 2019, the Debtors registered the fictitious names "1GC Collections" and "1 West Collections" with the Florida Department of State.

undersigned counsel, pursuant to 11 U.S.C. §§105 and 1107(a), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9019-1(A) of the Local Rules of this Court (the "Local Rules"), respectfully move ("Motion") the Court for the entry of an Order (the "Approval Order"), (a) approving a settlement and compromise between the Debtors, the Committee and each of Kopelowitz Ostrow, P.A. ("KO"), Dale Ledbetter, Esq. ("Ledbetter"), Jan Atlas, Esq. ("Atlas") and American Alternative Insurance Corporation ("AAIC") pursuant to those certain terms and conditions, including the entry of a bar order, set forth in that certain Settlement Agreement, dated August 29, 2019 (the "Settlement Agreement"), a copy of which Settlement Agreement is attached hereto as Exhibit "A"[2] and (b) authorizing the payment of the earned contingency fee, subject to the entry of a further order on allocation of such fee among the Professionals (defined herein).  In support of this Motion, the Debtors and the Committee state as follows:

## JURISDICTION, VENUE, STATUTORY AND PROCEDURAL BASIS

1.      This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to sections 28 U.S.C §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2.      The statutory bases for the relief sought in this Motion are Sections 105 and 1107(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The procedural predicate for the requested relief herein is Rule 9019 of the Bankruptcy Rules and Rule 9019-1(A) of the Local Rules.

---

[2] A fully executed version of the Settlement Agreement will be filed with the Court by way of separate Notice of Filing.

## FACTUAL BACKGROUND

### General Background

3.      On July 27, 2018 (the "Petition Date"), the Debtors commenced these chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

4.      The Debtors are operating their business and managing their affairs as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On September 7, 2018, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") [ECF No. 138].

6.      On July 26, 2019, the Bankruptcy Court entered an order [ECF No. 818], approving, among other things, the (a) *First Amended Disclosure Statement with Respect to the Joint Plan of Liquidation of 1 Global Capital LLC and 1 West Capital LLC Under Chapter 11 of the Bankruptcy Code Proposed Jointly by the Debtors and the Official Committee of Unsecured Creditors* [ECF No. 806] (the "Disclosure Statement") as providing adequate information within the meaning of Section 1125(a) of the Bankruptcy Code; and (b) procedures for solicitation of votes to accept or reject the plan of liquidation [ECF No. 805] (the "Plan") and the tabulation of such votes.  The Debtors have since commenced the process to solicit votes on, and pursue confirmation of, the Plan.

7.      A detailed factual background of the Debtors' business and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is set forth in the Debtors' Chapter 11 Case Management Summary [ECF No. 8].

### The KO Claims and Coverage Issues

8.      The Debtors and certain parties affiliated with the Debtors, including the Debtors'
former president Carl Ruderman ("Ruderman") and entities in which Ruderman and/or his
family members have a legal or beneficial interest (collectively, the "Ruderman Parties"), have
asserted that KO, principally through Ledbetter and Atlas (collectively, the "KO Parties"),
provided legal representation to the Debtors, Ruderman, the Ruderman Parties and/or certain
other affiliates of the Debtors in various matters (collectively, the "KO Representation").

9.      The Debtors and the Committee have asserted certain claims and causes of action
against the KO Parties arising out of and related to the KO Representation based on, among other
things, alleged professional malpractice in respect of (i) certain legal analysis letters issued by
KO to the Debtors, advice given by the KO Parties to the Debtors and actions taken by one of
more of the KO Parties, all in connection with the Debtors' offering and sale of Memoranda of
Indebtedness ("MOIs"), promissory notes ("Notes"), merchant cash advances ("MCAs") or any
other actual or alleged securities ("Securities"), and (ii) alleged conflicts of interest in connection
with the concurrent representation by the KO Parties of the Debtors and certain other parties
affiliated with the Debtors who were adverse to the Debtors (collectively, the "Claims").  The
factual bases for the Claims are detailed in that certain adversary proceeding filed in the
Bankruptcy Court and styled *American Alternative Insurance Corporation v. Kopelowitz Ostrow,
P.A., Dale Ledbetter and Jan Atlas, et al.*, Adv. Proc. No. 19-1373-BKC-RBR-A (the
"Adversary").

10.      In addition to the Claims asserted by the Debtors and the Committee as set forth
above, certain creditors of the Debtors have filed lawsuits in various state courts alleging claims
against one or more of the KO Parties related to and arising out of the same common nucleus of

facts and circumstances as the Claims asserted by the Debtors and the Committee, namely in connection with the offering and sale by the Debtors of the MOIs, Notes, MCAs and/or Securities.  Specifically, the following lawsuits have been filed by the following creditors:

    a.  *Sarah Foster, individually and on behalf of all others similarly situated v. Carl Ruderman, Kopelowitz Ostrow P.A., and Dale Ledbetter*, Case No. 2018-030906-CA-01, filed in the Circuit Court in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida and removed to the United States Bankruptcy Court for the Southern District of Florida (the "<u>Foster Class Action</u>");

    b.  *Christopher Shealy, et al. v. American Alternative Insurance Corporation, Kopelowitz Ostrow, P.A. and Andrew Dale Ledbetter*, et al., No. 2019CH8938, pending in the Circuit Court of Cook County, Illinois, filed 07/31/2019 (the "<u>Shealy Dec. Action</u>");

    c.  *Russell and Kim Rasner, et al. v. Kopelowitz Ostrow, P.A. and Andrew Dale Ledbetter*, No. 2019L008443, pending in the Circuit Court of Cook County, Illinois, filed 07/31/2019 (the "<u>Rasner Action</u>");

    d.  *Philip Doherty, et al. v. Kopelowtiz Ostrow, P.A. and Andrew Dale Ledbetter*, No. 2019L000856, pending in the Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois, filed 07/31/2019 (the "<u>Doherty Action</u>");

    e.  *David Tawech and Richard Tyler, individually and on behalf of the class members described below v. Kopelowitz Ostrow, P.A. and Dale Ledbetter*, No. 2019L000927, pending in the Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois, filed 08/15/2019 (the "<u>Tawech Class Action</u>");

    f.  *Diane Walton, et. al. v. Kopelowitz Ostrow, P.A. and Dale Ledbetter*, Case No.: 2019-cv-06919, pending in the United States District Court for the Central District of California (the "<u>Walton Action</u>");

(the Foster Class Action, the Shealy Dec. Action, the Rasner Action, the Doherty Action, the Tawech Class Action and the Walton Action are collectively referred to herein as the "<u>Creditor Lawsuits</u>").[3]

    11.   The Foster Class Action, which has been removed to this Court [Adv. Pro. No. 18-01438-BKC-RBR-A], asserts claims against certain of the KO Parties for the alleged

---

[3] It is important to note that the same lawyer represents the plaintiffs in each of the Shealy Dec. Action, the Rasner Action, the Doherty Action, the Tawech Class Action and the Walton Action.

unlawful offer and sale of unregistered securities, namely the MOIs, the Notes, the MCAs and/or the Securities.

12.     Separately, the plaintiffs in each of the Shealy Dec. Action, the Rasner Action, the Doherty Action, the Tawech Class Action and the Walton Action are creditors of the Debtors who loaned and/or invested monies with the Debtors in the form of one of more of the MOIs, the Notes, the MCAs and the Securities.

13.     Moreover and importantly, none of the plaintiffs in the Shealy Dec. Action, the Rasner Action, the Doherty Action, the Tawech Class Action and the Walton Action were clients of, or otherwise had an attorney-client relationship with, any of the KO Parties.  Notwithstanding this fact, the claims asserted by the plaintiffs in the Shealy Dec. Action, the Rasner Action, the Doherty Action, and the Walton Action are for professional negligence as if an attorney-client relationship existed between such plaintiffs and the KO Parties.

14.     The Shealy Dec. Action seeks a declaratory judgment that the claims asserted in the Rasner Action are covered by the Policy (as defined below) issued by AAIC in favor of the KO Parties.

15.     The Tawech Class Action asserts claims based on aiding and abetting breach of fiduciary duty against certain of the KO Parties related to the purchase of the MOIs, the Notes, the MCAs and/or the Securities.

16.     Notwithstanding the labels placed on the claims by the various plaintiffs in the Creditor Lawsuits, all such claims and causes of action arise out of and are directly related to and interrelated with the same common nucleus of facts and circumstances, namely the offering and sale by the Debtors of the MOIs, Notes, MCAs and/or Securities.  The Debtors' Claims involve the advice given by, and the acts and omissions of, one or more of the KO Parties in and through

the KO Representation, including specifically whether the MOIs, Notes, MCAs and/or Securities should have been registered under the Federal securities laws. The claims in the Creditor Lawsuits involve the alleged advice given by, and the acts and omissions of, one or more of the KO Parties concerning whether the MOIs, Notes, MCAs and/or Securities should have been registered under the Federal securities laws. As a result and importantly, all of the claims asserted in the Creditor Lawsuits arise out of the same common nucleus of facts and circumstances as the Claims of the Debtors against the KO Parties.

17.     The KO Parties vigorously dispute the Claims and any liability for the Claims or any other alleged wrongdoing. The KO Parties also vigorously dispute the claims asserted in the Creditor Lawsuits.

18.     The KO Parties have the benefit of malpractice insurance coverage for the Claims asserted by the Debtors through a Lawyers Professional Liability Insurance Policy (the "Policy") issued by AAIC, which Policy has a limit of liability in the amount of $2,000,000 per claim per year, with a maximum aggregate limit of liability equal to $4,000,000 per year. The KO Parties assert that the Claims are covered claims under the Policy.

19.     However, AAIC has asserted defenses to coverage under the Policy in respect of the Claims, and filed the Adversary to obtain a declaratory judgment as to the extent of coverage under the Policy, including a judgment finding, among other things, that (a) certain of the Claims are not covered by the Policy, and (b) that the Claims constitute a single "claim" or "related claims" which would implicate only the first limit of liability under the Policy in the amount of $2 million for one policy year.

20.     The Debtors, the Committee, the KO Parties and AAIC engaged in extensive good faith, arm's length settlement negotiations in respect of the Claims over the course of

several months, including attending two all-day mediation sessions with Rodney Max, Esq. as the mediator, as well as numerous subsequent telephone conferences, and have determined that it is in their respective best interests to resolve the disputes between them related in any way to or arising out of the Claims pursuant to the terms and conditions of the Settlement Agreement outlined herein (the "Settlement").

## SUMMARY OF THE SETTLEMENT AGREEMENT

21.     As a result of numerous discussions and hard fought negotiations, including with the assistance of the mediator, the Debtors, the Committee, the KO Parties and AAIC reached the Settlement of the Claims. The terms of the Settlement are set forth in the Settlement Agreement attached hereto as Exhibit "A".  The total consideration being paid and provided to the Debtors' bankruptcy estates under the Settlement Agreement, including the cash payments and assignment of distributions in respect of the Ledbetter Claims (as defined herein), is no less than $3,236,000.00.[4]

22.     The material terms of the Settlement are as follows:[5]

    a. **Bankruptcy Court Approval**. The Settlement Agreement shall be subject to and become effective and binding in all respects upon the entry of Approval Order by this Court approving the terms and conditions of the Settlement Agreement, including the Bar Order (defined below) and such

---

[4] As set forth herein, the Settlement Agreement provides for direct cash payments of $3,075,000.00 and the assignment to the bankruptcy estates of distributions on the Ledbetter Claims, which Ledbetter Claims are in the amount of $474,325.79.  As of the approval of the Disclosure Statement on July 22, 2019 [ECF No. 806], the Debtors estimate a 34% distribution to unsecured creditors.  Therefore, the Debtors currently ascribe a value to the distribution on the Ledbetter Claims at this time of $161,270.  However, recent proposed settlements, including the within Settlement Agreement as well as the Debtors' proposed settlement with Travis Portfolio, LLC, *et. al.* [ECF No. 878], may materially increase the ultimate distribution to general unsecured creditors and thus the value of the distributions on the Ledbetter Claims under the Settlement Agreement to the bankruptcy estates.

[5] Parties are encouraged to review the entirety of the Settlement Agreement. To the extent the summary set forth herein conflicts with the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

Approval Order becoming a Final Order (as defined in the Settlement Agreement).

b. **The Settlement Payments**. In consideration of the Settlement and the releases set forth in the Settlement Agreement, including the entry of the Bar Order, the KO Parties and AAIC shall provide the following consideration to the Debtors, for the benefit of the Debtors' bankruptcy estates:

    i. **Settlement Payment by AAIC.** AAIC shall pay the aggregate sum of $2,695,000.00 to the Debtors (the "AAIC Settlement Payment").

    ii. **Settlement Payment by KO.** KO shall pay the aggregate sum of $100,000.00 to the Debtors (the "KO Settlement Payment").

    iii. **Settlement Payment by Ledbetter.** Ledbetter shall pay the aggregate sum of $130,000.00 to the Debtors (the "Ledbetter Settlement Payment").

    iv. **Assignment of Distribution on Ledbetter Claims.** Proofs of claim were filed in the Chapter 11 Cases by the Dale Ledbetter Trust, Mary Clark Ledbetter and Andrew Ledbetter (collectively, the "Ledbetter Parties") as follows: Claim No. 2433 by the Dale Ledbetter Trust in the amount of $382,658.39, Claim No. 2436 by Mary Clark Ledbetter in the amount of $62,594.94, and Claim No. 2434 by Andrew Ledbetter $29,072.46 (collectively, the "Ledbetter Claims"). As additional consideration from Ledbetter, the Ledbetter Parties shall assign and transfer back to the Debtors' bankruptcy estates the Ledbetter Parties' right to receive any distributions and payment on account of the Ledbetter Claims, any and all such distributions and payment on account of the Ledbetter Claims shall be paid back to and for the benefit of the Debtors' bankruptcy estates.[6]

    v. **Settlement Payment by Atlas.** Atlas shall pay the aggregate sum of $150,000.00 to the Debtors (the "Atlas Settlement Payment"). The Atlas Settlement Payment shall be paid in four (4) equal quarterly installments in the amount of $37,500.00.

c. **Releases**. Effective upon the receipt by the Debtors of the AAIC Settlement Payment, the KO Settlement Payment, the Ledbetter

---

[6] The Ledbetter Parties have agreed to waive the notice requirement for the assignment and transfer of the Ledbetter Claims under Bankruptcy Rule 3001(e).

Settlement Payment and the first installment of the Atlas Settlement Payment, the parties agree to release each other from any and all manner of claims, including the Claims, as more fully described in the Settlement Agreement.[7]

d. **<u>Bar Order</u>. The Approval Order shall contain a bar order (the "<u>Bar Order</u>") under and pursuant to Section 105 of the Bankruptcy Code, which Bar Order shall permanently bar, prohibit, enjoin and restrain the filing, commencing, prosecuting, conducting, asserting or continuing in any manner, directly, indirectly or derivatively, any suit, action, cause of action, cross-claim, counterclaim, third party claim, or other demand (including any of the Claims being released herein) in any federal or state court or any other judicial or non-judicial proceeding (including, without limitation, any proceeding in any judicial, arbitral, mediation, administrative, or other forum) by any Barred Person (as defined below) against or affecting any of the KO/AAIC Released Parties (as defined below) which is based in whole or in part on any allegation, claim, demand, cause of action, matter or fact directly or indirectly relating in any way to or arising out of or in connection with (i) the KO Representation, (ii) relating in any way to or arising out of, or in connection with the Debtors' offering or sale of Memoranda of Indebtedness ("<u>MOIs</u>"), Promissory Notes, Merchant Cash Advances ("<u>MCAs</u>") or any other actual or alleged Securities, (iii) the employment, association or affiliation of any of the KO Parties by or with any of the Debtors, affiliates of the Debtors (as "affiliate" is defined in section 101 of the Bankruptcy Code) or insiders of the Debtors (as "insider" is defined in section 101 of the Bankruptcy Code), (iv) any remuneration, compensation or other transfer of funds from the Debtors to any of the KO Parties, or (v) the existence or non-existence of any insurance coverage, including but not limited to coverage under the Policy, whether such claims seek damages for breach of a contract of insurance or seek extra-contractual damages in connection with any contract of insurance (including all such claims for bad faith or vexatious or unreasonable conduct) that arise out of, or relate to in any way, in whole or in part, to the matters enumerated above as items (i), (ii), (iii) and (iv) above (collectively, the "<u>Barred Claims</u>").**

**For purposes of the Bar Order, "<u>Barred Persons</u>" shall mean any person or entity that has held, holds, may hold, or purports to hold a claim or other debt or liability or an interest, including a membership interest, or other right against, in, arising out of, or in any way related to the Debtors or any their members, whether that person or entity**

---

[7] The release provided to Atlas under the Settlement Agreement will not become effective unless and until Atlas makes the entire Atlas Settlement Payment.

filed a proof of claim in the Bankruptcy Case or otherwise, including:

i. Any past, current or future holder of any MOIs, Promissory Notes, MCAs or any other actual or alleged Securities offered or sold by the Debtors, without regard to the timing or circumstances of the acquisition, whether any such holder has filed and/or may in the future file any suit, action, cause of action, cross-claim, counterclaim, third party claim, or other demand against any KO/AAIC Released Party in any federal or state court or any other judicial or non-judicial proceeding in respect thereof;

ii. any of the Debtors, and their present, former or future parent companies, divisions, subsidiaries, affiliates, associates, representatives, predecessors, successors, heirs, owners, joint ventures, assigns, executors, directors, partners, principals, shareholders, officers, employees, trustees, insurers and reinsurers, agents, whether actual or apparent, representatives or any of them, and their lawyers and all persons acting by, through, under or in concert with them;

iii. any Defendant or Relief Defendant in the action styled, *Securities and Exchange Commission v. 1 Global Capital LLC and Carl Ruderman, Defendants, and 1 West Capital LLC, Bright Smile Financing LLC, BRR Block Inc., Digi South LLC, Ganador Enterprises LLC, Media Pay LLC, Pay Now Direct LLC and Ruderman Family Trust, Relief Defendants*, Case No. 0:18-CV-61991-BB;

iv. All Plaintiffs (including putative class members) in the Creditor Lawsuits;

v. Ruderman and any of the Ruderman Parties, including without limitation their respective heirs, successors, assignees, employees, and agents;

vi. All financial brokers, agents, lenders, initial and subsequent noteholders and investment advisors claiming to have relied upon the work of the KO Parties in connection with the sale or purchase of Debtors' MOIs; and

vii. any person or entity (including but not limited to any insurer) claiming to be subrogated to or otherwise entitled to assert the

**legal rights of any of the persons or entities identified above in subparagraphs (i) – (vi) above.**[8]

## RELIEF REQUESTED

23.    The Debtors and the Committee respectfully request that this Court enter the Approval Order approving the terms and conditions of the Settlement Agreement, including the Bar Order.

## BASIS FOR THE REQUESTED RELIEF

### Applicable legal standard for approval of settlement by this Court

24.    Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).    Section 1107(a) of the Bankruptcy Code grants a debtor-in-possession the rights and powers afforded to a trustee serving in a chapter 11 case.    *See* 11 U.S.C. § 1107(a). Furthermore, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See* 11 U.S.C. § 105(a).

25.    When considering whether to approve a compromise or settlement under Rule 9019, a bankruptcy court must determine if the proposed compromise or settlement is fair, equitable, reasonable and in the best interests of the debtor's estate.    *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Se. Banking Corp.*, 314 B.R. 250, 272 (Bankr. S.D. Fla. 2004) (holding a bankruptcy court considers whether a settlement is "fair and equitable").    A bankruptcy court is not required to decide the

---

[8] Notwithstanding anything in the Settlement Agreement to the contrary, no federal, state, or local governmental agency or self-regulatory organization, including but not limited to the Securities and Exchange Commission and the Department of Justice, shall be a Barred Person; nor shall the Bar Order apply to any federal state, or local governmental agency or self-regulatory organization, including but not limited to the Securities and Exchange Commission and the Department of Justice.

merits of claims, but is to assess the probability of succeeding on those claims. *See In re Vazquez*, 325 B.R. 30, 35 (Bankr. S.D. Fla. 2005). "It is generally recognized that the law favors settlement of disputes over litigation for litigation sake." *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993). Accordingly, it is within the scope of this Court's authority to grant the Motion.

26.    The United States Court of Appeals for the Eleventh Circuit has set forth four factors to assist bankruptcy courts in determining whether a settlement proposal meets the appropriate standard. These factors are as follows:

    a.  the probability of success in the litigation;

    b.  the difficulties, if any, to be encountered in the matter of collection;

    c.  the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

    d.  the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990). *See also Romagosa v. Thomas (In re Van Diepen, P.A.)*, 236 Fed. Appx. 498, 504 (11th Cir. 2007) (setting forth *Justice Oaks* factors and affirming bankruptcy court's approval of settlement agreement).

27.    Appellate courts review a bankruptcy court's approval of a settlement or compromise to determine whether there is a clear showing that the bankruptcy court abused its discretion. *In re Van Diepen, P.A.*, 236 Fed. Appx. at 504; *In re Bicoastal Corp.*, 164 B.R. at 1016 (stating "the Bankruptcy Court has broad discretion to approve a compromise."). Moreover, "[t]he bankruptcy court is not required to rule on the merits, and must look only to the

probabilities." *Id.* Settlements or compromises should be approved unless they "fall below the lowest point in the range of reasonableness." *In re Bicoastal Corp.*, 164 B.R. at 1016.

### The Terms of the Settlement Meet the Justice Oaks Factors

28.    As applied to the circumstances presented by this case, the Debtors and the Committee submit that the *Justice Oaks* factors weigh heavily in favor of approval of the terms and conditions of the Settlement contained in the Settlement Agreement.

29.    ***The Probability of Success in Litigation***.    The Debtors believe that the bankruptcy estates possess strong Claims for professional malpractice against the KO Parties related to the KO Representation.  From the Debtors' inception through the Petition Date, the Debtors were in the "merchant cash advance" ("MCAs") business.  During such time, the Debtors raised more than $287 million in funds from over 3,400 investors/lenders throughout the United States through the offer and sale of the MOIs, the Notes, the MCAs and/or the other Securities, which were never registered by the Debtors as securities under the Federal securities laws.  The Debtors' Claims against the KO Parties claims relate to, among other things, (a) advice provided to the Debtors in respect of whether the MOIs, the Notes, the MCAs and/or the Securities constituted securities that needed to be registered under the Federal securities laws, (b) the KO Parties' involvement in the Debtors' transactions with Bright Smile Financing, LLC and Ganador Enterprises, LLC, entities which received over $20 million in transfers from the Debtors, and (c) aiding and abetting breaches of fiduciary duties owed by Mr. Ruderman to the Debtors and investors.  Finally, although KO represented multiple clients, the Debtors alleged that all of KO's bills were paid by the Debtors, in addition to override and similar commissions paid to Mr. Ledbetter on account of funds raised pursuant to the MOIs, giving rise to potential avoidance actions under Chapter 5 of the Bankruptcy Code.  The KO Parties vigorously denied

the Debtors' allegations and disputed any liability on the Claims asserted by the Debtors.

30.     As a result of the above, while the Debtors believe that they have a good probability of success on the merits, the Claims will be vigorously contested by the KO Parties, including likely through appeals.

31.     ***The Collection Factor***.  The factor involving difficulties in collection weighs heavily in favor of approval of the Settlement.  Based on information provided during the case, the Debtors believe that any effort to collect on a judgment of any significance against the KO Parties will prove to be difficult.  Mr. Ledbetter and Mr. Atlas are both in their mid-70s and are retired from the practice of law.  While KO is an operating law firm, like all law firms, its assets consist mainly of the ability of its lawyers to generate future legal fees.  If the Debtors obtained a sizeable judgment against KO, then it is more likely than not that KO will be forced to liquidate and its lawyers leave for other law firms.  Moreover, while the KO Parties carry professional malpractice insurance with a maximum potential aggregate limit of $4 million (which is a "wasting" policy with hundreds of thousands of dollars in defense costs already incurred), there are several issues that were raised as to coverage available under the Policy by AAIC, including that only a single limit of liability in the amount of $2 million exists for the Claims as outlined by AAIC in the Adversary.

32.     ***Complexity of Litigation***.  As set forth above, the Claims and the defenses asserted thereto are extremely complex in nature. Further, the litigation of the Claims would necessarily require expert testimony on at least four subjects: (1) legal ethics; (2) standards of care; (3) insolvency; and (4) damages.  In view of the foregoing, the complexity of the Claims would result in a multi-year litigation and hundreds of thousands of dollars professional (including expert) fees and costs, in addition to the substantial time and expense of litigating the

existence of insurance coverage under the AAIC Policy.

33.    ***Paramount Interests of Creditors***.    The Settlement Agreement is in the paramount and best interest of the creditors of the Chapter 11 Cases. Specifically, the Debtors and the Committee believe that creditors of the bankruptcy estate will overwhelmingly support the approval of this Motion and the Settlement Agreement; indeed, the Committee, which directly represents the interests of the unsecured creditors, participated in the mediation and strongly supports the Settlement Agreement.  The Debtors understand that the plaintiffs in the Foster Class Action support the Settlement Agreement.  The Settlement provides a substantial amount of money to the Debtors' bankruptcy estates and eliminates the ongoing expense and attendant risk of litigating the Claims.

34.    For the foregoing reasons, the Debtors and the Committee submit that the settlement and compromise contained in the Settlement Agreement falls well above the lowest point in the range of reasonableness, is fair and equitable, is in the best interest of all creditors and, accordingly, should be approved.

## Necessity of a Bar Order

35.    Pursuant to the terms of the Settlement Agreement, the Bar Order is an essential, material, and integral component of the Settlement between the Debtors, the Committee and the KO Parties.  As set forth below, the Bar Order satisfies the applicable provisions of the Bankruptcy Code and controlling law in the Eleventh Circuit, including *In re Munford* and its progeny. *Munford v. Munford, Inc. (In re Munford)*, 97 F.3d 449 (11th Cir. 1996).

36.    Section 105(a) of the Bankruptcy Code provides this Court with the inherent power to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code.  11 U.S.C. § 105(a); *Munford*, 97 F.3d 449; *Wald v. Wolfson (In re U.S. Oil & Gas Litig.)*,

967 F.2d 489 (11th Cir. 1992).

37. In fact, the Eleventh Circuit Court of Appeals recently stated that "a bankruptcy court can enjoin **any** civil action if the outcome could alter the debtor's rights, liabilities, options, or freedom of action or in any way impacts upon the handling and administration of the bankrupt estate." *In re Fundamental Long Term Care*, *Inc*., 873 F.3d 1325, 1337 (11th Cir. Oct. 19, 2017) (emphasis added); *see also In re Solar Cosmetic Labs, Inc.*, 2010 WL 3447268, * 4 (Bankr. S.D. Fla. Aug. 27, 2010) ("As far as any suggestion made by [party objecting to bar order] that [the Bankruptcy] Court does not have jurisdiction or authority [to enter a bar order]... one need go no further than *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.*), 910 F.2d 784 (11th Cir.1990), for confirmation of this Court's jurisdiction."); *In re Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-RBR, 2010 WL 3743885, at *6-8 (Bankr. S.D. Fla. Sept. 16, 2010) (granting request for a bar order entry of which was required by settlement); *In re S&I Investments*, 421 B.R. 569, 586 (Bankr. S.D. Fla. 2009) (approving request for entry of a bar order, which was a condition to a settlement with the debtor's bankruptcy estate). Accordingly, the Court's power to enter the Bar Order contemplated by the Settlement Agreement is beyond question.

38. When considering the exercise of power under 11 U.S.C. § 105 in connection with compromises and bar orders, the Eleventh Circuit Court of Appeals has determined that: (i) public policy favors settlements; (ii) the cost of litigation can be burdensome on a bankruptcy estate, and (iii) bar orders play an integral role in facilitating settlements. *See Munford*, 97 F.3d at 455; *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493-94. Whether the bar order is integral to the settlement or compromise is a key factor.  97 F.3d at 455; 967 F.2d at 494. This is because "settlement bar orders allow settling parties to put a limit on the risks of settlement." *In re U.S. Oil & Gas Litig.*, 967 F.2d at 494.

17

39.    The KO Parties' and AAIC's agreement to settle and compromise the Claims and to make the respective settlement payments is strictly conditioned on the entry and finality of the Bar Order. Without the Bar Order, there would be no settlement and compromise between the Debtors, the Committee, the KO Parties and AAIC. Indeed, the KO Parties have an important interest in putting an end to the issues related to the Debtors and its prior representation thereof, and avoiding any further involvement in matters relating to the Debtors, including in respect of litigation around the country. As such, the Bar Order, an integral component of the Settlement, directly benefits the Debtors' estates and clearly facilitates and fulfills the longstanding public policy of encouraging pretrial settlements. Finally, the Bar Order is narrowly tailored and only releases and enjoins claims arising from or relating to the same common nucleus of facts and circumstances as the Claims of the Debtors against the KO Parties in and through the KO Representation, in particular the facts and circumstances related to or arising out of the Debtors' offer and sale of the MOIs, the Notes, the MCAs and/or the other Securities, which were never registered by the Debtors as securities under the Federal securities laws.

40.    As discussed above, each of the Creditor Lawsuits involves claims and causes of action arising out of and related to the same common nucleus of facts as the facts giving rise to the Claims of the Debtors against the KO Parties.  As such, the claims asserted in the Creditor Lawsuits are clearly interrelated with the Claims of the Debtors against the KO Parties.

41.    The case law in the Eleventh Circuit is uniform in that bar orders that are incorporated into settlement agreements are fair and equitable if (a) the bar order is consistent with and "fulfills the long-standing public policy of encouraging pretrial settlements," (b) the settlement satisfies the *Justice Oaks factors*, and (c) the bar order satisfies the nonexclusive set of factors for approval of bar orders set forth in Munford, including:

18

    a.   The non-debtor third-party claims which will be barred are interrelated with the estate's claims;

    b.   The parties opposed to the bar order have not presented sufficient evidence of the strength and existence of their claims against the beneficiary of the bar order;

    c.   The estate's litigation against the beneficiary of the bar order is complex; and

    d.   The continuance of litigation by the estate and other parties against the beneficiary of the bar order will deplete resources.

*See United States v. Hartog*, 597 B.R. 673, 680-81 (S.D. Fla. 2019); *In re Latitude 360, Inc.*, No. 17-00086-PMG, 2019 WL 3614766, *2 (Bankr. M.D. Fla. May 29, 2019); *In re Jiangbo Pharmaceuticals, Inc.*, 520 B.R. 316, 323 (Bankr. S.D. Fla. 2014); *In re Evaluation Solutions, LLC*, No. 13-00447-JAF, 2013 WL 3306216, *4, 5 (Bankr. M.D. Fla. June 27, 2013); *In re Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-RBR, 2010 WL 3743885, at *6-8 (Bankr. S.D. Fla. Sept. 16, 2010).

42.      In the present case, the Bar Order seeks to enjoin and bar solely those claims that are interrelated with the Claims of the Debtors against the KO Parties.  To be clear, even though the court in *Munford* addressed cross claims for indemnity and contribution, courts in the Eleventh Circuit have concluded uniformly that "separate claims of a settling estate and a non-settling third-party against the same or similar defendants maybe interrelated for the purpose of issuing in a bar order."  *See Brophy v. Salkin*, 550 B.R. 595, 600 (S.D. Fla. 2015).

43.      Claims of the settling estate and of the non-settling third-party are interrelated if "they arise out of the same common nucleus of operative facts and circumstances and are based on similar, if not identical, acts and omissions."  *Id. See also U.S. Oil & Gas Litig.,* 967 F.2d at 496.  Moreover, the barred claims are not required to be "property of the estate or depending upon estate claims to be interrelated."  *See Brophy*, 550 B.R. at 601.

44.      Still further, the "Eleventh Circuit has expanded the reach of acceptable bar

orders to include those enjoining third parties that are not involved in any adversary proceeding between the debtor and the settling party."  *See United States v. Hartog*, 597 B.R. at 682-83, citing to *In re Superior Homes & Investment, LLC*, 521 fed. Appx, 895 (11th Cir. 2013).

45.    Based on the above, it is clear that the claims asserted in the Creditor Lawsuits arise out of the "same common nucleus of operative facts and circumstances and are based on similar, if not identical, acts and omissions," namely the acts and/or omission of the KO Parties related to the offer and sale of the MOIs, the Notes, the MCAs and/or the other Securities, which were never registered by the Debtors as securities under the Federal securities laws. In fact, each of the claims asserted or referenced in the Shealy Dec. Action, the Rasner Action, the Doherty Action, and the Walton Action assert the same exact claims against the KO Parties that the Debtors have asserted, namely claims for professional negligence related to the offer and sale of the MOIs, the Notes, the MCAs and/or the other Securities.

46.    Second, the claims asserted in the Creditor Lawsuits have significant issues in terms of their strength and legitimacy.  At the outset, the Creditor Lawsuits have only just been filed and, upon information and belief, have not even been served.  In addition, the claims of the Creditor Lawsuits are based on the existence of an attorney-client relationship between the KO Parties and the plaintiffs therein.  However, there is and was never an attorney-client relationship between the KO Parties and any of the plaintiffs in the Creditor Lawsuits.  The plaintiffs therein will not be able to prove any such relationship and related duties by the KO Parties to such plaintiffs.

47.    Third, as discussed above, the Debtors' Claims against the KO Parties are complex in nature.

48.    Fourth, there is no question that the continued litigation of the Claims and the

Creditor Lawsuits will completely deplete and erode the resources of the KO Parties and the AAIC Policy, ultimately leaving no recovery for anyone. As set forth above, each of Mr. Ledbetter and Mr. Atlas are in their mid-70s and are retired. In addition, KO, while an operating law firm, has limited resources that are dependent completely on retaining its lawyers to continue to perform legal work for its clients. Lastly, the AAIC Policy is a "wasting" policy that has already been used to pay hundreds of thousand dollars in defense costs, and it is likely that the entirety of the Policy limits will be used to zealously defend the Debtors' Claims and the Creditor Lawsuits if the Settlement contained herein is not approved and the Bar Order required herein is not issued.

49.    Lastly, this Court has the power under the All Writs Act, 28 U.S.C. §1651 to enter the Bar Order. *See In re Fundamental Long Term Care*, *Inc*., 873 F.3d at 1338-39. The All Writs Act authorizes federal courts to "issue all writs necessary and appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law." This authority includes the authority "to issue such commands … as may be necessary and appropriate to effectuate and prevent the frustration of orders it has previously issues in its exercise of jurisdiction otherwise obtained. *In re Am. Honda Motor Co., Inc., Dealership Relations Litig*., 315 F.3d 417, 437-38 (4th Cir. 2003)(internal quotations omitted)(quoting *Penn. Bureau of Corr. v. U.S. Marshals Serv*., 474 U.S. 34, 40, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985)).

50.    Under the All Writs Act, "the court has the power to extend [an] injunction to third parties who are not parties to the action …. [T]he act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a positon to frustrate the implementation of a court order or the proper administration of justice and encompasses even those who have not taken any affirmative action

to hinder justice." *SEC v. Parish*, 2010 WL 8347143, *5 (D.S.C. 2010).

51.     In the present case, the Debtors and the Committee expect the plaintiffs in the Creditor Lawsuits to seek to frustrate the implementation of this Court's order approving the Settlement Agreement that is in the best interests of the bankruptcy estates and all creditors herein by pursuing their clearly interrelated claims against the KO Parties and AAIC.  Therefore, the Court is authorized to and should enter the Bar Order pursuant to the All Writs Act.

### Request for Authorization to Pay Contingency Fee

52.     Lastly, this Court previously approved the Debtors' engagement of GJB as special litigation counsel in connection with, among other litigation, the Claims [ECF No. 639] (the "GJB Engagement Order").  Pursuant to the GJB Engagement Order, the Court approved a contingency fee of twenty-seven and one-half percent (27.5%) (subject to certain reductions) to be paid to GJB in connection with any recovery realized, collected or recovered in respect of Litigation Claims (as defined in the GJB Engagement Order), including the Claims.[9]

53.     Pursuant to this Court's *Order Granting Debtors' Application to Retain León Gosgrove, LLP as Special Insurance Counsel in Connection with Certain Litigation Claims* [ECF No. 821] and an agreement placed on the record on July 24, 2019 in connection with approval of the Disclosure Statement, GJB, Leon Cosgrove, LLP and the law firms of Meland Russin & Budwick, P.A., the Moskowitz Law Firm, and the Sonn Law Group, P.A. (collectively, the ("Professionals") will allocate the net Contingency Fee (defined herein) among the

---

[9] This percentage relates to recoveries before a complaint is filed.  The KO Claims were resolved without the need of the Debtors to file a lawsuit.

Further, the GJB Engagement Order provides that the Contingency Fee for the Litigation Claims will be reduced by an amount equal to the total hourly fees incurred by GJB in connection with the Litigation Claims through February 28, 2019 and paid by the Debtors pursuant to the Interim Compensation Order, which amount equals $119,348.60.

Professionals in accordance with such announcement on the record, but subject to a further order of this Court.

54.    Accordingly, if the Settlement is approved, then the Debtors request authorization and approval to pay the earned 27.5% contingency fee from the consideration tendered under the Settlement Agreement, which equals $770,551.14 ($889,900.00 less $119,348.60 in hourly fees already paid to GJB) (the "Contingency Fee"), subject to further allocation to be set forth in a separate order of the Court.[10]

## CONCLUSION

55.    Based upon the totality of circumstances presented above, the Debtors and the Committee respectfully submit that the proposed Settlement as set forth in the Settlement Agreement is fair, reasonable and equitable, represents a substantial benefit to the Debtors' bankruptcy estates and their creditors, reflects the *exercise* of prudent business judgment by the Debtors and the Committee, and satisfies the *Justice Oaks* factors and the criteria for the entry of the Bar Order set forth in under *Munford, Fundamental* and their progeny. Accordingly, the Debtors and the Committee submit that the Court should approve the Settlement Agreement and enter the Bar Order.

**WHEREFORE**, the Debtors and the Committee respectfully request that the Court enter an Order: (i) granting this Motion; (ii) approving the terms of the Settlement in its entirety as set forth in the Settlement Agreement; (iii) authorizing the Debtors to execute and deliver the Settlement Agreement and to perform all of the obligations contained therein without further Court order; (iv) approving and entering the Bar Order; (v) retaining jurisdiction over the terms and enforcement of the Settlement Agreement and the Bar Order; (vi) authorizing the Debtors to

---

[10] GJB and the Professionals reserve the right to file a further application for compensation based on the ultimate amount of distributions in respect of the Ledbetter Claims.

pay the Contingency Fee, subject to a further order of this Court concerning allocation of such

Contingency Fee among the Professionals; and (vii) granting such other relief as the Court deems

proper.

Respectfully submitted on August 29, 2019.

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Special Counsel for the Debtors*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By:     /s/*Paul J. Battista*
        Paul J. Battista, Esq.
        Florida Bar No. 884162
        pbattista@gjb-law.com
        Glenn D. Moses, Esq.
        Fla. Bar No.  174556
        gmoses@gjb-law.com

    and

**STICHTER, RIEDEL, BLAIN
& POSTLER, P.A.**
*Counsel for the Committee*
110 E. Madison St., Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Facsimile: (813) 229-1811

By:     /s/ *Scott A. Stichter*
        Scott A. Stichter, Esq.
        Florida Bar No. 710679
        sstichter@srbp.com

# EXHIBIT "A"
**(Settlement Agreement)**

**EXECUTED VERSION TO BE FILED
WITH THE COURT SEPARATELY**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is made and entered into this 29th day of August, 2019 (the "Effective Date") by and between 1 Global Capital LLC and 1 West Capital LLC, as chapter 11 debtors-in-possession (collectively, the "Debtors"), the Official Committee of Unsecured Creditors for the 1 Global Capital, LLC bankruptcy estates (the "Committee"), Kopelowitz Ostrow, P.A. ("KO"),  Dale Ledbetter, Esq. ("Ledbetter"), Jan Atlas, Esq. ("Atlas") and American Alternative Insurance Corporation ("AAIC"). The Debtors, the Committee, KO, Ledbetter, Atlas and AAIC are collectively referred to as the "Parties," and each a "Party."

## RECITALS:

WHEREAS, on July 27, 2018, the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), which cases are being jointly administered under Case Number 18-19121-RBR (collectively, the "Bankruptcy Case");

WHEREAS, on September 7, 2018, the Office of the United States Trustee appointed the Committee for the 1 Global Capital, LLC estates;

WHEREAS, the Debtors and certain parties affiliated with the Debtors, including Carl Ruderman ("Ruderman") and any entity or trust created, owned or controlled, in whole or in part, by Ruderman or any of his family members or in which Ruderman or any of his family members have a legal or beneficial interest (collectively, the "Ruderman Parties"), have asserted that KO, principally through Ledbetter and Atlas (collectively, the "KO Parties"), provided legal representation to the Debtors, Ruderman, the Ruderman Parties and/or any other affiliates of the Debtors in various matters (collectively, the "KO Representation");

1

WHEREAS, the Debtors and the Committee have asserted certain claims and causes of action against the KO Parties based on, among other things, alleged professional malpractice arising out of and related to the KO Parties' representation of the Debtors and certain other parties affiliated with the Debtors, including without limitation, in respect of (i) certain legal analysis letters issued by KO to the Debtors, advice given by the KO Parties to the Debtors and actions taken by one of more of the KO Parties, all in connection with the Debtors' offering and sale of memoranda of indebtedness, promissory notes, merchant cash advances or any other actual or alleged securities, and (ii) alleged conflicts of interest in connection with the concurrent representation by the KO Parties of the Debtors and other parties affiliated with the Debtors who were adverse to the Debtors in various matters (collectively, the "Claims"), which Claims are detailed in that certain adversary proceeding filed in the Bankruptcy Court and styled *American Alternative Insurance Corporation v. Kopelowitz Ostrow, P.A., Dale Ledbetter and Jan Atlas, et al.*, Adv. Proc. No. 19-01373-BKC-RBR-A (the "Adversary");

WHEREAS, the KO Parties vigorously dispute the Claims and any liability for the Claims or any other alleged wrongdoing;

WHEREAS, the KO Parties have the benefit of malpractice insurance coverage for the claims asserted by the Debtors through a Lawyers Professional Liability Insurance Policy (the "Policy") issued by AAIC, which Policy has a limit of liability in the amount of $2,000,000 per claim, with a maximum aggregate limit of liability equal to $4,000,000;

WHEREAS, the KO Parties assert that the Claims are covered claims under the Policy;

WHEREAS, AAIC has asserted defenses to coverage under the Policy in respect of the Claims, and filed the Adversary to obtain a declaratory judgment as to the extent of coverage under the Policy, including a judgment finding, among other things, that (a) certain of the Claims

2

are not covered by the Policy, and (b) that the Claims constitute a single "claim" or "related claims" which would implicate only the first limit of liability under the Policy in the amount of $2 million;

WHEREAS, proofs of claim were filed in the Bankruptcy Case by the Dale Ledbetter Trust, Mary Clark Ledbetter and Andrew Ledbetter (collectively, the "Ledbetter Parties") as follows: Claim No. 2433 by the Dale Ledbetter Trust in the amount of $382,658.39, Claim No. 2436 by Mary Clark Ledbetter in the amount of $62,594.94, and Claim No. 2434 by Andrew Ledbetter $29,072.46 (collectively, the "Ledbetter Claims");

WHEREAS, neither KO nor Atlas have filed proofs of claims in the Bankruptcy Case;

WHEREAS, the Parties have engaged in extensive good faith, arms' length settlement negotiations in respect of the Claims and the settlement contained herein, including attending two all-day mediation sessions with Rodney Max, Esq. as the mediator, as well as numerous subsequent telephone conferences;

WHEREAS, the Parties have determined that it is in their respective best interests to resolve the disputes between them related in any way to or arising out of the Claims pursuant to the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual promises and the performance of the covenants and agreements hereinafter contained, the Parties represent, warrant, consent and agree as follows:

1.     **Adoption of Recitals**.  The Parties hereto adopt the above recitals as being true and correct, and they are incorporated herein as material parts of this Settlement Agreement.

2.     **Settlement Payment by AAIC.**  For and in consideration of each of the terms set forth herein, AAIC shall pay the aggregate sum of TWO MILLION, SIX HUNDRED AND

NINTEY-FIVE THOUSAND AND 00/100 DOLLARS ($2,695,000.00) to the Debtors (the "AAIC Settlement Payment").  The AAIC Settlement Payment shall be paid on or before the Payment Date, as defined below, pursuant to wire transfer instructions to be provided by the Debtors to AAIC.

3.    **Settlement Payment by KO.**  For and in consideration of each of the terms set forth herein, KO shall pay the aggregate sum of ONE HUNDRED THOUSAND AND 00/100 DOLLARS ($100,000.00) to the Debtors (the "KO Settlement Payment").  The KO Settlement Payment shall be paid on or before the Payment Date, as defined below, pursuant to wire transfer instructions to be provided by the Debtors to KO.

4.    **Settlement Payment by Ledbetter.**  For and in consideration of each of the terms set forth herein, Ledbetter shall pay the aggregate sum of ONE HUNDRED AND THIRTY THOUSAND AND 00/100 DOLLARS ($130,000.00) to the Debtors (the "Ledbetter Settlement Payment").  The Ledbetter Settlement Payment shall be paid on or before the Payment Date, as defined below, pursuant to wire transfer instructions to be provided by the Debtors to Ledbetter.  As additional consideration from Ledbetter, on the Payment Date, the Ledbetter Parties shall assign and transfer back to the Debtors the Ledbetter Parties' right to receive any distributions and payment on account of the Ledbetter Claims, any and all such distributions and payment on account of the Ledbetter Claims shall be paid back to and for the benefit of the Debtors' bankruptcy estates.  By their execution of this Settlement Agreement below, the Ledbetter Parties each agree that the assignment and transfer of the Ledbetter Claims as set forth herein shall be automatically effective upon the Payment Date, as defined below, without the need for any further documentation. The Ledbetter Parties agree to waive the notice requirement for the assignment and transfer of the Ledbetter Claims under Bankruptcy Rule

4

3001(e).

5.      **Settlement Payment by Atlas.**  For and in consideration of each of the terms set forth herein, Atlas shall pay the aggregate sum of ONE HUNDRED AND FIFTY THOUSAND AND 00/100 DOLLARS ($150,000.00) to the Debtors (the "Atlas Settlement Payment").  The Atlas Settlement Payment shall be paid in four (4) equal quarterly installments in the amount of (THIRTY SEVEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($37,500.00) (each an "Installment Payment"), the first of which shall be made on the Payment Date (as defined below), with each subsequent Installment Payment to be made on the same day of the third month thereafter.  Each Installment Payment shall be made to the Debtors pursuant to wire transfer instructions to be provided by the Debtors to Atlas.

6.      **Payment Date**.  The AAIC Settlement Payment, the KO Settlement Payment, the Ledbetter Settlement Payment and the first Installment Payment from Atlas shall each be made on the date which is no later than thirty (30) days after the date of the Approval Order (as defined below) (the "Payment Date"), provided however, that the Approval Order shall have become a Final Order as of the Payment Date.

7.      **Settlement Motion**. Within three (3) days after the Effective Date, the Debtors shall file a motion with the Bankruptcy Court seeking approval of the terms and conditions of this Settlement Agreement and the entry of the Approval Order under Rule 9019 of the Federal Rules of Bankruptcy Procedure and Bankruptcy Code Section 105 (the "Approval Motion"). The Approval Motion shall be in form and content reasonably acceptable to each of the Parties. The Parties agree to cooperate with each other to seek the entry of the Approval Order.

8.      **Bankruptcy Court Approval**. The settlement and compromise contained in this Settlement Agreement shall become effective and binding in all respects upon the Approval

Order (inclusive of the Bar Order, as defined below) becoming a Final Order.  In the event the Bankruptcy Court denies the Approval Motion or, if the Approval Order is entered and subsequently stayed as set forth below, but is thereafter reversed on appeal by and through a Final Order (the "Reversal Order"), then (i) the Parties shall be returned, as of such date, to the *status quo ante* prior to their entry into this Settlement Agreement, (ii) the Parties agree that any statute of limitations and/or statute of repose in respect of the Claims shall be and shall have been tolled through the date that is thirty (30) days after the date of the Reversal Order, and (iii) this Settlement Agreement shall terminate and, except for the tolling agreement in the preceding clause, shall be deemed null and void without any continuing force or effect whatsoever.  For purposes of this Settlement Agreement, the "Approval Order" shall mean an order of the Bankruptcy Court in form and content acceptable to each of the Parties (i) approving in full this Settlement Agreement and the terms and conditions of the settlement and compromise contained in this Settlement Agreement, (ii) providing that the Settlement Agreement is binding on any subsequently appointed trustee or successor to the Debtors under a confirmed plan of liquidation; and (iii) approving and implementing the Bar Order, as defined below.  In addition, for purposes of this Settlement Agreement, a "Final Order" means an order or judgment of the Bankruptcy Court that (i) has not been appealed, or (ii) if appealed, the effectiveness of this Settlement Agreement and the Approval Order has not been stayed by the Bankruptcy Court, the United States District Court for the Southern District of Florida or a court of competent jurisdiction.

9.    **Bar Order.** In order to facilitate the settlement and compromise contained herein, and as an essential, material, integral and required element of such settlement and compromise (without which neither the KO Parties nor AAIC would enter into this Settlement Agreement and make the settlement payments provided herein), the Approval Order shall contain a "Bar Order"

under and pursuant to Bankruptcy Code section 105 (the "Bar Order"), which Bar Order shall permanently bar, prohibit, enjoin and restrain the filing, commencing, prosecuting, conducting, asserting or continuing in any manner, directly, indirectly or derivatively, any suit, action, cause of action, cross-claim, counterclaim, third party claim, or other demand (including any of the Claims being released herein) in any federal or state court or any other judicial or non-judicial proceeding (including, without limitation, any proceeding in any judicial, arbitral, mediation, administrative, or other forum) by any Barred Person (as defined below) against or affecting any of the KO/AAIC Released Parties (as defined below) which is based in whole or in part on any allegation, claim, demand, cause of action, matter or fact directly or indirectly relating in any way to or arising out of or in connection with (i) the KO Representation, (ii) the Debtors' offering or sale of Memoranda of Indebtedness ("MOIs"), Promissory Notes, Merchant Cash Advances ("MCAs") or any other actual or alleged Securities, (iii) the employment, association or affiliation of any of the KO Parties by or with any of the Debtors, affiliates of the Debtors (as "affiliate" is defined in section 101 of the Bankruptcy Code) or insiders of the Debtors (as "insider" is defined in section 101 of the Bankruptcy Code), (iv) any remuneration, compensation or other transfer of funds from the Debtors to any of the KO Parties, or (v) the existence or non-existence of any insurance coverage, including but not limited to coverage under the Policy, whether such claims seek damages for breach of a contract of insurance or seek extra-contractual damages in connection with any contract of insurance (including all such claims for bad faith or vexatious or unreasonable conduct) that arise out of, or relate to in any way, in whole or in part, to the matters enumerated above as items (i), (ii), (iii) and (iv) above (collectively, the "Barred Claims").

10.    For purposes of the Bar Order, "Barred Persons" shall mean any person or entity

that has held, holds, may hold, or purports to hold a claim or other debt or liability or an interest,

including a membership interest, or other right against, in, arising out of, or in any way related to

the Debtors or any of their members, whether that person or entity filed a proof of claim in the

Bankruptcy Case or otherwise, including, but not limited to:

(i)     Any past, current or future holder of any MOIs, Promissory Notes, MCAs or any other actual or alleged Securities offered or sold by the Debtors, without regard to the timing or circumstances of the acquisition, whether any such holder has filed and/or may in the future file any suit, action, cause of action, cross-claim, counterclaim, third party claim, or other demand against any KO/AAIC Released Party in any federal or state court or any other judicial or non-judicial proceeding in respect thereof.

(ii)    any of the Debtors, and their present, former or future parent companies, divisions, subsidiaries, affiliates, associates, representatives, predecessors, successors, heirs, owners, joint ventures, assigns, executors, directors, partners, principals, shareholders, officers, employees, trustees, insurers and reinsurers, agents, whether actual or apparent, representatives or any of them, and their lawyers and all persons acting by, through, under or in concert with them;

(iii)   any Defendant or Relief Defendant in the action styled, *Securities and Exchange Commission v. 1 Global Capital LLC and Carl Ruderman, Defendants, and 1 West Capital LLC, Bright Smile Financing LLC, BRR Block Inc., Digi South LLC, Ganador Enterprises LLC, Media Pay LLC, Pay Now Direct LLC and Ruderman Family Trust, Relief Defendants*, Case No. 0:18-CV-61991-BB;

(iv)    any and all plaintiffs in the following civil actions: *Sarah Foster, individually and on behalf of all others similarly situated v. Carl Ruderman, Kopelowitz Ostrow P.S., and Dale Ledbetter*, Case No. 2018-030906-CA-01, filed in the Circuit Court in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida; *David Tawech and Richard Tyler, individually and on behalf of the class members described below v. Kopelowitz Ostrow, P.C. and Dale Ledbetter*, No. 2019L000927, pending in the Circuit Court of DuPage County, Illinois; *Russell and Kim Rasner, et al. v. Kopelowitz Ostrow, P.A. and Andrew Dale Ledbetter*, No. 2019L008443, pending in the Circuit Court of Cook County, Illinois; *Philip Doherty, et al. v. Kopelowtiz Ostrow, P.A. and Andrew Dale Ledbetter*, No. 2019L000856, pending in the Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois; *Diane Walton, et. al. v. Kopelowitz Ostrow, P.A. and Dale Ledbetter*, Case No.: 2019-cv-06919, pending in the United States District Court for the Central District of California and *Christopher Shealy, et al. v. American Alternative*

*Insurance Corporation, Kopelowitz Ostrow, P.A. and Andrew Dale Ledbetter*, et al., No. 2019CH8938, pending in the Circuit Court of Cook County, Illinois, filed 07/31/2019.

(v)     Ruderman and any of the Ruderman Parties, including without limitation their respective heirs, successors, assignees, employees, and agents;

(vi)    All financial brokers, agents, lenders, initial and subsequent noteholders and investment advisors claiming to have relied upon the work of the KO Parties in connection with the sale or purchase of Debtors' MOIs; and

(vii)   any person or entity (including but not limited to any insurer) claiming to be subrogated to or otherwise entitled to assert the legal rights of any of the persons or entities identified above in subparagraphs (i) – (v) above.

11.     Notwithstanding anything herein to the contrary, the Bar Order shall not relieve the KO Parties or AAIC from their respective obligations under this Settlement Agreement.

12.     Notwithstanding anything herein to the contrary, no federal, state, or local governmental agency or self-regulatory organization, including but not limited to the Securities and Exchange Commission and the Department of Justice, shall be a Barred Person; nor shall the Bar Order apply to any federal state, or local governmental agency or self-regulatory organization, including but not limited to the Securities and Exchange Commission and the Department of Justice.

13.     **General Release of the KO Parties and AAIC by the Debtors, the Debtors' Estates and the Committee**.  Effective upon the Payment Date and conditioned on the receipt by the Debtors of the AAIC Settlement Payment, the KO Settlement Payment, the Ledbetter Settlement Payment and the first Installment of the Atlas Settlement Payment, the Debtors, on behalf of the Debtors' bankruptcy estates and on behalf of any person or entity claiming by or through the Debtors' bankruptcy estates, and the Committee (collectively the "Debtor Releasors") agree to and shall be deemed to have fully and generally released and discharged the KO Parties and AAIC and all of their affiliates (including subsidiaries and parents), current and

former officers, directors, shareholders, members, managers, agents, employees, attorneys, partners, associates, insurers, and representatives (collectively the "KO/AAIC Released Parties") from and against any and all manner of claims (including the Claims), causes of actions, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, losses, damages, liabilities and demands of any kind whatsoever in law or in equity, whether known or unknown, suspected or unsuspected, contingent or fixed, including attorneys' fees and costs that any of the Debtor Releasors now have, have had or in the future may have against any of the KO/AAIC Released Parties arising out of, related to or in connection with, directly or indirectly, the KO Representation, the Barred Claims, the Debtors, the Debtors' bankruptcy estates and/or the facts and circumstances underlying the Claims (the "Debtor Released Claims"). Notwithstanding anything herein to the contrary, the release of the KO/AAIC Releasees herein shall not release (i) the KO Parties or AAIC from any of their respective obligations under this Settlement Agreement, (ii) any reinsurer, retrocessionaire or indemnitor of AAIC, or (iii) the Ledbetter Parties. Notwithstanding anything herein to the contrary, the release provided to Atlas herein shall not become effective unless and until Atlas makes the entire Atlas Settlement Payment. In addition, Atlas agrees that any statute of limitations and/or statute of repose in respect of the Claims against Atlas shall be tolled through the date that is thirty (30) days after the date of the earlier of (i) the payment of the last Installment of the Atlas Settlement Payment, or (ii) the date that Atlas defaults under this Settlement Agreement in respect of the Atlas Settlement Payment.

14. **Release of the Debtors, the Debtors' Estates and the Committee by the KO Parties and AAIC**. Effective upon the Approval Order becoming a Final Order, the KO Parties and AAIC, on behalf of themselves, the KO/AAIC Released Parties and on behalf of any person or entity claiming by or through the KO Parties and/or AAIC (collectively the "KO/AAIC

Releasors"), agree to, and shall be deemed to have fully and generally released and discharged the Debtors, the Debtors' bankruptcy estates and the Committee and all of their respective current and former officers, directors, shareholders, members, managers, agents, employees, attorneys, partners, associates, insurers, and representatives (collectively the "Debtor Released Parties") from and against any and all manner of claims, causes of actions, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, losses, damages, liabilities and demands of any kind whatsoever in law or in equity, whether known or unknown, suspected or unsuspected, contingent or fixed, including attorneys' fees and costs, that any of the KO/AAIC Releasors now have, have had or in the future may have against any of the Debtor Released Parties arising out of, related to or in connection with, directly or indirectly, the Debtor Released Claims (the "KO/AAIC Released Claims").  Notwithstanding anything herein to the contrary, the release of the Debtor Released Parties herein shall not release the Debtors or the Committee from any of their respective obligations under this Settlement Agreement.

15.    **No Admissions.** This Settlement Agreement is entered into for settlement and compromise of disputed claims, including the Claims, the Barred Claims, the Debtor Released Claims and the KO/AAIC Released Claims, and shall not be treated as an admission by any Party of any liability or wrongdoing whatsoever or as an admission by any Party of any violation of the rights of any other Party or person, or the violation of any law, statute, regulation, duty, or contract whatsoever.  By entering into this Settlement Agreement, the Parties do so solely to avoid the inconvenience, expense, and uncertainty of further proceedings and expressly disclaim any liability to any other party or person.

16.    **Attorneys' Fees and Costs.** Each Party will bear its own expenses, including any costs or attorneys' fees incurred in connection with the negotiation and execution of this

Settlement Agreement, the Claims against the KO Parties and AAIC, and the Bankruptcy Case, except that this Settlement Agreement shall not affect AAIC's or the KO Parties' rights or obligations under any other settlement agreement or release pertaining to the Policy, and except that the Committee's expenses shall be borne by the Debtors' estates subject to Bankruptcy Court approval.

17.  **Notices**.  Any notice required or permitted to be given pursuant to any provision of this Settlement Agreement shall be given in writing and delivered in person or sent by registered or certified mail, postage prepaid and return receipt requested (with copies sent by email), to the parties at the address set forth below:

| | |
|---|---|
| If to the Debtors: | Joseph J. Luzinski<br>Deputy Chief Restructuring Officer<br>500 West Cypress Creek Road, Suite 400<br>Fort Lauderdale, Florida 33309<br>E-Mail: jluzinski@dsiconsulting.com |
| With a copy to: | Paul J. Battista, Esq.<br>Genovese, Joblove & Battista, P.A.<br>100 SE Second Street, Suite 4400<br>Miami, Florida 33131<br>E-Mail: pbattista@gjb-law.com |
| | John R. Dodd, Esq.<br>Greenberg Traurig, P.A.<br>333 S.E. 2nd Avenue<br>Miami, FL 33131<br>E-Mail: doddj@gtlaw.com |
| If to the Committee: | Scott A. Stichter, Esq.<br>Stichter, Riedel, Blain & Postler, P.A.<br>110 E. Madison St., Suite 200<br>Tampa, Florida 33602<br>E-Mail: sstichter@srbp.com |
| If to KO: | Kopelowitz Ostrow, P.A.<br>c/o Jeff Ostrow and Brian Kopelowitz |

12

1 West Las Olas Blvd, Suite 500
Fort Lauderdale, Fl 33301

With a copy to:                   James M. Kaplan, Esq.
                                  Noah Snyder, Esq.
                                  Kaplan Zeena, LLP
                                  2 South Biscayne Blvd, Suite 3050
                                  Miami, FL  33131
                                  E-Mail: james.kaplan@kaplanzeena.com

If to Ledbetter:                  Dale Ledbetter
                                  411 N. New River Drive East
                                  Suite 904
                                  Fort Lauderdale, FL 33301

With a copy to:                   Charles M. Tatelbaum, Esq.
                                  Tripp Scott, PA
                                  110 SE Sixth St., Suite 1500
                                  Ft. Lauderdale, FL  33301
                                  E-Mail: cmt@trippscott.com

If to Atlas:                      Jan Atlas
                                  800 E. Broward Blvd, Suite 105
                                  Fort Lauderdale, FL 33301
                                  E-Mail:  janatlas23@yahoo.com

With a copy to:                   Walter J. Mathews, Esq.
                                  Mathews Giberson, LLP
                                  200 S. Andrews Ave., Suite 800
                                  Ft. Lauderdale, FL  33301
                                  E-Mail: wjm@mathewsllp.com

If to AAIC:                       Karen Bittner, AIC
                                  Vice President - Claims
                                  Munich Reinsurance America, Inc.
                                  555 College Road East
                                  Princeton, NJ 08543
                                  E-Mail:  KBittner@munichreamerica.com

                                  And to:

                                  General Counsel

13

                              Munich Reinsurance America, Inc.
                              555 College Road East
                              Princeton, NJ 08540


With a copy to:               Rory E. Jurman, Esq.
                              Hinshaw & Culbertson, LLP
                              One East Broward Blvd, Suite 1010
                              Ft. Lauderdale, FL  33301
                              E-Mail: rjurman@hinshawlaw.com

or to such other address as the party to whom notice is to be given may, from time to time,

designate in writing delivered in a like manner.  All such notices shall be deemed received as of

the date of personal delivery or five (5) days following deposit in the U.S. Mail.

        18.    **Entire Agreement.**  This Settlement Agreement constitutes the only existing and

binding agreement of settlement between the Debtors and the Committee, on one hand, and the

KO Parties and AAIC, on the other hand, and the Parties acknowledge that there are no other

warranties, promises, assurances or representations of any kind, express or implied, upon which

the Parties have relied in entering into this Settlement Agreement, unless expressly set forth

herein.  This Settlement Agreement shall not be modified except by written agreement signed by

both Parties.

        19.    **Parties Affected.**  This Settlement Agreement shall inure to the benefit of the

Parties and their officers, directors, shareholders, employees, partners, attorneys, professionals,

affiliates, representatives, spouses, trustees, heirs, successors, assigns, and insurers.

        20.    **Governing Law/Forum Selection.**  The Parties agree that the United States

Bankruptcy Court for the Southern District of Florida shall have continuing jurisdiction to

enforce the terms of this Settlement Agreement and the Parties expressly consent to the exercise

of personal jurisdiction over them for that limited purpose.  This Settlement Agreement shall be

                                              14

governed by, and construed and enforced in accordance with, the laws of the State of Florida, without regard to conflict of law principles.

21.    **Acknowledgment of Terms.**  The Parties have read and understand the terms of this Settlement Agreement, have consulted with their respective counsel, and understand and acknowledge the significance and consequence of each such term.  No Party is relying on information provided by or from the other Party in entering this Settlement Agreement and there are no duties of disclosure by either Party to the other. This Settlement Agreement was executed after arm's length negotiations between the Parties and their respective counsel, and reflects the conclusion of the Parties that this Settlement Agreement is in the best interests of the Parties, the Debtors, and the Debtors' estates. Each Party represents and warrants that the person executing this Settlement Agreement on his, her, or its behalf has all authority and legal right to do so and separately acknowledges and represents that this representation and warranty is an essential and material provision of this settlement and shall survive execution of this Settlement Agreement.

22.    **Advice of Counsel.**  The Parties acknowledge that they have been represented by counsel of their own choice in the negotiations leading up to the execution of this Settlement Agreement, have read this Settlement Agreement, and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of same.  The Parties have had the Settlement Agreement fully explained to them by their respective counsel and understand the terms and provisions of this Settlement Agreement and its nature and effect.  The Parties further represent that they are entering into this Settlement Agreement freely and voluntarily, relying solely upon the advice of their own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

23.    **Neutral Interpretation.**  In the event any dispute arises among the Parties

15

with regard to the interpretation of any term of this Settlement Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

24. **Execution of Documents.** This Settlement Agreement may be executed in counterparts, that is, all signatures need not appear on the same copy and execution of counterparts shall have the same force and effect as if the Parties had signed the same instrument. All such executed copies shall together constitute the complete Settlement Agreement. The Parties may execute this Settlement Agreement and create a complete set of signatures by exchanging PDF copies of the executed signature pages. Signatures transmitted in PDF format shall have the same effect as original signatures.

25. **Divisions and Headings.** The divisions of this Settlement Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Settlement Agreement.

26. **Waiver**. The failure of a Party to enforce any provision or provisions of this Settlement Agreement shall not in any way be construed as a waiver of any such provision or provisions as to any future violations thereof, nor prevent that Party thereafter from enforcing each and every other provision of this Settlement Agreement. The rights granted the Parties herein are cumulative and the waiver of any single remedy shall not constitute a waiver of such Party's right to assert all other legal remedies available to it under the circumstances. No extension of time of performance of an act or obligation under this Settlement Agreement shall constitute an extension of time of performance of any other act or obligation.

27. **Cooperation**. The Parties agree to cooperate with each other to the extent

16

necessary and commercially reasonable, and use their collective best efforts, to enable the Debtors to obtain entry of the Approval Order (inclusive of the Bar Order) and to cause the Approval Order to become a Final Order.  The KO Parties and AAIC agree to provide the Debtors and any successor to the Debtors under a confirmed plan of liquidation with any and all reasonably requested materials, documents, information and assistance in connection with the Debtors' efforts to seek and obtain entry of the Approval Order, including the Bar Order.  The Parties also agree to promptly execute and deliver such further documents and take such other actions as may be reasonably necessary to carry out the purpose and intent of this Settlement Agreement.

28.    **Time is of the Essence**.  The time for performance of the Parties hereunder is of the essence of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the date first written above.


1 GLOBAL CAPITAL, LLC and
1 WEST CAPITAL, LLC


By:_____
Its:_____

OFFICIAL COMMITTEE OF UNSECURED CREDITORS


By:_____
Its:_____


KOPELOWITZ OSTROW, P.A.


By:_____
Its:_____

17

_____

Dale Ledbetter


_____

Jan Atlas



AMERICAN ALTERNATIVE INSURANCE CORPORATION


By:_____
Its:_____


   The following Ledbetter Parties are executing and delivering this Settlement Agreement for the purpose of being bound by the provisions of Section 4 herein in respect of the assignment of the Ledbetter Claims to the Debtors' bankruptcy estates:


Dale Ledbetter Trust

By:_____
Its:_____



By:_____
   Mary Clark Ledbetter



By:_____
   Andrew Ledbetter