

**ORDERED in the Southern District of Florida on September 20, 2019.**

Raymond B. Ray, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

**ORDER CONFIRMING FIRST AMENDED JOINT PLAN OF**
**LIQUIDATION OF 1 GLOBAL CAPITAL LLC AND 1 WEST CAPITAL LLC**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE**
**<u>DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>**

THIS MATTER came before the Court for a hearing on September 17, 2019, at 1:30

p.m. (the "**Confirmation Hearing**"), upon consideration of:

---

[1] The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  1 Global Capital LLC, d/b/a 1 GC Collections, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, d/b/a 1 West Collections, 1250 E. Hallandale Beach Blvd., Suite 409, Hallandale Beach, FL 33009 (1711). On February 19, 2019, the Debtors registered the fictitious names "1 GC Collections" and "1 West Collections" with the Florida Department of State.

- the *First Amended Joint Chapter 11 Plan of Liquidation of 1 Global Capital LLC and 1 West Capital LLC Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors,* dated July 22, 2019 and attached as Exhibit A to this Confirmation Order (as may be further amended, modified or supplements, the "**Plan**"),[2] filed by 1 Global Capital LLC and 1 West Capital LLC, debtors and debtors-in-possession (each, a "**Debtor**" and collectively, the "**Debtors**"), and the Official Committee of Unsecured Creditors appointed pursuant to Section 1102(a) of the Bankruptcy Code as set forth in that certain *Notice of Appointment of Committee of Unsecured Creditors* filed by the U.S. Trustee on September 7, 2018 [ECF No. 138] (the "**Creditors' Committee**"; together with the Debtors, the "**Plan Proponents**");

- the *First Amended Disclosure Statement with Respect to Joint Plan of Liquidation of 1 Global Capital LLC and 1 West Capital LLC Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors,* dated July 22, 2019 (the "**Disclosure Statement**") filed by the Plan Proponents;

- the *Plan Supplement to the First Amended Joint Plan of Liquidation of 1 Global Capital LLC and 1 West Capital LLC Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* filed on August 20, 2019 [ECF No. 875] and the *Supplement to the Plan Supplement to the First Amended Joint Plan of Liquidation of 1 Global Capital LLC and 1 West Capital LLC Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* filed on August 28, 2019 [ECF No. 968] (together, the "**Plan Supplement**");

- the *Order Granting Plan Proponents' Motion for Entry of an Order (I) Approving the Disclosure Statement, (II) Establishing Plan Solicitation, Voting and Tabulation Procedures, (III) Approving Forms of Notices and Ballots, (IV) Setting Confirmation Hearing and Related Deadlines, and (V) Granting Related Relief* [ECF No. 823] (the "**Disclosure Statement Order**");

- (a) the *Affidavit of Service of Solicitation Materials*, dated August 14, 2019 [ECF No. 860], reflecting service of, among other documents, the Disclosure Statement Order, Confirmation Hearing Notice, and Solicitation Package, and (b) the *Notice of Filing of Publication of the Notice of (I) Order Approving the Disclosure Statement, Solicitation Procedures, and Forms of Solicitation Materials, and (II) Hearing and Objection Procedures for Confirmation of the Joint Plan of Liquidation in the National Edition of USA Today*, dated August 1, 2019 [ECF No. 828] (together with the above-mentioned notice affidavits, the "**Notice Affidavits**");

---

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.  Any capitalized term not defined in the Plan or this Confirmation Order, but used in the Bankruptcy Code the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

- the *Affidavit of Service and Vote Certification of Epiq Corporate Restructuring, LLC* [ECF No. 1083] (the "**Voting Certification**");

- the *Plan Proponents' Memorandum of Law in Support of Confirmation of First Amended Joint Plan of Liquidation of 1 Global Capital LLC and 1 West Capital LLC Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [ECF No. 1081] (the "**Confirmation Brief**");

- the *Declaration of Joseph J. Luzinski, as Deputy Chief Restructuring Officer of the Debtors, in Support of Entry of an Order Confirming the First Amended Joint Plan of Liquidation of 1 Global Capital LLC and 1 West Capital LLC Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [ECF No. 1082] (the **"Company Declaration"**);

- all oral representations, arguments, fact and expert testimony, documents, filings and evidence presented at or in connection with the Confirmation Hearing; and

- the entire record of the Debtors' Chapter 11 Cases, as to which the Court takes judicial notice.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation of the Plan have been good and sufficient, and the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan, including but not limited to the Company Declaration and the Confirmation Brief, establish just cause for the relief granted herein, and after due deliberation thereon and good cause appearing therefor, the Court hereby FINDS, DETERMINES, AND CONCLUDES as follows:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and on the record of the Confirmation Hearing and constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Judicial Notice.  The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases maintained by the Clerk of the Court or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, including, but not limited to, the Confirmation Hearing.  Additionally, the Court takes judicial notice of all Proofs of Claim filed in the Chapter 11 Cases as maintained by the Claims Agent.

C.      Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has jurisdiction to enter a final order with respect thereto.  Venue is proper in this District and before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Plan Proponents are proper plan proponents under section 1121 of the Bankruptcy Code.

D.      Chapter 11 Petitions.  On July 27, 2018, each Debtor filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code.  The Creditors' Committee has been appointed pursuant to section 1102 of the Bankruptcy Code [ECF No. 138].  The Court has ordered joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

E.      Eligibility for Relief.  The Debtors were, and are, entities eligible for relief under section 109 of the Bankruptcy Code.

F.      <u>Objections</u>.  No objections to confirmation of the Plan were filed with the Court or received but not resolved by the Plan Proponents by the Plan Objection Deadline set forth in the Disclosure Statement Order nor were any such objections filed or received after the deadline.

G.      <u>Burden of Proof</u>.  The Plan Proponents have met their burden of proving the elements of sections 1125, 1126, 1127 and 1129 of the Bankruptcy Code by a preponderance of the evidence.  The settlements set forth in the Plan are fair and equitable under *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990).

H.      <u>Voting</u>.  As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited by the Debtors after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "**Local Rules**"), and applicable non-bankruptcy law.

I.      <u>Transmittal and Mailing of Materials; Notice and Solicitation</u>.

(i)      The Disclosure Statement, the Ballots, and the Confirmation Hearing Notice were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the Disclosure Statement Order.

(ii)      The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases, were appropriate for Holders of Claims in the Voting Classes, and complied with applicable law.  The period during which the Debtors solicited acceptances to the Plan was a reasonable period of time for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.

(iii)    The Solicitation Package was transmitted and served in compliance with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules, and such transmittal and service was adequate and sufficient, and no other or further notice is or shall be required.  All Holders of Claims and Equity Interests, and all other parties in interest, were duly given notice of, and had a full and fair opportunity to be heard in connection with, Confirmation of the Plan, pursuant to and in satisfaction of the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, as evidenced by the Notice Affidavits and the Voting Certification.

(iv)    The solicitation of votes on the Plan complied with the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any other applicable rules, laws and regulations.    The Plan Proponents and each of their respective successors, predecessors, control persons, members, officers, directors, employees and agents and each of their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons, and any and all affiliates, members, managers, shareholders, partners, employees, attorneys and advisors of the foregoing acted in good faith and are entitled to all protections provided by section 1125(e) of the Bankruptcy Code.

(v)    Pursuant to section 1126(f) of the Bankruptcy Code, the Plan Proponents were not required to solicit votes from the Holders of Claims or Interests in the Non-Voting Classes, as each of these Classes is conclusively presumed to have accepted or rejected the Plan.  Specifically, the Holders of Class 1 Claims (Secured Tax Claims), Class 2 Claims (Other Secured Claims), and Class 3 Claims (Other Priority Claims) are Unimpaired by the Plan (collectively, the "**Non-Voting Classes**"), the Holders of Claims in each of these Classes are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject

the Plan. Separately, because each of the Holders in each of Classes 5 (Investor Other Claims), 6 (Intercompany Claims), 7 (Subordinated Claims), 8 (Section 510(b) Claims), and 9 (Equity Interests in the Debtors) are not entitled to any distribution or to retain any property pursuant to the Plan, the Holders of Interests in those Classes are not entitled to vote to accept or reject the Plan, and therefore are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

J.    Notice. All parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

K.    Liquidating Trust. The establishment of the Liquidating Trust, appointment of the Liquidating Trustee, the formation of the Liquidating Trust Oversight Committee, vesting of the Liquidating Trust Assets in the Liquidating Trust and authorization to make Distributions of the proceeds thereof, and authorization of the Liquidating Trustee to accept and make Distributions of Third-Party Recoveries are essential elements of the Plan. Entry into the Liquidating Trust Agreement is in the best interests of the Debtors, the Estates, and the beneficiaries of the Liquidating Trust. The establishment of the Liquidating Trust, the selection of James S. Cassel to serve as Liquidating Trustee, the form of the proposed Liquidating Trust Agreement, as the same may subsequently be amended or modified, are appropriate and in the best interests of the beneficiaries of the Liquidating Trust. The Liquidating Trust Agreement, shall, upon execution, be valid, binding and enforceable in accordance with its terms as of the Effective Date of the Plan. The (i) vesting in the Liquidating Trust of the Liquidating Trust

Assets in accordance with the Liquidating Trust Agreement and (ii) authorization of the Liquidating Trustee to accept and make Distributions of Third-Party Recoveries, each as specified in the Plan, is a material component of the Plan, and nothing in this Confirmation Order, the Plan, or the Disclosure Statement shall be deemed or construed to prejudice or preclude the full assertion of such rights.

      L.    <u>Plan Supplement</u>.  All materials included in the Plan Supplement comply with the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and no other or further notice is or shall be required.

<u>**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**</u>

      M.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors and the Creditors' Committee as joint proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.  Specifically:

      (i)    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition to Administrative Claims, Professional Fee Claims, Priority Tax Claims, and U.S. Trustee Fee Claims, which need not be classified, Article II of the Plan classifies eight (8) Classes of Claims[3] and one (1) Class of Equity Interests for the Debtors.  The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such

---

[3]    Class 4 has two separate sub-Classes (4A-4B).

classification does not unfairly discriminate between holders of Claims and Equity Interests. Therefore, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)    <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.    Article III of the Plan specifies that Class 1 Claims (Secured Tax Claims), Class 2 Claims (Other Secured Claims), and Class 3 Claims (Other Priority Claims) are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)    <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article III of the Plan designates Classes 4A (Investor Principal Claims) and 4B (General Unsecured Claims) as Impaired within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of the Claims in those Classes.  Article III of the Plan designates Classes 5 through 9 as Impaired and not entitled to receive or retain any property on account of the Claims and Interests in those Classes.  Accordingly, section 1123(a)(3) of the Bankruptcy Code is satisfied.

(iv)    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed to or elected a less favorable or different treatment of such Claim or Equity Interest.  Therefore, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

(v)    <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan and the various documents and agreements set forth in the Plan Supplement satisfy section 1123(a)(5) of the Bankruptcy Code.  There is adequate and proper means for the implementation of the Plan, including the Debtors' Cash and Assets which together are adequate to make the

Distributions, fund the reserves required under the Plan and fund the Liquidating Trust, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(vi)     Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. §1123(a)(6)).  No equity securities are being issued pursuant to the Plan.

(vii)     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).   The Plan is a plan of liquidation and, on the Effective Date, each of the Debtors' existing officers and directors will be dismissed.  The Assets of the Debtors shall vest in the Liquidating Trust, which will be administered by the Liquidating Trustee.  On the Effective Date, the Liquidating Trust Oversight Committee shall be formed, which shall have access to and the right to consult with the Liquidating Trustee in connection with the implementation of the Plan and the administration of the Liquidating Trust.  The Liquidating Trustee and the Liquidating Trust Oversight Committee were selected pursuant to the Plan and Liquidating Trust Agreement.  The selection of the Liquidating Trustee and the appointment of the Liquidating Trust Oversight Committee are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(viii)     Impairment/Absence of Impairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)).   Pursuant to Articles II and III of the Plan, the following Classes of Claims and Equity Interests are Impaired under the Plan, as permitted by section 1123(b)(1) of the Bankruptcy Code:   Classes 4A (Investor Principal Claims), 4B (General Unsecured Claims), 5 (Investor Other Claims), 6 (Intercompany Claims), 7 (Subordinated Claims), 8 (Section 510(b) Claims), and 9 (Equity Interests in the Debtors).   Pursuant to Articles II and III of the Plan, the following Classes of Claims and Equity Interests are Unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code:   Class 1 Claims

(Secured Tax Claims), Class 2 Claims (Other Secured Claims), and Class 3 Claims (Other Priority Claims).

(ix)    Assumption and Rejection (11 U.S.C. § 1123(b)(2) and 1123(d)).  Article VII of the Plan addresses the assumption and rejection of Executory Contracts and Unexpired Leases, and meets the requirements of section 365(b) of the Bankruptcy Code.  There have been no objections to the Debtors' disposition of Executory Contracts pursuant to Article VII of the Plan.

(x)    Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).  The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.  The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

(xi)    Cure of Defaults (11 U.S.C. § 1123(d)).  Article VI of the Plan provides for the satisfaction of default claims, if any, associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  To the extent any cure amounts exist, all cure amounts will be determined in accordance with the underlying agreements and applicable bankruptcy and non-bankruptcy law. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

N.    The Plan Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

(i)    Each of the Debtors is eligible to be a debtor under section 109 of the Bankruptcy Code; and

(ii)     The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law, the Disclosure Statement Order, and all other applicable law, in transmitting the Plan, the Plan Supplement, the Disclosure Statement, and the Ballots and related documents and notices, and in soliciting and tabulating the votes on the Plan.

O.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Plan Proponents' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the Notice Affidavits, the Company Declaration, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates.  The Plan, including the settlements referenced in the Plan, and all documents necessary to effectuate the Plan were negotiated at arms' length among representatives of the Debtors, the Creditors' Committee, certain other parties in interest, and their respective professionals.  Each of the Plan Proponents support Confirmation of the Plan.   Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms' length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful liquidation.

P.     <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.

Payments have been made to the Estates' retained professionals for services rendered after the Petition Date on a regular basis, and all payments to such professionals for services rendered through the Effective Date are subject to the approval of this Court pursuant to the terms of the orders authorizing the retention of the Estates' professionals and section 3.02(b) of

the Plan, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

Q.    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  In accordance with the provisions of the Plan, on the Effective Date, the Liquidating Trust shall be established.   As provided in the Liquidating Trust Agreement, James S. Cassel will be the Liquidating Trustee.   The initial members of the Liquidating Trust Oversight Committee shall be Charles Carpenter, Donald Stec, Geoffrey Lipman, and Khosrow Sohraby.  The Liquidating Trust Oversight Committee shall have access to and the right to consult with the Trustee in connection with the implementation of the Plan and administration of the Trust on and after the Effective Date.  The knowledge of the members of the Liquidating Trust Oversight Committee and Liquidating Trustee of the Debtors' operations, businesses, accounts, finances, and business relationships of the Debtors is critical to achieving a successful wind down of these Chapter 11 Cases through the operation of the Liquidating Trust.   As such, the appointment of these individuals is consistent with the interests of the Debtors' creditors and with public policy and section 1129(a)(5) of the Bankruptcy Code is satisfied.

R.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  The Plan does not provide for rate changes by any of the Debtors.   Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

S.    <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.  If the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code, the value of distributions from the chapter 7 cases would be less than the value of Distributions under the Plan because, among other things, the Debtors would incur the additional costs and expenses of a chapter 7 trustee and other professional fees relating to the chapter 7 cases.   The analysis provided in the Confirmation Brief and other evidence proffered or adduced at the Confirmation Hearing, (i) is

persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Holders of Claims and Equity Interests, who are Impaired under the Plan, will receive under the Plan on account of such Claims and Equity Interests property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.  Recoveries pursuant to the Plan are equal to or in excess of those that would be available if the Debtors were liquidated pursuant to chapter 7, and, therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

T.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).

As set forth in the Voting Certification, each Class of Impaired Claims that is entitled to vote on the Plan has accepted the Plan.  However, Classes 5 (Investor Other Claims), 6 (Intercompany Claims), 7 (Subordinated Claims), 8 (Section 510(b) Claims), and 9 (Equity Interests in the Debtors) are Impaired by the Plan and are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Notwithstanding the fact that the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to Classes 5 (Investor Other Claims), 6 (Intercompany Claims), 7 (Subordinated Claims), 8 (Section 510(b) Claims), and 9 (Equity Interests in the Debtors), the Plan may be confirmed because it satisfies sections 1129(a)(10) and 1129(b)(1) of the Bankruptcy Code.  For the foregoing reasons, the Plan satisfies section 1129(a)(8) of the Bankruptcy Code.

U.    Treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Allowed Administrative Claims pursuant to Article III of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Other Priority Claims pursuant to Article III of the Plan satisfies the

14

requirements of section 1129(a)(9)(B) of the Bankruptcy Code.  The treatment of Priority Tax Claims pursuant to Article III of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

V.    <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  Each of the voting Classes – Classes 4A (Investor Principal Claims) and 4B (General Unsecured Claims) – have affirmatively accepted the Plan, without including the acceptance of the Plan by insiders in such Classes.  Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied.

W.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The Debtors have established by a preponderance of the evidence that confirmation of the Plan is not likely to be followed by the liquidation (other than liquidation as set forth in the Plan) or the need for further financial reorganization of the Debtors, as the Plan effectuates the liquidation and dissolution of the Debtor through the terms of the Plan and the Liquidating Trust.  The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

X.    <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  All fees currently payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date pursuant to Article III of the Plan.  The Liquidating Trustee shall further pay all U.S. Trustee Fee Claims for post-Confirmation periods in accordance with 28 U.S.C. § 1930(a)(6) until the closing of the Chapter 11 Cases by the Bankruptcy Court.  Therefore, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

Y.    <u>Continuation of Retiree Benefits; Domestic Support Obligations; Debtors As Individuals; Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(13 - 16)</u>.  Sections 1129(a)(13) through (16) are not applicable to the Debtors in these Chapter 11 Cases.

Z.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.  Classes 5 (Investor Other Claims), 6 (Intercompany Claims), 7 (Subordinated Claims), 8 (Section 510(b) Claims), and 9 (Equity Interests in the Debtors) are deemed to have rejected the Plan.  Based upon the Confirmation Brief, the Company Declaration, and the evidence proffered, adduced, and presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly with respect to and is fair and equitable with respect the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no Holder of any interest that is junior to Classes 5 (Investor Other Claims), 6 (Intercompany Claims), 7 (Subordinated Claims), 8 (Section 510(b) Claims), or 9 (Equity Interests in the Debtors) will receive or retain any property under the Plan on account of such junior interest, and no holder of a Claim in a Class senior to such Classes is receiving more than 100% recovery on account of its Claim.  Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by Classes 5, 6, 7, 8, and 9.

AA.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Plan is the only plan filed in each of these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

CC.    <u>Small Business Case (11 U.S.C. § 1129(e))</u>.  Neither of the Chapter 11 Cases are a "small business case," as that term is defined in the Bankruptcy Code.  Therefore, section 1129(e) of the Bankruptcy Code is not applicable.

DD.    <u>Satisfaction of Conditions Precedent</u>.    Upon the entry of this Confirmation Order, each condition precedent to the confirmation of the Plan, as set forth in Article XIII of the Plan, shall have been satisfied or waived as provided in the Plan.    Furthermore, each condition precedent to occurrence of the Effective Date, as set forth in Article XIII of the Plan, has been satisfied or waived, as provided in Article XIII of the Plan, or is reasonably likely to be satisfied or waived.

EE.    <u>Satisfaction of Confirmation Requirements</u>.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

FF.    <u>Injunctions and Exculpations</u>.    The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunctions and exculpations set forth in Article XII of the Plan.    Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and exculpations if, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (i) are essential and necessary to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' Estates, (iii) are fair, equitable and reasonable, and (iv) are in the best interests of the Debtors, their Estates, and parties in interest.    Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the exculpations and injunctions set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and the Holders of Claims and Equity Interests.

The Solicitation Package provided to creditors in those Classes entitled to vote, included a detailed description of the exculpations.    The Holders of Claims and Equity Interests were, thus, provided with adequate notice and a full and fair opportunity to oppose the exculpations. The exculpations of non-Debtors under the Plan are fair to Holders of Claims and are necessary

to the Plan, thereby satisfying the requirements of applicable case law.  In addition, with respect to those parties who voted to accept the Plan or are presumed to have voted for the Plan under section 1126(f) of the Bankruptcy Code, such parties are deemed to have consented to the exculpations in Article XII of the Plan.  The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the exculpations and injunctions provided for in Article XII of the Plan.  The failure to implement the injunctions and exculpations would seriously impair the Debtors' ability to confirm the Plan and would jeopardize the prospects for Distributions to Holders of Allowed Claims.

GG.    Plan Represents a Settlement.  Except as otherwise provided in the Plan and this Confirmation Order, the Plan represents a settlement by and among the Debtors, Holders of Equity Interests, and Holders of all other Claims and interests and litigation against the Debtors, pending or threatened, or that was or could have been commenced against the Debtors prior to the date of entry of this Confirmation Order (other than the Liquidating Trust's ability to prosecute objections to Claims and other retained causes of action to the extent preserved under the Plan).  The settlements satisfy the requirements for approval of settlements under *Justice Oaks*.

HH.    Settlement of Investor Principal Claims.    The Debtors' compromise and settlement with respect to Investor Principal Claims, including under Section 5.01 of the Plan satisfy the requirements of *Justice Oaks* as the settlement is (i) a proper exercise of the Debtors' business judgment, (ii) within the range of reasonableness required for approval, and (iii) in the best interests of the Debtors and their Estates.

II.    Retention of Authority for Entry of Orders in Aid of Settlement.  The retention of the authority for entry of orders in aid of compromise and settlement, including under

Section 5.02 of the Plan, is appropriate and consistent with the provisions of the Bankruptcy Code, is fair and equitable, and is in the best interests of the Debtors and their Estates.

JJ.     <u>Good Faith</u>.  The Plan Proponents will be acting in good faith in proceeding to consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby and take the actions authorized and directed by this Confirmation Order.

KK.     <u>Retention of Jurisdiction</u>.  The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

### **<u>ORDER</u>**

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED as follows:

1.      <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.

2.      <u>Notice of the Confirmation Hearing</u>.  Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases.

3.      <u>Solicitation</u>.  The solicitation of votes on the Plan was appropriate and in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law.  The solicitation of votes on the Plan complied with the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of

the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law.

4.    <u>Ballots and Election Treatment Form</u>.  The forms of Ballots comply with Bankruptcy Rule 3018(c), conform to Official Form Number 14, and are approved in all respects.

5.    <u>Plan Modifications</u>.  The term "Related Parties" as defined in the Plan includes "shareholders" in addition to the Persons or Entities listed therein.    Other modifications made to the Plan, if any, following the solicitation of votes thereon satisfied the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Accordingly, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, any modifications to the Plan do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims be afforded an opportunity to change any previously-cast acceptances or rejections of the Plan.

6.    <u>Confirmation of the Plan</u>.  The Plan is hereby **CONFIRMED** under section 1129 of the Bankruptcy Code.  A copy of the Plan is attached as **Exhibit "A"** to this Confirmation Order.  The documents contained in the Plan Supplement are hereby authorized and approved.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

7.    <u>Liquidating Trust Agreement</u>.  The Liquidating Trust Agreement is **APPROVED** in all respects.  The Debtors and the Liquidating Trustee are hereby directed to execute the Liquidating Trust Agreement.

8.      <u>Appointment of Liquidating Trustee</u>.  In accordance with the Plan and terms of the Liquidating Trust Agreement, the appointment of James S. Cassel as Liquidating Trustee is **APPROVED.**

9.      <u>Appointment of Liquidating Trust Oversight Committee</u>.  The selection of the members of the Liquidating Trust Oversight Committee is **APPROVED**.  The initial Liquidating Trust Oversight Committee shall consist of: (i) Charles Carpenter, (ii) Donald Stec, (iii) Geoffrey Lipman, and (iv) Khosrow Sohraby.

10.     <u>Implementation</u>.

(a)      All documents necessary to implement the Plan and any and all other transactions contemplated by the Plan, including but not limited to the Liquidating Trust Agreement, are hereby approved, and shall, upon execution, be deemed valid, binding and enforceable agreements, entered into for good and valuable consideration, including the benefits of the Plan, and not be in conflict with any federal or state law.  The Debtors and the Liquidating Trustee, subject to the terms of the Plan and Liquidating Trust Agreement, are hereby authorized, empowered and directed forthwith to take any and all actions necessary to implement the Plan, including to negotiate and execute any and all of the documents and agreements necessary to implement the Plan, and to execute, deliver and file (as appropriate) all documents and agreements and take all actions provided in or contemplated by any of the same to accomplish the intent of same, including, without limitation, any modifications consistent with the terms of the Plan and any actions required by Article XIII of the Plan to effectuate and consummate the Plan.  All such actions taken or caused to be taken shall be deemed effective pursuant to applicable law and without the need for any required approvals, authorizations or consents, except as provided in the Plan or Liquidating Trust Agreement, and any or all of such documents and agreements may be filed with each of the respective state filing offices and

21

recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

(b)    As provided for under the Plan as modified by this Confirmation Order and without in any way limiting the provisions of the Plan:

(i)    After the Effective Date, the Debtors and Liquidating Trustee, as applicable, are hereby authorized to use and dispose of property and settle and compromise Claims or Equity Interests without the supervision of this Court, subject to the terms of the Plan and the Liquidating Trust Agreement, and all documents and exhibits thereto.

(ii)    The Debtors and Liquidating Trust, as applicable, are hereby authorized to, but are not required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Liquidating Trust may have against the Holder of such Claim in accordance with the Plan; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Liquidating Trust of any such claim that the Debtors or the Liquidating Trust may have against such Holder.

11.    Vesting of Assets and Preservation of Litigation Rights.  Pursuant to the Plan, and pursuant to sections 1123(b)(3) and 1141(b) and (c) of the Bankruptcy Code, on the Effective Date, the Assets of the Debtors' Estates which constitute the Liquidating Trust Assets will be vested in and continue after the Effective Date as Liquidating Trust Assets.  Except as otherwise provided in the Plan, the Liquidating Trust Agreement, this Confirmation Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, on the Effective Date, the Liquidating Trust Assets shall vest in the Liquidating Trust, free and clear of all Claims, Equity Interests, liens, encumbrances, and interests.  Any claims,

demands, rights, and Causes of Action of the Debtors or their Estates, together with all privileges associated with such claims, demands, rights, and Causes of Action, shall be preserved and vest in the Liquidating Trust as provided in the Plan and shall be prosecuted, managed, controlled, and/or settled on behalf of the Liquidating Trust by the Liquidating Trustee, as provided in the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee is authorized to take any action on behalf of the Debtors in the furtherance of the liquidation of the Liquidating Trust Assets, including executing any corporate action related to the liquidation of the Liquidating Trust Assets and dissolution and winding up of the Debtors as business entities.  In accordance with the Plan and Liquidating Trust Agreement, the Liquidating Trustee is authorized to perform such post-Effective Date acts as are required to effectively and finally wind up the affairs of the Debtors, including, but not limited to, preparing and filing final tax returns, paying final invoices of the Debtors, and paying any postpetition Professional Fees after the allowance of final fee applications by this Court.

        12.    Injunctions and Exculpation.  Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the exculpations set forth in Article XII of the Plan if, as has been established here based upon the record in the Chapter 11 Cases, the Confirmation Brief, the Company Declaration, and the evidence presented at the Confirmation Hearing, such provisions (i) are essential and necessary to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' Estates, (iii) are fair, equitable and reasonable, and (iv) are in the best interests of the Debtors, their Estates, and parties in interest.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the exculpations and injunctions set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and the Holders of Claims and Equity Interests.

Based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at or before the Confirmation Hearing, this Court finds that the injunctions and exculpations set forth in Article XII of the Plan are consistent with the Bankruptcy Code and applicable law and are therefore approved.

13.    <u>Setoffs</u>.  For avoidance of doubt, Section 12.05 (Setoffs) of the Plan shall not apply to collateral source recoveries, *provided* that a Holder of a Claim or Equity Interest is entitled to only a single satisfaction of its Allowed Claim or Equity Interest.

14.    <u>Insurance Policies</u>.  For avoidance of doubt, the retention of rights under Section 8.05(c) of the Plan shall not limit or affect the rights, remedies, and defenses of any insurer, beneficiary, or third-party beneficiary under or in connection with any insurance policy insuring the Debtors or providing coverage for the Debtors or their Assets or alter the terms, conditions, definitions, exclusions and limitations of any such policies, including, without limitation, any right or defense of setoff.   In the event an order is entered granting any request by an insurer relief from the automatic stay, the insurer may take actions in accordance with the order granting stay relief without violating any injunctions or stays provided for in the Plan, including, without limitation, Article XII of the Plan.   The Plan, Confirmation, and the Confirmation Order shall be without prejudice to Underwriters[4] filing a declaratory judgment and/or rescission action in the Bankruptcy Court and/or Underwriters' ability to seek further stay relief and/or determination as to whether or to what extent the stay applies.

15.    <u>Objections</u>.  All objections, responses to, and statements and comments, if any, in opposition to, the Plan, including the Plan Supplement, other than those withdrawn

---

[4]    "**Underwriters**" has the meaning ascribed to it in their motion for relief from stay [ECF No. 922].

with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

16.    <u>Binding Effect</u>.    Pursuant to section 1141 and the other applicable provisions of the Bankruptcy Code, on or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan (including the exhibits and schedules thereto and all documents and agreements executed pursuant thereto or in connection therewith, including those contained in the Plan Supplement) and this Confirmation Order shall bind the Debtors, the Liquidating Trust, all Holders of Claims against and Equity Interests in the Debtors (irrespective of whether such Claims or Equity Interests are Allowed, Disallowed or Impaired under the Plan or whether the Holders of such Claims or Equity Interests accepted or are deemed to have accepted the Plan), each Entity receiving, retaining or otherwise acquiring property under the Plan, any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any Entity making an appearance in the Chapter 11 Cases, all parties that filed objections to Confirmation of the Plan, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

17.    <u>Cancellation of Existing Stock and Agreements</u>.    On the Effective Date, except to the extent otherwise provided herein, all notes, stock, membership interests, instruments, certificates, and other documents evidencing any Claims or Equity Interests, including all Memoranda of Indebtedness, shall be canceled, and shall be of no further force as to the Debtors, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged; *provided*, that, the cancelation of the Memoranda of Indebtedness is not intended to and will not terminate, release, reduce, impair, satisfy or limit any Investor ownership interest therein, or otherwise affect any

rights (for avoidance of doubt, including any Cause of Action) that any Investor may have against any Person or Entity other than the Debtors.

18.    <u>Compromise of Controversies</u>.  The settlements embodied in the Plan, including but not limited to the compromise and settlement of Investor Principal Claims under Section 5.01 and related provisions of the Plan, are each (i) in the best interests of the Debtors and their Estates, (ii) fair, equitable and reasonable, (iii) within the range of reasonableness, and (iv) made at arm's length and in good faith.  The entry of this Confirmation Order constitutes approval of such compromise and settlement under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, subject to the terms of the Plan.

19.    <u>Orders in Aid of Compromise and Settlement</u>.  Section 5.02 (Orders in Aid of Compromise or Settlement) of the Plan is approved.  For avoidance of doubt, (i) approval of Section 5.02 (Orders in Aid of Compromise or Settlement) of the Plan by entry of this Confirmation Order does not itself effectuate a bar order or channeling injunction or the Court's approval of entitlement to same but rather provides that the Debtors or the Liquidating Trustee may request that the Bankruptcy Court issue a bar order or channeling injunction; and (ii) any request for entry of a bar order or channeling injunction pursuant to Section 5.02 (Orders in Aid of Compromise or Settlement) of the Plan shall be made by motion or adversary proceeding Filed in accordance with Sections 105(a) and 1123 of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law with all defenses and objections preserved.

20.    <u>Dissolution of Certain Debtors</u>.  On the Effective Date and without the need for further order of the Bankruptcy Court, action or formality that otherwise might be required under non-bankruptcy law, the Dissolving Debtors will be deemed dissolved without any further filing with or action by any secretary of state or other governmental official in each of the Dissolving Debtors respective states of incorporation or formation.

21.  <u>Change of Debtors' Names</u>.  On the Effective Date, and without the need for further order of the Bankruptcy Court or action or formality by the Debtors or the Liquidating Trustee that otherwise might be required under non-bankruptcy law, the names of each Debtor shall be changed as set forth below.

| Existing Name | Post-Effective Date Name |
|---|---|
| 1 Global Capital LLC | 1 GC Collections |
| 1 West Capital LLC | 1 West Collections |

22.  <u>Change of Case Captions</u>.  The case captions in the Chapter 11 Cases and any pending adversary proceeding shall be modified to reflect the change of the Debtors' names.

23.  <u>Dissolution of the Creditors' Committee</u>.  On the Effective Date, the Creditors' Committee shall be deemed dissolved and its members shall be deemed released of their duties, responsibilities and obligations.

24.  <u>Plan Distributions</u>.  The provisions of Articles VIII and X of the Plan regarding the Distributions under the Plan and the procedures for resolving Disputed Claims, respectively, are hereby approved in all respects.  From and after the Effective Date, the Liquidating Trust shall, subject to the terms of the Plan, have sole responsibility and authority for disputing, objecting to, compromising and settling, or otherwise resolving and making distributions with respect to all Claims.  Notwithstanding applicable law, if the Debtors are already in possession of a tax identification number for a particular creditor, such creditor need not provide a signed W-9 or similar tax form prior to receiving distributions under the Plan.

25.  <u>Assumption or Rejection of Contracts and Leases</u>.

(a)  Pursuant to Article VII of the Plan and the Plan Supplement, the Automated Clearing House Services Agreement, dated September 30, 2016, between T$$,

27

LLC, dba ACHWorks, and 1 Global Capital LLC, as modified by the *Final Order (A)*
*Authorizing (I) the Maintenance of Bank Accounts and Continued Use of Existing Business*
*Forms and Checks, (B) the Continued Use of the Existing Cash Management System, and (C)*
*Waiving Certain Investment and Deposit Guidelines* [ECF No. 136] (the "**ACH Agreement**") is
hereby assumed by the Debtors and assigned to the Liquidating Trust.  For avoidance of doubt,
any right of setoff under the ACH Agreement is expressly preserved, notwithstanding any
contrary provisions of the Plan or this Order.

(b)      Subject to the foregoing paragraph, pursuant to Article VII of the Plan,
each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed
and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the
Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically
described in the Plan as to be assumed in connection with Confirmation of the Plan, or is
specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan
Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory
Contract as of the Effective Date; (3) was previously assumed or assumed and assigned during
the pendency of the Chapter 11 Cases; (4) is a contract, instrument, release, indenture, or other
agreement or document entered into in connection with the Plan; or (5) is an insurance policy,
as set forth in Section 7.06 of the Plan.

(c)      **Any proof of claim for damages arising from the rejection must be
filed with the Bankruptcy Court on or before the latest of: (i) the time for filing a proof of
claim pursuant to Bankruptcy Rule 3002(c); (ii) 30 days after the entry of this
Confirmation Order approving the rejection of the contract or lease; or (iii) 30 days after
the effective date of the rejection of the contract or lease.**

(d)     Subject to the Plan, the Debtors and the Liquidating Trust reserve the right to assert that any license, franchise, and partially performed contract is a property right and not an Executory Contract.

26.     Conditions to Effective Date.  The Plan shall not become effective unless and until the conditions set forth in Article XIII of the Plan have been satisfied or waived pursuant to Section 13.03 of the Plan.  Prior to the Effective Date, the Debtors and their officers, directors, agents, affiliates and advisors are authorized to take any and all actions necessary to cause the satisfaction or waiver of all conditions to the Effective Date.

27.     Payment of Statutory Fees.   The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), through Confirmation, within fourteen (14) business days of entry of this Confirmation Order. The Liquidating Trustee shall file with the Court post-confirmation Quarterly Operating Reports and pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.

28.     Exemption from Certain Taxes and Fees.   To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, Distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale,

assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

29.  Liability to Governmental Unit.  Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins any liability to a Governmental Unit on the part of any Entity other than the Debtors or the Debtors' estates.  Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside of this Court, any liability against an Entity other than the Debtors or the Debtors' estates.  Nothing in this Confirmation Order or the Plan shall affect any valid right of setoff or recoupment of any Governmental Unit.

30.  Notice of Confirmation and Effective Date.  Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of this Confirmation Order and the occurrence of the Effective Date on all Holders of Claims and Equity Interests listed on the Schedules or who filed a Proof of Claim and any other persons on whom the notice of Confirmation Hearing was served.  Such actual notice of entry of this Confirmation Order shall have the effect of an order of the Court and shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), and no other or

further notice of entry of this Confirmation Order need be given.  The Liquidating Trustee shall also make the aforementioned notice available on the Website for these Chapter 11 Cases.

31.    <u>Reversal or Vacatur</u>.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order.  Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

32.    <u>Authorization to Consummate the Plan</u>.  **This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.   The 14-day stay of this Confirmation Order under Bankruptcy Rule 3020(e) shall commence upon its entry.**  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order and expiration of the 14-day stay of this Confirmation Order under Bankruptcy Rule 3020(e), subject to the satisfaction or waiver of the conditions precedent to occurrence of the Effective Date as set forth in Article XIII of the Plan.

33.    <u>Retention of Jurisdiction</u>.   Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by this Court, this Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law (<u>provided</u>, <u>however</u>, that notwithstanding the foregoing, with respect to all civil proceedings arising under the Bankruptcy Code or arising in or related

to these Chapter 11 Cases and the Plan, this Court shall have original but not exclusive jurisdiction, in accordance with section 1334(b) of Title 28 of the United States Code), including, among other things, jurisdiction over the matters enumerated in section 11.01 of the Plan.

34.    <u>Modifications</u>.  After the Effective Date, the Liquidating Trustee can, upon consent of all of the Plan Proponents, seek to modify the Plan in accordance with section 1127 of the Bankruptcy Code and applicable law.

35.    <u>Severability of Plan Provisions</u>.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

36.    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Florida shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation of the Debtors shall govern corporate governance matters with respect to the Debtor; in each case without giving effect to the principles of conflicts of law thereof.

37.    <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

38.    <u>Governmental Approvals</u>.  Each federal, state, commonwealth, local, foreign or other Governmental Authority is hereby directed and authorized to accept any and all

documents, mortgages, deeds of trust, security filings, financing statements and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

39.     <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

40.     <u>Inconsistency</u>.    To the extent of any inconsistency between this Confirmation Order and the Plan, the Disclosure Statement, or any documents or exhibits thereto or in connection with any of the foregoing, this Confirmation Order shall govern and control.

41.     <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

# # #

<u>Submitted by</u>:

John R. Dodd, Esq.
Fla. Bar. No. 38091
doddj@gtlaw.com
GREENBERG TRAURIG, LLP
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500

*Counsel for the Debtors*
*and Debtors-in-Possession*

(Epiq Corporate Restructuring, LLC is directed to serve copies of this Order upon the Master Service List and to file a Certificate of Service with the Bankruptcy Court.)

**<u>Exhibit A</u>**

**(The Plan)**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| 1 GLOBAL CAPITAL LLC, *et al.*,[1] | Case No. 18-19121-RBR |
| Debtors. | (Jointly Administered) |

## FIRST AMENDED JOINT PLAN OF LIQUIDATION OF 1 GLOBAL CAPITAL LLC AND 1 WEST CAPITAL LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Paul J. Keenan Jr. (Fla. Bar No. 0594687)
John R. Dodd (Fla. Bar No. 38091)
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue
Suite 4400
Miami, Florida 33131
Telephone:  (305) 579-0500
keenanp@gtlaw.com
doddj@gtlaw.com

*Counsel for the Debtors and Debtors-in-Possession*

Russell M. Blain (Fla. Bar No. 236314)
Barbara A. Hart (Fla. Bar No. 512036)
STICHTER, RIEDEL,
BLAIN & POSTLER, P.A.
110 East Madison St., Ste. 200
Tampa, FL 33602
Telephone: (813) 229-0144
rblain@srbp.com
bhart@srbp.com

*Counsel for the Official Committee of Unsecured Creditors*

Dated:  July 22, 2019

---

[1]  The Debtors in these Chapter 11 Cases, along with the business addresses and the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  1 Global Capital LLC, d/b/a 1 GC Collections, 1250 E. Hallandale Beach Blvd., Suite 605, Hallandale Beach, FL 33009 (9517); and 1 West Capital LLC, d/b/a 1 West Collections, 1250 E. Hallandale Beach Blvd., Suite 605, Hallandale Beach, FL 33009 (1711).  On February 19, 2019, the Debtors registered the fictitious names "1 GC Collections" and "1 West Collections" with the Florida Department of State.

## TABLE OF CONTENTS

Page

ARTICLE I: DEFINED TERMS AND RULES OF INTERPRETATION ....................................1
ARTICLE II: CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS.........................15

    Section 2.01   Classification...................................................................................15
    Section 2.02   Consolidation of Debtors for Purposes of Voting, Confirmation
                    and Distribution ...........................................................................15

ARTICLE III: TREATMENT OF CLAIMS AND EQUITY INTERESTS ...............................16

    Section 3.01   General.............................................................................................16
    Section 3.02   Unclassified Claims ........................................................................16
    Section 3.03   Voting Classes of Claims against the Debtors...............................17
    Section 3.04   Non-Voting Classes of Claims against and Equity Interests in the
                    Debtors ...........................................................................................18

ARTICLE IV: ACCEPTANCE OR REJECTION OF THE PLAN..........................................21

    Section 4.01   Impaired Classes of Claims Entitled to Vote.................................21
    Section 4.02   Acceptance by an Impaired Class ..................................................21
    Section 4.03   Presumed Acceptances by Unimpaired Classes ............................21
    Section 4.04   Presumed Rejection by Certain Classes.........................................21
    Section 4.05   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.........21
    Section 4.06   Elimination of Vacant Classes ......................................................21

ARTICLE V: SETTLEMENTS AND COMPROMISES ........................................................22

    Section 5.01   Compromise and Settlement of Investor Principal Claims.......................22
    Section 5.02   Orders in Aid of Compromise and Settlement.............................22

ARTICLE VI: MEANS FOR IMPLEMENTATION OF THE PLAN .....................................22

    Section 6.01   Liquidating Trust ...........................................................................22
    Section 6.02   Liquidating Trust Oversight Committee.......................................23
    Section 6.03   Funding for the Plan.......................................................................24
    Section 6.04   Funding of Reserves ......................................................................24
    Section 6.05   Corporate Action............................................................................24
    Section 6.06   Directors, Officers and Managers.................................................24
    Section 6.07   Debtors' Professionals ...................................................................24
    Section 6.08   Effectuating Documents; Further Transactions ...........................25
    Section 6.09   Exemption from Certain Taxes and Fees.......................................25
    Section 6.10   Preservation, Pursuit and Resolution of Liquidating Trust Actions .........25
    Section 6.11   Continued Retention of Certain Professionals.............................26
    Section 6.12   The Surviving Debtor(s) Pending the Closing of the Cases ....................26
    Section 6.13   Closing of the Debtors' Cases........................................................27
    Section 6.14   Cancellation of Existing Agreements and Existing Stock and/or
                    Membership Interests.....................................................................27
    Section 6.15   Operations of the Debtors Between the Confirmation Date and the
                    Effective Date ................................................................................27

Section 6.16    Dissolution of Certain Debtors ...................................................28
Section 6.17    Change of Debtors' Names.......................................................28
Section 6.18    Dissolution of the Creditors' Committee....................................28

ARTICLE VII: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
              LEASES........................................................................................28

Section 7.01    Executory Contracts and Unexpired Leases ..............................28
Section 7.02    Cure of Defaults for Assumed Executory Contracts and Unexpired
                Leases..........................................................................................29
Section 7.03    Claims Based on Rejection of Executory Contracts and Unexpired
                Leases..........................................................................................29
Section 7.04    Modifications, Amendments, Supplements, Restatements, or Other
                Agreements..................................................................................30
Section 7.05    Indemnification Obligations .....................................................30
Section 7.06    Insurance Policies .....................................................................31
Section 7.07    Reservation of Rights.................................................................31
Section 7.08    Merchant Cash Advance Agreements are Not Executory Contracts........31

ARTICLE VIII: PROVISIONS GOVERNING DISTRIBUTIONS .............................32

Section 8.01    Calculation of Amounts to be Distributed .................................32
Section 8.02    Rights and Powers of the Debtors and Liquidating Trustee ....................32
Section 8.03    Delivery of Distributions and Undeliverable or Unclaimed
                Distributions................................................................................33
Section 8.04    Compliance with Tax Requirements/Allocations ......................35
Section 8.05    Claims Paid or Payable by Third Parties ...................................36

ARTICLE IX: THE LIQUIDATING TRUST ...........................................................37

Section 9.01    Liquidating Trust Creation.........................................................37
Section 9.02    Purpose of the Liquidating Trust ...............................................37
Section 9.03    Transfer of Assets to the Liquidating Trust ...............................37
Section 9.04    Tax Treatment of the Liquidating Trust......................................38
Section 9.05    Distribution; Withholding..........................................................39
Section 9.06    Insurance ....................................................................................39
Section 9.07    Other Rights and Duties of the Liquidating Trustee...................40
Section 9.08    Disputed Claims Reserve ...........................................................40
Section 9.09    Wind-Down..................................................................................40
Section 9.10    Post-Effective Date Reporting ...................................................41
Section 9.11    Termination of the Liquidating Trust and Liquidating Trust
                Oversight Committee....................................................................41
Section 9.12    Transfer of Liquidating Trust Interests ......................................42
Section 9.13    Termination of the Liquidating Trustee......................................42
Section 9.14    Exculpation; Indemnification.....................................................42
Section 9.15    Release of Liens .........................................................................42
Section 9.16    Subordination..............................................................................42

ARTICLE X: PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
            AND DISPUTED CLAIMS AND INTERESTS.......................................43

Section 10.01  Resolution of Disputed Claims ...................................................43
Section 10.02  Disallowance of Claims ............................................................44
Section 10.03  Amendments .............................................................................44
Section 10.04  No Post-Petition Interest ...........................................................44

ARTICLE XI: RETENTION OF JURISDICTION.................................................45

Section 11.01  Retention of Jurisdiction ...........................................................45
Section 11.02  Reserved Rights to Seek Bankruptcy Court Approval ...............46
Section 11.03  Failure of the Bankruptcy Court to Exercise Jurisdiction..........47

ARTICLE XII: SETTLEMENT, INJUNCTIONS AND EXCULPATIONS ..............47

Section 12.01  Compromise and Settlement of Claims, Equity Interests, and
               Controversies .........................................................................47
Section 12.02  Exculpation ..............................................................................47
Section 12.03  Non-Discharge of Debtors; Property Dealt With by the Plan....48
Section 12.04  Injunction .................................................................................48
Section 12.05  Setoffs ......................................................................................49
Section 12.06  Term of Injunctions or Stays.....................................................50
Section 12.07  Preservation of SEC Enforcement Rights...................................50

ARTICLE XIII: CONDITIONS PRECEDENT TO CONFIRMATION AND
EFFECTIVENESS OF THE PLAN ......................................................................51

Section 13.01  Conditions to Confirmation and Effectiveness ..........................51
Section 13.02  Notice of Occurrence of the Effective Date................................52
Section 13.03  Waiver of Conditions.................................................................52
Section 13.04  Consequences of Non-Occurrence of Effective Date .................52

ARTICLE XIV: MISCELLANEOUS PROVISIONS...............................................52

Section 14.01  Administrative Claims ...............................................................52
Section 14.02  Modifications and Amendments .................................................52
Section 14.03  Severability of Plan Provisions .................................................53
Section 14.04  Successors and Assigns and Binding Effect ...............................53
Section 14.05  Revocation, Withdrawal or Non-Consummation .......................53
Section 14.06  Plan Supplement .......................................................................54
Section 14.07  Continued Confidentiality Obligations.......................................54
Section 14.08  Notices .....................................................................................54
Section 14.09  Computation of Time .................................................................55
Section 14.10  Governing Law .........................................................................55
Section 14.11  Exhibits ....................................................................................55
Section 14.12  Conflicts...................................................................................55
Section 14.13  Exemption ................................................................................56
Section 14.14  Substitution of the Liquidating Trust for the Debtors................56

## INTRODUCTION

1 Global Capital LLC and 1 West Capital LLC, debtors and debtors-in-possession (each, a "**Debtor**" and collectively, the "**Debtors**"), and the Official Committee of Unsecured Creditors appointed pursuant to Section 1102(a) of the Bankruptcy Code as set forth in that certain *Notice of Appointment of Committee of Unsecured Creditors* filed by the U.S. Trustee on September 7, 2018 [ECF No. 138] (the "**Creditors' Committee**"; together with the Debtors, the "**Plan Proponents**") hereby propose the following First Amended Joint Plan of Liquidation pursuant to Section 1121 of the Bankruptcy Code for the resolution of the outstanding Claims (defined below) against and Equity Interests (defined below) in the Debtors.

Reference is made to the Disclosure Statement (defined below) for a discussion of (i) the Debtors' history, businesses and properties, (ii) a summary of this Plan (defined below), and (iii) certain related matters, including risk factors relating to the consummation of this Plan and Distributions (defined below) to be made under this Plan.

Capitalized terms used herein without definition shall have the meanings set forth in Article I hereof.  The Plan Proponents are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND THE PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I:
## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of the Plan, except as expressly provided herein or unless the context otherwise requires, (a) all capitalized terms used in the Plan and not otherwise defined in the Plan shall have the meanings ascribed to them in the Disclosure Statement (or any exhibit hereto or thereto), (b) any capitalized term used in the Plan that is not defined in the Plan or Disclosure Statement (or any exhibit hereto or thereto), but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (c) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender, (d) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (e) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (f) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and

exhibits of or to the Plan, (g) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Plan, (h) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of the Plan, and (i) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.1    "**Administrative Claim**" means a Claim for costs and expenses of administration of these Chapter 11 Cases under Sections 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to:  (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for leased equipment and premises) and Claims by Governmental Units for taxes that accrued after the Petition Date, but excluding Claims in respect of taxes that accrued on or before the Petition Date unless such taxes are entitled to be treated as administrative claims under the Bankruptcy Code; (b) Professional Fee Claims and any other compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 328, 330, 331, 363 or 503(b) of the Bankruptcy Code to the extent incurred on or prior to the Effective Date; (c) all fees and charges assessed against the Estates under Section 1930, chapter 123 of Title 28 of the United States Code; and (d) any Claims that have been designated "Administrative Claims" by order of this Court.

1.2    "**Administrative Claims Bar Date**" means the date by which Holders of Administrative Claims shall file with the Claims Agent and serve on the Debtors requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code and the Bankruptcy Rules, which date shall be the forty-fifth (45th) day following the Effective Date or such earlier date as fixed by the Court; *provided* that no filing is required for the following:  (i) Administrative Claims Allowed by an order of the Bankruptcy Court on or before the Effective Date, or (ii) Administrative Claims that are not Disputed and arose in the ordinary course of business and were paid or are to be paid in accordance with the terms and conditions of the particular transactions giving rise to such Administrative Claims.  The foregoing shall not apply to Professional Fee Claims, which shall be addressed as set forth in Section 3.02(b).

1.3    "**Affiliate**" means "affiliate" as defined in Section 101(2) of the Bankruptcy Code.

1.4    "**Allowed**" means with respect to any Claim (including any Administrative Claim) or portion thereof (to the extent such Claim is not Disputed or Disallowed) or any Equity Interest (a) any Claim, proof of which (i) was Filed with the Bankruptcy Court or its duly appointed claims agent, (ii) was deemed filed pursuant to Section 1111(a) of the Bankruptcy Code, or (iii) by a Final Order, was not required to be Filed; (b) any Claim or Equity Interest that has been, or hereafter is, listed in the Schedules as liquidated in an amount other than zero or unknown and which is not Disputed or contingent (or as to which the applicable Proof of Claim has been withdrawn or Disallowed); (c) any Claim or Equity Interest which has been allowed (whether in whole or in part) by a Final Order (but only to the extent so allowed), and, in the case of (a) and (b) above, as to which no objection to the allowance thereof, or action to subordinate, avoid, classify, dispute, disallow, reclassify, expunge, estimate or otherwise limit recovery with respect thereto, has been Filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the

Bankruptcy Rules or a Final Order; (d) (i) any Investor Principal Claim in the amount set forth on the Ballot received by the Holder of such Claim, but only if such Holder is not a Disputing Claimant or Prepetition Party, and (ii) any other Claim or Equity Interest allowed under or pursuant to the terms of the Plan; (e) any Claim arising from the recovery of property under Sections 550 or 553 of the Bankruptcy Code which has been allowed in accordance with Section 503(h) of the Bankruptcy Code; (f) a Claim in respect of an Executory Contract or Unexpired Lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been Filed or has otherwise been deemed Filed under applicable law; or (g) which is a Professional Fee Claim for which a fee award amount has been approved by Final Order of the Bankruptcy Court; provided, however, that Claims or Equity Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

1.5    "**Assets**" means any and all rights, title, and interests of the Debtors in property of whatever type or nature.

1.6    "**Available Trust Cash**" means the net Cash in the Liquidating Trust available for Distribution following payment of (i) all U.S. Trustee Fee Claims, (ii) Allowed Administrative Claims, (iii) Allowed Priority Claims, (iv) Allowed Secured Claims (if applicable), (v) the Disputed Claims Reserve, (vi) reserves established in accordance with Sections 1.40 and 6.04 of the Plan, and (vii) costs of administration of the Liquidating Trust.

1.7    "**Avoidance Actions**" means any and all Causes of Action and the proceeds thereof (other than those that are released or dismissed as part of and pursuant to the Plan) which a trustee, debtor-in-possession, the estate or other appropriate party in interest may assert under Sections 502(d), 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under related state or federal statutes and common law, including fraudulent transfer laws (whether or not litigation is commenced to prosecute such Causes of Action) and including a Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity(as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted.

1.8    "**Ballot**" means each of the ballot forms distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

1.9    "**Bankruptcy Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all subsequent amendments and modifications thereto that are made applicable to these Chapter 11 Cases.

1.10    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Florida or such other court as may have jurisdiction over these Chapter 11 Cases or any aspect thereof.

1.11    "**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under Section 2075 of Title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of Title 28 of the United States Code, (iii) the applicable Local

Rules of Bankruptcy Practice and Procedure for the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to these Chapter 11 Cases or proceedings therein, as the case may be.

    **1.12**    "**Bar Date**" means (a) December 4, 2018 as to any Claim that is not an Administrative Claim, an Investor Claim or a Claim asserted by a Governmental Unit, (b) January 23, 2019 as to any Claim asserted by a Governmental Unit, (c) March 7, 2019 as to any Investor Claim, and (d) for any Administrative Claim, the applicable Administrative Claims Bar Date; provided that Professional Fee Claims shall be Filed in accordance with Section 14.02 of the Plan.

    **1.13**    "**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Fort Lauderdale, Florida.

    **1.14**    "**Cash or $**" means legal tender of the United States of America including bank deposits, checks and cash equivalents.

    **1.15**    "**Causes of Action**" means any and all actions, causes of action, claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise.

    **1.16**    "**Chapter 11 Cases**" means the chapter 11 cases commenced by the Debtors and jointly administered under case number 18-19121-RBR in the Bankruptcy Court.

    **1.17**    "**Claim**" or "**Claims**" means a claim or claims against any of the Debtors, as such term is defined in Section 101(5) of the Bankruptcy Code.

    **1.18**    "**Claims Agent**" means the Debtors' court-appointed claims agent, Epiq Corporate Restructuring, LLC.

    **1.19**    "**Claims Objection Deadline**" means the date that is ninety (90) days after the Effective Date or such later date as may be extended upon request by the Liquidating Trustee and order of the Bankruptcy Court after notice and a hearing to the Entities on the master service list maintained in accordance with Local Rule 2002-1(H).

    **1.20**    "**Claims Register**" means the official register of Claims maintained by the Claims Agent.

    **1.21**    "**Class**" means a category of Holders of Claims or Equity Interests pursuant to Section 1122(a) of the Bankruptcy Code, as described in Articles II and III of the Plan.

**1.22** "**Compensation Procedures Order**" means the *Order Establishing Procedures for Monthly, Interim and Final Compensation and Reimbursement of Expenses of Professionals Retained in these Chapter 11 Cases and Reimbursement of Expenses of Committee Members Appointed in these Chapter 11 Cases* [ECF No. 158] in the Chapter 11 Cases.

**1.23** "**Confirmation**" means the entry of the Confirmation Order on the docket of these Chapter 11 Cases, subject to all conditions specified having been (a) satisfied, or (b) waived.

**1.24** "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.25** "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.26** "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to, among others, Section 1129 of the Bankruptcy Code.

**1.27** "**Creditor**" means any Holder of a Claim against any Debtor or its Estate.

**1.28** "**Creditors' Committee**" has the meaning ascribed to it in the Introduction to this Plan.

**1.29** "**Cure**" means the Distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease, pursuant to Bankruptcy Code Section 365(b), in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

**1.30** "**D&O Policy**" means all liability insurance policies covering directors, managers, members, trustees, and officers maintained or held by any Debtor at any time on or prior to the Effective Date.

**1.31** "**Debtors**" has the meaning ascribed to it in the Introduction.

**1.32** "**Disallowed**" means, with respect to any Claim, Equity Interest or portion thereof, any Claim against or Equity Interest in the Debtors which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the applicable Debtor, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been Filed or deemed Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law in a liquidated non-contingent amount; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim; (vi) is evidenced by a Proof of Claim which has been Filed, or

which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such Proof of Claim was not properly Filed; (vii) is unenforceable to the extent provided in Section 502(b) of the Bankruptcy Code; (viii) where the holder of a Claim or Equity Interest is a Person or Entity from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such property, for which such Person, Entity or transferee is liable under Section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; or (ix) is for reimbursement or contribution that is contingent as of the time of allowance or disallowance of such Claim or Equity Interest.  In each case, a Disallowed Claim or Equity Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

1.33    "**Disclosure Statement**" means the disclosure statement for the Plan approved by the Bankruptcy Court by entry of the Disclosure Statement Order, as amended, supplemented or modified from time to time, describing the Plan, which is prepared and distributed in accordance with, among others, Sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

1.34    "**Disclosure Statement Order**" means the Order [ECF No. 818] entered by the Bankruptcy Court approving the Disclosure Statement as containing adequate information within the meaning of Section 1125 of the Bankruptcy Code and approving solicitation procedures in connection with Confirmation of the Plan.

1.35    "**Disputed**" means with respect to any Claim or any portion thereof (a) as to which the Debtors or the Liquidating Trustee, as applicable, or any other party in interest, has Filed an objection or sought to subordinate by the Claims Objection Deadline, and such objection has not been withdrawn or overruled by a Final Order; (b) that is listed on the Debtors' Schedules as disputed, contingent or unliquidated and as to which no Proof of Claim has been Filed in a non-contingent and liquidated amount; (c) asserted by a Disputing Claimant, a Prepetition Party or an Insider; or (d) that is a tort claim.

1.36    "**Disputed Claim Amount**" means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount or any portion thereof set forth in the Proof of Claim relating to the Disputed Claim, (ii) an amount agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Disputed Claim, or (iii) if a request for estimation is Filed by any party, then the amount at which such Disputed Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, then (i) an amount agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Disputed Claim, (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim, or (iii) in the event the Holder of such Disputed Claim does not timely seek estimation, zero; (c) if the Disputed Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was Filed, or deemed to have been Filed, as applicable, and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, then zero; or (d) notwithstanding anything herein to the contrary, if the Disputed Claim is (i) asserted by an Insider or a Prepetition Party, or (ii) the subject of a request to subordinate the Disputed Claim or to disallow such Claim under Section

502(e) of the Bankruptcy Code, and such Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, then zero.

     **1.37** "**Disputed Claims Reserve**" means a Cash reserve sufficient to pay a Pro Rata Share to all Disputed Claim Amounts, which shall be maintained by the Liquidating Trustee and which may be funded with a Cash portion of the Liquidating Trust Assets for distribution to Holders of Disputed Claims to the extent such Disputed Claims become Allowed Claims. The initial amount of the Disputed Claims Reserve shall be agreed to on the Effective Date by the Plan Proponents. Thereafter, the Disputed Claims Reserve shall be determined by the Liquidating Trustee in consultation with the Liquidating Trust Oversight Committee, <u>provided</u> that the Liquidating Trustee may request the Bankruptcy Court to determine the appropriate amount of the Disputed Claims Reserve.

     **1.38** "**Disputing Claimant**" means a Holder of an Investor Principal Claim that has disputed the amount set forth on such Holder's Ballot by checking the "dispute" box in accordance with the procedures set forth in the Disclosure Statement Order and applicable Ballot until such dispute is resolved by a compromise and settlement or Final Order.

     **1.39** "**Dissolving Debtors**" means all Debtors other than the Surviving Debtor.

     **1.40** "**Distribution**" means any distribution pursuant to the Plan to Holders of Allowed Claims or Liquidating Trust Beneficiaries.

     **1.41** "**Distribution Date**" means the date on which a Distribution is made pursuant to this Plan.

     **1.42** "**Distribution Record Date**" means the date established for determining the Holders of Claims entitled to Distributions pursuant to the Plan, which shall be the Confirmation Date.

     **1.43** "**District Court**" means the United States District Court for the Southern District of Florida.

     **1.44** "**Effective Date**" means the first Business Day following the date on which all conditions to consummation set forth in Section 13.01 of the Plan have been satisfied or, if capable of being duly and expressly waived, as provided in Section 13.03 of the Plan, any conditions to the occurrence of consummation set forth in the Plan has been satisfied or waived.

     **1.45** "**Entity**" shall have the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

     **1.46** "**Equity Interests**" means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person or Entity in any of the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in any of the Debtors, membership interests, partnership interests in the Debtors'

stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating any of the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

**1.47** "**Estate(s)**" means the estates of each of the Debtors created by Section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases on the Petition Date.

**1.48** "**Exculpated Parties**" means, collectively, (a) the Debtors; (b) the managers, directors, officers and employees of the Debtors serving after the Petition Date; (c) the Debtors' Professionals (other than the Exculpated GT Parties); (d) the Creditors' Committee and its members (solely in their capacity as members of the Creditors' Committee and not in their individual capacities); (e) the Creditors' Committee's Professionals; and (f) in respect of (b)-(e) each of their respective Related Parties, *provided* that the Persons or Entities listed in this clause (f) shall not include any Prepetition Party.

**1.49** "**Exculpated GT Parties**" means, collectively, Greenberg Traurig, LLP and its Related Parties.

**1.50** "**Executory Contract**" means a contract to which any of the Debtors is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.51** "**Federal Judgment Rate**" means the interest rate set forth in 28 U.S.C. § 1961.

**1.52** "**File, Filed or Filing**" means, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

**1.53** "**Final Order**" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, re-argument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending or (ii) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

**1.54** "**General Unsecured Claim**" means a Claim arising prior to the Petition Date against the Debtors, including the SEC Claim and any Claim arising from the rejection of an Executory Contract or Unexpired Lease, that is not (i) a Secured Claim; (ii) a Priority Tax Claim; (iii) an Other Priority Claim; (iv) an Investor Unsecured Claim; (v) a Subordinate Claim; (vi) an Intercompany Claim, or (vii) for avoidance of doubt, an Administrative Claim.

**1.55** "**Governmental Unit**" means all governmental units, which shall include all entities defined in Section 101 (27) of the Bankruptcy Code, including such entities that hold a Claim arising from prepetition tax years or periods or prepetition transactions to which a Debtor was a party.

**1.56** "**Holder**" or "**Holders**" means the legal or beneficial holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

**1.57** "**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.58** "**Impaired Class**" means a Class of Claims or Equity Interests that are Impaired.

**1.59** "**Indemnification Obligations**" means all obligations of the Debtors as provided in the Debtors' certificates of formation or incorporation, bylaws or other organization documents, board resolutions, employment contracts, applicable law or other agreements as of the Petition Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of, members, managers, directors, officers, employees, attorneys, other professionals and agents of the Debtors and their Affiliates who were in place as of the Petition Date, against any Claims or Causes of Action whether direct or derivative, liquidated or unliquidated, foreseen or unforeseen, asserted or unasserted, without prejudice to any parties rights to object to any such claim for Indemnification Obligations.

**1.60** "**Independent Manager Order**" means the *Order (I) Ratifying the Debtors' Appointment of James S. Cassel as Manager Nunc Pro Tunc to July 27, 2018, and (II) Approving the Appointment Agreement Related Thereto* [ECF No. 156].

**1.61** "**Initial Distribution Date**" means the date on which the Liquidating Trustee makes initial Distributions to Holders of Allowed Claims pursuant to the Plan, which date shall be as soon as reasonably practicable following the date that is thirty (30) days from Effective Date.

**1.62** "**Insider**" means "insider" as defined in Section 101(31) of the Bankruptcy Code.

**1.63** "**Insider Claims**" means any Claim held by an Insider against a Debtor.

**1.64** "**Intercompany Claim**" means any Claim held by a Debtor against another Debtor.

**1.65** "**Investor**" means a Person or Entity that entered into a Memorandum of Indebtedness with any Debtor.

**1.66** "**Investor Other Claim**" means the portion of an Investor Unsecured Claim in excess of the Investor Principal Claim applicable to such claim, including interest, fees, damages and other costs included as part of an Investor Unsecured Claim.

**1.67** "**Investor Principal Claim**" means the original principal amount, without regard to any rollovers, of an Investor Unsecured Claim minus the aggregate amount of all payments received by such claimant prepetition from the Debtors on account of such claim.

**1.68** "**Investor Unsecured Claim**" means any Claim of an Investor arising under a Memorandum of Indebtedness with any Debtor, including any such Claim that is contingent, Disputed or unliquidated.

**1.69** "**IRA**" means an Individual Retirement Account.

**1.70** "**Lien**" means, with respect to any asset or property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages or hypothecation to secure payment of a debt or performance of an obligation, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of Unsecured Claims; provided, however, that a lien that has or may be avoided pursuant to any Avoidance Action shall not constitute a lien hereunder.

**1.71** "**Liquidating Trust**" means the trust to be established on the Effective Date in accordance with this Plan.

**1.72** "**Liquidating Trust Actions**" means, collectively, all Avoidance Actions and all Causes of Action held by the Debtors or the Estates.

**1.73** "**Liquidating Trust Agreement**" means the agreement governing, among other things, the retention and duties of the Liquidating Trustee as described therein, which shall be in form and substance materially consistent with the Plan and otherwise agreeable to the Plan Proponents, and included as an exhibit to the Disclosure Statement.

**1.74** "**Liquidating Trust Assets**" means, in the aggregate, all of the assets of the Debtors and their Estates existing as of the Effective Date (after giving effect to all Distributions required to be made on or prior to the Effective Date, if any), the Liquidating Trust Actions including Receiver Contributed Recoveries, SEC Contributed Recoveries, and any other assets transferred to the Liquidating Trust as Liquidating Trust Assets; provided, however, the Liquidating Trust Assets shall not include any Claims or Causes of Action expressly released or exculpated pursuant to Article XII hereof or Third-Party Recoveries. Notwithstanding anything in the Plan to the contrary, the Debtors' Professionals' documents shall not be transferred to the Liquidating Trust and shall not be Liquidating Trust Assets, but shall be made available to the Liquidating Trustee or its counsel upon request.

**1.75** "**Liquidating Trust Beneficiary**" means a beneficial Holder of a Liquidating Trust Interest. Liquidating Trust Interests are to be distributed to Holders of Allowed Class 4A Claims and Allowed Class 4B Claims.

**1.76** "**Liquidating Trust Indemnified Parties**" means the Liquidating Trust, the Liquidating Trust Oversight Committee, and their respective Related Parties, each solely in their respective capacity as such.

1.77    "**Liquidating Trust Interest**" means a beneficial interest in the Liquidating Trust, which interest shall be uncertificated and shall not be assignable or transferable except (i) upon death of a Holder of a Liquidating Trust Interest or by operation of law and (ii) in accordance with the provisions of the Liquidating Trust Agreement.

1.78    "**Liquidating Trust Oversight Committee**" has the meaning provided in Section 6.02 of the Plan.

1.79    "**Liquidating Trustee**" means initially James S. Cassel and any successor thereto selected in accordance with the Liquidating Trust Agreement, to act as liquidating trustee as provided in the Plan and the Liquidating Trust Agreement solely in its capacity as such.

1.80    "**Main Case**" shall have the meaning set forth in Section 6.14 of the Plan.

1.81    "**Memorandum of Indebtedness**" means a contract or other instrument generally but not exclusively styled as a "Memorandum of Indebtedness" and any of its addendums, amendments, modifications, supplements and other related documents pursuant to which an investment in a Debtor was made, including Master Participation Agreements.

1.82    "**Non-Compensatory Penalty Claim**" means any Claim, secured or unsecured, for any fine, penalty or forfeiture, or for multiple, exemplary or punitive damages, to the extent such fine, penalty, forfeiture or damages are not compensatory for actual pecuniary loss suffered by the Holder of such Claim, *provided* that, for avoidance of doubt, the SEC Claim is not a Non-Compensatory Penalty Claim.

1.83    "**Other Priority Claims**" means any and all Allowed Claims accorded priority in right of payment under Section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

1.84    "**Other Secured Claims**" means any Secured Claim, other than a Secured Tax Claim.

1.85    "**PBYA**" means the law firm of Perlman, Bajandas, Yevoli & Albright, P.L., special litigation counsel to the Debtors.

1.86    "**Person**" shall have the meaning provided in Section 101(41) of the Bankruptcy Code.

1.87    "**Petition Date**" means July 27, 2018, the date on which the Debtors Filed their petitions for relief commencing these Chapter 11 Cases.

1.88    "**Plan**" means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with its terms and the Bankruptcy Code or the Bankruptcy Rules.

1.89    "**Plan Proponents**" has the meaning ascribed to such term in the Introduction.

**1.90** "**Plan Supplement**" means the supplement to the Plan to be Filed as provided for herein.

**1.91** "**Prepetition Party**" means any (i) prepetition Insider of any of the Debtors, (ii) non-debtor Affiliate of a Debtor or Insider of any such non-debtor Affiliate, (iii) employee of a Debtor terminated prepetition, and (iv) Entity (including but limited to any "broker," agent, salesperson, consultant, affiliated entity, professional, professional firm, attorney, law firm, accountant, accounting firm, Dale Ledbetter, Jan D. Atlas, and Carl Ruderman) involved in any way in the entry into any Memorandum of Indebtedness by a Debtor or Investor before the Petition Date and an Insider or employee of such Entity. For clarity, the Prepetition Parties shall not include any Professional retained by the Debtors after the Petition Date.

**1.92** "**Priority Tax Claim**" means any and all Claims of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

**1.93** "**Plan Transaction**" means any transaction described in, approved by, contemplated by or necessary to effectuate the Plan.

**1.94** "**Privileged Documents**" means all documents and communications maintained by the Debtors and the Creditors' Committee subject to attorney-client, work product, or common interest privilege claims.

**1.95** "**Professional**" means any professional employed in these Chapter 11 Cases pursuant to Bankruptcy Code Sections 327, 328, 1103, 105(a), 363(c) or other order of the Bankruptcy Court.

**1.96** "**Professional Fee Claim**" means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

**1.97** "**Proof of Claim**" means a proof of a Claim Filed with the Bankruptcy Court or the Claims Agent in these Chapter 11 Cases.

**1.98** "**Pro Rata Share**" means with respect to any Distribution to a Class of Claims (including Liquidating Trust Beneficiaries on account of Class 4A Claims and Class 4B Claims) under the Plan, the ratio (expressed as a percentage) of the amount of an Allowed Claim in such Class to the aggregate amount of all Allowed Claims plus the Disputed Claim Amount of all Disputed Claims that are Disputed in the same Class; provided, that to the extent any Disputed Claims are not Allowed by the Bankruptcy Court in whole or in part, the Pro Rata Share of all Allowed Claims in such Class shall be adjusted to take into account the Disputed Claim Amount that are Disputed (or portion thereof) associated with the Disputed Claim that was not Allowed.

**1.99** "**Related Parties**" means, collectively, all of the respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, professional persons, representatives, and successors of the reference Person or Entity.

**1.100** "**Receiver**" means Jon A. Sale, in his capacity as receiver in the Receivership or any successor.

**1.101** "**Receiver Contributed Recoveries**" means any Cash or other property of the Receivership that the Receiver may, from time to time, contribute and transfer to the Liquidating Trust on account of any claims of the Debtors against any of the Receivership Entities, pursuant to an order of the District Court in the SEC Action.

**1.102** "**Receivership**" means the receivership in the SEC Action over the Receivership Entities.

**1.103** "**Receivership Entities**" means Bright Smile Financing, LLC, BRR Block Inc., Digi South, LLC, Ganador Enterprises, LLC, Media Pay, LLC, Pay Now Direct, LLC, the Ruderman Family Trust and the Bright Smile Trust.

**1.104** "**Schedules**" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to Section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

**1.105** "**SEC**" means the U.S. Securities and Exchange Commission.

**1.106** "**SEC Action**" means the civil action styled as *Securities and Exchange Commission v. Carl Ruderman, et al.*, 18-CV-61991 BB (S.D. Fla.), pending in the District Court.

**1.107** "**SEC Claim**" means the Claim of SEC in the amount of $285,599,532, plus prejudgment interest and civil penalties, in amounts to be determined.

**1.108** "**SEC Contributed Recoveries**" means Cash or other property recovered by the SEC in actions or threatened actions against Persons or Entities related in any way to the Debtors, the Receivership Entities, their respective predecessors, or their respective Affiliates, that the SEC elects and is authorized to contribute and transfer to the Liquidating Trust as Liquidating Trust Assets.

**1.109** "**Section 510(b) Claims**" means a claim against the Debtors arising from rescission of a purchase or sale of a security of the Debtors or an affiliate of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of such a claim, *provided* that, for avoidance of doubt, Section 510(b) Claims do not include Investor Unsecured Claims.

**1.110** "**Secured Claim**" means a Claim that is secured by a Lien that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which the Estate has an interest, or a Claim that is subject to setoff under Section 553 of the Bankruptcy Code; to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to Section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to Section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Liquidating Trust and the Holder of such Claim. If the amount of

any Claim exceeds the value of the Holder's interest in the Estate's interest in property or the amount subject to setoff, it shall be treated as a General Unsecured Claim.

**1.111** "**Secured Tax Claim**" means a Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Section 507(a)(8) of the Bankruptcy Code. For avoidance of doubt, Secured Tax Claim does not include any penalty except as provided under Section 507(a)(8)(G) of the Bankruptcy Code.

**1.112** "**Subordinated Claim**" means any Insider Claim, Non-Compensatory Penalty Claim, and any other Claim against any of the Debtors that is subordinated pursuant to applicable law (other than Section 510(b) of the Bankruptcy Code), including Section 510(a) or 510(c) of the Bankruptcy Code.

**1.113** "**Substantial Contribution Claims**" means a Claim under Sections 503(b)(3) or 503(b)(4) of the Bankruptcy Code.

**1.114** "**Surviving Debtor**" means a Debtor for so long as the Liquidating Trustee determines such entity must be maintained.

**1.115** "**Third Party**" means a Person or Entity other than a Debtor or the Liquidating Trustee.

**1.116** "**Third-Party Recoveries**" means Cash or other property recovered by a Third Party in actions or threatened actions against Persons or Entities related in any way to the Debtors or their investors that such Third Party elects and is authorized, or is directed by a court of competent jurisdiction, to deposit with the Liquidating Trust for disbursement by the Liquidating Trustee.

**1.117** "**Unexpired Lease**" means a lease of non-residential real property to which any of the Debtors is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.118** "**Unimpaired**" means Claims that are unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.119** "**Unimpaired Class**" means a Class containing Unimpaired Claims.

**1.120** "**Unsecured Claim**" means a Claim arising prior to the Petition Date against any of the Debtors that is neither a Secured Claim nor entitled to priority under Section 507 of the Bankruptcy Code or any order of the Bankruptcy Court.

**1.121** "**U.S. Trustee**" means the Office of the United States Trustee for the Southern District of Florida.

**1.122** "**U.S. Trustee Fee Claims**" means fees arising under 28 U.S.C. § 1930(a)(6) of Title 28 of the United States Code with respect to these Chapter 11 Cases.

**1.123** "**Voluntary Petitions**" means the voluntary petitions for relief under chapter 11 of the Bankruptcy Code Filed by 1 Global Capital LLC and 1 West Capital LLC, which were executed on the Petition Date, respectively, by Steven A. Schwartz, as the authorized representative of 1 Global Capital LLC, and Darice Lang, as the authorized representative for 1 West Capital LLC.

**1.124** "**Voting Deadline**" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted, as set forth by the Disclosure Statement Order.

**1.125** "**Website**" means the website maintained by the Claims Agent and available at https://dm.epiq11.com/OGC.

## ARTICLE II:
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### Section 2.01    Classification

Claims against the Debtors, other than Administrative Claims, Priority Tax Claims and U.S. Trustee Fee Claims are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 4A | Investor Principal Claims | Impaired | Yes |
| 4B | General Unsecured Claims | Impaired | Yes |
| 5 | Investor Other Claims | Impaired | No (deemed to reject) |
| 6 | Intercompany Claims | Impaired | No (deemed to reject) |
| 7 | Subordinated Claims | Impaired | No (deemed to reject) |
| 8 | Section 510(b) Claims | Impaired | No (deemed to reject) |
| 9 | Equity Interests in the Debtors | Impaired | No (deemed to reject) |

### Section 2.02    Consolidation of Debtors for Purposes of Voting, Confirmation and Distribution

The Plan provides for consolidation of the Estates for purposes of voting, Confirmation, and making Distributions to the Holders of Allowed Claims under the Plan.  Voting on the Plan shall be counted on a consolidated basis.  On the Effective Date, and solely for purposes of voting, Confirmation and making Distributions to the Holders of Allowed Claims under the Plan (a) all guarantees of any Debtor of the payment, performance or collection of another Debtor with respect to Claims against such Debtor shall be eliminated and cancelled; (b) any single obligation of multiple Debtors shall be treated as a single obligation in the consolidated Chapter 11 Cases; and (c) all guarantees or other obligations by a Debtor with respect to Claims against one or more of the other Debtors shall be treated as a single obligation in the consolidated cases.  On the Effective

Date, and in accordance with the terms of this Plan and the consolidation of the assets and liabilities of the Debtors, all Unsecured Claims based upon guaranties of collection, payment or performance made by a Debtor as to the obligation of another Debtor shall be released and of no further force and effect. Except as set forth in this Section, such consolidation shall not affect (a) the legal and corporate structure of the Debtors, or (b) any obligations under any leases or contracts assumed through the Plan or otherwise after the Petition Date.

Notwithstanding the consolidation of the Estates for the purposes set forth herein, each Debtor (and after the Effective Date the Liquidating Trustee) shall pay all U.S. Trustee Fee Claims on all disbursements, including any Distributions or disbursements made as a result of this Plan, until the entry of a final decree in these Chapter 11 Cases, dismissal of these Chapter 11 Cases, or conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III:
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### Section 3.01   General

Pursuant to Section 1122 of the Bankruptcy Code, a Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies under the description of the Class and is classified in a different class to the extent that the Claim or Equity Interest qualifies under the description of that different Class. A Claim or Equity Interest is placed in a particular Class for the purposes of receiving Distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

### Section 3.02   Unclassified Claims

(a)    *Administrative Claims*

Except for Professional Fee Claims, and except to the extent that any Holder of an Allowed Administrative Claim has received payment prior to the Effective Date, agrees with the Liquidating Trustee to different treatment or as otherwise provided for in the Plan, each Holder of an Allowed Administrative Claim shall receive payment in full, in Cash, on the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Administrative Claim becomes an Allowed Claim, or (iii) the date on which such payment is due in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim.

(b)    *Professional Fee Claims*

Notwithstanding any other provision of this Plan concerning Administrative Claims, any Professional seeking an award by the Bankruptcy Court of an Allowed Professional Fee Claim incurred from the Petition Date through and including the Effective Date (i) shall, no later than twenty-one (21) days before the Confirmation Hearing, File a final application for allowance of compensation for services rendered and reimbursement of expenses actually incurred plus an estimate of additional compensation and expenses to be incurred through and including the Confirmation Hearing and, no later than the date of the Confirmation Hearing, shall file a

-16-

supplement support such estimates; and (ii) shall receive, as soon as reasonably practicable after such claim is Allowed, on account of such Professional Fee Claim, Cash in an amount equal to the unpaid amount of such Allowed Professional Fee Claim in accordance with the Order relating to or allowing any such Professional Fee Claim.

(c)    *Priority Tax Claims*

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date or unless otherwise agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim:  (a) Cash equal to the amount of such Allowed Priority Tax Claim; or (b) as may be agreed between the Holder of such Allowed Priority Tax Claim and the Debtors or the Liquidating Trustee, as applicable, except to the extent that such Allowed Priority Claim is already liquidated pursuant to a Final Order of the Bankruptcy Court.

(d)    *U.S. Trustee Fee Claims*

The Debtors or the Liquidating Trustee, as applicable, shall pay all U.S. Trustee Fee Claims for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

(e)    *Substantial Contribution Claims*

No Substantial Contribution Claim shall be Allowed, and any holder of a Substantial Contribution Claim shall be entitled to no distribution under the Plan on account of any Substantial Contribution Claim.

**Section 3.03    Voting Classes of Claims against the Debtors**

(a)    *Investor Principal Claims (collectively, "**Class 4A Claims**").*

Classification: Class 4A consists of all Investor Principal Claims against the Debtors.

Treatment:  Each Holder of an Allowed Class 4A Claim shall receive issuance of its Pro Rata Share of Liquidating Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4A Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4A Claim and the Debtors or Liquidating Trustee.

As set forth more fully in Section 8.03 of the Plan, on a periodic basis, Distributions of Cash on account of Liquidating Trust Interests shall be made by the Liquidating Trustee.  The first such Cash Distribution to Holders of Liquidating Trust Interests shall occur on the Initial Distribution Date.  On any subsequent Distribution Date, each Holder of a Liquidating Trust Interest shall receive a Pro Rata Share of Available Trust Cash.  For avoidance of doubt, no Holder of a Class 4A Claim that is a Disputing Claimant shall receive a Cash Distribution.

Unless a Holder of a Class 4A Claim elects on its Ballot to be a Disputing Claimant, such Holder shall be deemed to compromise and settle its Investor Principal Claim as set forth in the

Ballot, which shall be such Holder's Allowed Investor Principal Claim.  If a Holder of a Class 4A Claim (i) elects to be a Disputing Claimant and (ii) has not filed a Proof of Claim, then, notwithstanding the Bar Date, such Holder may, no later than fourteen (14) days from the Voting Deadline, file a Proof of Claim.  If such Holder fails to file a timely Proof of Claim, then, notwithstanding its election, such Holder's Investor Principal Claim shall be Allowed as set forth in its Ballot for all purposes under the Plan.

The treatment of the Class 4A Claims under the Plan is not intended to and will not reduce, impair, satisfy, limit, or otherwise affect any rights (for avoidance of doubt, including any Cause of Action) that any Investor may have against any Person or Entity other than the Debtors.

Voting:  Class 4A Claims are Impaired under the Plan.  Holders of Class 4A Claims are entitled to vote to accept or reject the Plan.

(b)      *General Unsecured Claims (collectively, "**Class 4B Claims**").*

Classification: Class 4B consists of all General Unsecured Claims against the Debtors.

Treatment: Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Class 4B Claim shall receive a Pro Rata Share of Liquidating Trust Interests on or as soon as reasonably practicable following the later of: (i) the Effective Date, (ii) the date upon which such Allowed Class 4B Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Class 4B Claim and the Debtors or Liquidating Trustee.

As set forth more fully in Section 8.03 of the Plan, on a periodic basis, Distributions of Cash on account of Liquidating Trust Interests shall be made by the Liquidating Trustee.  The first such Cash Distribution to Holders of Liquidating Trust Interests shall occur on the Initial Distribution Date.  On any subsequent Distribution Date, each Holder of a Liquidating Trust Interest shall receive a Pro Rata Share of Available Trust Cash.

Voting:  Class 4B Claims are Impaired under the Plan.  Holders of Class 4B Claims are entitled to vote to accept or reject the Plan.

## Section 3.04    Non-Voting Classes of Claims against and Equity Interests in the Debtors

(a)      *Secured Tax Claims (collectively, "**Class 1 Claims**")*

Classification:  Class 1 Claims consist of all Secured Tax Claims against the Debtors.

Treatment:  Each Holder of an Allowed Class 1 Claim shall receive, on account of such Claim, Cash in the amount of such Allowed Secured Tax Claim without interest or premium on or as soon as reasonably practicable following the later of: (i) the Effective Date if due on or before that date, (ii) the date upon which such Secured Tax Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Secured Tax Claim and the Debtors or the Liquidating Trustee.

Voting:  Class 1 Claims are Unimpaired by the Plan.  Holders of Allowed Class 1 Claims

are not entitled to vote to accept or reject the Plan.

(b)     *Other Secured Claims (collectively, "**Class 2 Claims**")*

Classification:  Class 2 Claims consist of all Other Secured Claims against the Debtors.

Treatment:  Each Holder of an Allowed Class 2 Claim shall receive, on account of such Claim, at the election of the Debtors or the Liquidating Trustee, as the case may be, (i) return of the collateral securing the Other Secured Claim in full satisfaction of such claim, or (ii) Cash in the amount of such Allowed Other Secured Claim without interest or premium on or as soon as reasonably practicable following the later of: (a) the Effective Date if due on or before that date, (b) if such Other Secured Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Secured Claim becomes an Allowed Claim, or (c) such other date as may be agreed upon between the Holder of such Other Secured Claim and the Debtors or the Liquidating Trustee. Although the treatment of each Allowed Class 2 Claim is an obligation of the Liquidating Trust to the extent not satisfied by the Debtors, no Holder of an Allowed Class 2 Claim shall receive issuance of a Liquidating Trust Interest or be a Liquidating Trust Beneficiary.

Voting:  Class 2 Claims are Unimpaired by the Plan.  Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

(c)     *Other Priority Claims (collectively, "**Class 3 Claims**")*

Classification:  Class 3 Claims consist of all Other Priority Claims against the Debtors.

Treatment:  Each Holder of an Allowed Class 3 Claim shall receive, on account of such Claim, Cash in the amount of such Allowed Other Priority Claim without interest or premium on or as soon as reasonably practicable following the later of: (i) the Effective Date if due on or before that date, (ii) if such Other Priority Claim is a Disputed Claim, within thirty (30) days of the date upon which such Other Priority Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Other Priority Claim and the Debtors or the Liquidating Trustee.

Voting:  Class 3 Claims are Unimpaired by the Plan.  Holders of Allowed Class 3 Claims are not entitled to vote to accept or reject the Plan.

(d)     *Investor Other Claims (collectively, "**Class 5 Claims**")*

Classification:  Class 5 Claims consist of all Investor Other Claims against the Debtors.

Treatment:  Holders of Class 5 Claims shall not receive a Distribution on account of such claims, subject to the right to modify the Plan as set forth in Section 14.02 of the Plan.

Voting:  Class 5 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Investor Other Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(e)      *Intercompany Claims (collectively, "**Class 6 Claims**")*

Classification:  Class 6 Claims consist of all Intercompany Claims against the Debtors.

Treatment:  Holders of Class 6 Claims shall not receive a Distribution under the Plan on account of such claims.

Voting:  Class 6 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Intercompany Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(f)      *Subordinated Claims (collectively, "**Class 7 Claims**")*

Classification:  Class 7 Claims consist of all Subordinated Claims against the Debtors.

Treatment:  Holders of Class 7 Claims shall not receive a Distribution under the Plan on account of such claims.

Voting:  Class 7 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Subordinated Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(g)      *Section 510(b) Claims (collectively, "**Class 8 Claims**")*

Classification:  Class 8 Claims consist of all Section 510(b) Claims against the Debtors.

Treatment:  Holders of Class 8 Claims shall not receive a Distribution under the Plan on account of such claims.

Voting:  Class 8 Claims are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Section 510(b) Claims are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(h)      *Equity Interests (collectively, "**Class 9 Equity Interests**")*

Classification:  Class 9 Equity Interests consist of all Equity Interests in the Debtors.

Treatment:  On the Effective Date, all Equity Interests in the Debtors will be cancelled, and holders of such Equity Interests shall receive no Distribution on account of such Equity Interests.

Voting:  Class 9 Equity Interests are Impaired by the Plan and are receiving no Distribution under the Plan.  Holders of Class 9 Equity Interests are deemed to reject the Plan and are, therefore, not entitled to vote to accept or reject the Plan.

(i)      *Reservation of Rights Regarding Claims*

Except as otherwise explicitly provided in Section 12.05, nothing herein shall affect the Debtors' or the Liquidating Trustee' rights and defenses, both legal and equitable, with respect to any Claims or Equity Interests, including all rights with respect to legal and equitable defenses to

alleged rights of setoff or recoupment.

## ARTICLE IV:
## ACCEPTANCE OR REJECTION OF THE PLAN

**Section 4.01    Impaired Classes of Claims Entitled to Vote**

Holders of Allowed Claims in each Impaired Class of Claims receiving a Distribution under the Plan are entitled to vote as a Class to accept or reject the Plan.  Accordingly, only the votes of Holders of Class 4A Claims and Class 4B Claims shall be solicited with respect to the Plan.

**Section 4.02    Acceptance by an Impaired Class**

In accordance with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

**Section 4.03    Presumed Acceptances by Unimpaired Classes**

Holders of Class 1 Claims, Class 2 Claims and Class 3 Claims are Unimpaired under the Plan.  Under Section 1126(f) of the Bankruptcy Code, Holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan, and the votes of Holders of such Unimpaired Claims shall not be solicited.

**Section 4.04    Presumed Rejection by Certain Classes**

Holders of Class 5 Claims, Class 6 Claims, Class 7 Claims, Class 8 Claims and Class 9 Claims are Impaired under the Plan and are receiving no Distribution on account of their Claims and Equity Interests.  Holders of such Claims or Equity Interests are conclusively presumed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

**Section 4.05    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

Because at least one Impaired Class is deemed to have rejected the Plan, the Plan Proponents request Confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code.  The Plan Proponents collectively reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Section 1129(b) of the Bankruptcy Code, if necessary.

**Section 4.06    Elimination of Vacant Classes**

Any Class of Claims or Equity Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted

from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

**ARTICLE V:**
**SETTLEMENTS AND COMPROMISES**

**Section 5.01    Compromise and Settlement of Investor Principal Claims**

Pursuant to Sections 1123(a)(5), 1123(b)(3) and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan shall implement the compromise and settlement of certain Investor Principal Claims as set forth in this Section 5.01 and elsewhere in the Plan, and the Plan shall further constitute a motion for approval of, and the Confirmation Order shall constitute Bankruptcy Court approval of, such compromise and settlement, and its implementation pursuant to the Plan. On the Effective Date, each Holder that is not a Prepetition Party or Disputing Claimant of an Investor Principal Claim shall be deemed to compromise and settle such Holder's Claim as set forth in such Holder's Ballot, and in full and final satisfaction, settlement and compromise of, and only of, such Investor Principal Claim, such Claim shall be an Allowed Investor Principal Claim as set forth in the Ballot.

**Section 5.02    Orders in Aid of Compromise and Settlement**

Pursuant to Sections 105(a) and 1123 of the Bankruptcy Code, Bankruptcy Rule 9019 and other applicable law, the Liquidating Trustee may request, and the Bankruptcy Court retains the authority for, the entry of a bar order or channeling injunction in connection with the compromise and settlement of any Cause of Action relating to the Debtors, their investors, the Surviving Debtors or the Liquidating Trust.

**ARTICLE VI:**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**Section 6.01    Liquidating Trust**

On or prior to the Effective Date, the Debtors, on their own behalf and on their Estates' behalf and on behalf of the Holders of Claims that are to receive post-Effective Date Distributions from the Liquidating Trust Assets, will execute the Liquidating Trust Agreement and will take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors will transfer to the Liquidating Trust all of their rights, title, and interests in all of the Liquidating Trust Assets free and clear of all Liens, Claims and encumbrances except as otherwise set forth in this Plan, and all such Liquidating Trust Assets shall be deemed to vest in the Liquidating Trust pursuant to Section 1141(b) of the Bankruptcy Code. The Liquidating Trust shall have such rights, powers, duties and obligations as set forth in Article IX of the Plan, other provisions of the Plan, the Liquidating Trust Agreement, and the Confirmation Order. The Liquidating Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with the liquidating purpose of the Liquidating Trust.

-22-

Notwithstanding anything to the contrary in the Plan, any disclosure or examination of any Privileged Documents shall be limited to the Liquidating Trustee and the attorneys that the Liquidating Trustee has retained on behalf of the Liquidating Trust for the purpose of pursuing Liquidating Trust Actions not released by the Debtors, or carrying out the purposes of the Liquidating Trust, those attorneys' administrative support personnel, and any consulting, non-testifying experts retained by the Liquidating Trustee on behalf of the Liquidating Trust for the purpose of assisting the Liquidating Trust in pursuing such Liquidating Trust Actions or carrying out the purposes of the Liquidating Trust.  The Liquidating Trustee may not disclose any of the Privileged Documents (or the contents of the Privileged Documents), or otherwise take any actions that may constitute a waiver of the attorney-client privilege, work product privilege, common interest privilege, or any other applicable privileges with respect to the Privileged Documents, without, to the extent required by applicable law, giving three (3) Business Days' notice to the applicable affected party and an opportunity for the affected party to object.  Nothing in the Plan shall constitute a waiver of any privilege claims over any of the documents, including the Privileged Documents that are produced to or received by the Liquidating Trust or Liquidating Trustee.  For the avoidance of doubt, the Liquidating Trust is a successor-in-interest to the Debtors, and thus, the transfer of the Privileged Documents as provided herein does not impair or waive any privilege.

**Section 6.02    Liquidating Trust Oversight Committee**

On the Effective Date, a four (4) member committee shall be established pursuant to this Plan to consult with the Liquidating Trustee in the implementation of the Plan (the "**Liquidating Trust Oversight Committee**").    The initial members of the Liquidating Trust Oversight Committee shall be Charles Carpenter, Donald Stec, Geoffrey Lipman, and Khosrow Sohraby.  The Liquidating Trust Oversight Committee shall have access to and the right to consult with the Trustee in connection with the implementation of the Plan and administration of the Trust on and after the Effective Date.  The Liquidating Trustee shall resolve any matter as to which the Liquidating Trust Oversight Committee is deadlocked, except any matter (i) relating to the Liquidating Trustee's resignation, incapacity or removal or (ii) as to which the Liquidating Trustee deems it necessary or appropriate to seek direction from the Bankruptcy Court.

Subject to and in accordance with the Liquidating Trust Agreement, the Liquidating Trust Oversight Committee may, upon majority vote, remove the Liquidating Trustee for cause, including incapacity or failure or refusal to perform his duties under the Plan and Liquidating Trust Agreement, upon notice and hearing before the Bankruptcy Court.  Upon the resignation, removal, or inability of the Liquidating Trustee to serve, then the Oversight Committee shall, by unanimous consent, appoint a successor Trustee, and such successor shall be subject to approval by the Bankruptcy Court after notice and a hearing.

Subject to and in accordance with the Liquidating Trust Agreement, the Liquidating Trust Oversight Committee may, upon majority vote, remove a member of the Liquidating Trust Oversight Committee, or the Liquidating Trustee may remove a member of the Liquidating Trust Oversight Committee for cause, in each case upon notice and a hearing before the Bankruptcy Court.  Vacancies on the Oversight Committee shall be filled by (i) the remaining members of the Oversight Committee, or (ii) if there are no members of the Oversight Committee, then the

vacancies shall be filled by the Liquidating Trustee, in each case subject to approval by the Bankruptcy Court after notice and a hearing.

### Section 6.03    Funding for the Plan

The Plan shall be funded from the Debtors' Cash on hand and other Liquidating Trust Assets.

### Section 6.04    Funding of Reserves

On or prior to the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall cause to be funded from Cash on hand the Disputed Claims Reserve.  After the Effective Date, the Liquidating Trustee may fund other reserves, including additional amounts in the Disputed Claims Reserve, as they or he deems necessary or appropriate.

### Section 6.05    Corporate Action

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Equity Interests, the Debtors, or any other Entity or Person or further Order of the Bankruptcy Court.  All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates.  The authorizations and approvals contemplated by this Plan shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

### Section 6.06    Directors, Officers and Managers

As of the Effective Date, each of the Debtors' existing officers, directors, and managers, including James S. Cassel, Bradley D. Sharp and Joseph J. Luzinski, shall be deemed to be dismissed (unless previously dismissed or terminated), in their respective capacities before the Effective Date as Independent Manager, Chief Restructuring Officer and Deputy Chief Restructuring Officer of the Debtors, in each case without any further action required on the part of any such Debtor, the shareholders or members of such Debtor, or the officers, directors or managers of such Debtor and shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated).  Thereafter, the Liquidating Trustee shall succeed to all such powers as would have been applicable to the Debtors' officers and managers in respect of all Liquidating Trust Assets, *provided* that the Liquidating Trustee may continue to consult with or employ the Debtors' former directors, officers, employees, and managers to the extent required to comply with applicable law or contractual provisions regarding the Debtors.

### Section 6.07    Debtors' Professionals

On the Effective Date, the Professionals retained by the Debtors shall be deemed to have completed their services as Professionals to the Debtors, but they shall be able to file final

applications for reasonable compensation and reimbursement of expenses through the Effective Date as provided for in this Plan. The Professionals to the Debtors may be retained by the Liquidating Trustee.

**Section 6.08   Effectuating Documents; Further Transactions**

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any further Bankruptcy Court order, approvals, authorization, or consents, unless such an order is expressly required pursuant to the Plan.

**Section 6.09   Exemption from Certain Taxes and Fees**

To the maximum extent provided by Section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, Distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**Section 6.10   Preservation, Pursuit and Resolution of Liquidating Trust Actions**

Other than Causes of Action and Avoidance Actions against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, the Debtors and their Estates reserve and do not waive, any and all Causes of Action and Avoidance Actions, including any actions specifically enumerated in the Disclosure Statement or the Plan Supplement.

On and after the Effective Date, the Liquidating Trust, as a successor in interest to the Debtors and the Estates may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, and the Estates to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Liquidating Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement. In accordance with Bankruptcy Code Section 1123(b)(3), the Liquidating Trustee shall also serve as a representative of the Estates with respect to any and all Liquidating Trust Actions that were Estate Assets and, subject to the Liquidating Trust Agreement, shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon,

settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all Liquidating Trust Actions in any court or other tribunal.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action or Avoidance Action against them as any indication that the Debtors, the Liquidating Trustee will not pursue any and all available Causes of Action or Avoidance Actions against them.  No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action or Avoidance Actions upon, after, or as a consequence of the Confirmation or Consummation.  The Debtors or the Liquidating Trustee, as applicable, reserve all rights arising under Section 506(c) of the Bankruptcy Code with respect to all Secured Claims asserted against the Debtors or their Estates.

**Section 6.11    Continued Retention of Certain Professionals**

On the Effective Date, and without the need for further order of the Bankruptcy Court, PBYA shall be authorized to continue prosecuting those certain litigation claims on behalf of the Debtors and the Liquidating Trust on the same terms as previously approved by the Bankruptcy Court in the Chapter 11 Cases [ECF No. 389]; and Genovese, Joblove & Battista, P.A. shall be authorized to continue prosecuting those certain litigation claims on behalf of the Debtors and the Liquidating Trust on the same terms as previously approved by the Bankruptcy Court in the Chapter 11 Cases [ECF No. 639] subject to the modifications announced on the record at the hearing to consider approval of the Disclosure Statement.

**Section 6.12    The Surviving Debtor(s) Pending the Closing of the Cases**

Each Surviving Debtor shall continue in existence after the Effective Date as a post-Effective Date entity.  Without the need for any corporate action and without the need for any corporate or limited liability company filings, (a) all Equity Interests of the Surviving Debtors issued and outstanding immediately before the Effective Date shall be automatically cancelled and extinguished on the Effective Date and (b) as of the Effective Date, new membership interests of each Surviving Debtor, representing all of the issued and outstanding membership interests of each such Surviving Debtor, shall be issued to the Liquidating Trust, which new membership interests so issued shall be deemed to have been offered and sold to the Liquidating Trust in reliance on the exemption from registration under the Securities Act of 1933 afforded by section 4(a)(2) thereof. On and after the Effective Date, each Surviving Debtor will be a wholly-owned subsidiary of the Liquidating Trust, and the Liquidating Trust may expend with respect to such Surviving Debtor such amounts as the Liquidating Trust determines is appropriate, in his discretion.  The sole manager of each Surviving Debtor shall be the Liquidating Trustee whose rights and powers with respect to operations, employment, compensation, indemnity and exculpation as to each Surviving Debtor shall, to the greatest extent possible, be the same as the Liquidating Trustee's rights and powers in connection with the Liquidating Trust.  The Liquidating Trustee may take such steps as appropriate to maintain the good standing of the applicable Surviving Debtor.  Until a Surviving Debtor is dissolved, all cash or property received by the Surviving Debtor, net of any expenses of the Surviving Debtor incurred after the Effective Date, shall be transferred to the Liquidating Trust. Each Surviving Debtor (a) shall have the Liquidating Trust as its sole member and the Liquidating Trust shall be deemed to be admitted as a member of each Surviving Debtor on the Effective Date,

(b) shall be treated as a disregarded entity for income tax purposes, (c) shall have a purpose consistent with the purpose of the Liquidating Trust as set forth in Section 9.02 of the Plan, and (d) shall be subject to the same limitations imposed on the Liquidating Trustee under the terms of this Plan and the Liquidating Trust Agreement.

## Section 6.13   Closing of the Debtors' Cases

The Confirmation Order shall authorize, pursuant to Section 350 of the Bankruptcy Code, that on the Effective Date and except as set forth herein, the Dissolving Debtors' Chapter 11 Cases shall be closed for all purposes, without further action by the Debtors or order of the Bankruptcy Court.  For the avoidance of doubt, the closing of such cases shall not have any effect, in any manner, on the Liquidating Trust Actions that the Liquidating Trust may assert in accordance with the Plan.  Subject to changing the Debtors' case names as set forth in Section 6.18, the jointly administered case of 1 Global Capital LLC, identified as Case No. 18-19121-RBR (the "**Main Case**"), and the case of any other Surviving Debtor shall remain open and subject to the provisions of this Section 6.14.  Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Main Case, when all Liquidating Trust Assets have been liquidated and converted into Cash (other than those assets abandoned by the Liquidating Trust), and such Cash has been distributed in accordance with the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Main Case and the cases of any other Surviving Debtor in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## Section 6.14   Cancellation of Existing Agreements and Existing Stock and/or Membership Interests

On the Effective Date, except to the extent otherwise provided herein, all notes, stock, membership interests, instruments, certificates, and other documents evidencing any Claims or Equity Interests, including all Memoranda of Indebtedness, shall be canceled, and shall be of no further force as to the Debtors, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged; provided, that, the cancelation of the Memoranda of Indebtedness is not intended to and will not terminate, release, reduce, impair, satisfy or limit any Investor ownership interest therein, or otherwise affect any rights (for avoidance of doubt, including any Cause of Action) that any Investor may have against any Person or Entity other than the Debtors.

## Section 6.15   Operations of the Debtors Between the Confirmation Date and the Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate as debtors in possession, with authority to sell assets of the Debtors in accordance with Section 363 of the Bankruptcy Code or otherwise, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

**Section 6.16    Dissolution of Certain Debtors**

On the Effective Date and without the need for further order of the Bankruptcy Court, action or formality that otherwise might be required under non-bankruptcy law, the Dissolving Debtors will be deemed dissolved without any further filing with or action by any secretary of state or other governmental official in each of the Dissolving Debtors respective states of incorporation or formation.

**Section 6.17    Change of Debtors' Names**

On the Effective Date, and without the need for further order of the Bankruptcy Court or action or formality by the Debtors or the Liquidating Trustee that otherwise might be required under non-bankruptcy law, the names of each Debtor shall be changed as set forth below.

| Existing Name | Post-Effective Date Name |
|---|---|
| 1 Global Capital LLC | 1 GC Collections |
| 1 West Capital LLC | 1 West Collections |

**Section 6.18    Dissolution of the Creditors' Committee**

On the Effective Date, the Creditors' Committee shall be deemed dissolved and its members shall be deemed released of their duties, responsibilities and obligations.

On the Effective Date, the Professionals retained by the Creditors' Committee shall be deemed to have completed their services as Professionals to the Creditors' Committee. Through the Effective Date as provided for in this Plan, the Creditors' Committee shall be able to File final applications for reimbursement of expenses, and the Creditors' Committee's Professionals shall be able to File final applications for reasonable compensation and reimbursement of expenses. Notwithstanding anything in this Section 6.19, the Creditors' Committee shall have standing and a right to be heard following the dissolution of the Creditors' Committee solely with respect to (a) Professional Fee Claims and (b) any appeals of the Confirmation Order. Any fees and expenses shall be paid from the Liquidating Trust Assets. The Professionals to the Creditors' Committee may be retained by the Liquidating Trustee.

## ARTICLE VII:
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 7.01    Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to

assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) was previously assumed by the Debtors or assumed and assigned by a third party, as applicable, during the pendency of the Chapter 11 Cases; (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (e) is a D&O Policy or an insurance policy, as set forth in Section 7.06 of the Plan.

**Section 7.02    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

Any Cure under each Executory Contract and Unexpired Lease, if any, to be assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the Cure on the Effective Date, subject to the limitation described below, by the Debtors as an Administrative Claim, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (a) the amount of the Cure, (b) the ability of the Estates or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the Cure required by Section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, in consultation with Liquidating Trust Oversight Committee, may settle any dispute regarding the amount of any Cure without any further notice to any party or any action, order, or approval of the Bankruptcy Court.  In the absence of such consent, the Liquidating Trustee may seek approval of any such settlement from the Bankruptcy Court.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall cause notice of proposed assumption pursuant to the Plan and proposed Cure to be sent to applicable counterparties.  Any objection by such counterparty must be filed, served, and actually received by the Debtors not later than seven (7) days after service of notice of the Debtors' proposed assumption and associated Cure.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption and Cure.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment.  Anything in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**Section 7.03    Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with the Claims Agent and served on the Debtors or, after the Effective

Date, the Liquidating Trustee, as applicable, no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, no later than thirty (30) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed as set forth in the paragraph above shall not (a) be treated as a creditor with respect to such Claim, (b) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (c) participate in any Distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Trustee, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Debtors or the Liquidating Trustee, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**  All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

**Section 7.04    Modifications,    Amendments,    Supplements,    Restatements,    or    Other Agreements**

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors or the Debtors on behalf of the Debtors' Estates during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**Section 7.05    Indemnification Obligations**

(a)    All Indemnification Obligations owed to Prepetition Parties who served or were employed by the Debtors at any time shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the Plan on the Effective Date, unless deemed rejected on an earlier date.  Any Claim resulting

from these rejections in favor of any Person or Entity must be filed in accordance with Section 7.03 above and constitutes a General Unsecured Claim. Notwithstanding any of the foregoing, nothing contained in the Plan affects the rights of any Person or Entity covered by any applicable D&O Policy with respect to any such policy.

(b)     Indemnification Obligations owed to any Professionals to the extent that such Indemnification Obligations relate to the period after the Petition Date, excluding claims resulting from gross negligence, fraud, willful misconduct, breach of fiduciary duty, self-interested transactions or intentional tort, and breach of their contracts with the Debtors shall be deemed to be, and shall be treated as though they are, Executory Contracts that are assumed pursuant to Section 365 of the Bankruptcy Code and Section 7.01 of the Plan.

## Section 7.06   Insurance Policies

Each insurance policy, including the D&O Policy, shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to Sections 365 and 1123 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy.

## Section 7.07   Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee shall have 90 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

## Section 7.08   Merchant Cash Advance Agreements are Not Executory Contracts

For the avoidance of doubt, any merchant cash advance agreement or other agreement of the Debtors to advance money between either Debtor and any other party shall not be deemed to be an Executory Contract. In the event, however, that any such agreement is determined to be an Executory Contract, the Debtors' power to assume, pursuant to Section 365 of the Bankruptcy Code, any such merchant cash advance agreement shall be specifically preserved under this Plan for the benefit of the Liquidating Trustee. The Liquidating Trustee shall have thirty (30) days from the date of any such determination to assume or reject any such agreement.

## ARTICLE VIII:
## PROVISIONS GOVERNING DISTRIBUTIONS

**Section 8.01    Calculation of Amounts to be Distributed**

Each Holder of an Allowed Claim against the Debtors shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Liquidating Trust.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due.  If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Article VIII.  Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim.

**Section 8.02    Rights and Powers of the Debtors and Liquidating Trustee**

All Distributions required to be made under the Plan on the Effective Date shall be made by the Debtors or thereafter by the Liquidating Trust, or their respective designees.  After the Effective Date, the Liquidating Trustee shall have the right to object, allow, or otherwise resolve any Claim as provided herein.

The Debtors and the Liquidating Trustee, shall not be required to give any bond or surety or other security for the performance of their duties except as ordered by the Bankruptcy Court. Additionally, in the event that the Debtors or Liquidating Trust, as applicable, is ordered to provide such a bond, insurance or surety, all costs and expenses of procuring any such bond, insurance or surety shall be paid with Cash from the Liquidating Trust Assets.

The Liquidating Trustee shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code, including, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, including the right (subject to the provisions of the Plan and the Liquidating Trust Agreement) to (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (b) sell or otherwise liquidate any of the Liquidating Trust Assets in accordance with Section 363 of the Bankruptcy Code or otherwise; (c) prosecute, settle, abandon or compromise any Claims or Liquidating Trust Actions; (d) make Distributions contemplated by the Plan; (e) establish and administer any necessary reserves for Disputed Claims that may be required; (f) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (g) employ and compensate professionals, including professionals previously retained by the Debtors and/or the Creditors' Committee, *provided* that any such employment and compensation shall be comply with the procedures set forth in the Liquidating Trust Agreement and any such compensation shall be made only out of the Liquidating Trust Assets; and (h) file all federal, state and local tax returns if necessary.

The Liquidating Trustee shall assume any outstanding responsibility of the Debtors under the Plan.

The Liquidating Trustee shall have the full authority, subject to the provisions of the Plan and the Liquidating Trust Agreement, to take any steps necessary to administer the Plan, including the duty and obligation to liquidate, sell or otherwise dispose of Liquidating Trust Assets, to make Distributions therefrom in accordance with the provisions of this Plan and to pursue, settle or abandon any Claims and Liquidating Trust Actions.

From and after the Effective Date, and subject to the terms of the Plan and Liquidating Trust Agreement, the Liquidating Trustee may compromise and settle any dispute relating to any Claims or any Liquidating Trust Actions, without any further approval by the Bankruptcy Court or any other Entity; *provided* that if the amount in controversy of any dispute exceeds $500,000, then the Liquidating Trustee shall request Bankruptcy Court approval of a compromise or settlement of that dispute in accordance with Fed.R.Bankr.P. 9019 and Local Rule 9019-1(D)(3)(b) by motion served on the on the master service list maintained in accordance with Local Rule 2002-1(H).  Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estates.

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses (including reasonable attorneys' fees and expenses) incurred by the Liquidating Trustee, and expenses incurred by the Liquidating Trust Oversight Committee, on or after the Effective Date shall be paid in Cash from the Liquidating Trust Assets.  Such amounts shall be paid in accordance with the Compensation Procedures Order.

**Section 8.03    Delivery of Distributions and Undeliverable or Unclaimed Distributions**

(a)    *Record Date for Distribution*

On the Distribution Record Date, the Claims Register shall be closed and the Liquidating Trustee or any other party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Nothing in this Section 8.03 shall impair or limit the transferability of Liquidating Trust Interests in accordance with Section 9.12 of the Plan and the Liquidating Trust Agreement.

(b)    *Delivery of Distributions in General*

1.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Liquidating Trustee on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

Within thirty (30) days of a Disputed Claim becoming an Allowed Claim, the Liquidating Trustee shall distribute to the Holder thereof, from the Disputed Claim Reserve, an amount in Cash as would have been distributed to such Holder (on account of such Holder's Liquidating Trust

Interests) on the Initial Distribution Date (plus any subsequent Distributions that would have been paid as of that date) if its Claim had been an Allowed Claim on the Effective Date. No interest will be paid on Disputed Claims that later become Allowed or with respect to any distribution in satisfaction thereof to a Holder.

Upon a Disputed Claim becoming a Disallowed Claim in whole or in part, any Cash held in the Disputed Claims Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan.

2.      Distributions

On and after the Effective Date, the Debtors and the Liquidating Trustee, as applicable, shall make the Distributions required to be made on account of Allowed Claims under the Plan. The Liquidating Trustee shall make an initial Distribution to the Liquidating Trust Beneficiaries from Available Trust Cash on the Initial Distribution Date.

The Liquidating Trustee, in his discretion, may make periodic Distributions of additional Cash to the Liquidating Trust Beneficiaries at any time following the Initial Distribution Date, provided that such Distributions are otherwise permitted under, and not inconsistent with the other terms of, the Plan, the Liquidating Trust Agreement and applicable law.

No later than (a) the first Business Day that is at least 180 calendar days after the Effective Date and (b) the last Business Day of each subsequent 180-calendar-day period after the Effective Date until the Closing Date, the Liquidating Trustee shall calculate the Distributions that could potentially be made to the Liquidating Trust Beneficiaries based on the amount of Available Trust Cash and, based on such calculation, promptly thereafter may make Distributions, if any, of the amount so determined.

(c)      *Minimum; De Minimis Distributions*

Notwithstanding any other provision of the Plan to the contrary (including the treatment of any Claims or Classes), (a) the Debtors or the Liquidating Trustee, as applicable, shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down, and (b) the Liquidating Trustee shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $6,000,000, in which case such Distributions shall be deferred to the next Distribution Date; provided, however, that the foregoing minimum aggregate Distribution threshold shall not apply to Distributions from the Disputed Claim Reserve made on account of a Disputed Claim becoming an Allowed Claim in accordance with Section 8.03(b)(1) of the Plan, (ii) if the amount to be distributed to that Holder on the particular Distribution Date is less than $250.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) if the amount of the final Distribution to any such Holder is less than $50.00, in which case such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims;.

(d)    *Undeliverable Distributions and Unclaimed Property*

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder; *provided*, *however*, that the Liquidating Trustee may deem such Distributions unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of four (4) months from the Initial Distribution Date.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

(e)    *Manner of Payment Pursuant to the Plan*

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, as applicable, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtors or the Liquidating Trustee, as applicable.  Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.  Cash payments made pursuant to this Plan in the form of checks issued by the Liquidating Trustee shall be null and void if not cashed within 120 days of the date of the issuance thereof.  Requests for reissuance of any check shall be made directly to the Liquidating Trustee.

(f)    *Distributions to Investors Who Invested Through Individual Retirement Plans*

Unless (i) an Investor's Ballot identifies that Distributions on account of the Investor's Allowed Class 4A Claim will be made to the custodian for such Investor's IRA or (ii) an Investor notifies the Debtors in a signed writing before the Effective Date that (a) the Investor funded its Class 4A Claim from its IRA and (b) instructs the Debtors that Distributions on account of such Class 4A Claim should be disbursed to the custodian of the IRA, the Liquidating Trustee shall not be required to make Distributions to the custodian of the Investor's IRA, if any.  Investors should consult their individual tax advisors regarding the consequences of taking such Distributions.

**Section 8.04    Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Debtors, or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtors and the Liquidating Trustee are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements. The Liquidating Trustee is authorized to require each Creditor and Liquidating Trust Beneficiary to provide the Liquidating Trustee with an executed Form W-9 or similar tax form as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim or Liquidating Trust Beneficiary does not provide the Liquidating Trustee with an executed Form W-9 or similar form within ninety (90) days of written request, the Liquidating Trustee may deem said Creditor or Liquidating Trust Beneficiary to have forfeited their Distribution with no further notice required.

**Section 8.05   Claims Paid or Payable by Third Parties**

(a)      *Claims Paid by Third Parties; Recourse to Collateral*

The Liquidating Trustee shall be authorized to reduce in whole or in part a Claim, and such Claim shall be Disallowed without an objection to the Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or, as applicable, the Liquidating Trustee, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment, in whole or in part, from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Debtor or the Liquidating Trustee, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

(b)      *Claims Payable by Insurance, Third Parties; Recourse to Collateral*

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or more of the Debtors' insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)     *Applicability of Insurance Policies*

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and consummation of the Plan shall not limit or affect the rights of any third-party beneficiary of any of the Debtor's insurance policies with respect to such policies, including the D&O Policy.

## ARTICLE IX:
## THE LIQUIDATING TRUST

### Section 9.01   Liquidating Trust Creation

On the Effective Date, the Liquidating Trust shall be established and become effective. The Liquidating Trust Agreement shall (a) be in form and substance consistent in all respects with this Plan and be reasonably acceptable to the Plan Proponents and (b) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Liquidating Trust as a grantor trust and the Liquidating Trust Beneficiaries as the grantors and owners thereof for federal income tax purposes. All relevant parties (including the Debtors, the Creditors' Committee, the Liquidating Trustee and the Liquidating Trust Beneficiaries) will take all actions necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust.  The powers, authority, responsibilities, and duties of the Liquidating Trust and the Liquidating Trustee are set forth in and shall be governed by the Liquidating Trust Agreement, the Plan, and the Confirmation Order.  The compensation of the Liquidating Trustee shall be upon the same terms and conditions as set forth in the Independent Manager Order or in a subsequent order of the Bankruptcy Court.

### Section 9.02   Purpose of the Liquidating Trust

The Liquidating Trust shall be established for the primary purpose of liquidating its assets and making Distributions in accordance with the Plan, Confirmation Order and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

### Section 9.03   Transfer of Assets to the Liquidating Trust

The Debtors and the Liquidating Trustee shall establish the Liquidating Trust for the benefit of and on behalf of the Liquidating Trust Beneficiaries pursuant to the Liquidating Trust Agreement, with the Liquidating Trust Beneficiaries to be treated as the grantors and deemed owners of the Liquidating Trust Assets.  The Debtors will irrevocably transfer, assign, and deliver to the Liquidating Trust, on behalf of the Liquidating Trust Beneficiaries, all of their rights, title, and interests in the Liquidating Trust Assets, including any claims, rights, and Causes of Action that the Debtors may hold against any Entity in accordance with the provisions herein, notwithstanding any prohibition on assignment under non-bankruptcy law.  Upon establishment of the Liquidating Trust and from time to time thereafter, (i) the SEC may elect and be authorized to transfer, assign, and deliver to the Liquidating Trust all of their rights, title, and interests in the SEC Contributed Recoveries, and (ii) the Receiver may, from time to time, pursuant to an order of the District Court in the SEC Action, transfer, assign, and deliver to the Liquidating Trust all of its rights, title and interests in the Receiver Contributed Recoveries.

The Liquidating Trust will accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries, subject to the Plan and the Liquidating Trust Agreement.

On the Effective Date (or thereafter, with respect to the Receiver Contributed Recoveries and the SEC Contributed Recoveries), all Liquidating Trust Assets shall vest and be deemed to vest in the Liquidating Trust in accordance with Section 1141 of the Bankruptcy Code; provided, however, that the Liquidating Trustee, in consultation with the Liquidating Trust Oversight Committee, may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value to the Liquidating Trust. Any Assets the Liquidating Trustee so abandons or otherwise does not accept shall not vest in the Liquidating Trust. As of the Effective Date, all Liquidating Trust Assets vested in the Liquidating Trust shall be free and clear of all Liens, Claims and Equity Interests except as otherwise specifically provided in the Plan or in the Confirmation Order. Upon the transfer by the Debtors of the Liquidating Trust Assets to the Liquidating Trust or abandonment of Liquidating Trust Assets by the Liquidating Trustee, the Debtors will have no reversionary or further interest in or with respect to any Liquidating Trust Assets or the Liquidating Trust. Notwithstanding anything herein to the contrary, the Liquidating Trust and the Liquidating Trustee shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

For the avoidance of doubt, and notwithstanding anything herein to the contrary, the Debtors shall not transfer or be deemed to have transferred to the Liquidating Trust any claims or Causes of Action (a) released pursuant to this Plan or (b) exculpated pursuant to Article XII hereof to the extent of any such exculpation.

**Section 9.04    Tax Treatment of the Liquidating Trust**

For all federal income tax purposes, the Liquidating Trust Beneficiaries will be treated as grantors and owners thereof and it is intended that the Liquidating Trust be classified as a Liquidating Trust under 26 C.F.R.§ 301.7701–4 and that the Liquidating Trust is owned by the Liquidating Trust Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Liquidating Trust Beneficiaries be treated as if they had received a Distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust. Accordingly, the Liquidating Trust shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely Distributions to the Liquidating Trust Beneficiaries pursuant to the Plan, and not unduly prolong the Liquidating Trust's duration. The Liquidating Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement. The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and owners of the trust.

The Liquidating Trust shall file returns for the Liquidating Trust, except with respect to any Disputed Claims Reserve, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section of the Plan. The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to each holder in accordance with their relative Liquidating Trust Interest.

As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes.  The Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes.

The Liquidating Trust shall file all income tax returns with respect to any income attributable to the Disputed Claims Reserve and shall pay any federal, state and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit or loss allocable thereto.

The Liquidating Trust may request an expedited determination of Taxes of the Debtors or of the Liquidating Trust, including the Disputed Claims Reserve, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtors and the Liquidating Trust.  The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

The Liquidating Trustee shall send annually to each Liquidating Trust Beneficiaries who is the holder of an Allowed Claim a separate statement stating the Liquidating Trust Beneficiary's share of income, gain, loss, deduction or credit and instructing all such Liquidating Trust Beneficiaries to report such items on their Federal tax returns (and state tax returns if required by applicable law).

**Section 9.05   Distribution; Withholding**

Notwithstanding anything in the Plan to the contrary, the Liquidating Trustee shall make, or cause to be made, all Distributions under the Plan and the Liquidating Trust Agreement other than those Distributions made by the Debtors on the Effective Date.

The Liquidating Trust may withhold from amounts distributable to any Entity any and all amounts, determined in the Liquidating Trustee's sole discretion, required by the Plan or Liquidating Trust Agreement, or applicable law, regulation, rule, ruling, directive, or other governmental requirement.  The Liquidating Trustee may require any Liquidating Trustee Beneficiary to furnish to the Liquidating Trustee in writing his, her or its Employer or Taxpayer Identification Number as assigned by the IRS or an executed IRS Form W-9, IRS Form W8-BEN or similar tax form, and the Liquidating Trustee may condition any Distribution upon receipt of such identification number or executed document.

**Section 9.06   Insurance**

The Liquidating Trust shall maintain customary insurance coverage for the protection of Persons or Entities serving as administrators and overseers of the Liquidating Trust on and after the Effective Date.

**Section 9.07    Other Rights and Duties of the Liquidating Trustee**

In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust under the Plan and Liquidating Trust Agreement, on and after the Effective Date, the Liquidating Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court.

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtors and their Estates, in all forms including electronic and hard copy, other than the Debtors' Professionals' Documents; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or required.

The Liquidating Trustee shall be authorized to collect and liquidate all uncollected and unliquidated Liquidating Trust Assets, including the Liquidating Trust Actions and tax refunds. The Liquidating Trustee shall be authorized to accept Third-Party Recoveries, and to make Distributions of Third-Party Recoveries to Holders of Allowed Class 4A Claims.

Any and all rights to conduct investigations with respect to Causes of Action, Avoidance Actions or claims not released by the Debtors shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust, as if neither the Confirmation Date nor the Effective Date had occurred.

The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trustee.

**Section 9.08    Disputed Claims Reserve**

The Liquidating Trustee may maintain, in accordance with the Liquidating Trustee's powers and responsibilities under the Plan and the Liquidating Trust Agreement, a Disputed Claims Reserve. The Liquidating Trustee may, in his reasonable discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Liquidating Trust Agreement, as Disputed Claims are resolved, and such amounts may be distributed to the corresponding Liquidating Trust Beneficiaries on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. On a quarterly basis, the Liquidating Trustee shall provide the Liquidating Trust Oversight Committee and the SEC with an update on the activity and current balance of the Disputed Claims Reserve.

**Section 9.09    Wind-Down**

In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust, on and after the Effective Date, the Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve any Surviving Debtor.

As soon as practicable after the Effective Date, the Liquidating Trustee shall: (1) in the Liquidating Trustee's reasonable discretion, complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and pursuant to Section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such

Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (2) take such other actions as the Liquidating Trustee may determine to be necessary or desirable to carry out the purposes of the Plan. From and after the Effective Date, the Debtors for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, shall be deemed to have cancelled pursuant to this Plan all Equity Interests, and shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, the dissolution of the Debtors shall not have any effect, in any manner, on the Causes of Action and Avoidance Actions that the Liquidating Trustee may assert or substitute into as plaintiff in accordance with the Plan and the Liquidating Trust Agreement and notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims and as otherwise provided for in the Plan.

**Section 9.10    Post-Effective Date Reporting**

Beginning twenty (20) days after the first full quarter-end following the Effective Date and continuing thereafter so long as the Liquidating Trust shall remain in existence, the Liquidating Trustee shall File but not serve a "Chapter 11 Post-Confirmation Quarterly Operating Report" in a form substantially similar to the form promulgated by the Office of the United States Trustee. Among other things, the report shall include a schedule of (a) the Liquidating Trust's receipts and disbursements, (b) all Liquidating Trust Assets held by the Liquidating Trust, and (c) all fees, income, and expenses related to the Liquidating Trust during the preceding calendar year. The Liquidating Trustee's quarterly report shall be provided to the Liquidating Trust Oversight Committee upon Filing, and shall be posted on the Website.

**Section 9.11    Termination of the Liquidating Trust and Liquidating Trust Oversight Committee**

The Liquidating Trustee and members of the Liquidating Trust Oversight Committee shall be discharged and the Liquidating Trust and Liquidating Trust Oversight Committee shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Liquidating Trust Assets have been liquidated, (c) all  duties and obligations of the Liquidating Trustee hereunder have been fulfilled, (d) all Distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made, and (e) the Chapter 11 Cases of the Debtors have been closed, but in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion by the Liquidating Trustee within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service, to the extent required under applicable law at that time, that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the liquidation, recovery and Distribution of the Liquidating Trust Assets. The Trustee may seek such an extension in consultation with the Oversight Committee.

**Section 9.12    Transfer of Liquidating Trust Interests**

Notwithstanding anything to the contrary in the Plan, Liquidating Trust Interests shall not be transferrable except upon death of the interest holder or by operation of law.  Any purported transfer or assignment in violation of this Section 9.12 shall be null and void.

**Section 9.13    Termination of the Liquidating Trustee**

The duties, responsibilities, and powers of the Liquidating Trustee shall terminate in accordance with the terms of the Liquidating Trust Agreement.

**Section 9.14    Exculpation; Indemnification**

The Liquidating Trust Indemnified Parties will be exculpated and indemnified by the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement; provided, that the Liquidating Trust Agreement shall not include indemnification for gross negligence, willful misconduct or fraud and shall not include indemnification or exculpation for breach of contract claims.

**Section 9.15    Release of Liens**

Except as otherwise provided by the Plan or in any contract, instrument, release or other agreement or document created or assumed in connection with the Plan, on the Effective Date all mortgages, deeds of trust, liens, pledges or other security interests against the property of the Debtors' Estates shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, liens, pledges or other security interests shall revert to the applicable Estate.

**Section 9.16    Subordination**

(a)    *Preservation of Subordination Rights by Estates*

Except as otherwise provided herein, all subordination rights and claims relating to the subordination by the Debtors or the Liquidating Trustee of any Allowed Claim or Equity Interest shall remain valid, enforceable and unimpaired in accordance with Section 510 of the Bankruptcy Code or otherwise.

(b)    *Waiver by Creditors of all Subordination Rights*

Except as otherwise ordered by the Bankruptcy Court, each Holder of a Claim shall be deemed to have waived all contractual, legal and equitable subordination rights that they may have—whether arising under general principles of equitable subordination, Section 510(b) or (c) of the Bankruptcy Code, or otherwise—with respect to any and all Distributions to be made under the Plan, and all such contractual, legal or equitable subordination rights that each Holder has individually and collectively with respect to any such Distribution made pursuant this Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights are permanently enjoined.

## ARTICLE X:
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

**Section 10.01 Resolution of Disputed Claims**

(a)     *Allowance of Claims and Equity Interests*

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed as of the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.

(b)     *Prosecution of Objections to Claims or Equity Interests*

Subject in all respects to the provisions hereof, other than with respect to Professional Fee Claims, prior to the Effective Date, the Debtors, and on or after the Effective Date, the Liquidating Trustee, in consultation with the Liquidating Trust Oversight Committee, shall have the authority to File objections to Claims or Equity Interests, and to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtors' Estates to any and all Claims or Equity Interests, regardless of whether such Claims or Equity Interests are in a Class or otherwise.

Subject to the foregoing and the other provisions of the Plan, from and after the Effective Date, the Liquidating Trustee (a) may settle or compromise any Disputed Claim in accordance with the Liquidating Trust Agreement, in consultation with the Liquidating Trust Oversight Committee; and (b) shall succeed to the Debtors' rights with respect to any objections Filed by the Debtors that remain pending as of the Effective Date.  From and after the Effective Date, the Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)     *Claims Estimation*

Prior to the Effective Date the Debtors, and on and after the Effective Date, the Liquidating Trustee, in consultation with the Liquidating Trust Oversight Committee, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding

any provision otherwise in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.

In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of Distributions, and the Liquidating Trustee may elect to pursue additional objections to the ultimate Distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim.  Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## Section 10.02  Disallowance of Claims

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Liquidating Trustee (or the Claims Agent at the Liquidating Trustee's direction), and any Claim that has been amended may be adjusted thereon by the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## Section 10.03  Amendments

After the Confirmation Date, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided that, even with such Bankruptcy Court authorization, a Claim may be amended by the Holder of such Claim solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority, except as provided in Section 7.03 of this Plan.

## Section 10.04  No Post-Petition Interest

Unless otherwise specifically provided for in the Plan, by applicable law, or agreed to by, as applicable, the Debtors or the Liquidating Trustee, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim.  Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date to the extent the final Distribution paid on account of such Claim occurs after the Effective Date.

## ARTICLE XI:
## RETENTION OF JURISDICTION

### Section 11.01  Retention of Jurisdiction

Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law (provided, however, that notwithstanding the foregoing, with respect to all civil proceedings arising under the Bankruptcy Code or arising in or related to these Chapter 11 Cases and the Plan, the Bankruptcy Court shall have original but not exclusive jurisdiction, in accordance with Section 1334(b) of Title 28 of the United States Code), including, among other things, jurisdiction to:

(I)      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim or Equity Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

(II)      hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(III)      hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(IV)      effectuate performance of and payments under the provisions of the Plan and enforce remedies upon any default under the Plan;

(V)      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, these Chapter 11 Cases, any litigation rights or the Plan whether Filed or commenced before or after the Confirmation Hearing;

(VI)      enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(VII)      hear and determine any and all disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including

disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(VIII) consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(IX) issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(X) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(XI) hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the schedules to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the schedules to the Plan, the Disclosure Statement, or the Confirmation Order;

(XII) enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with these Chapter 11 Cases (whether or not these Chapter 11 Cases have been closed);

(XIII) except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

(XIV) hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(XV) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(XVI) resolve any cases, controversies, suits, or disputes related to the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, any Surviving Debtor, and any Debtor or its Investors, including to enter any orders resolving such cases, controversies, suits, or disputes and any attendant bar order or channeling injunction relating thereto; and

(XVII) enter a final decree closing these Chapter 11 Cases.

## Section 11.02 Reserved Rights to Seek Bankruptcy Court Approval

Notwithstanding any provision of the Plan allowing an act to be taken without Bankruptcy Court approval, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which either of them may desire to have explicit approval of the

Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidating Trust, including the administration, distribution, or proposed sale of any of the Liquidating Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion Filed by the Liquidating Trust, as applicable.

**Section 11.03  Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to these Chapter 11 Cases, including the matters set forth in Section 11.01 of the Plan, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**ARTICLE XII:**
**SETTLEMENT, INJUNCTIONS AND EXCULPATIONS**

**Section 12.01  Compromise and Settlement of Claims, Equity Interests, and Controversies**

Pursuant to Sections 1123(a)(5), 1123(b)(3) and 1123(b)(6) of the Bankruptcy Code, and Bankruptcy Rule 9019, and in consideration of the Distributions and other benefits provided under the Plan, the provisions of the Plan shall, on the Effective Date, constitute a compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof, as well as of all potential Intercompany Claims and Causes of Action against any Debtor. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of such compromise and settlement and the Bankruptcy Court's finding that such compromise and settlement are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable.

**Section 12.02  Exculpation**

**The Exculpated Parties shall neither have nor incur any liability to any Entity, including any Holder of a Claim or Equity Interest, for any act taken or omitted, after the Petition Date, in connection with the Chapter 11 Cases, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other post-petition act taken or omitted in connection with or in contemplation of the restructuring or liquidation of the Debtors, except for acts or omissions that are the result of fraud, gross negligence, or willful misconduct; provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.**

**The Exculpated GT Parties shall neither have nor incur any liability to any Entity, including any Holder of a Claim or Equity Interest, for any act taken or omitted, whether before or after the Petition Date, in connection with the Chapter 11 Cases, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing**

the Plan or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or post-petition act taken or omitted in connection with or in contemplation of the restructuring or liquidation of the Debtors, except for acts or omissions that are the result of fraud, gross negligence, or willful misconduct; **provided** **that** each Exculpated GT Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

Without limiting the foregoing "**Exculpation**" provided under this Section 12.02, the rights of any Holder of a Claim or Equity Interest to enforce rights arising under this Plan shall be preserved, including the right to compel payment of Distributions in accordance with the Plan.

**Section 12.03  Non-Discharge of Debtors; Property Dealt With by the Plan**

In accordance with Section 1141(d)(3)(A) of the Bankruptcy Code, the Plan does not discharge the Debtors.  Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Equity Interests against the Debtors.  As such, no Person or Entity holding a Claim or an Equity Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Person under the Plan.

**Section 12.04  Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES AND PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (a) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (b) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 12.02 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION 12.02); OR (c) ARE OTHERWISE STAYED, TREATED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER

AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE LIQUIDATING TRUST, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; PROVIDED THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; PROVIDED, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIM OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.

**Section 12.05  Setoffs**

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Equity Interest, may reduce, diminish, discount, compromise, or setoff

against, and reduce the amount of, any Allowed Claim or Equity Interest on account of any Proof of Claim or other pleading Filed with respect thereto prior to the Confirmation Hearing and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Equity Interest (before any Distribution is made on account of such Allowed Claim or Equity Interest), any claims, rights, Causes of Action and Avoidance Actions of any nature that the Debtors' Estates may hold against the Holder of such Allowed Claim or Equity Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise), including any rights under Section 502(d) of the Bankruptcy Code, provided that neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trustee, as applicable, of any such claims, rights, Causes of Action and Avoidance Actions that the Debtors' Estates may possess against such Holder.  In no event shall any Holder of Claims or Equity Interests be entitled to setoff any Claim or Equity Interest against any claim, right, Cause of Action or Avoidance Actions of the Debtors' Estates unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff.  Further, nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtors' or the Liquidating Trustee' right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date and that the filing of a Proof of Claim was not sufficient.

## Section 12.06  Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in these Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Debtors' bankruptcy cases are all closed except for the injunctions provided in Section 12.04, which shall be permanent injunctions.

## Section 12.07  Preservation of SEC Enforcement Rights

Notwithstanding any provision in the Plan to the contrary, no provision of the Plan, the Disclosure Statement or any order confirming the Plan, (i) releases any non-debtor person or entity from any cause of action of the SEC, or (ii) enjoins, limits, impairs or delays the SEC from commencing or continuing any causes of action, proceedings or investigations against any non-debtor person or entity in any non-bankruptcy forum.

**ARTICLE XIII:**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND EFFECTIVENESS OF THE PLAN**

**Section 13.01  Conditions to Confirmation and Effectiveness**

(a)      *Conditions to Confirmation*

The following conditions precedent to the occurrence of the Confirmation Date must be satisfied unless any such condition shall have been waived by the Plan Proponents in accordance with Section 13.03 of the Plan:

(i)      The Confirmation Order shall have been entered in form and substance satisfactory to the Plan Proponents;

(ii)      The Liquidating Trust Agreement and Plan Supplement, including any amendments, modifications, or supplements thereto shall be in form and substance materially consistent with this Plan in all respects and agreed to by the Plan Proponents;

(iii)      The Bankruptcy Court finds that adequate information and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with all deadlines for voting on or objecting to the Plan has been given to all relevant parties in accordance with the solicitation procedures governing such service and in substantial compliance with Bankruptcy Rules 2002(b), 3017 and 3020(b).

(b)      *Conditions to Effectiveness*

The following conditions precedent to the occurrence of the Effective Date must be satisfied unless any such condition shall have been waived by the Plan Proponents in accordance with Section 13.03 of the Plan:

(i)      the Confirmation Order shall have been entered in form and substance satisfactory to the Plan Proponents and shall be a Final Order;

(ii)      all actions and all agreements, instruments and other documents necessary to implement the Plan and any Plan Transaction shall have been effected or executed;

(iii)      the Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or other approvals or documents necessary to implement the Plan and any Plan Transactions that are required by law, regulation or order, if any;

(iv)      the absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any Plan Transactions.

(v)      the Liquidating Trust Agreement shall be executed and effective;

(vi)        the Disputed Claims Reserve shall be fully funded as provided in the Plan; and

(vii)        the conditions to Confirmation shall have been satisfied or waived.

## Section 13.02  Notice of Occurrence of the Effective Date

The Debtors or Liquidating Trustee shall File a notice of the occurrence of the Effective Date within five (5) Business Days after the Effective Date; provided, that failure to timely File such notice shall not affect the occurrence of the Effective Date.

## Section 13.03  Waiver of Conditions

Each of the conditions set forth in this Article XIII may be waived in whole or in part by written agreement of the Plan Proponents without any notice to parties-in-interest or the Bankruptcy Court and without a hearing.

## Section 13.04  Consequences of Non-Occurrence of Effective Date

If the Confirmation Order is vacated, (a) the Plan shall be null and void in all respects; (b) any settlement of Claims or Equity Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (c) to the extent permitted under the Bankruptcy Code, the time within which the Debtors may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of forty-five (45) days after the date the Confirmation Order is vacated.

## ARTICLE XIV:
## MISCELLANEOUS PROVISIONS

## Section 14.01  Administrative Claims

All Administrative Claims (other than Professional Fee Claims) must be made by application Filed with the Bankruptcy Court and served on counsel for the Debtors and the Liquidating Trustee no later than the Administrative Claims Bar Date or their Administrative Claim shall be forever barred.  In the event that the Liquidating Trustee or Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

With respect to Administrative Claims, the last day for Filing an objection to any Administrative Claim will be the Claims Objection Deadline.

## Section 14.02  Modifications and Amendments

Subject to the limitations contained in the Plan, the Plan Proponents reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their

rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, but only until the Effective Date and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIV hereof.

After the Effective Date, the Liquidating Trustee can modify the Plan only in accordance with Section 1127 of the Bankruptcy Code and applicable law; *provided*, *however*, that whether before or after the Effective Date, the Debtors or the Liquidating Trustee, as applicable, and without the need to resolicit votes on such modified Plan, may modify the Plan to provide for (i) Distributions to be made to Holders of Class 5 Claims if the Liquidating Trust Beneficiaries (on account of Allowed Class 4A Claims and Class 4B Claims) are paid in full, (ii) a bar order or channeling injunction in connection with the compromise or settlement of a Cause of Action, or (iii) assignability and transferability of Liquidating Trust Interests to the extent permitted by and in compliance with applicable law.

**Section 14.03  Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 14.04  Successors and Assigns and Binding Effect**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Entity, including the Liquidating Trustee and all other parties-in-interest in these Chapter 11 Cases such as Holders of Claims and Equity Interests and the Liquidating Trust Beneficiaries.

**Section 14.05  Revocation, Withdrawal or Non-Consummation**

The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans.  If the Plan Proponents revoke or withdraw the Plan prior to the Confirmation Date, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims),

assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of (x) any Claims against, or any Equity Interests in, the Debtors, or (y) any Avoidance Actions, litigation rights or other claims by or against the Debtors, the Creditors' Committee or any Entity, (ii) prejudice in any manner the rights of the Debtors, the Creditors' Committee, or any Entity in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors, the Creditors' Committee, or any other Entity.

## Section 14.06  Plan Supplement

The Plan Supplement shall be Filed with the Bankruptcy Court and posted on the Website at least ten (10) days prior to the Voting Deadline or by such later date as may be established by order of the Bankruptcy Court.  Upon such Filing and posting on the Website, all documents set forth in the Plan Supplement may be accessed on the Website or inspected in the office of the Clerk of the Bankruptcy Court during normal business hours.  Holders of Claims or Equity Interests may also obtain a copy of any document set forth in the Plan Supplement upon written request to the Debtors in accordance with Section 14.08 of the Plan.

## Section 14.07  Continued Confidentiality Obligations

Notwithstanding any other provision of the Plan, all members of and advisors to the Creditors' Committee, any other holder of a Claim or Equity Interest and their respective predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with these Chapter 11 Cases or the Debtors, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date for a period of one (1) year.

## Section 14.08  Notices

Any notice, request, or demand required or permitted to be made or provided under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

Greenberg Traurig, P.A.
Attn:   Paul J. Keenan Jr.
        John R. Dodd
333 S.E. 2nd Avenue
Suite 4400
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

> If to the Creditors' Committee:
>
> > Stichter, Riedel, Blain & Postler, P.A.
> > Attn:   Russell M. Blain
> >           Barbara A. Hart
> > 110 East Madison St., Ste. 200
> > Tampa, FL 33602
> > Telephone: (813) 229-0144
> > Facsimile:  (813) 229-1811

**Section 14.09  Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

**Section 14.10  Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Florida shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation of the Debtors shall govern corporate governance matters with respect to the Debtor; in each case without giving effect to the principles of conflicts of law thereof.

**Section 14.11  Exhibits**

All exhibits to the Plan and Disclosure Statement or the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such exhibits shall be Filed with the Bankruptcy Court on or before the date of the Filing of the Plan Supplement, and will then be posted on the Website.  Upon such Filing and posting on the Website, all exhibits may be accessed on the Website or inspected in the office of the Clerk of the Bankruptcy Court during normal business hours.  Holders of Claims or Equity Interests may also obtain a copy of any exhibit upon written request to the Debtors in accordance with Section 14.08 of the Plan.  To the extent any exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit portion of the Plan shall control.

**Section 14.12  Conflicts**

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or any exhibits, schedules, appendices, supplements or amendments to the foregoing conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.  To the extent of any inconsistency between the Plan and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

**Section 14.13  Exemption**

Under Section 1145 of the Bankruptcy Code, the issuance of the Liquidating Trust Interests and any other securities under this Plan shall be exempt from registration under the Securities Act of 1933, as amended and all applicable state and local laws requiring registration of securities.  If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

**Section 14.14  Substitution of the Liquidating Trust for the Debtors**

On the Effective Date, the Liquidating Trust shall be deemed to be substituted as the party in lieu of the Debtors in all pending matters including (a) motions, contested matters and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court without the need or requirement for the Liquidating Trust to file motions or substitutions of parties and counsel.

[Remainder of Page Intentionally Left Blank]

Dated: July 22, 2019

**1 GLOBAL CAPITAL LLC,** *as*
*Debtor and Debtor-in-Possession*

By:  */s/ Bradley D. Sharp*
Name:  Bradley D. Sharp
Its:  Chief Restructuring Officer


**1 WEST CAPITAL LLC,** *as*
*Debtor and Debtor-in-Possession*

By:  */s/ Bradley D. Sharp*
Name:  Bradley D. Sharp
Its:  Chief Restructuring Officer

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF 1 GLOBAL
CAPITAL LLC AND 1 WEST CAPITAL
LLC**


By:  */s/ Christopher Blackstone*
Name:  Christopher Blackstone
Its:  Chairperson


By:  */s/ Charles Carpenter*
Name:  Charles Carpenter
Its:  Member


By:  */s/ Geoffrey Lipman*
Name:  Geoffrey Lipman
Its:  Member


By:  */s/ James A. Lochtefeld*
Name:  James A. Lochtefeld
Its:  Member


By:  */s/ Steven Ross Shelton*
Name:  Steven Ross Shelton
Its:  Member


By:  */s/ Khosrow Sohraby*
Name:  Khosrow Sohraby
Its:  Member


By:  */s/ Donald Stec*
Name:  Donald Stec
Its:  Member

*[Signature Page to First Amended Chapter 11 Plan of Liquidation]*